345 Wis.2d 398
Unpublished Disposition
See Rules of Appellate Procedure, Rule 809.23(3), regarding citation of unpublished opinions. Unpublished opinions issued before July 1, 2009, are of no precedential value and may not be cited except in limited instances. Unpublished opinions issued on or after July 1, 2009 may be cited for persuasive value.
NOTE: THIS OPINION WILL NOT APPEAR IN A PRINTED VOLUME. THE DISPOSITION WILL APPEAR IN A REPORTER TABLE.
Court of Appeals of Wisconsin.

Joseph A. CARABALLO, Plaintiff–Appellant,
v.
COUNTY OF SAWYER, Sawyer County Sheriff's Department and James Meier, Sheriff of Sawyer County, Defendants–Respondents.

No. 2012AP364.
|
Nov. 6, 2012.

Appeal from a judgment of the circuit court for Sawyer County: John P. Anderson, Judge. *Affirmed.*

Before HOOVER, P.J., PETERSON and MANGERSON, JJ.

**Opinion**

¶ 1 PER CURIAM.

*1 Joseph Caraballo appeals a summary judgment dismissing his personal injury action against Sawyer County, its sheriff's department and the sheriff (collectively, "the County"). Caraballo argues that because the use of force against him was "plainly excessive," the court erred by dismissing his suit on the basis of governmental immunity. We reject Caraballo's arguments and affirm the judgment.

**BACKGROUND**

¶ 2 This case arises from Caraballo's November 2006 arrest on charges related to operating while under the influence. A sheriff's deputy stopped Caraballo's vehicle after observing erratic driving. Caraballo told the deputy he had been at a bar, and because the deputy detected the odor of intoxicants, he asked Caraballo to perform field sobriety tests. After failing two tests, Caraballo was placed under arrest and transported to the Sawyer County jail.

¶ 3 Caraballo was brought to a booking room and his left hand was cuffed to a restraint on the wall. Throughout his time in the booking room, Caraballo was verbally combative and argumentative. A deputy gave Caraballo a second-offense OWI citation and read him the "informing the accused" notice. Caraballo initially declined to submit to a breath test, then offered to take the test immediately. When told that he would have to wait five minutes, Caraballo again refused to take the test. The deputy consequently informed Caraballo he would be transported to the hospital for a blood draw, and Caraballo replied that they would not be able to draw his blood.

¶ 4 In order to transport him, Caraballo needed to be restrained in shackles. After Caraballo's handcuff was removed from the wall, however, he physically resisted attempts to shackle him. Caraballo was forced to the floor face down and ordered to place his hands behind his back. Caraballo refused and continued to physically resist. He was subsequently knelt upon by at least one deputy; knee strikes were administered to Caraballo's kidney region by two deputies and "wrist bends" were used in an effort to secure compliance. When Caraballo continued to resist, a deputy advised him that he would be pepper sprayed if he did not comply. Caraballo continued to resist and pepper spray was administered before the deputies were able to restrain him.

¶ 5 Caraballo filed suit against the County alleging the deputies: (1) violated his civil rights by using excessive force to restrain him; and (2) were negligent in restraining him. The circuit court granted the County's motion for summary judgment on the basis of governmental immunity. This appeal follows.[1]

---

[1] In his briefs, Caraballo often identifies himself as "plaintiff" or "plaintiff-appellant." Likewise, the County's brief utilizes the term "plaintiff" when referring to Caraballo. The attorneys are reminded that the rules of appellate procedure require them to identify the parties by their names, not their party designations. WIS. STAT. RULEE 809.19(1)(i). All

references to the Wisconsin Statutes are to the 2009–10 version unless otherwise noted.

## DISCUSSION

**\*2** ¶ 6 This court reviews summary judgment decisions independently, applying the same standards as the circuit court. *Smith v. Dodgeville Mut. Ins. Co.,* 212 Wis.2d 226, 232, 568 N.W.2d 31 (Ct.App.1997). Summary judgment is granted when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Green Spring Farms v. Kersten,* 136 Wis.2d 304, 315, 401 N.W.2d 816 (1987). All reasonable inferences from the undisputed facts are construed in the nonmoving party's favor. *Strozinsky v. School Dist. of Brown Deer,* 2000 WI 97, ¶ 32, 237 Wis.2d 19, 614 N.W.2d 443.

