2018 WL 2689434
Only the Westlaw citation is currently available.
United States District Court,
N.D. Illinois, Eastern Division.

The GLOCOMS GROUP, INC., Plaintiff,
v.
CENTER FOR PUBLIC INTEGRITY, Defendant.

Case No. 17-cv-6854
|
Signed 06/05/2018

**Attorneys and Law Firms**

Andrew S. May, Chuhak & Tecson, P.C., Chicago, IL, for Plaintiff.

Constance Morrow Pendleton, Lisa Beth Zycherman, Laura Rose Handman, Davis Wright Tremaine LLP, Washington, DC, Jessica Tovrov, Goodman Tovrov Hardy & Johnson LLC, Chicago, IL, for Defendant.

## MEMORANDUM OPINION AND ORDER

John Robert Blakey, United States District Judge

*1 Plaintiff Glocoms Group sued Defendant Center for Public Integrity (CPI) after CPI published an article about Glocoms' consulting work for the U.S. government and foreign governments. Glocoms alleges that the article contained false statements that damaged its reputation. CPI moved to dismiss all claims. For the reasons explained below, this Court grants that motion.

### I. The Complaint's Allegations

Since 2000, Glocoms has done consulting work for both U.S. and foreign government agencies. [33] ¶ 1. Maurence Anguh is Glocoms' sole shareholder. *Id.* ¶ 6. CPI publishes news to the general public through its website. *Id.* ¶ 3.

In September 2016, CPI published an article about Glocoms entitled: "A Trail of Contracting Fiascos: How a Company Using a Rented Mailbox in Chicago Got Millions of Dollars from International Agencies and the U.S. Government, Despite Official Allegations of Lying and Repeated Sanctions." [33-2] at 15–18. The article's authors included one graduate student and three undergraduate students. [33] ¶ 11. The article stated, among other things, that the World Bank debarred Glocoms in 2010 from working on Bank-funded projects, but that Glocoms still received millions of dollars in contracts from U.S. agencies after the debarment. [33-2] at 15–18.

Glocoms contends that the article contains numerous false statements that hurt its "good reputation for honesty and truthfulness" in its industry. *See* [33] ¶ 8 (identifying ten allegedly false statements: 8(a)–(j) ). Glocoms also contends that CPI acted recklessly or negligently in publishing the allegedly false statements. *Id.* ¶ 9. Glocoms demanded a written retraction from CPI in October 2016, but CPI refused to issue a retraction. *Id.* ¶ 16. Glocoms sued CPI in September 2017. [1].

### II. Legal Standard

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must provide a "short and plain statement of the claim" showing that the pleader merits relief, Fed. R. Civ. P. 8(a)(2), so the defendant has "fair notice" of the claim "and the grounds upon which it rests," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957) ). A complaint must also contain "sufficient factual matter" to state a facially plausible claim to relief—one that "allows the court to draw the reasonable inference" that the defendant committed the alleged misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). This plausibility standard "asks for more than a sheer possibility" that a defendant acted unlawfully. *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013).

In evaluating a complaint, this Court accepts all well-pled allegations as true and draws all reasonable inferences in the plaintiff's favor. *Iqbal*, 556 U.S. at 678. This Court does not, however, accept a complaint's legal conclusions as true. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Rule 12(b)(6) limits this Court to considering the complaint, documents attached to the complaint, documents central to the complaint (to which the complaint refers), and information properly subject to judicial notice. *Williamson*, 714 F.3d at 436.

### III. Analysis

**\*2** CPI seeks to dismiss Glocoms' claims on three alternative grounds: (1) the Illinois Citizen Participation Act (ICPA), 735 ILCS 110/1 *et seq.*, bars Plaintiff's suit; (2) the fair report privilege protects CPI; and (3) Glocoms fails to plead that CPI acted with actual malice or even negligence. [36] at 4. This Court addresses each argument in turn.

### A. ICPA

The ICPA bars "strategic lawsuits against public participation," or SLAPPs. *Sandholm v. Kuecker*, 962 N.E.2d 418, 427 (Ill. 2012). By definition, SLAPPs have no merit because the plaintiff does "not intend to win but rather to chill a defendant's speech or protest activity" through "delay, expense, and distraction." *Id.* CPI argues that this suit qualifies as a prohibited SLAPP. [36] at 4.

