2010 WL 2573902
Only the Westlaw citation is currently available.
United States District Court, M.D. Florida,
Tampa Division.

Said HAKKY, M.D., Plaintiff,
v.
The WASHINGTON POST COMPANY
and the Washington Post, Defendants.

No. 8:09–cv–2406–T–30MAP.
|
June 24, 2010.

**Attorneys and Law Firms**

Joseph D. Magri, Ward A. Meythaler, Merkle & Magri and Meythaler, PA, Tampa, FL, for Plaintiff.

Guy P. McConnell, Michael Byrley Colgan, Michael S. Hooker, Glenn, Rasmussen, Fogarty & Hooker, PA, Tampa, FL, Hannah M. Stott-Bumsted, Kevin T. Baine, Kevin Hardy, Williams & Connolly, LLP, Washington, DC, for Defendants.

## ORDER

JAMES S. MOODY, JR., District Judge.

*1 THIS CAUSE comes before the Court upon Defendants' Motion to Dismiss and Incorporated Memorandum of Law (Dkt, 22), Plaintiff's Response to Defendants' Motion to Dismiss (Dkt.28), Defendants' Reply Memorandum (Dkt.34), and Plaintiff's Sur–Reply Memorandum (Dkt.41). On June 21, 2010, the Court heard oral argument on Defendants' Motion to Dismiss. After consideration of the parties' filings and oral argument on these issues, the Court concludes that Defendants' Motion to Dismiss should be granted in part and denied in part.

## BACKGROUND

This case arises from a September 2008 news article published in The Washington Post that contained alleged false and defamatory statements about Plaintiff Said Hakky[1], M.D. ("Hakky"). Specifically, Hakky alleges that Defendants The Washington Post Company (the "Post Company") and The Washington Post published and generally made available for sale and gave publicity to an article entitled "Iraqi Red Crescent Paralyzed by Allegations" (the "Article"). Hakky contends that the Article stated false and damaging statements, including that Hakky was chosen to serve in Iraq because of contributions to the Republican Party, that Hakky was corrupt, that the Iraqi Red Crescent was riddled with corruption, that Hakky fled Iraq after he learned that an arrest warrant had been issued for him, that the State Department would support Hakky's extradition from the United States on criminal charges in Iraq, and that one of Hakky's associates used Red Crescent ambulances to transport weapons to al-Queda in Iraq.

[1] It appears that Hakky is also spelled Hakki.

Hakky claims that these defamatory statements as well as other statements and omissions were false and extremely damaging to Hakky's reputation and career, particularly in Florida, where he and his extended family live and his career is centered. Hakky's complaint against Defendants asserts claims of defamation and false light invasion of privacy based on the Article's defamatory statements.

This case is now at issue on Defendants' motion to dismiss. First, Defendants argue that Defendants are not subject to personal jurisdiction in Florida, because both Defendants are based in Washington, D.C., and conduct virtually all of their business there. Defendants also contend that the Post Company is principally a holding company, with no direct business operations in Florida, and that it did not publish or distribute The Washington Post, and had nothing to do with the publication of the article in question. Lastly, on this issue, Defendants argue that the Article had no connection to Florida; it reported a public controversy in Iraq and Hakky was living in the Middle East at the time the article was reported and published.

Second, Defendants argue dismissal is warranted because the complaint fails to state a claim upon which relief can be granted. Specifically, Defendants state that Plaintiff's claims do not meet the heightened standard of *Ashcroft v. Iqbal.,* ––– U.S. ––––, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), which requires more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.*

**\*2** Third, Defendants argue dismissal against the Post Company is warranted because the complaint does not contain any allegations that would support any theory of liability against the Post Company for the actions of its subsidiary, The Washington Post.

As set forth in more detail herein, the Court concludes that Plaintiff has established personal jurisdiction over The Washington Post under the Florida Long–Arm Statute and the *Calder* "effects test." Given the contrary evidence provided by the parties as to the extent of the Post Company's influence over The Washington Post, the Court concludes that additional discovery is necessary to determine whether Plaintiff has personal jurisdiction over the Post Company.

