IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

| | |
|---|---|
| ANDREW L. COLBORN,<br><br>            Plaintiff,<br><br>  vs.<br><br>NETFLIX, INC.; CHROME MEDIA LLC,<br>F/K/A SYNTHESIS FILMS, LLC;<br>LAURA RICCIARDI; AND MOIRA<br>DEMOS,<br><br>            Defendants. | Civil No.: 19-CV-484 |

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS BY
<u>CHROME MEDIA LLC, LAURA RICCIARDI, AND MOIRA DEMOS</u>**

Service of process in a civil action is not a mere technicality; rather, it is an "elementary and fundamental requirement of due process" that is essential for a court to acquire personal jurisdiction over a defendant. *Johnson v. Cintas Corp. No. 2*, 2012 WI 31, ¶ 24, 339 Wis. 2d 493, 506, 811 N.W.2d 756, 762-63 (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)). Similarly, statutes of limitations serve "critical public policy interests" by protecting defendants in such actions from the prospect of unlimited potential liability for conduct that occurred years earlier. *Dakin v. Marciniak*, 2005 WI App 67, ¶¶ 10-11, 280 Wis. 2d 491, 501-02, 695 N.W.2d 867, 871-72. Such protections take on *constitutional* significance in a defamation action, such as this one, where the challenged "conduct" is the dissemination of information about a matter of legitimate public concern and the "chilling effect" from the ongoing threat of litigation over stale claims is palpable. *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 300-01 (1964).

Plaintiff Andrew Colborn had three years to begin this lawsuit after defendants allegedly telecast defamatory statements about him in the documentary television series *Making a Murderer*. He had three years and ninety days to serve that lawsuit on them. Yet he waited until the last day of the applicable, three-year statute of limitations period to file suit, and then waited until the last two weeks of the ninety-day service period to attempt service on Chrome Media LLC, Laura Ricciardi, and Moira Demos.

Ultimately, those attempts failed, and now he is out of time. The Court should dismiss this lawsuit against Chrome, Ricciardi, and Demos under Federal Rule of Civil Procedure 12(b)(5), and it should do so with prejudice because the statute of limitations has run.[1]

---

[1] If this motion is not granted, in whole or in part, the moving defendants expressly reserve their right to seek dismissal under Federal Rule of Civil Procedure 12(b)(6). *See Ennenga v. Starns*, 677 F.3d 766, 772-73 (7th Cir. 2012).

## **PROCEDURAL HISTORY**

Colborn filed this defamation action on December 17, 2018—the day before the statute of limitations expired[2]—by filing a Complaint against eight defendants, including Netflix, Inc., Chrome, Ricciardi, and Demos, in in the Circuit Court for Manitowoc County. *See* Dkt. 1-1. The Complaint alleged defamation, intentional infliction of emotional distress, and negligence claims arising from a documentary television series that Chrome, Ricciardi, and Demos produced and that Netflix distributed titled *Making a Murderer* ("*MaM*" or the "series").

Colborn filed an Amended Complaint on March 4, 2019. *See* Dkt. 1-2. As far as the public record reveals, Colborn made no attempt to serve the Complaint on any defendant between December 17, 2018, the date he filed it, and March 4, 2019, the date he filed the Amended Complaint.

The Amended Complaint voluntarily dismissed a number of defendants, leaving only Netflix, Chrome, Ricciardi, and Demos. *Id.* This memorandum refers to them collectively as "Defendants." It refers specifically to Chrome, Ricciardi, and Demos (but not Netflix) as the "Producer Defendants." The Amended Complaint reframed its three causes of action as "Defamation—Actual Malice," "Negligence (In the Alternative)," and "Intentional Infliction of Emotional Distress." *Id.*

Colborn served the Amended Summons and Amended Complaint on Netflix on March 5, 2019. *See* Dkt. 20.

---

[2] The statute of limitations for defamation and other tort claims in Wisconsin is three years. Wis. Stat. § 893.57. As the Complaint acknowledges, Netflix first disseminated the documentary series from which Colborn's claims arise on December 18, 2015. Dkt. 1-1 ¶ 36.

3

The ninety-day service deadline imposed by Wis. Stat. § 801.02(1) expired no later than March 18, 2019.[3] On March 21, Colborn filed an Affidavit of Service claiming that a process server "personally served" the Summons and Complaint and Amended Summons and Complaint on Chrome's registered agent, Tal Benari, on March 16. *See* Dkt. 21.

