2016 WL 3552143
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

ONEWEST BANK N.A., Plaintiff,
v.
Buteau LOUIS, Daniel C. Ogbonna, et al., Defendants.

15-CV-00597 (PAC) (BCM)
|
Signed June 22, 2016

**Attorneys and Law Firms**

Kelly Dana Schneid, Priya Swaminathan, Rachel Beth Drucker, Robert Wilk, Windels, Marx, Lane and Mittendorf LLP, New York, NY, for Plaintiff.

Donald Nicholas Rizzuto, Wu & Kao, P.L.L.C., New York, NY, for Defendants.

Daniel C. Ogbonna, Bronx, NY, pro se.

### REPORT AND RECOMMENDATION TO THE HON. PAUL A. CROTTY

BARBARA MOSES, United States Magistrate Judge

**\*1** Plaintiff OneWest Bank N.A., now known as CIT Bank, N.A. (CIT) brought this action to foreclose a mortgage encumbering property located at 905 East 218th Street, Bronx, New York (the Property) and now seeks summary judgment against defendant mortgagors Daniel C. Ogbonna and Buteau Louis, together with various items of ancillary relief. Ogbonna does not oppose the motion. Louis filed opposition papers, but does not dispute the validity or terms of the note and mortgage, or the mortgagors' default. Instead, Louis asserts that he was never effectively served with process. However, he waived that affirmative defense by failing to raise it in his answer or by pre-answer motion. Moreover, Louis is indisputably amenable to suit in this forum and had actual notice of this action and ample opportunity to defend it on the merits. For these reasons, I respectfully recommend that CIT's motion be granted to the extent it seeks summary judgment regarding its right to foreclosure and sale of the Property. I also recommend that the caption of this action be amended to reflect the new name of the plaintiff and the true names of the defendants sued as "John Doe No. 1" through "John Doe No. 4," and that the case be dismissed as against the remaining "Doe" defendants.

CIT also requests that the Court ascertain the amounts due to plaintiff under the subject mortgage, enter a default judgment against the named defendants other than Ogbonna and Louis, none of whom ever appeared or answered the Complaint, strike the answers of defendants Ogbonna and Louis, and enter a judgment of foreclosure and sale appointing a special master (or "remanding to a Magistrate Judge") to conduct the sale. However, CIT has failed to provide sufficient information from which the precise amounts due to it can be computed. Entry of a judgment of foreclosure and sale would therefore be premature. CIT has also failed to plead sufficient facts to support a default judgment against any of the non-appearing defendants. Moreover, there is no need to "strike" the answer of a defendant against whom summary judgment is granted. I therefore recommend that CIT's motion be denied as to these items of relief.

### BACKGROUND

**I. Procedural History**
CIT filed its Complaint (Dkt. No. 1) on January 28, 2015, naming as defendants Ogbonna, Louis, and ten "John Doe" defendants, described as "occupants, persons in possession, licensees, tenants, or others who may be in possession" of the Property. Compl. ¶ 8. The occupants of the Property were later identified by CIT's process server as Nicole Johnson, Johnson's daughters Elizha Mbengue and Kadezha Mbengue, and Pancheta Gordon. *See* Leggio Aff., filed Nov. 20, 2015 (Dkt. No. 58-1), ¶¶ 6, 11. CIT also sued CitiMortgage, Inc. (CitiMortgage), alleging that it had an unspecified "interest" in the Property, and the New York City Environmental Control Board (ECB), alleging that it had an interest as a "judgment creditor." Compl. ¶¶ 6-7. None of the defendants other than Ogbonna and Louis answered the Complaint.

**\*2** Ogbonna, appearing pro se, filed an answer on March 23, 2015. (Dkt. No. 8.) Magistrate Judge James L. Cott, to whom this case was referred for pretrial management, held an initial conference on June 16, 2015. CIT appeared through counsel. *See* June 16, 2015 Tr. (Dkt. No. 63), at 1:1-9. Louis and Ogbonna also attended, without counsel. *Id.* at 12:21-23. CIT informed Judge Cott that it intended to seek certificates of default as to the non-appearing defendants, including Louis, and move for summary judgment as to Ogbonna. *Id.* at 4:16-22. Judge Cott directed Louis to answer the Complaint by June 26, 2015, to avoid default, and set July 27, 2015 as the date for CIT to file its summary judgment motion. *See* Order dated June 16, 2015 (Dkt. No. 14) at 1.

During the June 16 conference, in the context of a discussion as to whether the Property was producing rental income, the parties disagreed as to where Ogbonna and Louis resided. Ogbonna stated that he and Louis both lived at the Property and had done so since they purchased it in 2006. Tr. at 11:1-3, 22:16-23, 24:2-3. CIT disputed this assertion. *Id.* at 22:24-23:1, 25:7-8. CIT s counsel explained that Louis's most recent loan modification applications were submitted on a non-owner-occupied basis, *id.* at 10:12-15; that a "door knocker" who visited the Property on January 29, 2015 reported that it was not owner-occupied, *id.* at 22:24-23:1; and that Louis's pay stubs reflected his address as 334 Montgomery Street, Apt. 7D, in Brooklyn, New York (the Brooklyn Address), which was also the address he listed on his 2010 tax returns. *Id.* at 24:8, 25:7-8. Ogbonna and Louis responded that the Brooklyn Address was Louis's previous residence, and was still the residence of his parents and siblings. *Id.* at 23:14, 24:7-21. Ogbonna suggested that both men had at times directed their mail to the Brooklyn Address because of incidents in which mail was stolen from the Property. *Id.* at 23:6-12. He continued, "But now everything's been corrected." *Id.* at 23:12-13. Neither defendant raised any issue at the conference concerning service of process or personal jurisdiction.

Louis retained counsel and, on June 26, 2015, filed an answer raising ten affirmative defenses, including "lack of personal jurisdiction over the answering defendant." Louis Ans. (Dkt. No. 15) ¶ 4. The answer did not disclose the factual basis of that defense. Louis did not assert the defense of ineffective service of process. Nor did he allege any facts that would support such a defense. He did not move at any time to dismiss the Complaint for lack of personal jurisdiction, ineffective service of process, or on any other grounds.

