2016 WL 706166
Only the Westlaw citation is currently available.
United States District Court, D. Connecticut.

Sharone HUBERT, Etienne Hubert, Plaintiffs,
v.
STATE OF CONNECTICUT DEPARTMENT OF CORRECTION, et al., Defendants.

No. 14-cv-00476 (VAB)
|
Signed February 22, 2016

**Attorneys and Law Firms**

Richard C. Gordon, Law Office of Richard C. Gordon, Esq., Hartford, CT, for Plaintiffs.

Ann E. Lynch, Erik Thebin Lohr, Office of the Attorney General, Hartford, CT, for Defendants.

## RULING ON MOTION TO DISMISS

Victor A. Bolden, United States District Judge

**\*1** On April 4, 2014, Plaintiffs, Sharone Hubert and Etienne Hubert, commenced this action against Defendants, Captain Kyle Godding ("Godding"), Deputy Warden Michael Davis ("Davis"), Correction Officer Kevin Curry ("Curry"), Lieutenant Derrick Austin ("Austin"), and Lieutenant Cicero Collender ("Collender") (collectively, the "Individual Defendants"), each in his personal and official capacities, and the State of Connecticut Department of Correction (or "DOC")[1].

Defendants have moved to dismiss Plaintiffs' First Amended Complaint (the "First Amended Complaint") [Doc. No. 10] under Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction, 12(b)(2) for lack of personal jurisdiction, and 12(b)(5) for insufficient service of process. In addition, many of their arguments for dismissal are predicated on an alleged failure to state a claim upon which relief can be granted, and thus the Court will address these claims under Federal Rule of Civil Procedure 12(b)(6), as well. *See Target Training Int'l, Ltd. v. Lee*, 1 F. Supp. 3d 927, 935-36 (N.D. Iowa 2014) (considering motion to dismiss made pursuant to Rule 12(b)(1) instead "under appropriate Rule 12(b)(6) standards" where movant's argument turned on whether complaint stated a claim upon which relief can be granted rather than whether there was subject matter jurisdiction). For the reasons that follow, Defendants' motion to dismiss [Doc. No. 40] is GRANTED IN PART and DENIED IN PART.

Following this Ruling, five counts of the First Amended Complaint will remain: Count One as to the DOC and Defendants Davis, Godding, Curry, Austin, and Collender in their official capacities; Count Five as to the DOC and Defendants Davis, Godding, Curry, Austin, and Collender in their official capacities; Count Nine, to the extent it asserts claims under Title VII, as to Defendant Davis in his official capacity; Count Ten, to the extent it asserts claims under Title VII, as to Defendant Collender in his official capacity; and Count Thirteen, to the extent it asserts claims under sections 1985, 1986, and 1988 as to the DOC and Defendants Davis, Godding, Austin, and Collender in their official capacities.

### I. BACKGROUND[2]

Sharone Hubert, an African American woman, has been employed by the State of Connecticut Department of Correction since February 13, 1998. Currently a correction officer, she is married to Etienne Hubert, who is also a correction officer for the DOC. The DOC promoted Ms. Hubert to lieutenant on September 11, 2009. *See* Doc. No. 23, at 5; Doc. No. 43-1, at 9. The DOC returned her back to the position of correction officer on January 27, 2010, and she has not received any subsequent promotions. *See* Doc. No. 23, at 5; Doc. No. 43-1, at 10.

**\*2** Ms. Hubert allegedly has experienced a great deal of sexual harassment during her employment at the DOC. An unidentified individual allegedly told Ms. Hubert that "she must lose her 'trash' in order to be promoted." Compl. ¶ 46. Ms. Hubert believes that the term "trash" was a reference to her husband, who worked at the same facility. *See id.* An unidentified supervisor allegedly told Ms. Hubert that "she should just 'give in' to her supervisors' unwelcomed sexual advances, so she could be promoted." Compl. ¶ 47. A co-worker allegedly told Ms. Hubert that "she should be careful because if she was in a private setting at one of" the DOC facilities, one of her supervisors "will take it." Compl. ¶ 53. There

allegedly was a "running bet" at DOC as to "which supervisor would first sleep with the Plaintiff, Sharone Hubert." Compl. ¶ 72.

The Individual Defendants allegedly engaged in a series of sexually-inappropriate behaviors towards Ms. Hubert.

- In or around July 2012, Deputy Warden Michael Davis, who was one of the Huberts' supervisors, allegedly sent Ms. Hubert pictures of his erect penis. *See* Compl. ¶¶ 20-22; Doc. No. 23, at 4. After sending her these photographs, Davis allegedly gave Ms. Hubert an assignment alone in a room, to which he followed her, turned off the lights, grabbed her from behind, and demanded that she engage in sexual intercourse with him. *See* Compl. ¶¶ 23, 111, 120-22, 140-41.

