2015 WL 8375211
Only the Westlaw citation is currently available.
United States District Court, W.D. New York.

COVANEX, INC., Plaintiff,
v.
Vijay DUVVADA, Srinivasarao Kasa, and Resource America Information Technology, Inc. Defendants.

Case # 14-CV-6050-FPG
|
Signed December 7, 2015
|
Filed 12/08/2015

**Attorneys and Law Firms**

Kyle Christopher Reeb, Ryan J. Lucinski, Stephen W. Kelkenberg, Hodgson Russ, LLP, Buffalo, NY, for Plaintiff.

Laurie A. Giordano, Jeremy M. Sher, Leclair Korona Giordano Cole LLP, Rochester, NY, for Defendants.

DECISION & ORDER

FRANK P. GERACI JR., Chief Judge United States District Court

INTRODUCTION

*1 Plaintiff Covanex, Inc. ("Covanex") originally brought this action on December 31, 2013 in New York State Supreme Court, County of Steuben, asserting a breach of contract claim against former employees Vijay Duvvada ("Duvvada") and Srinivasarao Kasa ("Kasa") and various business torts against Duvvada, Kasa, and competitor Resource America Information Technology, Inc. ("RAIT").

After removing the case to this Court, Defendants filed the instant Motion to Dismiss pursuant to Rules 12(b)(2) and 12(b)(5) of the Federal Rules of Civil Procedure. ECF No. 5. For the reasons stated below, Defendants' Motion to Dismiss pursuant to 12(b)(5) is denied. Although the facts alleged by Covanex are insufficient to confer personal jurisdiction over RAIT, Covanex will be granted limited jurisdictional discovery.

BACKGROUND

**1. Factual Allegations**[1]
Covanex is a New York corporation with its principal place of business in Corning, New York. Covanex provides third-party information technology ("IT") services throughout the United States and Canada.

In 2012, Duvvada and Kasa began working for Covanex as programmer analysts. Both Duvvada and Kasa signed an Employment Agreement with Covanex. The Employment Agreement includes Non-Competition, Non-Solicitation, Confidentiality, and Termination provisions.

As programmer analysts, Duvvada and Kasa provided IT services to Covanex clients at client locations. Duvvada was assigned to work on a project for United Global Technologies ("UGT"), a company based in North Carolina. Kasa was assigned to work on a project for Artech Information Systems LLC ("Artech"), a New Jersey limited liability company with its principle place of business in New Jersey.[2] Both UGT and Artech signed contracts with Covanex.

RAIT, an Illinois corporation with its principle place of business in Wildwood, Missouri, is a direct competitor with Covanex. In 2013, RAIT solicited Duvvada and Kasa to leave Covanex and instead work for RAIT. RAIT then hired both Duvvada and Kasa, despite knowing that they were both bound by work agreements with Covanex. While working for RAIT, Duvvada continued to provide services for UGT and Kasa continued to provide services for Artech, despite the fact that both UGT and Artech were bound by contracts with Covanex.

Covanex also alleges that in violation of their

© 2019 Thomson Reuters. No claim to original U.S. Government Works. 1

Employment Agreements, Duvvada and Kasa shared Covanex's proprietary and confidential information with RAIT. Specifically, Duvvada and Kasa shared information regarding Covanex's customers, pricing, and strategy. This allowed RAIT to underbid Covanex for work contracts with Covanex's customers, including Artech and UGT. Covanex alleges that RAIT's purpose in hiring Duvvada and Kasa was to intentionally target Covanex's customers.

**2. Procedural History**

*2 In its Verified Complaint ("Complaint"), Covanex asserts six different claims: (1) breach of contract against Duvvada and Kasa; (2) breach of fiduciary duty against Duvvada and Kasa; (3) tortious interference with a contract against RAIT; (4) tortious interference with a contract against Duvvada; (5) tortious interference with actual and prospective business relationships against Duvvada, Kasa, and RAIT; (6) misappropriation of confidential and proprietary information and trade secrets against Duvvada and Kasa. ECF No. 1-3.

Along with its Complaint, Covanex filed a motion seeking a preliminary injunction and a temporary restraining order. ECF No. 1-6. The Supreme Court signed an Order to Show Cause granting certain temporary injunctive relief and ordering Defendants RAIT, Duvvada, and Kasa to appear on February 13, 2014 for a hearing regarding Covanex's motion for a preliminary injunction. ECF No. 1-4. The Order to Show Cause provided that "service of this Order to Show Cause, together with the papers upon which it is made shall be immediately mailed and then served by hand delivery on Jan[uary] 17, 2014" upon each Defendant at specified addresses. Id.

