240 Fed.Appx. 457
This case was not selected for publication in the Federal Reporter.
Not for Publication in West's Federal Reporter.
See Fed. Rule of Appellate Procedure 32.1 generally governing citation of judicial decisions issued on or after Jan. 1, 2007. See also Third Circuit LAR, App. I, IOP 5.7. (Find CTA3 App. I, IOP 5.7)
United States Court of Appeals,
Third Circuit.
Daniel MOORE

v.

Dorothy VISLOSKY, Appellant in 06–1232.
Daniel Moore, Appellant in 06–1304

v.

Dorothy Vislosky.

Nos. 06–1232, 06–1304.
|
Argued March 13, 2007.
|
Filed: April 23, 2007.

**Synopsis**
**Background:** Inspector of construction and road projects brought defamation action against community leader for statements made during and after town meeting accusing inspector and others in his company of corruption and criminal conduct. The United States District Court for the Eastern District of Pennsylvania, Clifford Scott Green, J., entered judgment on jury's verdict in favor of inspector and denied community leader's post-trial motions for new trial. Community leader appealed, and inspector cross-appealed.

**Holdings:** The Court of Appeals held that:

[1] under Pennsylvania law, in order to show abuse of conditional privilege for statements that touch matter of public interest, inspector was required to show that community leader made statements with knowledge that statements were false or with reckless disregard for truth;

[2] in order to be entitled to presumed damages, inspector had to show that community leader acted with actual malice;

[3] evidence was sufficient to show that community leader's statements were made with actual malice;

[4] district court committed plain error when it failed to instruct jury that actual malice had to be proven by clear and convincing evidence;

[5] instruction error did not warrant new trial;

[6] under Pennsylvania law, jury could presume damages in favor of inspector if it found by clear and convincing evidence that community leader acted with actual malice;

[7] evidence was insufficient to support claim for punitive damages.

Affirmed.

West Headnotes (9)

[1]   **Libel and Slander**
      **Discharge of duty to others or to public and common interest in subject-matter**

      In order for inspector of construction projects to show, under Pennsylvania law, that community leader abused conditional privilege with respect to defamatory statements that touched upon matter of public concern, namely, statements at public meetings that inspection reports and punch lists were approved, without work having been performed, and that inspector was demanding kickbacks from contractors, inspector was required to show that community leader made statements with knowledge that statements were false or with reckless disregard for truth. 42 Pa.C.S.A. § 8343(a); Restatement (Second) of Torts § 600.

      2 Cases that cite this headnote

[2]   **Libel and Slander**
      **On ground of malice or recklessness**

      In order for inspector of construction projects to be entitled to presumed or punitive damages in

defamation action against community leader who allegedly made statements at public meeting that inspector was approving punch lists and inspection reports for work that had not been completed and was demanding kickbacks from contractors, inspector had to show that community leader acted with actual malice, i.e., made comments knowing that they were false or with reckless disregard for truth.

1 Cases that cite this headnote

[3] **Libel and Slander**
🔑 Intent, malice, or good faith

Evidence was sufficient to show that community leader intended to defame inspector of construction projects personally, for purposes of determining whether community leader acted with actual malice when by stating during hallway conversation following meeting that inspector was approving punch lists and inspection reports without work having been performed and was demanding kickbacks from contractors, despite witnesses who testified that the did not hear community leader mention inspector's name during hallway conversation; two witnesses testified that they heard community leader specifically mention inspector, and other witnesses who did not hear inspector's name mentioned were not present during entire conversation.

Cases that cite this headnote

[4] **Libel and Slander**
🔑 Intent, malice, or good faith

Evidence was sufficient to show that community leader's defamatory statements during meeting with town supervisors about inspectors for specific company assigned to inspect construction and roadway projects, namely that they approved punch lists and inspection reports without work having been performed and that inspectors were demanding kickbacks from contractors, was directed at specific inspector,

for purposes of demonstrating that community leader intended to defame inspector, in defamation action; witness testified that he understood community leader to be making statements about inspector, and inspector was one of two inspectors for company that was assigned to oversee projects at issue.

Cases that cite this headnote

[5] **Libel and Slander**
🔑 Intent, malice, or good faith

Evidence was sufficient to show that community leader's defamatory statements about inspector of construction and roadway projects, namely that inspector was approving punch lists and inspection reports without work having been performed, and that he was demanding kickbacks from contractors, were made with reckless disregard for truth, and therefore, that community leader acted with actual malice, as required for inspector to recover for defamation; community leader added force to statements that she was judge and knew about defamation and that she could prove her allegations, she never presented documentary evidence she allegedly had to support claims, despite order compelling her to do so, her explanation for failure to produce documents, that she "lost" them but did not think she needed to retain them, was implausible, in that she knew she was obligated to produce alleged documents, she admitted that she had never seen punch list or inspection report that had been approved without work having been completed, and she admitted that she had no evidence of wrongdoing against inspector.

1 Cases that cite this headnote

[6] **Federal Courts**
🔑 Instructions

District court committed plain error when it failed to instruct jury that finding that community inspector acted with actual malice

with respect to defamatory statements against inspector of construction and road projects, namely that he was approving punch lists and inspection reports without work having been completed and was demanding kickbacks from contractors, had to be proven by clear and convincing evidence, in defamation action in which inspector was seeking presumed damages.

Cases that cite this headnote

[7] **Federal Courts**
🗝Instructions

Error in district court's failure to instruct jury that finding that community inspector acted with actual malice with respect to defamatory statements against inspector of construction and road projects, namely that he was approving punch lists and inspection reports without work having been completed and was demanding kickbacks from contractors, had to be proven by clear and convincing evidence, was not fundamental or prejudicial to community leader's rights and did not warrant new trial for unpreserved error in defamation action; community leader had ample opportunity to request instruction before verdict was reached, but she did not object until after verdict had been entered against her and district court had denied post-trial motions.

4 Cases that cite this headnote

[8] **Libel and Slander**
🗝Weight and Sufficiency
**Libel and Slander**
🗝Elements of Compensation

Under Pennsylvania law, jury could presume damages in favor of inspector for construction and road project in defamation action if it found by clear and convincing evidence that community leader acted with actual malice with respect to statements at town meeting that inspector was approving punch lists and inspection reports without work having been performed and was demanding kickbacks from contractors.

1 Cases that cite this headnote

[9] **Libel and Slander**
🗝On ground of malice or recklessness

Evidence was insufficient under Pennsylvania law to show that community leader's accusations at and following town meeting, namely that inspector for construction and road projects and other inspectors with his company were approving punch lists and inspection reports without work having been performed and were demanding kickbacks from contractors, were made with evil intent toward inspector, as required for inspector to be entitled to punitive damages, in defamation action; community leader's statements were intended to spur town supervisors to investigate alleged corruption and criminal conduct and were not aimed at inspector personally.

