IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

ANDREW L. COLBORN,

                Plaintiff,

     vs.

NETFLIX, INC.; CHROME MEDIA LLC,
F/K/A SYNTHESIS FILMS, LLC;
LAURA RICCIARDI; AND MOIRA
DEMOS,

              Defendants.

Civil No.:  19-CV-484

REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS BY
CHROME MEDIA LLC, LAURA RICCIARDI, AND MOIRA DEMOS

Plaintiff Andrew Colborn's opposition to the Producer Defendants' motion to dismiss is based on a fundamentally flawed premise—specifically, that federal law governs service of process in this case—and proceeds to draw from it a series of erroneous conclusions, including the alternative contentions (a) that he has properly served the Producer Defendants or (b) that he can and should be afforded additional time to do so. As the Producer Defendants explain below (as well as in their opening memorandum, *see* Dkt. 35), Wisconsin's "unbending" requirements for service of process, *Dietrich v. Elliott*, 190 Wis. 2d 816, 826-28, 528 N.W.2d 17 (Ct. App. 1995) (citation omitted), *not* the comparatively "liberal" standard reflected in the federal rules, govern this motion because (1) Colborn failed to serve any of the Producer Defendants before the expiration of the deadline for service under Wisconsin law and (2) that deadline passed both well *before* removal to this Court and *after* the expiration of the applicable statute of limitations. As a result, his claims against them must be dismissed with prejudice.

## ARGUMENT

### I.  Colborn relies on the wrong body of law.

Each of Colborn's principal contentions—that he has properly served the Producer Defendants; that, even if he did not, he still has time to do so under Fed. R. Civ. P. 4(m); and that, even if he doesn't, the Court should nevertheless grant him an extension to do so, *see* Dkt. 52 at 15-20—is based on the incorrect premise that service of process in this case is governed by Fed. R. Civ. P. 4 and the "liberal construction" that federal courts are bound to afford it, *see id.* at 3-4. In fact, it is settled law that, "[i]n determining the validity of service prior to removal, a federal court must apply the law of the state under which the service was made, and the question of amenability to suit in diversity actions continues to be governed by state law even after removal." *Allen v. Ferguson*, 791 F.2d 611, 616 n.8 (7th Cir. 1986). The

efficacy of Colborn's efforts to serve the Producer Defendants before removal is, therefore, governed by the strict requirements of Wisconsin law, *not* Rule 4. *See Cardenas v. City of Chicago*, 646 F.3d 1001, 1007-08 (7th Cir. 2011). And where, as here, an action would be barred by the combination of applicable state service requirements and the statute of limitations, it may not be entertained by a federal court sitting in diversity. *See Walker v. Armco Steel Corp.*, 446 U.S. 740, 751-53 (1980) ("There is simply no reason why . . . an action based on state law which concededly would be barred in the state courts by the state statute of limitations should proceed through litigation to judgment in federal court[.]")[1]

As explained further below, Wisconsin's service requirements are exacting and, pursuant to their terms, an action is not properly commenced unless the defendant is served with the original summons and complaint within 90 days of their filing—a deadline that cannot be extended. *See* Wis. Stat. § 801.15(2)(a); *see also Johnson v. Cintas Corp. No. 2*, 2012 WI 31, ¶ 25, 339 Wis. 2d 493, 811 N.W.2d 756 ("Given that a defendant's constitutional right to due process is at stake, 'Wisconsin requires strict compliance with its rules of statutory service, even though the consequences may appear to be harsh.'") (citation omitted). If proper service is not effected by that deadline, and the statute of limitations has run (as it has in this case), the action is rendered a legal nullity. Dkt. 35 at 11 n.6 & 15 (citing *Bartels v. Rural Mut. Ins. Co.*, 2004 WI App 166, ¶¶ 15-17, 275 Wis. 2d 730, 687 N.W.2d 84). Removal does *not* breathe new life into a case (like this one) where the statute of limitations already has expired *before* removal. As the

---

[1] *See also, e.g.*, *Marshall v. Warwick*, 155 F.3d 1027, 1033 (8th Cir. 1998) (federal rules cannot "breathe jurisprudential life in federal court into a case legally dead in state court") (citation omitted); *Barnett v. Karl Storz Endoscopy Am., Inc.*, No. 15-CV-36-WMC, 2015 WL 1429133, at *1 (W.D. Wis. Mar. 27, 2015) (dismissing removed action for failure to serve defendants before 90-day deadline). The district court cases from outside the Seventh Circuit that Colborn cites for the contrary proposition, Dkt. 52 at 18-19, are inapposite because all but one of them did not involve expiration of the statute of limitations and service period before removal (and thus were not even subject to Rule 4(m)), and none of them involved forum state laws like Wisconsin's that impose "unbending" service requirements.

Seventh Circuit has explained, in such circumstances, the case *must* be dismissed with prejudice because it is "just as dead" as if it failed to state a claim on its merits. *Cardenas*, 646 F.3d at 1007-08 (citation omitted). As a result, Colborn's multiple, albeit belated, efforts to secure and serve new summonses in this Court, to establish "good cause" for the extension of inapplicable federal service requirements, or to demonstrate that he has been the victim of "sewer service" warranting such an extension, are necessarily beside the point.

## II. Colborn did not properly serve defendants Ricciardi and Demos.

Colborn does not claim to have served defendants Demos and Ricciardi personally. Instead, he purports to have done so only by publication. But because he failed to exercise "reasonable diligence" before resorting to service by publication, and because that "publication" did not serve the original Complaint, his claims against these two defendants must be dismissed.[2]

### A. Colborn was not entitled to serve Demos and Ricciardi by publication because he failed to exercise "reasonable diligence."

To comply with Wisconsin's rules for substitute service (such as service by publication), the "diligence to be pursued and shown by the affidavit is that which is reasonable under the circumstances." *Loppnow v. Bielik*, 2010 WI App 66, ¶ 10, 324 Wis. 2d 803, 783 N.W.2d 450. Colborn's attempts to serve Ricciardi and Demos fall well short of this standard.

The affidavits Colborn has placed before this Court fail to assert facts that demonstrate the requisite "reasonable diligence" as a matter of law. In each of them, process server Carlos Caceres states only (1) that he visited the office of Chrome Media's registered agent for service

---

[2] Colborn also suggests that any defects in service should be excused because the Producer Defendants must have had actual notice of his lawsuit. *See* Dkt. 52 at 4, 18-19. He does not (and cannot) point to any authority, even under the comparatively "liberal" Federal Rules, for the proposition that news coverage, inquiries from journalists or posting a complaint on the Internet constitute effective service or even constructive notice. It is well-established under Wisconsin law that neither substantial compliance nor actual notice to the defendant will excuse defects in service. *See Dietrich*, 190 Wis. 2d at 826-28.

of process on March 6, and that Ricciardi and Demos were not "employee[s] of Chrome

Media,"[3] and (2) that he made two unsuccessful attempts, both on the following day, March 7, to

serve them at their Los Angeles home, where no one answered the intercom at the home's front

gate. *See* Dkts. 49 & 50. These efforts are nearly identical to those the Wisconsin Supreme

Court found insufficient in *Heaston v. Austin*, where the process server claimed he tried to serve

the defendant at home twice on the same day before performing alternative service on the

defendant's brother. 47 Wis. 2d 67, 73-74, 176 N.W.2d 309 (1970). In contrast, Colborn cites

no authority for the proposition that the limited attempts Caceres describes constitute reasonable

diligence under Wisconsin law (although he does purport to chastise the Producer Defendants for

"cit[ing] no cases that are factually similar to this case").

Colborn's attempts to buttress these affidavits of "non service" with declarations from his

attorneys, *see* Dkt. 52 at 10-11, are unavailing. The lion's share of the assertions in these

declarations constitute inadmissible hearsay, including the demonstrably false contention that

Ricciardi and Demos live in a "gated community." *Id.* at 10 (citing Barker Decl. ¶¶ 6-7, which

recounts what counsel was told in "a call from the office manager for Excel Investigations,"

Barker Decl. ¶ 8); *see* Second Declaration of Moira Demos ("Second Demos Decl.") ¶ 3 (the

home in which Demos and Ricciardi reside is *not* in a gated community). Colborn's multiple

assertions that his process servers were "stymied" by this nonexistent obstacle, *see. e.g.,* Dkt. 52

at 2, 10, 17, 19, underscore the unreliability of such hearsay.

---

[3] This contention, which is at best confusing, suggests at most that Caceres attempted to serve Ricciardi and Demos at the office of Tal Benari, their registered agent for service of process in California, an office *they* have never occupied. Ricciardi and Demos are the founders/owners of Chrome Media. They do not work at the address in Encino, California, that the affidavits reference. That is the address of R.C. Baral & Co., Inc., an accounting firm where Benari is employed. Second Benari Decl. ¶ 3.

