# **Exhibit 14**

# United States District Court
# Eastern District of Wisconsin

## Avery v. Manitowoc County
## 04 C 986



Video Deposition of
## Andrew Colborn
Recorded 10/13/2005 in Manitowoc, WI
4:06 pm - 4:27 pm, 22 mins. elapsed

## Magne-Script
(414) 352-5450

*15858 Condensed transcript with index*

## Page 1

Witness
Andrew Colborn

Thursday 10/13/2005 at 09:00 by: Jeff Joseph

Nash, Spinlder, Grimstad & McCracken
201 East Waldo Boulevard
Manitowoc, WI

Caption:  Avery v. Manitowoc County
Case No.: 04 C 986
Venue:    United States District Court
          Eastern District of Wisconsin

## Page 2

1          A P P E A R A N C E S
2  Walter F. Kelly
3  Walter F. Kelly, S.C.
4  700 W. Michigan St. #500
5  Milwaukee, WI  53233
6  On behalf of the Plaintiff
7
8  Stephen M. Glynn
9  Glynn, Fitzgerald & Albee, S.C.
10  526 E. Wisconsin Ave.
11  Milwaukee, WI  53202
12  On behalf of the Plaintiff
13
14  Claude J. Covelli
15  Boardman, Suhr, Curry & Field
16  1 S. Pinckney St. #410, PO Box 927
17  Madison, WI  53701-0927
18  On behalf of Denis Vogel and Manitowoc County
19
20  Timothy A. Bascom
21  Bascom, Budish & Ceman, S.C.
22  2600 N. Mayfair Rd. #1140
23  Wauwatosa, WI  53226-1308
24  On behalf of Manitowoc County
25

## Page 3

1  Raymond J. Pollen
2  Crivello, Carlson & Mentkowski, S.C.
3  710 N. Plankinton Ave. #500
4  Milwaukee, WI  53203
5  On behalf of Tom Kocourek and Manitowoc County
6
7  John F. Mayer
8  Nash, Spindler, Grimstad & McCracken
9  201 East Waldo Boulevard
10  Manitowoc, WI  54220
11  On behalf of Tom Kocourek
12
13  Also Present:  Steven Avery

## Page 4

1          I N D E X
2  EXAMINATION BY              PAGE NO.
3  Mr. Glynn . . . . . . . . . . . . . . . . . . . . .   4
4  Mr. Bascom  . . . . . . . . . . . . . . . . . . .  20
5      (There were no exhibits marked)
6  (The sealed original transcript was sent to Mr. Kelly)
7      ===========
8      E X A M I N A T I O N
9  BY MR. GLYNN:
10  Q  Sergeant Colborn, my name is Steve Glynn.  I'm going
11     to ask you a few questions.  I'm here, along with Walt
12     Kelly, on behalf of Steve Avery.  First, you have in
13     front of you a document that doesn't bear a sticker,
14     but I'll represent to you that that's a photocopy of
15     Exhibit 138 that's been earlier marked in these
16     proceedings, okay?
17  A  Yes, sir.
18  Q  Have you had a chance to look at that document today?
19  A  Yes.
20  Q  Have you seen it before today?
21  A  Yes.
22  Q  Can you tell me when the last time before today is
23     that you saw that?
24  A  I believe when I penned it, when I authored it.
25  Q  Okay.  And from that time until today, you don't think

## Page 5

1     you've seen it?
2 A  I take that back. I had a -- Thursday, I believe, of
3     last week, or Friday of last week, I was shown this
4     document by Amy Doyle.
5 Q  As part of an interview with her?
6 A  Yes.
7 Q  Essentially prepping you for testimony here?
8 A  Yes.
9 Q  Okay. Did she show you anything else besides this
10     document?
11 A  I don't recall. I don't believe so.
12 Q  Okay. Well, let me ask a couple of background
13     questions and then we'll go into the document. And,
14     actually, let me start with the first sentence of the
15     document because that's part of the background. It
16     says that in 1994 or 1995, you were working as a
17     corrections officer in the Manitowoc County jail,
18     correct?
19 A  Yes, sir.
20 Q  How long had you been working as a corrections officer
21     in the jail?
22 A  I was hired in January or February of 1992, so roughly
23     two or three years I had been employed as a
24     corrections officer in the jail.
25 Q  Prior to that time, had you had any job connected with

## Page 6

1     the jail?
2 A  Prior to 1992?
3 Q  Yes, sir.
4 A  No, sir.
5 Q  Had you had any law enforcement job prior to that?
6 A  No, sir.
7 Q  Okay. So in the time period that's discussed in this
8     memo, which is '94 and '95, do you recall whether you
9     were in the custom or practice of keeping notes in a
10     log book, in a memo book, in any data entry form?
11 A  Prior to this?
12 Q  At this time...
13 A  At this time.
14 Q  ...in '94 and '95.
15 A  There was a computer daily log that you typed
16     significant events that occurred in the jail, but it
17     was a log that pertained specifically to the jail. I
18     did not keep a written notebook or notes of any kind
19     in the capacity as a corrections officer.
20 Q  Okay. So short of this computer entry which would
21     have been intended to relate to activities in the
22     jail, you did not record events that occurred at your
23     work; is that correct?
24 A  Only events that were occurring in the jail. Like,
25     you may have a prisoner on a suicide watch. There

