# Exhibit 27

TO BE FILED AND KEPT UNDER SEAL

STATE OF WISCONSIN     CIRCUIT COURT     MANITOWOC COUNTY

STATE OF WISCONSIN,
                 Plaintiff,

vs.                                        Case No. 05 CF 381

STEVEN A. AVERY,
                  Defendant.

MANITOWOC COUNTY
STATE OF WISCONSIN
FILED
SEP 25 2006
CLERK OF CIRCUIT COURT

## DECISION AND ORDER ON STATE'S MOTION TO ALLOW THE INTRODUCTION OF NINE ITEMS OF OTHER ACTS EVIDENCE

The State has filed nine motions seeking the introduction of separate instances of other acts evidence. The State's motions were all filed on June 15, 2006. The State filed a "Memorandum in Support of State's Motion to Allow the Introduction of Other Acts Evidence." The defense filed "Defendant's Memorandum Opposing Uncharged Misconduct Evidence" in opposition. In reply, the State filed the "State of Wisconsin's Supplementary Memorandum in Support of Other Acts Evidence." The defense responded with "Defendant's Reply Opposing Uncharged Misconduct Evidence." Finally, the State submitted the "State of Wisconsin's 2nd Supplementary Memorandum in Support of Other Acts Evidence."

The Court has permitted the filing of the motions as well as the memoranda in support of and in opposition to the motions under seal. The Court took this action based on the significant potential for prejudice to members of the jury pool. Specifically, the Court has taken into consideration the extensive publicity this case has received, including news reports on filings in the Clerk of Courts office, as well as the defendant's stated desire to have his case tried by a jury composed of Manitowoc County residents if possible. For these reasons, the Court is also

/33

(1)

addressing the motions in the form of this written Decision and Order, which shall remain under seal.

Other acts evidence is generally inadmissible, subject to certain exceptions specified in Wis. Stat. §904.04(2). The statute reads as follows:

> (2) *Other crimes, wrongs, or acts.* Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. This subsection does not exclude the evidence when offered for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

The analysis which the Court is to apply in evaluating the request by any party to introduce other acts evidence is set forth in State v. Sullivan, 216 Wis. 2d 768 (S. Ct. 1998) and has been repeated in subsequent reported decisions. That analysis was recently summarized in State v. Kimberly B., 283 Wis. 2d 731, 752 (Ct. App. 2005) as follows:

> The analysis of other acts evidence culminated in our supreme court's delineation of a three-step analytical framework for attorneys and courts to follow in determining whether other acts evidence is admissible. *Sullivan*, 216 Wis. 2d at 772.
>
> (1) Is the other acts evidence offered for an acceptable purpose under WIS. STAT. § (RULE) 904.04(2), such as establishing motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident?
>
> (2) Is the other acts evidence relevant, considering the two facets of relevance set forth in WIS. STAT. § (RULE) 904.01? The first consideration in assessing relevance is whether the other acts evidence relates to a fact or proposition that is of consequence to the determination of the action. The second consideration in assessing relevance is whether the evidence has probative value, that is, whether the other acts evidence has a tendency to make the consequential fact or proposition more probable or less probable than it would be without the evidence.
>
> (3) Is the probative value of the other acts evidence substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury, or by considerations of undue delay, waste of time or needless presentation of cumulative evidence?
>
> See WIS. STAT. § (RULE) 904.03.
>
> *Sullivan*, 216 Wis. 2d at 772-73 (footnote omitted).

2

Case 1:19-cv-00484-BHL   Filed 03/03/20   Page 3 of 18   Document 120-27

Sullivan describes the manner in which the parties are to present the arguments and how the trial court is to apply the three-step test:

> ¶16. The proponent and the opponent of the other acts evidence must clearly articulate their reasoning for seeking admission or exclusion of the evidence and must apply the facts of the case to the analytical framework. The circuit court must similarly articulate its reasoning for admitting or excluding the evidence, applying the facts of the case to the analytical framework. This careful analysis is missing in the record in this case and has been missing in other cases reaching this court. Without careful statements by the proponent and the opponent of the evidence and by the circuit court regarding the rationale for admitting or excluding other acts evidence, the likelihood of error at trial is substantially increased and appellate review becomes more difficult. The proponent of the evidence, in this case the State, bears the burden of persuading the circuit court that the three-step inquiry is satisfied.

