**1994 WL 710663**
Only the Westlaw citation is currently available.
United States District Court, N.D. Illinois, Eastern Division.

UNITED STATES of America ex rel. David MELIND, Petitioner,
v.
PEOPLE OF the STATE OF ILLINOIS, Respondents.

No. 93 C 734.
|
Dec. 20, 1994.

## MEMORANDUM OPINION AND ORDER

NORDBERG, District Judge.

*1 Before the Court is David Melind's Petition for A Writ of Habeas Corpus.[1]

## BACKGROUND FACTS

On November 10, 1986, John Kugelman, an Illinois State Trooper, died after being struck by an automobile driven by Petitioner. Petitioner was charged with murder and attempting to elude a police officer. On April 29, 1987, a jury convicted Petitioner on both charges. Petitioner was sentenced concurrently to thirty-two years for the murder conviction and 360 days for attempting to elude a police officer.

Petitioner appealed his conviction and his sentence and on February 23, 1989, the Illinois Appellate Court affirmed. *People v. Melind,* 535 N.E.2d 49 (Ct.App.Ill.1989). On June 1, 1989, Petitioner filed a petition for leave to appeal to the Illinois Supreme Court which was denied. *People v. Melind,* No. 68381. Petitioner then filed a post-conviction petition in the Circuit Court raising various constitutional claims which the Circuit Court subsequently denied. *People v. Melind,* No. 86–CF–2023. The Illinois Appellate Court affirmed the Circuit Court's denial of post-conviction relief. *People v. Melind,* Nos. 2–91–0990 and 2–91–1019 (consolidated). Petitioner did not file a petition for leave to appeal to the Illinois Supreme Court. Petitioner is presently incarcerated at Graham Correctional Center in Hillsboro, Illinois.

After exhausting his state court remedies, Petitioner filed his Petition for a Writ of Habeas Corpus in this Court, pursuant to 28 U.S.C. § 2254. Petitioner raises two claims in his Petition. First, he asserts that the State lacked sufficient evidence to prove him guilty of murder beyond a reasonable doubt. Second, Petitioner argues that, even if the State had sufficient evidence to prove him guilty of murder beyond a reasonable doubt, his thirty-two year sentence was excessive.

## ANALYSIS

A federal court cannot address the merits of constitutional claims brought in a petition for habeas corpus relief unless the state courts have had a full and fair opportunity to review them. *Farrell v. Lane,* 939 F.2d 409, 410 (7th Cir.), *cert. denied, Farrel v. McGinnis,* 112 S.Ct. 387 (1991). In *Henderson v. Thieret,* 859 F.2d 492, 496 (7th Cir.1988), *cert. denied,* 490 U.S. 1009 (1989), the Seventh Circuit held:

> Before considering a petition for habeas corpus on its merits, a district court must make two inquiries—whether the petitioner exhausted all available state remedies and whether the petitioner raised all of his claims during the course of the state proceedings. If the answer to either of these inquiries is "no," the petitioner is barred either for failure to exhaust state remedies or for procedural default.

As noted above, Petitioner has exhausted all of his state court remedies and Petitioner has raised the two claims he asserts in his habeas petition on direct appeal. Thus, the Court may address the merits of Petitioner's habeas petition.

EXHIBIT M

*Sufficiency of the Evidence*
**\*2** In addressing Petitioner's claim that the State's evidence was insufficient to convict him of murder beyond a reasonable doubt, this Court must view all of the evidence in the light most favorable to the state, and determine whether, viewing the record as a whole, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Shore v. Warden, Stateville Prison,* 942 F.2d 1117, 1122 (7th Cir.1991), *cert. denied,* 112 S.Ct. 1973 (1992). Because a federal habeas court is far removed from the witnesses' actual testimony, it must be hesitant to substitute its judgment for that of the trier of fact, who had the opportunity to observe the character and demeanor of each witness's testimony and is thus in a better position to judge and weigh credibility. *Walton v. Lane,* 852 F.2d 268, 272 (7th Cir.1988).

