IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

_____

ANDREW L. COLBORN,

                            Plaintiff

NETFLIX, INC., et al.,                                                     Case No. 19-CV-484

                            Defendants.

_____

**PLAINTIFF'S REPLY BRIEF IN SUPPORT OF
MOTION TO COMPEL INITIAL DISCLOSURES**
_____

## INTRODUCTION

Discovery procedures should not be simply shrugged off and ignored. Yet, that is what has happened in this case for more than a year and a half. Defendants have repeatedly declared that they will not comply with the rules of discovery because they do not believe that they should have to do so. Defendants further claim that their pending motion to dismiss insulates them from any responsibility to comply with the rules. But because their motion is based on defenses that it is their burden to prove, it only underscores the need for discovery.

Plaintiff respectfully requests that the Court order Defendants to take at least the first step to comply with basic discovery procedures by producing initial disclosures pursuant to Federal Rule of Civil Procedure 26(a).

## ARGUMENT

### I.    Netflix Should Produce Initial Disclosures.

Netflix seeks to justify its refusal to provide initial disclosures by claiming that they would be of no use to Plaintiff. Netflix argues that initial disclosures would not require it to produce any documents, only to identify and describe the location of documents. Netflix also argues that it would not have to mention the raw footage in its initial disclosures because it does not consider the video footage of the Steven Avery trial relevant to its argument that it fairly

1

represented the trial in its broadcast. Netflix also asserts that it does not possess or have access to the raw footage of the trial. These assertions raise troubling questions regarding how Netflix can in good faith claim to have fairly represented, in the form of a broadcast containing visual content, a trial that it contends that it has not fully viewed.

Moreover, initial disclosures are intended to prevent exactly the kind of game of "keep away" that Defendants have been playing with the raw footage. When Plaintiff's counsel served specific, targeted discovery requests for the raw footage on Netflix earlier this year, Netflix's counsel replied by indicating that Netflix would object to the request on substantive grounds but that more importantly, it could not produce the footage anyway <u>because of the pandemic</u>. Declaration of April Rockstead Barker at Ex. 1. It was only in late September 2020, after Plaintiff's counsel revisited the pandemic argument, that Netflix first claimed that it does not even have the footage or a right to access it. Declaration of Leita Walker, Ex.. 1, Dkt #158-1, at p. 4. If all Defendants had produced initial disclosures in June after the Court-ordered Rule 26(f) conference, Plaintiffs would have known what pertinent documents Netflix claimed to have in its possession and could have pursued alternative sources to attempt to obtain this information months ago.

Netflix also argues that the raw footage would be irrelevant to the issues presently before the Court because its motion to dismiss must be decided on the pleadings. But as Plaintiffs have explained to the Court in their prior submissions, Netflix's motion – its second "motion to dismiss" in this case – can be considered to be "confined to the pleadings" only in the loosest possible sense, in that it is not so confined. This is demonstrated by Netflix's interpretation of the "pleadings" as permitting it to submit everything that it deemed to be pertinent with respect to the broadcasts. *See* Dkt #120, Exs. 1-36.

As Plaintiff has previously noted, Netflix's motion documents more closely resemble submissions that are typically made with a motion for summary judgment. The Federal Rules of Procedure contemplate that a party may have an opportunity to take discovery prior to decision on a motion for summary judgment. Fed.R.Civ.Pro. 56(d). If this Court notifies the parties of a decision to formally convert Netflix's motion into a motion for summary judgment, *see, e.g., Airline Pilots Ass'n, Int'l v. Dept. of Aviation of City of Chicago*, 45 F.3d 1144, 1154 n. 6 (7th Cir. 1995), Plaintiffs will formally invoke Rule 56(d).

Netflix's motion to dismiss is also atypical because it requests dismissal of the claims against it based on defenses, including a blend of fair report privilege/substantial truth doctrine.[1] *See* Dkt #119 (Netfix's brief) at pp. 35-37, 45. Plaintiff was not required to anticipate affirmative defenses in his complaint. *See, e.g., Davis v. Indiana State Police,* 541 F.3d 760, 763 (7th Cir. 2008). If Netflix's motion to dismiss on these grounds is entertained, then Plaintiff should have an opportunity to test Netflix's claimed privileges and defenses through discovery. In short, Netflix should not be adjudged to have met its burden to establish that its broadcast is a fair and substantially true account of a court proceeding without producing, for comparison, the actual visual evidence showing what occurred in that proceeding.[2]

---

[1] The substantial truth doctrine is a defense to a defamation claim that excuses minor inaccuracies of expression in an otherwise true statement. *See, e.g., Laughland v. Beckett*, 2015 WI App 70, ¶23. A claim of "fair report" privilege is an affirmative defense. *See* CJS 2d Libel §223, Privilege As An Affirmative Defense To Defamation Action.

