IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

ANDREW L. COLBORN,

    Plaintiff,

vs.

NETFLIX, INC.; CHROME MEDIA LLC, F/K/A SYNTHESIS FILMS, LLC; LAURA RICCIARDI; AND MOIRA DEMOS,

    Defendants.

Civil No.: 19-CV-484-BHL

**PRODUCER DEFENDANTS' STATEMENT OF ADDITIONAL MATERIAL FACTS REGARDING THEIR MOTION TO DISMISS UNDER RULE 12(B)(5)**

In response to the Court's October 22, 2020 Minute Order (Dkt. 156), Defendants Chrome Media, LLC f/k/a Synthesis Films, LLC; Laura Ricciardi; and Moira Demos (collectively, the "Producer Defendants"), through counsel, submit the following supplemental statement of additional material facts to which Plaintiff Andrew L. Colborn does not agree regarding the Producer Defendants' pending Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(5).

**Objections to Plaintiff Andrew L. Colborn's Introduction of**

**New Evidence, Objections and Argument**

1.    During a November 20, 2020 meet-and-confer call regarding the parties' joint statement of undisputed material facts, the Producer Defendants first learned that Colborn's counsel intended to rely on *new* purported evidence (not previously submitted to the Court with the briefing related to the Producer Defendants' pending motion to dismiss) as part of his

1

separate statement of facts the Producer Defendants do not agree to. In the evening of November 22, 2020, the night before the parties' joint statement and separate statements were due, the Producer Defendants further discovered for the first time that Colborn intended to submit a new declaration from Debra Bursik, a private investigator associated with one of Colborn's counsel's law firms. The Producer Defendants object to the introduction of new evidence outside the existing record, and hereby move to strike all such new evidence (including but not limited to the new Bursik declaration), on grounds that the Producer Defendants' motion to dismiss has long been fully briefed (including various sur-replies and responses to sur-replies) and the Court did not authorize additional briefing or the submission of new evidence in response to the Court's request for a joint statement of undisputed facts. Dkt. 156. While the Producer Defendants also have new evidence they could provide to respond to and demonstrate that Plaintiff's purported new evidence are just red herrings (including, for example, that Defendant Laura Ricciardi first registered the 15821 Ventura Blvd. address with the New York State Unified Court System in May 2020; that the Starlight entity mentioned in Plaintiff's Separate Statement was formed in January 2020, nearly a year after the events at issue in the Motion; and that the Synthesis Films, Inc. entity Colborn references in his separate statement is irrelevant to the Producer Defendants' pending motion to dismiss), the Producer Defendants recognize that the Court has not authorized any further briefing or the submission of new evidence, so they have refrained from setting forth any new evidence here.

    2.    The Producer Defendants further object to Plaintiff Colborn's attempt in his separate statement to advance evidentiary objections and further argument (under the guise of "Objections to Defendants' Proposed Additional Facts") that should have been asserted, if at all, during the briefing stage on the Producer Defendants' motion to dismiss. For example, Colborn

"objects to consideration of [certain] self-serving statements in affidavits of Tal Benari and additional witnesses" that the Producer Defendants submitted in support of their motion to dismiss back in mid-2019. Plf's. Separate Statement 9. But Colborn had ample opportunity to raise these objections more than a year ago and did not. Indeed, in addition to his opposition to the Producer Defendants' motion, Colborn previously filed *three* sur-replies under various names. Dkt 90-1 (June 17, 2019 Sur-Reply); Dkt. 92-1, 106 (June 24, 2019 Supplemental Sur-Reply); Dkt 108-1 (January 7, 2020 Response to New Arguments). Colborn's attempt to introduce new arguments and objections now amounts to a fourth bite at the apple, but the Court's October 22, 2020 Order neither requested nor permitted any further sur-Reply briefs or any additional arguments and new evidence. The Producer Defendants therefore move to strike Colborn's new objections and further argument or, in the alternative, request an opportunity to more fully respond to those objections and arguments.

**Purported Attempted Service on Laura Ricciardi and Moira Demos**

3.  While Colborn contends his process servers attempted service on Ricciardi and Demos at their home at 1946 N. Oxford Ave., Los Angeles, CA 90027 on March 6, 2019, he has not provided any evidence of such an attempt.

