IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

| | |
|---|---|
| ANDREW L. COLBORN,<br><br>          Plaintiff,<br><br>   vs.<br><br>NETFLIX, INC.; CHROME MEDIA LLC,<br>F/K/A SYNTHESIS FILMS, LLC;<br>LAURA RICCIARDI; AND MOIRA<br>DEMOS,<br><br>          Defendants. | Civil No.: 19-CV-484-BHL |

## ANSWER TO SECOND AMENDED COMPLAINT

Defendants Chrome Media LLC f/k/a Synthesis Films LLC; Laura Ricciardi; and Moira Demos (collectively, the "Producer Defendants") answer the Second Amended Complaint ("SAC") of Andrew L. Colborn as follows, paragraph by paragraph and using the headings used by Plaintiff, but without admitting any allegations contained in those headings, as follows:

### PRELIMINARY STATEMENT

The Producer Defendants stand behind their documentary series *Making a Murderer*, which objectively and accurately conveys the viewpoints, contentions, and experiences of those portrayed in the series. The series in part concerns Steven Avery's and Brendan Dassey's arrests and convictions for Teresa Halbach's murder. But it is not until more than halfway through the second episode that Teresa Halbach is reported missing. Before that point, the series documents a range of Steven Avery's experiences in the legal and political systems, including his 1985 wrongful conviction, his appellate and postconviction efforts, his 2003 exoneration, the

Wisconsin Attorney General's investigation into the wrongful conviction, the Avery Task Force and Avery's federal civil rights lawsuit against Manitowoc County and two of its former law enforcement officials. Once the series begins to chronicle the Halbach case, the Producer Defendants filmed events as they were unfolding in an observational documentary style where neither the filmmakers nor the subjects knew what would happen next. The filmmakers also conducted sit-down interviews with subjects regarding those events. When editing this part of the series, the Producer Defendants chose to lay out the story in the present tense without voice-over narration by the filmmakers or anyone else. The result is that the events play out as people on all sides of the Halbach case take action, voice their points of view and make their respective legal arguments concerning Halbach and her horrific murder, as well as the investigation, prosecution, conviction, and sentencing of Avery and Dassey and the appellate and postconviction phases of those cases.

In producing the series, the Producer Defendants sought access to individuals with firsthand knowledge. Ultimately, they could not control who decided or was permitted to sit down with them for interviews and so were only partially successful in gaining direct access to subjects. But for subjects who did not participate, the filmmakers included the voices, perspectives and points of view of those individuals, including Andrew Colborn, through the use of footage they captured in public spaces, as well as primary-source and other third-party materials.

The series was devoid of bias by design. The Producer Defendants intended to raise questions but deliberately did not provide answers or tell their viewers what to think. Colborn's suggestions to the contrary fundamentally misconstrue *Making a Murderer*. In truth, the Producer Defendants presented their viewers with a myriad of experiences and viewpoints in a tapestry that educates those viewers about the complexity of matters like those presented in *Making a Murderer* and the value in accepting ambiguity rather than demanding certainty.

Of course, while *Making a Murderer* is non-fiction, it is indisputable that the process of making a documentary necessarily requires editing. This involves summarizing, condensing, and compressing a substantial volume of information. Indeed, Steven Avery's 2007 trial lasted *five weeks*, and part 1 of the *Making a Murderer* series spent less than three hours of its running time in the courtroom for Avery's trial. At the trial, Plaintiff himself was on the stand for just over three hours, yet in part 1 of the series appeared on the stand for just over 10 minutes (cumulatively among all 10 episodes). Simply put, it would have been impossible to include everything. The Producer Defendants here did not alter the meaning of the events, including the components of the series that relate to Plaintiff Andrew Colborn as well as to Steven Avery's defense theories and strategies.

**Parties**

1. The Producer Defendants admit that Colborn is an adult, but presently lack sufficient knowledge or information to form a belief as to the truth of the remaining allegations in paragraph 1, and on that basis deny them.

2. The Producer Defendants presently lack sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 2, and on that basis deny them.

3. The Producer Defendants admit that Chrome Media LLC is domiciled in New York but deny that 15821 Ventura Boulevard, Suite 500, Encino, California 91436 was ever Chrome Media LLC's place of business, let alone its principal place of business.

4. The Producer Defendants admit that Chrome Media LLC is an independent film production company founded by Defendants Ricciardi and Demos, but note that, in 2006, the company was called Synthesis Films LLC.

