IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

ANDREW L. COLBORN,

        Plaintiff,

vs.

NETFLIX, INC.,
CHROME MEDIA, LLC, f/k/a
SYNTHESIS FILMS, LLC,
LAURA RICCIARDI, and
MOIRA DEMOS,

        Defendants.

Case No. 19-CV-484

# MEMORANDUM IN SUPPORT OF
# MOTION FOR ORDER IMPOSING SANCTIONS

## INTRODUCTION

As the Court is aware, Plaintiff, Andrew Colborn, filed this defamation action against Defendants Netflix, Inc., Chrome Media, LLC, Moira Demos, and Laura Ricciardi, to obtain redress for damage to his reputation arising out of the Defendants' "Making a Murderer" broadcast.[1]  As Plaintiff's Second Amended Complaint explains, Defendants falsely stated to a wide audience that in Plaintiff's prior employment as a law enforcement officer, he framed an innocent man who is now in jail for a murder.

Plaintiff has been attempting to obtain document discovery from the Defendants since nearly the inception of this case.  To date, nearly three years later, a small fraction of requested documents were produced late last week, only when it became apparent through a meet-and-

---

[1] For convenience and where appropriate, Defendants Chrome Media, LLC, Moira Demos, and Laura Ricciardi are sometimes hereafter referenced collectively as "the Chrome Media defendants."

confer request that a motion was imminent. Defendants still have not produced the majority of responsive documents, including, most significantly, communications between Netflix and the Chrome Media defendants relating to the production of the broadcast that is at issue in this case.

Under governing law, and as further explained below, sanctions are appropriate. Although the most severe sanction, default, would be supportable based on this record, Plaintiff requests that, at a minimum, the Court enter an order barring Netflix from contesting actual malice for purposes of these proceedings in order to bring a swift conclusion to the procedural gamesmanship surrounding this issue and to allow the remainder of the case to proceed to trial expeditiously.

## **PROCEDURAL HISTORY**

Plaintiff served his first set of discovery requests on Netflix with his state-court pleadings in early 2019. Declaration of Debra L. Bursik, ¶¶2-3 and Ex. 1. The first set of requests was comprehensive, and responses would have permitted Plaintiff to promptly analyze and evaluate pertinent materials in Netflix's possession. *See id.,* Ex. 1, pp. 4-8 (Interrogatories and Document Requests).

Defendants subsequently removed the action to federal court and filed two separate motions to dismiss. Dkt ## 1, 30, 34. Netflix's motion to dismiss was denied after a hearing in December 2019. Dkt #104. The Court also granted Plaintiff leave to file a second amended complaint. Dkt ##104, 105. Netflix filed a second motion to dismiss in early 2020. Dkt ##118-120.

After reviewing Netflix's second motion to dismiss, and in an effort to serve requests tailored specifically to the materials that Plaintiff believed were implicated by Netflix's motion arguments, Plaintiff served a second set of document requests on Netflix that specifically

targeted the raw footage of Plaintiff that was culled for the "Making a Murderer" series. Barker Decl., ¶2 and Ex. 1.

In a cover letter, Plaintiff's counsel stated:

> We are in receipt of the memorandum in support of Netflix, Inc.'s motion to dismiss Plaintiff's Second Amended Complaint. Within the body of your memorandum and declaration of Matthew Kelley, Netflix introduced considerable amounts of evidence not previously in the record and beyond our pleadings and allegations in the complaint.
> To date, no discovery has been produced. As I previously discussed by telephone with James and Leita, we do not see any reason that discovery should not proceed at this point, particularly as any pending motions likely will not be decided for many additional months. We are therefore requesting that you advise when you are available for a Rule 26(f) conference as soon as possible.
> We are enclosing additional discovery requests that pertain to the issues raised by the Defendants. We are also requesting you answer the first set of discovery, which has been outstanding for nearly a year, within thirty (30) days.

*Id.,* Ex. 1.

