1988 WL 67667
Only the Westlaw citation is currently available.
United States District Court, N.D. Illinois, Eastern Division.

AUTEXPO, S.p.A., Plaintiff,
v.
MIDAS INTERNATIONAL CORPORATION, Defendant.

No. 81 C 5818.
|
June 20, 1988.

MEMORANDUM AND ORDER

MORAN, District Judge.

*1 This action began on October 16, 1981, and on December 3, 1986, the magistrate recommended that pursuant to Rule 37(b)(2) of the Federal Rules of Civil Procedure this court dismiss Autexpo's complaint with prejudice, enter judgment of liability against plaintiff on defendant's counterclaim and assess attorney's fees and expenses against plaintiff as sanctions for its failure to cooperate in discovery. The magistrate found dismissal warranted since he concluded that plaintiff exhibited bad faith and willfulness in its conduct during discovery.

Plaintiff objects to the magistrate's recommendations, claiming that dismissal is too harsh a sanction and, further, that defendant also failed to cooperate during discovery. The record does not indicate that defendant's compliance with discovery was errant and, even if it was, this would not excuse plaintiff's deleterious discovery conduct. For the following reasons we adopt the magistrate's recommendation to dismiss the complaint and assess attorney's fees and expenses against plaintiff. We do not, however, enter a finding of liability against plaintiff on the counterclaim.

FACTS

Following negotiations in July 1979, plaintiff allegedly began promoting the sale of defendant's vehicles in Europe. On November 27, 1979, the parties entered into an agreement which provided that plaintiff would distribute defendant's recreational vehicles in Europe and the Middle East. Under the contract plaintiff agreed to market 250 of these vehicles over a one-year period (contract ¶¶ 2, 4). According to the complaint plaintiff ordered 47 vehicles the day the contract was signed, but the vehicles defendant delivered in accordance with this order were defective (cplt. ¶¶ 11, 14). Plaintiff asserts that other vehicles subsequently delivered by defendant were defective and that plaintiff was forced to pay for their repair.

Plaintiff filed a five-count complaint on October 16, 1981, charging defendants with fraud, breach of contract, breach of express and implied warranties and anticipatory repudiation of the contract. Defendant responded with a counterclaim, asserting that plaintiff had misrepresented the size and scope of its business as an automotive dealer and distributor. Both parties sought compensatory and punitive damages.

Defendant filed its first document request on December 7, 1982, and a second undated request calling for substantially similar documents sometime thereafter. On March 7, 1983, plaintiff produced some, but not all, of the documents in response to this request. It is undisputed that these requests were not complied with to defendant's satisfaction. Defendant claims that numerous requested documents are still outstanding and proffers the deposition testimony of plaintiff's counsel as evidence that during the August 1984 depositions of two Autexpo employees holding managerial positions (these were first scheduled in 1983 but held one-and-a-half years later due to delays by plaintiff), plaintiff agreed to produce the missing documents to save defendant a trip to Italy (Def.Appendix Vol. IV, exh. 2 at 133). On September 5, 1984, the parties held a discovery conference, at which time plaintiff agreed to produce certain documents in response to the December 7, 1982 request that remained outstanding. On August 30, 1985, defendant moved for an order compelling the production of documents requested in 1982 that plaintiff had not yet produced, despite the agreement of the parties at the discovery conference. *See* Def.Appendix Vol. IV, exh. 3. The parties briefed this motion and on September 30, 1985, Magistrate Balog entered an agreed order requiring that plaintiff produce

particular documents, most of which were sought by defendant in its December 7, 1982 request. The magistrate ordered the production of records of plaintiff's German subsidiary, Autexo GmbH, relevant to plaintiff's marketing of defendant's vehicles in Europe and other aspects of the contract; records documenting plaintiff's calculations of the lost profits it attributes to the failed contract; and shop records or other documentation indicating what plaintiff expended to repair defendant's allegedly defective vehicles.

On February 3, 1986, Magistrate Rosemond, to whom this matter had been reassigned, entered an agreed order that required plaintiff to produce on February 10, 1986, in Bolzano, Italy, documents relevant to its contract allegations. The parties do not dispute that the February discovery order called for production of documents substantially similar to those requested by defendant on December 7, 1982, and ordered produced by the magistrate in September 1985. Plaintiff agreed to produce these documents on February 10, to allow defendant two days to prepare for depositions of plaintiff's witnesses in Italy, scheduled to begin on February 12.

