# IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF WISCONSIN
### GREEN BAY DIVISION

ANDREW L. COLBORN,

    **Plaintiff,**

  **vs.**

NETFLIX, INC.; CHROME MEDIA
LLC, F/K/A SYNTHESIS FILMS, LLC;
LAURA RICCIARDI; AND MOIRA
DEMOS,

    **Defendants.**

Civil No.: 19-CV-484-BHL

## DEFENDANT NETFLIX, INC.'S OPPOSITION TO
## PLAINTIFF'S MOTION FOR ORDER IMPOSING SANCTIONS
## <u>AND CROSS-MOTION FOR AN AWARD OF ATTORNEYS' FEES</u>

Defendant Netflix, Inc., ("Netflix") by and through its undersigned attorneys, hereby

submits its opposition to Plaintiff Andrew Colborn's Motion for Order Imposing Sanctions (Dkt.

190), and respectfully moves this Court, pursuant to 28 U.S.C. § 1927, for an order directing

Plaintiff to reimburse Netflix for its fees and costs incurred in responding to this motion.

## <u>INTRODUCTION</u>

Plaintiff Andrew Colborn's Motion for Sanctions is perplexing. Colborn does not and

cannot identify any discovery rule or order of this Court that Netflix has violated. To the

contrary, Colborn's own memorandum and exhibits establish that Netflix has complied with the

Federal Rules of Civil Procedure and this Court's orders and that Netflix's counsel has conferred

with Colborn's counsel in good-faith efforts to address discovery issues without the Court's intervention.

Netflix believed that those efforts were on track before being blindsided by this motion. Indeed, Colborn did not mention any plan to move for sanctions when counsel for the parties spoke on September 16—at which time Netflix's counsel advised that its document production would be largely complete by mid-October. If Colborn believed that Netflix's discovery efforts were nonetheless somehow deficient, the logical next step was a motion to compel. Instead, Colborn brought a motion that seeks to deprive Netflix of a *constitutional* defense, forcing it to file this opposition, even though it expects its production to be complete before this motion can even be decided.

Colborn's improper motion should be denied and Netflix should be awarded its reasonable attorneys' fees and costs in responding to it.

## FACTUAL AND PROCEDURAL BACKGROUND

There are only a handful of dates the Court needs to know to understand why Colborn's motion should be dismissed. The first is ***May 14, 2020***, when the parties conferred pursuant to Fed. R. Civ. P. 26(f). This was the event that triggered Plaintiff's ability to serve discovery pursuant to Fed. R. Civ. P. 26(d)(1). However, Colborn did not actually serve any discovery after the Rule 26(f) conference for another *13 months*, waiting until ***June 16, 2021*** to mail discovery that Netflix did not receive until June 24. This is the second date the Court should bear in mind, which occurred shortly after it denied Defendants' pending dispositive motions on May 26, 2021. The third date the Court should bear in mind is ***July 19, 2021***, when Netflix timely served written responses and objections to Plaintiffs' June 16 discovery requests. And the fourth and final pertinent date is ***September 16, 2021***, when the undersigned represented to Colborn's

counsel that they had been identifying, collecting, and reviewing potentially relevant documents for several weeks and that Netflix would soon begin producing non-privileged documents responsive to the June 16 requests on a rolling basis, with the goal of completing the bulk of its production by mid-October 2021, nearly six months before the discovery period ends on April 8, 2022.

This chronology alone shows why Colborn's Motion is meritless—and indeed frivolous. Yet because his Memorandum's description of the factual and procedural background of this dispute is inaccurate and incomplete in several respects, Netflix corrects the record and provides a more fulsome recounting of this case's history, below.

On December 18, 2015, Netflix released for worldwide distribution on its streaming video service the documentary series "Making a Murderer" ("MaM"). *See* Second Am. Compl. ("SAC") ¶ 15 (Dkt. 105). One day before the expiration of the three-year statute of limitations, Colborn filed suit in state court in Manitowoc County, asserting defamation and related claims arising from MaM against Netflix and other defendants including the filmmakers who made the documentary, Laura Ricciardi and Moira Demos, and their independent production company, Chrome Media (formerly known as Synthesis Films). *See* Compl. (Dkt. 1-1). Before attempting service on any defendant, Colborn filed an amended complaint—the First Amended Complaint ("FAC")—in state court on March 4, 2019, dropping all defendants except Netflix and the "Producer Defendants"—Ricciardi, Demos, and Chrome. *See* Am. Compl. (Dkt. 1-2). When serving the FAC on Netflix, Colborn also delivered to it eight interrogatories and 28 requests for production of documents pursuant to Wisconsin's rules of civil procedure, referring to them as his "first" set of discovery requests. *See* Decl. of D. Bursik in Supp. of Mot. for Sanctions Ex. 1 (Dkt. 193-1).