¶ 7 Here, the circuit court concluded the County was entitled to judgment as a matter of law on the basis of governmental immunity. The application of the governmental immunity statute and its exceptions to a set of facts presents a question of law that we review independently. *See Heuser v. Community Ins. Corp.,* 2009 WI App 151, ¶ 21, 321 Wis.2d 729, 774 N.W.2d 653. The governmental immunity statute, WIS. STAT. § 893.80(4), provides that governmental subdivisions are not liable for employee acts done in the exercise of their legislative, quasi-legislative, judicial or quasi-judicial functions. In other words, the statute immunizes governmental subdivisions from liability for "any act that involves the exercise of discretion and judgment." *Lodl v. Progressive N. Ins. Co.,* 2002 WI 71, ¶ 21, 253 Wis.2d 323, 646 N.W.2d 314. The defense of discretionary act immunity for public officers and employees assumes negligence and focuses on whether the action or inaction upon which liability is premised is entitled to immunity. *Id.,* ¶ 17.

¶ 8 Governmental immunity is subject to several exceptions that represent "a judicial balance struck between the need of public officers to perform their functions freely [and] the right of an aggrieved party to seek redress." *Id.,* ¶ 24 (internal quotations omitted). Caraballo asserts that two exceptions apply here: the ministerial duty exception, and the malicious, willful, and intentional action exception. We address each in turn.

I. *Ministerial Duty*

¶ 9 The ministerial duty exception abrogates immunity in circumstances where the law imposes an affirmative obligation to act in a particular way. A ministerial duty is "absolute, certain and imperative, involving merely the performance of a specific task when the law imposes, prescribes and defines the time, mode and occasion for its performance with such certainty that nothing remains for judgment or discretion." *Lister v. Board of Regents of Univ. of Wis. Sys.,* 72 Wis.2d 282, 301, 240 N.W.2d 610 (1976).

**\*3** ¶ 10 The first step in the ministerial duty analysis is to identify a source of law or policy that imposes the alleged duty. *Pries v. McMillon,* 2010 WI 63, ¶ 31, 326 Wis.2d 37, 784 N.W.2d 648. Here, Caraballo argues that various Sawyer County Sheriff's Department policy provisions relating to the use of force imposed ministerial duties on the deputies. We are not persuaded.

¶ 11 Caraballo cites the following policy provision regarding enforcement action based on legal justification:

> The requirement that legal justification be present imposes a limitation on the Officer action. In every case, an Officer must act reasonably within the limits of his authority as defined by statute and judicial interpretation, thereby insuring the rights of the individual and the public are protected.

Caraballo also cites a policy provision on the use of force that states, in relevant part:

> In order to ensure safety, security, and maintenance of order in situations in which application of force may be necessary; and in order to ensure provision of the legal rights of citizens; physical force shall only be used when absolutely necessary to gain or regain control of a resistive or assaultive subject(s) during arrest or other legitimate law enforcement functions.
>
> When application of force is required, Officer's legal authority is provided by Wisconsin State Statutes 939.45 (Privilege) and 939.48 (Self-defense and defense of others). Only the minimum amount of force

reasonably necessary to gain or regain control of a subject shall be applied. In general, the following factors ... shall be used to determine whether use of force is "objectively reasonable" in a given situation:

1. The severity of the alleged crime at issue;

2. Whether the suspect poses an imminent threat to the safety of Officers and others; and

3. Whether the suspect is actively resisting arrest or attempting to evade arrest by flight.

"Minimum force" shall be based on the steps in the Force Option Continuum of Wisconsin's Defense and Arrest Tactics system.[2] Non-physical force options (presence and dialogue), which are the lowest levels of force in the Force Option Continuum, shall be used whenever possible and feasible. Physical force options (empty hand control techniques, intermediate weapons, or firearms) shall only be used when non-physical force options have proven ineffective or would clearly be inappropriate in order to gain or regain control.

[2] Department policy identifies four levels on the "Force Option Continuum": (1) deputy attempts to gain compliance through the use of presence and dialogue; (2) deputy attempts to gain compliance through the use of empty hand control tactics, such as escort holds, compliance holds, passive countermeasures, active countermeasures and/or pepper spray; (3) deputy attempts to gain compliance through the use of an intermediate weapon, such as a police baton; and (4) deputy uses deadly force.

**\*4** ....

Application of any level of force must de-escalate when control of a subject has been gained or regained, and/or the subject has ceased resisting. Application of physical restraints, such as handcuffs, following gaining control of a subject shall not be considered use of force. Instead, such application of physical restraints shall be considered stabilization of the subject to prevent further resistance and/or injury to the subject or others. Proper follow-through procedures shall be initiated following any incident involving use of force.