Illinois courts employ a three-step analysis for identifying SLAPPs subject to dismissal under the Act: (1) the defendant acted in furtherance of its "right to petition, speak, associate, or otherwise participate in government to obtain favorable government action"; (2) the plaintiff's claims are "*solely* based on, related to, or in response to" the defendant's acts in furtherance of its constitutional rights; and (3) the plaintiff cannot produce clear and convincing evidence that the defendant did not genuinely and solely aim to procure "favorable government action." *Chi. Reg'l Council of Carpenters v. Jursich*, 986 N.E.2d 197, 201 (Ill. App. Ct. 2013) (emphasis added) (citing *Sandholm*, 962 N.E.2d at 433–34). The moving party bears the burden of proof under the first two prongs of the test; the burden shifts to the non-moving party for the third prong. *Garrido v. Arena*, 993 N.E.2d 488, 496 (Ill. App. Ct. 2013).

CPI meets its burden to show that it published the article in furtherance of its right to petition "or otherwise participate in government to obtain favorable government action." *See Jurisch*, 986 N.E.2d at 201. A review of the article, [33-2] at 15–18, makes clear that CPI published the article to draw attention to what it viewed as the federal government's failure to establish adequate safeguards for hiring contractors, and to further "the public's interest in responsible governmental contracting procedures," [44] at 3.

CPI fails, however, to meet its burden "to demonstrate affirmatively" that Glocoms filed this lawsuit *solely* as a response to CPI exercising its right to participate in government (in other words, to demonstrate that Glocoms' claims have no merit). *See Jurisch*, 986 N.E.2d at 201. Indeed, CPI fails to comprehend that it has this burden, [44] at 2, and disregards Glocoms' citation to *Sandholm*, in which the Illinois Supreme Court unambiguously interpreted the phrase "based on, relates to, or is in response to" from the ICPA "to mean *solely* based on, relating, or in response to" the moving party's acts in furtherance of its rights of petition, speech, association, or government participation, 962 N.E.2d at 430.

As *Sandholm* explained, the "paradigm" meritless SLAPP involves "developers, unhappy with public protest over a proposed development," who sue "leading critics in order to silence criticism" of the project. *Id.* at 427. Illinois courts assess multiple factors to identify a meritless lawsuit, including the suit's timing and whether the suit seeks "extremely high damages, unsupported by the facts." *See Jurisch*, 986 N.E.2d at 202 (discussing "a classic SLAPP scenario" in which a plaintiff sued a broadcaster before the final part of a four-part program aired and sought $28 million in damages "not justified by the nature of the plaintiff's alleged injuries"). Moreover, "meritless" has a specific meaning under the ICPA, as described above; a claim does not qualify as meritless simply because it might be dismissed for failure to state a claim. *See Garrido*, 993 N.E.2d at 496; *Hammons v. Soc'y of Cosmetic Prof'ls*, 967 N.E.2d 405, 410 (Ill. App. Ct. 2012).

**\*3** Here, Glocoms did not sue CPI until one year after CPI published the article, and Glocoms seeks damages "in an amount within the jurisdiction of this court and to be proven at trial." [33] at 15. CPI cites the article's statement that Anguh—Glocoms' sole shareholder—threatened legal action in December 2014 if CPI reporters continued contacting him, [44] at 3, but otherwise fails to provide "affirmative evidence" to establish that Glocoms filed this suit solely in response to CPI's protected activities, rather than as a result of its belief (whether justified or not) that the article defamed Glocoms, *see Jursich*, 986 N.E.2d at 203. Thus, this Court denies CPI's motion to dismiss Glocoms' suit under the ICPA.

### B. Fair Report Privilege

CPI next argues that the fair report privilege protects the article's statements that depend upon World Bank reports and records of judicial proceedings from Anguh's divorce in Cook County Circuit Court. [36] at 5–10. Illinois' fair

report privilege protects reports of official proceedings when the reports are "complete and accurate or a fair abridgement of the official proceeding." *Solaia Tech. v. Specialty Publ'g Co.*, 852 N.E.2d 825, 843 (Ill. 2006). A fair abridgement means one that conveys "a substantially correct account" of the proceeding to readers. *Tepper v. Copley Press, Inc.*, 721 N.E.2d 669, 675 (Ill. App. Ct. 1999) (quoting Restatement (Second) of Torts § 611, cmt. *f* (1977) ). The defendant's subjective intent in publishing the allegedly defamatory statement does not affect whether the privilege applies. *Huon v. Denton*, 841 F.3d 733, 740 (7th Cir. 2016).