On the issue of whether Plaintiff's claims state a claim upon which relief can be granted, the Court concludes that Plaintiff's allegations, although sufficient for jurisdictional purposes against The Washington Post, do not contain adequate facts under *Iqbal* to demonstrate that Defendants acted negligently or with actual malice.

Similarly, Plaintiff's claims against the Post Company do not contain adequate facts to state a theory of the Post Company's liability for the acts of its subsidiary. Accordingly, Plaintiff's claims must be dismissed without prejudice to Plaintiff to amend.

## DISCUSSION

**I. Motion to Dismiss—Personal Jurisdiction**

**A. Standard of Review**
A federal court sitting in diversity may properly exercise personal jurisdiction over a defendant only if the plaintiff meets the requirements of the state long-arm statute and the Due Process Clause of the Fourteenth Amendment. *Posner v. Essex Ins. Co., Ltd. .,* 178 F.3d 1209, 1214 (11th Cir.1999); *Venetian Salami Co. v. Parthenais,* 554 So.2d 499, 502 (Fla.1989). Thus, Plaintiff must show Defendants' activities and contacts in Florida satisfy Florida's long-arm statute to obtain personal jurisdiction. If the Court concludes that personal jurisdiction exists under Florida's long-arm statute, it must next consider whether Defendants' contacts with the state of Florida are sufficient to satisfy the Due Process Clause of the Fourteenth Amendment. *Venetian Salami Co.,* 554 So.2d at 501 (mere proof of any one of the several circumstances enumerated in Fla. Stat. § 48.193 does not automatically satisfy the federal constitutional requirement of minimum contacts). The due process inquiry requires the Court to determine whether Defendants have minimum contacts with the forum state and whether the exercise of jurisdiction would "offend traditional notions of fair play and substantial justice." *Internet Solutions Corp. v. Marshall,* 557 F.3d 1293, 1295–96 (11th Cir.2009).

**B. Florida's Long–Arm Statute**
Florida's long-arm statute, Fla. Stat. § 48.193(1)(b), provides that a defendant, "whether or not a citizen or resident of this state," is subject to the jurisdiction of Florida courts if he "commit[s] a tortious act within this state." Florida courts construing this provision have noted that the alleged tortfeasor's physical presence in Florida is not required. *Wendt v. Horowitz,* 822 So.2d 1252, 1260 (Fla.2002). Rather, jurisdiction may be found in certain instances where an out-of-state defendant commits a tort that produces an injury in Florida. *Id.*

**\*3** The Eleventh Circuit has held that "[i]n our technologically sophisticated world permitting interstate business transactions by mail, wire, and satellite signals, physical presence by the nonresident defendant is not necessary for personal jurisdiction in the forum state." *Cable/Home Communication Corp. v. Network Productions, Inc.,* 902 F.2d 829, 857 (11th Cir.1990) (*citing Burger King,* 471 U.S. at 476). *See generally Brennan v. Roman Catholic Diocese of Syracuse New York,* 2009 WL 941765 (11th Cir. April 9, 2009)[2] (vacating district court's dismissal for lack of personal jurisdiction where plaintiff suffered injury in Florida arising from defendant's alleged intentional misconduct in New York and its fraudulent representations directed to him in Florida); *Horizon Aggressive Growth, L.P. v. Rothstein–Kass, P.A.,* 421 F.3d 1162, 1168 (11th Cir.2005) (reversing district court's dismissal for lack of personal jurisdiction under Florida's long-arm statute where complaint alleged defendant's communications from California to plaintiff in Florida intended to deceive and defraud plaintiff); *Acquardo v. Bergeron,* 851 So.2d 665, 671 (Fla.2003) (finding jurisdiction under Fla. Stat. § 48.193(1)(b) where an out-of-state defendant allegedly defamed a Florida resident during a single phone call made into Florida).