On April 3, Defendants removed this case to federal court. *See* Dkt. 1.

On April 10, Colborn filed a document purporting to be a "proof of publication" of an amended (but not the original) summons in the *Los Angeles Times* on four occasions in March and April 2019. *See* Dkt. 25.

The Producer Defendants now bring this motion to dismiss under Federal Rule of Civil Procedure 12(b)(5) on the ground that Colborn's attempts to serve process on them were insufficient as a matter of law. They seek dismissal with prejudice because the statute of limitations ran on December 18, 2018. As a result, the suit against the Producer Defendants is time-barred and any attempt by Colborn to re-file and re-serve it would be futile.

## FACTUAL BACKGROUND

As of the date of this motion, Colborn has filed a "proof of publication" of the amended summons but not of the original summons, and has not filed any Affidavit of Mailing regarding alleged service on Ricciardi or Demos. Meanwhile, the Affidavit of Service claiming personal service on Benari, Chrome's registered agent, is demonstrably false. For the reasons explained below, none of the Producer Defendants have been properly served so as to subject them to this Court's personal jurisdiction.

---

[3] Because ninety days from December 17 fell on March 17, a Sunday, Colborn had until Monday, March 18 to effect service. *See* Wis. Stat. § 801.15(1)(b).

I.  **Attempts to Serve Ricciardi and Demos**

Ricciardi and Demos, who share the same residence in Los Angeles, California, are not aware that Colborn made any attempt to serve them prior to March 5, when service was effected on Netflix. *See* Declaration of Laura Ricciardi ("Ricciardi Decl.") ¶ 5, Declaration of Moira Demos ("Demos Decl.") ¶ 5.

As of the date of this motion, no one has ever personally served any summons or complaint (original or amended) on either Ricciardi or Demos. Ricciardi Decl. ¶ 6, Demos Decl. ¶ 6. Security cameras capture the front gate and door of their residence. Ricciardi Decl. ¶ 7, Demos Decl. ¶ 7. After learning that Netflix had been served, Demos checked the video from these security cameras and saw that two persons she did not recognize arrived at their home, one on March 6 and the other on March 7. Demos Decl. ¶ 7.

Neither Ricciardi nor Demos were present at their residence on March 6 or 7. From March 4 to March 19, they were either traveling in Illinois or visiting Demos' elderly parents elsewhere in California. Ricciardi Decl. ¶ 8, Demos Decl. ¶ 8. On March 19, Demos returned home and was in Los Angeles, at her residence, from March 19 through March 25. *Id.* Decl. ¶ 8. Ricciardi returned home on March 22. Ricciardi Decl. ¶ 8. At all times when Ricciardi and Demos were away from their residence, there was no one else present at their home. *Id.*; Demos Decl. ¶ 8.

On March 19, after returning from visiting her parents, Demos discovered two large envelopes bearing the return address of Colborn's counsel, one addressed to each of them, which had been delivered by mail to their residence while they were traveling. Demos Decl. ¶ 9. Inside the envelopes were copies of the original Summons and Complaint, the Amended Summons and

5

Complaint, and the Publication Summons and Amended Publication Summons. *Id.* & Ex. A. The envelopes were post-marked March 11. *Id.* & Ex. A.

On April 10, Colborn filed in this Court a document purporting to be a "proof of publication" of the Amended Publication Summons in the *Los Angeles Times* on March 13, 20, 27 and April 3. *See* Dkt. 25. Until that filing, neither Ricciardi nor Demos were aware that Colborn had caused publication of any summons. Ricciardi Decl. ¶ 9; Demos Decl. ¶ 10.

## II.    Attempts to Serve Chrome

On March 21, 2019, Colborn filed in state court a document captioned "Affidavit of Service" executed by Emilio Gonzalez Zarate, who identifies himself as a process server. *See* Dkt. 21. The Zarate Affidavit asserts that Zarate "personally served" process on Benari, Chrome's registered agent for service of process in California, on March 16. *Id.*

That affidavit is demonstrably false. Benari has submitted a sworn declaration to this Court attesting that he has never been personally served with process in this action by Zarate or anyone else. *See* Benari Declaration ("Benari Decl.") ¶ 6.