On July 22, 2015, CIT requested an adjournment of the summary judgment schedule, which Judge Cott granted, so that it could consider a further loan modification. (Dkt. No. 21.) The modification negotiations were apparently unsuccessful. On October 6, 2015, CIT filed the instant motion, seeking summary judgment regarding its right to foreclosure and sale and a computation of damages. *See* Pl. Not. of Mtn. (Dkt. No. 43), at 2-3. Plaintiff also requests that the Court "strike" defendants' answers, grant default judgments against the defendants who never answered, amend the case caption in light of plaintiff's name change, make various findings related to the sale of the Property, and enter a judgment of foreclosure and sale.

In addition to its Notice of Motion, CIT filed an affirmation signed by its attorney, Robert G. Wilk (Dkt. No. 44); an affidavit signed by its Assistant Secretary Donivan Hodge (Dkt. No. 45); a memorandum of law (Dkt. No. 46); a statement of material facts pursuant to Local Civil Rule 56.1 (Dkt. No. 47); and proofs of notice and service (Dkt. Nos. 48-50). The exhibits to the attorney affirmation include affidavits of service attesting that on March 3, 2015, CIT served defendant Louis with the Summons, Complaint, and Civil Cover Sheet in this action, along with a Certificate of Merit and a 1303 Notice ("Help for Homeowners in Foreclosure"), by delivering those documents to his son Davis Louis, a "person of suitable age and discretion," at 2207 Bressler Drive, Reading, Pennsylvania (the Reading Address), which the process service described as defendant Louis's place of residence. Wilk Aff. Ex. C, at 2. On March 10, 2015, CIT followed up by mailing the same documents to defendant Louis at the Reading Address. *Id.* at 3. As to Ogbonna, CIT submitted an affidavit reflecting that he was served at an apartment in Corona, New York, through his uncle, John Chukwu. *Id.* at 5.

**\*3** Ogbonna did not submit any opposition to CIT's motion.

On November 6, 2015, Louis, through counsel, filed his own affidavit (Dkt. No. 53); an affirmation signed by his attorney Donald N. Rizzuto (Dkt. No. 54); a memorandum of law (Dkt. No. 55); and a counter-statement of material facts (Dkt. No. 56). In his counter-statement, Louis either admits or states that he "cannot confirm" most of the facts asserted by CIT, including that he owned the Property; that he executed the underlying note and mortgage; and that he defaulted on the terms of the note and mortgage by failing to make payments when due. *See* Louis 56.1 St. ¶¶ 11—12, 19. The only basis for Louis's opposition to the motion is his contention that he was never served with the Summons, Civil Cover Sheet, Certificate of Merit, or 1303 Notice in

accordance with Fed. R. Civ. P. 4(e)(2)(B) or N.Y.C.P.L.R. 308(2). *See id.* ¶ 29; Louis Aff. in Opp. ¶ 3; Rizzuto Aff. in Opp. ¶ 3; Louis Mem. in Opp., at 2.[1]

According to Louis, he has never resided at the Reading Address where CIT delivered the summons and related documents to his son. Louis Aff. in Opp. ¶¶ 6, 10. Rather, Louis asserts, he has resided since 2006 at his "primary residence," which is the Property itself. *Id.* ¶ 13. Louis admits that he owns the home in Reading with his wife, but explains that they "parted ways" shortly after purchasing the property in 2004 and are "now estranged." *Id.* ¶ 8. Although his wife and three children live at the Reading Address, Louis only makes "day visits four or five times a year to see [his] children." *Id.* ¶¶ 9-11. Therefore, Louis argues, the Reading Address was never his "dwelling" or "usual place of abode," as required to effect substituted service on him there pursuant to Fed. R. Civ. P. 4(e)(2)(B) or N.Y.C.P.L.R. 308(2). *See* Louis Mem. in Opp. at 2, 4. Louis adds that he properly preserved his defense by pleading lack of personal jurisdiction in his answer. *Id.*

Plaintiff's reply brief and supporting affidavits, filed November 20, 2015, describe what CIT did to determine where defendant Louis resided and why it concluded that he was properly served at the Reading Address rather than the Property. *See* Pl. Reply Mem., filed Nov. 20, 2015 (Dkt. No. 59), at 6-8. Joseph Leggio, a process server, attests that on February 13, 2015 he attempted service at the Property in the Bronx, but was told by occupant Nicole Johnson that Ogbonna and Louis did not reside there. Leggio Aff. ¶¶ 5-11, 15-16. Rosemary A. Lamanna, a Vice President of the process server company that assigned Leggio, attests that she ran a skip trace, which revealed that Louis's most recent address was the Reading Address. Lamanna Aff. (Dkt. No. 58-3) ¶¶ 1, 5-8, 10. Chad Spotts, the process server who delivered the summons and related documents to Davis Louis at the Reading Address, attests that he asked Davis Louis whether defendant Louis was his father, and whether defendant Louis resided at that address, and that Davis Louis answered "yes" to both questions. Spotts Aff. (Dkt. No. 58-2) ¶¶ 3-8, 10.

**\*4** On January 13, 2016, this action was reassigned to the undersigned magistrate judge for general pretrial management and report and recommendation on dispositive motions.

## II. Undisputed Facts

CIT holds a note (Note) secured by a mortgage (Mortgage) on the Property, which is owned by defendants Ogbonna and Louis and consists of a parcel, designated as Block 4689, Lot 31 on the Tax Map of Bronx County, on which there is a two-family residence. Pl. 56.1 St. ¶ 11; Hodge Aff. ¶¶ 1-5 & Exs. A-B. *See also* Louis Aff. in Opp. ¶ 11 ("I and Daniel Ogbonna purchased a 2-family home at 905 East 218th Street, Bronx, New York"). Both Louis and Ogbonna signed the Mortgage, but only Louis (who apparently had a better credit rating, *see* Tr. at 11:19-21) signed the Note. Flodge Aff. ¶¶ 4-5 & Exs. A, B.

The original principal amount of the loan was $440,000; however, following several periods of delinquency, the parties modified the terms of the Note in 2008, 2010, and 2012. Pl. 56.1 St. ¶¶ 13-15; Hodge Aff. ¶ 4 & Ex. A, at 1; *id.* Exs. C-E. As a result, by August 27, 2012, the principal amount had increased to $590,963.61. Hodge Aff. Ex. E, at 4. That amount included $103,260.77 of "deferred" (non interest-bearing) principal and $487,702.84 of interest-bearing principal. *Id.* at 5.