- Captain Kyle Godding, who was also a supervisor of the Huberts, allegedly sent Ms. Hubert pictures of his erect penis in or around August 2013. *See* Compl. ¶ 28; Doc. No. 23, at 4.

- Correction Officer Kevin Curry allegedly sent Ms. Hubert pictures of his erect penis in or around December 2013, and to other female employees in February 2014. *See* Compl. ¶ 29; Doc. No. 23, at 4.

- Ms. Hubert once requested a day off from Lieutenant Derrick Austin, one of her supervisors, who allegedly responded that "he would only grant her request if she gave him some pussy." Compl. ¶ 64. Austin allegedly routinely assigned Ms. Hubert to isolated posts, and, on one occasion, walked up to Ms. Hubert from behind, pulled out his erect penis and placed it on her shoulder, and asked her "if she saw what a real man looked like." Compl. ¶¶ 32-33; *see also* Compl. ¶¶ 65-66, 127-28. On another occasion, Austin asked her, while she was working with him and another DOC lieutenant, to sit on his lap so he could look at her pretty white teeth. Compl. ¶¶ 34, 68. DOC investigated Austin after Ms. Hubert filed an incident report, as a result of which it issued a "no contact order" against Austin and eventually allowed him to transfer to another facility while maintaining his rank, pay, and benefits. Compl. ¶¶ 36, 69-70.

- Lieutenant Cicero Collender, another one of Ms. Hubert's supervisors, allegedly continually requested that Ms. Hubert give him hugs, despite her informing him that his conduct was inappropriate. Thereafter, Ms. Hubert was two minutes late for roll call due to a documented medical condition that Collender knew about. Due to the medical condition, Ms. Hubert was in the bathroom at the time roll call began, and Collender ordered others to summon her from the bathroom, and then he disciplined her. Collender's disciplinary conduct allegedly violated "an existing court decree against Defendant DOC," and forced Ms. Hubert to take medical leave on days that she was suffering from her medical condition. Compl. ¶¶ 41-42, 82-88, 151.

In addition, DOC allegedly passed over Ms. Hubert for promotion because of her filing of grievances and Connecticut Commission on Human Rights and Opportunities (CHRO) complaints concerning alleged unlawful discrimination. *See* Compl. ¶ 79. She allegedly suffered further forms of mistreatment both in retaliation for her opposing unlawful discrimination and "in an attempt to have her surrender to [her supervisors'] illegal sexual advances." Compl. ¶ 61. For example, she alleges that she was "discriminatorily punished" by supervisors "who had her stay at work in 'bloody pants' to write an unwarranted and unnecessary incident report ... while her coworkers looked on at her soiled pants." Compl. ¶ 62

**\*3** Finally, as a result of Defendants' alleged conduct, Ms. Hubert allegedly has suffered emotional injuries requiring treatment, and Mr. and Ms. Hubert allegedly have been "unable to fulfill their marital duties to each other." Compl. ¶¶ 71, 93, 94.

Ms. Hubert filed complaints with the United States Equal Employment Opportunity Commission (EEOC) and the CHRO, and received right to sue letters from the EEOC on January 10, 2014, and July 7, 2014, and from the CHRO on February 21, 2014. *See* Doc. No. 23-1.

On April 4, 2014, Plaintiffs initiated the present lawsuit by filing a complaint with this Court, naming as defendants the DOC, Davis, Godding, and Curry. [Doc. No. 1]. The Clerk of the Court issued electronic summonses for these defendants to Plaintiffs in accordance with Federal Rule of Civil Procedure 4 and Local Civil Rule 4. [Doc. Nos. 6-9]. The original defendants were served on October 2, 2014. *See* Doc. No. 27, at 2-8. Next, Plaintiffs filed their First Amended Complaint on October 10, 2014, adding Austin and Collender as defendants. [Doc. No. 10]. Defendants Austin and Collender were served on March 4, 2015. *See* Doc. Nos. 35-36. Plaintiffs[3] made service on each of the Individual Defendants by leaving a copy of the summons and complaint with the Hartford office of Attorney General of the State of Connecticut. *See* Doc. Nos. 6-9, 27, 35-36.

## II. DISCUSSION

The First Amended Complaint contains thirteen counts. In her opposition to Defendants' motion to dismiss, Plaintiff voluntarily withdraws Count Twelve, which alleged a breach of the implied covenant of good faith and fair dealing against the Individual Defendants. The remaining twelve counts each assert claims against various Defendants for violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), the Connecticut Fair Employment Practices Act, Conn. Gen. Stat. § 46a-60(a) ("CFEPA"), 42 U.S.C. §§ 1981, 1983, 1985, 1986, and 1988, or state common law.