On February 3, 2014, Defendants removed the case to this Court pursuant to 28 U.S.C. § 1441(a). ECF No. 1. Defendants then filed the instant Motion to Dismiss, in which (1) all Defendants argue that Covanex's Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(5) because Covanex failed to serve Defendants in compliance with the Supreme Court's Order to Show Cause, and (2) RAIT argues that Covanex's claims against RAIT should be dismissed pursuant to Rule 12(b)(2) because this Court lacks personal jurisdiction over RAIT. ECF No. 5-4.

## DISCUSSION

**1. Service of Process**

Defendants assert that dismissal under 12(b)(5) is warranted due to Covanex's failure to serve Defendants in compliance with the Order to Show Cause issued in state court prior to removal. This argument is flawed for two basic reasons.

First, any failure by Covanex to serve Defendants in accordance with the state court Order to Show Cause would only be relevant to the enforcement of the order itself, not the entire action. See Leadsinger, Inc. v. Cole, No. 05 CIV. 5606(HBP), 2006 WL 2266312, at * 11 (S.D.N.Y. Aug. 4, 2006) (holding that "the failure to serve an order to show cause in the manner directed is fatal *to the enforcement of that order*") (emphasis added). Defendants cite Kue Mee Realty Corporation v. Louie, 743 N.Y.S.2d 863, 863 (2002), for the proposition that the failure to serve in accordance with an order to show cause warrants dismissal of the entire action. But Kue Mee involved a state law ejectment action, which was originally commenced by an order to show cause. See Appellant's Brief at 5, Kue Mee Realty Corp., 743 N.Y.S.2d 863 (No. 1482), 2001 WL 36100378, at *5. In that context, where an *ex parte* application for injunctive relief is the entire action, failure to serve in accordance with the order to show cause necessarily means the action as a whole is tainted by defective service. But this is not that case. Here, Covanex commenced the action in New York State Supreme Court by filing an ordinary civil complaint. ECF No. 1-3. The fact that Covanex *also* submitted a motion for temporary and preliminary injunctive relief (ECF No. 1-6) and a proposed Order to Show Cause regarding that motion (ECF No. 1-4) does not mean that defective service of the Order to Show Cause warrants dismissal of the entire action.

Second, even assuming service was defective prior to removal, Defendants' removal of this case to federal court automatically negated any argument that dismissal is now warranted on the basis of pre-removal service defects. 28 U.S.C. § 1448 provides that "[i]n all cases removed from any State court to any district court of the United States in which any one or more of the defendants has not been served with process or in which the service has not been perfected prior to removal, or in which process served proves to be defective, such process or service may be completed or new process issued in the same manner as in cases originally filed in such district court." In other words, removal cleans the slate and gives Covanex a chance to cure any defects in service that may have

existed prior to removal. *Yaman v. D'Angelo,* 206 F. Supp. 2d 394, 401 (W.D.N.Y. 2002); *Weinberg v. Colonial Williamsburg, Inc.,* 215 F. Supp. 633, 635 (E.D.N.Y. 1963).

**2. Personal Jurisdiction**
**\*3** RAIT[3] next argues that all claims against it should be dismissed pursuant to Rule 12(b)(2) because Covanex has failed to allege a sufficient basis for personal jurisdiction.

Resolving an issue of personal jurisdiction involves a two-part inquiry into whether, given the circumstances of the case, (1) New York law confers jurisdiction by New York courts over the defendant, and (2) the exercise of jurisdiction over the defendant comports with the Due Process Clause of the Fourteenth Amendment. *Grand River Enterprises Six Nations, Ltd. v. Pryor,* 425 F.3d 158, 165 (2d Cir. 2005). Plaintiff bears the burden of demonstrating both of these elements. *Troma Entm't, Inc. v. Centennial Pictures Inc.,* 729 F.3d 215, 217 (2d Cir. 2013). To survive a motion to dismiss, a plaintiff need only make a "prima facie showing that jurisdiction exists." *Id.* (quoting *Penguin Group (USA) Inc. v. American Buddha,* 609 F.3d 30, 34 (2d Cir. 2010)).

Personal jurisdiction is commonly separated into two categories. First, a court may exercise specific jurisdiction over a defendant on the basis of the defendant's in-state activities connected to the litigation. *International Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement,* 326 U.S. 310, 317 (1945). Second, a court may exercise general jurisdiction over a defendant when the defendant's contacts with the forum state are so extensive as to render the defendant "at home" in that forum state, regardless of whether any of the defendant's in-state activities are relevant to the litigation. *Daimler AG v. Bauman,* 134 S. Ct. 746, 754, (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown,* 131 S. Ct. 2846, 2851(2011)).