Cases that cite this headnote

**\*459** On Appeal from the United States District Court for the Eastern District of Pennsylvania (D.C. Civil No. 04–cv–04563), District Judge: Honorable Clifford Scott Green.

**Attorneys and Law Firms**

George Bochetto, David P. Heim (Argued), Bochetto & Lentz, P.C., Philadelphia, PA, for Appellant, Cross–Appellee.

Robert O. Baldi (Argued), New Hope, PA, for Appellee, Cross–Appellant.

Before: FUENTES, VAN ANTWERPEN, and SILER[*], Circuit Judges.

***460** OPINION OF THE COURT

PER CURIAM.

****1** Appellant Dorothy Vislosky appeals the District Court's order denying her motion for judgment as a matter of law and for a new trial after a jury returned a verdict awarding $100,000 in damages to Daniel Moore in this defamation action. Appellee Daniel Moore has filed a cross-appeal on the issue of punitive damages.

Vislosky raises three issues on appeal. First, she contends the District Court erred in denying her motion for judgment as a matter of law because the trial record was insufficient to establish, by clear and convincing evidence, that Vislosky acted with actual malice in making the alleged defamatory statements. Vislosky also claims she should be granted a new trial because: 1) the District Court failed to instruct the jury on the clear and convincing evidence standard required by Supreme Court precedent, and 2) the District Court erroneously instructed the jury that Moore was entitled to presumed damages under Pennsylvania law. In his cross-appeal, Moore contends he should be granted a new trial on the issue of punitive damages only because the District Court erroneously refused to instruct the jury on such damages.

The District Court had jurisdiction over this diversity action[1] pursuant to 28 U.S.C. § 1332. We have jurisdiction over the appeal pursuant to 28 U.S.C. § 1291. We will affirm.

### I. Factual Background

At the heart of this politically-charged defamation action are various statements concerning corruption and criminal activity in the inspection of road programs made by Dorothy Vislosky, an active citizen and community leader in Falls Township, Pennsylvania ("the Township"). Specifically, Vislosky alleged that inspection reports and punch lists were approved, although the work was not actually performed, and that inspectors were demanding kickbacks from contractors. Furthermore, she repeatedly stated she "could prove it." *See, e.g.*, J.A. at 0722. At the time the alleged defamatory statements were made, Daniel Moore was employed as an inspector at Unitech, an engineering firm hired by the Township to inspect construction and road work projects.[2] Moore contends Vislosky's statements were directed at him and were false.

Moore alleged that Vislosky made defamatory statements about him on two occasions: 1) she specifically mentioned his name during a hallway conversation that took place on December 16, 2003 immediately following an executive session of the Board of Supervisors of Falls Township,[3] ***461** and 2) she made general references to Unitech inspectors during four separate Falls Township public meetings.

The parties agree that Vislosky interrupted an executive session of the Township Supervisors on December 16, 2003 in an effort to speak with them, but that they declined to meet with her at that time. Nevertheless, the executive session ended shortly thereafter, and Vislosky began speaking to the Supervisors as they filed out of the meeting room and into the hallway.

The substance of this hallway conversation was sharply disputed by the parties at trial. According to Moore, Vislosky accused Moore of criminal conduct, including padding his bills and "shaking down" the contractors. Moore maintains that Vislosky specifically mentioned him by name in the context of these allegations. Vislosky maintains that the hallway conversation focused on a "car chase" in which she and another man who was a supervisor at Dominion Power followed Bruce Campbell, the owner of Unitech, and observed Campbell meeting with James Rhein, whom Vislosky described as someone with "a very unsavory reputation." J.A. at 0366. She stated that she went to the executive session to report these observations to the Supervisors and to offer them "an olive branch." *Id.* at 0368. Both in her pleadings and at trial, Vislosky specifically denied ever using the name "Daniel Moore" and, in fact, claimed she did not even know who Dan Moore was at that time. She agreed that she had mentioned Dominion Power during the hallway conversation, but only in the context of telling the Supervisors that Dominion was going to do an audit of their SSA accounts.[4]

****2** A total of six witnesses, all of whom were present at the executive session, testified at trial about the substance of the hallway conversation. Four witnesses (Clarke, Otto, Snipes, and Dayton) testified to hearing Vislosky mention Unitech inspectors and Dominion Power during the course of the conversation. The other two witnesses (Szupka and Bergman) stated that Vislosky only recounted her observance of the car chase and Campbell and Rhein together, and that she did not specifically mention Unitech inspectors or Dominion Power.

Two of the witnesses (Otto and Dayton) testified to

hearing the name Daniel Moore during the conversation. Two of the witnesses (Szupka and Bergman) testified unequivocally that they did not hear the name Daniel Moore. Clarke testified that he did not hear the name Daniel Moore, but also stated, "I was trying to pay attention but there was a lot going on in the hallway." J.A. at 0059. And, in response to a question of whether he was in the hallway the entire time the conversation was taking place, Clarke responded, "for about a minute, minute and-a-half I was in the little room down the hall." *Id.* at 0073. Snipes also did not hear Moore's name mentioned. However, Moore's counsel then asked Snipes the following question: "Did you listen long enough or hear long enough whether or not she mentioned an inspector's name?" Snipes responded, "No. No, I don't remember. She may **\*462** have. I don't remember it because, again, I left very quickly." *Id.* at 0184.

Because the public meetings were videotaped, the content of Vislosky's statements at those meetings is undisputed. The parties agree that the statements were directed at "Unitech inspectors" but did not specifically mention the name Daniel Moore. For example, at the January 27, 2004 public meeting, Vislosky stated: "And if I were to say that the inspections were not done, were absolutely not done, I'm saying that emphatically, and I can back it up with documents and with witnesses." J.A. at 0722. At the March 2, 2004 public meeting, Vislosky stated: "Punch lists were signed off on by Unitech inspectors who did not do the inspections. I wouldn't dare say that if I couldn't prove it." *Id.* at 0723. At the March 16, 2004 public meeting Vislosky stated: "Reports have been signed by Unitech inspectors when no inspections were done. Yet they were paid for those inspections." *Id.* at 0724. And at the same meeting, she also stated: "The most serious accusation that I'm going to make is about kickbacks. You better look into if or not any of these inspectors out there are demanding from contractors money so they can look the other way." *Id.*

Moore's employer ultimately lost its contract with Falls Township and Moore lost his job. Moore filed a complaint against Vislosky in the Eastern District of Pennsylvania on September 28, 2004. On November 8, 2004, Moore filed interrogatories and a request for document production. Vislosky responded on December 8, 2004, but her answers were not complete. On May 26, 2005, the District Court granted Moore's motion to compel discovery, ordering Vislosky to sit for her deposition, to provide full and complete answers to interrogatories, and to produce the requested documents.