4

Indeed, in these attorney declarations, Colborn relies in significant part on *double* hearsay attributed to a process server who Colborn now concedes executed a false affidavit of service submitted to this Court. *See* Dkt. 52 at 9 (citing Barker Decl. in support of "reasonable diligence" in serving Ricciardi and Demos); Dkt. 74 (Barker Decl.) ¶ 13 (asserting manager of Excel Investigations relayed to plaintiff's counsel statement by process server); *id.* ¶ 15 (asserting that counsel did not correct false affidavit of service because office manager reported inconsistent facts "and because the process service firm did not acquiesce in my requests to speak directly to the process server"). Colborn's reliance on such hearsay is improper.

Most significantly, Colborn concedes, as he must, that he waited to file suit until the day before the three-year statute of limitations expired, then waited until two weeks before the 90-day service window closed to begin attempting service. Dkt. 52 at 9-10. Counsel's declarations that they made this decision in the name of "efficiency and cost" may explain their tardiness, but they by no means establish the requisite reasonable diligence. Dkt. 52 at 10. Colborn cites no authority for the curious proposition that a "reasonably diligent" party may choose to delay serving a complaint for 77 days so that he can file an amended complaint — particularly where expiration of the statute of limitations before that time necessarily meant that missing the service deadline would extinguish the action. *See Coleman v. Milwaukee Bd. of Sch. Dirs.*, 290 F.3d 932, 935 (7th Cir. 2002) (plaintiff's desire to file an amended complaint was "not a good reason for the delay in service" where plaintiff waited until five days before expiration of service deadline to begin attempting service).

In this regard, Colborn's attempt to avoid dismissal by blaming his failure to serve the Producer Defendants on his attorneys ignores well-established law that he is bound by the acts of his counsel. The Seventh Circuit has repeatedly emphasized that "a court may dismiss an action

with prejudice against a plaintiff for the actions of counsel." *Pyramid Energy, Ltd. v. Heyl &*

*Patterson, Inc.*, 869 F.2d 1058, 1061-62 (7th Cir. 1989). "[A] party who chooses his counsel

freely should be bound by his counsel's actions," because "[o]therwise, the court's power to

control its docket, and compel attorneys to proceed within the time frame set by the court and not

their own would erode and eventually disappear." *Id.* (citations omitted).[4]

Finally, Colborn's "non service" affidavits are insufficient under Wisconsin law to show

reasonable diligence because they fail to include a host of statutorily required prerequisites to

their admissibility. *See* Wis. Stat. § 801.10(4)(a) (reciting such prerequisites, including sworn

statements by the server that he or she "is an adult resident of the state of service . . . and is not a

party to the action"). Under Wisconsin law, these are not mere technicalities; they are strict

requirements which, if not met, themselves establish that service is deficient. *See Dietrich*, 190

Wis. 2d at 826-27 (affidavit that failed to include all statutorily required information proved

deficient service).

Colborn and his freely chosen agents failed to use reasonable diligence in attempting to

serve Ricciardi and Demos. For this reason, the case must be dismissed as against them.

## B. Service by publication on Ricciardi and Demos also failed because Colborn published a summons only for the Amended Complaint.

Even if Colborn had diligently sought to serve Ricciardi and Demos, his attempt to

service by publication would be ineffective because he published a summons only for the

Amended Complaint, not the original one. On this point, Wisconsin law is as unambiguous as it

---

[4] Colborn's reliance on *Borello v. U.S. Oil Co.*, 130 Wis. 2d 397, 388 N.W.2d 140 (1986), is particularly
inappropriate. He cites that case for the principle that a plaintiff who is "reasonably diligent" in pursuing her rights
is "not barred by [the] statute of limitations where in doing so, she relied on professional advice." Dkt. 52 at 10.
*Borello*, however, addressed only when the plaintiff's personal injury claim accrues for purposes of determining
whether it was time-barred and, most significantly, the "professional advice" at issue was rendered not by *lawyers*
whose conduct prejudiced their client, but rather by *physicians* who failed to diagnose plaintiff correctly, delaying
her discovery of the party responsible for her injuries. 130 Wis. 2d at 403-06.

is demanding: Where—as here—the statute of limitations expires shortly after the complaint is filed, the ***original complaint*** must be served within the 90-day deadline or the action is forever time-barred. *Bartels*, 275 Wis. 2d at 737-40. Amending the complaint and serving only the amended summons and complaint before the 90-day service deadline does not save the claim because service of the amended complaint does not constitute the formal notice of the original action that Wisconsin law demands. *Id.* In one unpublished decision, the Wisconsin Court of Appeals sanctioned as frivolous an appeal arguing, as Colborn does here, that service of an amended complaint within the 90-day period sufficed because it put the defendant on notice of the claim and thus comported with the service laws' intent. *Wahal v. Weiss*, 2016 WI App 57, ¶¶ 5–13, 370 Wis. 2d 788, 882 N.W.2d 871. In short, Colborn's "no harm, no foul" argument is not the law in Wisconsin.[5]

As the Producer Defendants have demonstrated, *see* Dkt. 35 at 12, the Amended Publication Summons published in the *Los Angeles Times* refers exclusively to the Amended Complaint, not its predecessor. This is obvious on the face of the document: The original Complaint named eight defendants, *see* Dkt. 1-1 at 4, while the Amended Complaint dropped all but Netflix, Inc. and the three Producer Defendants, *see* Dkt. 1-2 at 4. The captions of the Publication Summons and Amended Publication Summons refer *only* to the Amended Complaint—they list as defendants only Netflix, Chrome Media, Ricciardi and Demos, omitting

---

[5] Colborn's attempt to reframe this portion of the Producer Defendants' motion as one for insufficient process and to argue from that premise that they have waived it by failing to invoke Fed. R. Civ. P. 12(b)(4) is baseless. *See* Dkt. 52 at 8, 12. He cites no authority that actually supports this position—instead, he relies on two cases from outside the Seventh Circuit concluding that an asserted defense of lack of personal jurisdiction is insufficient to preserve a Rule 12(b)(5) motion, an issue not before this Court. More fundamentally, Colborn misunderstands the Producer Defendants' motion. They have not asserted a defect in the content of the publication summons. Rather, they contend they were not properly served with the original Summons and Complaint *at all*, including by Colborn's publication of a summons referencing *only* the Amended Complaint. *See* Dkt. 35 at 10-14. Rule 12(b)(5) governs this issue. *See, e.g.*, *Knox v. Pendergast*, No. 06-C-61, 2007 WL 1413681 (E.D. Wis. May 11, 2007) (Rule 12(b)(4) concerns form of process while Rule 12(b)(5) concerns manner or lack of delivery of process).

the other four original defendants. *See* Dkt. 18 (Publication Summons); Dkt. 19 (Amended Publication Summons); Dkt. 25 (affidavit of publication).[6] Because no summonses for the original Complaint were ever published, Colborn's multiple affidavits showing that copies of them were subsequently mailed to the Producer Defendants and their counsel are irrelevant.

Colborn attempts to evade this reality by arguing that the Amended Publication Summons included the original complaint because it bears the Manitowoc County case number and refers vaguely to "the complaint." Dkt. 52 at 7-8. These contentions do not help him because the only "complaint" that has the caption referenced in the Amended Publication Summons is the Amended Complaint and that pleading necessarily has the same docket number as its predecessor. Colborn further argues that, because he did not request a publication summons until after amendment, the Amended Publication Summons used the caption of the case as it appeared in the Manitowoc County court records at the time. *Id.* Even accepting that explanation, the fact remains that the summons refers *only* to the Amended Complaint.

Accepting Colborn's contention that the Amended Publication Summons somehow constituted service of the original complaint would provide plaintiffs with the ability to evade the strict service requirements that Wisconsin courts have foreclosed. Under Colborn's theory, there would be no need to serve an original summons and complaint at all as long as a publication summons for an amended complaint is issued before the 90-day deadline expires. As the Wisconsin Court of Appeals has explained, that "would furnish a complainant with a loophole in

---

[6] It is now evident that Colborn did not even *obtain* a publication summons for the original Complaint, much less publish one. As he notes, *see* Dkt. 52 at 7, the Producer Defendants mistakenly assumed in their opening memorandum that Colborn had obtained publication summonses for *both* the original and amended complaints. Dkt. 35 at 12 n.7. In fact, he actually obtained publication summonses *only* for the Amended Complaint and the amended publication summons merely reflects a change in the date of publication.

which the consequences of failing to follow the strictures for commencing an action are removed." *Bartels*, 275 Wis. 2d at 740.

Wisconsin courts long have recognized that exacting adherence to service requirements is no less important when alternative methods such as publication and mailing are used. *See O'Donnell v. Kaye*, 2015 WI App 7, ¶ 11, 359 Wis. 2d 511, 859 N.W.2d 441 ("Statutes which dispense with the actual personal service of process, and in its place provide that which is less certain and satisfactory, must be strictly pursued.") (quoting *Pollard v. Wegener*, 13 Wis. 636, [*569], 643 [*575] (1861)). In *O'Donnell*, the appellate court affirmed dismissal where the plaintiff had properly published a summons but mailed the process to the wrong address, holding that "[m]ailing to the wrong address is analogous to personal service on the wrong person. It is simply not good enough." 359 Wis. 2d at 520. In this case, Colborn's analogous efforts to accomplish service by publication on Ricciardi and Demos are "simply not good enough."