## Page 7

1     would be a written hard copy of why that prisoner was
2     on a suicide watch and what he was doing during the
3     course of his day.
4 Q  Sure.
5 A  But outside of jail business, no, there's no log.
6 Q  How about your own private diary or calendar, memo
7     book, anything like that?
8 A  No. I usually keep my appointments in my head, and I
9     don't keep a diary or a journal.
10 Q  Okay. You've gone over what is Exhibit 138...
11 A  Yes, sir.
12 Q  ...today and earlier, correct?
13 A  Yes, sir.
14 Q  It describes you receiving a telephone call from
15     someone who identifies himself as a detective,
16     correct?
17 A  Yes.
18 Q  And am I correct in understanding that at the time you
19     wrote this memo, which is September 12, 2003, you
20     could not recall with certainty what law enforcement
21     agency that detective was associated with?
22 A  That's correct.
23 Q  Do you -- I hear your machine clicking. Does that
24     mean anything to you?
25 A  I'm okay.

## Page 8

1 Q  Okay. I'm just going to go ahead, operating on the
2     theory that if your machine is going off and it
3     matters, you'll tell us.
4 A  Yes, sir.
5 Q  Okay.
6 A  That would be great.
7 Q  All right. With respect to this report, it says,
8     "receiving a telephone call in the central control
9     area." What is that? Part of the jail?
10 A  Yes, sir.
11 Q  And there is another report prepared by a Lieutenant
12     Lenk?
13 A  Yes, sir.
14 Q  Do you recall that?
15 A  Yes.
16 Q  Do you know if you've seen that report?
17 A  No, sir.
18 Q  Okay. Have you discussed this matter with him, I
19     assume?
20 A  The fact --
21     MR. BASCOM: Object to the form. Vague as
22     to time.
23     BY MR. GLYNN:
24 Q  Anytime. Anytime prior to today, have you had a
25     conversation with Lieutenant Lenk about the matter

## Page 9

1. that is discussed in this statement?
2. A  Yes, sir.
3. Q  And do you recall in that conversation learning that
4. at least he had the belief that this was related to
5. Brown County or at least thought it might have been
6. related to Brown County?
7. A  He never relayed that information to me, so I don't
8. know.
9. Q  Let me show you what's been marked as Exhibit 125 and
10. ask you to take a look at that.  Have you seen that
11. before, or do we need to give you a chance to read it?
12. A  I've never seen Lieutenant Lenk's statement, no.
13. Q  Okay.
14.     MR. GLYNN:  Then let's just go off the
15. record and give him a chance to read it.
16.     REPORTER:  Off the record.
17.     (Off the record 4:12 - 4:13)
18.     REPORTER:  Back on the record.
19. BY MR. GLYNN:
20. Q  Have you had a chance now to read Exhibit 125?
21. A  Yes, sir.
22. Q  Do you recall telling Lieutenant James Lenk that the
23. person from whom you received the telephone call was a
24. detective and that you thought he might have been from
25. Brown County?

## Page 10

1. A  Actually, I thought I had told Lieutenant Lenk that I
2. thought the individual was from Sheboygan County, but
3. I wasn't sure.
4. Q  Okay.  So as of today, you know, here we are in
5. October 2005, you're not sure what you told Lieutenant
6. Lenk back in 2003 with respect to the county?
7. A  That's correct, sir.
8. Q  Okay.  At any rate, what the subject matter was of
9. this person's call was a statement apparently made to
10. the caller by a person who was in the caller's
11. custody; is that correct?
12. A  You know, we're going back to '94 or '95.
13. Q  Sure.
14. A  I'm a little gray on exactly --
15. Q  And you can use your own report, Exhibit 138, to
16. refresh your recollection if that helps you.
17. A  I don't know if the pers-- I gathered, yes, that they
18. had someone in custody.  I don't know if this person
19. had commented directly to the person who called me or
20. had commented to other people within that jurisdiction
21. and this eventually got to my caller.
22. Q  But the detective indicated that there was a person in
23. custody who had made a statement about a Manitowoc
24. County offense, correct?
25. A  Yes.

## Page 11

1. Q  Okay.  And what that person in custody had said was
2. that he had committed an assault in Manitowoc County
3. and someone else was in jail for it, correct?
4. A  Yes, sir.
5. Q  And that much you're pretty sure of, correct?
6. A  Yes.
7. Q  I mean, that's a significant event.
8. A  Right.  That's what's stood out in my mind.
9. Q  Sure.  And you knew by September 12, 2003 that Steven
10. Avery is someone who had been in jail for an assault
11. that he had been convicted of, correct?  Had been in
12. jail.
13. A  Yes.
14. Q  He was recently released by then.
15. A  Yes.  Mm-hmm.
16. Q  And you knew that someone else had committed that
17. crime, Gregory Allen; that was in the media as well,
18. correct?
19. A  Yes.
20. Q  And so one of the things you believed was that there
21. may be a relationship between the Gregory Allen matter
22. and this telephone call, correct?
23.     MR. BASCOM:  Are you talking about 2003?
24.     MR. GLYNN:  In 2003.
25. Q  Correct?