Sullivan, *supra*, at 774. Trial courts are admonished to exercise care before allowing the introduction of other acts evidence because of its potentially prejudicial affect. The law on this subject is summarized in State v. Veach, 255 Wis. 2d 390, 411-412 (S. Ct. 2002) as follows:

> 48. "Other acts evidence should be used sparingly and only when reasonably necessary." *See, Whitty*, 34 Wis.2d 278, 149 N.W.2d 557 (1967). It may not be used to demonstrate that the accused has a certain character and acted in conformity with that trait. *Sullivan*, 216 Wis.2d at 782 (citing 7 Daniel D. Blinka, Wisconsin Practice: Evidence § 404.5, at 110).
>
> 49. In *Whitty*, this court offered four reasons justifying the rule excluding other acts evidence:
>
>> (1) The overstrong tendency to believe the defendant guilty of the charge merely because he is a person likely to do such acts; (2) the tendency to condemn not because he is believed guilty of the present charge but because he has escaped punishment from other offenses; (3) the injustice of attacking one who is not prepared to demonstrate the attacking evidence is fabricated; and (4) the confusion of issues which might result from bringing in evidence of other crimes.
>
> *Whitty*, 34 Wis.2d at 292; *see also Sullivan*, 216 Wis.2d at 782-83. "[T]he exclusion of other acts evidence is based on the fear that an invitation to focus on an accused's character magnifies the risk that jurors will punish the accused for being a bad person regardless of his or her guilt of the crime charged." *Sullivan*, 216 Wis.2d at 783.

Another aspect of other acts analysis which comes into play in this case is the so-called "greater latitude rule" which applies in sexual assault cases. The Supreme Court summarized the rule in State v. Davidson, 236 Wis.2d 537, 555 (S. Ct. 2000) as follows:

(3)

> However, alongside this general framework, there also exists in Wisconsin law the longstanding principle that in sexual assault cases, particularly cases that involve sexual assault of a child, courts permit a "greater latitude of proof as to other like occurrences." (citations omitted).

As for the rationale behind the greater latitude rule, the court in <u>Davidson</u> summarized its earlier discussion in <u>State v. Friedrich</u>, 135 Wis.2d 1 (S. Ct.1987) as follows:

> The court suggested that the difficulty sexually abused children experience in testifying, and the difficulty prosecutors have in obtaining admissible evidence in such cases, are among the reasons supporting the more liberal standard of admissibility in child sexual assault cases. *Id.* at 30-33 and n. 17.

With the preceding criteria in mind, the Court will address the items of other acts evidence sought to be admitted by the State in order.

1. <u>Acts of physical violence and threats by Steven Avery against his ex-wife, Lori Avery.</u>

The State seeks to introduce prior acts of physical violence and threats of Steven Avery against his former wife, Lori Avery while they were married before he was sent to prison in the mid-1980s. In addition, the State seeks to introduce evidence of written threats which Mr. Avery made to Lori Avery while he was incarcerated through the early 1990s. These apparently include written threats to kill his wife by mutilating her.

The State offers this evidence to show intent, motive and plan, all admissible purposes under Wis. Stat. §904.04(2), with respect to the crimes of First Degree Intentional Homicide and Mutilating a Corpse. The defense concedes that the offered evidence could be offered for the purpose of showing intent. The court agrees with the parties that the State meets Step 1 of the three-step <u>Sullivan</u> test as the evidence relates to the purpose of intent. The Court sees little, if any, relationship between the offered evidence and the purposes of motive or plan. The motive the defendant would have had to bring harm to his former wife many years ago bears little

(4)

relationship to any motive he would have had to assault or bring harm to Teresa Halbach. Likewise, any actions the defendant may have taken toward Lori Avery do not appear to be part of a plan to assault Teresa Halbach. In order for evidence to be admissible as part of a plan, "There must be some evidence that the prior acts were a step in a plan leading to the charged offense, or some other result of which the charged offense was but one step." State v. Cofield, 238 Wis. 2d 467 (Ct. App. 2000). The offered evidence described by the State does not show such a common scheme as to constitute a plan.