Petitioner asserts that the State's evidence was insufficient to convict Petitioner of murder because the evidence does not show beyond a reasonable doubt that Petitioner acted with malice. Thus, Petitioner charges that he should have been convicted of the lesser crime of reckless homicide. Petitioner asserts further that, because the Illinois Appellate Court's decision omits any discussion of the time and distance in which Petitioner had to react once he spotted Kugelman standing on the left shoulder of Route 53, this Court must review the relevant evidence.

Under Illinois law, "[a] person who kills an individual without lawful justification commits first degree murder if, in performing the acts which cause death, he knows that such acts create a strong probability of death or great bodily harm to that individual or another." 720 ILCS 5/9–1(a)(2). On the other hand, Illinois law directs, "[a] person who unintentionally kills an individual without lawful justification commits involuntary manslaughter if his acts, whether lawful or unlawful, which cause the death are such as are likely to cause death or great bodily harm to some individual, and he performs them recklessly, except in cases in which the cause of death consists of the driving of a motor vehicle, in which case the person commits reckless homicide." 720 ILCS 5/9–3.

With regard to the proof of malice necessary to sustain a conviction for murder, the State does not have to show that a defendant deliberately formed the intent to kill. *People v. Balfour,* 498 N.E.2d 547, 554 (Ct.App.Ill.1986), *appeal denied,* 508 N.E.2d 730 (Ill.1987). Rather, where a defendant voluntarily and wilfully commits an act, the direct and natural consequence of which, is to destroy another's life, malice may be implied. *Id.*

The Court agrees with Respondent that the record supports a finding that Petitioner's actions imply malice or knowledge of a strong probability of death or great bodily harm. Moreover, the Court finds that, contrary to Petitioner's contentions, the Illinois Appellate Court reviewed the testimony of all of the witnesses and thoroughly discussed all of the evidence regarding the time and distance in which Petitioner had to react once he spotted the state trooper standing on the shoulder of Route 53.

**\*3** Whether a particular act creates a "strong probability" of death or great bodily harm according to Section 9–1(a)(2) is a question of fact to be decided by the fact finder. *People v. Bennett,* 582 N.E.2d 1370, 1374 (Ct.App.Ill.1991), *appeal denied,* 591 N.E.2d 24 (Ill.1992). As directed by Section 2254, this Court will presume the Illinois Appellate Court's factual findings to be correct unless Petitioner establishes or it otherwise appears that a factual determination is not adequately supported by the record. 28 U.S.C. § 2254(d)(8).

The Illinois Appellate Court spent at least a page recounting the testimony of Wesley Schulz, the Hoffman Estates police office who initiated the pursuit of Petitioner once he determined that Petitioner was speeding and ultimately observed Petitioner strike the state trooper. *Melind,* 535 N.E.2d at 50–51. According to the Illinois Appellate Court, Schulz testified that, as he straddled onto the shoulder of Route 53 in pursuit of Petitioner, he saw a uniformed state trooper step out onto the left shoulder. *Id.* at 51. The trooper had his hand in the air "as if to signal the car to stop," but the car proceeded without slowing down, swerving or applying its brakes. *Id.* Schulz stated further that, when he questioned Petitioner at the police station as to why Petitioner did not stop, Petitioner replied: "I didn't know that guy was going to jump out in front of me." *Id.* Additionally, Schulz recounted that, when he asked Petitioner if Petitioner had tried to avoid the state trooper, Petitioner stated: "Well at the last, I did. I thought he was going to get out of the way." *Id.*

Joseph Birkett, DuPage County Assistant State's Attorney, testified that he also questioned Petitioner on the night of Petitioner's arrest and that Petitioner recalled travelling approximately eighty miles per hour on Route 53. *Id.* at 52. According to Birkett, Petitioner stated that he had seen the state trooper's car angled in the roadway blocking traffic, but he was going so fast he could not stop and he did not try to swerve around the trooper

because he was afraid he would hit the viaduct. *Id.* Birkett testified that he spoke to Petitioner again at 1:30 a.m. and at that time, Petitioner told Birkett that he could see the state trooper for about five to ten seconds before Petitioner hit him. *Id.* Erik Norwood, an accident reconstruction expert for the Illinois State Police, testified that at eighty miles per hour a car travels 117 feet per second and that an average person's reaction time would be three-quarters of a second to one second. *Id.* at 53.