[2] Netflix has repeatedly claimed that it supplied the trial transcripts and that is all that is necessary. However, as Plaintiff previously noted in its response to Defendants' motion to dismiss, Wisconsin law requires consideration of the visual and audio portions of the broadcast. Dkt #131 at p. 49 (citing *Mach v. Allison*, 2003 WI Ap 11, ¶12, 656 N.W.2d 766).

3

## II. Chrome Media and the Individual Defendants Should Produce Initial Disclosures.

Chrome Media and the individual defendants, Laura Ricciardi and Moira Demos, make additional arguments that likewise fail to provide any good reason to exempt them from their obligation to provide initial disclosures.

First, they argue that they are not subject to discovery, other than potentially jurisdictional discovery, because they have filed a motion to dismiss for alleged failure to timely serve them. But irrespective of the outcome of the service motion, these Defendants have been properly served with the Second Amended Complaint. Dkt #149, 150, 151. The Second Amended Complaint asserts claims based on "Making of a Murderer 2," which aired in October 2018. Dkt #105, pp. 17-19. No statute of limitations could arguably bar those claims. Therefore, the question is not whether these Defendants will have to comply with discovery in this case, but when. There is no reason for the case to continue to be delayed by the Defendants' collective efforts to stonewall discovery, which have now stymied all progress in this case for more than a year and a half despite the fact that Defendants have never filed any motion seeking a stay of discovery.

Second, if those Defendants were somehow not properly parties to this case, Plaintiff would be entitled to subpoena relevant information and documents from them. Therefore, it would not somehow disadvantage Defendants to produce information through the discovery process rather than in response to subpoenas.

Third, the individual Defendants argue that they are privileged to refuse to produce the information under "journalist shield" laws that apply in either California or Wisconsin. However, this argument is devoid of any merit, as Defendants have not and almost certainly cannot make the showing that they qualify under the threshold requirements under either state's

4

versions of the shield law.  It is Defendants' burden to show that all elements of any claimed privilege are met.  *See, e.g. Roth v. AON Corp.,* 254 F.R.D. 538, 540 (N.D. Ill. 2009).

Under California law, a person seeking to invoke the privilege must show that he or she is regularly engaged in newsgathering activities for print or broadcast media.  CA Evid. §1070 (statute applies, in pertinent part, to "radio or television news reporter or other person connected with or employed by a radio or television station" and only with respect to information "procured ***while so connected or employed***" (emphasis added)); *see also* Wis. Stat. §885.14(1) (statute applies to entities that "disseminate[] on a regular and consistent basis news or information to the public" and individuals who perform that work for them). According to Defendants' public statements, they did not become affiliated with any broadcast "station," even assuming that Netflix could be so characterized, until they had completed filming the Avery trial.  *See, e.g.,* Declaration of George Burnett, Ex. 5, Dkt #85-5, at p. 3.

Further, even with respect to media defendants who can legitimately invoke shield laws, the statute in Wisconsin – which is both where Plaintiff's action was originally brought and where the footage at issue was taken – "does not address civil discovery."  *See* Friedman, James, Wisconsin Reporter's Committee Compendium at Reporter's Committee for the Freedom of the Press, at I.H., https://www.rcfp.org/privilege-compendium/wisconsin/; *see also Rogers v. Home Shopping Network, Inc.,* 73 F.Supp.2d 1140, 1142-43 (C.D. Ca. 1999) (under California shield law, reporter's status as a defendant in a libel action normally weighs in favor of compelled discovery).

## **CONCLUSION**

Plaintiff respectfully requests that this Court order Defendants to comply with Federal Rule of Civil Procedure 26(a)(1) and produce their initial disclosures on or before a date certain.

5

Case 1:19-cv-00484-BHL   Filed 11/23/20   Page 5 of 6   Document 163

Defendants' continuing efforts to thwart discovery in this case have stymied all discovery for more than a year and a half.  As explained above, Defendants offer no legitimate reasons for failing to comply with basic discovery obligations that apply to all other parties in civil actions.

Dated this 23rd day of November, 2020.

By: /s/April Rockstead Barker
April Rockstead Barker
Attorneys for Plaintiff, Andrew L. Colborn

Schott, Bublitz & Engel, s.c.
640 W. Moreland Blvd.
Waukesha, WI  53188
(262) 827-1700
(262) 827-1701 (fax)
abarker@sbe-law.com

**Co-Counsel:**

Attorney George Burnett
231 S. Adams Street
Green Bay, WI 54301
P.O. Box 23200
Green Bay, WI  54305-3200
Phone:  (920) 437-0476
Fax:  (920) 437-2868
State Br No. 1005964

Attorney Michael C. Griesbach
Griesbach Law Offices
State Bar No. 01012799
Griesbach Law Offices, LLC
PO Box 2047
Manitowoc, WI  54221-2047
(920) 320-1358