4.  Carlos Caceres stated in his Non Service Reports for Demos and Ricciardi[1] that on March 6, 2019, he attempted to serve Ricciardi and Demos at the address for Chrome Media's

---

[1] As Defendants previously pointed out in prior briefing, the Caceres Declaration suffers from multiple legal defects that render it inadmissible. *See, e.g.*, Producer Defs.' Reply in Support of Mot. to Dismiss at 6 (Dkt. 86) ("Finally, Colborn's 'non service' affidavits are insufficient under Wisconsin law to show reasonable diligence because they fail to include a host of statutorily required prerequisites to their admissibility. *See* Wis. Stat. § 801.10(4)(a) (reciting such prerequisites, including sworn statements by the server that he or she 'is an adult resident of the state of service . . . and is not a party to the action'). Under Wisconsin law, these are not mere technicalities; they are strict requirements which, if not met, themselves establish that service is deficient"). Defendants' separate statement therefore lists the contents of Caceres's Non Service

3

registered agent for service of process, Tal Benari, an individual, at 15821 Ventura Blvd., Suite 500, Encino, California, the address for the accounting firm at which Benari is employed, R.C. Baral & Company, Inc. Caceres discovered that Benari was not in his office and that Demos and Ricciardi were "not employee[s] of Chrome Media." (Non Service Report for Moira Demos (Dkt. 49); Non Service Report for Laura Ricciardi (Dkt. 50).)

5. Caceres's Non Service Reports for Demos and Ricciardi do not specify why Caceres tried to serve Ricciardi and Demos at Benari's office on March 6, 2019. (Non Service Report for Moira Demos (Dkt. 49); Non Service Report for Laura Ricciardi (Dkt. 50).)

6. Caceres's Non Service Reports for Demos and Ricciardi do not identify with whom (if anyone) he spoke at Benari's office on March 6, 2019. (Non Service Report for Moira Demos (Dkt. 49); Non Service Report for Laura Ricciardi (Dkt. 50).)

7. Caceres's Non Service Reports for Demos and Ricciardi do not state what efforts (if any) he made to learn the information he provided in those Non Service Reports, or what (if any) other inquiries he made. (Non Service Report for Moira Demos (Dkt. 49); Non Service Report for Laura Ricciardi (Dkt. 50).)

8. Neither Ricciardi nor Demos ever appointed Benari as their personal agent to accept service of process on their behalf. (Declaration of Laura Ricciardi (Dkt. 36) ¶ 3; Declaration of Moira Demos (Dkt. 37) ¶ 3; Declaration of Tal Benari (Dkt. 38) ¶¶ 3-4.)

9. Neither Chrome Media nor Ricciardi or Demos has ever conducted business from or occupied offices at 15821 Ventura Blvd., Suite 500, Encino, California. (Second Declaration of Moira Demos (Dkt. 87) ¶ 5; Second Declaration of Tal Benari (Dkt. 88) ¶ 3.)

---

Reports and Declaration of Diligence, although Defendants maintain that those documents do not constitute competent evidence.

4

10. Caceres's Non Service Reports for purported attempted service on Moira Demos and Laura Ricciardi do not state that Caceres is an adult resident of California. (Non Service Report for Moira Demos (Dkt. 49); Non Service Report for Laura Ricciardi (Dkt. 50).)

11. Caceres's Non Service Reports for purported attempted service on Moira Demos and Laura Ricciardi do not state that Caceres is not a party to this case. (Non Service Report for Moira Demos (Dkt. 49); Non Service Report for Laura Ricciardi (Dkt. 50).)

12. Caceres's Non Service Reports for purported attempted service on Moira Demos and Laura Ricciardi do not state that he knew Moira Demos and Laura Ricciardi to be defendants named in the summons. (Non Service Report for Moira Demos (Dkt. 49); Non Service Report for Laura Ricciardi (Dkt. 50).)

13. Caceres's Non Service Reports for purported attempted service on Moira Demos and Laura Ricciardi state that he attempted to serve Demos and Ricciardi with the original Complaint, but not the Amended Complaint. (Non Service Report for Moira Demos (Dkt. 49); Non Service Report for Laura Ricciardi (Dkt. 50).)

14. Caceres's Non Service Reports for purported attempted service on Moira Demos and Laura Ricciardi do not state that he attempted to serve Demos and Ricciardi with an authenticated copy of the Summons or Amended Summons. (Non Service Report for Moira Demos (Dkt. 49); Non Service Report for Laura Ricciardi (Dkt. 50).)

15. Caceres stated in his Non Service Reports that at 12:50pm and 7:30pm on March 7, 2019, he attempted service on Demos and Ricciardi at their home at 1946 N. Oxford Ave., Los Angeles, CA 90027. He asserted that he received no answer from the intercom at the front gate. (Non Service Report for Moira Demos (Dkt. 49); Non Service Report for Laura Ricciardi (Dkt. 50).)