5. The Producer Defendants admit the allegations in paragraph 5.

6. The Producer Defendants admit the allegations in paragraph 6.

7. The Producer Defendants admit the allegations in paragraph 7.

8. The Producer Defendants admit that Laura Ricciardi and Moira Demos have an ownership interest in Chrome Media LLC, formerly known as Synthesis Films LLC. The

Producer Defendants admit that they are credited as (among other things) executive producers of *Making a Murderer* part 1 and *Making a Murderer* part 2, and the Producer Defendants admit that Ricciardi and Demos participated in the camera pool for the filming of the trial. The Producer Defendants deny the remaining allegations in paragraph 8.

## Statement of the Facts

9. The Producer Defendants presently lack sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 9, and on that basis deny them.

10. The Producer Defendants presently lack sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 10, and on that basis deny them.

11. The Producer Defendants presently lack sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 11, and on that basis deny them.

12. The Producer Defendants presently lack sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 12, and on that basis deny them.

13. The Producer Defendants admit that Teresa Halbach, who was a 25-year-old freelance photographer, was murdered on or about October 31, 2005. The Producer Defendants likewise admit that Steven Avery and Brendan Dassey were convicted for Halbach's murder and that those convictions are presently unreversed although there remain ongoing legal proceedings at least with respect to Avery. Except as expressly admitted, the Producer Defendants presently lack sufficient knowledge or information to form a belief as to the truth of the remaining allegations in paragraph 13, and on that basis deny them.

14. The Producer Defendants admit that Steven Avery was wrongfully convicted of first-degree sexual assault, false imprisonment, and attempted first degree murder in 1985. The Producer Defendants further admit that Avery served 18 years of his 32-year prison sentence before he was released after DNA evidence exonerated him and inculpated another, Gregory Allen. Except as expressly admitted, the Producer Defendants presently lack sufficient knowledge or information to form a belief as to the truth of the remaining allegations in paragraph 14, and on that basis deny them.

15.     The Producer Defendants admit that Netflix released *Making a Murderer* part 1 on or about December 18, 2015, and that the series presently remains available for streaming on Netflix. The series is objective, accurate, and significant. Except as expressly admitted, the Producer Defendants presently lack sufficient knowledge or information to form a belief as to the truth of the remaining allegations in paragraph 15, and on that basis deny them.

16.     The Producer Defendants admit that *Making a Murderer* was and continues to be marketed as—and in fact is—a non-fiction documentary that reflects an accurate, unbiased, and objective representation of the viewpoints, contentions, and experiences of those portrayed in the series. The Producer Defendants further admit that none of the ten episodes of *Making a Murderer* part 1 contained a disclaimer, but deny that any such disclaimer was necessary or appropriate. The Producer Defendants admit that they won multiple awards for *Making a Murderer*—including Emmy Awards for Outstanding Directing for a Nonfiction Program for Episode 10 and Outstanding Writing for a Nonfiction Program for Episode 1 and the 2017 Cinema Eye Honors Award for Outstanding Achievement in Nonfiction Films Made for Television. Except as expressly admitted, the Producer Defendants presently lack sufficient knowledge or information to form a belief as to the truth of the remaining allegations in paragraph 16, and on that basis deny them.

17.     The Producer Defendants admit that two Netflix executives received screen credits on a shared card as Executive Producers on episodes of *Making a Murderer* part 1. Except as expressly admitted, the Producer Defendants presently lack sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 17, and on that basis deny them.

18.     The Producer Defendants deny that the only materials that Demos and Ricciardi had when they pitched *Making a Murderer* to Netflix were three episodes in "rough cut." The Producer Defendants presently lack sufficient knowledge or information to form a belief as to the truth of the remaining allegations in paragraph 18, and on that basis deny them.

19.     The Producer Defendants deny the allegations in paragraph 19.

20. The Producer Defendants deny the allegations in paragraph 20.

21. The Producer Defendants admit that Exhibit A purports to contain excerpts of a transcript of *Making a Murderer* episodes 1 through 10, but deny that those excerpts accurately portray the *Making a Murderer* series. The Producer Defendants deny the remaining allegations in paragraph 21.

### 1994 or 1995 Telephone Call and Subsequent Alleged Cover-Up

22. The Producer Defendants admit that Exhibit B purports to contain excerpts of a transcript of Andrew Colborn's trial testimony, but deny that Exhibit B is accurate. The Producer Defendants deny the remaining allegations in paragraph 22.

23. The Producer Defendants deny the allegations in paragraph 23.

24. The Producer Defendants presently lack sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 24, and on that basis deny them.

25. The Producer Defendants presently lack sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 25, and on that basis deny them.