In late March 2020, Netflix's counsel discussed the status of discovery in a telephone conversation with Plaintiff's counsel. Barker Decl., ¶3. In that conversation, Netflix's counsel indicated that even if they wanted to produce the material requested in the second set of document requests, they could not do so because due to the pandemic, too many people were under lockdown or were sheltering in place in California. *Id.* The parties therefore preserved for the time being their dispute regarding Netflix's assertion that it should not have to produce the requested discovery until its second motion to dismiss was decided. *See* Dkt #164-1, pp. 1-2; Dkt #164-2. Netflix's counsel did not suggest at that time that Netflix did not have access to the materials, other than due to the pandemic. *Id.*

Together with its response to Netflix's second motion to dismiss, Plaintiff's counsel filed an expedited motion requesting that the Defendants be required to

3

participate in a Rule 26(f) conference in light of Defendants' continued refusal to do so. Dkt #133. The next day, without awaiting a response, the Honorable Pamela Pepper, then presiding in the case, entered an Order requiring the parties to submit a joint discovery plan within 30 days. Dkt #134. In the joint discovery plan that the parties thereafter submitted, Defendants described their position that they should not have to produce any discovery until the motions to dismiss filed by the respective Defendants were decided. Dkt #141, pp. 3-4.

Three months later, in early September 2020, Plaintiff's counsel sent an email message to Defendants' counsel requesting further clarification regarding the purported unavailability of the materials responsive to the second set of document requests. Barker Decl., Ex. 2. The message stated, in pertinent part:

> We are writing to revisit the issue of our request for production of, at a minimum, the raw footage . . . for the reasons explained at pages 65-66 of our brief in response to the most recent motion to dismiss.
>
> While we are aware that you take the position that these are not germane to the issues presented by your motion, we disagree. Moreover, we are aware of no rule that categorically bars discovery at this point in the case.
>
> Recently, the following article was brought to my attention:
>
> https://netflixtechblog.com/netflixs-production-technology-voltron-ab0e091d232d
> . . . .
>
> It asserts, among other things, that:
>
> Netflix adopted Google Cloud's G Suite in 2013. This means our entire corporate file sharing platform is Google Drive. Thousands of users, millions of files within the cloud – accessible everywhere.
>
> Given the likelihood, according to this article, that the information we seek is electronically available to any number of Netflix representatives and is likely accessible from anywhere, it appears that we may have been duped into understanding that this material cannot be safely produced during the pandemic.

4

> It has also been brought to my attention that Netflix, like many other television and movie producers, is poised to resume filming in September on some productions despite the conditions of the pandemic. Accordingly, even assuming that the raw footage is not readily available through electronic file-sharing, it appears unlikely that current conditions would prevent all access to the areas in which the materials are stored.
>
> I also note that I have received four separate document . . . productions in other cases just in the past several weeks. Therefore, other firms are finding ways to produce documents in a timely manner.
>
> We would appreciate a candid response as to whether the raw footage is technologically accessible and regarding its availability.
>
> If we cannot secure some basic cooperation in obtaining access to this material so that we can determine whether any of it may warrant a supplemental response to the pending motion to dismiss as to the merits, then in the interests of advocating for our client's interests, we will have to proceed to file a motion to compel after requesting a telephonic meet-and-confer session to discuss the issue.

Barker Decl., Ex. 2.

After waiting 25 days, Plaintiff's counsel again wrote to Netflix's counsel to follow up on the request. Barker Decl., Ex. 4. Netflix's counsel responded to the motion in an email message the next day, stating that while she would be willing to talk, she was "not sure there is much to gain from a phone call" because she had "confirmed since you emailed earlier this month that Netflix does not possess (and has never possessed) the raw footage you seek." Barker Decl., Ex. 5.[2]

Netflix's counsel also indicated that because Netflix continued to oppose any discovery prior to resolution of its second motion to dismiss, there was a "fundamental disagreement between the parties about how and when discovery should proceed." *Id.,*

---

[2] In response to requests that Plaintiff thereafter served on the Chrome Media defendants seeking the raw footage, Plaintiff likewise received no responsive materials. Barker Decl., Ex. 9.

5

Ex. 5. Netflix's counsel further suggested that Netflix was taking Judge Pepper's failure to "contact the parties" after the filing of the joint discovery plan as a sign that the Court agreed that Defendants could refuse to provide discovery until the motions to dismiss were decided. *Id.*

After a meet-and-confer conference, *see* Dkt #153 at p. 4, Plaintiff filed a motion for an order compelling initial disclosures. Dkt #153. At a December 2020 conference with the Court that occurred after judicial reassignment, the Court indicated that the Defendants did not have license to grant themselves a unilateral, self-imposed stay of discovery and noted that the Defendants should have sought a protective order. Dkt #169 at audio attachment, 35:20 into proceedings. The Court ordered Defendants to answer any pending or outstanding discovery within 14 days of the Court's determination of the pending motions to dismiss, noting that due to the circumstances of the "procedural morass" awaiting resolution due to the various motions to dismiss, the Court would require the defendants "to turn around responses promptly" after resolution of the motions. *Id*. at 36:25; *see also* Dkt #170, p. 1.