*2 On February 7, 1986, plaintiff's attorney informed his client he would not come to Italy to attend the depositions or supervise document production (Wilson aff. ¶ 12). He also told plaintiff that an order had been entered by the court. Plaintiff claims this was the first time it learned of the February 3 court order. Plaintiff did not request a copy of the order. Plaintiff's attorney also offered to contact other counsel in Italy if plaintiff thought it was necessary. Plaintiff instead sought the assistance of its own counsel, who was unfamiliar with American procedures.

Defendant, acting through counsel, arrived in Bolzano on February 10, the designated day, but was told that the documents had not been reviewed for production. Defendant returned to Bolzano on February 12 and deposed the four witnesses that the parties had agreed upon. In addition, defendant deposed Franco Baraldini, one of plaintiff's chief executives.[1] Defendant subsequently left Italy without the ordered documents.

After returning from Italy, defendant moved the court to sanction plaintiff for its failure to comply with the February 3 order. In the months that followed, plaintiff produced additional documents,[2] but defendant asserts that plaintiff still has not produced many of those previously requested and ordered. The magistrate heard oral argument on defendant's motion and asked defendant to submit a history of discovery, due August 15, 1986. The magistrate gave plaintiff 30 days to object or supplement that history. Plaintiff did not respond to either this history or the list detailing the expenses defendant claimed it had incurred on the Bolzano trip and in preparing its motion for sanctions.

On November 6, 1986, the magistrate recommended the assessment of attorney's fees and costs of the Bolzano trip against plaintiff. On December 3, 1986, he issued a second report. In addition to the measures recounted above, the magistrate recommended that plaintiff pay the expenses defendant incurred in moving for sanctions. Plaintiff timely filed three objections to the magistrate's December report. Plaintiff asserted that the sanctions of dismissal of the complaint and default judgment on the counterclaim were unduly harsh, that the report was based on the magistrate's perception of the merits of the case and not on plaintiff's conduct during discovery, and that the attorney's fees recommended were punitive and unreasonable.

DISCUSSION

I. *Standard of Review*
With eight exceptions, this court reviews determinations of pretrial matters under a clearly erroneous standard. *See* 28 U.S.C. § 636(b)(1)(A). In contrast, when a magistrate submits factual findings and recommendations regarding any of the eight exceptions, and a party objects, we make a "de novo determination of those portions of the [magistrate's] report ... to which objection is made." 28 U.S.C. § 636(b)(1)(B), (C). Relevant here is § 636(b)(1)(A)'s exception for decisions by a magistrate "to involuntarily dismiss an action."

*3 Generally, discovery-related motions, including motions for sanctions under Rule 37, are properly considered pretrial matters covered by § 636(b)(1)(A). *Zises v. Dept. of Social Services,* 112 F.R.D. 223, 226 (E.D.N.Y.1986). However, where, as here, the sanctions operate as involuntary dismissals, the exception for motions "to involuntarily dismiss an action" applies and we employ a *de novo* standard of review. *See id.* (Fed.R.Civ.P. 72 distinguishes between dispositive and non-dispositive pretrial matters and requires *de novo* review when pretrial decision is dispositive); *Donovan v. Gingerbread House, Inc.,* 106 F.R.D. 57, 58 (D.Colo.1985) (magistrates lack Article III power to involuntarily dismiss action brought in district court).

*But see Devore & Sons, Inc. v. Aurora Pacific Cattle Co.,* 560 F.Supp. 236, 238–39 (D.Kan.1983) (since Rule 37 dismissal is made on merits it is within magistrate's authority under § 36(b)(1)(A)). *See also Johnson v. Old World Craftsmen, Ltd.,* 638 F.Supp. 289, 291 (N.D.Ill.1986) (clearly erroneous standard applies to non-dispositive pretrial motion pursuant to Fed.R.Civ.P. 72(a) and 28 U.S.C. § 636(b)(1)(A)).

While the recommendations of dismissal of the complaint and default judgment on the counterclaim are subject to *de novo* review, we apply the clearly erroneous standard in reviewing the magistrate's recommendations that costs and attorney's fees be assessed against plaintiff. *See* 28 U.S.C. § 636(b)(1)(A).