Netflix removed to this Court on April 3, 2019, *see* Notice of Removal (Dkt. 1), at which point the case became governed by the Federal Rules of Civil Procedure, including Rule 26(d), which governs the timing and sequence of discovery. Netflix moved to dismiss the FAC under Rule 12(b)(6) on May 9, 2019 (Dkt. 30), and the Producer Defendants moved to dismiss pursuant to Rule 12(b)(5) the following day (Dkt. 34). Judge Pepper denied Netflix's motion to dismiss at the conclusion of a hearing on December 19, 2019. *See* Court Minutes and Order (Dkt. 104).

Colborn filed the operative Second Amended Complaint on January 3, 2020. Netflix moved to dismiss the SAC for failure to state a claim on March 3, 2020 (Dkt. 118). Briefing on that motion concluded with Netflix's reply, filed June 1, 2020 (Dkt. 140).

Meanwhile, during briefing on Netflix's motion to dismiss the SAC and while the Producer Defendants' motion to dismiss remained pending, Colborn improperly[1] served, on March 12, 2020, what was captioned as a "second" set of requests for production of documents that Colborn's counsel asserted Plaintiff needed to respond to Netflix's dispositive motion. *See* Decl. of A. Barker in Supp. of Mot. for Sanctions Ex. 1 ("Barker Sanctions Decl.") (Dkt. 192-1); *see also* Mem. in Support of Mot. for Sanctions ("Mem.") at 3 (Dkt. 191). In discussions during the following weeks, Leita Walker—who at the time represented all Defendants in this matter— stated Defendants' position that discovery to support an opposition to a motion to dismiss was unnecessary and unwarranted and noted that the then-newly declared pandemic and measures to combat it made discovery quite difficult as a practical matter. Decl. of Leita Walker ("Walker Decl.") ¶ 2; *see also* Mem. at 3; Decl. of A. Barker in Supp. of Mot. to Compel Ex. 1 at 1-2 (Dkt. 164-1) (relevant email exchange).

---

[1] As discussed in further detail below, these requests were improper because the parties had not met and conferred pursuant to Fed. R. Civ. P. 26(f) and thus, pursuant to Fed. R. Civ. P. 26(d)(1), the discovery period had not commenced.

Along with his opposition to the motion to dismiss the SAC, Colborn moved for an order directing the parties to hold a Rule 26(f) conference, which Judge Pepper granted in an order dated May 1, 2020 (Dkt. 134). The parties held that conference on May 14, 2020 and filed the required report with the Court on June 1, 2020 ("Joint Rept.") (Dkt. 141). Netflix noted in the report its position that it had no obligation to respond to Colborn's "first" sets of discovery requests because they were not served pursuant to the federal rules. *Id.* at 3 n.2; *see also* Mem. at 6.

Netflix also reiterated in the joint report its position that discovery should be stayed until the pending motions to dismiss were decided, citing Judge Pepper's observation that courts often do not set a discovery schedule until after a motion to dismiss is decided because "if the court grants the motion to dismiss, the parties would have wasted time and expense conducting discovery." Joint Rept. at 3 (quoting *Slottke v. Wis. Dep't of Indus.*, No. 16-cv-1392-PP, 2017 U.S. Dist. LEXIS 6192, at *2 (E.D. Wis. Jan. 17, 2017)). Netflix suggested that the Court should order initial disclosures to be exchanged within 30 days of its final rulings on the then-pending motions to dismiss. *Id.*

The May 1, 2020 Order stated that the Court "will not set dates for a final pretrial conference or trial until dispositive motions have been decided" and that "[i]f, after review of the Rule 26(f) report, the court decides that a Rule 16 scheduling conference is necessary, it will contact the parties to set a hearing." May 1, 2020 Order at 2. Judge Pepper did not contact the parties to set a Rule 16 conference, nor did she issue any order regarding discovery, before the case was transferred to this Court.

Nevertheless, Colborn's counsel continued to push for disclosure of raw footage, raising the issue again in an email in September 2020. In response, and although she was under no

obligation to do so, Ms. Walker told Ms. Barker that she had confirmed that Netflix did not have, and had never had, the raw footage of the Avery trial that Colborn sought. Mem. at 5; *see also* Barker Sanctions Decl. Ex. 5 at 1.