¶ 12 Caraballo similarly cites what he describes as a "sheriff's department/jail division" policy providing that the Sawyer County Jail will accomplish custodial correctional functions with minimal reliance on the use of force and "[e]mployees may use reasonable force as required in the performance of their duties, but unnecessary or excessive force shall not be used." Reasonable force is then defined by the jail division policy as:

> The force that an objective, trained and competent correctional employee, faced with similar facts and circumstances, would consider necessary and reasonable to gain control of a resistive or combative inmate, defend themselves or others from physical or sexual assault, prevent inmates from escaping, or prevent destruction of property.

¶ 13 Caraballo does not claim the deputies lacked the authority to restrain him but, rather, that they used excessive force in violation of the ministerial duties imposed by the above-referenced policy provisions. The cited policy provisions, however, merely provide general guidelines on the use of force, while affording deputies discretion within the stated guidelines. These provisions do not mandate action (or inaction) on the part of the deputies "with such certainty that nothing remains for judgment or discretion." *Lister,* 72 Wis.2d at 301, 240 N.W.2d 610. These provisions, therefore, did not impose a ministerial duty on the deputies to use less force than what they deemed necessary to restrain Caraballo.

¶ 14 Regarding the use of chemical agents, Caraballo cites a department policy that relates to the use of tear gas.[3] As the County points out, however, the specific policy on pepper spray provides: "Actual use of [pepper spray] will depend on the threat assessment factors, officer-suspect factors, or special circumstances. A practical guideline is that pepper spray may be used in reaction to aggressive resistance or its threat." Here, pepper spray was used in response to Caraballo's continued physical resistance despite repeated requests for compliance. The policy provision gives deputies the discretion to use pepper spray and, therefore, did not impose a ministerial duty to refrain from using the spray in this case.

3   The provision cited by Caraballo indicates:
> To minimize injury to suspects, Officers, and others, or to avoid property damage, the use of chemical agents such as tear gas may be necessary in circumstances where a serious danger to life and property exists and other methods of control or apprehension would be ineffective or more dangerous. The commanding Officer at the situation has the responsibility for determining the need for the use of chemical agents and authority to direct its deployment. In no event, however, can chemical agents be used for crowd or riot control unless authorized by a commanding Officer or higher.

**\*5** ¶ 15 Citing another department policy requiring the deputies to file a "Use of Force Continuum Report," Caraballo contends the deputies' failure to file a report is "further evidence of inappropriate conduct and disregard of the policies of the department." Caraballo, however, fails to establish how he is harmed by the failure to file a report, especially when there is video of the incident and the respective parties' actions during the incident are undisputed. Ultimately, none of the cited policies imposed a ministerial duty abrogating the County's immunity from suit.

II. *Malicious, Willful and Intentional*

¶ 16 Although Caraballo asserts this additional exception to governmental immunity, the County properly notes that his argument is undeveloped. Emphasizing that the deputies already had overwhelming evidence of his intoxication, Caraballo simply intimates that the use of force to obtain an unnecessary blood draw was "intentional." This court declines to consider arguments that are unexplained, undeveloped or unsupported by citation to authority. *M.C.I., Inc. v. Elbin,* 146 Wis.2d 239, 244–45, 430 N.W.2d 366 (Ct.App.1988). Moreover, the exception does not apply to mere intentional conduct of a public officer or employee without more. *Bicknese v. Sutula,* 2003 WI 31, ¶ 19, 260 Wis.2d 713, 660 N.W.2d 289. "The three terms should be read in conjunction as 'malicious, willful, *and* intentional.' " *Id.* (emphasis added).

¶ 17 Although Caraballo attempts to develop his argument in the reply brief, developing an argument for the first time in a reply brief impermissibly deprives the respondent of an opportunity to respond. Thus, we need not address Caraballo's reply argument. *See Swartwout v. Bilsie,* 100 Wis.2d 342, 346 n. 2, 302 N.W.2d 508 (Ct.App.1981). In any event, the undisputed facts and the video confirm there is no room for a jury to reasonably infer that the deputies' actions were malicious, willful and intentional. Caraballo has therefore failed to establish that this alternative exception to governmental immunity applies.

Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULEE 809.23(1)(b)5.

**All Citations**

345 Wis.2d 398, 824 N.W.2d 929 (Table), 2012 WL 5392830, 2013 WI App 1

---