Plaintiff argues that the privilege does not apply to most of the article because it protects only reports based upon the acts of U.S. governmental entities, not foreign governments or institutions like the World Bank. [43] at 9–10. Until 1988, no American court had directly addressed whether the privilege applies to reports based upon foreign governmental proceedings. *See Lee v. Dong-A Ilbo*, 849 F.2d 876, 878 (4th Cir. 1988), *cert. denied*, 489 U.S. 1067 (1989). In *Lee*, the Fourth Circuit held that the privilege does not extend to reports of foreign governments' activities because, among other reasons, foreign governments "are not necessarily familiar, open, reliable, or accountable." *Id.* at 879.

Some district courts have reached the opposite result. CPI points to *Friedman v. Israel Labour Party*, 957 F. Supp. 701, 714 (E.D. Pa. 1997), in which the court held that the fair report privilege protected a newspaper that republished an Israeli press release, and *Sharon v. Time, Inc.*, 599 F. Supp. 538, 542–43 (S.D.N.Y. 1984), in which the court implied in dicta that a magazine article based upon an Israeli commission's report was "the fair report of a judicial proceeding."

Such cases, however, remain unconvincing, especially where one case addressed the issue only briefly in dicta. Consequently, this Court follows the Fourth Circuit's reasoning in *Lee* and holds that the fair report privilege does not encompass reports of World Bank proceedings.[1]

---

[1] The Fourth Circuit's approach also accords with the Restatement, which explicitly limits the privilege's scope to "reports of the proceedings or actions of the government of the United States, or of any State or of any of its subdivisions." *See OAO Alfa Bank v. Ctr. for Pub. Integrity*, 387 F. Supp. 2d 20, 42 (D.D.C. 2005) (internal quotation marks omitted) (following *Lee* and holding that the privilege did not protect a CPI article based upon a Russian law enforcement agency's report).

Nevertheless, the privilege does protect the article's statements based upon Cook County Circuit Court records from Anguh's divorce proceedings. *See Solaia*, 852 N.E.2d at 844. Glocoms does not argue otherwise in its response. *See* [43] at 9–10. Glocoms' complaint takes issue with the article's statement that the address listed on Glocoms' website "is for a mailbox at a UPS store beneath a street-level Chicago Starbucks." [33] at 3. But that statement accurately reflects Anguh's testimony about Glocoms' address, [36-1] at 81, and thus falls within the fair report privilege, *see Solaia*, 852 N.E.2d at 844. Besides, Glocoms admitted in its complaint that it "maintains a PO Box mailing address" in Chicago's Gold Coast neighborhood. [33] at 3. Thus, this Court dismisses with prejudice Glocoms' claims based upon statement 8(a).

### C. The Merits of Glocoms' Claims

**\*4** Finally, CPI argues that Glocoms' defamation claim and related tort claims fail because Glocoms qualifies as a limited purpose public figure, but fails to plead that CPI acted with actual malice or even negligence. [36] at 8, 10–14. Glocoms argues that it is a private figure. [43] at 10–13. CPI also argues that some of the allegedly defamatory statements are not defamatory as a matter of law. [36] at 8.

To state a defamation claim under Illinois law, a plaintiff must allege that: (1) the defendant made a false statement about the plaintiff; (2) the defendant made an unprivileged publication of that statement to a third party; and (3) publication damaged the plaintiff. *Green v. Rogers*, 917 N.E.2d 450, 459 (Ill. 2009). Certain categories of statements qualify as defamatory per se, meaning they cause harm so "obvious and apparent" that a plaintiff need not plead damages. *See id.* (citing *Owen v. Carr*, 497 N.E.2d 1145, 1147 (Ill. 1986) ). Those categories include, among others: (1) words imputing that a person cannot perform "or lacks integrity in performing his or her employment duties"; and (2) words imputing that "a person lacks ability," or that otherwise prejudice the person in his or her work. *Id.*

### 1. Non-Defamatory Statements

Two of the ten statements that Glocoms' complaint labels defamatory are not about Glocoms; they address the federal government's standards for when contracting officers must consult certain databases or update the databases with information about a contractor's performance. *See* [33] at 6–7. Because CPI did not make these statements about Glocoms, the statements could not have defamed Glocoms as a matter of law. *See Huon*, 841 F.3d at 744 ("Some comments are not defamatory because they do not directly concern Huon himself, but instead relate to acquittal and guilt more generally."); *Schivarelli v. CBS, Inc.*, 776 N.E.2d 693, 701 (Ill. App. Ct. 2002).