2  Unpublished opinions are not binding precedent in the court; however they may be cited as persuasive authority. *See* 11th Cir. R. 36–2.

There does not appear to be any dispute that Plaintiff has met this first jurisdictional requirement. Plaintiff's complaint states that the circulation in Florida of both paper and electronic versions of the Article, which contained defamatory statements, constituted the commission of a tortious act within Florida. Defendants seem to quibble with this requirement only to the extent that they argue that the allegations of the complaint fail to state a cause of action. Although this argument will be discussed in more detail, the Court concludes that for purposes of satisfying Florida's long-arm Statute, the complaint is sufficient to state a claim against The Washington Post.

### C. Due Process Analysis

**1. Minimum Contacts**

Having concluded the tortious act provision of Florida's long-arm statute is satisfied, the Court must analyze the long-arm jurisdiction under the due process requirements of the federal constitution. "A forum may exercise specific jurisdiction over a nonresident defendant if the defendant has purposefully directed his activities to forum residents and the resulting litigation derives from alleged injuries that arise out of or relate to those activities." *Cable/Home Communication Corp., supra,* at 857 (*quoting Burger King, supra,* at 474) (internal quotations omitted). Determining minimum contacts requires the Court to ascertain whether Defendants "purposefully availed" themselves of the privileges of conducting activities within the forum state, thus invoking the benefits and protections of its laws. *Hanson v. Denckla,* 357 U.S. at 253. Even one significant single act or meeting in the forum state may be sufficient to establish personal jurisdiction. *Burger King Corp.,* 471 U.S. at 475; *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 417, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984); *Williams Electric Co., Inc. v. Honeywell, Inc.,* 854 F.2d 389, 392–93 (11th Cir.1988); *Sea–Lift, Inc. v. Reinadora Costarricense de Petroleo, S.A.,* 792 F.2d 989, 993 (11th Cir.1986).

**\*4** As already stated above, in our technologically sophisticated era, physical presence by the nonresident defendant is unnecessary for personal jurisdiction in the forum state. *Cable/Home Communication Corp., supra,* at 857 (*citing Burger King,* 471 U.S. at 476). Resolution of the minimum contacts issue depends whether the case "arises out of" or "relates to" the defendant's contacts with Florida. *Helicopteros,* 466 U.S. at 414 n. 8. Intentional torts may support the exercise of personal jurisdiction over a nonresident defendant who has but one single act supporting jurisdiction so long as it creates a "substantial connection" with the forum. *Licciardello v. Lovelady,* 544 F.3d 1280, 1288 n. 8 (11th Cir.2008) (holding that "[w]here the internet is used as a vehicle for the deliberate, intentional misappropriation of a specific individual's trademarked name or likeness and that use is aimed at the victim's state of residence, the victim may hale the infringer into that state to obtain redress for the injury. The victim need not travel to the state where the website was created or the infringer resides to obtain relief out-of-state" (*citing Calder v. Jones,* 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984)).

In *Calder,* a California plaintiff sued a Florida newspaper and two of its employees in California state court arising from the publication of an allegedly libelous article about the Plaintiff. The Court stated that "in judging minimum contacts, a court properly focuses on the relationship among the defendant, the forum and the litigation" and found that "[a]n individual in California need not go to Florida to seek redress from persons who, though remaining in Florida, knowingly cause the injury in California." *Calder,* at 788–90. Following *Calder,* the Eleventh Circuit in *Licciardello* noted that many courts apply the *Calder* "effects test" when a plaintiff's claim involves an intentional tort. *Licciardello,* 544 F.3d at 1286 (citations omitted). In fact, even more recently, the Eleventh Circuit applied the *Calder* "effects test" to conclude a district court erred in finding a lack of sufficient minimum contacts with Florida. The Eleventh Circuit stated:

> [S]o long as the purposeful conduct creates a "substantial connection" with the forum, even a single act can support jurisdiction over the non-resident defendant who has no other contacts with the forum. *Burger King Corp.,* 471 U.S. at 475. Intentional torts are such acts and may support the exercise of personal jurisdiction over the nonresident

defendant who has no other contacts with the forum. *Licciardello,* 544 F.3d at 1285. In *Licciardello,* we held that the commission of an intentional tort by a nonresident expressly aimed at a resident, the effects of which were suffered by the resident in the forum, satisfied the "effects" test established in *Calder v. Jones,* 465 U.S. 783, 789–90, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984). 544 F.3d at 1288. The "effects" test provides that due process is satisfied when the plaintiff brings suit in the forum where the "effects" or "brunt of the harm" caused by the defendant's intentional tortious activity was suffered. *Licciardello,* 544 F.3d at 1285–87. Therefore, personal jurisdiction is proper over a defendant who commits an intentional and allegedly tortious act expressly aimed at the plaintiff in the forum state. *Id.* at 1288.

**\*5** Brennan, at \*4 (*citing Licciardello, supra,* 544 F.3d 1280); *New Lenox Ind. v. Fenton,* 510 F.Supp.2d 893, 904 (M.D.Fla.2007) (recognizing that "a number of courts" have held that "where a defendant's tortious conduct is intentionally and purposefully directed at a resident of the forum, the minimum contacts requirement is met, and the defendant should anticipate being haled into court in that forum").

In this case, it is undisputed that the Article stated that Hakky settled in Florida, where he became a U.S. citizen, developed a urology practice, taught at the University of South Florida, and became known for his patented work on prosthetic penile implants. Defendants argue, however, that Plaintiff cannot demonstrate that the alleged defamatory statements were aimed at the forum state. Defendants point to the fact that the focal point of the Article was charges of corruption and mismanagement in the operation of the Iraqi Red Crescent, not actions in Florida, and that the Article was aimed at Iraq, not Florida, or Washington, DC, which is The Washington Post's circulation area, and where decisions are made about the U.S. government's role in Iraq. Defendants also point to the fact that Hakky was not living in Florida at the time the Article was published and that The Washington Post did not interview any sources in Florida or do any reporting in Florida for the Article. Moreover, at the time the Article was reported and published, Defendants contend that The Washington Post understood Hakky to be living in the Middle East, not in Florida. Defendants also point to the fact that when Hakky was interviewed, he was in Lebanon.

Hakky's affidavit states that Amit Paley ("Paley"), who conducted interviews with Hakky for the Article, knew that Hakky and his wife and children lived and had lived in the Tampa Bay area for years, that Hakky's children attended school in the Tampa Bay area, that Hakky was a staff urologist at Bay Pines in the Tampa Bay area, that Hakky had an Assistant Professor position at the University of South Florida ("USF"), that Hakky did not intend to permanently stay in Iraq and would return to his positions at Bay Pines and USF, that during the period of Paley's interviews with Hakky, Hakky had been ordered back to Bay Pines, and that Hakky had filed legal action in Florida against Bay Pines. Defendants do not dispute these facts.

Upon consideration of all of these facts, the Court concludes that The Washington Post "purposefully availed" itself of the privileges of conducting activities within the forum state, thus invoking the benefits and protections of its laws. The record reflects that Hakky stated to Paley the extent of his ties to Florida and it is evident that The Washington Post knew that the "brunt of the harm" to Hakky's reputation would be suffered in Florida, where he and his family lived and where he intended to return to his positions at Bay Pines and USF. Hakky did not need to be living in Florida during the time of his interviews for the Article or during the time that the Article was published in order to suffer this harm. This is so, despite the fact that The Washington Post may have no other contacts with the forum.

**2. Fair Play and Substantial Justice**

**\*6** Even where a defendant has purposefully established minimum contacts with the forum state, the court must also evaluate jurisdiction in light of several other factors to determine whether the exercise of jurisdiction comports with "traditional notions of fair play and substantial justice." *International Shoe Co.,* 326 U.S. at 320. When assessing fairness, courts look to various

WESTLAW  © 2019 Thomson Reuters. No claim to original U.S. Government Works.   4

factors: the burden on the defendant, the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, and the interstate judicial system's interest for the most efficient resolution of controversies. *Brennan,* at *4 (*citing World–Wide Volkswagen,* 444 U.S. at 292).