Specifically, in his affidavit, Zarate states that he "personally served" Benari on March 16, a Saturday, at an address that corresponds to Benari's home in Los Angeles. Dkt. 21 at 1-2. Benari, who is president of his homeowners' association, lives in a condominium complex in which both the pedestrian and vehicle entrances are secured by locked metal gates posted with "NO TRESPASSING" signs warning that the complex is closed to the public and that unauthorized entry is prohibited and subjects the trespasser to possible arrest. Benari Decl. ¶¶ 8-9 & Ex. A. The Zarate Affidavit does not state the time of day Zarate claims to have personally served Benari, but Benari was not at home for much of March 16 and was in fact several miles

away. *Id.* ¶ 10. In short, Benari was not personally served with process, at any location, on March 16 or at any other time. *Id.* ¶¶ 12-13.[4]

Colborn apparently attempted to serve Chrome, through Benari, prior to March 16, but without success. First, on or about March 7, two days after Netflix was served, a process server visited the office of the business where Benari is employed and left a copy of the original Summons and Complaint and the Amended Summons and Complaint with the firm's receptionist. Declaration of Natalia Canaan ("Canaan Decl.") ¶¶ 6-7. Neither the receptionist nor anyone else signed for the documents, the receptionist was not and did not claim to be in charge of the office, and she specifically told the process server that she was not authorized to accept deliveries on Benari's behalf. *Id.* ¶ 6; Benari Decl. ¶ 15.

Second, a process server visited the same office on or about March 12 and similarly left behind the Summons and Complaint and Amended Summons and Complaint. Again, neither the firm's receptionist nor anyone else signed for the documents, the receptionist was not and did not claim to be in charge of the office, and she was not authorized to accept deliveries on Benari's behalf. Declaration of Danielle Rodriguez ("Rodriguez Decl.") ¶¶ 4-6; Benari Decl. ¶ 18.

Third, Benari received two mailings containing copies of the summonses and complaints, as well as a publication summons and amended publication summons. The first was post-marked March 11, at which time the process server had left copies of the original and amended papers with the receptionist on just one occasion. Benari Decl. ¶ 21 & Ex. D. The second was post-marked March 12, the same day that the process server left copies of the original and amended papers with a receptionist for the second time. Benari Decl. ¶ 22 & Ex. E.

---

[4] Benari has retained receipts from March 16 that document his whereabouts at various times on that day. Benari Decl. ¶ 11 & Ex B.

In a tacit acknowledgement that service had not been effected on March 16 (as the Zarate Affidavit claims) or at any time before the ninety-day service period ended, on March 29—*eleven days* after the service deadline and *eight days* after Colborn filed the Zarate Affidavit—a process server again arrived at the office where Benari is employed. Declaration of Dominque Bianchi ("Bianchi Decl.") ¶ 5. When the receptionist informed him that Benari was not in, the process server again left behind copies of the summonses and complaints. *Id.*

Until Colborn filed the "proof of publication" on April 10, Benari was not aware that Colborn had caused publication of any summons in any newspaper. Benari Decl. ¶ 23.

## **ARGUMENT**

This action should be dismissed with prejudice as against Chrome, Ricciardi, and Demos under Federal Rule of Civil Procedure 12(b)(5) because none of the three Producer Defendants have been properly served and the statute of limitations has now expired.

### I. **Plaintiff Failed to Comply With Wisconsin's Strict Requirements for Service**

Where, as here, a defendant challenges service of process via a motion to dismiss under Rule 12(b)(5), "[t]he plaintiff bears the burden to demonstrate that the district court has jurisdiction over each defendant through effective service." *Cardenas v. City of Chicago*, 646 F.3d 1001, 1005 (7th Cir. 2011).[5] The sufficiency of process prior to removal is governed by state law. *Romo v. Gulf Stream Coach, Inc.*, 250 F.3d 1119, 1122-23 (7th Cir. 2001).

Under Wisconsin law, a court obtains personal jurisdiction over a defendant only via proper service of the summons and complaint. *Johnson*, 2012 WI 31, ¶ 23, 339 Wis. 2d at 506,

---

[5] Wisconsin state law also places the burden on the plaintiff to prove that a defendant was properly served. *Richards v. First Union Secs., Inc.*, 290 Wis. 2d 620, 630-32, 714 N.W.2d 913, 919-20 (2006); *Am. Family Mut. Ins. Co. v. Royal Ins. Co. of Am.*, 167 Wis. 2d 524, 533, 481 N.W.2d 629, 632 (1992).

8

811 N.W.2d at 762. A plaintiff has ninety days after an action is filed to perfect service. *Id.* 2012 WI 31, ¶ 23, 339 Wis. 2d at 506, 811 N.W.2d at 762; Wis. Stat. § 801.02(1). That deadline cannot be extended. *Id.* § 801.15(2)(a). Colborn commenced this action on December 17, 2018, and the 90-day period for service expired on March 18, 2019.