Louis has failed to make monthly payments in accordance with the terms of the Note and its modifications since September 1, 2013. Pl. 56.1 St. ¶ 19; Hodge Aff. ¶¶ 12-13. Under the Note, this constitutes a default and triggers plaintiff's right to accelerate the loan by requiring the immediate payment in full of all outstanding principal and interest. Pl. 56.1 St. ¶ 18; Hodge Aff. Ex. A ¶ 7(c), Ex. B ¶ 22, Ex. E ¶ 4; *see also* Louis 56.1 St. ¶ 18. CIT exercised its right to accelerate the loan upon filing this lawsuit on January 28, 2015, and sent and filed the required default and pre-foreclosure notices under New York law, *see* N.Y.R.P.A.P.L. § 1304, and the terms of the Note and Mortgage. Pl. 56.1 St. ¶¶ 20-22; Hodge Aff. ¶ 24.

## DISCUSSION

### I. Summary Judgment

#### A. Standard

A court may grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law." Fed. R. Civ. P. 56(a); see also *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Holt v. KMI-Cont'l, Inc.*, 95 F.3d 123, 128-29 (2d Cir. 1996). The moving party bears the initial burden of informing the court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine dispute as to any material fact. Fed. R. Civ. P. 56(c); *Celotex*, 477 U.S. at 322; *Koch v. Town of Brattleboro*, 287 F.3d 162, 165 (2d Cir. 2002). The court must construe the evidence in the light most favorable to the non-moving party and must draw all reasonable inferences in the non-moving party's favor. See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *In re "Agent Orange" Prod. Liab. Litig.*, 517 F.3d 76, 87 (2d Cir. 2008).

If the moving party meets its initial burden, the burden then shifts to the non-moving party to establish a genuine dispute of material fact. *Celotex*, 477 U.S. at 322; *Beard v. Banks*, 548 U.S. 521, 529 (2006); *Santos v. Murdock*, 243 F.3d 681, 683 (2d Cir. 2001). At this stage, the non-moving party cannot rely on mere allegations or denials of the factual assertions of the moving party. See, e.g., *Amaker v. Foley*, 274 F.3d 677, 680-81 (2d Cir. 2001). Moreover, "conclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment." *Kulak v. City of New York*, 88 F.3d 63, 71 (2d Cir. 1996). The non-moving party must present specific, admissible evidence in support of its contention that there is a genuine dispute as to the material facts. See *Celotex*, 477 U.S. at 324; *Presbyterian Church of Sudan v. Talisman Energy, Inc.*, 582 F.3d 244, 264 (2d Cir. 2009) (quoting *Raskin v. Wyatt Co.*, 125 F.3d 55, 66 (2d Cir. 1997)); *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998); see also Fed. R. Civ. P. 56(c)(2). Furthermore, the evidence must be sufficient to permit a reasonable jury to return a verdict in the non-moving party's favor. See *Anderson*, 477 U.S. at 242, 248; *Byrnie v. Town of Cromwell, Bd. of Educ.*, 243 F.3d 93, 101 (2d Cir. 2001).

**\*5** In this District, these principles are incorporated into Local Civil Rule 56.1, which requires that a party moving for summary judgment submit a statement with numbered paragraphs setting forth "the material facts as to which the moving party contends there is no genuine issue to be tried." The opposing party must specifically controvert each numbered paragraph of the movant's statement in a corresponding paragraph of its own. Local Civil Rule 56.1(c). If the opposing party fails to do so, that paragraph is deemed admitted. Id.; see also *Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003) (if the non-moving party fails to submit a Rule 56.1 counter-statement, all material facts offered by the movant, if supported by the record, will be deemed admitted); *Galasso v. Eisman, Zucker, Klein & Ruttenberg*, 310 F. Supp. 2d 569, 574 (S.D.N.Y. 2004) ("If a party opposing a motion for summary judgment does not submit a Rule 56.1 Statement, the factual assertions contained in the movant's Statement are deemed admitted and uncontroverted."). Each statement by the moving or opposing party, "including each statement controverting any statement of material fact, must be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)." Local Civil Rule 56.1(d).

Where the party opposing summary judgment merely states that he "cannot confirm" a fact set forth in the moving party's Rule 56.1 statement, without more, those facts are deemed admitted. See *Universal Calvary Church v. City of N.Y.*, 2000 WL 1745048, at \*2 n.5 (S.D.N.Y. Nov. 28, 2000) (plaintiffs' assertion that they can "neither admit nor deny" facts asserted in defendants' Rule 56.1 statement was insufficient to establish dispute); *Aztar Corp. v. N.Y. Entm't, LLC*, 15 F. Supp. 2d 252, 254 n.1 (E.D.N.Y. 1998) ("responses of 'lack knowledge or information sufficient to either admit or deny' " are insufficient to create a material dispute of fact for purposes of a summary judgment motion).

### B. Prima Facie Case

Under New York Law, which governs CIT's claims in this diversity action, "summary judgment in a mortgage foreclosure action is appropriate where the Note and Mortgage are produced to the Court along with proof that the Mortgagor has failed to make payments due under the Note." *Regency Sav. Bank, F.S.B. v. Merritt Park Lands Assocs.*, 139 F. Supp. 2d 462, 465 (S.D.N.Y. 2001) (citations omitted); accord *Onewest Bank, N.A. v. Rosado*, 2016 WL 3198305, at \*2 (S.D.N.Y. June 7, 2016) (citing *Wells Fargo Bank, N.A. v. Morgan*, —— N.Y.S.3d ——, 2016 WL 2993966, at \*2 (2d Dep't May 25, 2016)); *Vill. Bank v. Wild Oaks Holding, Inc.*, 601 N.Y.S.2d 940, 941 (2d Dep't 1993). "Once the plaintiff has established its prima facie case by presenting the Note, Mortgage and proof of default, the Mortgagee has a presumptive right to foreclose, which can only be overcome by an affirmative showing by the Mortgagor." *Regency Sav. Bank*, 139 F. Supp. 2d at 465-66; accord *Wells Fargo Bank, N.A. v. Ullah*, 2015 WL 3735230, at \*4 (S.D.N.Y. June 15, 2015); *United Cent. Bank v. Shree Ganesh Props., LLC*, 2012 WL 5992803, at \*2 (S.D.N.Y. Nov. 7, 2012); *United States v. Freidus*, 769 F. Supp. 1266, 1277 (S.D.N.Y. 1991).

CIT has established its prima face case by submitting copies of the Note and Mortgage, together with the affidavit from its Assistant Secretary attesting to defendants' failure to make any payments under the Note since September 2013. Hodge Aff. ¶¶ 12-13 & Exs. A, B. Moreover, defendant Louis admits executing the Note and Mortgage, and does not dispute defaulting. See Louis 56.1 St. ¶¶ 11 11-12, 19.