Specifically, Counts One and Five assert violations of Title VII against all Defendants, Counts Three and Four assert violations of CFEPA against all Defendants, Counts Nine and Ten allege sexual harassment against Defendants Davis and Collender, respectively, Counts Six and Eight allege battery against Defendants Davis and Austin, respectively, Count Seven alleges false imprisonment against Defendant Davis, Count Two alleges loss of consortium against all Defendants, Count Eleven alleges both negligent and intentional infliction of emotional distress against all Defendants, and Count Thirteen alleges violations of rights under 42 U.S.C. §§ 1981, 1983, 1985, 1986, and 1988 against Defendants DOC, Davis, Godding, Austin, and Collender.

### A. Insufficient Service of Process and Lack of Personal Jurisdiction

#### 1. Standard of Review

Under Federal Rule of Civil Procedure 12(b)(5), a party may file a motion to dismiss due to "insufficient service of process." Fed. R. Civ. P. 12(b)(5). A motion to dismiss under Rule 12(b)(5) may be granted "if the plaintiff fails to serve a copy of the summons and complaint on the defendants pursuant to Rule 4 of the Federal Rules, which sets forth the federal requirements for service." *Rzayeva v. United States*, 492 F. Supp. 2d 60, 74 (D. Conn. 2007). "Once validity of service has been challenged, it becomes the plaintiff's burden to prove that service of process was adequate." *Cole v. Aetna Life & Cas.*, 70 F. Supp. 2d 106, 110 (D. Conn. 1999).

*4 "On a Fed. R. Civ. P. 12(b)(2) motion to dismiss for lack of personal jurisdiction, plaintiff bears the burden of showing that the court has jurisdiction over the defendant." *In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 206 (2d Cir. 2003). "Prior to discovery, a plaintiff challenged by a jurisdiction testing motion may defeat the motion by pleading in good faith legally sufficient allegations of jurisdiction. At that preliminary stage, the plaintiff's *prima facie* showing may be established solely by allegations." *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990). Such allegations must be made through the plaintiff's "own affidavits and supporting materials." *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981). In deciding a 12(b)(2) motion to dismiss, a court must construe the pleadings and affidavits in the light most favorable to the plaintiff, resolving all doubts in her favor. *See A.I. Trade Finance, Inc. v. Petra Bank*, 989 F.2d 76, 79-80 (2d Cir. 1993).

#### 2. Service of Process as to the State of Connecticut

Defendants argue that the complaint should be dismissed as to the DOC and the Individual Defendants in their official capacities for insufficient service of process. Rule 4(m), Fed. R. Civ. P., states in relevant part:

> If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Thus, a district court must extend the time for service upon a showing of good cause and may grant an extension in the absence of good cause. *See Zapata v. City of New York*, 502 F.3d 192, 197 (2d Cir. 2007).

Here, Plaintiffs have not shown good cause for failing to serve process within the prescribed time.[4] Plaintiffs assert that they gave the original complaint to a state marshal for

service on or around July 25, 2014. Doc. No. 55-1, at 17. However, as noted *supra*, it is Plaintiffs' burden to prove that service of process was adequate, and they have provided no affidavit, from counsel or from the state marshal, attesting that the marshal received the summons on or about that date or as to the reason service was not effected until approximately ten weeks later.

Therefore, the Court now must determine whether it should exercise its discretion to extend the time for service in this case. In deciding whether to grant this relief, the Court must consider the following factors:

> (1) whether the applicable statute of limitations would bar the refiled action; (2) whether the defendant had actual notice of the claims asserted in the complaint; (3) whether the defendant had attempted to conceal the defect in service; and (4) whether the defendant would be prejudiced by the granting of plaintiff's request for relief from the provision.

*Britton v. Connecticut*, No. 3:14-cv-00133, 2016 WL 308774, at *5 (D. Conn. Jan. 25, 2016) (internal quotation marks omitted). Furthermore, "[w]here, as here, good cause is lacking, but the dismissal without prejudice in combination with the statute of limitations would result in a dismissal with prejudice," a district court must "weigh[ ] the impact that a dismissal or extension would have on the parties," bearing in mind that "no weighing of the prejudices between the two parties can ignore that the situation is the result of the plaintiff's neglect. *Zapata*, 502 F.3d at 197.

**\*5** If the Court were to dismiss the complaint for insufficient service of process, the statute of limitations likely would bar future actions against Defendants. "In order to be timely, a claim under Title VII ... must be filed within 90 days of the claimant's receipt of a right-to-sue letter." *Sherlock v. Montefiore Med. Ctr.*, 84 F.3d 522, 525 (2d Cir. 1996). Plaintiff's first right-to-sue letter from the EEOC was dated January 10, 2014, and this litigation was timely commenced on April 4, 2014. However, "[t]he timely filing of a complaint subsequently dismissed without prejudice does not toll or suspend the ninety (90)-day limitations period." *Cohn v. KeySpan Corp.*, 713 F. Supp. 2d 143, 156 (E.D.N.Y. 2010) (collecting cases). "Thus, even if the Court were to dismiss the claims against the ... defendants without prejudice, it effectively would result in dismissal with prejudice because any newly filed claims would be time-barred," and therefore, the first factor weighs in favor of granting Plaintiffs an extension of time for service. *Britton*, 2016 WL 308774, at *5.