**a) Specific Jurisdiction**
RAIT argues that Covanex has failed to establish a basis under New York law for this Court to exercise specific jurisdiction over RAIT. In response, Covanex asserts that New York's long arm statute, New York Civil Practice Law and Rules ("C.P.L.R.") § 302, authorizes personal jurisdiction over RAIT. Specifically, Covanex points to C.P.L.R. §§ 302(a)(2) and 302(a)(3). Neither section confers jurisdiction over RAIT based on the facts alleged.

**i. C.P.L.R. § 302(a)(2)**
C.P.L.R. § 302(a)(2) allows New York courts to exercise specific jurisdiction over a non-domiciliary defendant where the defendant "commits a tortious act within the state." A defendant must have been physically present in New York to have committed a tortious act "within the state" for the purposes of § 302(a)(2). *Bensusan Rest. Corp. v. King,* 126 F.3d 25, 28 (2d Cir. 1997); *Roberts-Gordon, LLC v. Superior Radiant Products, Ltd.,* 85 F. Supp. 2d 202, 213 (W.D.N.Y. 2000).

Here, Covanex has not alleged that any of the tortious acts committed by RAIT were committed while RAIT was physically present in New York. Instead, Covanex bases its claim that RAIT committed a tortious act within New York "on RAIT's interference with the contracts of Duvvada and Kasa, which may, on information and belief, have occurred while either Duvvada or Kasa was within New York." ECF No. 15, at 11; ECF No. 23, at 5. But the fact that either Duvvada or Kasa may have been present in New York at the time of RAIT's interference does not mean that RAIT was somehow also in New York at that same time.[4] Because Covanex has not alleged any tortious act committed by RAIT while RAIT was physically present in New York, § 302(a)(2) does not confer personal jurisdiction over RAIT in this action.

**ii. C.P.L.R. § 302(a)(3)**
**\*4** C.P.L.R. § 302(a)(3) allows New York courts to exercise specific jurisdiction over a non-domiciliary defendant where the defendant "commits a tortious act without the state causing injury to person or property within the state."[5] The injury suffered by the plaintiff in New York "must be direct and not remote or consequential." *Lehigh Vol. Indus., Inc. v. Birenbaum,* 527 F.2d 87, 94 (2d Cir. 1975). The mere "occurrence of financial consequences in New York due to the fortuitous location of plaintiffs in New York" is therefore not enough. *Darby Trading Inc. v. Shell Int'l Trading & Shipping Co.,* 568 F. Supp. 2d 329, 338 (S.D.N.Y. 2008). "This principle has specific application to claims such as tortious interference, and generally precludes jurisdiction when the asserted injury is the loss of a customer outside of New York." *Kelly v. MD Buyline, Inc.,* 2 F. Supp. 2d 420, 439 (S.D.N.Y. 1998); *see also ICC Primex Plastics Corp. v. LA/ES Laminati Estrusi Thermoplastici S.P.A.,*

775 F. Supp. 650, 656 (S.D.N.Y. 1991).

Here, Covanex has failed to adequately allege that it suffered injury in New York as a result of RAIT's tortious conduct. The only clients Covanex claims it lost are Artech and UGT, both of which are out-of-state corporations.[6] In opposition to Defendants' Motion to Dismiss, the attorney representing Covanex filed a Declaration in which he stated that "[t]he loss of Covanex's trade secrets to Duvvada and Kasda [sic], who shared the trade secrets with RAIT, affects Covanex's business plans and strategy within and without New York." ECF No. 14, at 4 ¶ 17. Even if the Court were to take this conclusory statement as true, and further assume for the sake of argument that an altered business strategy is a sufficient injury under § 302(a)(3), the loss of trade secrets to Duvvada and Kasa is irrelevant to the question of whether *RAIT's conduct* caused any injury to Covanex in New York. Covanex's claim for misappropriation of trade secrets is against Duvvada and Kasa, not RAIT. ECF No. 1-3, at 25. Because Covanex has not alleged injury in New York as a result of RAIT's tortious conduct, this Court has no basis under § 302(a)(3) to assert personal jurisdiction over RAIT.

**b) General Jurisdiction**

Covanex also argues that RAIT's "continuous and systematic" contacts with New York give this Court general jurisdiction over RAIT. However, because Covanex has not alleged that RAIT is "at home" in New York, the exercise of general jurisdiction over RAIT in this case would violate due process.

The Supreme Court, in *Daimler AG,* recently clarified the standard for determining whether a state may exercise general jurisdiction over a foreign corporation. The correct inquiry is not whether the corporation's contacts with the forum can be classified as "continuous and systematic," but whether the corporation's affiliations with the forum "render it essentially at home in the forum State." *Daimler AG,* 134 S. Ct. at 761 (quoting *Goodyear,* 131 S. Ct. at 2851). A corporation is generally "at home" where it is incorporated and where it has its principle place of business. *Id.* at 760.