**\*\*3** A jury trial commenced on November 14, 2005. Prior to the jury charge, the District Court denied Moore's request that the Court instruct the jury on punitive damages. On November 17, 2005, the jury found in favor of Moore, awarding him a $100,000 verdict. Both parties filed post-trial motions. Vislosky filed a motion for a new trial and judgment as a matter of law and a motion for amendment of judgment. Moore filed a motion for a new trial on the issue of punitive damages. The District Court denied both parties' post-trial motions on December 12, 2005. Vislosky then filed an untimely *nunc pro tunc* motion for a new trial, judgment as a matter of law, and to extend the deadline to file an appeal. On January 10, 2006, the District Court granted Vislosky's request to extend the deadline to file an appeal but denied her motion for a new trial and for judgment as a matter of law. Thereafter, Vislosky filed a timely notice of appeal and Moore filed a timely notice of cross-appeal.

### II. Analysis

At the outset, we find it necessary to explain the interplay between state and federal law in this defamation action. We have noted that "although a defamation suit has profound First Amendment implications, it is fundamentally a state cause of action." *Tucker v. Fischbein,* 237 F.3d 275, 284 (3d Cir.2001) (quoting *McDowell v. Paiewonsky,* 769 F.2d 942, 945 (3d Cir.1985)). Accordingly, a court presiding over a defamation action must determine: " '(1) whether the defendants have harmed the plaintiff's reputation within the meaning of state law; and (2) if so, whether the First Amendment nevertheless precludes recovery.' " *Marcone v. Penthouse Int'l Magazine for Men,* 754 F.2d 1072, 1077 (3d Cir.1985) (quoting *Steaks Unlimited, Inc. v. Deaner,* 623 F.2d 264, 270 (3d Cir.1980)).

**\*463** *A. Pennsylvania Law*

[1] To recover for defamation under Pennsylvania law, the plaintiff bears the burden of proving the following elements:

(1) The defamatory character of the communication.

(2) Its publication by the defendant.

(3) Its application to the plaintiff.

(4) The understanding by the recipient of its defamatory meaning.

(5) The understanding by the recipient of it as intended to be applied to the plaintiff.

(6) Special harm resulting to the plaintiff from its publication.

(7) Abuse of a conditionally privileged occasion.

42 Pa. Cons. Stat. Ann. § 8343(a) (2000).

The defendant, on the other hand, bears the burden of showing the truth of the defamatory communication, the privileged nature of the communication, and that the communication touched on a matter of public concern. 42 Pa. Cons. Stat. Ann. § 8343(b). Furthermore, under Pennsylvania law, "a publisher of a defamatory statement is not liable if the statement was made subject to a conditional privilege and the privilege was not abused." Elia v. Erie Ins. Exchange, 430 Pa.Super. 384, 634 A.2d 657, 660 (1993) (citing Chicarella v. Passant, 343 Pa.Super. 330, 494 A.2d 1109, 1112–13 (1985)). One instance in which a conditional privilege arises is "when a recognized interest of the public is involved." Id.

**4 In a 1963 opinion, the Pennsylvania Supreme Court indicated that negligence on the part of the defendant in making defamatory statements is sufficient to show that a conditional privilege has been abused and, thus, has been lost. Purcell v. Westinghouse Broadcasting Co., 411 Pa. 167, 191 A.2d 662, 668 (1963). The Purcell Court stated, "[t]he failure to employ such 'reasonable care and diligence' can destroy a privilege which otherwise would protect the utterer of the communication." Id. Accordingly, Pennsylvania cases following Purcell regularly stated that abuse of a conditional privilege occurs when:

> the publication is actuated by *malice or negligence,* is made for a purpose other than that for which the privilege is given, or to a person not reasonably believed to be necessary for the accomplishment of the purpose of the privilege, or includes defamatory matter not reasonably believed to be necessary for the accomplishment of the purpose.

Miketic v. Baron, 450 Pa.Super. 91, 675 A.2d 324, 329 (1996) (quoting Beckman v. Dunn, 276 Pa.Super. 527, 419 A.2d 583, 588 (1980)) (emphasis added).

However, more than a decade after Purcell was handed down, the United States Supreme Court announced its decision in Gertz v. Robert Welch, Inc., 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974), holding that a private-figure plaintiff must show some fault (i.e., at least negligence) to recover against a defendant where the speech at issue relates to matters of public concern. In light of the Supreme Court's pronouncement in Gertz, the Pennsylvania Superior Court has recognized that where the allegedly defamatory speech relates to matters of public concern, a private-figure plaintiff is required to show more than mere negligence to defeat a conditional privilege. Am. Future Sys. Inc. v. Better Bus. Bureau of E. Pa., 872 A.2d 1202, 1211 (Pa.Super.Ct.2005) (citing Banas v. Matthews Int'l Corp., 348 Pa.Super. 464, 502 A.2d 637 (1985); Rutt v. Bethlehems' Globe Publ'g Co., 335 Pa.Super. 163, 484 A.2d 72 (1984)); see also Moore v. Cobb–Nettleton, 889 A.2d 1262, 1269–70 (Pa.Super.Ct.2005) (rejecting the argument that a conditional privilege can be lost on a showing of negligence where the challenged speech related *464 to a matter of public concern) (citations omitted).

This view finds support in section 600 of Restatement (Second) of Torts, which states, in relevant part, "one who upon an occasion giving rise to a conditional privilege publishes false and defamatory matter concerning another abuses the privilege if he (a) knows the matter to be false, or (b) acts in reckless disregard as to its truth or falsity." Restatement (Second) of Torts § 600 (1977). As the Comment to this section explains,

> One consequence of the holding [of Gertz v. Robert Welch, Inc.] is that mere negligence as to falsity, being required for all actions of defamation, is no longer treated as sufficient to amount to abuse of a conditional privilege. Instead, knowledge or reckless disregard as to falsity is necessary for this purpose.

**5 Id. cmt. b. Based upon this authority, we are comfortable predicting that the Pennsylvania Supreme Court would now require a private-figure plaintiff suing on matters of public concern to show that the statements

were made with actual malice to defeat a conditional privilege under Pennsylvania law.