## III. Colborn did not properly serve Chrome Media.

Colborn argues that he served Chrome Media both at the office of its registered agent and by publication. In fact, none of his attempts to do so was effective as a matter of law.

### A. Colborn did not serve Chrome Media's agent personally or by substitute service.

Colborn has, as he must, now repudiated the affidavit executed by process server Emilio Gonzalez Zarate (Dkt. 21), which falsely claimed personal service on Chrome's registered agent, Tal Benari. *See* Dkt. 52 at 20 (conceding Zarate engaged in "sewer service," *i.e.*, "provid[ing] a misleading report" that service was complete). In its place, he has now submitted an affidavit executed by a different process server, Carlos Caceres. *See* Dkt. 44. For multiple reasons, however, this affidavit further demonstrates that Chrome Media was *not* timely served, either by

9

delivering the summons and original complaint to Benari or through any authorized means of substitute service.

*First*, the Caceres affidavit—the only unrepudiated, non-hearsay affidavit in the record that purports to establish service on Chrome Media—states that Caceres visited Benari's office on multiple occasions but alleges only that service was accomplished on March 28, 2019, when Caceres says he left "papers" with a receptionist who did not give her name. Dkt. 44 at 2. Significantly, the affidavit itself references only the Amended Complaint and conspicuously does *not* identify the original complaint as among the "papers" that Caceres left with the receptionist. Dkt. 44 at 1. Even if it had, however, the 90-day deadline expired on March 18, ten days *before* the alleged date of service. For this reason alone, the affidavit does not establish timely service.[7]

*Second,* Colborn's contention that he could effect service on Tal Benari, Chrome Media's registered agent for service of process in California, by serving the person in charge of the office in which *he* works (as opposed to the person in charge of Chrome Media's offices), is based on a fundamental misconception. Wisconsin law allows for personal service on an "officer, director or managing agent" of an LLC or for service to be "left in the office of such officer, director or managing agent with the person who is apparently in charge of the office." Wis. Stat. § 801.11(5)(a). As an alternative, Wisconsin authorizes service "upon an agent authorized by appointment or by law to accept service of the summons for the defendant." *Id.* § 801.11(5)(c). Benari serves as Chrome's registered agent for service of process in California. Second Benari

---

[7] It bears emphasis that, beyond the now repudiated affidavit he previously filed with the Court, the *only* non-hearsay affidavit of service on Chrome Media on which Colborn purports to rely is the one submitted by Caceres, and it claims only that service was effected on March 28, long after expiration of the 90-day service period. *See* Dkt. 44. Moreover, as is the case with the analogous affidavits executed by Caceres regarding his attempts to serve Ricciardi and Demos, *see* pp. 3-4 *supra,* because his affidavit regarding service on Chrome Media does not include the information expressly required by statute, it is ineffective as a matter of law. *Dietrich*, 190 Wis. 2d at 826-27.

Decl. ¶ 2. As a result, service on him is governed by subsection (c), which does *not* authorize leaving process with the person apparently in charge of the office in which he works.[8]

*Third*, Colborn incorrectly assumes that, because the database maintained by the New York Department of State identifying limited liability companies organized under its laws contains, in its listing for Chrome Media, a reference to Benari "c/o" a specified address, that address must be Chrome Media's offices and, as a result, Colborn was entitled to serve the person in charge of that office, rather than Benari himself. *See* Dkt. 52 at 3, 12, 14-15, 20. Had Colborn studied applicable New York law or reviewed the database entry on which he relies, however, he would have determined that the entry is not designed to identify *either* the address of the LLC *or* its registered agent for service of process. Rather, it reflects the fact that, under New York law, the Department of State *itself* is the default agent for service of process on New York-registered LLCs such as Chrome Media, *see* NY Ltd. Liab. Co. Law § 301 (McKinney),[9] and that the address contained in the database indicates *only* where the Department of State "will mail process if accepted on behalf of the entity."[10] The address that an LLC provides to the Department of State for mailing of such legal process—the "C/O Tal Benari" address on which Colborn focuses—"need not be a place where business activities are conducted by such limited liability company." *Id.* § 102(s). In fact, in this case, it is not—it is the address

---

[8] Under Wisconsin law, a "managing agent" for purposes of subsection (a) is "a person possessing and exercising the right of general control, authority, judgment and discretion over the business or affairs of the corporation, either on an overall or part basis." *Richards v. First Union Secs., Inc.*, 2006 WI 55, ¶ 33, 290 Wis. 2d 620, 714 N.W.2d 913. Benari, who is not even an employee of Chrome Media, exercises no role in the LLC's operations, much less control over them. Second Benari Decl. ¶ 4.

[9] New York allows, but does not require, LLCs to designate an agent for service of process in addition to the Department of State. *See* NY Ltd. Liab. Co. Law §302 (McKinney). Contrary to Colborn's insinuations, the database's failure to identify Benari as Chrome Media's registered agent (although he is so registered in California, where Chrome Media conducts its business and Benari lives and works) is both commonplace and unremarkable. *See* Dkt. 35 at 4, 6, 13.

[10] *See* Department of State, Division of Corporations Business Entity Database, https://appext20.dos.ny.gov/corp_public/corpsearch.entity_search_entry (search for "Chrome Media").

of the accounting firm where Benari is employed.  Second Benari Decl. ¶ 3.  To be sure, because Benari himself (*not* the accounting firm for which he works) *is* Chrome Media's registered agent for service of process in California, *id.* ¶ 2, he could have been *personally* served with process on Chrome Media's behalf.  Such service, however, could not be effected by leaving process with the accounting firm's receptionist, regardless of whether that person was or otherwise appeared to be, the person in charge of *that* firm's office.

*Fourth*, even if service on March 28 had been timely, and even if service on the person in charge of the office in which Benari works would have otherwise been effective, Caceres's affidavit does not state—or provide any information to support the conclusion—that he reasonably believed the unnamed receptionist was the person apparently in charge of that office, as required by Wis. Stat. § 801.11(5)(a).  *See* Dkt. 44.  Colborn relies on one inapposite case from Massachusetts to support his counterintuitive contention that a reasonable person would believe that a receptionist is the person *in charge* of the office in which he or she works.  Dkt. 52 at 13.  Courts applying *Wisconsin* law have rejected such claims.  In *Michalczyk v. Maslyk*, No. 11-CV-504-BBC, 2011 WL 5326066 (W.D. Wis. Nov. 3, 2011), the court held that the plaintiffs did not properly serve the corporate owners of a hotel by leaving the process with the front desk clerk precisely because "no reasonable process server could have believed the hotel clerk was 'apparently' in charge of the corporate offices after the clerk said he was not authorized to accept service papers on behalf of any defendant."  *Id.* at *2.

Colborn attempts to deflect this problem by citing *Horrigan v. State Farm Insurance Co.*, 106 Wis. 2d 675, 684, 317 N.W.2d 474 (1982), and *Keske v. Square D Co.*, 58 Wis. 2d 307, 315, 206 N.W.2d 189 (1973).  Dkt. 52 at 13-14.  He correctly states that, under those cases, a process server is entitled to rely on a person's own representation that he or she is authorized to accept

service or on other circumstances that reasonably, if mistakenly, support a good faith belief that the person in charge was served—even if that person later claims to lack authority to accept service. *Id.* But in both those cases, the process server asked a receptionist to direct him to the person who could accept service, and then served *that* person. *Horrigan*, 106 Wis. 2d at 678-81; *Keske*, 58 Wis. 2d at 313. That circumstance is a far cry from leaving the papers with a receptionist, which is all Caceres attests he did.

Meanwhile, all three receptionists have affirmatively testified that they were *not* in charge of the office in which they worked, that they were *not* authorized to accept service on Benari's behalf, and that they said so when given the opportunity. *See* Dkt. 39 (Canaan Decl.) ¶¶ 4, 6; Dkt. 40 (Rodriguez Decl.) ¶ 4; Dkt. 41 (Bianchi Decl.) ¶¶ 4-5. Both Wisconsin and federal law require *plaintiffs*, when challenged, to provide evidence proving that service was proper. *Dietrich*, 190 Wis. 2d at 826-27; *Durukan Am., LLC v. Rain Trading, Inc.*, 787 F.3d 1161, 1163-64 (7th Cir. 2015). The only person who could have contradicted the receptionists' sworn testimony is Caceres, and his affidavit does not even state he believed the receptionists to be in charge of the office, much less provide any details that would support such an assertion. *See* Dkt. 44. Colborn's contention that he personally served Chrome Media, therefore, fails as a matter of Wisconsin law.

### B. Colborn did not serve Chrome Media by publication.

As with Ricciardi and Demos, to prove service by publication on Chrome Media, Colborn must show both reasonable diligence and that the publication itself satisfied Wisconsin law. And, as with Ricciardi and Demos, he cannot satisfy either of those requirements.

## 1. Colborn was not entitled to serve Chrome Media by publication because he failed to exercise "reasonable diligence."