## Page 12

1. A  Yes.  That -- Yes, sir.
2. Q  Sure.  And, I mean, the fact of the matter is also,
3. again, as reported in the media, Mr. Allen, at the
4. time of Mr. Avery's being released by the court, had
5. been convicted of a sexual assault in Brown County and
6. sentenced to prison, correct?
7. A  That whole portion of it I wasn't aware of.
8. Q  Okay.
9. A  I am now.  It's '05.  At the time of '03, I really
10. wasn't -- can't say I was, like, following the case.
11. So I knew the name that you mentioned had come up, but
12. I didn't know where he was incarcerated; if he was
13. incarcerated, what his status was.
14. Q  Have you seen any of the reports of the district
15. attorney's office indicating that it would not be
16. prosecuting Mr. Allen for the crime on which Mr. Avery
17. had been exonerated due to the fact that a statute of
18. limitations had run, and in any event, Mr. Allen was
19. serving a 60 year sentence?
20. A  I can't recall viewing --
21. Q  Recall any of that?
22. A  -- no, viewing any reports from the district
23. attorney's office.  No, sir.
24. Q  And I'm not really talking about reports at the
25. moment, sir.  I'm including any source: media, and by

## Page 13

1  that I mean television, radio, newspapers; talk around
2  the sheriff's department; talk in your own household,
3  anything.
4  A  Certainly in the media.
5  Q  Okay.
6  A  I mean, there was a lot of media coverage on this
7    case, and certainly I probably got most of the
8    information that I knew about the case through the
9    media.
10 Q  Sure.  I mean, you yourself hadn't had any involvement
11   in the Avery prosecution or investigation, correct?
12 A  I wasn't even in this country when that occurred.
13 Q  Sure.
14 A  I was stationed oversees in the military.
15 Q  And when you came back and were involved in '94 and
16   '95 as a corrections officer, you were not otherwise
17   working as a deputy sheriff, correct?
18 A  No, sir.
19 Q  So you hadn't had any involvement in any of the post-
20   conviction investigative efforts with respect to Mr.
21   Avery's case.
22 A  No, sir.
23 Q  So your sources of information would necessarily have
24   been media-type sources, correct?
25 A  Correct.

## Page 14

1  Q  Okay.  At any rate, you recognized this was
2    significant enough that you should forward that call
3    that was coming in from another detective to someone
4    in the Manitowoc County Sheriff's Department to take
5    it further, correct?
6  A  Yes, sir.
7  Q  It wasn't within your jurisdiction to take it any
8    further, correct?
9  A  No, sir.
10 Q  And even if you had wanted to, you didn't have the
11   legal authority under your job duties to do that.
12 A  Correct.
13 Q  So what you did was to give the calling detective a
14   telephone number for a Manitowoc County Sheriff's
15   office detective, correct, or the detective bureau?
16 A  Right.  I believe I would have just given him that
17   number in case -- I'm sure I tried to transfer the
18   call.
19 Q  Okay.
20 A  Because that would have been the protocol that was
21   required, you know, as my job.  But I got in the habit
22   of, since that's sometimes iffy, I would have given
23   him the number of who I was trying to transfer him to.
24 Q  So let me see if I understand that because I think all
25   of us at one time or another have had their calls

## Page 15

1  transferred, and sometimes people give you a number in
2  advance of the attempt to transfer and say in case we
3  lose each other or the call doesn't go through, the
4  number to call is such and such.  Is that the way you
5  were doing it?
6  A  Yes.
7  Q  Okay.  So you gave the person the number and then
8    attempted to transfer the call.  And do you know
9    whether the call went through to the other detective?
10 A  I don't know.  I didn't hear somebody pick up.  But as
11   soon as the phone rang, I would have hung it up.
12 Q  Okay.  Because at that stage, again, you've given the
13   person the contact information if he chooses to follow
14   up, correct?
15 A  Yes, sir.
16 Q  Did you ever make any inquiries of anybody in the
17   detective bureau to find out whether they had received
18   such a call?
19 A  No, sir.
20 Q  Or did you ever hear any feedback from anybody about
21   --
22 A  No, sir.
23 Q  -- whether they had gotten such a call?
24 A  No, sir.
25 Q  Okay.  So that's what's going on in 2003, correct?