Step 2 of the Sullivan test is a two part test. First, the other acts evidence must be relevant. That is, the offered evidence must relate to a consequential fact which the State must prove. Since the State is required to prove intent as an element of both First Degree Intentional Homicide and Mutilating a Corpse, the offered evidence meets the first requirement of Step 2. The more difficult question relates to the second part of the Step 2 test, that is, does the offered evidence have probative value? While the evidence regarding Lori Avery may be marginally relevant on the issue of intent, the evidence lacks any measurable probative value. When evaluating probative value, the court considers a number of factors, including nearness in time, place and circumstance, similarity of acts, distinctive traits, and whether the victim is the same or similar. As pointed out by the defense, the offered other acts evidence here dates back more than 20 years. The State notes, and the court agrees, that the time difference alone would not necessarily disqualify the evidence from admission, especially considering the length of time during which the defendant was incarcerated. (It should be recognized, however, that the time of the defendant's incarceration cannot be entirely discounted, since the letters he sent threatening Lori Avery were sent while he was in prison.) However, the probative value is minimal because of the many other reasons the defendant may have had to be violent toward his former wife. The

defendant's domestic violence toward Lori Avery allegedly occurred over a significant period of time, she had divorced him, and they had children together. Despite a lengthy and stormy relationship, the defendant never inflicted the level of violence against his former wife which he is alleged to have inflicted against Teresa Halbach, who was no more than a casual business acquaintance. The passage of time and the significant difference in circumstances make the probative value of the offered evidence minimal at best. There are too many explanations for the defendant's behavior toward his former wife which would not be probative of his attitude toward Teresa Halbach. Any probative value the evidence might have would be clearly outweighed by the prejudicial value of such evidence. It is not admissible.

2. <u>Acts of Physical Violence by Steven Avery Against His Girlfriend, Jodi Stachowski</u>.

The State seeks to introduce evidence involving Steven Avery's violence toward his girlfriend, Jodi Stachowski, which occurred during the last few years. The State's offer of proof includes evidence that Avery physically abused Stachowski by slapping her, hitting her with a closed fist, and throwing her to the ground on a number of occasions. The offer includes one incident in which Avery allegedly choked Stachowski until she blacked out. The defendant again concedes, and the Court agrees, that the offered evidence could be relevant on the issue of intent on the First Degree Intentional Homicide Charge, the charge for which the State offers the evidence. Thus, the first part of the <u>Sullivan</u> test is satisfied.

With regard Step 2, the alleged acts of violence against Jodi Stachowski do demonstrate intent to cause bodily harm, a proposition that is of consequence to the homicide charge. The evidence is arguably relevant. The probative value of the evidence is, however, minimal. The acts did occur nearer in time to the pending charges than the acts involving Lori Avery.

6

However, the defendant's alleged behavior against Jodi Stachowski is significantly different, both in terms of the nature of the acts involved and Avery's relationship to her. Domestic violence is unfortunately an all too common occurrence in today's society. People who live together often have disagreements regarding the normal affairs of life. In too many cases those disagreements lead to domestic violence. There is a significant difference in the nature of the acts involved in the domestic violence situation and the horrific criminal acts alleged in the amended complaint in this case. The correlation between Avery's alleged acts of domestic violence to a live-in partner and his alleged actions against a casual business acquaintance with whom there is no history of companionship or conflict is tenuous at best. While the evidence may be marginally relevant, it has very little probative value. Whatever probative value it has is significantly outweighed by the danger of unfair prejudice. The evidence is not admissible.

3. <u>1982 Act of Criminal Cruelty Involving the Killing of a Cat.</u>

The defendant was convicted on a charge of animal cruelty in 1982 when he was 20 years old. Without doubt, the facts surrounding the conviction and the defendant's role in it are repulsive and disgusting. The defendant built a bonfire in his back yard, soaked a cat in gasoline and oil, and threw the cat in the fire. After the cat ran out of the fire, the defendant poured more gasoline on it before the animal died.

The State seeks to introduce evidence of the 1982 animal cruelty episode on the grounds that it is admissible on the issues of intent, motive, plan, and identity. None of the memoranda submitted by the State "clearly articulates" the State's rationale for admission of the offered evidence as it individually relates to any of the issues of intent, motive, plan, and identity. This is a shortcoming which runs through the State's argument on much of its offered other acts

7

evidence. The court will nevertheless attempt to articulate its own reasons why the offered evidence is not admissible.