In addition to Schulz, Birkett and Norwood, the Illinois Appellate Court recounted the testimony of the various eye witnesses. Samuel Tolub, whose car was the closest to the state trooper's car, testified that he guessed the state trooper was standing on the shoulder of Route 53 for ten to fifteen seconds before being hit. *Id.* at 52. James Chanell testified that he was stopped in the left lane approximately ten to fifteen car lengths or 400 to 500 feet away from where the state trooper stood on the shoulder of the road and four or five seconds after Petitioner's car passed Chanell, Petitioner hit the state trooper. *Id.* Dennis Ehrhardt testified that his car was stopped approximately fifteen car lengths or 180 feet from the state trooper, that the state trooper was standing on the shoulder for about seven to ten seconds prior to being hit, and that he did not observe Petitioner's car break, slow down or swerve to avoid hitting the state trooper. *Id.* Finally, Donald Marek testified that the state trooper was on the shoulder of Route 53 for eight to ten seconds before being hit. *Id.* at 53. However, Marek admitted that he was approximately 700 to 800 feet away from the state trooper at the time of the collision. *Id.*

*4 Scott Paul, a passenger in Petitioner's car, testified that Petitioner was travelling in excess of eighty miles per hour on Route 53 and that Petitioner's car was approximately 100 feet or five or six car lengths away when they saw the state trooper step onto the shoulder of the road. *Id.* Meanwhile, Petitioner testified that he was driving eighty miles per hour and that the state trooper ran out onto the shoulder approximately fifty to seventy-five feet ahead of Petitioner's car. *Id.* Petitioner also testified that he was pretty sure that he let up on the gas pedal when he saw the state trooper, but he did not have an opportunity to apply the breaks. *Id.*

The Illinois Appellate Court concluded, and this Court agrees, that, given the testimony of the witnesses as to the amount of time Kugelman was on the shoulder prior to the collision (Tolub 10–15 seconds; Ehrhardt 7–10 seconds; Marek 8–10 seconds; Paul 2 seconds; and Birkett who testified that Petitioner stated he had seen the state trooper 5–10 seconds prior to the accident), the jury could have reasonably concluded that Petitioner saw Kugelman approximately ten seconds prior to the accident. *Id.* at 54.

In his Habeas Petition, Petitioner criticizes the testimony of many of the eye witnesses. Petitioner asserts that Tolub testimony was only a guesstimate, that Chanell's estimate of his distance from the state trooper—approximately ten to fifteen car lengths or 400 to 500 feet—was inherently inconsistent as the average automobile is approximately fifteen feet long, and finally, that Maret was forced to view the collusion through his side view mirror. Petitioner implies that from these short comings and inconsistencies, the Court should conclude that the jury could not have found beyond a reasonable doubt that Petitioner acted with malice.

While Petitioner's assertions may be accurate, they do not convince the Court that, based on the testimony of the eye-witnesses, a rational trier of fact could not have found that the Petitioner saw the state trooper at least ten seconds prior to the collision. At least three of the eye-witness testified that the state trooper was standing on the shoulder of Route 53 for sometime between seven and fifteen seconds prior to the collision. Additionally, Birkett testified that Petitioner told him that Petitioner had seen the state trooper for five to ten seconds before the collision. Most importantly, the Court reminds Petitioner that, as the Court is far removed from the witnesses' actual testimony, it must be hesitant to substitute its judgment for that of the trier of fact, who had the opportunity to observe the character and demeanor of each witness's testimony and is thus in a better position to judge and weigh credibility. *See Walton*, 852 F.2d at 272.