16. Ricciardi and Demos's shared residence is not in a gated community. It is on a public, residential street. (Second Declaration of Moira Demos (Dkt. 87) ¶ 3.)

17. The Proof of Publication Colborn filed in this case references a "State of Wisconsin Circuit Court Manitowoc County Amended Publication Summons." That Proof of Publication does not reference an original publication summons, and it lists as defendants in the case only those defendants named in Colborn's Amended Complaint. (Proof of Publication, Dkt. 25.)

18. Colborn and his counsel first discovered after the Producer Defendants' motion to dismiss was fully briefed (including multiple rounds of sur-replies and responses): (1) that Laura Ricciardi's New York State Unified Court System bar profile lists 15821 Ventura Blvd., Suite 500, Encino, California 9143-2945 as her business address, and (2) that the Starlight entity (Laura Ricciardi's loan-out corporation) and the Synthesis Films, Inc. corporation lists the same address in its corporate filings with the California Secretary of State. Neither Colborn nor his counsel nor any process server(s) acting on his behalf consulted or relied on this information in their efforts to serve Moira Demos or Laura Ricciardi.

19. The Producer Defendants are not addressing the Second Amended Complaint and any purported service of it because such matters are irrelevant to resolution of their pending Motion to Dismiss the First Amended Complaint pursuant to Rule 12(b)(5). (*See* Dkt. 105, 149, 150, 151, 161.)

**Purported Attempted Service of Summons and Complaint on Chrome Media, LLC**

20. Chrome Media LLC has never conducted business from or occupied offices at 15821 Ventura Blvd., Suite 500, Encino, California 91436, which is the office address of the

accounting firm where Tal Benari is employed, R.C. Baral & Company, Inc. (Second Declaration of Tal Benari (Dkt. 88) ¶ 3; Declaration of Natalia Canaan (Dkt. 39) ¶ 2; Declaration of Danielle Rodriguez (Dkt. 40) ¶ 2; Declaration of Dominique Bianchi (Dkt. 41) ¶ 2; Second Declaration of Moira Demos (Dkt. 87) ¶ 5.)

21. Benari has never been an officer, director, managing agent, or employee of Chrome Media, nor has he ever had any role in its management. Benari has never had any authority, control, supervision, or discretion over any part of Chrome Media's business affairs. (Second Declaration of Tal Benari (Dkt. 88) ¶ 4; Second Declaration of Moira Demos (Dkt. 87) ¶ 6.)

22. Colborn and his counsel first discovered the September 26, 2016 Statement of Information and October 10, 2017 Statement of No Change that Chrome Media filed with the California Secretary of State after the Producer Defendants had already replied to Colborn's opposition to their motion to dismiss. Neither Colborn nor his counsel nor any process server(s) acting on his behalf consulted or relied on those documents in their efforts to serve Moira Demos or Laura Ricciardi. (Dkt. 92-1 at 1.)

23. A Business Search on the California Secretary of State's website reflects the information Chrome Media provided in its September 26, 2016 Statement of Information pursuant to California Corporations Code section 17702.09(a) and 17701.13(a)(3). (Declaration of Debra Bursik (Dkt. 92-2) Ex. 1.)

24. Tal Benari is listed with the California Secretary of State as the registered agent for service of process for Chrome Media LLC in California. (Declaration of Tal Benari (Dkt. 38) ¶ 2; Second Declaration of Tal Benari (Dkt. 88) ¶ 2; Declaration of Debra Bursik (Dkt. 92-2) Ex. 1.)

25. Chrome Media appointed Tal Benari, and not the accounting firm where he works, R.C. Baral & Co., as its agent for service of process. (Second Declaration of Tal Benari (Dkt. 88) ¶ 3; Declaration of George Burnett (Dkt. 71) ¶ 4.)

26. Colborn, Colborn's counsel, and Colborn's process servers all believed that Benari, an individual, was designated as Chrome's agent for service of process, because they state that they attempted to serve Benari at his home, thus demonstrating that they believed he (personally and individually) was the agent to be served. (Declaration of Diligence (Dkt. 44); Dkt. 21.)