26. The Producer Defendants presently lack sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 26, and on that basis deny them.

27. The Producer Defendants deny the allegations in paragraph 27.

28. The Producer Defendants admit Stephen Glynn appears in the *Making a Murderer* series, which speaks for itself. The Producer Defendants otherwise deny the allegations in paragraph 28.

29. The Producer Defendants admit that they reviewed sworn deposition transcripts from Steven Avery's wrongful conviction lawsuit. Except as expressly admitted, the Producer Defendants deny the allegations in paragraph 29.

### Plaintiff's Call to Dispatch

30. The Producer Defendants presently lack sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 30, and on that basis deny them.

31. The Producer Defendants presently lack sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 31, and on that basis deny them.

32. The Producer Defendants presently lack sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 32, and on that basis deny them.

33. The trial transcripts from Avery's trial speak for themselves. The Producer Defendants deny the remaining allegations in paragraph 33.

34. The Producer Defendants deny the allegations in paragraph 34.

35. The Producer Defendants deny the allegations in paragraph 35.

36. The Producer Defendants deny the allegations in paragraph 36.

37. The Producer Defendants deny the allegations in paragraph 37.

38. The Producer Defendants admit that Ricciardi and Demos participated in the camera pool for the filming of the trial. The Producer Defendants presently lack sufficient knowledge or information to form a belief as to the truth of the allegations that "In truth, Plaintiff did not discover Halbach's SUV at another location and help others plaint it on Avery's property," and on that basis deny them. The Producer Defendants deny the remaining allegations in paragraph 38.

39. The Producer Defendants admit that they produced the *Making a Murderer* series, which speaks for itself. The Producer Defendants otherwise deny the allegations in paragraph 39.

40. The Producer Defendants admit that they produced the *Making a Murderer* series, which speaks for itself, and that they attended Steven Avery's trial in its entirety. The Producer Defendants presently lack sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 40 regarding the origin of the hole in the blood vial's rubber stopper and related issues, and on that basis deny them. The Producer Defendants otherwise deny the allegations in paragraph 40.

**The Key**

41. The Producer Defendants deny the allegations in paragraph 41.

42. The Producer Defendants presently lack sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 42, and on that basis deny them.

43. Paragraph 43 purports to characterize trial transcripts that are not before the Court and would speak for themselves. To the extent paragraph 43 contains factual allegations that require an answer, the Producer Defendants presently lack sufficient knowledge or information to form a belief as to the truth of those allegations, and on that basis deny them.

44. The trial transcripts are not before the Court and would speak for themselves. The Producer Defendants otherwise deny the allegations in paragraph 44.

45. The Producer Defendants admit that Ricciardi and Demos participated in the camera pool for the filming of the trial. The Producer Defendants presently lack sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 45 that Plaintiff and Lenk did not plant the key. The Producer Defendants otherwise deny the allegations in paragraph 45.

**MAM's Omission and Distortion of Material, Significant Evidence and Facts**

46. The Producer Defendants deny the allegations in paragraph 46.

47. The Producer Defendants deny the allegations in paragraph 47.

48. Producer Defendants deny the allegations in paragraph 48.

49. The Producer Defendants deny that *Making a Murderer* part 2 was ever released for purchase. The Producer Defendants admit that Laura Ricciardi and Moira Demos wrote and directed *Making a Murderer* part 2. The Producer Defendants admit that Netflix provided marketing and distribution for *Making a Murderer* part 2. The Producer Defendants deny the remaining allegations in paragraph 49.

50. To the extent Laura Ricciardi or Moira Demos gave an interview that is (or made comments that are) available publicly, those statements speak for themselves when in their proper context. To the extent paragraph 50 contains factual allegations that require an answer, the Producer Defendants deny those allegations.

51. The Producer Defendants deny the allegations in paragraph 51.

52. The Producer Defendants admit that they produced the *Making a Murderer* series, which speaks for itself. The Producer Defendants otherwise deny the allegations in paragraph 52.

53. The Producer Defendants admit that they produced the *Making a Murderer* series, which speaks for itself. The Producer Defendants otherwise deny the allegations in paragraph 53.

54. The Producer Defendants admit that they produced the *Making a Murderer* series, which speaks for itself. The Producer Defendants otherwise deny the allegations in paragraph 54.

55. The Producer Defendants presently lack sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 55, and on that basis deny them.

56. The Producer Defendants deny the allegations in paragraph 56.

## Claims for Relief

**Count I — Defamation — Actual Malice**

57. The Producer Defendants incorporate and restate their responses set forth in the preceding paragraphs of this Answer.