After the Court's decisions denying the Defendants' motions, Netflix provided written responses to Plaintiff's second set of document requests, but not the first set. Netflix takes the position that Plaintiff's first set of discovery is moot as a result of the removal to federal court. Barker Decl., Ex. 7; Dkt. 141, p. 3, n.2. It also became apparent, after the fact, that Netflix was ignoring the express request in Plaintiff's counsel's March 2020 letter that Defendants answer the first set of discovery requests on the ground that the letter did not include another copy of the requests. *See* Barker Decl., Ex. 1; *cf. id.,* Ex. 7.

6

In response to Plaintiff's second set of document requests, Netflix asserted numerous objections before reiterating that it allegedly does not have possession of responsive materials. *Id.,* Ex. 8. In a November 2020 response to an identical set of documents requests that were also served on the Chrome Media defendants, they likewise asserted numerous objections that leave a reader uncertain as to whether they claim to have none or only portions of the raw footage and whether they are withholding any or all of it due solely to their objections. *See id.*, Ex. 9.

With respect to Defendants' Court-ordered initial disclosures, which were to occur within 14 days of the decision on the motions to dismiss, the rules provide that a Defendant may provide "a copy—or a description by category and location" of the documents or materials. Fed.R.Civ.P. 26(a)(ii). Unsurprisingly, Defendants uniformly elected to describe, rather than produce. Barker Decl., Exs. 10, 11. When Plaintiff's counsel made a follow-up request for access to the materials described in the initial disclosures, Netflix's counsel responded that the materials would only be made available in response to a formal request and after entry of a protective order. Barker Decl., Exs. 12, 13.

Plaintiff sent a formal request the following day that mirrored the language of Netflix's initial disclosures. Barker Decl., Ex. 14. Plaintiff's counsel also requested that the proposed protective order be forwarded "as soon as possible" in order to facilitate the exchange of documents. Barker Decl., Ex. 15. A week later, counsel for the Chrome Media defendants forwarded the proposed protective order to Plaintiff's counsel, indicating that it was drafted to closely follow the model protective order contained in the Eastern District of Wisconsin local rules. *Id.*, Ex. 16. Netflix subsequently responded with written responses to the third set of discovery requests, indicating that it would produce responsive documents, subject to numerous objections, after entry of a protective order. *Id.,* Ex. 17. Following an exchange of

7

communications between counsel and revisions to the draft stipulation for the protective order that were made in light of the Court's comments at the July 28, 2021, status conference, the Court signed the protective order on August 19, 2021. Dkt. #189.

Plaintiff's counsel again asked Defendants' counsel on August 23, 2021, when they would be provided documents or access to them. Barker Decl., Ex. 18. Netflix's counsel advised that she would be forwarding a proposed electronic discovery protocol that would address such things as "Bates numbering," "production format," etc. Barker Decl., Ex. 19. However, when the document was received three days later, Plaintiff's counsel found that it purported to impose numerous technical specifications to both parties' discovery requests and contained a provision that would exempt Netflix from searching for or producing documents that it deemed not "available in a usable form in the ordinary course of business." Barker Decl., Ex. 20, proposed stipulation and order, ¶1.

After reviewing the proposed "protocol," Plaintiff's counsel wrote back to Netflix's counsel stating, in pertinent part:

> In the initial joint discovery plan, the parties advised the Court as follows:
>
> **Any issues concerning the disclosure, discovery or preservation of electronically stored information ("ESI"), including the form in which it should be produced.**
>
> At this time, the parties do not anticipate any special issues related to the disclosure or discovery of electronic information, but will promptly address any issues that do arise during the course of discovery.
>
> When Defendants insisted that an updated joint discovery plan be provided prior to the most recent scheduling conference, the foregoing assertion was reaffirmed by reference.
>
> Accordingly, we request that you produce responsive documents within a week of this communication under the procedures specified in the pertinent federal rule, Federal Rule of Civil Procedure 34(b)(E):

8

> (E) *Producing the Documents or Electronically Stored Information.* Unless otherwise stipulated or ordered by the court, these procedures apply to producing documents or electronically stored information:
>
> > (i) A party must produce documents as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request;
> >
> > (ii) If a request does not specify a form for producing electronically stored information, a party must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms; and
> >
> > (iii) A party need not produce the same electronically stored information in more than one form.
>
> If any special issues become apparent after we have an opportunity to review the production, we will discuss them with you at that time, as contemplated by the joint discovery plan.
>
> At a minimum, documents, such as contracts between the Defendants that are referenced in the Defendants' initial disclosures, are presumably stored either in hard copy or in simple pdf formats and should be able to be produced without further delay.
>
> If you are not able to produce all responsive documents within a week, please advise when you are available in the next week for a meet-and-confer call.