II. *Rule 37 Sanctions*
1. *Dismissal and Default Judgment*

Under Rule 37 a court may impose sanctions for a litigant's failure to cooperate during discovery. Section (b) authorizes the court to dismiss an action or render a default judgment if "a party ... fails to obey an order to provide or permit discovery."[3] Dismissal pursuant to Rule 37(b)(2) requires a showing of willfulness, bad faith or fault on the part of the non-complying litigant. *National Hockey League v. Metropolitan Hockey Club, Inc.,* 427 U.S. 639, 640 (1976) (*per curiam*); *Societe Internationale v. Rogers,* 357 U.S. 197, 212 (1958); *Roland v. Salem Contract Carriers, Inc.,* 811 F.2d 1175, 1179 (7th Cir.1987). The Supreme Court recognized in *National Hockey League,* 427 U.S. 643, and the Seventh Circuit emphasized in *Roland,* 811 F.2d at 1179–80, the importance of the district court's power of dismissal under Rule 37 to penalize those engaging in delinquent discovery conduct and to deter others who, in the absence of such a sanction, would be tempted to exploit the discovery process through non-compliance.

The Seventh Circuit has observed that "[a] default judgment, like a dismissal, is a harsh sanction which should usually be employed only in extreme situations or when less drastic sanctions have proven unavailing." *Ellingsworth v. Chrysler,* 665 F.2d 180, 185 (7th Cir.1981). *Accord Passarella v. Hilton International Co.,* 810 F.2d 674, 676 (7th Cir.1987) (default judgment); *Schilling v. Walworth County Park & Planning Commission,* 805 F.2d 272, 275 (7th Cir.1986) (Rule 41(b) dismissal). "A district court is not required to fire a warning shot" and impose sanctions less drastic than dismissal or default judgment before entering these judgments. *Hal Community Cycles Management Co. v. Kirsh,* 825 F.2d 1136, 1139 (7th Cir.1987). Absent a clear record of delay or contumacious conduct, however, the Seventh Circuit has instructed us to consider sanctions less severe than dismissal or default and "explain, where not obvious, their inadequacy for promoting the interests of justice." *Schilling,* 805 F.2d at 275 (Rule 41(b) dismissal of *pro se* party's case). *Accord Cohen v. Carnival Cruise Lines, Inc.,* 782 F.2d 923, 925 (11th Cir.1986) (Rule 41(b) dismissal improper where there is no evidence of clear delay and no consideration of less drastic sanctions for non-compliance).

*4 Here there is no doubt that the record reveals a history of clear delay in plaintiff's discovery conduct. Defendant filed its first document production request on December 7, 1982. An undated request for substantially the same materials followed, but plaintiff did not fully comply, despite numerous commitments to do so. *See, e.g.,* Def.Appendix Vol. IV exhs. 2, 3 (plaintiff's pledges to produce outstanding documents requested in 1982). On September 30, 1985, the magistrate issued an agreed order calling for production of many of the documents sought three years earlier. Then on February 3, 1986, a second agreed order entered by the court provided that plaintiff would produce in Bolzano, Italy, the documents twice requested and once ordered, though not yet produced. This order brought no better results than its predecessor, and defendant returned from Bolzano without the documents. To this date plaintiff has failed to produce certain documents that were the subject of defendant's 1982 request. Were plaintiff's failure to produce in Bolzano an isolated incident we might well find dismissal an unduly harsh sanction. However, this sequence of events, spanning more than three years, suggests a "willful pattern of disregard for the court's orders and rules," *Ellingsworth,* 665 F.2d at 185, and calls for the sanction of dismissal. *See Passarella,* 810 F.2d at 677; *Roland,* 811 F.2d at 1180. We note also that plaintiff's conduct in twice agreeing to, yet not complying with, the court's discovery orders evinces bad faith warranting dismissal.

Plaintiff claims that it was unaware until February 7 that an order had been issued on February 3, but this ignores the fact that the order generally restated the September order and the September order was based on earlier document requests. Thus plaintiff cannot complain that it had no notice that certain document production was required. Further, on February 7, three days before defendant was to arrive in Bolzano and five days before the depositions were scheduled to begin, plaintiff was informed that the court had issued an order (Wilson aff. ¶ 14). There is no indication that plaintiff inquired as to the

terms of the order so that it could comply either by the time defendant reached Bolzano or during the time that the depositions were conducted, or at any time thereafter. In light of the fact that the burden of moving the case to trial rests with plaintiff, *Washington v. Walker,* 734 F.2d 1237, 1238 (7th Cir.1984); *Jafree v. Scott,* 590 F.2d 209, 211 (7th Cir.1978), such inaction on plaintiff's part indicates bad faith and fault.