On October 21, 2020, the day before a scheduled hearing in this case, Colborn moved this Court for an order directing Defendants to serve initial disclosures pursuant to Rule 26(a) and "to respond to Plaintiff's initial discovery requests." Mot. for an Order Compelling Initial Disclosures at 3 (Dkt. 153). In response, Netflix informed the Court that it did not and does not have raw footage of Avery's trial and reiterated its position that Colborn's seeking discovery in support of his opposition to Netflix's motion to dismiss was  unnecessary and unwarranted. *See* Def. Netflix, Inc.'s Opp. to Pl.'s Mot. for Order Compelling Initial Disclosures ("Opp. to Mot. to Compel") at 1-5 (Dkt. 157).

At a subsequent hearing on December 17, 2020, this Court denied Colborn's motion in substantial part and ordered Defendants to "provide disclosures and responses to any overdue or pending discovery requests within 14 days of the Court's final ruling on the pending motions to dismiss." Court Minutes and Order at 2 (Dkt. 170).

The Court also ordered the parties to mediation, which did not result in settlement. *See* Minute Entry of Mar. 10, 2021 (Dkt. 175).

Following the unsuccessful mediation, and anticipating that opposing counsel might interpret the Court's December statements regarding discovery to extend to the requests attached to the original, state court complaint, Ms. Walker emailed the following to opposing counsel on March 15, 2021:

> With the mediation behind us, we are cognizant of Judge Ludwig's statement back in December that discovery responses will be due two weeks after he rules on the pending motions to dismiss, should any portion of the case survive. So as to avoid any surprises, we wanted to put you on notice that Netflix

plans to respond only to Plaintiff's Second Request for Production of Documents to Netflix, Inc., which were served March 12, 2020. We will also provide initial disclosures within two weeks of the court's ruling, assuming the case against Netflix is not dismissed in its entirety.

We do not plan to respond to the first set of discovery requests served with the state court complaint nearly two years ago. Those discovery requests were rendered null and void by the removal to federal court. If you wish to properly serve those requests pursuant to the federal rules, we will answer them in the time frame provided by the rules or two weeks after the court rules on the pending motions, whichever is later. We do hope that, before serving those requests you'll consider developments in the case over the past two years and tailor the requests accordingly so as to simplify matters and avoid unnecessary disputes.

Walker Decl. Ex. A. Seven months later, opposing counsel has never responded to this email or attempted to properly serve the "first" set of discovery. Walker Decl. ¶ 5.

After this Court denied both pending motions to dismiss on May 26, 2021 (Dkt. 176), Netflix timely served its Rule 26(a) initial disclosures and responses to Colborn's "second"[2] set of document requests on June 9, 2021, within the 14-day deadline set in the December 2020 order. In accordance with Rule 26(a)(1)(A)(ii), Netflix described by category and location the materials in its possession it may use to support its defenses. Mem. at 7.[3]  Its responses to the "second" set of discovery requests—which sought only the raw footage of Avery's trial—Netflix stated again that it does not have and has never had that footage in its possession.

Colborn's counsel mailed what was captioned as his "third" request for production of documents to counsel for Netflix on June 16, 2021, which counsel for Netflix received on June 24, 2021. *See* Barker Sanctions Decl. Ex. 24 at 1. Netflix timely served its responses and

---

[2] Netflix's responses reiterated that Colborn's "first" sets of discovery requests have not been properly served pursuant to the Federal Rules of Civil Procedure.

[3] Likewise, Colborn did not produce any documents listed in his initial disclosures, instead providing docket numbers of exhibits to Netflix's pleadings and referring to a website where transcripts of the Avery trial are available.  Colborn's disclosures also included boilerplate language stating that "[e]xcept in cases with very few documents, most parties will disclose categories and location rather than producing all the documents."

objections to those discovery requests on July 19, 2021, including a note reiterating that Colborn's "first" requests were never properly served. *See id.* Ex. 17 at 1 n.1. Netflix stated it would produce responsive documents, subject to its objections, after the entry of a suitable protective order. *Id.* at 2; *see also* Mem. at 7. Colborn's counsel has not contested the scope of those responses and objections. Walker Decl. ¶ 7.

The parties again met and conferred and filed a supplemental Rule 26(f) report on July 27, 2021 (Dkt. 184), in advance of the Rule 16 conference this Court held on July 28, 2021. After that conference, this Court adopted the discovery schedule proposed by the parties, including a cutoff of fact discovery on April 8, 2022 and a deadline for motions for summary judgment of May 13, 2022. *See* Scheduling Order (Dkt. 187).