Glocoms also challenges the article's opening line as defamatory: "In 2006, the Mongolian Finance Ministry hired a small Chicago-based consulting firm called Glocoms to strengthen its budget planning." [33] at 3. But in Glocoms' own words, that statement is true: "Glocoms was not hired by the Mongolian Finance Ministry. Glocoms was selected through a rigorous competitive international Quality Cost Based Selection." *Id.* By any common-sense reading, the latter sentence is simply a more complicated way of saying "hired."[2] The law does not require CPI to include every detail of the hiring process in its reporting. *See Wilkow v. Forbes, Inc.*, 241 F.3d 552, 555 (7th Cir. 2001) (Illinois law does not require a reporter "to include all facts" that "put the subject in the best light."). Thus, this Court dismisses with prejudice Glocoms' claims based upon statements 8(b), (i), and (j).

2   This Court, for example, selects its law clerks through a rigorous, competitive, quality-based process, but it also "hires" them.

### 2. Whether Glocoms Is a Limited Purpose Public Figure

In *Gertz v. Robert Welch, Inc.*, the Supreme Court introduced the classification of limited purpose public figures—those who inject themselves "into a particular public controversy" and therefore become public figures "for a limited range of issues." 418 U.S. 323, 351 (1974). Although determining whether Glocoms is a limited purpose public figure remains a question of federal constitutional law, the Supreme Court has not yet provided significant guidance around the precise contours of exactly who constitutes a public figure. *See Harris v. Quadracci*, 48 F.3d 247, 250 n.5 (7th Cir. 1995). Thus, because states may provide a more developed definition of "public figure," this Court may appropriately look to Illinois case law in this diversity action. *See id.* (explaining the Seventh Circuit's reliance on Wisconsin case law defining public figures).

**\*5** To determine whether a plaintiff is a limited purpose public figure, Illinois courts follow the three-part test that the D.C. Circuit articulated in *Waldbaum v. Fairchild Publications, Inc.*, 627 F.2d 1287 (D.C. Cir. 1980). *See Jacobson v. CBS Broad., Inc.*, 19 N.E.3d 1165, 1176 (Ill. App. Ct. 2014). First, a public controversy must exist, involving active public debate about an issue, "the outcome of which impacts the general public or some portion of it in an appreciable way." *Id.* (citing *Waldbaum*, 627 F.2d at 1296). A matter of "general public interest or concern" does not suffice. *Id.* Second, the plaintiff must have "undertaken some voluntary act seeking to influence the resolution of the issues involved" in the public controversy. *Id.* at 1177 (citing *Waldbaum*, 627 F.2d at 1297). Finally, the alleged defamation must relate to the plaintiff's participation in the public controversy. *Id.* (citing *Waldbaum*, 627 F.2d at 1298).

Based upon the limited record before this Court, Glocoms does not qualify as a limited purpose public figure. Even assuming a public controversy exists surrounding the federal government's contracting practices, nothing indicates that Glocoms met the second prong of the test by voluntarily acting "to influence the resolution of the issues involved" in that controversy. *See id.* at 1177. Limited purpose public figures "thrust themselves to the forefront of particular public controversies." *Gertz*, 418 U.S. at 345. Participating in a public controversy in a "trivial or tangential" way does not suffice; a plaintiff must have purposely tried to influence the outcome of a controversy or "expected, because of his position in the controversy, to have an impact on its resolution." *Waldbaum*, 627 F.2d at 1297.

CPI argues that Glocoms became a limited purpose public figure by seeking "international and U.S. government contracts, thus assuming the risk of public scrutiny." [44] at 7 (citing *CACI Premier Tech., Inc. v. Rhodes*, 536 F.3d 280, 295 (4th Cir. 2008); *Montgomery v. Risen*, 197 F. Supp. 3d 219, 255 (D.D.C. 2016) ). But the government contractor in *Rhodes* became a public figure not merely

by seeking and accepting government contracts, but by contracting to provide civilian interrogators at "the notorious U.S.-run Abu Ghraib prison in Iraq." *Rhodes*, 536 F.3d at 284–95 (detailing the contractor's "prominent role" in the controversy itself about the military abusing detainees at Abu Ghraib). The plaintiff in *Montgomery* became a limited purpose public figure where: (1) he sold controversial technology to the government that he claimed could anticipate terrorist attacks; (2) he made multiple high-profile allegations—including in an interview on NBC News—that a former Congressman accepted bribes to secure defense contracts for a certain company; and (3) the media reported extensively on the plaintiff's technology before the allegedly defamatory book came out. 197 F. Supp. 3d 219, 226, 257–58. And another case that CPI cites expressly contradicts its argument that Glocoms became a public figure simply because it sought government contracts. *See McDowell v. Paiewonsky*, 769 F.2d 942, 949 (3d Cir. 1985) (Merely "working on government contracts, like merely receiving research grants, should not transform a person into a limited purpose public figure.").