The Court concludes that Florida has a very strong interest in affording its residents a forum to obtain relief from intentional misconduct of nonresidents causing injury in Florida and that the Constitution is not offended by Florida's assertion of its jurisdiction over such nonresident tortfeasors. Thus, holding The Washington Post amenable to personal jurisdiction in Florida does not contravene basic notions of fair play and substantial justice. Accordingly, Defendants' Motion to Dismiss The Washington Post for lack of personal jurisdiction will be denied.

As to the Post Company, the Court concludes that the record is unclear as to whether there is personal jurisdiction in Florida over it. Plaintiff points to evidence suggesting that The Washington Post is still a division of the Post Company, that the Post Company played a role in publishing the Article, and that The Washington Post newspaper is an operating division of the Post Company. Defendants point to evidence suggesting that, pursuant to a corporate restructuring in 2003, the Post Company no longer exercises control over The Washington Post. Defendants argue that Plaintiff cannot prove that The Washington Post manifests no separate corporate interests of its own and functions solely to achieve the purposes of the Post Company.

In light of these factual inconsistencies, the Court will permit Plaintiff to obtain discovery concerning facts that could establish personal jurisdiction over Defendant the Post Company. This jurisdictional discovery shall occur simultaneously with the upcoming merits discovery. After the discovery period has expired, and at the time that summary judgment motions are due to be filed, the Post Company may file a renewed motion to dismiss based on a lack of personal jurisdiction. Importantly, the Post Company's participation in this case to the point of a renewed motion to dismiss or for summary judgment as to jurisdiction shall not be deemed a waiver of its position on jurisdiction.

**II. Motion to Dismiss—Failure to State a Claim**

Defendants argue that Plaintiff's complaint should be dismissed because Plaintiff's claims do not meet the heightened standard of *Ashcroft v. Iqbal.* ––– U.S. ––––, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), which requires more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* The Court agrees that, under *Iqbal,* Plaintiff failed to allege sufficient facts demonstrating negligence or actual malice on the part of Defendants. Although Plaintiff does point to specific statements in the Article that are false or misleading, Plaintiff does not state how Defendants made these statements negligently, or facts supporting that they were made with malice. Thus, Plaintiff's claims must be dismissed without prejudice, with leave to amend within twenty (20) days from the date of this Order.

*7 Defendants also argue that dismissal is necessary against the Post Company because the complaint does not contain any allegations that would support any theory of liability against the Post Company for the actions of its subsidiary, The Washington Post. The Court agrees. Indeed, the complaint points to absolutely no facts suggesting an agency theory of liability. Thus, Plaintiff's claims against the Post Company must be dismissed without prejudice, with leave to amend within twenty (20) days from the date of this Order.

It is therefore ORDERED AND ADJUDGED that:

1. Defendants' Motion to Dismiss and Incorporated Memorandum of Law (Dkt, 22) is hereby GRANTED IN PART AND DENIED IN PART.

2. The Court concludes that there is personal jurisdiction over Defendant The Washington Post.

3. As set forth herein, after the discovery period has expired, and at the time that summary judgment motions are due to be filed, the Post Company may file a renewed motion to dismiss or motion for summary judgment based on a lack of personal jurisdiction. This is assuming that Plaintiff successfully states a claim against the Post Company.

4. As set forth herein, Plaintiff's claims are dismissed without prejudice. Plaintiff has twenty (20) days from the date of this Order to file an amended complaint.

5. Plaintiff's Contingent Motion or Request to File Amended Complaint if Necessary (Dkt.37) is hereby DENIED AS MOOT.

**DONE** and **ORDERED.**

**All Citations**

Not Reported in F.Supp.2d, 2010 WL 2573902

**End of Document**

© 2019 Thomson Reuters. No claim to original U.S. Government Works.