A defendant who is a natural person must be served *personally*; if the defendant cannot be personally served despite "reasonable diligence," substitute service may be made by leaving the summons and complaint "at the defendant's usual place of abode" in the presence of a competent family member over age thirteen or a competent adult residing there. *Id.* § 801.11(1). A corporate defendant not authorized to transact business in Wisconsin can be served by personally serving "an officer, director or managing agent," and in lieu of personal service, the process may be left at the agent's office "with the person who is apparently in charge of the office." *Id.* § 801.11(5).

Wisconsin law also provides for service on natural persons or corporate entities by publication and mailing if the plaintiff cannot effect personal service despite "reasonable diligence." *Id.* § 801.11(1)(c) & 5(b). The relevant statutory provision requires both (1) mailing of authenticated copies of the publication summons and complaint to the defendant's address and (2) publication of a "class 3 notice." *Id.* § 801.11(1)(c). The relevant statutes describing the criteria for such a notice, Wis. Stat. §§ 985.01(1m), 985.02(1) & 985.07(3), require a copy of the publication summons to be published once a week for three weeks in "a newspaper likely to give notice in the area or to the person affected." *Grand Chute Holdings, LLC v. Wild Truffle Artisan Pizzeria*, No. 17-C-665, 2017 WL 5991742, at *2 (E.D. Wis. Dec. 4, 2017) (citations omitted); *Loppnow v. Bielik*, 2010 WI App 66, ¶¶ 22-23, 324 Wis. 2d 803, 817-20, 783 N.W.2d 450, 457-59 (2010).

Because "a defendant's constitutional right to due process is at stake, 'Wisconsin requires strict compliance with its rules of statutory service, even though the consequences may appear to be harsh.'" *Johnson*, 2012 WI 31, ¶ 25, 339 Wis. 2d at 507, 811 N.W.2d at 763 (quoting *Am. Family*, 167 Wis. 2d at 531, 481 N.W.2d. at 631). In the absence of service that satisfies the statutory requirements, a Wisconsin court does not obtain personal jurisdiction over a defendant "even where the defendant has actual notice of the summons and complaint." *Horrigan v. State Farm Ins. Co.*, 106 Wis. 2d 675, 681, 317 N.W.2d 474, 477 (1982).

### A. Ricciardi and Demos Were Not Served

No court has acquired personal jurisdiction over Ricciardi and Demos because neither of them has been properly served with process. Service by publication and mailing is available *only* if the defendant has not been personally served despite "reasonable diligence." Wis. Stat. § 801.11(1)(c). The "reasonable diligence" standard requires the plaintiff to "exhaust with due diligence any leads or information reasonably calculated to make personal service possible." *Loppnow*, 2010 WI App 66, ¶¶ 12-15, 324 Wis. 2d at 812-14, 783 N.W.2d at 454 (citation omitted). One or two failed attempts at personal service, for example, are insufficient to justify substitute service by publication, because "Wisconsin requires more effort than that." *Cunningham v. Montes*, 883 F.3d 688, 689 (7th Cir. 2018); *see also, e.g.*, *Heaston v. Austin*, 47 Wis. 2d 67, 74, 176 N.W.2d 309, 313 (1970) (affirming dismissal for insufficient service where process server tried only twice to personally serve defendant before plaintiff attempted substitute service).

Colborn did not exercise reasonable diligence in attempting personal service on Ricciardi or Demos before attempting service by publication and mailing. Indeed, Colborn has not

provided *any* evidence, such as an affidavit in conformance with Wis. Stat. § 801.10(4)(a), that he tried even once to effect personal service before attempting substitute service.

As previously noted, the ninety-day period for service expired on March 18. Colborn filed the Amended Complaint and obtained amended summonses on March 4—only two weeks before the window for service of the original complaint closed. Dkt. 1-2.[6] Netflix was served the next day. Dkt. 20. Colborn does not claim to have served any defendant before that date and there is no evidence suggesting that he made any effort to do so. Even assuming that Colborn first attempted personal service on Ricciardi and Demos at the same time he served Netflix, waiting to begin attempting service until seventy-seven days into the ninety-day timeframe (and more than three years after the conduct sued upon) is neither reasonable nor diligent under Wisconsin law.