Because there are "no disputed material facts that question the existence of these elements," the only issue remaining is whether any defendant has made a showing sufficient to overcome CIT's presumptive right to foreclose. One West Bank, FSB v. Lynch, 2014 WL 5471009, at *3 (E.D.N.Y. Oct. 28, 2014). See also Resolution Trust Corp. v. J.I. Sopher & Co., Inc., 1995 WL 489697, at *2 (S.D.N.Y. Aug. 15, 1995) ("As plaintiff has proven the obligation and the default, defendant must demonstrate a bona fide defense in order to withstand plaintiff's motion for a judgment of foreclosure."). No defendant here has made such a showing.

*6 Ogbonna did not file any opposition to CIT's motion. A party who fails to file any papers in opposition to a summary judgment motion cannot raise the necessary "genuine dispute" to prevent the entry of summary judgment. See 1st Bridge LLC v. William Lee Freeman Garden Apts. LLC, 2011 WL 2020568, at *1 (S.D.N.Y. May 23, 2011) ("Because the defendants have not opposed the plaintiff's motion, they have not met their burden of producing evidence of a question of fact regarding any defenses to foreclosure."). Ogbonna thus cannot defeat summary judgment.

### C. Louis's Defense

Louis did file opposition papers, but he admits that he executed the Note and Mortgage and does not dispute that he defaulted on the debt. Rather than contest CIT's prima facie case, he relies upon a single affirmative defense, insufficient service of process, predicated on his contention that the Reading Address was not his "dwelling" or "usual place of abode," as required for effective substituted service under Fed. R. Civ. P. 4(e)(2)(B) or N.Y.C.P.L.R. 308(2). See Louis Aff. in Opp. ¶¶ 3, 6; Louis Mem. in Opp. at 4 (arguing that since the Reading Address "never was the answering defendant's 'permanent residence,' " substituted service upon a person of suitable age and discretion at that address "amounts to sewer service rendering service of process ineffective under federal and New York State laws").[2]

The defense of insufficient service of process "must be asserted in the responsive pleading if one is required," or, alternatively, in a motion "made before pleading." Fed. R. Civ. P. 12(b). A defendant's failure to plead insufficient service of process in his answer, or assert it in a pre-answer motion, constitutes a waiver of the defense. Fed. R. Civ. P. 12(h)(1); Fed. Home Loan Mortg. Corp. v. Dutch Lane Assocs., 775 F. Supp. 133, 136-37 (S.D.N.Y. 1991). Louis has therefore waived the sole defense he attempts to raise in opposition to summary judgment. He never moved to dismiss the Complaint on this (or any other) basis, and although he included ten affirmative defenses in his answer, insufficient service of process was not among them. See Louis Ans. ¶¶ 4-13. Nor did he plead any facts that would support such a defense. Id.

In his memorandum of law Louis acknowledges that the defense of insufficient service of process "may be waived by a party's failure to raise it," but claims that he "interposed a timely Answer to the Complaint wherein he preserved his affirmative defense of the Court's lack of jurisdiction over his person." Louis Mem. in Opp. at 3. Louis is mixing apples and oranges. He did assert, in his answer, that the Court "lacks personal jurisdiction over the answering defendant." Louis Ans. ¶ 4. However, lack of personal jurisdiction and insufficient service of process are distinct defenses. Compare Fed. R. Civ. P. 12(b)(2) ("lack of personal jurisdiction") with Fed. R. Civ. P. 12(b)(5) ("insufficient service of process"). "As one would reasonably infer from the fact that the Rules list separately the defenses of lack of personal jurisdiction and insufficiency of service of process, these two defenses, while often related, are not identical." Santos v. State Farm Fire & Casualty Co., 902 F.2d 1092, 1095 (2d Cir. 1990). See also Prokopiou v. Long Island R.R. Co., 2007 WL 1098696, at *5 (S.D.N.Y. Apr. 9, 2007) (" '[O]btaining personal jurisdiction and making service of process, although closely related, are not synonymous.' ") (quoting Albert Levine Assocs., Inc. v. E.H. Hudson, 43 F.R.D. 392, 393 (S.D.N.Y. 1967)).

*7 It is well-settled in this Circuit that the defense of insufficient service of process is waived where no motion is made on that ground and where, as here, the answer does nothing more than "baldly state that the court lacked personal jurisdiction" over the answering defendant. Santos, 902 F.2d at 1095-96 (noting that the answer did not contain any "mention of service of process at all, much less a specification of the manner in which service was insufficient"). See also Overseas Private Inv. Corp. v. Furman, 2012 WL 967458, at *5 (S.D.N.Y. Mar. 14, 2012) (answer alleging generally that "[t]he Court lacks

jurisdiction over the person of defendant" was "insufficient to preserve the distinct defense of improper service of process"); *Geagan v. City Univ. of N.Y.*, 2011 WL 3370395, at *10 (S.D.N.Y. July 14, 2011) (where defendants' answer, "rather than identifying the defects in [plaintiff's] attempted service of process as a defense," simply "claimed that '[t]he Court lacks personal jurisdiction over some or all of the defendants,' " defendants "waived their defective service defense"), *adopted by* No. 09 Civ. 3271 (LAK), slip op. at 1 (S.D.N.Y. Sept. 14, 2011); *Goldstein v. Laurent*, 2010 WL 4237582, at *2 (S.D.N.Y. Oct. 15, 2010) (defendants waived the defense of insufficient service of process because the answer alleged merely that "the court does not have jurisdiction over the person of the defendants"); *Echeverria v. Krystie Manor, LP*, 2009 WL 857629, at *6 (E.D.N.Y. Mar. 30, 2009) ("[a]sserting a lack of jurisdiction defense does not raise or preserve a defense of insufficiency of service of process"); *Dutch Lane*, 775 F. Supp. at 137 ("we conclude that the raising of a 'lack of personal jurisdiction' defense does not, under Rule 12, concurrently raise or preserve an insufficiency of service of process defense.").