The second factor also favors Plaintiffs. Counsel for Defendants had actual notice of Plaintiffs' claims against them because, since it filed its appearance on October 21, 2014, the Connecticut Office of the Attorney General has received electronic notices of filings in this case, in addition to having been served both the original complaint and the First Amended Complaint in October 2014 and March 2015, respectively. *See Britton*, 2016 WL 308774, at *6.

The third factor favors Defendants, as there is nothing that suggests they attempted to conceal the defects in service. As for the fourth factor, while it is true that Defendants may experience some prejudice "aris[ing] from the necessity of defending an action after [ ] the original service period ... passed before service," *Zapata*, 502 F.3d at 198, if Defendants suffered any prejudice from the fifty-nine day delay, it is slight. "Plaintiff's failure to timely serve defendants delayed the case for less than two months, not for years." *John v. City of Bridgeport*, 309 F.R.D. 149, 156 (D. Conn. 2015).

In weighing the relevant factors, the Court finds that an extension of the time for service should be granted in this case, particularly because of "the strong federal policy in favor of resolving claims on the merits." *Id.* Accordingly, the Court denies the motion to dismiss under Rule 12(b)(5), Fed. R. Civ. P., as to the DOC and the Individual Defendants in their official capacities.

### 3. Personal Jurisdiction as to the Individual Defendants in Their Personal Capacities

Defendants argue that Plaintiffs have not properly served the Individual Defendants in their personal capacities, and that the claims against them must therefore be dismissed under Rules 12(b)(2) and 12(b)(5), Fed. R. Civ. P. Plaintiffs fail to offer any arguments demonstrating that they properly served the Individual Defendants in their personal capacities, so all claims against the Individual Defendants as individuals must be dismissed.

"[A]dequate service of process is a prerequisite for a

court's exercise of personal jurisdiction: 'Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied.' " *Davis v. Mara*, 587 F. Supp. 2d 422, 424-25 (D. Conn. 2008) (quoting *Omni Capital Intern., Ltd. v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 104 (1987). Rule 4(e), Fed. R. Civ. P., states in pertinent part that "an individual ... may be served ... by: (1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or (2) doing any of the following: (A) delivering a copy of the summons and of the complaint to the individual personally; (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

**\*6** Connecticut state law provides that, generally, "process in any civil action shall be served by leaving a true and attested copy of it, including the declaration or complaint, with the defendant, or at his usual place of abode, in this state." Conn. Gen. Stat. § 52-57(a). Connecticut law further provides that

> [s]ervice of civil process in any civil action or proceeding maintainable against ... the state or against any institution, board, commission, department or administrative tribunal thereof, or against any officer, servant, agent or employee of the state or of any such institution, board, commission, department or administrative tribunal, as the case may be, may be made by a proper officer (1) leaving a true and attested copy of the process, including the declaration or complaint, with the Attorney General at the office of the Attorney General in Hartford, or (2) sending a true and attested copy of the process, including the summons and complaint, by certified mail, return receipt requested, to the Attorney General at the office of the Attorney General in Hartford.

Conn. Gen. Stat. § 52-64.

This provision "does not authorize service through the Attorney General's office on an individual State employee in his or her individual capacity." *Bogle-Assegai v. Connecticut*, 470 F.3d 498, 507 (2d Cir. 2006). Service of process to the Attorney General's Office "may constitute adequate service for the defendants in their official capacities as officers or employees of the state. For the court to have jurisdiction over the defendants in their individual capacities, though, a defendant may only service process ... in accordance with [Connecticut General Statutes] § 52-57." *Canday v. Lantz*, No. HHDCV075013120, 2008 WL 224015, at \*2 (Conn. Super. Ct. Jan. 2, 2008). In other words, state defendants being sued in their individual capacities must "be served at their usual places of abode." *Edelman v. Page*, 123 Conn. App. 233, 243 (2010).

Plaintiffs have served the Individual Defendants by leaving a copy of the process with the Attorney General at the office of the Attorney General in Hartford. There is no indication that any of the Individual Defendants authorized the Attorney General to receive service of process on their behalf nor that any of them waived service of process. Consequently, the Individual Defendants have only been served in their official capacities. As Plaintiffs have not yet served them in their personal capacities, and the deadline for service of process expired more than a year ago, the Court must grant the motion to dismiss as to all claims against the Individual Defendants in their personal capacities.

### B. Lack of Subject Matter Jurisdiction

#### 1. Standard of Review

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "The plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005).

### 2. Eleventh Amendment Immunity and Sovereign Immunity

Defendants move to dismiss the claims against the DOC and the Individual Defendants in their official capacities in Counts Two, Three, Four, Six, Seven, Eight, Nine, Ten, and Eleven of the First Amended Complaint on the grounds that these claims are barred by the Eleventh Amendment.