**\*5** Here, RAIT is an Illinois corporation with its principle place of business in Wildwood, Missouri. ECF No. 1-3, at 4. Although the Court in *Daimler AG* left open the possibility that "in an exceptional case" a corporation's contacts with a state other than its formal place of incorporation or principle place of business "may be so substantial and of such a nature as to render the corporation at home in that State," *Id.* at 761 n.19, RAIT's contacts with New York (as alleged by Covanex) do not even begin to approach that level. The only evidence Covanex cites is a pair of sworn Labor Conditions Application ("LCA") forms filed by RAIT with the U.S. Department of Labor. ECF No. 24-1, Ex. A. These forms simply indicate that RAIT planned to place two employees in New York for three-year periods beginning in 2013. *Id.* Such negligible contacts cannot conceivably render RAIT "at home" in New York. *Daimler AG,* 134 S. Ct. at 761 n.19; *see also In re Roman Catholic Diocese of Albany, New York, Inc.,* 745 F.3d 30, 40 (2d Cir. 2014); *Perkins v. Benguet Consol. Min. Co.,* 342 U.S. 437 (1952); *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408 (1984); *Goodyear,* 131 S. Ct. at 2846.

**3. Jurisdictional Discovery**

Covanex has requested limited jurisdictional discovery to potentially resolve the elements that are lacking in its jurisdictional showing.

To obtain jurisdictional discovery, the plaintiff must make "a threshold showing that there is some basis for the assertion of jurisdiction." *Sayles v. Pac. Eng'g & Constructors, Ltd.,* No. 08CV676S, 2012 WL 895944, at *4 (W.D.N.Y. Mar. 15, 2012). "Where plaintiffs do not establish a prima facie case that the district court has jurisdiction over the defendant, the district court does not err in denying jurisdictional discovery." *Chirag v. MT Marida Marguerite Schiffahrts,* 604 F. App'x 16, 18-19 (2d Cir. 2015) (citing *Jazini v. Nissan Motor Co.,* 148 F.3d 181, 186 (2d Cir. 1998)). "A prima facie case requires non-conclusory fact-specific allegations or evidence showing that activity that constitutes the basis of jurisdiction has taken place." *Id.* at 19.

The Court finds that although the facts currently alleged by Covanex do not provide a sufficient basis for exercising personal jurisdiction over RAIT, Covanex has made a threshold showing which suggests that such facts may exist. Limited jurisdictional discovery is therefore warranted with respect to whether RAIT's contacts with this forum meet the standards outlined in this opinion.

**CONCLUSION**

For the reasons stated above, Defendants' Motion to Dismiss pursuant to Rule 12(b)(5) (ECF No. 5) is DENIED. Covanex is granted limited jurisdictional discovery.

IT IS SO ORDERED.

**All Citations**

Not Reported in Fed. Supp., 2015 WL 8375211

Footnotes

| | |
|---|---|
| 1 | The following allegations are taken from Covanex's Verified Complaint and the attached exhibits (ECF No. 1-3). |
| 2 | Covanex states in its Complaint that Artech is authorized to conduct business in New York and that "Upon information and belief, Artech's Northeast Regional Office is located at 36 Washington Avenue, Endicott, New York 13760." However, it is unclear whether Covanex ever communicated with or placed an employee at this location. |
| 3 | Because both Duvvada and Kasa's employment agreements include New York forum selection clauses, those Defendants concede that this Court has personal jurisdiction over them in this matter. ECF No. 5-4, at 7 n.l. Only RAIT moves to dismiss under 12(b)(2). *Id.* |
| 4 | Covanex has not alleged that Duvvada or Kasa's acts can somehow be attributed to RAIT at the time RAIT allegedly interfered with the contracts of Duvvada and Kasa. Indeed, by asserting a tortious interference with contract claim against RAIT, Covanex is impliedly claiming that Duvvada and Kasa were Covanex employees (and *not* RAIT employees) during the relevant time period. |
| 5 | Section 302(a)(3) also requires that the defendant either "(i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce." Because Covanex has failed to allege injury within New York, the Court need not reach whether one of these two standards has been satisfied. |
| 6 | Although Covanex's Complaint states that "upon information and belief" Artech has a Northeast Regional Office in Endicott, New York, Covanex does not allege that it ever communicated with or placed an employee at this location. Without more information, the Court cannot conclude that Artech is a "New York client" for the purposes of determining whether Covanex suffered injury in New York. |

**End of Document** © 2019 Thomson Reuters. No claim to original U.S. Government Works.