### B. First Amendment Implications

[2] As to the constitutional implications, in the landmark case, *New York Times Co. v. Sullivan,* 376 U.S. 254, 270, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), the Supreme Court struck a balance between a state's interest in protecting an individual's reputation through its defamation law and the "profound national commitment" to the First Amendment principle "that debate on public issues should be uninhibited, robust, and wide-open." The Court concluded that the constitutional guarantees of the First and Fourteenth Amendments require "a federal rule that prohibits a public official from recovering damages for a defamatory falsehood relating to his official conduct unless he proves that the statement was made with 'actual malice.' " *Id.* at 279–80, 84 S.Ct. 710. Accordingly, the Court held that "the Constitution delimits a State's power to award damages for libel actions *brought by public officials* against critics of their official conduct." *Id.* at 283, 84 S.Ct. 710 (emphasis added). Moreover, the public-figure plaintiff has the burden of proving actual malice and must do so by clear and convincing evidence. *Bose Corp.,* 466 U.S. at 511 n. 30, 104 S.Ct. 1949 (citing *New York Times,* 376 U.S. at 280, 84 S.Ct. 710).

Supreme Court caselaw has clarified application of the *New York Times* actual malice standard in defamation suits where the plaintiff is a private figure. In *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974), the Court considered the necessity of constitutional safeguards in a defamation suit brought by a private-figure plaintiff against a defendant for speech that related to matters of public concern. *Gertz* held that "so long as they do not impose liability without fault, the States may define for themselves the appropriate standard of liability for a publisher or broadcaster of defamatory falsehood injurious to a *private* individual." 418 U.S. at 347, 94 S.Ct. 2997 (emphasis added). However, the Court further held that States may not allow a private-figure plaintiff to recover presumed or punitive damages except upon "a showing of knowledge of falsity or reckless disregard for the truth[,]" i.e., actual malice. *Id.* at 349, 94 S.Ct. 2997. In sum, "the private defamation plaintiff who establishes liability under a less demanding standard than that stated by New York Times may recover only such damages as are sufficient to compensate him for actual injury." *Id.* at 350, 94 S.Ct. 2997.

***465** In *Philadelphia Newspapers, Inc. v. Hepps,* 475 U.S. 767, 106 S.Ct. 1558, 89 L.Ed.2d 783 (1986), the Court addressed the issue of what party bears the burden of proving falsity in a defamation action brought by a private-figure plaintiff for speech related to matters of public concern. Expounding on *Gertz,* the Court stated:

> ****6** When the speech is of public concern but the plaintiff is a private figure, as in *Gertz,* the Constitution still supplants the standards of the common law, but the constitutional requirements are, in at least some of their range, less forbidding than when the plaintiff is a public figure and the speech is of public concern.

*Hepps,* 475 U.S. at 775, 106 S.Ct. 1558. *Hepps* rejected the common law's presumption that defamatory speech is false, holding that the private-figure plaintiff bears the burden of proving falsity and fault in actions against defendants for speech that touches on matters of public concern. *Id.* at 776–77, 106 S.Ct. 1558.

To summarize, a private-figure plaintiff suing a defendant for speech related to matters of public concern must prove actual malice when: 1) the plaintiff is seeking presumed damages, *Gertz,* 418 U.S. at 349, 94 S.Ct. 2997; 2) the plaintiff is seeking punitive damages, *id.;* or 3) the defendant's speech is conditionally privileged, *Am. Future Sys., Inc.,* 872 A.2d at 1211. Moreover, *Hepps* alters Pennsylvania law by requiring the plaintiff in such a case to bear the burden of proving fault and falsity. *Compare Hepps,* 475 U.S. at 776–77, 106 S.Ct. 1558 (plaintiff suing on matters of public concern bears burden of showing fault and falsity) *with* 42 Pa. Cons. Stat. Ann. § 8343(b) (defendant bears burden of proving truth of defamatory communication).

Here, the District Judge made several key findings that impact the standard that governs this case. First, he found that Moore was a private figure. *See* J.A. at 0560. Second, he stated that the subject matter of the allegedly defamatory statements was one of public concern. *Id.* Third, he determined that Vislosky's statements were conditionally privileged under Pennsylvania law because she was speaking out, as a citizen, on matters of public concern. *Id.* at 0642–43. The parties have not challenged any of these findings on appeal; thus, we deem them conclusively established.[5]

To recover presumed or punitive damages as a private-figure plaintiff suing on speech that relates to a matter of public concern, *Gertz* requires Moore to prove actual malice. 418 U.S. at 349, 94 S.Ct. 2997. In addition, under Pennsylvania law, Moore must show actual malice to defeat Vislosky's conditional privilege. *American Future Systems, Inc.,* 872 A.2d at 1211. Finally, *Hepps* places the burden on Moore to prove the falsity of the communications and fault on the part of Vislosky. 475 U.S. at 776–77, 106 S.Ct. 1558.

*New York Times* and its progeny guide our determination of whether actual malice has been shown. In reviewing a determination of actual malice in a case governed by *New York Times,* "[a]ppellate judges ... must exercise independent judgment and determine whether the record establishes actual malice with convincing clarity." *Bose Corp. v. Consumers Union of United States,* 466 U.S. 485, 514, 104 S.Ct. 1949, 80 L.Ed.2d 502 (1984). "We must make an independent examination of the **\*466** whole record so as to assure ourselves that the judgment does not constitute a forbidden intrusion on the field of free expression." *New York Times,* 376 U.S. at 285, 84 S.Ct. 710 (internal quotation and citation omitted). However, determinations of witness credibility are reviewed under the clearly erroneous standard because "the trier of fact has had the 'opportunity to observe the demeanor of the witnesses.' " *Harte–Hanks Communications, Inc. v. Connaughton,* 491 U.S. 657, 688, 109 S.Ct. 2678, 105 L.Ed.2d 562 (1989) (quoting *Bose,* 466 U.S. at 499–500, 104 S.Ct. 1949).

**\*\*7** A statement is made with "actual malice" when it is made with "knowledge that it was false or with reckless disregard of whether it was false or not." *New York Times,* 376 U.S. at 280, 84 S.Ct. 710. Reckless conduct "is not measured by whether a reasonably prudent man would have published, or would have investigated before publishing." *St. Amant v. Thompson,* 390 U.S. 727, 731, 88 S.Ct. 1323, 20 L.Ed.2d 262 (1968). Rather, to show reckless disregard for the truth or falsity of a statement, "[t]here must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication." *Id.* This is a subjective inquiry[6] that requires "sufficient evidence to permit the conclusion that the defendant actually had a 'high degree of awareness of ... probable falsity.' " *Harte–Hanks Communications, Inc.,* 491 U.S. at 688, 109 S.Ct. 2678 (quoting *Garrison v. Louisiana,* 379 U.S. 64, 74, 85 S.Ct. 209, 13 L.Ed.2d 125 (1964)). We turn now to the issues Vislosky has raised.