As explained in the preceding section, service on Chrome Media could have been as simple as serving the New York Department of State—a nearly foolproof option explained in detail in the helpful directions on the department's website, where forms for effecting service in that manner are readily available.[11]  Surely, any reasonably diligent party would have at least investigated the possibility of service through a state agency before resorting to more complicated, costly and uncertain options, especially when it did not commence its lawsuit until the eve of the expiration of the applicable statute of limitations and then waited until 77 days to attempt to effect service.  Under such undisputed circumstances, Colborn did not act with reasonable diligence, and his attempt to serve Chrome Media by publication was unavailing.

## 2. Service by publication on Chrome Media failed because Colborn published only a summons for the Amended Complaint.

As the Producer Defendants demonstrated in their opening memorandum and at pp. 7-8, *supra,* the Amended Publication Summons Colborn published in the *Los Angeles Times* did not purport to serve the original complaint, as required by Wisconsin law.  For this reason as well, Chrome Media was not properly served by publication.

## IV.  Colborn is not entitled to discovery or an evidentiary hearing.

Colborn requests that this Court grant him discovery and an evidentiary hearing.  Dkt. 52 at 1, 7, 15-20; *see also* Dkt. 51.[12]  Neither additional discovery nor an evidentiary hearing is warranted because, as demonstrated above and in the Producer Defendants' opening submission,

---

[11] *See* How do I serve process on the Secretary of State?, New York State Department of State, Division of Corporations, https://www.dos.ny.gov/corps/faq_service_of_process.page.asp.

[12] Colborn's predicate representation that his counsel had no idea the Producer Defendants intended to challenge service until this Motion was filed, *see* Dkt. 52 at 3, does not survive reasonable scrutiny.  On the very first page of the Notice of Removal, the Producer Defendants expressly stated that they were appearing specially and specifically reserved their right to challenge service.  *See* Dkt. 1 at 1 & n.1.

there is simply no material factual dispute to resolve. The only such dispute Colborn purports to identify is "whether one or more of the receptionists accepted the documents to provide to Mr. Benari." Dkt. 52 at 13. Not only is there no dispute on this point, it is immaterial because, as explained at pp. 9-13 *supra*, service on the receptionists at the accounting firm for which Benari worked is no substitute, as a matter of law, for service on Benari in his personal capacity as Chrome Media's registered agent for such purposes. Similarly, even if the issue were relevant (which, for the same reasons, it is not), Colborn cannot claim a factual dispute regarding whether Caceres reasonably believed the receptionists were in charge of the office because he obtained and filed an affidavit in which Caceres notably fails even to address that issue.[13]

## CONCLUSION

Chrome Media LLC, Laura Ricciardi, and Moira Demos respectfully request that this Court dismiss all claims against them with prejudice.

Dated: June 13, 2019                 Respectfully submitted,


  *s/ James A. Friedman*
James A. Friedman, SBN 1020756
Godfrey & Kahn, S.C.
One East Main Street
Suite 500
Madison, WI 53703-3300
T: (608) 284-2617
F. (608) 257-0609
jfriedman@gklaw.com

---

[13] For these reasons (and those set out at pp. 1-3 *supra*), Colborn's separate motion seeking such discovery and a hearing, as well as additional time to accomplish service, must be denied.

Lee Levine
Matthew E. Kelley
Ballard Spahr LLP
1909 K Street, NW, Suite 1200
Washington, D.C. 20006-1157
T: (202) 508-1110
F: (202) 661-2299
levinel@ballardspahr.com
kelleym@ballardspahr.com

Leita Walker
Ballard Spahr LLP
2000 IDS Center, 80 South 8th Street
Minneapolis, MN 55402-2119
T: (612) 371-6222
F: (612) 371-3207
walkerl@ballardspahr.com

*Counsel for Netflix, Inc.; Chrome Media LLC;
Laura Ricciardi; and Moira Demos*

20759658.1

2015 WL 1429133
Only the Westlaw citation is currently available.
United States District Court,
W.D. Wisconsin.

Robyn L. BARNETT, Plaintiff,

v.

KARL STORZ ENDOSCOPY AMERICA,
INC., Karl Storz Gbbh & Co. KG, Ethicon,
Inc., **Ethicon Women's Health and Urology,**
Ethicon Endo Surgery, Inc., Johnson &
Johnson Services, Johnson & Johnson,
Medtech Group, Inc., Hei, Inc., Defendants.

No. 15–cv–36–wmc.
|
Signed March 27, 2015.

**Attorneys and Law Firms**

Michael Edward Pederson, Weitz & Luxenberg, P.C.,
New York, NY, Robert L. Loberg, Loberg Law Office,
Ellsworth, WI, for Plaintiff.

James Francis Murdica, Patterson, Belknap, Webb &
Tyler, LLP, New York, NY, Webster A. Hart, Stephanie
Lee Finn, Herrick & Hart, S.C., Eau Claire, WI, for
Defendants.

ORDER

WILLIAM M. CONLEY, District Judge.

*1 In this civil action, plaintiff Robyn L. Barnett asserts
claim of negligence and strict liability, as well as claims
under Wisconsin Deceptive Trade Practices Act, Wis.
Stat. § 100.18 *et sect.,* all arising out of defendants' design,
manufacture, labeling, marketing, distribution or sale
of a Laparoscopic Power Morcellator, which was used
on plaintiff during a surgical procedure on October 5,
2011. (Am.Compl.(dkt.# 1–2).) Despite filing her original
complaint in Pierce County Wisconsin Circuit Court on
October 3, 2014, and filing an amended complaint on
December 17, 2014, plaintiff did not attempt service on
at least some of the defendants until December 2014. The
case was removed to this court on January 16, 2015, on the
basis of this court's diversity jurisdiction under 28 U.S.C.
§ 1332(a). (Not. of Removal (dkt. # 1).) Before the court

are two motions to dismiss, one by defendants Karl Storz
Endoscopy America, Inc. (dkt.# 5), which is now moot, [1]
and the other by defendants Ethicon Endo Surgery, Inc.,
Ethicon Women's Health and Urology, Ethicon, Inc., and
Johnson & Johnson, Johnson & Johnson Services, and
Medtech Group, Inc. (dkt.# 20). [2]

[1]     Plaintiff filed a notice of voluntary dismissal pursuant
        to Federal Rule of Civil Procedure 41(a)(1) as to
        her claims against defendants Karl Storz Endoscopy
        America, Inc. and Karl Storz GmbH & Go. KG.
        (Dkt.# 29.) This notice, therefore, moots Karl Storz's
        pending motion to dismiss.

[2]     Defendant HEI has not answered or otherwise
        appeared, but has filed a suggestion of bankruptcy.
        (Dkt.# 16.) Plaintiff has not, however, indicated
        that HEI was unique in being served timely. In any
        event, the claims against HEI will be stayed and
        administratively closed pending guidance from the
        bankruptcy court.

In both motions, defendants contend that the court
should dismiss the case against them for lack of personal
jurisdiction and deficient process under Federal Rules
of Civil Procedure 12(b)(2), (b)(4), and (b)(5), because
plaintiff failed to serve an authenticated copy of the
summons and complaint within 90 days as required by
Wis. Stat. § 801.02(1). Plaintiff acknowledges this failure
in response to both motions, but asks the court to grant
defendants' motions to dismiss without prejudice and
to find that "our subsequent filing relate[s] back to the
original filing of the Complaint." (Pl.'s Responses (dkt.18,
30).)

"Federal courts acquire personal jurisdiction only to the
extent the state law authorizes service of process." *United
Rope Distributors, Inc. v. Seatriumph Marine Corp.,* 930
F.2d 532, 536 (7th Cir.1991); *see also Allen v. Ferguson,*
791 F.2d 611, 616 n. 8 (7th Cir.1986) ("In determining the
validity of service prior to removal, a federal court must
apply the law of the state under which the service was
made, and the question of amenability to suit in diversity
actions continues to be governed by state law even
after removal."). In *American Family Mutual Insurance
Company v. Royal Insurance Company of America,* 167
Wis.2d 524, 481 N.W.2d 629 (1992), the Wisconsin
Supreme Court reviewed the requirement of serving an
authenticated copy of the summons and complaint under
§ 801.02(1). The court held that a plaintiff's failure to

WESTLAW   © 2015 Thomson Reuters. No claim to original U.S. Government Works.

comply with this requirement "constitutes a fundamental error which necessarily precludes personal jurisdiction regardless of the presence or absence of prejudice." *Id.* at 534, 481 N.W.2d at 633. Moreover, while harsh, it is not possible for plaintiff to cure this defect since (1) the 90–day period for service has lapsed, and (2) that time period may not be enlarged. *See* Wis. Stat. § 801.15(2)(a). Accordingly, the court agrees with defendants that dismissal for lack of personal jurisdiction, insufficient process and insufficient service of process is warranted.