## Page 16

1  A  No, the call --
2  Q  I'm sorry.  That's what's going on in '94/'95.
3  A  Yes, sir.
4  Q  You then, in 2003, following the publicity that we've
5    already discussed relating to Mr. Allen and Mr. Avery,
6    and you're concerned that perhaps the caller that was
7    calling was speaking about Mr. Allen and Mr. Avery,
8    true?
9  A  I was wondering about that, yes.
10 Q  Sure.  You brought that up to someone else, correct?
11 A  Yes, sir.
12 Q  And to whom did you bring that up?
13 A  To Lieutenant Lenk.
14 Q  And you and Lieutenant Lenk had a conversation about
15   it?
16 A  Yes, sir.
17 Q  And in that conversation, is it safe to say that you
18   told him what's reflected in Exhibit 138?
19 A  Yes, sir.
20 Q  There was also a conversation that followed that in
21   which you spoke to Sheriff Petersen, correct?
22 A  Yes, sir.
23 Q  And do you recall that Lieutenant Lenk was there as
24   well?
25 A  When I spoke with Sheriff Petersen?

## Page 17

1  Q  Yes. Was he or not; do you know?
2  A  No, he was not.
3  Q  He was not. Okay. Who all was there when you talked
4     to Sheriff Petersen; do you remember?
5  A  I don't recall who was in the room. I remember coming
6     into work. Sheriff Petersen was downstairs where our
7     patrol division is, and I got the impression he was
8     waiting for me to come into work. There were other
9     people coming in and out of the room, but I don't
10    recall who.
11 Q  Do you know what it is that gave you the impression he
12    was waiting for you? I mean, did he come right up to
13    you or ask you to come with him or something?
14 A  I usually don't have contact with the sheriff, you
15    know. So that's what gave me the impression he was
16    waiting for me.
17 Q  And when you and he connected that day, what happened?
18    I mean, did you say something to him? Did he say
19    something to you?
20 A  No, he initiated the conversation by saying he had
21    spoken with Lieutenant Lenk and he felt that it would
22    be in the best interests of Lieutenant Lenk and myself
23    and the sheriff's department, I would suppose, that if
24    I was to give him a statement on the gist of our
25    conversation or what we had discussed. And I asked

## Page 18

1     for clarification on that, you know. And he goes,
2     "Well, what you discussed about a telephone call that
3     you received while you were working in the jail." And
4     I said okay. And before I went out on patrol, I
5     provided this statement.
6  Q  Do you know what time your patrolling duties were
7     then?
8  A  Well, I worked noon to 8:00, but as a shift commander,
9     there's some times I don't get out on the road until
10    two, three o'clock depending on what sort of
11    administrative or office duties I have.
12 Q  So if you look toward the upper right-hand portion of
13    that Exhibit 138, you see a time of 1330 hours. Does
14    1:30 seem like about an appropriate time?
15 A  Yes. Sure.
16 Q  And that would have been immediately after your
17    conversation with Sheriff Petersen?
18 A  No. I believe my conversation with Sheriff Petersen
19    would have been like at quarter to twelve or 12:00.
20 Q  Okay. Well, when I say immediately after, I mean
21    within an hour or two.
22 A  Oh, yeah. Yes, sir.
23 Q  Okay.
24 A  Same day as the conversation with Sheriff Petersen.
25 Q  All right. And do you recall any further

## Page 19

1     conversations with Sheriff Petersen about this subject
2     matter?
3  A  No.
4  Q  How about any meetings with District Attorney Rohrer
5     about this subject matter, and again, I mean the
6     subject matter of Exhibit 138 that we've been
7     discussing.
8  A  No, I've never had a meeting with the district
9     attorney about this.
10 Q  Okay. How about an assistant district attorney named
11    Mike Griesbach?
12 A  Never had a meeting with Mike Griesbach about this.
13 Q  have you ever had any conversations with anybody else,
14    other than Sheriff Petersen and Lieutenant Lenk, about
15    the subject matter of Exhibit 138? Ever discuss it
16    with anyone else, any other officers, any friends, any
17    family?
18 A  Not that I can specifically recall. I may have
19    mentioned it to other people, but I don't recall doing
20    it.
21 Q  That is, as you're sitting here today, you don't have
22    any specific recollection of discussing it with
23    anybody else.
24 A  No, sir.
25 Q  But you're not ruling out the possibility that you may

## Page 20

1     have discussed it.
2  A  No, I'm not ruling out the possibility that I may have
3     discussed it with someone else, but I can't
4     specifically tell you names of people I may have
5     mentioned this to.
6  Q  Okay.
7        MR. GLYNN: I think that's all I have.
8     That's all, thanks.
9        MR. BASCOM: I just have one question
10    because I'm confused about the testimony
11    concerning Sheboygan County versus Brown County.
12    And I wasn't sure if I heard you correctly. Let
13    me just ask you this question.
14            E X A M I N A T I O N
15 BY MR. BASCOM:
16 Q  You said "Sheboygan County, but I'm not sure." And my
17    question is, is it that you heard that the detective
18    -- you think the detective that called you was from
19    Sheboygan County but you're not sure, or that you told
20    the Lieutenant that you thought the guy was from
21    Sheboygan County but you're not sure? Do you see the
22    difference between those two questions?
23 A  Sure.
24 Q  And I'm not sure which way your answer was aiming.
25 A  You know, I can't recall the specifics of my