In each of the State's supplementary memoranda, the State asserts that this evidence would demonstrate the defendant's "sadistic personality." The court does not doubt that the evidence would be relevant on the issue of Mr. Avery's sadistic personality, but that is specifically the type of character evidence which is generally prohibited under §904.04(2). The State does not articulate how the actions of a 20-year-old who tortured and burned a cat in 1982 demonstrate intent to commit the murder and mutilation of a young woman 23 years later. Likewise, other than providing evidence of bad character on the part of the defendant, the offered evidence appears to have no relationship to motive.

Neither of the State's supplementary memoranda specifies how the animal cruelty evidence relates to plan. One can speculate that the use of a bonfire in each case is somehow indicative of a common plan. In addition, the State's initial supplementary memorandum points out that the defendant poured gasoline on the cat after he was already in the fire and also allegedly shot the victim multiple times after she was already dead. Such similarities fall far short of what is required to justify admission of other acts evidence as part of a common plan. For example, in State v. Cofield, 238 Wis. 2d 467 (Ct. App. 2000), the court rejected the State's attempt to introduce evidence of two prior sexual assaults despite common elements with the charged offense. The court ruled as follows

> ¶ 13. The State argues that the similarities between the old and new offenses demonstrated a common scheme or plan. That is, a knife was used in each incident, the race of the women was the same, all of the victims were in their twenties or thirties, they were all women Cofield had seen before, and he told each of them that if they were compliant, they would not get hurt. Our supreme court has addressed the concept of "plan" as that term is used in Wis. Stat. § 904.04(2):
>
>> The word "plan" in sec. 904.04(2) means a design or scheme formed to accomplish some particular purpose. . . . Evidence showing a plan establishes a

8

> definite prior design, plan, or scheme which includes the doing of the act charged. As Wigmore states, there must be "such a concurrence of common features that the various acts are materially to be explained as caused by a general plan of which they are the individual manifestations."

*State v. Spraggin*, 77 Wis.2d 89, 99, 252 N.W.2d 94 (1977) (citation and footnote omitted). In other words, similarity of facts is not enough to admit other acts under this "other purpose." There must be some evidence that the prior acts were a step in a plan leading to the charged offense, or some other result of which the charged offense was but one step. *See, State v. Roberson*, 157 Wis.2d 447, 453, 459 N.W.2d 611 (Ct.App. 1990). This linkage is simply not present here. There is no evidence that the prior acts were simply a step in a plan leading up to the Lee incident. In addition, there are as many dissimilarities between the earlier acts and the charged offenses as there are similarities. In the charged offense, Cofield shared cocaine with the victim, he put the knife down, the incident took place in his apartment as opposed to the victim's bedroom, he allowed the victim to leave to retrieve her child, and the instant case occurred during the day.

State v. Cofield, 238 Wis. 2d 467, 474-475 (Ct. App. 2000). Clearly, there is no common "plan" between the 1982 animal cruelty incident and the offenses charged in this case.

The animal cruelty evidence is also offered to show identify. In its second supplementary memorandum, the State argues simply that the jury should be allowed to consider "the striking similarity of placing the object of Avery's torture on a bonfire" for the purpose of determining the identity of Teresa Halbach's killer. The Wisconsin Supreme Court has stated the standard for evaluating other acts evidence to prove identity as follows:

> To be admissible for the purpose of identity, the other-acts evidence should have such a concurrence of common features and so many points of similarity with the crime charged that it "can reasonably be said that the other acts and the present act constitute the imprint of the defendant." *Fishnick*, 127 Wis.2d at 263-64. The threshold measure for similarity with regard to identity is nearness of time, place, and circumstance of the other act to the crime alleged. Id. at 264, n. 7. Whether there is a concurrence of common features is generally left to the sound discretion of the trial courts. *Id.*

State v. Kuntz, 160 Wis. 2d 722, 746-747 (S. Ct. 1991). There is no serious argument that the defendant's sadistic burning of a cat in 1982 has "so many points of similarity" with the crimes charged in this case as to show any type of identity as the term has been defined by the Wisconsin Supreme Court. Even if the animal cruelty evidence was somehow construed to meet one of the permitted purposes under Step 1 of the Sullivan three-part analysis, the evidence

(9)

would have such marginal probative value and be so prejudicial as to fail both the second and the third test. The offered evidence fails all three parts of the <u>Sullivan</u> test and is not admissible.