In addition to his critique of the eye witnesses' testimony, Petitioner asserts that the Illinois Appellate Court ignored Schulz's testimony regarding the distance between Schulz's squad car and the collision. Again, contrary to Petitioner's assertion, this Court finds that the Illinois Appellate Court explicitly referenced Schulz's testimony that his squad car was three to four car lengths behind Petitioner's car at the time of the collision. 535 N.E.2d at 51. The Illinois Appellate Court also noted that Schulz testified that he watched the state trooper step out onto the shoulder and that the accident happened quick. *Id.*

*5 Based on Schulz's testimony, Petitioner concludes that Schulz was approximately 550 feet away from the state trooper when the state trooper stepped onto the shoulder. However, there is no indication that Schulz testified that he was 550 feet away from the state trooper when the state trooper stepped onto the shoulder or that Schulz's testimony would support such a conclusion. Thus, Petitioner's mathematical calculations which lead to his

conclusion that he had only 4.19 seconds to dodge the state trooper are of little aid.

Given the trial testimony recounted above, this Court concludes that the jury could have reasonably found that Petitioner saw the state trooper approximately ten seconds prior to the collision. Such a finding combined with the testimony that an average person's reaction time is three-fourths of a second to one second and that Petitioner did not swerve, slow down or hit his brakes to avoid hitting the state trooper leads this Court to hold that, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found beyond a reasonable doubt that Petitioner would have known that there was a strong probability that his actions would cause death or great bodily harm to the state trooper.

Finally, this Court notes Petitioner's focus on the testimony of another state trooper indicating that it is not proper police procedure to step out in front of a moving vehicle and on the testimony of the forensic pathologist indicating that the state trooper's impact bruises were on the rear of his thighs. Contrary to Petitioner's implication, such testimony does not have any bearing on this Court's conclusion that there was sufficient evidence for the jury to find beyond a reasonable doubt that Petitioner's actions imply malice or knowledge of a strong probability of death or great bodily harm.

*The Sentence*
As to Petitioner's claim that his thirty-two year sentence is excessive, this Court notes that, as a general rule, a federal court will not review state sentencing determinations that fall within statutory limits. *Williams v. Duckworth*, 738 F.2d 828, 831 (7th Cir.1984), *cert. denied*, 469 U.S. 1229 (1985) (citing *Solem v. Helm*, 463 U.S. 277 (1983); *Rummel v. Estelle*, 445 U.S. 263 (1980)). A criminal sentence can be attacked in a habeas corpus proceeding only if the sentencing court lacked jurisdiction to impose it or committed a constitutional error that made the sentence or underlying conviction fundamentally unfair. *Bean v. United States*, 679 F.2d 683, 685 (7th Cir.1982). The trial court did not consider any impermissible factors or stray outside the statutory limits in determining Petitioner's sentence. Nothing in this case justifies an exception to the general rule of no habeas review of a state sentencing determination.

CONCLUSION
For the foregoing reasons, this Court denies David Melind's Petition for a Writ of Habeas Corpus.

JUDGMENT

IT IS ORDERED AND ADJUDGED as stated in this Court's memorandum opinion and order, this Court denies David Melind's petition for a writ of habeas corpus.

All Citations

Not Reported in F.Supp., 1994 WL 710663

Footnotes

1    Petitioner names the State of Illinois as the Respondents in his Habeas Petition. The State of Illinois is not the proper party in an action brought pursuant to 28 U.S.C. § 2254. According to the Rules Governing Section 2254 Cases in The United States District Courts, when an applicant is presently in custody, pursuant to the state judgment in question, the application shall be in the form of a petition for a writ of habeas corpus in which the state officer having custody of the applicant shall be named as respondent. *See* Rule 2(a) of the Rules Governing Section 2254 Cases in The United States District Courts. Thus, this Court will assume that Petitioner meant to name the Warden of the Graham Correctional Center as respondent.

End of Document © 2020 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW © 2020 Thomson Reuters. No claim to original U.S. Government Works. 4