27. Natalia Canaan was the receptionist present at 15821 Ventura Blvd, Ste. 500, Encino, CA 91436 on March 6, 2019 when an individual entered the waiting area of R.C. Baral & Co.'s office suite carrying a packet of documents. Canaan is not authorized to accept service of process, either on behalf of the company or on behalf of anyone who works there. Canaan is not the person in charge of the office. (Declaration of Natalia Canaan (Dkt. 39) ¶¶ 4, 5.)

28. On March 7 or 8, the same person returned to the reception area of 15821 Ventura Blvd., Suite 500, Encino, CA and asked Canaan to speak to Benari. Benari again was not in the office, and the person was told that. The person attempted to leave a packet of documents with Canaan, who told the person that she (Canaan) was not authorized to accept anything on Benari's behalf. The person left the packet of documents on the counter and left. (Declaration of Natalia Canaan (Dkt. 39) ¶ 6.)

29. On March 12, 2019, a man entered the reception area of R.C. Baral & Co.'s office suite office suite during the lunch hour and asked to speak to Benari. The receptionist present at the time, Danielle Rodriguez, told the man that Benari was in a meeting and was not in his office and immediately took a phone call. While Rodriguez was on the phone, the man placed a set of

documents on the reception counter and left without identifying himself to Rodriguez. (Declaration of Danielle Rodriguez (ECF No. 40) ¶¶ 5-6.)

30. Neither Benari nor anyone else has ever authorized a receptionist or anybody else to accept service of process on his behalf or on behalf of Chrome Media. (Declaration of Tal Benari (Dkt. 38) ¶ 15; Declaration of Natalia Canaan (Dkt. 39) ¶ 4; Declaration of Danielle Rodriguez (Dkt. 40) ¶ 4; Declaration of Dominique Bianchi (Dkt. 41) ¶ 4.)

31. None of the receptionists at 15821 Ventura Blvd., Suite 500 are in charge of the office. (Declaration of Tal Benari (Dkt. 38) ¶¶ 14-16; Declaration of Natalia Canaan (Dkt. 39) ¶ 3; Declaration of Danielle Rodriguez (Dkt. 40) ¶ 3; Declaration of Dominique Bianchi (Dkt. 41) ¶ 3.)

32. Carlos Caceres stated in a Declaration of Diligence that he attempted service on Benari on March 8 and 9, 2019 at Benari's home, which Caceres described as in a gated community at 18645 Hatteras Street, Unit 269, Tarzana, CA, but did not succeed in doing so. (Declaration of Diligence (Dkt. 44).)

33. Caceres's Declaration of Diligence for purported attempted service on Chrome Media does not state that Caceres is an adult resident of California. (Declaration of Diligence (Dkt. 44).)

34. Caceres's Declaration of Diligence for purported attempted service on Chrome Media does not state that Caceres is not a party to this case. (Declaration of Diligence (Dkt. 44).)

35. Caceres's Declaration of Diligence for purported attempted service on Chrome Media does not state that he knew Benari was the registered agent of Chrome Media LLC or that he knew Chrome Media LLC to be the defendant named in the summons. (Declaration of Diligence (Dkt. 44).)

36. Caceres's Declaration of Diligence for purported attempted service on Chrome Media states that he attempted to serve Chrome Media with the Amended Complaint but not the original Complaint. (Declaration of Diligence (Dkt. 44).)

37. Caceres's Declaration of Diligence for purported attempted service on Chrome Media does not state that he delivered to and left with Benari or Chrome Media an authenticated copy of the Summons or Amended Summons. (Declaration of Diligence (Dkt. 44).)

38. The Proof of Publication Colborn filed in this case references a "State of Wisconsin Circuit Court Manitowoc County Amended Publication Summons." That Proof of Publication does not reference an original publication summons, and it lists as defendants in the case only those defendants named in Colborn's *Amended* Complaint. (Proof of Publication, Dkt. 25; Producer Defs. Reply, Dkt No. 86 at 6-9.)

39. Tal Benari was not personally served on or before May 6, 2019, on behalf of Chrome Media or any other defendants. Colborn filed an "Affidavit of Service" purporting to establish that Emilio Gonzalez Zarate, a process server working for Excell Investigations in California, had personally served Tal Benari on behalf of Chrome Media at Benari's residence on March 16, 2019. The Producer Defendants then demonstrated that Zarate's Affidavit was false, and Colborn's counsel subsequently withdrew any reliance on Zarate's Affidavit. (Declaration of Tal Benari (Dkt. 38) ¶ 12; 14; Dkt. 21 (Zarate Affidavit); Declaration of April Rockstead Barker (Dkt. 74) ¶¶ 15, 19; Colborn's Brief in Opposition to Chrome Media, Laura Ricciardi, and Moira Demos's Motion to Dismiss (Dkt. 52) at 20.)