58. The Producer Defendants deny the allegations in paragraph 58.

59. The Producer Defendants deny the allegations in paragraph 59.

60. The Producer Defendants deny the allegations in paragraph 60.

61. The Producer Defendants deny the allegations in paragraph 61.

62. The Producer Defendants presently lack sufficient knowledge or information to form a belief as to the truth of the allegations concerning Netflix's viewership numbers for *Making a Murderer* and on that basis denies them. The Producer Defendants deny the remaining allegations in paragraph 62.

63. The Producer Defendants deny the allegations in paragraph 63.

64. The Producer Defendants deny the allegations in paragraph 64.

65. The Producer Defendants deny the allegations in paragraph 65.

66. The Producer Defendants deny the allegations in paragraph 66.

67. The Producer Defendants deny the allegations in paragraph 67.

**Count II — Negligence (In the Alternative)**

68. Pursuant to the Court's May 26, 2021 Order Granting in Part and Denying in Part Defendants' Motions to Dismiss, the Producer Defendants "need not respond to the negligence claims in the Second Amended Complaint." ECF No. 105 at 15 n.5.

69. Pursuant to the Court's May 26, 2021 Order Granting in Part and Denying in Part Defendants' Motions to Dismiss, the Producer Defendants "need not respond to the negligence claims in the Second Amended Complaint." ECF No. 105 at 15 n.5.

70. Pursuant to the Court's May 26, 2021 Order Granting in Part and Denying in Part Defendants' Motions to Dismiss, the Producer Defendants "need not respond to the negligence claims in the Second Amended Complaint." ECF No. 105 at 15 n.5.

71. Pursuant to the Court's May 26, 2021 Order Granting in Part and Denying in Part Defendants' Motions to Dismiss, the Producer Defendants "need not respond to the negligence claims in the Second Amended Complaint." ECF No. 105 at 15 n.5.

72. Pursuant to the Court's May 26, 2021 Order Granting in Part and Denying in Part Defendants' Motions to Dismiss, the Producer Defendants "need not respond to the negligence claims in the Second Amended Complaint." ECF No. 105 at 15 n.5.

73. Pursuant to the Court's May 26, 2021 Order Granting in Part and Denying in Part Defendants' Motions to Dismiss, the Producer Defendants "need not respond to the negligence claims in the Second Amended Complaint." ECF No. 105 at 15 n.5.

74. Pursuant to the Court's May 26, 2021 Order Granting in Part and Denying in Part Defendants' Motions to Dismiss, the Producer Defendants "need not respond to the negligence claims in the Second Amended Complaint." ECF No. 105 at 15 n.5.

75. Pursuant to the Court's May 26, 2021 Order Granting in Part and Denying in Part Defendants' Motions to Dismiss, the Producer Defendants "need not respond to the negligence claims in the Second Amended Complaint." ECF No. 105 at 15 n.5.

76. Pursuant to the Court's May 26, 2021 Order Granting in Part and Denying in Part Defendants' Motions to Dismiss, the Producer Defendants "need not respond to the negligence claims in the Second Amended Complaint." ECF No. 105 at 15 n.5.

**Count III — Intentional Infliction of Emotional Distress**

77. The Producer Defendants incorporate and restate their responses set forth in the preceding paragraphs of this Answer.

78. The Producer Defendants deny the allegations in paragraph 78.

79. The Producer Defendants deny the allegations in paragraph 79.

80. The Producer Defendants deny the allegations in paragraph 80.

81. The Producer Defendants deny the allegations in paragraph 81.

82. The Producer Defendants deny the allegations in paragraph 82.

**Prayer**

Plaintiff's prayer for relief does not require a response. To the extent that any response is required, the Producer Defendants deny that Colborn is entitled to any of the relief requested in his Second Amended Complaint or any relief whatsoever

**AFFIRMATIVE DEFENSES**

The Producer Defendants allege the following additional and affirmative defenses in response to the allegations in the SAC. The Producer Defendants reserve the right to amend this Answer and these defenses, and the Producer Defendants do not in any way agree or concede that they have the burden of proof or persuasion on any of these issues:

1. The SAC, and each claim alleged therein against the Producer Defendants, fails to state a claim on which relief can be granted.

2. Plaintiff's SAC is barred in whole or in part by the First and Fourteenth Amendments to the United States Constitution, and/or by Article I, § 3 of the Wisconsin Constitution, and/or by Article I § 1 of the California Constitution, and/or by the common law..