Barker Decl., Ex. 21 (emphasis in original).

Netflix's counsel responded that she believed the ESI protocol to be "standard" and expressed concerns that without it, Plaintiff would produce documents in formats that were inconvenient for Netflix. *Id.*, Ex. 22. She also indicated that some documents could be produced as soon as an ESI protocol was in place, while other documents would be produced "on a rolling basis." *Id.*

Plaintiff's counsel replied to the message, requesting a meet-and-confer conference and stating:

> The stated concerns regarding the format of Mr. Colborn's production do not present any reason for further delaying the production of the documents that we have requested pursuant to Rule 34.

9

> In addition, any proposed ESI protocol should have been referenced or presented along with the protective order so as to avoid further delays.

Barker Decl., Ex. 23.

Counsel for the parties met and conferred on September 16, 2021. Barker Decl., ¶29. Netflix's counsel indicated that Netflix would now make documents available without awaiting the ESI protocol, though Netflix still sought agreement to the protocol prior to any production by Plaintiff. *Id.* Counsel indicated that some documents would be produced shortly thereafter, and that Netflix anticipated providing the remaining responsive documents by mid-October. *Id.* According to Netflix's characterization of the foregoing procedural history, Netflix has "work[ed] diligently to collect and review documents," made "meaningful progress toward production," and kept Plaintiff apprised of its progress. *Id.,* Ex. 24. The day after the meet-and-confer call, Netflix produced seven documents, but not the bulk of the responsive materials. Barker Decl., ¶29. No further documents have been produced as part of the "rolling production" to date.

This memorandum is submitted in support of Plaintiff's request for an Order for sanctions against Netflix for its ongoing efforts to obstruct the progress of this case and to delay and deny access to information. These tactics have kept Plaintiff in the dark on the likely eve of motions for summary judgment that the Defendants have indicated they intend to file. Dkt #184 at p. 2, I. In evident preparation for its motion, Netflix's counsel has served interrogatories on Plaintiff that purport to require Plaintiff to essentially dissect Netflix's role in the production of each statement in the broadcast that is at issue in the case, *see* Barker Decl., Ex. 25 at Interrogatory No. 2 and Document Requests Nos. 2-3, at a time when Defendants have yet to provide a good-faith response to the majority of Plaintiff's discovery.

# ARGUMENT

## I. SANCTIONS ARE APPROPRIATE FOR DEFENDANTS' EXTENDED DISCOVERY DELAYS AND OBSTRUCTION.

The history of Plaintiff's attempt to obtain discovery from Defendants is lengthy, but it is simple to understand what has been happening: Defendants have been playing an extended game of "keep away" that is designed to ensure that Plaintiff does not receive discovery materials in time to oppose Defendants' threatened motions for summary judgment.

Dilatory tactics that culminate in a protracted failure to produce discovery thwart and undermine the judicial process, delay progress in cases, and waste the Court's and the parties' and their counsel's time. Therefore, severe sanctions may be imposed. A Court can issue sanctions under its inherent authority, including severe sanctions, such as dismissal and default, "to penalize and discourage misconduct." *See Ramirez v. T&H Lamont, Inc.,* 845 F.3d 772, 776 (7th Cir. 2016).