Plaintiff claims that it was not aware that the requests or subsequent court orders required the production of the GmbH documents or the lost profits calculations. Again we reiterate that the burden is on plaintiff to bring the action to trial, and that includes requesting clarification of the court's directions, if need be. Further, plaintiff states that production of the shop records documenting the repair work done on defendant's allegedly defective vehicles is impossible since these records were not retained by the company that made the repairs. The record indicates that plaintiff searched for these records only after defendant's trip to Bolzano (Wilson aff. ¶ 23)—over three years after the records were first requested. This court thus infers that plaintiff's extremely protracted delay in requesting the shop records has led to their permanent unavailability, and without such records defendant would be severely prejudiced in its ability to present a defense to plaintiff's warranty claims. We thus find further reason to adopt the magistrate's sanction recommendation of dismissal. *See Shea v. Donohoe Construction Co.,* 795 F.2d 1071, 1075 (D.C.Cir.1986) (where errant behavior severely prejudices other party's ability to present its case dismissal appropriate).

*5 Not only has the excessive delay barred defendant from access to certain documents, but the length of time over which this case has progressed militates against imposing warning sanctions rather than dismissal. *See Schilling,* 805 F.2d at 276–78 (analyzing decisions holding less drastic sanctions appropriate where case is young). *Compare Schenck v. Bear, Stearns & Co., Inc.,* 583 F.2d 58, 60 (2d Cir.1978) (young case calls for sanctions less drastic than dismissal) *with Link v. Wabash Railroad Co.,* 370 U.S. 626 (1962) (dismissal of six-year old case proper). While both parties have produced documents and taken depositions over the more than six years between 1981, when the complaint was filed, and the present, the fact that there has been some discovery activity does not neutralize plaintiff's discovery abuses. While plaintiff was not specifically warned that dismissal would follow if it did not cooperate with discovery, *cf. Tolliver v. Northrop Corp.,* 786 F.2d 316 (7th Cir.1986), plaintiff could not reasonably believe that disregard of two document requests and two court orders would result in no penalty. We find plaintiff's discovery conduct sufficiently obstructionist to merit the harsh sanction of dismissal, as recommended by the magistrate.

Plaintiff implies that its American counsel at the time is to blame for its lack of compliance with the February discovery order.[4] First, plaintiff asserts that counsel did not send it a copy of the order after it was issued and, second, plaintiff submits evidence showing that at the last minute its American counsel decided not to attend the Bolzano depositions or aid in production of documents there or, indeed, come to Italy at all. While the conduct plaintiff describes may state a malpractice case against its American counsel (at this time), *see Roland,* 811 F.2d at 1180, *Tolliver,* 786 F.2d at 318, in this circuit a litigant is bound by the acts of his attorney. *Tolliver,* 786 F.2d at 319 (citing *Link,* 370 U.S. at 633–34). It would be unfair to penalize defendant for plaintiff's choice of counsel and "[i]f the lawyer's neglect protected the client from ill consequences, neglect would become all too common." *Id.* Further, our power to sanction would be practically worthless if we could not hold a litigant responsible for the acts of his attorney, where these acts meet Rule 37's requirements of willfulness, bad faith or fault. *See Roland,* 811 F.2d at 1180. Imposing sanctions under Rule 37 on parties failing to adhere to a court order is designed to punish the conduct of wrongdoers who harm complying litigants through their misconduct, to induce the cooperation during discovery of litigants and lawyers, and to deter those who would otherwise be tempted to ignore court orders. Here dismissal of the complaint will meet these goals, and this sanction is justified given plaintiff's deleterious conduct. We therefore adopt the magistrate's recommendations in this regard.