Meanwhile, on June 23, 2021, Kevin Vick, counsel for the Producer Defendants, provided a proposed protective order to counsel for Colborn and Netflix that was nearly identical to this Court's model protective order. *See* Barker Sanctions Decl. Ex. 16 at 1. Although Ms. Barker had requested a draft protective order "as soon as possible" in an email on June 15, *see id.* at 2, she did not respond with suggested revisions until nearly a month later, on July 19, 2021. Walker Decl. ¶ 8 & Ex. B. After this Court's guidance regarding protective orders in the July 28 conference, on July 30 Mr. Vick circulated a copy of this District's model protective order with a proposed stipulation to address issues raised at the conference. *See id.* ¶ 9 & Ex. C. The parties filed that proposed protective order on August 19, 2021, which this Court entered on the same day (Dkt. 189).

One week later, Ms. Walker provided Ms. Barker a proposed protocol governing the production of electronically stored information ("ESI") in this case. *See* Barker Sanctions Decl. Exs. 19, 20. As Ms. Walker had informed Ms. Barker, the proposed protocol addressed issues

including Bates numbering and the format(s) in which ESI would be produced. *See id.* In response to Ms. Barker's objections, Ms. Walker replied in an email that Netflix wanted the protocol because discovery potentially involves documents spanning many years, "and without a simple protocol we fear that Mr. Colborn will produce his responsive documents, which include not only email but also text messages and social media content, in unuseable formats, which will waste everyone's time, delay the litigation, and may necessitate involving the court." *Id.* Ex. 22 at 1.

 The parties held a meet-and-confer telephone call on September 16, 2021. Mem. at 9-10. During that call, as memorialized in Ms. Walker's email to Ms. Barker shortly afterwards, Ms. Walker stated Netflix's belief that having ground rules regarding production of ESI would benefit and be fair to all parties. Barker Sanctions Decl. Ex. 24 at 1. Ms. Walker also offered to provide an extension of time for Colborn to reply to Netflix's discovery requests (served September 3, 2021), so long as Ms. Barker requested one, as the parties had done in good faith up to that point in this litigation. *Id.*

 Ms. Walker further explained that, although drafting and discussing the ESI protocol had not delayed the document collection, review, and production process, because Netflix began negotiating with the producers of MaM in 2013, the series premiered in 2015, and Colborn sued in 2018, collecting, reviewing and producing all of the records responsive to Colborn's June 2021 discovery requests would take some time. *Id.* Ms. Walker informed Ms. Barker that Netflix intended to make a small production, mostly of licensing agreements, shortly thereafter, followed by productions of responsive documents on a rolling basis, with a goal of completing the bulk of the production by mid-October. *Id.* Ms. Walker also told Ms. Barker that there were some documents—most notably correspondence between Netflix and the Producer Defendants—that

were being reviewed in coordination with Mr. Vick. Walker Decl. ¶ 14. Mr. Vick said that his

law firm recently had an associate resign and that, as a result, he might need a few more weeks

(beyond mid-October) to complete the Producer Defendants' production. *Id.* Ms. Barker

expressed understanding for Mr. Vick's staffing situation and did not object to his taking more

time. The undersigned believed, based on this exchange, that Ms. Barker understood that

although Netflix's production would be largely complete by mid-October, correspondence

between the Defendants (reviewed in conjunction with Mr. Vick's firm) might be slightly

delayed—*i.e.*, by two to three weeks. Walker Decl. ¶ 14.

       During that meet and confer call, Ms. Barker did not seek to discuss or resolve any other

discovery issues, nor did she threaten to file a motion to compel or for sanctions. Walker Decl. ¶

15. Instead, she agreed to consult with her co-counsel about the ESI Protocol and the sequencing

of the parties' discovery to see if some agreement could be reached. *Id.* Ms. Barker never

responded to the email summarizing the September 16 discussion, despite Ms. Walker's request

for clarification if Ms. Barker disagreed with its description of the discussion. *Id.* ¶ 16.

       As promised, Netflix produced seven documents totaling 135 pages the next day. Walker

Decl. ¶ 17. Netflix made a second production of documents on September 27, 2021, consisting of

60 documents and four Excel spreadsheets. *Id.* ¶ 18. Colborn referenced many of those

documents in his responses to Netflix's first set of discovery, which he served on October 6. *Id.*

Netflix made another production of 347 documents on the same day it filed this opposition.

Thus, it has now produced the bulk of nonprivileged documents responsive to Plaintiff's "third"

discovery requests, setting aside correspondence among Defendants that Ms. Walker told Ms.

Barker was being reviewed in coordination with Mr. Vick's firm.[4] Netflix anticipates that any remaining responsive, nonprivileged documents will be produced within the next few weeks. *Id.* ¶ 21.