In contrast to the examples above, CPI has not shown that Glocoms contracted to do controversial work for the government, became directly implicated in a highly publicized controversy, or received any publicity aside from the CPI article at issue here. *Cf. id.* (plaintiff faced "significant public notoriety and scrutiny well before the allegedly defamatory broadcast"); *Silvester v. Am. Broad. Cos., Inc.*, 839 F.2d 1491, 1495 (11th Cir. 1988) (plaintiff had "longstanding access to the media" and publications such as the *New York Times* and *Wall Street Journal* covered the relevant controversy before the allegedly defamatory broadcast). Overall, the record at this stage of the case contains little evidence about Glocoms' activities. If the case proceeds to summary judgment or trial, more factual development might show that Glocoms qualifies as a limited purpose public figure. Presently, however, this Court cannot find that Glocoms is a limited purpose public figure.

### 3. Whether Glocoms Pleads Negligence

**\*6** As a private figure, Glocoms need only plead negligence rather than actual malice for its defamation claims to proceed. *Imperial Apparel, Ltd. v. Cosmo's Designer Direct, Inc.*, 882 N.E.2d 1011, 1020 (Ill. 2008). CPI argues that Glocoms fails to allege that CPI acted negligently in publishing the article. [36] at 12. Glocoms argues in its response that it is a private figure, but does not argue that it adequately pleads negligence. *See generally* [43].

Negligence means a "lack of ordinary care" either in doing something or in failing to do something. *See Troman v. Wood*, 340 N.E.2d 292, 299 (Ill. 1975). In the publishing context, negligence takes the form of publishing something without having "reasonable grounds" to believe its truth. *Id.*; *see also Edwards v. Paddock Publ'ns, Inc.*, 763 N.E.2d 328, 335 (Ill. App. Ct. 2001) (reversing a directed verdict for a newspaper when evidence indicated that the paper incorrectly published a yearbook photograph of the plaintiff identifying him as a suspect in a criminal investigation without verifying that the photograph represented the true suspect).

Beyond conclusory allegations that CPI published the allegedly defamatory statements "in full knowledge that they were untrue" and failed "to fully investigate," [33] at 3, Glocoms fails to plead any supporting facts that raise a reasonable inference of negligence. Glocoms alleges that CPI erred by allowing a graduate student and several undergraduate students to write the article, *id.* at 8, but Glocoms provides no authority for the proposition that using college and graduate students as reporters falls below the ordinary standard of care in publishing.

Besides, Glocoms concedes the truth of much of CPI's reporting. Glocoms admits that the World Bank debarred it and that CPI relied upon the World Bank's sources for its article. *See* [43] at 3. Fundamentally, Glocoms' real quarrel appears to be with the World Bank and the process that the World Bank used to debar Glocoms. *See id.* ("The World Bank audit was a sham" and the article "blindly accepted the World Bank's version of events."). Glocoms fails to allege a factual basis for its position that CPI lacked "reasonable grounds" to believe the truth of the article's statements when it relied upon World Bank documents to produce those statements. *See Troman*, 340 N.E.2d at 299.

Glocoms' defamation claim fails because of its failure to plead that CPI acted negligently, so Glocoms' related claims for negligence and false light also fail because they concern the same allegedly defamatory statements. *See Huon*, 841 F.3d at 745 (citing *Madison v. Frazier*,

539 F.3d 646, 659 (7th Cir. 2008) (When an unsuccessful defamation per se claim forms "the basis of a plaintiff's false-light claim, his false-light invasion of privacy claim fails as well.")). Thus, this Court dismisses the remaining portion of Plaintiff's complaint without prejudice.

### IV. Conclusion

As set forth above, this Court grants CPI's motion to dismiss [36]. Glocoms may replead the portions of the complaint dismissed without prejudice. Any amended complaint shall be filed on or before July 6, 2018. This Court strikes the June 26, 2018 motion hearing and sets the case for a status hearing on July 10, 2018 at 9:45 a.m. in Courtroom 1203. All other dates and deadlines stand.

**All Citations**

Slip Copy, 2018 WL 2689434

---

End of Document © 2019 Thomson Reuters. No claim to original U.S. Government Works.