Nor can Colborn credibly argue that Ricciardi and Demos attempted to evade service. By the time Colborn apparently first began attempting service on Ricciardi and Demos, they were traveling, and they did not return to their California home until after the ninety-day service window had closed. Ricciardi Decl. ¶ 8; Demos Decl. ¶ 8. During the trip, there was no one at their residence to accept service. Ricciardi Decl. ¶ 8; Demos Decl. ¶ 8. As a result, because Colborn waited until two weeks before the service deadline to make any effort to serve Ricciardi and Demos, he was unable to serve them personally, the preferred method under Wisconsin law. *See* Wis. Stat. § 801.11(1).

---

[6] The filing of an amended complaint does not restart the service clock or "relate back" to an original complaint that has become a legal nullity because it was not timely served. *See Bartels v. Rural Mut. Ins. Co.*, 2004 WI App 166, ¶¶ 15-17, 275 Wis. 2d 730, 739-40, 687 N.W.2d 84, 88-89 (amendment cannot revive complaint not served within 90 days).

Moreover, even if Colborn had exercised reasonable diligence in attempting to personally serve Ricciardi and Demos before he obtained publication summonses (he did not), he failed to accomplish proper service by publication and mailing. First, Colborn has not submitted any affidavit regarding attempts at personal service or affidavit of mailing executed by the person who mailed the complaints and summonses to Ricciardi and Demos, as contemplated by Wis. Stat. § 801.10(4).

More significantly, the "proof of publication" he filed proves that he published only the *amended* publication summons in the *Los Angeles Times*, not the publication summons for the original complaint. Dkt. 25 at 1.[7] Under Wisconsin law, service of an amended summons and complaint after the expiration of the statute of limitations does not confer jurisdiction over a defendant that has not been served with the original summons. *E.g.*, *McMillan-Warner Mut. Ins. Co. v. Kauffman*, 159 Wis. 2d 588, 592-94, 465 N.W.2d 201, 203-04 (Ct. App. 1990) ("[C]ompetency to act with respect to a named defendant is lost if personal jurisdiction over the defendant is not acquired by service of the summons and complaint within" the statutory deadline for service.).

In *Bartels v. Rural Mutual Insurance Co.*, for example, the plaintiffs filed suit a day before the limitations period expired but never served one defendant. 2004 WI App. 166, ¶¶ 3-4, 275 Wis. 2d at 733-34, 687 N.W.2d at 86. Months later, the plaintiffs amended their complaint and timely served the amended complaint and amended summons on that defendant. *Id.* 2004 WI App. 166, ¶ 5, 275 Wis. 2d at 734, 687 N.W.2d at 86. However, the Wisconsin Court of Appeals affirmed dismissal, holding that because the *original* complaint and summons had not been

---

[7] Colborn had obtained publication summonses for both the original and amended complaints. *See* Dkts. 18 & 19.

12

properly served and the limitations period had run, service of an *amended* complaint and summons could not revive the time-barred claim. *Id.* 2004 WI App 166, ¶¶ 15-17, 275 Wis. 2d at 739-40, 687 N.W.2d at 88-89. Likewise, Colborn's claims against Ricciardi and Demos expired when he did not serve the original complaint on them either personally or by publication by March 18. Service of the amended summons could not cure that fundamental failing.

Ricciardi and Demos were not properly served with process under Wisconsin law. As a result, this Court does not have personal jurisdiction over them and this action must be dismissed against them with prejudice.

### B. Chrome Media Was Not Properly Served

The Zarate Affidavit is both insufficient to show proper service and demonstrably false. As noted above, under both Wisconsin and federal law, "the burden of proving a defendant is subject to jurisdiction of the court is on the plaintiff." *Richards*, 290 Wis. 2d at 630-32, 714 N.W.2d at 919-20 (internal marks and citation omitted); *see also Cardenas*, 646 F.3d at 1005; *Am. Family Mut. Ins. Co.*, 167 Wis. 2d at 533, 481 N.W.2d at 632. Colborn has failed to meet this burden with respect to Chrome and, as a result, this action should be dismissed as against it as well.

Simply put, the Zarate Affidavit is a nullity because the "personal" service it references (albeit in the most conclusory manner) never actually happened. Benari, Chrome's registered agent, has executed a sworn declaration both affirming that he was *not* personally served and providing corroborating details demonstrating that fact. Specifically, Benari's condominium complex is secured by locked metal gates posted with "NO TRESPASSING" signs and Benari did not unlock them for Zarate, or anyone else, on March 16. Benari Decl. ¶¶ 8-13 & Ex. A. In addition, Benari was not at home for much of the day that Saturday and was in fact several miles

away. *Id.* ¶ 10. The Zarate Affidavit, in contrast, contains no corroborating details explaining how service actually occurred, such as a physical description of Benari or his home, much less an explanation of how he gained entrance to the secure complex.