Moreover, "it is clear" that Louis is amenable to suit in New York, *Dutch Lane*, 775 F. Supp. at 137, because he owns the Property that is the subject of this action, which is in Bronx County, and works for Broadway Contracting Corp., in New York County. Louis Aff. ¶ 12. Both locations are not only within the State of New York; they are within this District. "Like other courts, this court might be more reluctant to find a waiver if other jurisdictional issues such as amenability to suit in the chosen forum were present." *Dutch Lane*, 775 F. Supp. at 137. No such issues are present here. Moreover, like the defendants in *Dutch Lane*, Louis received "actual notice" of the proceedings, appeared for a conference, retained counsel, and "interposed an answer without suffering any prejudice from alleged defects in the service of process." *Id.* at 138. Therefore, even if I were to find that Louis had preserved an insufficient service of process defense, the Court's "discretionary authority would be best exercised to retain the case," leading to the same practical result. *Id.*[3]

Louis has not raised any viable questions of fact concerning CIT's right to foreclose. His reliance on an insufficient service of process defense is misplaced because he forfeited it. Moreover, he is unquestionably amenable to suit in this District, and he has appeared, through counsel, and litigated on the merits. Therefore, like Ogbonna—who filed no opposition at all—Louis has failed to overcome plaintiff's presumptive right to foreclose. For these reasons, I respectfully recommend that the District Judge grant CIT's motion for summary judgment as to its right to foreclosure and sale.

## II. Damages Calculation

**\*8** In addition to an adjudication of its right to foreclose the Property, CIT seeks a computation of the amounts due to it, including unpaid principal and accrued interest under the Note, recoverable costs, and escrow advances, all in the aggregate amount of $625,404.61 as of June 30, 2015, with additional interest from that date to the date of judgment computed "at the contract rate." *See* Pl. Not. of Mtn., at 2; Pl. 56.1 St. ¶ 27; Hodge Aff. ¶ 37. Hodge attests that the sum of $625,404.61 includes unpaid principal in the amount of $582,933.11, accrued interest in the amount of $19,738.76, recoverable costs in the amount of $9,069.70, and advances made by plaintiff to cover escrow shortages in the amount of $13,663.04. Hodge Aff. ¶¶ 38-45. Although plaintiff filed its summary judgment motion on October 6, 2015, all of these figures are calculated as of June 30, 2015. *Id.* ¶¶ 37, 39, 41.

### A. Only Louis Signed the Note

The Hodge Affidavit asserts that "Mortgagors" owed CIT $625,404.61 as of June 30, 2015. Hodge Aff. ¶ 45. However, although both Louis and Ogbonna signed the Mortgage, only Louis signed the Note. *See id.* ¶¶ 4-5 & Exs. A, B. The Mortgage states that if one of the Mortgagors "does not sign the Note," that person is signing the Mortgage only to give his "rights in the Property to Lender under the terms of this Security Instrument," but is not "personally obligated to pay the Sums Secured." *Id.* Ex. B ¶ 13. Any judgment for principal or interest due under the Note, therefore, should run against defendant Louis only. CIT is or should be aware of this distinction, since it was pointed out in *CIT Bank, N.A. v. Dambra*, 2015 WL 7422348, at *2 (E.D.N.Y. Sept. 25, 2015).

### B. Principal and Interest

As of August 27, 2012, the date of the third and final Loan Modification Agreement, Louis's "New Principal Balance" was $590,963.61, including $103,260.77 in "Deferred Principal," which did not bear any interest.

Hodge Aff. Ex. E ¶¶ 2-3. This left an "Interest Bearing Principal Amount" of $487,702.84, which would bear interest at 2% until May 1, 2015, then at 3% until May 1, 2016, and 4% until May 1, 2017. See id. Ex. E ¶ 3.

By June 30, 2015, according to CIT, there was an unpaid principal amount of $582,933.11 owing on the Note, plus accrued interest in the amount of $19,738.76. Hodge Aff. ¶ 38. As support for this calculation, Hodge attaches a 90-page computer "screenprint" which he describes as "summarizing the total debt calculation for Mortgagors as of June 30, 2015." Id. ¶ 37 & Ex. T. That screenprint, however, is largely incomprehensible, at least to this Court. Although it states on the first page that the "PRIN BAL" of the loan was $582,933.11 as of June 30, 2015, it does not explain how that figure was derived. In particular, the screenprint does not appear to show what payments were (and were not) made on the loan since the third modification in 2012, or in what amounts, or how they were credited. Moreover, although Hodge states that no payment was made on September 1, 2013 or thereafter, Hodge Aff. ¶¶ 12-13, CIT does not provide any information concerning the payments (if any) made prior to that date.[4] This information is "necessary to enable the Court to verify plaintiff's calculation" concerning the unpaid principal as of June 30, 2015. *OneWest Bank, N.A. v. Hawkins*, 2015 WL 5706945, at *8 (E.D.N.Y. Sept. 2, 2015), *adopted by* 2015 WL 5706953 (E.D.N.Y. Sept. 28, 2015). *See also Giannullo*, 322 F.3d at 140 (on summary judgment, the moving party's "unsupported assertions" must be disregarded, even if not specifically controverted, "and the record [must be] independently reviewed").

**\*9** The accrued interest figure set forth in the Hodge Affidavit does not even appear on the screenprint. Nor does Hodge explain how CIT calculated that it was owed $19,738.76 in accrued interest; for example, how much of that figure accrued after defendants defaulted on September 1, 2013, and how much accrued prior to that date as a result of earlier payments that were not made, or were not made in full. Furthermore, there is a discrepancy in the Hodge Affidavit concerning the date from which interest was calculated. As noted above, CIT asserts that defendants defaulted on September 1, 2013. See Pl. 56.1 St. ¶ 19; Hodge Aff. ¶ 12. However, Hodge attests that the accrued interest in the amount of $19,738.76 "represents unpaid interest on the unpaid principal balance at a rate of 2.000% from September 1, 2012, to April 30, 2015 and 3.000% from May 1, 2015 through June 30, 2015." Hodge Aff. ¶ 39 (emphasis added). Thus, as in *Hawkins*, 2015 WL 5706945, at *8, "plaintiff has failed to sufficiently explain the figures on the screen-print" and has not "clearly set forth support" for the award of principal and interest it seeks. By the same token, although the Court is capable of computing a per diem interest rate since June 30, 2015, it can only do so on the basis of a verified amount as of that (or some other) date.

Because I cannot verify plaintiff's calculation of the unpaid principal or accrued interest as of June 30, 2015 from the information submitted by CIT, I respectfully recommend that plaintiff's request for a calculation of damages that includes unpaid principal in the amount of $582,933.11 and accrued interest in the amount of $19,738.76 be denied, without prejudice to renewal if plaintiff provides sufficient information from which the Court can verify its figures.