> ***7** The Eleventh Amendment generally bars suits in federal court by private individuals against non-consenting states. This immunity from suit encompasses not just actions in which a state is actually named as a defendant, but also certain actions against state agents and instrumentalities, including actions for the recovery of money from the state.

*Leitner v. Westchester Cmty. Coll.*, 779 F.3d 130, 134 (2d Cir. 2015) (citations omitted).

Similarly, Defendants move to dismiss the common law claims against the DOC and the Individual Defendants in their official capacities, as set forth in Counts Two, Six, Seven, Eight, Nine, Ten, and Eleven of the First Amended Complaint, on the grounds that these claims are barred by sovereign immunity. The Connecticut Supreme Court has described the doctrine as follows:

> The principle that the state cannot be sued without its consent, or sovereign immunity, is well established under our case law. It has deep roots in this state and our legal system in general, finding its origin in ancient common law. Not only have we recognized the state's immunity as an entity, but we have also recognized that because the state can act only through its officers and agents, a suit against a state officer concerning a matter in which the officer represents the state is, in effect, against the state. Exceptions to this doctrine are few and narrowly construed under our jurisprudence.

*Columbia Air Servs., Inc. v. Dep't of Transp.*, 293 Conn. 342, 349 (2009) (internal quotation marks and citation omitted). None of the exceptions recognized under Connecticut law apply in this case.[5]

In fact, Plaintiffs appear to concede that these particular claims against the State of Connecticut are barred by the Eleventh Amendment and the State's sovereign immunity, but they argue that the State may now choose to waive its immunity and consent to having these claims proceed. *See* Doc. No. 55-1, at 21. Defendants, however, do not consent, *see* Doc. No. 59, at 2, and therefore these claims are dismissed under Federal Rule of Civil Procedure 12(b)(1).[6] *See Morales v. New York*, 22 F. Supp. 3d 256, 268 (S.D.N.Y. 2014) ("A claim that is barred by a state's sovereign immunity must be dismissed pursuant to the Eleventh Amendment for lack of subject matter jurisdiction."); *Columbia Air Servs., Inc.*, 293 Conn. at 347 ("The doctrine of sovereign immunity implicates subject matter jurisdiction and is therefore a basis for granting a motion to dismiss.") (internal quotation marks and citations omitted). As a result, Counts Two, Three, Four, Six, Seven, Eight, and Eleven and Counts Nine and Ten, to the extent these counts assert official capacity claims under the CFEPA, are dismissed as to the DOC and as to the Individual Defendants in their official capacities.

### C. Failure to State a Claim

#### 1. Standard of Review

***8** A motion to dismiss for failure to state a claim under Federal Rule of Procedure 12(b)(6) is designed "merely to assess the legal feasibility of a complaint, not to assay the weight of evidence which might be offered in support thereof." *Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 158 (2d Cir. 2003) (citations omitted). When deciding a Rule 12(b)(6) motion to dismiss, a court must accept the material facts alleged in the complaint as true, draw all reasonable inferences in favor of the plaintiff, and decide whether it is plausible that the plaintiff has a valid claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009); *Twombly*, 550 U.S. 544, 555-56 (2007); *In re NYSE*

*Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007).

A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level," and assert a cause of action with enough heft to show entitlement to relief and "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555, 570. A claim is facially plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Although "detailed factual allegations" are not required, a complaint must offer more than "labels and conclusions," or "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." *Twombly*, 550 U.S. at 555, 557 (2007). Plausibility at the pleading stage is nonetheless distinct from probability, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the claims] is improbable, and ... recovery is very remote and unlikely." *Id.* at 556 (internal quotation marks omitted).

"A Rule 12(b)(1) motion for lack of subject matter jurisdiction is often appropriate when the plaintiff has failed to exhaust administrative remedies prior to filing his claim in court." *Anderson v. Derby Bd. of Educ.*, 718 F. Supp. 2d 258, 265 (D. Conn. 2010). However, "the Second Circuit has ruled that a plaintiff's timely filing of an EEOC charge is not a jurisdictional prerequisite [in a federal employment discrimination case] but rather a condition precedent to bringing the discrimination action in district court," and therefore such an action may be more properly considered for "a dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) rather than a dismissal for lack of jurisdiction under Federal Rule of Civil Procedure 12(b)(1)." *Anderson*, 718 F. Supp. 2d at 265 n. 14, 269 (D. Conn. 2010) (internal quotation marks omitted).