*C. Vislosky's Motion for Judgment as a Matter of Law*

Vislosky claims the District Court erred in denying her motion for judgment as a matter of law because the record evidence is insufficient to establish that she made the defamatory statements with actual malice. We review the District Court's order denying Vislosky's motion for judgment as a matter of law under a plenary standard, viewing the evidence and all reasonable inferences in the light most favorable to Moore, the nonmoving party. *Brennan v. Norton,* 350 F.3d 399, 424 n. 20 (3d Cir.2003) (citing *Lightning Lube, Inc. v. Witco Corp.,* 4 F.3d 1153, 1166 (3d Cir.1993)).

Vislosky claims the evidence at trial was insufficient to establish actual malice by clear and convincing evidence for two reasons. First, she asserts Moore did not prove she intended to defame him and, therefore, could not have proven actual malice. Second, Vislosky argues Moore did not present any affirmative proof that she entertained serious doubts about the truthfulness of her statements.

*1.*

[3] Vislosky argues that Moore did not prove she intended to refer to him in making the defamatory statements because she consistently denied using Moore's name during the course of the hallway conversation and because four witnesses to the hallway conversation testified that she never mentioned Moore's name. In addition, she contends that her repeated reference to "Unitech inspectors" during the public meetings was too ambiguous **\*467** to show an intention to defame Moore personally.

We disagree. At trial, six witnesses who were present at the executive session testified. Two witnesses, Supervisors Otto and Dayton, testified to hearing Moore's name during the hallway conversation. Witnesses Clarke and Snipes testified that they did not hear Moore's name, but also testified that they were not present for the entire conversation. Furthermore, Clarke and Snipes testified consistently with Otto and Dayton with respect to whether they heard the words "Unitech inspectors" and "Dominion Power" during the conversation. Contrary to Vislosky's characterization of the evidence, only two witnesses, Szupka and Bergman, unequivocally testified

that they did not hear Moore's name mentioned. Notably, Moore's counsel impeached Szupka's credibility by highlighting inconsistent statements Szupka made on direct and cross examination. Szupka's attempt to reconcile the two statements could easily have been found by the jury to be unbelievable and could have served as a basis to discredit his entire testimony.[7] *See* J.A. at 0632 (instructing jury that if it finds witness intentionally testified falsely, jury may choose to disbelieve the witness in whole or in part); *see also Lambert v. Blackwell,* 387 F.3d 210, 256 (3d Cir.2004) (discussing *"falsus in uno, falsus in omnibus"* charge, which permits jury to discredit all of a witness' testimony if it finds that a witness testified falsely about any material fact).

**\*\*8** Even under the meaningful appellate review given to a finding of actual malice under *New York Times,* it is within the province of the jury to credit the testimony of one witness over another. *Harte–Hanks Communications, Inc.,* 491 U.S. at 688, 109 S.Ct. 2678 (quoting *Bose Corp.,* 466 U.S. at 499–500, 104 S.Ct. 1949). By crediting the testimony of Otto and Dayton, a reasonable jury could have found that Vislosky did specifically mention Moore's name during the hallway conversation, which could establish by clear and convincing evidence that Vislosky intended to defame Moore.

[4] With respect to her references to "Unitech inspectors" during the public meetings, Otto testified that he understood Vislosky to be speaking about Moore when he heard those statements, J.A. at 0145, and Dayton testified that he thought she was talking about Moore and another Unitech inspector, Jason Nowicki, *id.* at 0203. **\*468** When asked why he identified Moore and Nowicki, Dayton stated, "[t]hey were the main inspectors for Unitech engineers. They were the only inspectors doing the work that she was talking about." *Id.* Moreover, at trial Vislosky reaffirmed her statement that Unitech inspectors (plural) were engaging in wrongdoing, but she also testified that her accusations were directed at only one Unitech inspector, Nowicki. A reasonable jury could have credited Otto and Dayton's testimony, concluding that Vislosky was actually referring to both Moore and Nowicki during the public meetings, and that her trial testimony to the contrary was fabricated to assist her defense in the defamation lawsuit.

2.

[5] Second, Vislosky maintains that Moore failed to prove she entertained serious doubts about the truthfulness of her statements because Moore presented no *affirmative* evidence that she acted with reckless disregard for the truth or falsity of her statements. However, Vislosky presents no authority to support the proposition that affirmative evidence is always required.

In *Harte–Hanks Communications, Inc. v. Connaughton,* the Supreme Court stated that "[a]lthough courts must be careful not to place too much reliance on such factors, a plaintiff is entitled to prove the defendant's state of mind through circumstantial evidence ... and it cannot be said that evidence concerning motive or care never bears any relation to the actual malice inquiry." 491 U.S. at 668, 109 S.Ct. 2678. Similarly, this Court has acknowledged that "[a] plaintiff may 'rarely be successful in proving awareness of falsehood from the mouth of the defendant himself.'" *Schiavone Construction Co. v. Time, Inc.,* 847 F.2d 1069, 1089 (3d Cir.1988) (quoting *Herbert v. Lando,* 441 U.S. 153, 170, 99 S.Ct. 1635, 60 L.Ed.2d 115 (1979)). Accordingly, "objective circumstantial evidence can suffice to demonstrate actual malice" and can even "override defendants' protestations of good faith and honest belief that the report was true." *Id.* at 1090 (citing *St. Amant,* 390 U.S. at 732, 88 S.Ct. 1323). A court may infer actual malice from objective facts that provide evidence of "negligence, motive, and intent such that an accumulation of the evidence and appropriate inferences supports the existence of actual malice." *Id.* at 1090 n. 35 (citations omitted). Actual malice can be shown "[t]hrough the defendant's own actions or statements, the dubious nature of his sources, [and] the inherent improbability of the story [among] other circumstantial evidence[.]" *Celle v. Filipino Reporter Enterprises Inc.,* 209 F.3d 163, 183 (2d Cir.2000) (quoting *Liberty Lobby, Inc. v. Dow Jones & Co.,* 838 F.2d 1287, 1293 (D.C.Cir.1988)).

**\*\*9** Significantly, Vislosky did not simply allege that Moore and Unitech inspectors were padding their bills, signing off on inspections that were not done, and taking kickbacks. Rather, Vislosky repeatedly gave added force to her allegations by stating that she is a retired judge, that she understands libel and slander, and that she can *prove* her allegations. *See, e.g.,* J.A. at 0724. A reasonable jury could find by clear and convincing evidence that, at the time she claimed she could prove the allegations against Moore, she either knew she could not *prove* or entertained serious doubts as to whether she could *prove* the substance of these allegations. Several objective facts could support this conclusion.