**\*2** Because the court dismisses this case due to lack of personal jurisdiction without reaching the merits of the alleged claims, plaintiff is right that the case must be dismissed without prejudice to refiling. *See Sikhs v. Justice v. Badal,* 736 F.3d 743, 751 (7th Cir.2013) ("Ordinarily a dismissal for want of personal jurisdiction as a result of improper service is without prejudice."); *Sentry Corp. v. Harris,* 802 F.2d 229, 246 (7th Cir.1986) (affirming dismissal of claims without prejudice where plaintiff failed to comply with Wis. Stat. § 801.02(1)). Plaintiff also asks the court to enter some sort of order finding that the "subsequent filing relate[s] back to the original filing of the Complaint." (Pl.'s Responses (dkt.18, 30).) Plaintiff cites no legal authority for such an order, nor could this court find such support. Indeed, plaintiff's request falls squarely within an advisory opinion, since there is no refiled complaint, nor is it clear that if the complaint is refiled it will be in this court (or be removed to this court). *See Halbrucker v. Waste Mgmt. of Wis.,* No. 06–C–796, 2007 WL 313930, at *1 (E.D.Wis. Jan. 29, 2007) (refusing to consider statute of limitations defense for complaint to be refiled, finding that "at this juncture" such a ruling "would amount to an advisory opinion").

If plaintiff opts to refile her complaint, it will be up to that court to determine the merits of any asserted statute of limitations' defense, including plaintiff's right, if any, to the filing date being related back to the original filing date in this dismissed action.

Accordingly,

### ORDER

IT IS ORDERED that:

1) defendant Karl Storz Endoscopy America, Inc.'s motion to dismiss (dkt.# 5) is DENIED AS MOOT in light of plaintiff's notice of voluntary dismissal;

2) defendants Ethicon Endo Surgery, Inc., Ethicon Women's Health and Urology, Ethicon, Inc., Johnson & Johnson, Johnson & Johnson Services, and Medtech Group, Inc.'s motion to dismiss (dkt.# 20) is GRANTED. Plaintiff's complaint is dismissed without prejudice;

3) the claims against defendant HEI, Inc. are STAYED pending action by the bankruptcy court; and

4) the clerk of court is directed to close this case.

**All Citations**

Not Reported in F.Supp.3d, 2015 WL 1429133

---

© 2019 Thomson Reuters. No claim to original U.S. Government Works.

© 2019 Thomson Reuters. No claim to original U.S. Government Works.

370 Wis.2d 788
Unpublished Disposition
See Rules of Appellate Procedure, Rule 809.23(3),
regarding citation of unpublished opinions.
Unpublished opinions issued before July 1, 2009, are
no precedential value and may not be cited except
in limited instances. Unpublished opinions issued on
or after July 1, 2009 may be cited for persuasive value.
NOTE: THIS OPINION WILL NOT
APPEAR IN A PRINTED VOLUME. THE
DISPOSITION WILL APPEAR IN A REPORTER.
Court of Appeals of Wisconsin.

Anunpama WAHAL, Plaintiff–Appellant,
Sanjay Wahal and American Family Mutual
Insurance Company, Involuntary–Plaintiffs,
v.
Stephanie J. WEISS and State Farm
Mutual Automobile Insurance
Company, Defendants–Respondents.

No. 2015AP1379.
|
June 9, 2016.

Appeal from a judgment of the circuit court for
Outagamie County: Nancy J. Krueger, Judge. *Affirmed
and cause remanded with directions.*

Before HIGGINBOTHAM, SHERMAN, and
BLANCHARD, JJ.

Opinion

¶ 1 PER CURIAM.

 *1  Anunpama Wahal appeals a judgment of the circuit
court dismissing with prejudice Wahal's personal injury
action against Stephanie Weiss and State Farm Mutual
Automobile Insurance Company. The court concluded
that Wahal's failure to timely serve the original summons
and complaint on Weiss and State Farm constituted a
fundamental defect that deprived the court of personal
jurisdiction over the defendants. We agree, based on
controlling case law, and accordingly affirm. We also
grant the motion for costs and attorney's fees based on a
frivolous appeal.

## BACKGROUND

¶ 2 There is no dispute regarding the following pertinent
facts. In 2014, Wahal filed a summons and complaint
alleging that she suffered damages as a result of a car
accident with Weiss that had occurred nearly three years
earlier. Wahal subsequently filed an amended summons
and complaint, adding her husband as a party to the
action, and including an additional claim by the husband.
The *amended* summons and complaint, but not the *original*
summons and complaint, were timely served on Weiss and
her insurer, State Farm. Wahal concedes that she never
served the original summons and complaint on Weiss and
State Farm, even though Weiss and State Farm raised
insufficiency of service as an affirmative defense in their
answer to the amended summons and complaint.

¶ 3 After 90 days passed without Wahal serving the
original summons and complaint, which was after the
three-year statute of limitations for personal injury actions
had run, Weiss and State Farm brought a motion to
dismiss. The circuit court granted the motion, and rejected
a motion for reconsideration, characterizing the motion as
having been "brought and continued without a reasonable
basis in law or equity." [1] Wahal appeals.

[1]     Explaining more fully, after Wahal filed her notice
of appeal, the circuit court issued a decision
and order denying the motion for reconsideration that
Wahal had filed (which raised the same issues she now
raises on appeal), and granting as sanctions Weiss
and State Farm's motion for costs related to the
reconsideration motion. Wahal does not appeal the
order denying reconsideration and therefore we do
not discuss further any issues related to the order in
this opinion.

## DISCUSSION

¶ 4 WISCONSIN STAT. ch. 801, which governs the
commencement of actions, provides, in pertinent part,
that "[a] civil action in which a personal judgment
is sought is commenced as to any defendant when
a summons and a complaint naming the person as
defendant are filed with the court," *provided that* the
defendant is served with "an authenticated copy of the
summons and of the complaint ... within 90 days after

Case 1:19-cv-00484-BHL   Filed 06/13/19   Page 20 of 30   Document 86

filing." WIS. STAT. § 801.02(1) (2013–14). [2] The same
terminology is used in addressing the application of
statutes of limitations. *See* WIS. STAT. § 893.02 (for
statute of limitations purposes "an action is commenced ...
as to each defendant, when the summons naming the
defendant and the complaint are filed with the court,
but no action shall be deemed commenced as to any
defendant upon whom service of authenticated copies of
the summons and complaint has not been made within 90
days after filing.").

[2]    All references to the Wisconsin Statutes are to the
       2013–14 version unless otherwise noted.

¶ 5 " 'Wisconsin requires strict compliance with its rules
of statutory service, even though the consequences may
appear to be harsh.' " *American Family Mut. Ins. Co. v.
Royal Ins. Co. of Am.,* 167 Wis.2d 524, 531, 481 N.W.2d
629 (1992) (quoting *Mech v. Borowski,* 116 Wis.2d 683,
686, 342 N.W.2d 759 (Ct.App.1983)).

  **\*2**  "[T]he service of a summons in a manner prescribed
by statute is a condition precedent to a valid exercise
of personal jurisdiction" .... Significantly, a defendant's
actual notice of an action is not alone enough to confer
personal jurisdiction upon the court; rather, "[s]ervice
must be made in accordance with the manner prescribed
by statute."

*Johnson v. Cintas Corp. No. 2,* 2012 WI 31, ¶ 25, 339
Wis.2d 493, 811 N.W.2d 756 (quoting *Danielson v. Brody
Seating Co.,* 71 Wis.2d 424, 429, 238 N.W.2d 531 (1976)).

¶ 6 In *Johnson,* our supreme court observed that "our
courts have recognized a distinction between service that
is fundamentally defective, such that the court lacks
personal jurisdiction over the defendant in the first
instance, and service that is merely technically defective."
*Johnson,* 339 Wis.2d 493, ¶ 26, 811 N.W.2d 756. If the
defect is fundamental, rather than merely technical, then
the court lacks personal jurisdiction over the defendant,
regardless of whether the defect resulted in prejudice to
the defendant. *American Family,* 167 Wis.2d at 533, 481
N.W.2d 629.

¶ 7 Wahal argues that, in light of the fact that she served
the amended summons and complaint within 90 days of
filing of the original summons and complaint, her failure
to serve the original summons and complaint within 90
days of filing the original summons and complaint is

merely a technical defect that does not deprive the court
of personal jurisdiction over Weiss and State Farm. That
is, she contends that her service of "an authenticated
amended summons and complaint comports with the
purpose and intent" of WIS. STAT. § 801.02(1). In
support, Wahal relies on older precedent that stands for
the following general proposition: personal jurisdiction
can be established despite an error in service, as long
as a defendant is on notice of the action and did not
suffer prejudice from the error in service. *See, e.g., Lak
v. Richardson–Merrell, Inc.,* 100 Wis.2d 641, 302 N.W.2d
483 (1981); *Schlumpf v. Yellick,* 94 Wis.2d 504, 288
N.W.2d 834 (1980).