Page 21

1  conversation with Lieutenant Lenk.  I may have said he
2  was either from Sheboygan or Brown County, I don't
3  know, because I don't know.  And I don't know why
4  those two jurisdictions stand out in my head other
5  than that is the area or outside jurisdictions that we
6  have the most contact with, you know, being centered
7  between the two of them.  You know, I don't know if
8  that answers your question --
9  Q  Well, as we sit here today --
10 A  -- as it pertains to Lieutenant Lenk, I'm --
11 Q  No, as we sit here today --
12 A  Okay.
13 Q  -- do you have a sense or a feeling that the guy was
14    from Brown County or Sheboygan County, or don't you
15    know?
16 A  I really don't know, sir.
17 Q  That's fine.
18        MR. BASCOM:  That's all I have.
19        MR. GLYNN:  Nothing else.
20        MR. BASCOM:  Great.  Thanks.
21        REPORTER:  Okay.  There being no further
22    questions, this deposition is concluded at 4:27
23    p.m.  Off the record.

### A
activities 6:21
administrative 18:11
advance 15:2
agency 7:21
ahead 8:1
aiming 20:24
Albee 2:9
Allen 11:17,21 12:3,16,18 16:5 16:7
Amy 5:4
Andrew 1:2
answer 20:24
answers 21:8
anybody 15:16,20 19:13,23
Anytime 8:24,24
apparently 10:9
appointments 7:8
appropriate 18:14
area 8:9 21:5
asked 17:25
assault 11:2,10 12:5
assistant 19:10
associated 7:21
assume 8:19
attempt 15:2
attempted 15:8
attorney 19:4,9 19:10
attorney's 12:15 12:23
authored 4:24
authority 14:11
Ave 2:10 3:3
Avery 1:10 3:13 4:12 11:10 12:16 13:11 16:5,7
Avery's 12:4 13:21
aware 12:7

### B
back 5:2 9:18 10:6,12 13:15
background 5:12 5:15
Bascom 2:20,21 4:4 8:21 11:23 20:9,15 21:18 21:20
bear 4:13
behalf 2:6,12,18 2:24 3:5,11 4:12
belief 9:4
believe 4:24 5:2 5:11 14:16 18:18
believed 11:20
best 17:22
Boardman 2:15
book 6:10,10 7:7
Boulevard 1:7 3:9
Box 2:16
bring 16:12
brought 16:10
Brown 9:5,6,25 12:5 20:11 21:2 21:14
Budish 2:21
bureau 14:15 15:17
business 7:5

### C
C 1:11 2:1
calendar 7:6
call 7:14 8:8 9:23 10:9 11:22 14:2 14:18 15:3,4,8,9 15:18,23 16:1 18:2
called 10:19 20:18
caller 10:10,21 16:6
caller's 10:10
calling 14:13 16:7
calls 14:25
capacity 6:19
Caption 1:10
Carlson 3:2
case 1:11 12:10 13:7,8,21 14:17 15:2
Ceman 2:21
centered 21:6
central 8:8
certainly 13:4,7
certainty 7:20
chance 4:18 9:11 9:15,20
chooses 15:13
clarification 18:1
Claude 2:14
clicking 7:23
Colborn 1:2 4:10
come 12:11 17:8 17:12,13
coming 14:3 17:5 17:9
commander 18:8
commented 10:19 10:20
committed 11:2 11:16
computer 6:15,20
concerned 16:6
concerning 20:11
concluded 21:22
confused 20:10
connected 5:25 17:17
contact 15:13 17:14 21:6
control 8:8
conversation 8:25 9:3 16:14,17,20 17:20,25 18:17 18:18,24 21:1
conversations 19:1,13
convicted 11:11 12:5
conviction 13:20
copy 7:1
correct 5:18 6:23 7:12,16,18,22 10:7,11,24 11:3 11:5,11,18,22,25 12:6 13:11,17 13:24,25 14:5,8 14:12,15 15:14 15:25 16:10,21
corrections 5:17 5:20,24 6:19 13:16
correctly 20:12
country 13:12
county 1:10 2:18 2:24 3:5 5:17 9:5,6,25 10:2,6 10:24 11:2 12:5 14:4,14 20:11 20:11,16,19,21 21:2,14,14
couple 5:12
course 7:3
court 1:12 12:4
Covelli 2:14
coverage 13:6
crime 11:17 12:16
Crivello 3:2
Curry 2:15
custody 10:11,18 10:23 11:1
custom 6:9