4. <u>Act of Recklessly Endangering the Safety of Sandra Morris</u>. The State seeks to introduce evidence relating to the defendant's 1985 conviction for endangering safety by conduct regardless of life. Briefly stated, the offered evidence is that in January of 1985 the defendant followed Sandra Morris in a vehicle and struck her vehicle with his vehicle, forcing her off the roadway. The defendant then pointed a loaded rifle at Ms. Morris and ordered her to get into his vehicle. He allowed her to get back into her vehicle and drive to her parents' residence only after she demonstrated to him that her baby was in the front seat of her vehicle and would freeze if she was not allowed to take the child to her parents' home. The defendant subsequently admitted much of Ms. Morris' account of the event to sheriff's detectives. The defendant indicated he ran her off the road because she was telling people that he was "bare-ass in the road" while she drove by his residence on her way to work. Ms. Morris in fact did indicate to police that the defendant exposed himself to her as she drove by his residence early in the morning on a number of occasions as she was driving to work.

The State asserts that the evidence should be admissible for the purposes of intent, motive, plan and identity. In view of the standards discussed in the previous section of this decision which the State would have to meet, the court does not understand how the required relationship for the purposes of plan and identity could be met. Arguably, the evidence could relate to the defendant's intent on the Kidnapping charge. As the court discusses later in this decision, intent is not an element of the sex assault charge in this case.

Intent is relevant as an element which the State must prove on the Kidnapping charge. The question then becomes whether the offered evidence has probative value. In determining probative value the court considers, among other factors, nearness in time, place and circumstance, similarity of acts, and distinctive traits. While the State contends that "the similarity of these acts is quite remarkable," the court is not persuaded. The prior incident took place 21 years before the crimes charged in this case are alleged to have occurred. The victim in the 1984 case was a relative, the victim in this case was not. The 1984 case involved a car chase which was related to prior allegations the victim had made that the defendant was exposing himself to her as she drove by his residence. While the State draws attention to the fact that at one point the defendant greeted Teresa Halbach wearing only a towel, he was reported to have masturbated a number of times in the presence of Sandra Morris in the 1984 case. When Sandra Morris asked Avery to let her go, he allowed her to leave. In this case, the defendant is alleged to have murdered the victim after he sexually assaulted her. While the activity attributed to the defendant in both cases is deplorable, especially in the case of the alleged conduct in this case, the similarities between the two events are far from significant. The 1984 evidence does not have significant probative value and fails Step 2 of the Sullivan test. Even if it passed Step 2, the events are so dissimilar that any probative value the evidence has would be substantially outweighed by the danger of unfair prejudice under Step 3 of the Sullivan test. The evidence is not admissible.

5. <u>Prior act of being a convicted felon in possession of a firearm</u>. The defendant was convicted in 1985 for being a felon in possession of a firearm. The charge is identical to one of

the charges in this case. The State seeks to introduce evidence of the 1985 conviction as it relates to the issue of knowledge.

While acknowledging that knowledge is not an element of the offense of felon in possession of a firearm, the State nevertheless argues that evidence of the defendant's prior conviction for the same offense in 1985 is relevant for the jury to consider. Since the State does not have to prove that the defendant knew his possession of a firearm was unlawful, the court is at a loss to understand how the requested evidence would be offered for the purpose of knowledge. The elements of the offense require simply that the State prove the defendant possessed a firearm and that he has previously been convicted of a felony. Court records will show whether or not the defendant has previously been convicted of a felony. The State argues that because it will have to rely to some extent upon constructive possession of the firearms which were found above the bed of the defendant's trailer, the evidence of his prior conviction for being a felon in possession of a firearm is somehow relevant. It is difficult for the court to analyze and evaluate the State's argument because the court simply does not understand it. The jury will have to determine whether the defendant did or did not possess a firearm. The court does not understand how evidence of his prior conviction for being a felon in possession of a firearm relates to that issue. Since the State has not articulated in any meaningful fashion its basis for requesting admission of the evidence, its request for admission is denied.