40. The "Affidavit of Service" Colborn filed that purported to establish that Tal Benari had been personally served on March 16, 2019 did not explain how the affiant purportedly effected personal service on Benari. (Dkt. 21.)

41. The "Affidavit of Service" Colborn filed that purported to establish that Tal Benari had been personally served on March 16, 2019 did not state that the affiant was an adult resident of California and is not a party to the action. (Dkt. 21.)

42. The "Affidavit of Service" Colborn filed that purported to establish that Tal Benari had been personally served on March 16, 2019 failed to state that the affiant knew Benari to be the registered agent for service of process on a defendant named in the summons. (Dkt. 21.)

43. On March 16, 2019, Benari was not at home for most of the day; nobody attempted to serve him with process or deliver anything to him; he did not interact with any person who was not previously known to him (including Zarate); he did not authorize anybody to enter his gated condominium complex; and he did not receive any packages or anything else from anybody. (Declaration of Tal Benari (Dkt. 38) ¶¶ 7-10, 12-13.)

44. Caceres stated in his Declaration of Diligence that he returned to the reception area of Benari's office suite on March 18, 2019, and was told by a woman who appeared to be about 45 years old that Benari was not in the office. Caceres did not state what (if any) additional inquiries he made, nor did he state that he believed the woman he spoke with was apparently in charge of the office or provide any details in support of such a belief. (Declaration of Diligence (Dkt. 44).)

45. Caceres stated in his Declaration of Diligence that he returned to the reception area of Benari's office suite on March 21, 2019, and discovered that Benari was not in the office. Caceres did not state how he learned this or what, if any, additional inquiries he made, nor did he state that he believed the woman he spoke with was apparently in charge of the office or provide any details in support of such a belief. (Declaration of Diligence (Dkt. 44).)

46. Caceres's Declaration of Diligence for purported attempted service on Chrome Media does not state that he reasonably believed any of the unnamed individuals he says he spoke with at 15821 Ventura Blvd., Suite 500, Encino, CA 91436 during March 2019 were apparently in charge of that office, nor does his Declaration of Diligence provide any details to support such a belief. (Declaration of Diligence (Dkt. 44); Non Service Report (Dkt. 49).)

47. Caceres's Declaration of Diligence for purported attempted service on Chrome Media does not state that Caceres is an adult resident of California. (Declaration of Diligence (Dkt. 44).)

48. Caceres's Declaration of Diligence for purported attempted service on Chrome Media does not state that Caceres is not a party to this case. (Declaration of Diligence (Dkt. 44).)

49. Caceres's Declaration of Diligence for purported attempted service on Chrome Media does not state that he knew Benari was the registered agent of Chrome Media LLC or that he knew Chrome Media LLC to be the defendant named in the summons. (Declaration of Diligence (Dkt. 44).)

50. Caceres's Declaration of Diligence for purported attempted service on Chrome Media states that he attempted to serve Chrome Media with the Amended Complaint but not the original Complaint. (Declaration of Diligence (Dkt. 44).)

51. Caceres's Declaration of Diligence for purported attempted service on Chrome Media does not state that he delivered to and left with Benari or Chrome Media an authenticated copy of the Summons or Amended Summons. (Declaration of Diligence (Dkt. 44).)

52. Caceres's Declaration of Diligence for purported attempted service on Chrome Media does not state that he reasonably believed that the unnamed person with whom he "Left papers at front desk" at 15821 Ventura Blvd., Suite 500, Encino, CA 91436 on March 28, 2019

was apparently in charge of that office, nor does his Declaration of Diligence provide any details to support such a belief. (Declaration of Diligence (Dkt. 44).)

Dated: November 23, 2020

Respectfully submitted,

 s/ James A. Friedman
James A. Friedman, SBN 1020756
GODFREY & KAHN, S.C.
One East Main Street
Suite 500
Madison, WI 53703-3300
T: (608) 284-2617
F. (608) 257-0609
jfriedman@gklaw.com

Kevin L. Vick, *Pro Hac Vice*
Jean-Paul Jassy, *Pro Hac Vice*
JASSY VICK CAROLAN LLP
800 Wilshire Boulevard, Suite 800
Los Angeles, CA 90017
T: (310) 870-7048
F: (310) 870-7010
kvick@jassyvick.com

*Counsel for Defendant Laura Ricciardi, Moira Demos, and Chrome Media, LLC*