3. Plaintiff's SAC is barred in whole or in part by the doctrines of truth and/or substantial truth.

4. Plaintiff's SAC is barred in whole or in part because some or all of the challenged statements are not "of and concerning" the Plaintiff.

5. Plaintiff's SAC is barred in whole or in part because some or all of the challenged statements are not reasonably capable of the defamatory meaning attributed to them by Plaintiff.

6. Plaintiff's SAC is barred in whole or in part because some or all of the challenged statements are nonactionable under the subsidiary meaning doctrine.

7. Plaintiff's SAC is barred in whole or in part because some or all of the challenged statements are nonactionable under the First Amendment and Wisconsin and California law because they are pure opinion.

8. Plaintiff's SAC is barred in whole or in part because some or all of the challenged statements are nonactionable under the First Amendment and Wisconsin and California law because they are opinions or conclusions based upon disclosed facts.

9. Plaintiff's SAC is barred in whole or in part by the doctrine of fair comment.

10. Plaintiff's SAC is barred in whole or in part by the fair and true report privilege, as codified under Wisconsin Statutes section 895.05(1) and/or California Civil Code section 47(d).

11. Plaintiff's SAC is barred in whole or in part by the doctrine of neutral reportage.

12. Plaintiff's SAC is barred in whole or in part by the applicable statutes of limitations.

13. Plaintiff's SAC is barred in whole or in part by the doctrines of laches, waiver, estoppel, unclean hands, *in pari delicto*, or any combination thereof.

14. Plaintiff's SAC is barred in whole or in part because of Plaintiff's willful misconduct.

15. Plaintiff's SAC is barred in whole or in part because the Court does not have personal jurisdiction over the Producer Defendants.

16. Plaintiff's SAC is barred in whole or in part by the single publication rule.

17. Plaintiff's SAC is barred in whole or in part by California Civil Code section 47.

18. Plaintiff's SAC is barred in whole or in part because Plaintiff's SAC does not assert verifiably false statements or implications of fact by the Producer Defendants.

19. Plaintiff's SAC is barred in whole or in part because the Producer Defendants' conduct was reasonable, justified, in good faith, and done with non-willful and innocent intent, at all times. *Making a Murderer* was produced and distributed about a matter of public interest and concern without actual malice or ill will.

20. Plaintiff's SAC is barred in whole or in part because Plaintiff has not alleged special damages with sufficient particularity, and cannot prove special damages.

21. Plaintiff's SAC is barred in whole or in part by the incremental harm doctrine.

22. Plaintiff's SAC is barred in whole or in part to the extent that the SAC arises from conduct not attributable to the Producer Defendants, and any recovery by Plaintiffs should be reduced in proportion to the fault of others.

23. The SAC is barred in whole or in part because, without admitting that Plaintiff is entitled to any recovery, any recovery to which Plaintiff is entitled must be reduced by reason of Plaintiff's failure to mitigate his damages, if any.

24. Plaintiffs are not entitled to recover any punitive damages because the SAC, and each cause of action against the Producer Defendants therein and each form of relief sought therein, fails to plead facts sufficient to support the recovery of punitive damages.

25. Plaintiff is not entitled to recover any punitive damages because any such award would violate the Producer Defendants' rights to due process and/or equal protection under the law, under the United States, Wisconsin, and/or California Constitutions.

26. Plaintiff's SAC, and each cause of action against the Producer Defendants therein and each form of relief sought therein, is barred in whole or in part by the doctrine of consent.

27. Plaintiff's SAC is barred in whole or in part because the Producer Defendants' alleged conduct was justified and/or privileged under the circumstances.

28. Plaintiff's SAC is barred in whole or in part to the extent that Plaintiff assumed the risk of any alleged injuries and/or damages.

29. Plaintiff's third claim is barred because it impermissibly attempts to end-run the requirements of libel law by labeling his claims as "intentional infliction of emotional distress."

Dated: June 18, 2021

Respectfully submitted,

/s/ Kevin L. Vick

Kevin L. Vick
JASSY VICK CAROLAN LLP
800 Wilshire Boulevard, Suite 800
Los Angeles, CA 90017
T: (310) 870-7048
F: (310) 870-7010
kvick@jassyvick.com

James A. Friedman, SBN 1020756
GODFREY & KAHN, S.C.
One East Main Street
Suite 500
Madison, WI 53703-3300
T: (608) 284-2617
F. (608) 257-0609
jfriedman@gklaw.com

*Counsel for Defendant Laura Ricciardi, Moira Demos, and Chrome Media, LLC*