When a party engages in abusive and obstructive discovery tactics by failing to properly respond to discovery requests, the court may impose sanctions. *Dotson v. Bravo,* 202 F.R.D. 559, 570 (N.D. Ill. 2001), *aff'd,* 321 F.3d 663 (7th Cir. 2003). Recourse to sanctions is appropriate even where there is not a prior order, because federal discovery rules give ample notice to litigants regarding how to properly conduct themselves. *Id.* In a discovery disclosure system, designed to operate insofar as possible without judicial intervention, issuance of a court order in the first instance is unnecessary before sanctions can be issued. *Id.*

Similarly, under Rule 37 of the Federal Rules of Civil Procedure, sanctions for failure to comply with a discovery order include the discretion to deem facts as established, bar evidence, strike or dismiss pleadings, enter a default judgment, and find a party in contempt. *See* Fed.R.Civ.Pro. 37(b)(2)(A). "[A] default judgment may be awarded if it is a sanction

11

Case 1:19-cv-00484-BHL   Filed 09/24/21   Page 11 of 17   Document 191

proportional to the discovery failure." *Crown Life Ins. Co. v. Craig*, 995 F.2d 1376, 1383 (7th Cir. 1993). Default judgment is proportional "when there are willful or bad faith violations of discovery orders" or "a pattern of contumacious conduct or dilatory tactics . . . ." *Crown Life Ins. Co.,* 955 F.2d at 1383.

Where conduct falls outside the express terms of Rule 37 but evinces a pattern of abusive or bad faith litigation practices, it can be remedied by through Court's inherent powers. *See, e.g., Lewis v. Walmart Stores, Inc.*, 2006 WL 1892583 (N.D. Oklahoma) *3 (quotation and citations omitted) (unpublished opinion; attached).

Sanctions are not intended merely to punish specific conduct; they also serve the important purpose of deterring those "who might be tempted to such conduct in the absence of such a deterrent." *Nat'l Hockey League v. Metropolitan Hockey Club*, 427 U.S. 639, 643 (1976). Therefore, a court need not fire a "warning shot" by imposing sanctions less drastic than dismissal or default judgment where there is a clear record of delay or contumacious conduct. *Autexpo, S.p.A. v. Midas Intern. Corp.,* 1988 WL 67667, *3 (N.D. Ill. 1988) (unpublished decision; copy attached).

In *Autexpo, supra,* a district judge in this circuit adopted a magistrate's recommendation to impose the severe sanction of dismissal when a party "produced some, but not all" documents several months after the first request for those documents, then led the opposing party's counsel on what amounted to a wild goose chase for the remaining documents "spanning more than three years." 1988 WL 67667 at **1-4. The Court issued a severe sanction of dismissal based on a "sequence of events" that suggested a willful pattern of disregard for the court's orders and rules. *Id*. at *4.

12

Similarly, in *Houston v. C.G. Sec. Services, Inc.,* 820 F.3d 855 (7th Cir. 2016), the Seventh Circuit upheld sanctions that a district court imposed against a defendant whose conduct impeded, delayed, and frustrated the plaintiff's efforts to obtain discovery. *Id.* at 858-59. The Court explained that there was ample evidence that the defendant had acted in bad faith, noting that even though the party had been "alerted . . . to the need to search for and secure documents" through receipt of a non-party subpoena that had been served on it prior to the time that it was added as a defendant, it did not conduct an initial search as part of its discovery obligations until four months after it was added to the case. *Id.* In addition, the defendant failed to provide information concerning important issues in the case "in a timely manner" and "failed to alert" the plaintiff that it could not provide some of the information. *Id.*

In this case, the Court ordered that Defendants produce any "outstanding or pending discovery" within 14 days after the decision on the motions to dismiss. Dkt #170. The Court issued its decision on May 26, 2021. Dkt #176. Since that time, Defendants have complied in letter only with the Court's order. They have clung to hyper-technical formalities, such as by contending that they can utterly ignore Plaintiff's initial set of discovery requests despite a specific request, following removal, that they be answered. Barker Decl., Ex. 1. Defendants further have played a shell game with the raw footage of the Avery trial that was requested in the second set of discovery requests, either apparently contending that none of them it, or they have collectively failed to produce it.

With respect to the initial disclosures that were also to be provided within the 14-day window after the Court's decision, Netflix forced a formal request for its documents, then failed to timely produce them, first insisting that production be delayed pending a protective order that could have been negotiated long prior given that it mirrors the local rules' standard order; and

13

then, after entry of the protective order, purporting to condition production on further modifications to Defendants' discovery obligations. Most recently, Netflix's counsel has claimed that it has been working "diligently" to identify and collect documents that it purported to describe in its initial disclosures and that were formally requested three months ago.

In the time since Plaintiff served the discovery requests to obtain the documents described in Defendants' initial disclosures, it is difficult to understand how the responsive materials could not have been assembled in substantial part. During the time the parties were discussing the protective order, Defendants effectively obtained additional time for themselves to prepare at least the bulk of the responsive documents, after already operating under a self-declared stay of discovery *in toto* during the time that their serial motions to dismiss were pending. In light of these circumstances, a claimed need for additional time to produce documents to the middle of next month rings hollow.