In contrast to Autexpo's posture on the complaint, as defendant on the counterclaim the burden is not on Autexpo to move these claims to trial. Instead, this burden rests with Midas. Further, in contrast to its position in filing the complaint, in which Autexpo seeks to vindicate its rights in this forum on the counterclaim, it is Midas who turns to this court to protect its interests. Autexpo's bad faith in seeking relief here and then failing to comply with the procedures instituted by this court to determine whether such relief is warranted, is substantively different from the bad faith exhibited by Autexpo as defendant in Midas' counterclaim action against it, where it is Midas who actively seeks relief and Autexpo who must defend. In these circumstances we hold that a default judgment of liability against Autexpo on the counterclaim is an inappropriate sanction. Not only do the parties' different postures on the claim and counterclaim dictate our holding, but the record indicates that the documents Autexpo failed to produce relate primarily to the allegations contained in its complaint and not to the

claims included in Midas' counterclaims. While Midas' ability to defend has been impaired by Autexpo's deleterious conduct, there is no similarly compelling evidence in the record that Midas' ability to pursue its counterclaim has been equally damaged. We therefore hold that Midas may still pursue its claims and that Autexpo has the right to defend against them.

*6 2. *Attorneys' Fees and Costs*

Plaintiff claims that the allocated expenses are excessive since defendant conducted five depositions during the Bolzano trip and pursued other business while in Italy. We disagree.

While defendant made the best of an unsatisfactory situation by taking the depositions, the trip was arranged in such a way as to allow defendant to review relevant documents before deposing the witnesses. Further, there is no support in the record for plaintiff's contention that defendant engaged in business matters extraneous from this case while in Italy. Thus we adopt in full the magistrate's recommendation regarding the assessment of attorney's fees and costs against plaintiff for the Bolzano trip and defendant's preparation of its motion for sanctions. These expenses are to be paid within 30 days of this order.

*CONCLUSION*

For the foregoing reasons we dismiss the complaint and order plaintiff to pay the costs and attorney's fees recommended by the magistrate within 30 days of this ruling.

**All Citations**

Not Reported in F.Supp., 1988 WL 67667

Footnotes

1   The parties dispute the propriety of defendant's conduct in deposing Mr. Baraldini and there is support in the record for both of their positions. Plaintiff asserts that defendant told Baraldini that the court had ordered resumption of his deposition, when in fact it had not, thereby coercing him into giving testimony he was not required to provide. Defendant claims that Baraldini offered to make a statement and was not misled into being deposed against his will. We do not find this dispute relevant to our determination of whether plaintiff's discovery conduct merits the imposition of sanctions and we do not resolve it here.

2   In particular, the Coachmen documents have concerned the parties and the magistrate. These documents would allegedly reveal that plaintiff negotiated with another company, Coachmen, for the right to distribute its automotive products in Europe. At worst, claims defendant, this shows plaintiff wanted to get out of the contract between it and defendant, so that plaintiff could distribute for Coachmen. At the least, according to defendant, it shows that Mr. Baraldini is not a credible witness, since he testified that he, as plaintiff's representative, remained "loyal" to defendant and did not enter into an arrangement whereby plaintiff would act as distributor for Coachmen. Plaintiff responds to both assertions with persuasive arguments. First it asserts it was not contractually bound to distribute exclusively for defendant, and its documented negotiations with Coachmen reveal that it did not intend to enter into an agreement which would preclude it from distributing for defendant. The record supports these assertions. As to defendant's second claim, plaintiff points to deposition testimony that indicates a communication gap between defendant's counsel and Mr. Baraldini. Specifically, the word "loyal" appears susceptible of several meanings and this may account for the problem that defendant labels "credibility." This does not however explain entirely Mr. Baraldini's inconsistent testimony regarding the existence of negotiations between plaintiff and Coachmen. In any case, we find this dispute of little relevance either to defendant's motion for sanctions or to the claims and counterclaims before the court. Defendant counterclaims that plaintiff did not have the distribution network it claimed to have. Defendant does not assert that plaintiff created a reason to breach its contract with defendant so that it could contract with Coachmen. Further, defendant has proffered no evidence indicating that for plaintiff to contract with Coachmen such a breach was necessary. Thus, while the Coachmen documents add a level of intrigue to this case, they do not appear relevant and the court will not consider whether plaintiff's failure or inability to produce them supports the magistrate's finding that plaintiff's discovery conduct is sanctionable.

3   Rule 37(b)(2) provides in pertinent part:
    If a party ... fails to obey an order to provide or permit discovery ... the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:
    (C) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party.

Fed.R.Civ.P. 37(b)(2).

4   We note that plaintiff's present counsel was not its American counsel during the period of time discussed in this opinion.

---

**End of Document** © 2021 Thomson Reuters. No claim to original U.S. Government Works.