Rather than responding to Ms. Walker's follow-up email regarding the meet and confer discussion, and without any further communication whatsoever, counsel for Colborn filed the motion for sanctions and the supporting memorandum and exhibits eight days after the call, on September 24, 2021. *See generally* Mem. Defendants' counsel James Friedman conferred by phone with Ms. Barker on September 27, during which he tried to persuade Ms. Barker that the motion was meritless and inappropriate, but she refused to withdraw it. Walker Decl. ¶ 19 & Ex. D. Ms. Walker wrote to Ms. Barker on October 7, 2021, again pointing out the motion's lack of any basis in fact or law and asking that it be withdrawn and advising Ms. Barker that if it was not withdrawn Netflix would seek to recoup fees incurred in opposing the motion. *Id.* ¶ 20 & Ex. D. Because counsel for Colborn have refused to withdraw the motion, Netflix is constrained to file this opposition and cross-motion for an award of attorneys' fees.

## ARGUMENT

## I. NETFLIX HAS COMPLIED WITH THE FEDERAL RULES OF CIVIL PROCEDURE AND THIS COURT'S ORDERS.

This case has been pending for a long time, but the fact that it remains in the early stages of discovery is largely attributable to factors beyond the parties' control: most notably, a pandemic, the likes of which the world has not seen for a century, coupled with crushing

---

[4] In addition, Netflix is investigating whether potentially relevant documents may be stored on various third-party platforms, such as Pix and Vimeo, referenced in documents its counsel recently reviewed and produced.

caseloads in the Eastern District of Wisconsin that kept this case in dispositive-motion limbo for more than two years.

Regardless, Plaintiff's motion for sanctions should be denied because he does not and cannot identify *any* rule or court Order that Netflix has violated. Rather, his motion amounts to griping that Netflix has not conducted discovery in the manner that Colborn would have preferred—*i.e.*, while case dispositive motions to dismiss were pending, before the Court had entered a discovery schedule, and while the Court and *all* the parties essentially operated as if discovery had been stayed.

Colborn's perceived slights fall far short of the actual misconduct necessary to support the severe sanctions he requests. Colborn's Memorandum admits as much, grudgingly acknowledging that Netflix has complied with the "letter" of this Court's December 2020 order regarding discovery. Mem. at 13. Stripped of their hyperbole and invective, Colborn's contentions regarding Netflix's purported misconduct do not withstand scrutiny. Colborn's complaints include:

**That Netflix did not respond to his "first" sets of discovery requests, Mem. at 6.** As discussed *supra*, Netflix has repeatedly stated its position to Plaintiff's counsel and this Court that the "first" requests were not properly served under the Federal Rules and it therefore has no obligation to respond to them. Tellingly, Colborn has neither attempted to properly serve those requests in compliance with the Federal Rules nor moved to compel Netflix to respond to them in the nearly two-and-a-half years since this case was removed. He did not even bother to respond to the undersigned's March 2021 email saying they are null and void, which counsel literally sent to "avoid surprises." Walker Decl. Ex. A.

Moreover, Netflix's position that Colborn should comply with the Federal Rules is not an insistence on "hyper-technical formalities," as Colborn contends. Mem. at 13. The "first" set of discovery was extremely wide ranging and therefore burdensome, and Netflix could not have provided meaningful responses to that discovery within 14 days after the Court's May 26 Order. Meanwhile, it made no sense for Netflix to attempt to respond to those extremely broad requests *before* decision on the dispositive motions, when it remained unclear which portions of the case (if any) would survive motion practice and when a *de facto* stay of discovery was in place. As it turned out, the Court's May 26 Order *did* narrow this case—it dismissed the negligence claim. Regardless, amendment of the original Complaint (not once, but twice) following Plaintiff's delivery of the "first" set of discovery has rendered many of his requests either moot or irrelevant. Those requests include those demanding raw footage, which Netflix does not have; relating to the negligence claim, which has been dismissed; and demanding explanation for denials to allegations found in the original Complaint, which no Defendant ever answered (Defendants answered only the SAC).

**That Netflix did not tell Colborn until September 2020 that it does not have and never had "raw footage" of Steven Avery's trial, Mem. at 3-5.** In response to Ms. Barker's request for a "candid response as to whether the raw footage is technologically accessible and regarding its availability," Mem. at 5, Ms. Walker provided just that on September 29, 2020: a candid response that Netflix did not have and never had the "raw footage" Ms. Barker was seeking. Barker Sanctions Decl. Ex. 5 at 1; *see also* Walker Decl. ¶¶ 3-4. Netflix reiterated this fact in its opposition to Colborn's motion to compel. Opp. to Mot. to Compel at 1, 3. Thus, Netflix actually informed Colborn's counsel that it did not and does not have the raw footage many months *before* it had any obligation to do so, when Colborn was insisting without any legal

basis that he needed the footage to respond to the then-pending motion to dismiss. Netflix reiterated this fact once again in its timely response to those discovery requests on June 9.