Beyond the demonstrable falsity of the Zarate Affidavit, it fails to satisfy the statutory requirements for a proper certificate of service in any event. *See Dietrich v. Elliott*, 190 Wis. 2d 816, 826-27, 528 N.W.2d 17, 21 (Ct. App. 1995) (concluding that affidavit that lacked information required by statute showed alleged service was insufficient). Specifically, Wisconsin requires that the process server's affidavit state "that the server is an adult resident of the state of service . . . and is not a party to the action; [and] that the server knew the person served to be the defendant named in the summons." Wis. Stat. § 801.10(4)(a). The Zarate Affidavit contains none of that information. *See generally* Dkt. 21. As the Wisconsin Court of Appeals has explained, Section 801.10(4)(a) "sets out in clear and unequivocal terms what the affidavit or certificate of service must recite in order to constitute proof of sufficient service," and an affidavit that omits the required information does not satisfy Wisconsin's requirement of strict adherence to the letter of the service statutes. *Dietrich*, 190 Wis. 2d at 826-27, 528 N.W.2d at 21.

Colborn's attempts to serve Chrome by publication were insufficient for the same reasons they were insufficient as to Ricciardi and Demos: Colborn did not attempt personal service with "reasonable diligence" and the original summons was never published.

Because Colborn has not and cannot meet his burden to show proper service on Chrome, it should be dismissed from this case as well.

## II. Dismissal of Chrome, Ricciardi, and Demos Should Be With Prejudice Because the Statute of Limitations Has Expired

Ordinarily, where a plaintiff has failed to effect proper service, the court may dismiss the case under Rule 12(b)(5) without prejudice. *See, e.g.*, *Sikhs for Justice v. Badal*, 736 F.3d 743, 751 (7th Cir. 2013); *Koss Corp. v. Pilot Air Freight Corp.*, 242 F.R.D. 514, 518 (E.D. Wis. 2007). But where, as here, the statute of limitations has expired, dismissal must be with prejudice because "the limitations defense . . . will make the case just as dead as a disposition on the merits." *Cardenas*, 646 F.3d at 1007-08 (citation omitted) (dismissal with prejudice proper where both statute of limitations and service deadline had expired).

Wisconsin's statute of limitations for tort actions such as this one is three years. Wis. Stat. § 893.57. Under Wisconsin law, which controls this case prior to removal, a suit filed just before the limitations cutoff that is not served within the ninety-day deadline is a legal nullity. *Bartels*, 275 Wis. 2d at 739-40, 687 N.W.2d at 88-89 (affirming dismissal of action filed one day before expiration of limitations period but not served on defendant within time for service).

It is undisputed that Netflix first disseminated *Making a Murderer* on December 18, 2015. Dkt. 1-2 ¶ 15. This action was filed on December 17, 2018, one day before the limitations period expired. Dkt. 1-1 at 1, 3. As a result, this action against Chrome, Ricciardi and Demos is a legal nullity and Colborn is barred from pursuing it against them.

## **CONCLUSION**

Chrome Media LLC, Laura Ricciardi and Moira Demos respectfully request that this Court dismiss all claims as against them with prejudice.

Dated: May 10th, 2019             Respectfully submitted,


  *s/ James A. Friedman*
James A. Friedman, SBN 1020756
Godfrey & Kahn, S.C.
One East Main Street
Suite 500
Madison, WI 53703-3300
T:  (608) 284-2617
F. (608) 257-0609
jfriedman@gklaw.com

Lee Levine
Matthew E. Kelley
Ballard Spahr LLP
1909 K Street, NW, Suite 1200
Washington, D.C. 20006-1157
T: (202) 508-1110
F: (202) 661-2299
levinel@ballardspahr.com
kelleym@ballardspahr.com

Leita Walker
Ballard Spahr LLP
2000 IDS Center, 80 South 8th Street
Minneapolis, MN 55402-2119
T:  (612) 371-6222
F:  (612) 371-3207
walkerl@ballardspahr.com

*Counsel for Netflix, Inc.; Chrome Media LLC; Laura Ricciardi; and Moira Demos*

20601941.1