**C. Costs and Escrow Advances**

Plaintiff also seeks "recoverable costs" in the amount of $9,069.70, and reimbursement for advances made to cover escrow shortages in the amount of $13,663.04. Hodge Aff. ¶¶ 38, 45. However, CIT has not explained what the "recoverable costs" are, why it is entitled to reimbursement for these charges, or how the figure of $9,069.70 was calculated. Similarly, although the Mortgage provides for payment of "escrow items," Hodge Aff. Ex. B ¶ 3, CIT provides little support for the $13,663.04 it seeks in escrow advances, stating only that it "advanced $15,432.90 to cover the escrow payments on the Property, less the escrow/impound overdraft of $1,769.86 which sum totals $13,663.04." Hodge Aff. ¶ 41. Accordingly, I respectfully recommend that the request for $9,069.70 in recoverable costs and $13,663.04 in escrow advances be denied, without prejudice to renewal if plaintiff provides an adequate explanation of its request.

**D. Attorneys' Fees and Costs**

CIT seeks attorneys' fees in the amount of $17,704.00, and reimbursement of costs incurred in the amount of $6,291.27, based on the work performed by the firm of Windels Marx Lane & Mittendorf LLP (WMLM) in this action. This request is supported by the Affirmation of WMLM attorney Robert G. Wilk.[5] Plaintiff also requests an additional award, for "anticipated" attorneys' fees in the amount of $850.00, "for necessary legal services to be rendered by WMLM after this motion is decided." Wilk Aff. ¶ 32.

**\*10** Attorneys' fees may be recovered in a foreclosure

action where, as here, the mortgage so provides. *See* Hodge Aff., Ex. B ¶ 22; *Capital One Nat'l Ass'n v. 48-52 Franklin, LLC*, 2014 WL 1386609, at *9 (S.D.N.Y. Apr. 8, 2014). The attorneys' fees must be reasonable, however, and the movant must provide information sufficient to allow the Court to assess that issue. *See, e.g., Carco Grp., Inc. v. Maconachy*, 718 F.3d 72, 86 (2d Cir. 2013). Fee applications are subject to denial where the fees have not been adequately documented. *Hawkins*, 2015 WL 5706945, at *10 (citing *Riordan v. Nationwide Mut. Fire Ins. Co.*, 977 F.2d 47, 53 (2d Cir. 1992)). *See also United Cent. Bank v. Shree Ganesh Props., LLC*, 2013 WL 1703875, at *3 (S.D.N.Y. Apr. 19, 2013) (declining to award attorneys' fees, despite report and recommendation to the contrary, due to movant's failure to provide court with billing records or context to demonstrate that fees were reasonable). "[C]ourts generally require the party seeking fees to submit detailed records, listing the services rendered in connection with the action, the name of each attorney who worked on the matter, the date that services were performed, the hours spent in performing the services, and the hourly rate charged." *Hawkins*, 2015 WL 5706945, at * 10 (citing *N.Y. State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983)).

The Wilk Affirmation sets forth a general description of WMLM's work in this litigation: conducting title searches, corresponding with prior counsel and defendants, reviewing loan documents, preparing affidavits, pleadings, and other filings, drafting and filing the Notice of Pendency of Action, arranging for service of process, preparing requests for Certificates of Default, and preparing the materials for the instant motion. Wilk Aff. ¶ 28. On this basis, Wilk concludes that WMLM "personnel" have expended "over 60 hours, and Plaintiff has incurred or will incur $16,854.00 in legal fees." Wilk Aff. ¶ 31. None of these personnel are identified by name or title, however, and no basis for the 60-hour estimate is disclosed. Nor does Wilk explain how the rather precise figure of $16,854.00 was actually calculated.[6]

The information presented by CIT is insufficient to determine whether the fee it seeks is reasonable. "Not only has plaintiff's counsel seemingly failed to maintain contemporaneous [time] records, but the papers submitted do not indicate whether the person performing the work was a paralegal or an attorney, and if an attorney, what level of experience he or she possesses." *Hawkins*, 2015 WL 5706945, at *11. It is true, as Wilk asserts, that the "$17,704.00 in fees requested [including fees for both historical and anticipated work] equates to an award of under 3% percent [sic] of the $625,404.61 total judgment indebtedness set forth." Wilk Aff. ¶ 37. CIT has presented no evidence, however, that lenders pay law firms on a percentage-of-the-debt basis for routine foreclosure work, and no authority for the proposition that this Court should do so. I therefore respectfully recommend that the District Judge reserve judgment on attorneys' fees, both past and future, and deny this portion of CIT's motion without prejudice to renewal when the historical fees can be better supported and all fees have been actually incurred. *See E. Sav. Bank, FSB v. Strez*, 2013 WL 6834806, at *1 (E.D.N.Y. Dec. 20, 2013) (denying plaintiff's request for "anticipated attorneys' fees" with leave to seek additional fees after they were incurred).

With respect to plaintiff's request for costs in the amount of $6,299.27, it has not supplied any receipts or invoices for the fourteen "statutory costs" and disbursements Wilk enumerates. Wilk Aff. ¶ 39. As a result, I respectfully recommend that the Court deny this request without prejudice to renewal on a more robust record.

**E. Appointment of Special Master**
*11 CIT asks the Court to appoint a special master (or remand to a magistrate judge) to conduct the foreclosure sale. *See* Pl. Not. of Mtn., at 2-3. I respectfully recommend the District Judge reserve decision on this request until the damages calculation issues are resolved. At that time, plaintiff should be directed to submit to the Court the names, addresses, and telephone numbers of three individuals who are qualified and willing to act as a receiver for the purpose of selling the Property, along with a proposed fee schedule for the receiver and an explanation of the basis for the schedule. *See Ullah*, 2015 WL 3735230, at *10.

**III. Additional Relief**

   **A. Amending the Caption and Substituting Parties**
CIT requests that the Court amend the case caption to substitute CIT Bank, N.A. in place of OneWest Bank N.A. as plaintiff; to substitute Nicole Johnson, Elizha Mbengue, Pancheta Gordon, and Kadezha Mbengue in place of John Does No. 1-4; and to strike the remaining Doe defendants from the caption and discontinue the action against them without prejudice. Although plaintiff does not address these issues in its briefs or affidavits, I

respectfully recommend, in the interest of clarity, that plaintiff's request be granted; that the caption be amended to reflect the new name of the plaintiff and the true names of John Does No. 1-4; and that the claims against the remaining Doe defendants be dismissed. *See E. Sav. Bank, FSB v. Rabito*, 2012 WL 3544755, at *3-4 (E.D.N.Y. Aug. 16, 2012) (amending caption to reflect identities of John Doe tenants and discontinuing action against remaining Doe defendants).