### 2. Failure to Exhaust Administrative Remedies

Counts One, Five, Nine, and Ten allege violations of Title VII. "It has long been the rule that a Title VII plaintiff alleging that she was the victim of employment discrimination may not seek relief in a federal court until she timely exhausts her administrative remedies before the U.S. Equal Employment Opportunity Commission ('EEOC')." *Hansen v. Jones Lang LaSalle Americas, Inc.*, 103 F. Supp. 3d 221, 222 (D. Conn. 2015). Defendants argue that Ms. Hubert's Title VII and CFEPA claims should be dismissed because she did not assert the specific allegations of sexual harassment found in the First Amended Complaint in her earlier complaints to the EEOC and CHRO. Ms. Hubert argues that these claims are reasonably related to the allegations in her EEOC and CHRO charges, and therefore should not be dismissed.

**\*9** "A district court only has jurisdiction to hear Title VII claims that either are included in an EEOC charge or are based on conduct subsequent to the EEOC charge which is 'reasonably related' to that alleged in the EEOC charge." *Butts v. City of New York Dep't of Hous. Pres. & Dev.*, 990 F.2d 1397, 1401 (2d Cir. 1993). The Second Circuit has recognized several types of situations "where claims not alleged in an EEOC charge are sufficiently related to the allegations in the charge that it would be unfair to civil rights plaintiffs to bar such claims in a civil action," and has "loosely referred to these claims as 'reasonably related' to the allegations in the EEOC charge." *Id.* at 1402. Relevant to this case is the first type of 'reasonably related' claim, which "is essentially an allowance of loose pleading." *Id.*

> Recognizing that EEOC charges frequently are filled out by employees without the benefit of counsel and that their primary purpose is to alert the EEOC to the discrimination that a plaintiff claims she is suffering, we have allowed claims not raised in the charge to be brought in a civil action where the conduct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination.

*Id.* (internal quotation marks omitted).[7] "An imperfect fit between the EEOC charge and complaint allegations is not fatal as long as Title VII's scheme of agency adjudication in the first instance is not thwarted." *Chinn v. City Univ. of New York Sch. of Law at Queens Coll.*, 963 F. Supp. 218, 222-23 (E.D.N.Y. 1997). However, allegations in a charge may be "too vague to serve as predicates for allegations in the complaint." *Butts*, 990 F.2d at 1403. An allegation in a charge must be "[ ]sufficiently specific to enable the EEOC to investigate it." *Id.*

Ms. Hubert's administrative charges contained allegations that "she was subjected to ongoing harassment ... due to her sex (female)." Doc. 43-1, at 9, 39. She also alleged that, on October 31, 2011, she was bleeding through her pants due to a Workers' Compensation-related injury and her supervisors would not allow her to leave her job to attend two medical appointments and receive medical treatment. *See* Doc. 43-1, at 27-31. She further alleged that the DOC's Affirmative Action Unit investigated whether the events of October 31, 2011 constituted sexual harassment, and that the Affirmative Action Unit had determined that the allegation of discrimination was unsubstantiated. *See* Doc. 43-1, at 33, 34; Doc. No. 55-2, at 5.

The First Amended Complaint in this action alleges numerous specific incidents of Ms. Hubert's supervisors sending pictures of their genitalia to Ms. Hubert, pressuring her to have sexual relations with them, and forcing themselves physically upon her. The Court finds that the allegations contained in the administrative charges are "reasonably related" to the claims of sexual harassment in the First Amended Complaint. The allegation in Ms. Hubert's administrative charges that she was subjected to ongoing sexual harassment is not too vague to serve as a predicate for the allegations in the First Amended Complaint. Rather, an EEOC or CHRO investigation into this charge "likely would have included an inquiry into" her supervisors sending her sexually explicit photographs and pressuring her to have sexual relations with them in exchange for career advancement.[8] *Butts*, 990 F.2d at 1403; *see also McNight v. Dormitory Authority of State of N.Y.*, 995 F. Supp. 70, 80 (noting that "courts have generally construed this *Butts* category liberally to effectuate the remedial purposes of Title VII").

*10 Accordingly, the Court denies the motion to dismiss on the grounds that Plaintiff has failed to exhaust her administrative remedies with respect to claims based on allegations of sexual harassment.

### 3. Pattern and Practice

Defendants argue that Counts One and Five of the First Amended Complaint, asserting claims under Title VII, must be dismissed because they include allegations of a pattern and practice of discrimination. While it is true that the Second Circuit has held that nonclass, private plaintiffs may not rely on the pattern-or-practice method of proof, as described in *International Brotherhood of Teamsters v. United States*, 431 U.S. 324 (1977), "as an independent and distinct method of establishing liability," at the same time, it has held that "[e]vidence of an employer's general practice of discrimination may be highly relevant to an individual disparate treatment or to a disparate impact claim." *Chin v. Port Auth. of New York & New Jersey*, 685 F.3d 135, 150 (2d Cir. 2012). Here, Ms. Hubert has alleged numerous specific incidents of disparate treatment that she herself suffered, and furthermore appears to be using the term pattern and practice[9] "in the ordinary sense of those words, rather than in the technical sense describing a theory of liability for discrimination," and in that sense, such evidence "remains relevant." *Id.* at 147.