First, and most damaging to her defense, Moore demonstrated that Vislosky never produced the

documentary evidence she claimed to have in support of her allegations. Moore requested this documentary *469 evidence on November 8, 2004, during pre-trial discovery. Vislosky answered Moore's request for document production on December 8, 2004, stating that she was "in the process of assembling voluminous documents" that she would "provide ... upon assembly." J.A. at 0719. She continued, "[s]ome are available now but, we do not wish to send them piece meal." *Id.* When the documents were not forthcoming, Moore filed a motion to compel document production, which the District Court granted on May 26, 2005. Even in the face of the District Court's order, Vislosky did not produce the documents. A reasonable jury could conclude by clear and convincing evidence that: 1) Vislosky never had the documentation she claimed to have, or 2) she refused to produce the documents because they established her awareness that there was no basis for making the specific allegations of wrongdoing that were leveled against Moore and Unitech inspectors. *See Brown & Williamson Tobacco Corp. v. Jacobson,* 827 F.2d 1119, 1134 (7th Cir.1987) (finding the destruction of critical documents compelling evidence of actual malice that gives rise to a presumption that the documents would be unfavorable to the party destroying them).

Second, a reasonably jury could find that Vislosky's story as to why she did not produce the documents was not believable. At trial, Vislosky stated that she did not produce the documents because "I had them and lost them almost immediately." J.A. at 0289. She claimed that Trinity Paving, from whom she obtained the documents, had requested that she return them because Trinity was going out of business and needed the records back. Vislosky testified that she had the documents when she received Moore's request for document production but lost them before she could assemble the documents. Vislosky does not explain why she failed to copy the documents that she was legally obligated to produce before giving them back to Trinity.

Moreover, prior to giving the aforementioned explanation as to why she did not retain the documents, Vislosky stated, "I did not hold on to them because I didn't think there was a need to." J.A. at 0263. This explanation is implausible in light of the fact that, at trial, Vislosky admitted that she knew she would be obligated to produce the documents if a lawsuit was filed. Prior to initiating the lawsuit, Moore's attorney sent a letter to Vislosky, dated April 1, 2004, requesting "a factual basis for the contentions, including the identification of sources of the alleged information, including individuals and documents, which you say support your contentions." *Id.* at 0265. In response, Vislosky wrote a letter stating, "I will not provide you with any documents or any names or anything else on your 'request list.' If you will recall, this information can be acquired through 'discovery' after you file a lawsuit against me." *Id.* at 0268–69. Despite repeated attempts, Moore was unable to acquire this information through discovery or otherwise.

**\*\*10** Third, Vislosky admitted that she had never seen an inspection report or punch list that had been signed off on by a Unitech inspector where the work was not done. And when Moore's counsel attempted to ask her during trial whether, during discovery, she ever provided Moore with the details of the allegedly unlawful, corrupt, or improper conduct by Unitech inspectors that she claimed occurred, Vislosky gave non-responsive and evasive answers.[8]

*470 In addition to her failure to produce documents incriminating Moore or to provide factual details to substantiate her allegations, Vislosky's own testimony supports a finding of actual malice. At trial, Vislosky's defense was that her statements were not directed at Moore. Vislosky claimed that Jason Nowicki was the Unitech inspector she was referring to during the public meetings and adamantly maintained that she never mentioned Daniel Moore by name during the hallway conversation. Significantly, she admitted that she had no evidence of wrongdoing by Moore. Vislosky consistently maintained that she did not know who Daniel Moore was until he initiated the lawsuit against her.[9] Yet, as discussed *supra,* there was sufficient evidence for a jury to find that Vislosky made defamatory statements about Unitech inspectors (plural) at the public meetings and specifically *about Moore* at the executive session. Accordingly, the jury could have found that Vislosky acted with actual malice by making defamatory statements about Moore while admitting she had no evidence of Moore's wrongdoing.

Vislosky claims that because her statements were based on varied and reliable sources, Moore could only demonstrate actual malice by showing obvious reasons for her to doubt the veracity of those sources. However, evidence of the dubious nature of one's sources is only one way by which a plaintiff can demonstrate actual malice. Moore's case emphasized that the documentation Vislosky emphatically claimed would prove her accusations was curiously absent from the case, even after a court order compelled her to produce it. Not only did Vislosky not produce the documents she claimed to have, she did not even provide Moore with the specific factual information that formed the basis of her allegations. Even if we presume the reliability of the sources, Moore presented evidence from which a reasonable jury could conclude that Vislosky never had the sources in the first

place.

In sum, we are confident that, on this record, a jury could find by clear and convincing evidence that Vislosky acted with actual malice in making the defamatory statements about Moore. Accordingly, the District Court correctly denied Vislosky's motion for judgment as a matter of law.

*D. Vislosky's Motion for a New Trial based on the District Court's Failure to give a Clear and Convincing Jury Instruction*

[6] Vislosky contends she should be granted a new trial because the District Court failed to instruct the jury that Moore was required to prove actual malice by clear and convincing evidence. A new trial may be granted pursuant to Federal Rule of Civil Procedure 59(a), where "substantial errors were made in the admission or rejection of evidence or the giving or refusal of instructions." *Lightning Lube, Inc. v. Witco Corp.,* 802 F.Supp. 1180, 1186 (D.N.J.1992) (citing *Northeast Women's* **471** *Ctr., Inc. v. McMonagle,* 689 F.Supp. 465 (E.D.Pa.1988)). It is undisputed that in its charge to the jury, the District Court omitted any instruction on the standard of proof to be applied.

**11** To preserve an objection to jury instructions, a party must follow the procedure outlined in Federal Rule of Civil Procedure 51. Rule 51 states, in pertinent part: "No party may assign as error the giving or the failure to give an instruction unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection." F.R.Civ.P. 51. We have repeatedly stressed "the important policy objectives served by Rule 51[,]" which "affords the trial judge an opportunity to correct any error that may have been made in the charge before the jury begins its deliberations." *Fashauer v. New Jersey Transit Rail Operations,* 57 F.3d 1269, 1288 (3d Cir.1995) (internal quotations and citations omitted).

Vislosky did not object to the omission of an appropriate burden of proof instruction at trial. Therefore, we apply discretionary plain error review. *Franklin Prescriptions, Inc. v. New York Times Co.,* 424 F.3d 336, 339 (3d Cir.2005) (citing Fed. R. Civ. P. 51(d)(2)) ("Where a party fails to object properly, we may review for 'plain error in the instructions affecting substantial rights.' "). Under the plain error standard, "there must be an error that is plain and that affect[s] substantial rights." *United States v. Olano,* 507 U.S. 725, 732, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993) (internal quotation and citation omitted). An "error" is defined as a "[d]eviation from a legal rule" and an error is "plain" if it "clear under current law." *Id.* at 732–34, 113 S.Ct. 1770. An error affects substantial rights if it is prejudicial, i.e., if it "affected the outcome of the district court proceedings." *Id.* at 734, 113 S.Ct. 1770.