¶ 8 Wahal's arguments are entirely without merit. They
rely on legal authority that pre-dates *American Family,*
cited above, in which our supreme court established the
distinction between "fundamental" versus "technical"
defects in this context, specifically concluding that
"[f]ailure to comply with sec. 801.02(1) Stats., constitutes
a fundamental error which necessarily precludes personal
jurisdiction regardless of the presence or absence of
prejudice." *See American Family,* 167 Wis.2d at 533–
35, 481 N.W.2d 629. Moreover, the authority on which
Wahal relies also pre-dates controlling precedent from
this court that specifically relies on *American Family. See
Bartels v. Rural Mut. Ins. Co.,* 2004 WI App 166, ¶¶ 15–
17, 275 Wis.2d 730, 687 N.W.2d 84 (affirming circuit
court's dismissal of action as untimely where amended
summons and complaint were timely served on defendant,
but original summons and complaint were never served on
defendant).

¶ 9 Like Wahal here, the plaintiffs in *Bartels* filed an
original summons and complaint but never served them
on the defendant. *Id.,* ¶ 4. Like Wahal, the plaintiffs in
*Bartels* also subsequently filed and timely served on the
defendant an amended summons and complaint. *Id.,* ¶
5. Like the circuit court here, the circuit court in *Bartels*
granted defendant's motion to dismiss on the ground
that the plaintiffs' failure to serve the original summons
and complaint resulted in the action never having been
commenced and, like Wahal, the plaintiffs in *Bartels*
appealed the dismissal to this court. *Id.,* ¶ 6.

  **\*3**  ¶ 10 In *Bartels,* we upheld the circuit court's
dismissal of the plaintiffs' action. Relying on *American
Family,* we concluded that the plaintiffs' "failure to
serve [the defendant] with the original summons and

complaint within ninety days of their filing" "constituted a fundamental defect." *Id.,* ¶ 16, 481 N.W.2d 629 (citing *American Family,* 167 Wis.2d at 534–35, 481 N.W.2d 629). We further explained that "[a] fundamental defect deprives the circuit court of personal jurisdiction over the defendant," *id.* (citations omitted), and that "a fundamental defect cannot be remedied with an amended pleading," *id.,* ¶ 17, 481 N.W.2d 629. We conclude that here, as in *Bartels,* Wahal's failure to serve Weiss and State Farm with the original summons and complaint within 90 days resulted in the three-year statute of limitations period expiring without an action having been commenced, leaving the court without personal jurisdiction over Weiss and State Farm. Under *American Family* and *Bartels,* the failure was a fundamental defect that could not be remedied by Wahal's subsequent filing of an amended pleading.

¶ 11 By separate motion, Weiss and State Farm ask us to deem Wahal's appeal frivolous and remand the action to the circuit court so that it may determine costs. We grant the motion, because we conclude that this appeal was brought "without any reasonable basis in law or equity and could not be supported by a good faith argument for an extension, modification or reversal of existing law." *See* WIS. STAT. § 809.25(3)(c)2. For the following reasons, we view Wahal's counsel's approach here to be frivolous.

¶ 12 First, as discussed above, *American Family* and *Bartels* are not ambiguous when applied to the undisputed facts here and Wahal heavily relies on pre-*American Family* and *Bartels* authority, which is an obvious nonstarter. *See American Family,* 167 Wis.2d at 531, 481 N.W.2d 629; *Bartels,* 275 Wis.2d 730, ¶¶ 15–17, 687 N.W.2d 84.

¶ 13 Second, Wahal does not provide any basis to extend, modify, or reverse existing law. *See* WIS. STAT. § 809.25(3)(c)2.

**\*4** ¶ 14 Third, Wahal invites us to distinguish *Bartels* based on an inaccurate summary of that case. Wahal states, "Bartels failed to serve any complaint within the ninety (90) days allowed by statute" and also states that the court in *Bartels* "concluded that plaintiffs attempted to resurrect actions that were never commenced prior to the statute of limitations deadline because *no* summons and complaint were served within 90 days." (Emphasis in original.) In fact, the court in *Bartels* specifically noted

that the plaintiffs "filed an amended summons and timely served [the defendant] with the amended summons and complaint" and that the defendant "was never served with the *original* summons and complaint" and that "[b]ecause [the defendant] did not have timely notice of the *original* action, to allow the *amended* suit to proceed would deprive [the defendant] of the statute of limitations protections." *Bartels,* 275 Wis.2d 730, ¶¶ 5, 15, 687 N.W.2d 84 (emphasis added).

¶ 15 Fourth, in a further pretense at distinguishing her case from *Bartels,* Wahal inaccurately characterizes the contents of one of her pleadings in the instant case. Wahal repeatedly asserts that the amended complaint was "nearly identical" to the original complaint and that the only difference was that the amended complaint added Wahal's husband as a party. Wahal represents that "the amended complaint did not change in substance, nor did it add additional language, rather it was simply filed to add Sanjay Wahal, Wahal's husband." We are especially troubled by the fact that, even after Weiss and State Farm point out that the amended complaint expanded the claims, Wahal persists in her position that "[t]he two pleadings are nearly identical. The amended pleadings merely added Wahal's husband to the action." The pleadings reveal that Wahal's amended complaint not only added her husband as a party, but added "a claim for loss of society and companionship in this matter as a direct result of the actions of [Weiss.]"

## CONCLUSION

¶ 16 For the foregoing reasons, we conclude that the circuit court properly dismissed the action. We also grant Weiss and State Farm's motion to find the appeal frivolous, remanding to the circuit court for a determination of costs and reasonable attorney fees incurred by Weiss and State Farm in defending the appeal.

Judgment affirmed and cause remanded with directions.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

## All Citations

370 Wis.2d 788, 882 N.W.2d 871 (Table), 2016 WL 3190061, 2016 WI App 57

WESTLAW   © 2019 Thomson Reuters. No claim to original U.S. Government Works.

© 2019 Thomson Reuters. No claim to original U.S. Government Works.

 © 2019 Thomson Reuters. No claim to original U.S. Government Works. Case 1:19-cv-00484-BHL Filed 06/13/19 Page 23 of 30 Document 86

2007 WL 1413681
Only the Westlaw citation is currently available.
United States District Court,
E.D. Wisconsin.

Shannon Lamont KNOX, Plaintiff,

v.

Officer Michael PENDERGAST, and

Officer Joseph D. Goggins,[1] Defendants.

| 1 | The Court has amended the caption to include Officer Goggins's given names. |

No. 06-C-61.
|
May 11, 2007.

**Attorneys and Law Firms**

Shannon Lamont Knox, Milwaukee, WI, pro se.

Susan E. Lappen, Milwaukee City Attorney's Office, Milwaukee, WI, for Defendants.

### DECISION AND ORDER

RUDOLPH T. RANDA, Chief Judge.

**\*1** Several motions are pending in this civil rights action brought pursuant to 42 U.S.C. § 1983 by pro se Plaintiff Shannon Lamont Knox ("Knox") against two City of Milwaukee Police Department ("MPD") law enforcement officers, Defendants Officer Michael Pendergast ("Pendergast") and Officer Goggins ("Goggins"). In a nutshell, the complaint alleges that "Knox has been targeted by Defendants Pendergast and Goggins for ongoing harassment which has taken the form of unreasonable searches, verbal abuse and intimidation, thefts of his lawful property and falsification of official government documents (police reports), in official capacity and under color of state law." (Compl.3.) The complaint requests compensatory damages against the Defendants in their individual and official capacities, and punitive damages.

### BACKGROUND

The action was commenced on January 13, 2006. Returns in the Court's file indicate that Goggins was served with the summons and complaint on January 17, 2006 (Docket No. 2), and that Pendergast was served with the summons and complaint on September 21, 2006. (Docket No. 15.)

On October 16, 2006, Knox obtained an extension of time until November 9, 2006, to inform the Court how he intended to proceed against Pendergast. On October 25, 2006, Knox filed a motion for default judgment against Goggins. Goggins entered a special appearance in this action, and filed a motion to dismiss the complaint against him pursuant to Rules 12(b)(4) and (5) of the Federal Rules of Civil Procedure for failure to obtain proper service of the summons and complaint upon him, and an opposition to the motion for default judgment. Pendergast has not entered an appearance. Knox has not informed the Court how he intends to proceed against Pendergast.

### MOTION FOR DEFAULT JUDGMENT

On October 25, 2006, Knox filed a motion for default judgment against Goggins, asserting that on January 17, 2006, he personally served Goggins and that Goggins failed to respond to the complaint. Knox filed the affidavit of Adib Timbuktu ("Timbuktu") who states that on January 17, 2006, he "personally hand-delivered a copy of the complaint" in this action to Goggins in the lobby of the Third District MPD station and read the summons to Goggins. (Timbuktu Aff. filed Oct. 25, 2006.) Goggins opposes the motion.[2]

| 2 | Goggins's motion to dismiss is related in part to the motion for default judgment. |

The Federal Rules of Civil Procedure make a clear distinction between the entry of default and the entry of a default judgment. Rule 55 of the Federal Rules of Civil Procedure prescribes a two-step process. Under the rule, prior to obtaining a default judgment under either Rule 55(b)(1) or Rule 55(b)(2), there must be an entry of default as provided by Rule 55(a). *In re Catt,* 368 F.3d 789, 793 (7th Cir.2004); 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2682 at 13 (3d. ed.1998).