### D
D 4:1
daily 6:15
data 6:10
day 7:3 17:17 18:24
Denis 2:18
department 13:2 14:4 17:23
depending 18:10
deposition 21:22
deputy 13:17
describes 7:14
detective 7:15,21 9:24 10:22 14:3 14:13,15,15 15:9,17 20:17 20:18
diary 7:6,9
difference 20:22
directly 10:19
discuss 19:15
discussed 6:7 8:18 9:1 16:5 17:25 18:2 20:1,3
discussing 19:7 19:22
district 1:12,13 12:14,22 19:4,8 19:10
division 17:7
document 4:13,18 5:4,10,13,15
doing 7:2 15:5 19:19
downstairs 17:6
Doyle 5:4
due 12:17
duties 14:11 18:6 18:11

### E
E 2:1,1,10 4:1,8 20:14
earlier 4:15 7:12
East 1:7 3:9
Eastern 1:13
efforts 13:20
either 21:2
employed 5:23
enforcement 6:5 7:20
entry 6:10,20
Essentially 5:7
event 11:7 12:18
events 6:16,22,24
eventually 10:21
exactly 10:14
EXAMINATION

4:2
**Exhibit** 4:15 7:10 9:9,20 10:15 16:18 18:13 19:6,15
**exhibits** 4:5
**exonerated** 12:17

**F**

**F** 2:2,3 3:7
**fact** 8:20 12:2,17
**family** 19:17
**February** 5:22
**feedback** 15:20
**feeling** 21:13
**felt** 17:21
**Field** 2:15
**find** 15:17
**fine** 21:17
**first** 4:12 5:14
**Fitzgerald** 2:9
**follow** 15:13
**followed** 16:20
**following** 12:10 16:4
**form** 6:10 8:21
**forward** 14:2
**Friday** 5:3
**friends** 19:16
**front** 4:13
**further** 14:5,8 18:25 21:21

**G**

**gathered** 10:17
**gist** 17:24
**give** 9:11,15 14:13 15:1 17:24
**given** 14:16,22 15:12
**Glynn** 2:8,9 4:3,9 4:10 8:23 9:14 9:19 11:24 20:7 21:19
**go** 5:13 8:1 9:14 15:3
**goes** 18:1

**going** 4:10 8:1,2 10:12 15:25 16:2
**gotten** 15:23
**gray** 10:14
**great** 8:6 21:20
**Gregory** 11:17,21
**Griesbach** 19:11 19:12
**Grimstad** 1:6 3:8
**guy** 20:20 21:13

**H**

**habit** 14:21
**happened** 17:17
**hard** 7:1
**head** 7:8 21:4
**hear** 7:23 15:10 15:20
**heard** 20:12,17
**helps** 10:16
**hired** 5:22
**hour** 18:21
**hours** 18:13
**household** 13:2
**hung** 15:11

**I**

**identifies** 7:15
**iffy** 14:22
**immediately** 18:16,20
**impression** 17:7 17:11,15
**incarcerated** 12:12,13
**including** 12:25
**indicated** 10:22
**indicating** 12:15
**individual** 10:2
**information** 9:7 13:8,23 15:13
**initiated** 17:20
**inquiries** 15:16
**intended** 6:21
**interests** 17:22
**interview** 5:5

**investigation** 13:11
**investigative** 13:20
**involved** 13:15
**involvement** 13:10,19

**J**

**J** 2:14 3:1
**jail** 5:17,21,24 6:1 6:16,17,22,24 7:5 8:9 11:3,10 11:12 18:3
**James** 9:22
**January** 5:22
**Jeff** 1:4
**job** 5:25 6:5 14:11 14:21
**John** 3:7
**Joseph** 1:4
**journal** 7:9
**jurisdiction** 10:20 14:7
**jurisdictions** 21:4 21:5

**K**

**keep** 6:18 7:8,9
**keeping** 6:9
**Kelly** 2:2,3 4:6,12
**kind** 6:18
**knew** 11:9,16 12:11 13:8
**know** 8:16 9:8 10:4,12,17,18 12:12 14:21 15:8,10 17:1,11 17:15 18:1,6 20:25 21:3,3,3,6 21:7,7,15,16
**Kocourek** 3:5,11

**L**

**law** 6:5 7:20
**learning** 9:3
**legal** 14:11

**Lenk** 8:12,25 9:22 10:1,6 16:13,14 16:23 17:21,22 19:14 21:1,10
**Lenk's** 9:12
**let's** 9:14
**Lieutenant** 8:11 8:25 9:12,22 10:1,5 16:13,14 16:23 17:21,22 19:14 20:20 21:1,10
**limitations** 12:18
**little** 10:14
**log** 6:10,15,17 7:5
**long** 5:20
**look** 4:18 9:10 18:12
**lose** 15:3
**lot** 13:6

**M**

**M** 2:8 4:8 20:14
**machine** 7:23 8:2
**Madison** 2:17
**Manitowoc** 1:8,10 2:18,24 3:5,10 5:17 10:23 11:2 14:4,14
**marked** 4:5,15 9:9
**matter** 8:18,25 10:8 11:21 12:2 19:2,5,6,15
**matters** 8:3
**Mayer** 3:7
**Mayfair** 2:22
**McCracken** 1:6 3:8
**mean** 7:24 11:7 12:2 13:1,6,10 17:12,18 18:20 19:5
**media** 11:17 12:3 12:25 13:4,6,9
**media-type** 13:24