6. <u>Sexual misconduct with M. A.</u> The State desires to introduce evidence regarding a sexual assault or assaults that Steven Avery committed against M.A., who was 17 years old at the time, during the summer of 2004. The offered evidence is that the defendant had forcible sexual intercourse with the victim while forcibly holding her hands over her head. In addition,

he threatened that if she ever told anyone of their activities, he would kill her family. The defendant is alleged to have made statements to others confirming multiple acts of intercourse, but not confirming the use of force.

The State offers this evidence on the issues of intent, motive, and plan with regard to the charges of First-Degree Sexual Assault and Kidnapping that have been filed against Steven Avery. The evidence cannot be offered to show intent with respect to the First-Degree Sexual Assault charge because intent is not an element of that offense. State v. Cofield, 238 Wis. 2d 467, 473 (Ct. App. 2000). Intent is an element of the charge of Kidnapping, and the evidence could justifiably be offered for that purpose.

The State also seeks admission of evidence concerning the sexual assault of M.A. as bearing on the issue of motive. The issue of motive is closely related to the issue of intent and the evidence cannot be offered to show motive on the Sexual Assault charge for much the same reason. The court in Cofield discusses the issue as follows:

> ¶ 12. Similarly, the other acts cannot be properly admitted to show motive. Other crimes evidence may be admitted to establish motive for the charged offense if there is a relationship between the other acts and the charged offense, see e.g., Holmes v. State, 76 Wis.2d 259, 268-69, 251 N.W.2d 56 (1977), or if there is a purpose element to the charged crime, see State v. Friedrich, 135 Wis.2d 1, 22, 398 N.W.2d 763 (1987). Here, neither can be satisfied. There was no connection between Cofield's earlier convictions and the Lee case, and there is no evidence that the prior offense provided a reason for committing the charged offenses or that there was some link between them. Further, there is no purpose element in the crimes charged in this case.

State v. Cofield, 238 Wis. 2d at 473-474. The Wisconsin Supreme Court has previously sanctioned the admission of other acts evidence as bearing on the issue of motive in sexual contact cases, but has done so specifically because the purpose of the contact is an element of the offense. *See, e.g.* State v. Plymesser, 172 Wis. 2d 583, 593 (S. Ct. 1992). In this case, there is not a specific relationship between the offered evidence and the crimes alleged in the information, nor is there a purpose element to the sexual assault charge because it involves

13

intercourse rather than contact. Arguably, the evidence could be offered for motive on the Kidnapping charge because the kidnapping charge has an intent element.

The State also offers the sexual assault of M.A. evidence to show plan. <u>Cofield</u> discussed what is required to show plan. *See, pp. 8-9* above. There is not anything near the "concurrence of common features" which is required to justify admission of the challenged evidence to show plan. M.A. was not only an acquaintance, but a relative of the defendant. The sexual assaults apparently occurred on more than one occasion. The defendant, according to the State's 2nd Supplementary Memorandum, told a family friend that he was "going with" M.A. That is certainly in stark contrast to a one-time sexual assault of a business acquaintance which ended up in murder. There is not nearly the "concurrence of common features" required for the court to consider the evidence as bearing on the issue of plan as it relates to either the sex assault charge or the kidnapping charge. Thus, as it relates to the sexual assault charge, the offered M.A. evidence does not pass Step 1 of the <u>Sullivan</u> test. The evidence does pass Step 1 as it relates to the Kidnapping charge.

The M.A. evidence probably passes the relevance portion of the second part of the <u>Sullivan</u> test as well on the Kidnapping charge. That is, in both the M. A. case and in the instant case the motive and intent of the defendant in holding a victim against her will was to commit a sexual assault. The evidence fails the probative value portion of the test, however. Based on the representations made by the State, the defendant apparently felt he had some type of dating relationship with M.A., even if he was sexually forcing himself upon her. He apparently did not hide the nature of his relationship with her and had sexual relations on more than one occasion. In this case, the defendant is alleged to have had forcible sexual intercourse with Teresa Halbach on one occasion, after which he is alleged to have murdered her. There is no evidence he shared

his relationship with Teresa Halbach to anyone other than his co-defendant, Brendan Dassey. A kidnapping that results in the murder of the victim is far different than a kidnapping which results in a sexual assault of an acquaintance with whom the defendant claims to have some type of consensual relationship. Whatever probative value such evidence may have would be far outweighed by the prejudice which attended the introduction of such evidence. The evidence is not admissible.