Based on the history of this case, Plaintiff is likely to only be further prejudiced if he now takes at face value Netflix's eleventh-hour suggestion that all responsive documents will eventually be forthcoming. After their immensely successful and repeated rounds of "keep away," it is eminently foreseeable that Defendants will move on to "blind man's bluff," moving for summary judgment in a vacuum that has been carefully orchestrated by Defendants. *Cf. U.S. v. Proctor & Gamble Co.*, 356 U.S. 677, 682 (1958) (discovery rules are intended to ensure that civil court proceedings are "less a game of blind man's bluff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent."). The federal rules disfavor summary judgment by ambush, just as they disfavor trial by ambush. *See, e.g., Thornapple Assocs., Inc. v. Izadpanah*, 2014 WL 4542520, *3 (E.D. Va.) (unpublished decision; copy attached).

Defendants' pattern of non-cooperation, delay, and of arrogating to themselves the conditions under which they will respond to any discovery collectively represent an affront to the expectation of good-faith cooperation that underlies the federal discovery rules. Plaintiff respectfully submits that an order barring Netflix from contesting actual malice for purposes of these proceedings would be an appropriate sanction for the pattern of delay and obstruction evinced in response to Plaintiff's discovery efforts in this case. It would also prevent Netflix from benefiting from its own tactics of thwarting and delaying discovery regarding the very issue on which it intends to move for summary judgment. Due to the lengthy delays in producing these documents, Plaintiff has not had an opportunity to take party or witness depositions to obtain testimony that can be presented to the Court in opposition to any impending motions. Barker Decl., ¶30.

Under the principle of "fool me once, shame on you, fool me twice, shame on me," Plaintiff anticipates that he will be put in an even worse position if he awaits a now-belatedly promised production a month from now, only to determine that, more than likely, a less-than-complete production necessitates further meet-and-confer discussions, motion practice, and delay, and all while Netflix likely insists on pushing forward with a motion for summary judgment.[3] Sanctions are appropriate under the Court's inherent authority based on the pattern of willful delay and obstruction and in light of Defendants' flouting the spirit, if not the letter, of

---

[3] In addition, for reasons that Plaintiff intends to further explain in a supplemental memorandum (which requires filing materials produced under the protective order under seal, and which therefore require a pre-filing conference consistent with General Local Rule 79(d)(4)), Netflix's first motion to dismiss based on the issue of "actual malice" appears in retrospect to have been made based on the assumption that the motion would be granted without ever affording Plaintiff an opportunity to examine materials relevant to the factual assertions made in support of Netflix's argument that amendment would be futile under the circumstances of this case. Netflix leveraged that motion to paralyze discovery in the case thereafter.

the Court's December 2020 order, which was intended to ensure that Defendants produce discovery "promptly" after the Court's decision (issued four months ago) on the motions to dismiss.

## CONCLUSION

Under the federal rules, discovery should not be a Kafkaesque experience. When it is made into one, there should be appropriate consequences. For the reasons set forth above, Plaintiff respectfully requests that the Court enter an order barring Netflix from contesting "actual malice" for purposes of these proceedings.

Dated this 24th day of September, 2021.

                LAW FIRM OF CONWAY, OLEJNICZAK & JERRY, S.C.
                Attorneys for Plaintiff, Andrew L. Colborn


                By: /s/ George Burnett_____
                    George Burnett

**POST OFFICE ADDRESS:**
231 S. Adams Street
Green Bay, WI 54301
P.O. Box 23200
Green Bay, WI 54305-3200
Phone: (920) 437-0476
Fax: (920) 437-2868
State Bar No. 1005964

                GRIESBACH LAW OFFICES, LLC




                By: /s/ Michael C. Griesbach_____
                      Attorney Michael C. Griesbach
                      State Bar No. 01012799
                      Griesbach Law Offices, LLC
                      PO Box 2047
                      Manitowoc, WI 54221-2047
                      (920) 320-1358

SCHOTT, BUBLITZ & ENGEL, S.C.


By: /s/ April Rockstead Barker_____
April Rockstead Barker
State Bar No. 1026163
Schott, Bublitz & Engel, S.C.
640 W. Moreland Blvd.
Waukesha, WI 53188-2433
(262)-827-1700

17