Colborn also accuses Netflix of participating in a "shell game" regarding the raw footage, insinuating that Ms. Walker misled Ms. Barker by not saying in their March 2020 meet and confer that Netflix did not have that footage. Mem. at 3, 13. However, at the time of that discussion Ms. Walker represented Netflix *and* the Producer Defendants. Her good-faith statements that *defendants* would have difficulty accessing materials including any raw footage were accurate, and she neither stated nor implied that Netflix had or did not have the raw footage. *See* Walker Decl. ¶ 3. Moreover, Ms. Walker was deliberately cautious with her representations because, at the time, California and much of the rest of the country was on lockdown because of COVID-19, and both Netflix employees and their counsel had limited access to files. Ms. Walker did not want to make representations regarding whether Netflix possessed the raw footage from Avery's trial until a full search could be made and that question could be answered with confidence. *Id.*

**That Netflix declined to engage in discovery while its motions to dismiss were pending, Mem. at 5-6.** This did not constitute misconduct, as evidenced by the fact that neither Judge Pepper nor this Court, when given the opportunity, ordered Netflix to engage in discovery before its dispositive motions were decided. As Netflix has pointed out, staying discovery while a motion to dismiss is under consideration is unexceptional, and for good reason:

> When, as in this case, a defendant files a motion to dismiss for failure to state a claim instead of filing an answer, that defendant is arguing that the case does not have merit, and that the court should dismiss it before the parties spend more time and expense working on it. That is why many district courts—perhaps most— don't set a discovery schedule until after ruling on the motion to dismiss; if the court grants the motion to dismiss, the parties would have wasted time and expense conducting discovery.

*Slottke*, 2017 U.S. Dist. LEXIS 6192, at *2.

Specifically regarding initial disclosures, Rule 26(a)(1)(C) states that a party need not provide initial disclosures if it "objects during the [Rule 26(f)] conference that initial disclosures are not appropriate in this action and states the objection in the proposed discovery plan." That is what Netflix did. *See* Joint Rept. at 3-4 (stating all Defendants' position that Rule 26(a) disclosures should be due 30 days after disposition of both Rule 12 motions).

Nothing prevented Colborn from moving to compel while the dispositive motions were pending—and when he did, this Court ordered Netflix to respond to discovery after the motions to dismiss were decided. Netflix did so. It cannot be sanctioned for following the Court's orders.

**That Netflix chose to identify documents by category and location in its initial disclosures rather than produce documents, Mem. at 7.** As Colborn admits, *id*, such responses are specifically authorized by Rule 26(a)(1)(A)(ii). Here, Colborn again implies that Netflix should be sanctioned for following the rules. This contention is so frivolous as to evidence bad faith.

**That Netflix requested entry of a protective order before it began producing documents, Mem. at 7.** There is nothing untoward or sanctionable about seeking a protective order, which is expressly contemplated by Federal Rule of Civil Procedure 26(c) and Civil Local Rule 26(e). An appendix to this Court's local rules provides a template for the model protective order the parties eventually agreed to have entered in this case. Moreover, to the extent entry of the protective order was delayed, that delay is largely attributable to Plaintiff's counsel, who waited nearly a month to respond after being provided a draft order.

**That Netflix requested an ESI protocol, Mem. at 8-9.** Like protective orders, agreements by the parties on ESI protocols are standard features of discovery anticipated by the federal rules. *See* Fed. R. Civ. P. 26(f)(3)(C); 34(b)(2). The parties' discovery plan states that the

parties "will promptly address any issues that do arise during the course of discovery" regarding "the disclosure, discovery or preservation of electronically stored information ("ESI"), including the form in which it should be produced." Joint Rept. at 5; *see also* Mem. at 8. By proposing an ESI protocol and discussing that proposal with Ms. Barker, Netflix was attempting to address issues including the form in which ESI should be produced. And, as Colborn admits, Mem. at 10, at the meet and confer Netflix agreed that it would begin producing ESI in the absence of an agreed protocol—and Netflix has followed through on that pledge. Nor did the discussions regarding the ESI protocol delay discovery, as Netflix continued collecting and reviewing documents in parallel to those discussions.