### B. Request for Default Judgments

CIT also requests entry of default judgments against CitiMortgage, the ECB, Nicole Johnson, Elizha Mbengue, Pancheta Gordon, and Kadezha Mbengue (sued as John Does No. 1-4). None of these defendants answered or otherwise appeared in this action.

There is a "two-step process" for obtaining an entry of default judgment under Fed. R. Civ. P. 55. *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 128 (2d Cir. 2011). "First, when a party has failed to plead or otherwise defend, at a plaintiff's request, the Clerk of the Court enters a certificate of default pursuant to Rule 55(a). Second, the moving party may make an application for entry of a default judgment pursuant to Rule 55(b)." *Dambra*, 2015 WL 7422348, at *3. Here, the Clerk of the Court has already issued certificates of default. (Dkt. Nos. 31-42). I therefore proceed to step two.

At this step, the court considers whether the non-answering defendants had "notice [of the action] and an opportunity to be heard." *Mickalis Pawn Shop, LLC*, 645 F.3d at 132-33; *see also Dambra*, 2015 WL 7422348, at *3. The court may infer such notice and opportunity where the defendant was served with process. *See Dambra*, 2015 WL 7422348, at *3. Here, CIT's affidavits of service demonstrate that service of process was properly effected on the non-answering defendants (Dkt. Nos. 25-30); therefore, they had notice of this action.

However, a default judgment is improper if the complaint's well-pleaded allegations fail to state a claim against the non-answering defendants. *See Bricklayers and Allied Craftworkers Local 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Const., LLC*, 779 F.3d 182, 187 (2d Cir. 2015) ("the court may, on plaintiffs' motion, enter a default judgment if liability is established as a matter of law when the factual allegations of the complaint are taken as true") (citing *Mickalis Pawn Shop*, 645 F.3d at 137); *see also Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009) (holding the court is "required to determine whether ... allegations establish [defendant's] liability as a matter of law"). Although defendants' default constitutes a "concession" of all well-pleaded allegations of liability, *Greyhound Exhibit group, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992), and the court draws all reasonable inferences in plaintiff's favor, *OneWest Bank, N.A. v. Bianchini*, 2016 WL 1039491, at *2 (E.D.N.Y. Feb. 22, 2016), *adopted by* 2016 WL 1045533 (E.D.N.Y. Mar. 15, 2016), the court cannot infer the existence of facts that are not pleaded at all. Thus, the burden remains on the plaintiff "to establish an entitlement to recovery," which includes pleading facts sufficient to state a claim against the non-answering defendants. *Dambra*, 2015 WL 7422348, at *5; *see also E. Sav. Bank, FSB v. Whyte*, 2015 WL 790036, at *5 (E.D.N.Y. Feb. 24, 2015).

**\*12** In a foreclosure case, a plaintiff seeking a judgment against New York City or any "department, bureau, board, commission, officer, agency or instrumentality thereof," such as the ECB, must allege "[d]etailed facts showing the particular nature of the interest in or lien on the real property and the reason for making such city a party-defendant." N.Y.R.P.A.P.L.§ 202-a (1). As to the ECB, CIT alleges only that "upon information and belief, it has an interest in the Mortgaged Property as a judgment creditor." Compl. ¶ 7. CIT does not allege the nature or the amount of the lien, or even the basis for its belief that a lien exists. It has therefore failed to allege facts satisfying the requirements of § 202-a(1). *See OneWest Bank, N.A. v. Cole*, 2015 WL 4429014, at *4 (E.D.N.Y. July 17, 2015) (allegations that city entity held a lien "subject and subordinate" to mortgage and had "possible judgments" against plaintiff were insufficient to satisfy the pleading requirement of § 202-a).

As to Citimortgage and the first four Doe defendants (Nicole Johnson, Elizha Mbengue, Pancheta Gordon, and Kadezha Mbengue), CIT has presumably sued them pursuant to N.Y.R.P.A.P.L. § 1311(3), which states that "[e]very person having any lien or incumbrance upon the real property which is claimed to be subject and subordinate to the lien of the plaintiff" must be named as a defendant in a mortgage foreclosure action. "[T]he joinder of all tenants and other junior lienholders in a foreclosure action is required ... to extinguish the rights of redemption of all those who may have a subordinate interest in the property." *Wells Fargo Bank, N.A. v. Landi*, 2015 WL 5657358, at *2 (E.D.N.Y. Sept. 22, 2015) (citing § 1311).

CIT does not seek any relief from the defendants named pursuant to § 1311, other than to extinguish their subordinate rights, if any, in the Property. Before a

plaintiff may obtain such relief, however, it must at least allege "nominal liability" with respect to these defendants. *One West Bank, N.A. v. Raghunath*, 2015 WL 5772272, at *3 (E.D.N.Y. Sept. 8, 2015); *see also OneWest Bank, NA v. Serbones*, 2016 WL 1295197, at *3-4 (E.D.N.Y. Mar. 7, 2016), *adopted as modified by* 2016 WL 1306545 (E.D.N.Y. Mar. 31, 2016); *Whyte*, 2015 WL 790036, at *3 (collecting cases). To plead nominal liability, a plaintiff must allege "in great detail" the nature of a defendant's interest in the subject property. *Landi*, 2015 WL 5657358, at *3; *see also Raghunath*, 2015 WL 5772272, at *3-4 (finding "well-pleaded allegations of nominal liability" where plaintiff alleged "that records of the City Register of New York indicate that Citimortgage holds a lien on the premises which was assigned to Citimortgage on July 11, 2003, and recorded on April 6, 2004, at CRFN 2004000205725."); *Dambra*, 2015 WL 7422348, at *6 (holding nominal liability was well-pleaded where plaintiff submitted title searches reflecting monies owed).

Here, CIT alleges only that CitiMortgage "has an interest" in the Property. Compl. ¶ 6. No additional facts are supplied. As to the first four Doe defendants, CIT explains that they were named "because they may (a) be occupants, persons in possession, licensees, tenants, or others who may be in possession, claim to have a right of possession, in and to the Mortgaged Property or have a right of possession, or (b) have some interest in and to the Mortgaged Property subject and subordinate to that of Plaintiff." Compl. ¶ 8. CIT never identifies the nature of these interests. It does not even allege that these defendants are tenants of the Property (despite having served them with process at the Property). Accordingly, I respectfully recommend that CIT's request for default judgments against the non-answering defendants be denied.