Therefore, the Court denies Defendants' motion to dismiss Counts One and Five for using the term "pattern and practice."

### 4. Count Thirteen

Count Thirteen alleges that the DOC and Davis, Godding, Austin, and Collender violated Ms. Hubert's civil rights under 42 U.S.C. §§ 1981, 1983, 1985, 1986, and 1988. Defendants Davis, Godding, Austin, and Collender (the "Supervisory Defendants") all served in supervisory roles over Ms. Hubert. Plaintiff notes in her filing in opposition to the Motion to Dismiss that she is withdrawing her claims under section 1983 as to the State of Connecticut. *See* Doc. No. 55, at 2; Doc. No. 55-1, at 37.

#### a. Section 1981 and Section 1983 Claims

The Court has dismissed all claims against the Individual Defendants in their personal capacities due to lack of personal jurisdiction. *See supra*, Section II.A.3. With the Plaintiff's withdrawal of the section 1983 claims against the State of Connecticut, no section 1983 claims remain. Furthermore, because Ms. Hubert brings her section 1981 claims through section 1983, *see* Doc. No. 55-1, at 34, no section 1981 claims remain, either.

### b. Section 1985 and Section 1986 Claims

"Section 1985(3) prohibits conspiracies that are intended to deprive 'either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws.' " *Gagliardi v. Vill. of Pawling*, 18 F.3d 188, 194 (2d Cir. 1994). "In order to maintain an action under Section 1985, a plaintiff must provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end." *Webb v. Goord*, 340 F.3d 105, 110-11 (2d Cir. 2003) (internal quotation marks omitted). Defendants argue that the First Amended Complaint fails to plead facts that would state a claim for conspiracy. If Defendants are correct, then the section 1986 claim, for failure to prevent a conspiracy to deprive Ms. Hubert of her rights, must also be dismissed "because no § 1986 claim will lie where there is no valid § 1985 claim." *Posr v. Court Officer Shield No. 207*, 180 F.3d 409, 419 (2d Cir. 1999).

**\*11** Here, the First Amended Complaint alleges that there was a "running bet" among Ms. Hubert's supervisors as to which of them would be the first to engage in sexual intercourse with her. Compl. ¶ 72. Accepting this allegation as true and considering it in the light most favorable to Plaintiff, as this Court must on a motion to dismiss for failure to state a claim, *see Galper v. JP Morgan Chase Bank, N.A.*, 802 F.3d 437, 443 (2d Cir. 2015), the Court finds that this is sufficient to state a plausible basis supporting a meeting of the minds to deprive Ms. Hubert of her rights under section 1985. Accordingly, at this time, Defendants have failed to show that Ms. Hubert's section 1985 and 1986 claims should be dismissed under Rule 12(b)(6).

### III. JURY DEMAND

Defendants also have moved to "dismiss plaintiffs' claim for a trial by jury as to her request for back pay, front pay and other equitable relief." Doc. No. 43, at 50. A demand for a jury trial made pursuant to Rule 38, Fed. R. Civ. P., however, is not a "claim for relief," and it is therefore inappropriate to contest it through a motion to dismiss under Rule 12, Fed. R. Civ. P.[10] Accordingly, Defendants' motion to dismiss Plaintiffs' jury demand is found to be procedurally improper and therefore a nullity. *See, e.g., Spiegel v. Quality Bakers of Am. Co-op., Inc.*, No. 91-cv-5703, 1992 WL 349799, at \*1 (S.D.N.Y. Nov. 10, 1992) (deeming "plethora of motions" to be nullities based on underlying procedural defect); *S.E.C. v. Breed*, No. 01-cv-7798, 2004 WL 1171241, at \*2 (S.D.N.Y. May 26, 2004) (treating motion for extension of time as a nullity due to underlying procedural defect).

### IV. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss [Doc. No. 40] is **GRANTED IN PART** and **DENIED IN PART**, as follows.

All claims against Defendants Davis, Godding, Curry, Austin, and Collender in their personal capacities are **DISMISSED** pursuant to Rules 12(b)(2) and 12(b)(5) for lack of personal jurisdiction.

The motion to dismiss all claims against the DOC and Defendants Davis, Godding, Curry, Austin, and Collender in their official capacities pursuant to Rule 12(b)(5) for insufficient service of process is **DENIED**.

The motion to dismiss Counts Two, Three, Four, Six, Seven, Eight, and Eleven against the DOC and Defendants Davis, Godding, Curry, Austin, and Collender in their official capacities pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction is **GRANTED**.[11] The motion to dismiss Counts Nine and Ten pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction is **GRANTED** to the extent these counts assert official capacity claims under the CFEPA.

The motion to dismiss Counts Nine and Ten, to the extent they assert official capacity claims under Title VII, and Counts One and Five against the DOC and Defendants Davis, Godding, Curry, Austin, and Collender in their official capacities for failure to exhaust administrative remedies is **DENIED**.