Furthermore, under this discretionary standard, "we will reverse the trial court only where a plain error was 'fundamental and highly prejudicial, such that the instructions failed to provide the jury with adequate guidance and our refusal to consider the issue would result in a miscarriage of justice.' " *Franklin Prescriptions, Inc.,* 424 F.3d at 339 (quoting *Ryder v. Westinghouse Elec. Corp.,* 128 F.3d 128, 136 (3d Cir.1997)). In determining whether to exercise our discretion, we consider whether "the error 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.' " *Fashauer,* 57 F.3d at 1289 (internal citation omitted). We are also mindful that plain error review " 'should be exercised sparingly' and 'should only be invoked with extreme caution in the civil context.' " *Franklin Prescriptions, Inc.,* 424 F.3d at 341 (quoting *Fashauer,* 57 F.3d at 1289). To do otherwise would risk "emasculat[ing] the important policies served by Rule 51." *Fashauer,* 57 F.3d at 1289.

We find the learned District Judge committed plain error in failing to instruct the jury that Moore must prove actual malice by clear and convincing evidence and other elements of the case by a preponderance of the evidence. Such error was plain in light of established Supreme Court caselaw requiring the clear and convincing standard in private-figure defamation cases where presumed damages are sought. *Gertz,* 418 U.S. at 342, 94 S.Ct. 2997.

**12** [7] However, we decline to exercise our discretion to reverse the District Court because we believe the error was not fundamental or highly prejudicial to Vislosky's rights. Vislosky's trial counsel had ample opportunity to request a clear and **472** convincing evidence instruction before the jury began its deliberations, either at the charge conference or immediately after the deficient jury charge was given. At this time, the error could have been easily corrected by the District Court before a verdict was reached. Instead, Vislosky chose not to raise the objection until after a verdict had been entered against her and the District Court had denied one round of post-trial motions. In declining to reverse, we continue to strictly follow the proposition, embodied in Rule 51, that "an appellate court will not predicate error on an issue upon which the district

court was not provided with an opportunity to rule." *Fashauer,* 57 F.3d at 1288.

We believe it would be prejudicial and fundamentally unfair to Moore to require him to re-litigate the case. The District Court did not affirmatively mislead the jury into thinking that a lower burden of proof applied in this case. Rather, the District Court gave an otherwise accurate and comprehensive jury charge, in which it instructed the jury on the definition of actual malice and told the jury at least four times that the burden rests with Moore to prove his case. Moreover, in light of Vislosky's obstinate refusal to cooperate with the discovery order in the proceedings below, this Court is wary of exercising discretion in her favor. Notwithstanding the importance of proper instructions on the burden of proof, on this particular record, the error did not affect the integrity of the trial, and we decline to reverse the District Court.

### E. Vislosky's Motion for a New Trial based on Jury Instruction on Presumed Damages

[8] Vislosky argues that she should be granted a new trial because the District Court erroneously instructed the jury that Moore was entitled to presumed damages under Pennsylvania law. "Presumed damages allow a defamation plaintiff to recover compensatory damages without proving the defamatory statement caused actual harm." *Franklin Prescriptions, Inc.,* 424 F.3d at 341. Because Vislosky did not object to the presumed damages instruction at trial, we apply plain error review. An error is considered "plain" if it is "clear under current law." *Olano,* 507 U.S. at 734, 113 S.Ct. 1770. Accordingly, we must determine whether, at the time of the trial, Pennsylvania law clearly prohibited a plaintiff from recovering presumed damages in a defamation action.

Vislosky cites *Walker v. Grand Central Sanitation, Inc.,* 430 Pa.Super. 236, 634 A.2d 237 (1993), for the proposition that Pennsylvania law does not allow presumed damages. In *Walker,* the Pennsylvania Superior Court held that "a defendant who publishes a statement which can be considered slander *per se* is liable for the proven, actual harm the publication causes." 634 A.2d at 244. However, in a Third Circuit case decided after *Walker,* we stated, "[u]nder Pennsylvania law, *where a defendant acts with actual malice,* there is no need to prove actual damages." *Beverly Enterprises, Inc. v. Trump,* 182 F.3d 183, 188 n. 2 (3d Cir.1999) (emphasis added). We explicitly recognized this distinction in *Franklin Prescriptions,* stating that "[a]lthough *Walker* appears generally to foreclose presumed damages under Pennsylvania law, it is not entirely clear whether presumed damages remain available where the plaintiff proves actual malice." 424 F.3d at 342.

**13 Following *Beverly Enterprises, Inc. v. Trump,* we conclude that the District Court was correct to instruct the jury *473 that, under Pennsylvania law, it may presume damages upon a finding that Moore had proven actual malice. 182 F.3d at 188 n. 2. The District Court's jury charge properly limited the availability of presumed damages by stating, "if you find that the defendant acted either intentionally or recklessly in publishing the defamatory communications [i.e., with actual malice] you may presume [damages]." J.A. at 0641. Accordingly, the District Court's jury instruction on presumed damages was not error, let alone plain error, under Pennsylvania law.

### F. Moore's Motion for a New Trial on the Issue of Punitive Damages

[9] Moore argues that the District Court erred in refusing to instruct the jury on the issue of punitive damages. We review the District Court's refusal to give certain jury instructions under an abuse of discretion standard. *United States v. Coyle,* 63 F.3d 1239, 1245 (3d Cir.1995).

In *DiSalle v. P.G. Publishing Company,* 375 Pa.Super. 510, 544 A.2d 1345 (1988), the Pennsylvania Superior Court held that a plaintiff in a defamation action must make a showing of both actual malice and common law malice in order to recover punitive damages.[10] Common law malice in Pennsylvania "involves conduct that is outrageous (because of the defendant's evil motive or his reckless indifference to the rights of others), and is malicious, wanton, reckless, willful, or oppressive." *Sprague v. Walter,* 441 Pa.Super. 1, 656 A.2d 890, 922 (1995) (citing *DiSalle,* 544 A.2d at 1364). The difference between actual malice and common law malice is instructive: "[W]hen a defendant acts with common law malice, and thereby becomes susceptible to punitive damages, he does so with a necessary degree of evil volition toward the plaintiff. .... Actual malice, on the other hand, focuses exclusively on the defendant's attitude toward the truth of the statement made." *DiSalle,* 544 A.2d at 1369. Thus, to prove common law malice, "the plaintiff must prove that the defendant displayed 'actual or apparent ill will.' This is so because punitive

damages in public official defamation actions are specifically intended to punish and deter [such conduct]." *Sprague,* 656 A.2d at 922 (quoting *DiSalle,* 544 A.2d at 1370–71).