Thereafter, the grant or denial of a motion for the entry of default judgment lies within the sound discretion of the

WESTLAW  © 2019 Thomson Reuters. No claim to original U.S. Government Works.  1

trial court. *Dundee Cement Co. v. Howard Pipe & Concrete Prods., Inc.,* 722 F.2d 1319, 1322 (7th Cir.1983).

> **\*2** Even when a default judgment is warranted based on a party's failure to defend, **the allegations in the complaint with respect to the amount of the damages are not deemed true.** The district court must instead conduct an inquiry in order to ascertain the amount of damages with reasonable certainty.

*In re Catt,* 368 F.3d at 793 (quoting *Credit Lyonnais Sec. (USA), Inc. v. Alcantara,* 183 F.3d 151, 155 (2d Cir.1999)) (emphasis added).

Knox did not file a request for entry of default against Goggins with the Clerk of the Court. Knox has not taken the first step of the two-step process to obtain a default judgment. Therefore, Knox's motion for default judgment is denied.

## MOTION TO DISMISS

Pursuant to Rule 12(b)(4) and (5) of the Federal Rules of Civil Procedure, Goggins seeks dismissal of the complaint on the ground that he was not properly served with both the summons and complaint in this action. By means of his own affidavit and that of his attorney, Goggins maintains that he was only served with a copy of the complaint. (Lappen Aff. ¶¶ 1-3, 8; App. 3-4.) Goggins avers that on January 17, 2006, at about 4:10 p.m. he was informed that "Willie Jones" was waiting for him at the front desk of the district police station and that "Mr. Jones" presented him with three sheets of paper which were stapled together and that those three sheets of paper are attached to his affidavit. (Goggins Aff. ¶¶ 2-5.) Goggins avers that, as of the date of his affidavit, the only documentation that he has received about this litigation from any source is the three-page complaint which is attached to his affidavit. (*Id.* at ¶ 9.) Neither the complaint nor any additional sheets of paper are attached to the Goggins affidavit.

Knox maintains that Goggins was served with both the summons and complaint. Knox filed a second Timbuktu

affidavit. Timbuktu avers that he served Goggins and "not only gave him a copy of the summons, but [Timbuktu] actually read it to him to comply with all of the rules of service." (Timbuktu Aff. filed Jan. 12, 2007, ¶ 1.)

A Rule 12(b)(5) motion to dismiss tests the sufficiency of service of process. When a defendant challenges the sufficiency of service of process, the plaintiff must make a *prima facie* showing of proper service, which allows the "court to assert personal jurisdiction over the defendant. *See Trotter v. Oppenheimer & Co., Inc.,* No. 96-C-1238, 1997 WL 102531, at \*2 (N.D.Ill. Mar.4, 1997). The requirements for proper service on individuals are established in Rule 4(e). *See Bilal v. Rotec Indus., Inc.,* No. 03-C-9220, 2004 WL 1794918, \*3 (N.D.Ill.2004)

Federal Rule of Civil Procedure 4(c)(1) provides that a summons "shall be served together with a copy of the complaint." A signed return of service constitutes *prima facie* evidence of valid service "which can be overcome only by strong and convincing evidence." *O'Brien v. R.J. O'Brien & Assocs., Inc.,* 998 F.2d 1394, 1398 (7th Cir.1993).

**\*3** Knox has the burden of establishing the sufficiency of service of process. *See Trotter,* No. 96-C-1238, 1997 WL 102531, at \*2. On January 19, 2006, Knox filed the signed return of service of the summons and complaint which indicates that Timbuktu executed service upon Goggins on January 17, 2006. (Docket No. 2.) Goggins's affidavit that he was only served with the complaint is conclusory. His attorney's statement that about January 19, 2006, she was "made aware of the fact" that Goggins was served with the complaint but not with any summons and her January 27, 2006, letter stating that service of the complaint was inadequate (Lappen Aff. ¶¶ 2-3, 5), do not make a sufficient factual showing. Goggins has not presented "clear and convincing evidence" to overcome the *prima facie* evidence of service established by the return filed on January 19, 2006.

Goggins also cites Rule 12(b)(4) of the Federal Rules of Civil Procedure as a basis for his motion. Rule 12(b)(4) is concerned with the form of the summons as dictated by Rule 4(a) and 4(b). *See* 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1353 at 334 (3d ed.2004). Deficiencies cognizable under Rule 12(b)(4) include errors in naming the proper defendant, failing to specify the number of days allotted for defendant

WESTLAW   © 2019 Thomson Reuters. No claim to original U.S. Government Works.

to answer, and failure to obtain a court seal or signature. *See O'Brien,* 998 F.2d at 1400. A motion challenging sufficiency of process under this rule **must point out specific instances** where the plaintiff has failed to comply with the requirements of Rule 4. *See id.* (emphasis added).

In his motion and brief, Goggins has not identified any specific technical problem(s) with the summons. He simply denies that he received the summons. As such, he has not provided a basis for dismissal of the Complaint pursuant to Rule 12(b)(4).

Goggins's motion to dismiss is denied. Goggins shall file an answer to the Complaint on or before May 31, 2007.

## MOTION FOR RESTRAINING ORDER

Knox filed motion for an order restraining the Defendants from engaging in "extraneous conduct" with Knox.[3] Knox describes two incidents involving only Pendergast. Goggins opposes the motion. Pendergast has not responded to the motion.

[3]      Knox's motion states that: "I declare under penalty of perjury that the foregoing is true and correct." By declaring under penalty of perjury that his motion is true and signing the motion, Knox has verified his motion pursuant to 28 U.S.C. § 1746. Thus, the factual assertions in his motion are considered as if they were made in an affidavit.

A party seeking a preliminary injunction is required to demonstrate a likelihood of success on the merits, that it has no adequate remedy at law, and that it will suffer irreparable harm if the relief is not granted. *Promatek Indus., Ltd. v. Equitrac Corp.,* 300 F.3d 808, 812 (7th Cir.2002) (citing *Ty, Inc. v. Jones Group, Inc.,* 237 F.3d 891, 895 (7th Cir.2001) (citing *Abbott Labs. v. Mead Johnson & Co.,* 971 F.2d 6, 11 (7th Cir.1992))). If the moving party can satisfy these conditions, the Court must then consider any irreparable harm an injunction would cause the nonmoving party. *Promatek,* 300 F.3d at 812 (citing *Ty,* 237 F.3d at 895). Finally, the Court must consider any consequences to the public from denying or granting the injunction. *Id.* Sitting as a court of equity, the Court weighs all these factors employing a sliding-scale approach-the more likely the plaintiff's chance of success on the merits, the less the balance of harms need weigh in

its favor. *Promatek,* 300 F.3d at 812 (citing *Abbott Labs.,* 971 F.2d at 12).

**\*4** The motion relates two incidents of verbal harassment of Knox by Pendergast. One occurred in October of 2006. The other occurred at a subsequent, but unspecified date. Both incidents post-date and are not alleged in the complaint, although they are somewhat similar to the conduct alleged in the complaint. Even if the incidents were alleged in the complaint, it is too early in the proceedings to determine whether Knox will succeed on the merits of his claims against Pendergast. (Pendergast has not even appeared in this action). Regardless, if he proves his claims, money damages would compensate Knox for the alleged harassment. Therefore, Knox would have an adequate remedy at law. Based on the foregoing, Knox's motion for a restraining order is denied.

## DEFENDANT PENDERGAST

The Court's October 16, 2006, Decision and Order directed Knox to inform the Court how he intended to proceed against Pendergast by November 9, 2006. That deadline passed without any response by Knox. To date, Pendergast has not appeared in this action. Knox has taken no action which addresses Pendergast's failure to file an answer or other responsive pleading despite having been served on September 21, 2006.

Review of the file discloses Knox's prior non-compliance with Court directives and orders. (*See* Letter dated May 24, 2006; Order issued June 22, 2006.) Knox has been warned several times that failure to comply with the Court's directives could result in dismissal of his action for failure to prosecute. (*Id.; see also* Decision and Order 1 (Sept. 11, 2006); Decision and Order 2 (Oct. 16, 2006).) This action was dismissed for failure to prosecute on August 3, 2006. Knox's petition for reinstatement of the action was granted on August 28, 2006.

Knox did not comply with the Court's October 16, 2006, directives. However, Knox filed the motion for a restraining order in early January 2007, seeking relief against Pendergast. Despite Knox's failure to comply with the Court's order, Knox has shown an intent to proceed in some fashion against Pendergast.

WESTLAW   © 2019 Thomson Reuters. No claim to original U.S. Government Works.

Knox is admonished that while a pro se litigant will "benefit from various procedural protections not otherwise afforded to the attorney-represented litigant ... pro se litigants are not entitled to a general dispensation from the rules of procedure or court imposed deadlines." *Downs v. Westphal,* 78 F.3d 1252, 1257 (7th Cir.1996) (citation omitted). Knox **shall** advise the Court how he intends to proceed to prosecute his claims against Pendergast, no later than May 25, 2007. Failure to comply with this Order may result in dismissal of Knox's claims against Pendergast.