**meeting** 19:8,12
**meetings** 19:4
**memo** 6:8,10 7:6 7:19
**mentioned** 12:11 19:19 20:5
**Mentkowski** 3:2
**Michigan** 2:4
**Mike** 19:11,12
**military** 13:14
**Milwaukee** 2:5,11 3:4
**mind** 11:8
**Mm-hmm** 11:15
**moment** 12:25

**N**

**N** 2:1,22 3:3 4:1,8 4:8 20:14,14
**name** 4:10 12:11
**named** 19:10
**names** 20:4
**Nash** 1:6 3:8
**necessarily** 13:23
**need** 9:11
**never** 9:7,12 19:8 19:12
**newspapers** 13:1
**noon** 18:8
**notebook** 6:18
**notes** 6:9,18
**number** 14:14,17 14:23 15:1,4,7

**O**

**O** 4:8 20:14
**Object** 8:21
**occurred** 6:16,22 13:12
**occurring** 6:24
**October** 10:5
**offense** 10:24
**office** 12:15,23 14:15 18:11
**officer** 5:17,20,24 6:19 13:16
**officers** 19:16

okay 4:16,25 5:9
    5:12 6:7,20 7:10
    7:25 8:1,5,18
    9:13 10:4,8 11:1
    12:8 13:5 14:1
    14:19 15:7,12
    15:25 17:3 18:4
    18:20,23 19:10
    20:6 21:12,21
operating 8:1
original 4:6
outside 7:5 21:5
oversees 13:14
o'clock 18:10

**P**

P 2:1,1
PAGE 4:2
part 5:5,15 8:9
patrol 17:7 18:4
patrolling 18:6
penned 4:24
people 10:20 15:1
    17:9 19:19 20:4
period 6:7
pers 10:17
person 9:23 10:10
    10:18,19,22
    11:1 15:7,13
person's 10:9
pertained 6:17
pertains 21:10
Petersen 16:21,25
    17:4,6 18:17,18
    18:24 19:1,14
phone 15:11
photocopy 4:14
pick 15:10
Pinckney 2:16
Plaintiff 2:6,12
Plankinton 3:3
PO 2:16
Pollen 3:1
portion 12:7
    18:12
possibility 19:25

20:2
post 13:19
practice 6:9
prepared 8:11
prepping 5:7
Present 3:13
pretty 11:5
prior 5:25 6:2,5
    6:11 8:24
prison 12:6
prisoner 6:25 7:1
private 7:6
probably 13:7
proceedings 4:16
prosecuting 12:16
prosecution 13:11
protocol 14:20
provided 18:5
publicity 16:4
p.m 21:23

**Q**

quarter 18:19
question 20:9,13
    20:17 21:8
questions 4:11
    5:13 20:22
    21:22

**R**

R 2:1
radio 13:1
rang 15:11
rate 10:8 14:1
Raymond 3:1
Rd 2:22
read 9:11,15,20
really 12:9,24
    21:16
recall 5:11 6:8
    7:20 8:14 9:3,22
    12:20,21 16:23
    17:5,10 18:25
    19:18,19 20:25
received 9:23
    15:17 18:3
receiving 7:14 8:8

recognized 14:1
recollection 10:16
    19:22
record 6:22 9:15
    9:16,17,18
    21:23
reflected 16:18
refresh 10:16
relate 6:21
related 9:4,6
relating 16:5
relationship
    11:21
relayed 9:7
released 11:14
    12:4
remember 17:4,5
report 8:7,11,16
    10:15
reported 12:3
REPORTER 9:16
    9:18 21:21
reports 12:14,22
    12:24
represent 4:14
required 14:21
respect 8:7 10:6
    13:20
right 8:7 11:8
    14:16 17:12
    18:25
right-hand 18:12
road 18:9
Rohrer 19:4
room 17:5,9
roughly 5:22
ruling 19:25 20:2
run 12:18

**S**

S 2:1,16
safe 16:17
saw 4:23
saying 17:20
says 5:16 8:7
sealed 4:6

see 14:24 18:13
    20:21
seen 4:20 5:1 8:16
    9:10,12 12:14
sense 21:13
sent 4:6
sentence 5:14
    12:19
sentenced 12:6
September 7:19
    11:9
Sergeant 4:10
serving 12:19
sexual 12:5
Sheboygan 10:2
    20:11,16,19,21
    21:2,14
sheriff 13:17
    16:21,25 17:4,6
    17:14 18:17,18
    18:24 19:1,14
sheriff's 13:2 14:4
    14:14 17:23
shift 18:8
short 6:20
show 5:9 9:9
shown 5:3
significant 6:16
    11:7 14:2
sir 4:17 5:19 6:3,4
    6:6 7:11,13 8:4
    8:10,13,17 9:2
    9:21 10:7 11:4
    12:1,23,25
    13:18,22 14:6,9
    15:15,19,22,24
    16:3,11,16,19,22
    18:22 19:24
    21:16
sit 21:9,11
sitting 19:21
somebody 15:10
soon 15:11
sorry 16:2
sort 18:10
source 12:25