7. <u>Sexual misconduct with J.A.R.</u> The State seeks to introduce evidence involving a sexual assault of J.A.R., date of birth 11/09/64, by the defendant in 1982 or 1983. The victim was residing with the defendant and his wife at the time. She would testify that the defendant held his hand over her mouth and told her if she yelled or screamed there was going to be trouble. The defendant is alleged to have had penis to vagina sexual intercourse on one occasion.

The State seeks to offer this evidence on the issues of intent, motive, and plan. The reasons why the evidence is not admissible are the same as those given with respect to the sexual misconduct with M.A. In addition, in this case the evidence involves an assault that occurred 23 or more years ago, so its probative value would be considerably less than the evidence involving M.A. The evidence has no relationship to the offenses charged in this case and its only probative value would be to show that the defendant has a propensity to commit sexual assaults.

8. <u>Prior sexual history with Jodi Stachowski.</u> The State seeks to introduce evidence concerning the defendant's sexual relationship with Jodi Stachowski during a period of a little more than a year before the crimes in this case are alleged to have been committed. The offered history is that Avery was extremely sexually active and had sexual relations with Ms.

15

Stachowski every day at least once and sometimes as many as five times a day. The State's 2nd Supplementary Memorandum indicates that the State would further intend to introduce evidence that Stachowski and Avery experimented with bondage and that Avery kept pornographic images and other sexual aids in his residence. The evidence would be offered on the issue of motive as it relates to the First-Degree Sexual Assault charge.

The court fails to find any meaningful relationship between the other acts evidence and the charged offense. There is not a significant relationship between men who are unusually sexually active with their girlfriends and those who commit forcible assaults against some other victim. Because there is no purpose element to the charge of First Degree Sexual Assault by intercourse in this case, evidence related to motive is even less relevant. The evidence has virtually zero probative value and would be highly prejudicial. It is clearly not admissible.

9. <u>Phone conversation with Marie Litersky.</u> The State seeks to introduce evidence that Steven Avery called Marie Litersky, a former girlfriend of the defendant's nephew, on October 30, 2005, the day before the crimes alleged in this case. The offered evidence is that Avery asked Litersky if she would "like to come over and have a little fun. We can have the bed hit the wall real hard." The State submits that "the defendant's failed attempt to lure Marie Litersky to his trailer for a stated sexual purpose less than 24 hours before Ms. Halbach's arrival is highly relevant as to the elements of the sexual assault count, as well as motive as to the homicide." State's 2nd Supplemental Memorandum, p. 12. Since the State does not assert that Mr. Avery had any thoughts of killing Marie Litersky, the court concludes that the State has not "clearly articulated" any reason for admission of the Marie Litersky evidence on the homicide charge. As the court has already explained with respect to the offered M.A. evidence, intent is

not an element of the sexual assault charge in this case. The court does not perceive any meaningful relationship between the offered other acts evidence and the first-degree sexual assault charge. The offered evidence would show that the defendant attempted to induce Marie Litersky to come to his residence to have sexual relations with him. However, it also shows that he asked her to do so voluntarily and when she spurned his advances, he did not pursue the matter any further. That is a far cry from kidnapping a business acquaintance, sexually assaulting her, and then murdering her. For the same reason, there is not "such a concurrence of common features" that the Litersky evidence demonstrates a plan to kidnap another woman, sexually assault her, and murder her. Any probative value the evidence would have would be far outweighed by its prejudicial affect. The evidence is clearly inadmissible.

In closing, the court has not addressed the issue raised in the defendant's reply that the State may no longer have evidence to suggest that Mr. Avery committed a sexual assault of Teresa Halbach. For purposes of its decision regarding these motions in limine, the court has assumed that the State would be introducing evidence to support the allegations contained in the Amended Complaint and that the offered other acts evidence would be submitted to supplement more direct evidence on the charges in the Amended Information.

### ORDER

For the reasons stated in this decision, IT IS HEREBY ORDERED that all nine motions of the State to introduce other acts evidence are denied.

Dated this 22d day of September, 2006.

BY THE COURT:

_____
Patrick L. Willis,
Circuit Court Judge

17

Case 1:19-cv-00484-BHL   Filed 03/03/20   Page 18 of 18   Document 120-27