**That Netflix purportedly has been "playing an extended game of 'keep away' that is designed to ensure Plaintiff does not receive discovery materials in time to oppose Defendants' threatened motions for summary judgment." Mem. at 11.** As the preceding discussion shows, this contention is not grounded in fact. Netflix has complied with the federal rules and this Court's orders; has responded to Colborn's requests properly served pursuant to the federal rules; and has already produced hundreds of pages of responsive documents. Most importantly, summary judgment briefs are not due for seven months from now, under the scheduling order to which Colborn agreed. *See* Scheduling Order.

Further, Colborn has not claimed and cannot show that Netflix's actions caused him to suffer any concrete prejudice. The federal rules require that "[a]t every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights." Fed. R. Civ. P. 61; *see also, e.g.*, *Ashford v. City of Milwaukee*, 304 F.R.D. 547, 549 (E.D. Wis. 2015) (agreeing to consider party's untimely objection that complying with discovery request

would cost $10,000, citing Rule 61 for "the principle that errors and defects that do not prejudice either an opposing party or the court should be disregarded.").

In sum, Colborn cannot point to anything Netflix has done that violates any federal rule or order of this Court. His motion for sanctions should be denied because Netflix has not done anything that merits sanctions.

## II. PLAINTIFF'S REQUEST FOR SANCTIONS IS PROCEDURALLY IMPROPER AND IS UNSUPPORTED BY THE CASE LAW.

Colborn's motion for sanctions also should be denied because it is procedurally out of order and violates the well-established principle that discovery sanctions must be proportional to the misconduct sanctioned.

Colborn attempts to justify his request for sanctions under Rule 37, but that rule by its terms does not apply in this instance. The provision cited by Colborn, Rule 37(b)(2)(A), provides for sanctions where a party has violated a court order regarding discovery. Netflix has not violated any court order. Rule 37 sanctions are therefore unavailable. The cases Colborn cites involving Rule 37 sanctions, for example, involved either the violation of one or more court orders or violations of other Rule 37 provisions such as lying during depositions. *See NHL v. Metro. Hockey Club*, 427 U.S. 639, 642-43 (1976) (affirming Rule 37 sanctions for violating court order to answer interrogatories); *Houston v. C.G. Sec. Servs.*, 820 F.3d 855, 857 (7th Cir. 2016) (affirming imposition of Rule 37 sanctions where lower court found sanctioned party "had engaged in a pattern of obstreperous discovery behavior by testifying falsely about its documents and discovery efforts, failing timely to correct false representations regarding its discovery, falsifying documents, and impeding the fair conduct of depositions"); *Crown Life Ins. Co. v. Craig*, 995 F.2d 1376, 1383-84 (7th Cir. 1993) (affirming Rule 37 sanctions against party whose "response to discovery was marked by contumacious conduct," including violating multiple

orders compelling production of certain data and apparently using that data to prepare a trial witness); *Autexpo, S.p.A. v. Midas Int'l Corp.*, No. 81 C 5818, 1988 U.S. Dist. LEXIS 6009, at *12-13 (N.D. Ill. June 16, 1988) (party's "willful pattern of disregard for the court's orders and rules" included violating two court orders) (citation omitted).

The Seventh Circuit has held that generally a motion to compel, a court order, and a violation of that order must occur before a party can seek Rule 37 sanctions, with the narrow exception that when "a party receives notice that certain discovery proceedings are to occur by a specific date, and then refuses to comply, a court may impose sanctions." *Mojapelo v. AMTRAK*, 748 F. App'x 68, 70-71 (7th Cir. 2019) (citing *Tamari v. Bache & Co. (Lebanon) S.A.L.*, 729 F.2d 469, 472-73 (7th Cir. 1984)).

Tacitly admitting that Netflix cannot be sanctioned under Rule 37, Colborn falls back on the fact that courts may use their inherent powers to sanction litigants whose "conduct falls outside the express terms of Rule 37." Mem. at 12. To sanction a litigant under its inherent power, however, a court must find that party "willfully abused the judicial process or otherwise conducted the litigation in bad faith." *Ramirez v. T&H Lemont, Inc.*, 845 F.3d 772, 776 (7th Cir. 2016). Further, "[t]he severity of a sanction should be proportional to the gravity of the offense." *Jackson v. Murphy*, 468 F. App'x 616, 619-20 (7th Cir. 2012). Even if Netflix's behavior were sanctionable (and it most definitely is not), nothing Colborn describes in his motion even comes close to the severity necessary to justify imposing inherent power sanctions precluding a constitutional defense.

The cases Colborn cites show that Netflix's conduct is not in the same league as that which is properly sanctioned under a court's inherent authority. In *Ramirez*, for example, the Seventh Circuit affirmed dismissal of the case under the court's inherent authority where the

plaintiff offered a witness money in exchange for favorable testimony. 845 F.3d 772, 774. And in *Dotson v. Bravo*, the court dismissed the case as a sanction under both Rule 37 and its inherent authority because the plaintiff had litigated under a false name, lied in depositions and to the court, and violated court orders. 202 F.R.D. 559, 570 (N.D. Ill. 2001).