### C. Request to Strike Answers

Finally, CIT requests that the Court "strike" the answers of defendants Louis and Ogbonna. Once again, however, plaintiff does not address this issue in its briefs or affidavits, and there does not appear to be any basis for the request in Fed. R. Civ. P. 12(f) (which permits a court to strike an answer, for limited reasons, on motion made within 21 days of service of that answer) or elsewhere. Moreover, the request to strike the mortgagor defendants' answers will be mooted by the grant of CIT's summary judgment motion and, ultimately, the entry of a judgment of foreclosure against them. *See Lynch*, 2014 WL 5471009, at *6. As a result, I respectfully recommend that

the District Judge deny CIT's motion insofar as it seeks an order striking the mortgagor defendants' answers.

### CONCLUSION

**\*13** For the foregoing reasons, I respectfully recommend:

(i) that plaintiff's motion for summary judgment be GRANTED;

(ii) that plaintiff's request to amend the caption to reflect its new name be GRANTED;

(iii) that plaintiff's request to further amend the caption, to replace the first four Doe defendants with the names of Nicole Johnson, Elizha Mbengue, Pancheta Gordon, and Kadezha Mbengue be GRANTED;

(iv) that plaintiff's request to dismiss all claims against the remaining Doe defendants be GRANTED;

(v) that plaintiff's request for default judgments against CitiMortgage, Inc., the New York City Environmental Control Board, Nicole Johnson (served as "John Doe No. 1"), Elizha Mbengue (served as "John Doe No. 2"), Pancheta Gordon (served as "John Doe No. 3"), and Kadezha Mbengue (served as "John Doe No. 4") be DENIED; and

(vi) that plaintiff's requests for calculation of the principal, interest, and other sums due to it, for an award of attorneys' fees and costs, and for the appointment of a special master to conduct the sale of the Property be DENIED without prejudice to renewal following plaintiff's submission of additional information.

### NOTICE OF PROCEDURE FOR FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

The parties shall have fourteen days from this date to file written objections to this Report and Recommendation

pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b). *See also* Fed. copies delivered to the Hon. Paul A. Crotty at 500 Pearl Street, New York, New York 10007, and to the chambers of the undersigned magistrate judge. Any request for an extension of time to file objections must be directed to Judge Crotty. Failure to file timely objections will preclude appellate review. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010).

**SO ORDERED**.

**All Citations**

Not Reported in Fed. Supp., 2016 WL 3552143

Footnotes

1    Louis does not specifically deny that he was served with the Complaint. *See* Louis 56.1 St. ¶ 19; Louis Aff. in Opp. ¶ 3. It is not clear whether this was an intentional drafting choice or an oversight in the preparation of his summary judgment papers.

2    In support of his insufficient service of process defense, Louis submits an earnings statement dated February 2015, bearing the address of the Property; mortgage statements and other correspondence from CIT, addressed to him at the Property; an undated notice for Bronx jury duty, addressed to him at the Property; and a credit report from Equifax, dated October 15, 2015, showing the Property as his "current address" and the Reading Address as one of his "previous address(es)." Louis Aff. in Opp. Exs. B-E. Louis does not discuss the statements made to CIT's process servers by Nicole Johnson at the Property or by his son Davis Louis at the Reading Address.

3    In lieu of granting motions to dismiss for ineffective service of process, "[d]istrict courts have discretion to grant extensions of the time in which to serve process." *Horn v. Sammon*, 2013 WL 1683585, at *2 (S.D.N.Y. Apr. 17, 2013); *see also* Fed. R. Civ. P. 4(m). Thus, where the defense of improper service has been properly preserved, but where the defendant asserting that defense is amenable to suit and has actually appeared and litigated on the merits, a district court need not dismiss. It may choose to retain the case, and enlarge the time for the plaintiff to make good service on the same defendant. *E.g., Horn*, 2013 WL 1683585, at *3 (denying motion to dismiss for ineffective service of process, and instead giving plaintiffs 30 days to effect service, where moving defendants "had actual notice of the litigation and have participated in it from the outset"). *See also* 5B Charles Alan Wright, et al., *Federal Practice and Procedure* § 1354 (3d ed. 2004) (where effective service can likely be completed, "dismissal needlessly burdens the parties with additional expense and delay and postpones the adjudication of the controversy on its merits").

4    Hodge does attach letters dated March 26, 2013, July 30, 2013, and May 16, 2014, addressed to "Louis Buteau," stating that plaintiff "received your monthly mortgage payment" but was "unable to process" that payment, or—as explained in the second and third letters—the payment was "returned from your financial institution as non-sufficient funds." Hodge Aff. Ex. Q, at 3-5. None of the other exhibits to the Hodge Affidavit appear to shed any light on defendants' payment history.

5    In proceedings before the courts of New York State, N.Y.C.P.L.R. 2106(a) permits an attorney, physician, osteopath or dentist to submit a statement "subscribed and affirmed by him to be true under the penalties of perjury" instead of "and with the same force and effect as an affidavit." In federal court, 28 U.S.C. § 1746 permits any witness, no matter her occupation, to submit an "unsworn declaration, certificate, verification, or statement" instead of an affidavit, so long as it is subscribed by its maker as "true under penalty of perjury," in substantially the following form (if executed within the United States): "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date). (Signature)." The Wilk Affirmation, which appears to have been prepared in accordance with N.Y.C.P.L.R. 2106(a), is not subscribed in the form specified by § 1746(2). Because I recommend that CIT's request for fees be deferred until such time as it adequately documents other amounts due to it under the Note and Mortgage, I need not reach the question of whether Wilk has "substantially" complied with § 1746 so as to render his Affirmation admissible in this action. Since CIT has chosen to bring this foreclosure action in federal court, however, it should follow § 1746, and other applicable federal requirements, if it renews any portion of its motion.

6    In other local foreclosure actions filed recently by CIT, it has sought reimbursement for WMLM's services on a "flat fee" basis. *See, e.g., OneWest Bank, N.A. v. Denham*, 2015 WL 5562980, at *10 (E.D.N.Y. Aug. 31, 2015) (seeking a flat fee of $3,500.00 for WMLM's work).

**End of Document**  $\qquad$ © 2019 Thomson Reuters. No claim to original U.S. Government Works.