The motion to dismiss Counts One and Five against the DOC and Defendants Davis, Godding, Curry, Austin, and Collender in their official capacities pursuant to Rule 12(b)(6) for failure to state a claim is **DENIED**.

The motion to dismiss Count Thirteen, to the extent it asserts claims under sections 1985 and 1986 against the DOC and Defendants Davis, Godding, Austin, and Collender in their official capacities pursuant to Rule 12(b)(6) for failure to state a claim is **DENIED**.

**\*12** In addition, Plaintiff has voluntarily withdrawn Count Twelve, and she has voluntarily withdrawn Count Thirteen to the extent it asserts a section 1983 claim against the DOC and Defendants Davis, Godding, Austin,

and Collender in their official capacities.

Accordingly, the following counts of the First Amended Complaint may proceed:

> • Count One as to the DOC and Defendants Davis, Godding, Curry, Austin, and Collender in their official capacities
>
> • Count Five as to the DOC and Defendants Davis, Godding, Curry, Austin, and Collender in their official capacities.
>
> • Count Nine, to the extent it asserts claims under Title VII, as to Defendant Davis in his official capacity.
>
> • Count Ten, to the extent it asserts claims under Title VII, as to Defendant Collender in his official capacity.
>
> • Count Thirteen, to the extent it asserts claims under sections 1985, 1986, and 1988 as to the DOC and Defendants Davis, Godding, Austin, and Collender in their official capacities.

All other claims are dismissed from this action.

Also pending is Defendants' motion to stay discovery [Doc. No. 44]. This motion is **DENIED AS MOOT**.

SO ORDERED at Bridgeport, Connecticut, this 22nd day of February, 2016.

**All Citations**

Not Reported in Fed. Supp., 2016 WL 706166

Footnotes

1   The complaint incorrectly named the Defendant as "State of Connecticut Department of Corrections" when it is actually "State of Connecticut Department of Correction." The Clerk is directed to correct the caption accordingly.

2   All background information is taken from the Complaint, unless otherwise noted. All allegations in the Complaint are accepted as true for purposes of the motion to dismiss. See *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) ("it is well established that, in passing on a motion to dismiss, whether on the ground of lack of jurisdiction over the subject matter or for failure to state a cause of action, the allegations of the complaint should be construed favorably to the pleader").

3   Plaintiff Etienne Hubert appears to assert only a claim under Count Two of the First Amended Complaint, for loss of consortium. Therefore, when this ruling refers to "Plaintiff," it shall mean Plaintiff Sharone Hubert, unless otherwise noted.

4   Plaintiffs served the original complaint and summons fifty-nine days late to the original defendants and the First Amended Complaint and summons twenty-three days late to the additional defendants.

5   "There are three exceptions: (1) when the legislature, either expressly or by force of a necessary implication, statutorily waives the state's sovereign immunity; (2) when an action seeks declaratory or injunctive relief on the basis of a substantial claim that the state or one of its officers has violated the plaintiff's constitutional rights; and (3) when an action seeks declaratory or injunctive relief on the basis of a substantial allegation of wrongful conduct to promote an illegal purpose in excess of the officer's statutory authority." *Columbia Air Servs., Inc.*, 293 Conn. at 349 (internal quotation marks and citations omitted).

6   Counts Nine and Ten are dismissed only to the extent they assert claims under the CFEPA, as Defendants' sovereign immunity arguments do not apply to claims brought under Title VII.

7   Some courts have declined "to provide to the Plaintiff the 'loose pleading' leniency that extends to *pro se* claimants or litigants" where, as here, "the Plaintiff did have the benefit of counsel when she filed her administrative charges." *Zawacki v. Realogy Corp.*, 628 F. Supp. 2d 274, 284 (D. Conn. 2009).

8   In fact, it appears that the photographs may have come up during the course of the CHRO process. *See* Doc. No. 55-2, at 10 ("I was asked to show the pictures at my merits hearing at CHRO in December 2013, and I showed the pictures Captain Godding had sent to my cellular telephone").

9   *See*, *e.g.*, Compl. ¶ 91 ("The Defendants ... violated or interfered with rights secured to the Plaintiff ... by a pattern and practice of disparate treatment of Plaintiff ....").

WESTLAW   © 2019 Thomson Reuters. No claim to original U.S. Government Works.   10

10    A litigant may challenge a demand for a jury trial through a motion to strike the demand. *See*, *e.g.*, *Rosen v. Dick*, 639 F.2d 82, 86 (2d Cir. 1980); *Winchester Indus., Inc. v. Sentry Ins.*, 630 F. Supp. 2d 237, 241 (D. Conn. 2009).

11    Because Plaintiff Etienne Hubert's only claims in this case are thus dismissed, he is now no longer a plaintiff in this action.

---

**End of Document**  © 2019 Thomson Reuters. No claim to original U.S. Government Works.