As discussed above, we have determined that the evidence was sufficient to support a finding of actual malice by clear and convincing evidence. Therefore, the key issue is whether the record could support a finding of common law malice by a preponderance of the evidence. *See DiSalle,* 544 A.2d at 1371 n. 24 (explaining that the standard of proof for punitive damages in Pennsylvania traditionally has been proof by a preponderance of the evidence).

Because this issue is admittedly a close question, we will defer to the District Court's discretion in refusing to give a punitive damages jury instruction. The District Judge found no evidentiary basis for a finding that Vislosky engaged in outrageous conduct. While his ruling on Moore's request for punitive damages may have reached some improper factual conclusions, his determination that outrageous conduct had not been shown was sound. **\*474** Moore presented insufficient proof from which a jury could conclude by a preponderance of the evidence that Vislosky acted with evil intent toward him when she accused him and Unitech inspectors of corruption and criminal activity. The bulk of the evidence shows that Vislosky's statements were intended to spur Falls Township Supervisors into investigating her allegations and were not aimed at personally damaging Moore.[11] *Contra Sprague,* 656 A.2d at 923–24 (evidence that defendant outwardly expressed an intention to destroy plaintiff's career and took action to carry out that intention sufficient to establish common law malice). Accordingly, on this record, the District Court did not abuse its discretion in refusing to instruct the jury on punitive damages.

### III. Conclusion

**\*\*14** We have considered all other arguments made by the parties on appeal and conclude that no further discussion is necessary. For the foregoing reasons, we will affirm the order of the District Court.

**All Citations**

240 Fed.Appx. 457, 2007 WL 1182021

Footnotes

| | |
|---|---|
| \* | The Honorable Eugene E. Siler, Jr., Senior Circuit Judge for the United States Court of Appeals for the Sixth Circuit, sitting by designation. |
| 1 | We recognize that "[w]hen ascertaining matters of state law, the decisions of the state's highest court constitute the authoritative source." *Connecticut Mutual Life Ins. Co. v. Wyman,* 718 F.2d 63, 65 (3d Cir.1983). Where "the Pennsylvania Supreme Court has not yet passed on the question before us, we must consider the pronouncements of the lower state courts. Such decisions should be given proper regard, but not conclusive effect." *Id.* (citation omitted). |
| 2 | Two Township projects are relevant to this appeal. First, Moore was the sole Unitech inspector responsible for inspections of a building site being developed by the Dominion Power Company. Second, Moore and one other Unitech inspector named Jason Nowicki were responsible for inspecting road work projects being done by Trinity Paving. |
| 3 | While Pennsylvania law generally requires that Township meetings be open to the public, the Board of Supervisors is permitted to meet privately in executive sessions to discuss limited topics. *See* 65 Pa. Cons. Stat. Ann. §§ 704, 708 (2000). There were seven people present at the executive session on December 16, 2003. Of those, six people testified at trial: Michael Clarke, the Township Solicitor; Wayne Bergman, the Township Manager; Jonathan Snipes, Chairman of the Board of Supervisors; and William Dayton, Richard Otto, and Philip Szupka, members of the Board of Supervisors. |
| 4 | Vislosky explained that SSA accounts are "the construction escrow accounts" J.A. at 0364. |
| 5 | *See United States v. Pelullo,* 399 F.3d 197, 222 (3d Cir.2005) (citation omitted) ("It is well settled that an appellant's failure to identify or argue an issue in his opening brief constitutes waiver of that issue on appeal."). |
| 6 | Even though the actual malice standard is a subjective one, the defendant cannot "automatically insure a favorable verdict by |

testifying that he published with a belief that the statements were true. The finder of fact must determine whether the publication was indeed made in good faith." *St. Amant,* 390 U.S. at 732, 88 S.Ct. 1323. Thus, Vislosky's repeated declarations to the jury that "I don't lie," J.A. at 0298, and "I always tells the truth," *id.* at 0300, are not dispositive of the issue.

7   On direct examination, Szupka stated, "Mrs. Vislosky has never contacted me privately about anything that has ever gone on in the Township for the whole time I have served." J.A. at 0163. On cross examination, however, Szupka recalled a meeting with Vislosky at her home about the road program. *Id.* at 0172. When Moore's counsel highlighted this inconsistency on redirect, the following exchange took place:
    A: What I said was, Mrs. Vislosky never contacted me about any other, any Township issues. She never called me to talk to me about any other Township issues.
    Q: And how was it that you found yourself in her house if she didn't contact you?
    A: She had information.
    Q: How was it that you got yourself into her house? What brought you to her house? Did she contact you? Did she say, come on over, I want to show you some things?
    A: I wanted to see what was there. I went over.
    Q: My question for you is, did she contact you and call you and invite you to her house to review that material?
    A: No.
    Q: You called her?
    A: I went over.
    Q: You just showed up without calling?
    A: Yeah. I don't have a phone number that works.
    *Id.* at 0177–78. In addition to the implausibility of this explanation, Vislosky herself contradicted Szupka's testimony by testifying at trial that she did in fact call Szupka to come visit her to look at documents. *Id.* at 0252.

8   Vislosky had in fact failed to provide this information during pre-trial discovery, despite the Court order directing Vislosky to fully answer Interrogatory 6, which asked whether or not Vislosky was "aware of any unlawful, corrupt, or improper conduct by any Unitech inspector, which is relevant to statements made by her, or which she believes is relevant to this litigation, or which might be referred by her during the course of the litigation." J.A. at 0731 & 0743.

9   Moore also produced evidence at trial suggesting that Vislosky did know who Daniel Moore was prior to the initiation of the lawsuit against her. Specifically, Vislosky sent an email dated April 2, 2004, in which she stated "Concerned peopled talked to Dayton about what Unitech, Jason, Dan and the inspectors were doing ..." J.A. at 0303.

10  We believe the holding in *DiSalle v. P.G. Publishing Company* is consistent with how the Pennsylvania Supreme Court would rule on this issue. *See Feld v. Merriam,* 506 Pa. 383, 485 A.2d 742, 747–48 (1984) (landlord-tenant dispute in which Pennsylvania Supreme Court adopted Restatement (Second) of Torts § 908(2), which requires proof of common law malice to support award of punitive damages).

11  Our conclusion that there was insufficient evidence to show common law malice does not impact our determination that actual malice could be proven by clear and convincing evidence on this record. As explained in *DiSalle,* the former focuses on the defendant's attitude toward the plaintiff, while the latter focuses on her attitude toward the truth of the statements she made. 544 A.2d at 1369.

**End of Document**

© 2019 Thomson Reuters. No claim to original U.S. Government Works.