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT:**

Knox's motion for default judgment against Goggins (Docket No. 26) is **DENIED.**

Goggins's motion to dismiss (Docket No. 31) is **DENIED.**

Goggins **SHALL** file an answer to the complaint **on or before May 31, 2007.**

 **\*5** Knox's petition for a restraining order (Docket No. 35) is **DENIED.**

Knox shall advise the Court how he intends to proceed to prosecute his claims against Pendergast **no later than May 25, 2007 .**

Failure to comply with this Order may result in dismissal of Knox's claims against Pendergast.

**All Citations**

Not Reported in F.Supp.2d, 2007 WL 1413681

---

© 2019 Thomson Reuters. No claim to original U.S. Government Works.

© 2019 Thomson Reuters. No claim to original U.S. Government Works.

2011 WL 5326066
Only the Westlaw citation is currently available.
United States District Court,
W.D. Wisconsin.

Barbara MICHALCZYK and WBAJ, Ltd., Plaintiffs,
v.
Jerry MASLYK, Elizabeth Wdowiak, Baraboo
Inn, Inc. and Bonzos, Inc ., Defendants.

No. 11–cv–504–bbc.
|
Nov. 3, 2011.

**Attorneys and Law Firms**

John Ellsworth, Wauwatosa, WI, for Plaintiffs.

Jerome P. Mercer, Cross, Jenks, Mercer and Maffei,
Baraboo, WI, for Defendants.

OPINION and ORDER

BARBARA B. CRABB, District Judge.

 **\*1**  In this civil suit for damages and injunctive
relief, plaintiffs Barbara Michalczyk and WBAJ, Ltd.,
shareholders of defendant Baraboo, Inn, Inc., contend
that defendants Jerry Maslyk and Elizabeth Wdowiak
have mismanaged defendants Baraboo Inn, Inc. and
Bonzos, Inc. by appropriating corporate earnings for
personal use, using corporate personnel for non-
corporate endeavors, failing to hold shareholder meetings,
eliminating payment of dividends to plaintiffs and failing
to pay mortgage payments and real estate taxes. Plaintiffs
filed this suit on July 18, 2011, seeking various forms
of relief, including an order enjoining defendants from
managing Baraboo Inn, an order dissolving Baraboo Inn,
Inc. under Wis. Stat. § 180.1430(2), an order appointing
a receiver under Wis. Stat. § 180.1432 and monetary
damages. Plaintiffs also filed a motion for a temporary
restraining order, which I denied in an order dated July
19, 2011. In that order, I concluded that plaintiffs' motion
had no merit. Additionally, I noted that the jurisdictional
allegations in plaintiffs' complaint were inadequate.

Plaintiffs allege that this court has jurisdiction pursuant to
28 U.S.C. § 1332(a)(1) because the parties are completely
diverse and the matter in controversy exceeds $75,000.
However, plaintiffs had failed to identify their own
citizenship properly, alleging only that plaintiff Barbara
Michalczyk is a "resident" of Illinois and that plaintiff
WBAJ, Ltd. is an Illinois corporation. As I explained in
the July 19 order, these allegations are inadequate because
plaintiffs failed to identify Michalczyk's citizenship and
failed to identify WBAJ, Ltd.'s principal place of business.
*Meyerson v. Harrah's East Chicago Casino,* 299 F.3d
616, 617 (7th Cir.2002) (holding that it is citizenship,
not residency, of individual persons that matters for
diversity jurisdiction purposes); 28 U.S.C. § 1332(c)(1)
(corporation is "citizen of any State by which it has been
incorporated and of the State where it has its principal
place of business"). Similarly, plaintiffs had failed to
identify the citizenship of defendants Jerry Maslyk and
Elizabeth Wdowiak and had failed to identify the state
of incorporation and principal places of business for
defendants Baraboo Inn, Inc. and Bonzos, Inc.

Although it has been more than three months since
I explained the deficiencies in plaintiffs' jurisdictional
allegations, plaintiffs have failed to submit any additional
information regarding the parties' citizenship. Plaintiffs
should have provided this information to court as soon as
possible after the July 19 order. However, because I did
not give plaintiffs a deadline in that order by which they
were required to provide this jurisdictional information, I
will give them one more opportunity to do so.

Plaintiffs' jurisdictional allegations are not the only
problem in this case. Defendants have filed a motion
to dismiss the case under Fed.R.Civ.P. 12(b)(5) for
insufficient service of process, dkt. # 13, and after
reviewing the motion I agree that plaintiffs have failed to
serve defendants properly. On August 8, 2011, a process
server brought copies of the summons and complaint
to the Best Western Baraboo Inn in West Baraboo,
Wisconsin. The employee working at the front counter
did not have authority to accept service on behalf of any
defendant and said so to the process server. Nonetheless,
the process server placed the summons on the counter and
left. Plaintiffs filed affidavits of service with the court for
all of the plaintiffs on September 2, 2011.

 **\*2**  The service requirements are set forth in Fed.R.Civ.P.
4. Rule 4(e) sets out the rules governing service of process
on an individual, allowing parties to accomplish service by

Case 1:19-cv-00484-BHL  Filed 06/13/19  Page 28 of 30  Document 86

(1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or

(2) doing any of the following:

(A) delivering a copy of the summons and of the complaint to the individual personally;

(B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or

(C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

Fed.R.Civ.P. 4(e).

Plaintiffs have not accomplished service of the summons and complaint on the individual defendants, Maslyk and Wdowiak, pursuant to the methods described in Rule 4(e)(2). Plaintiffs did not deliver the complaint to these defendants personally, to their home or to an authorized agent. Also, plaintiffs also have not accomplished service in accordance with Wisconsin law, as allowed under Rule 4(e)(1). Under Wisconsin law, service on an individual may be accomplished by personally serving the defendant or the defendant's authorized agent, leaving a copy of the summons at the defendant's usual place of abode or, in some situations, through publication. Wis. Stat. § 801.11. Defendants Jerry Maslyk and Elizabeth Wdowiak do not reside at the hotel, the hotel clerk was not authorized to accept service on their behalf and they have not been served otherwise with the summons and complaint.

In addition, plaintiffs have not accomplished service on defendants Baraboo Inn, Inc. and Bonzos, Inc. Rule 4(h) sets out the rules governing service of process on corporations, allowing service to be accomplished

(A) in the manner prescribed by Rule 4(e)(1) for serving an individual; or

(B) by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and—if the agent is one authorized by statute and the statute so requires—by also mailing a copy of each to the defendant....

Fed.R.Civ.P. 4(h). Under Wisconsin law, service on corporations may be accomplished

> (a) By personally serving the summons upon an officer, director or managing agent of the corporation or limited liability company either within or without this state. In lieu of delivering the copy of the summons to the officer specified, the copy may be left in the office of such officer, director or managing agent with the person who is apparently in charge of the office.

Wis. Stat. § 801.11(5). In some situations, service by publication is allowed. *Id.* § 801.11(5)(b).

Leaving the summons and complaint on the hotel counter was not sufficient to serve the corporate defendants. The hotel clerk was not an officer, director or managing agent of defendants and he did not have authority to accept service on their behalf. Moreover, no reasonable process server could have believed the hotel clerk was "apparently" in charge of the corporate offices after the clerk said he was not authorized to accept service papers on behalf of any defendant.

**\*3** Plaintiffs have requested an evidentiary hearing to resolve the question of sufficiency of service. However, plaintiffs have identified no factual disputes to be resolved. They have not denied any facts proposed by defendants, responding only that the corporate records for defendant Baraboo Inn, Inc. identify the hotel address as the office of Baraboo Inn's registered agent. This response does not change the fact that the process server did not leave the summons with a corporate officer or any person who was authorized or "apparently" authorized to accept service on defendants' behalf. Thus, it is clear that plaintiffs have failed to serve defendants properly.

Nevertheless, I will not dismiss plaintiffs' complaint. Under Rule 4(m), plaintiffs must serve defendants within 120 days of the filing of the complaint. Plaintiffs still have approximately two weeks within which they can attempt to serve defendants properly or request additional time

within which to accomplish service. If the deadline for service passes and defendants believe they have not been served, they may file a new motion to dismiss.

ORDER

IT IS ORDERED that

1. Plaintiffs Barbara Michalczyk and WBAJ, Ltd. may have until November 14, 2011 to provide this court verification of the citizenship of plaintiffs and defendants Jerry Maslyk, Elizabeth Wdowiak, Baraboo Inn, Inc. and Bonzos, Inc. Failure to do so will result in dismissal of this case for lack of subject matter jurisdiction.

2. Defendants' motion to dismiss for insufficient service of process, dkt. # 13, is DENIED. Plaintiffs have until November 15, 2011 to accomplish service of process on defendants in accordance with Fed.R.Civ.P. 4. Failure to do so will result in dismissal of this case for lack of personal jurisdiction over defendants.

**All Citations**

Not Reported in F.Supp.2d, 2011 WL 5326066

---

© 2019 Thomson Reuters. No claim to original U.S. Government Works.

 © 2019 Thomson Reuters. No claim to original U.S. Government Works.