sources 13:23,24
speaking 16:7
specific 19:22
specifically 6:17
    19:18 20:4
specifics 20:25
Spindler 3:8
Spinlder 1:6
spoke 16:21,25
spoken 17:21
St 2:4,16
stage 15:12
stand 21:4
start 5:14
statement 9:1,12
    10:9,23 17:24
    18:5
States 1:12
stationed 13:14
status 12:13
statute 12:17
Stephen 2:8
Steve 4:10,12
Steven 3:13 11:9
sticker 4:13
stood 11:8
subject 10:8 19:1
    19:5,6,15
Suhr 2:15
suicide 6:25 7:2
suppose 17:23
sure 7:4 10:3,5,13
    11:5,9 12:2
    13:10,13 14:17
    16:10 18:15
    20:12,16,19,21
    20:23,24
S.C 2:3,9,21 3:2

**T**

T 4:8 20:14
take 5:2 9:10 14:4
    14:7
talk 13:1,2
talked 17:3
talking 11:23

12:24
**telephone** 7:14
   8:8 9:23 11:22
   14:14 18:2
**television** 13:1
**tell** 4:22 8:3 20:4
**telling** 9:22
**testimony** 5:7
   20:10
**thanks** 20:8 21:20
**theory** 8:2
**things** 11:20
**think** 4:25 14:24
   20:7,18
**thought** 9:5,24
   10:1,2 20:20
**three** 5:23 18:10
**Thursday** 1:4 5:2
**time** 4:22,25 5:25
   6:7,12,13 7:18
   8:22 12:4,9
   14:25 18:6,13
   18:14
**times** 18:9
**Timothy** 2:20
**today** 4:18,20,22
   4:25 7:12 8:24
   10:4 19:21 21:9
   21:11
**told** 10:1,5 16:18
   20:19
**Tom** 3:5,11
**transcript** 4:6
**transfer** 14:17,23
   15:2,8
**transferred** 15:1
**tried** 14:17
**true** 16:8
**trying** 14:23
**twelve** 18:19
**two** 5:23 18:10,21
   20:22 21:4,7
**typed** 6:15

**U**

**understand** 14:24

**understanding**
   7:18
**United** 1:12
**upper** 18:12
**use** 10:15
**usually** 7:8 17:14

**V**

**v** 1:10
**Vague** 8:21
**Venue** 1:12
**versus** 20:11
**viewing** 12:20,22
**Vogel** 2:18

**W**

**W** 2:4
**waiting** 17:8,12
   17:16
**Waldo** 1:7 3:9
**Walt** 4:11
**Walter** 2:2,3
**wanted** 14:10
**wasn't** 10:3 12:7
   12:10 13:12
   14:7 20:12
**watch** 6:25 7:2
**Wauwatosa** 2:23
**way** 15:4 20:24
**week** 5:3,3
**went** 15:9 18:4
**we'll** 5:13
**we're** 10:12
**we've** 16:4 19:6
**WI** 1:8 2:5,11,17
   2:23 3:4,10
**Wisconsin** 1:13
   2:10
**Witness** 1:1
**wondering** 16:9
**work** 6:23 17:6,8
**worked** 18:8
**working** 5:16,20
   13:17 18:3
**written** 6:18 7:1
**wrote** 7:19

**X**

**X** 4:1,8 20:14

**Y**

**yeah** 18:22
**year** 12:19
**years** 5:23

**#**

**#1140** 2:22
**#410** 2:16
**#500** 2:4 3:3

**0**

**03** 12:9
**04** 1:11
**05** 12:9
**09:00** 1:4

**1**

**1** 2:16
**1:30** 18:14
**10/13/2005** 1:4
**12** 7:19 11:9
**12:00** 18:19
**125** 9:9,20
**1330** 18:13
**138** 4:15 7:10
   10:15 16:18
   18:13 19:6,15
**1992** 5:22 6:2
**1994** 5:16
**1995** 5:16

**2**

**20** 4:4
**2003** 7:19 10:6
   11:9,23,24
   15:25 16:4
**2005** 10:5
**201** 1:7 3:9
**2600** 2:22

**4**

**4** 4:3
**4:12** 9:17
**4:13** 9:17
**4:27** 21:22

**5**

**526** 2:10
**53202** 2:11
**53203** 3:4
**53226-1308** 2:23
**53233** 2:5
**53701-0927** 2:17
**54220** 3:10

**6**

**60** 12:19

**7**

**700** 2:4
**710** 3:3

**8**

**8:00** 18:8

**9**

**927** 2:16
**94** 6:8,14 10:12
   13:15 16:2
**95** 6:8,14 10:12
   13:16 16:2
**986** 1:11