Any sanction against Netflix in this situation would be disproportionate because Netflix has not engaged in any misconduct. Prohibiting Netflix from raising a First Amendment defense to this defamation action by a public official would be particularly inappropriate. The actual malice standard is intended to protect criticism of the conduct of government officials such as Colborn and serve the "principle that debate on public issues should be uninhibited, robust, and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials." *New York Times Co. v. Sullivan*, 376 U.S. 254, 270, 84 S. Ct. 710, 721 (1964). This constitutional principle should not be abandoned in the cavalier fashion that Colborn suggests.

Because Netflix has not engaged in any conduct sanctionable under Rule 37 or the Court's inherent authority, Colborn's motion should be dismissed.

### III.    THIS COURT SHOULD AWARD NETFLIX ITS FEES FOR BEING CONSTRAINED TO RESPOND TO A FRIVOLOUS AND HARASSING MOTION.

Colborn's counsel filed this motion when they knew—indeed, they *admitted*—that Netflix had not violated any court order. Netflix therefore respectfully requests that this Court award Netflix its reasonable attorneys' fees and costs in responding to this vexatious motion pursuant to 28 U.S.C. § 1927.

An attorney who "multiplies the proceedings in any case unreasonably and vexatiously" may be required to pay the opposing party's reasonable attorneys' fees and costs incurred in responding to the unreasonable litigation conduct. 28 U.S.C. § 1927. An award of sanctions

requires a showing of either subjective or objective bad faith. *4SEMO.com Inc. v. S. Ill. Storm Shelters, Inc.*, 939 F.3d 905, 913 (7th Cir. 2019). The Seventh Circuit has explained that "[o]bjective bad faith consists of reckless indifference to the law: 'pursu[ing] a path that a reasonably careful attorney would have known, after appropriate inquiry, to be unsound.'" *Id.* (quoting *Riddle & Assocs., P.C. v. Kelly*, 414 F.3d 832, 835 (7th Cir. 2005)).

This motion for sanctions was filed with objective bad faith, for the reasons set forth *supra* regarding the motion's utter lack of merit. For one, Colborn's repeated complaints that Netflix's "tactics have kept Plaintiff in the dark on the likely eve of motions for summary judgment," Mem. at 10, are simply false. Such assertions could not have been made in good faith, because the discovery schedule *to which Colborn agreed* sets the deadline for motions for summary judgment at May 13, 2022—*seven months from now*. *See* Scheduling Order.

Similarly, the motion suggests that Netflix's decision to identify documents by category and location in its initial disclosures is sanctionable, even while acknowledging in the same breath that Rule 26(a)(1)(A)(ii) explicitly provides for that response. Mem. at 7.[5] Again, this is an assertion that any reasonable attorney would know was baseless.

Another reason is that the motion seeks sanctions pursuant to Rule 37(b)(2)(A), which applies only where a litigant has violated a court order—and Colborn's counsel admit that Netflix has *not* violated any court order. *See* Mem. at 13, 15-16.

Colborn's counsel had no good-faith basis to bring this motion, and counsel for Netflix advised them of this not once, but twice, after it was filed, requesting they withdraw it. They refused. Accordingly, they should be required to reimburse Netflix for its reasonable attorneys' fees and costs in responding to this motion pursuant to 28 U.S.C. § 1927.

---

[5] As noted *supra*, Colborn acknowledged in his own initial disclosures that parties usually describe documents by category and location rather than producing them.

## <u>CONCLUSION</u>

For all of the foregoing reasons, Netflix respectfully requests that this Court deny

Colborn's motion for sanctions and award it its reasonable attorneys' fees and costs in

responding to this motion.

Dated: October 15, 2021        Respectfully submitted,

*s/ Leita Walker*

Leita Walker
Ballard Spahr LLP
2000 IDS Center, 80 South 8th Street
Minneapolis, MN 55402-2119
T: (612) 371-6222
F: (612) 371-3207
walkerl@ballardspahr.com

Matthew E. Kelley
Ballard Spahr LLP
1909 K Street, NW, Suite 1200
Washington, DC 20006-1157
T: (202) 508-1112
F: (202) 661-2299
kelleym@ballardspahr.com

James A. Friedman
Godfrey & Kahn, S.C.
One East Main Street
Suite 500
Madison, WI 53703-3300
T: (608) 284-2617
F. (608) 257-0609

*Counsel for Defendant Netflix, Inc.*