# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF WISCONSIN
# MILWAUKEE DIVISION

| | |
|---|---|
| ANDREW L. COLBORN,<br><br>          **Plaintiff,**<br><br>    vs.<br><br>NETFLIX, INC.; CHROME MEDIA LLC,<br>F/K/A SYNTHESIS FILMS, LLC;<br>LAURA RICCIARDI; AND MOIRA<br>DEMOS,<br><br>          **Defendants.** | Civil No.: 19-CV-484-BHL |

## DECLARATION OF LEITA WALKER

I, Leita Walker, under penalty of perjury and subject to 28 U.S.C. § 1746, declare as follows:

1. I am one of the attorneys for the Defendant Netflix, Inc. ("Netflix") in the above-captioned action. I have personal knowledge of the matters set forth herein. I make this declaration in support of Defendant Netflix, Inc.'s Opposition to Plaintiff's Motion for Order Imposing Sanctions and Cross-Motion for an Award of Attorneys' Fees.

2. On March 12, 2020, before the parties had held a Rule 26(f) conference, counsel for Plaintiff Andrew Colborn improperly served on Netflix what was captioned as a "second" set of requests for production of documents, a copy of which was filed as Exhibit 1 to the Declaration of April Rockstead Barker ("Barker Decl."). *See* Barker Sanctions Decl. Ex. 1 (Dkt. 192-1). In the following weeks, I conferred repeatedly with Ms. Barker via telephone and email regarding those requests and discovery issues more broadly. As reflected in those emails, which

were earlier filed with this Court at Dkt. 164-1, I informed Ms. Barker of Netflix's position that discovery was unnecessary and unwarranted to support Colborn's opposition to Netflix's then-pending motion to dismiss the Second Amended Complaint ("SAC"). I also informed Ms. Barker (and she acknowledged) that, because of the lockdown measures imposed in California and elsewhere in response to the newly declared COVID-19 pandemic, conducting discovery would be difficult, if not impossible, for all parties as a practical matter. *See* Decl. of A. Barker in Supp. of Mot. to Compel Ex. 1 at 2 (Dkt. 164-1). These discussions occurred while I was counsel of record for all Defendants and before the Producer Defendants – Laura Ricciardi, Moira Demos, and Chrome Media – notified the Court they had retained separate counsel to represent them in this litigation. *See* Stipulaton for Substitution of Counsel (Dkt. 124).

3. During these discussions, I neither stated nor implied that Netflix had or did not have the raw footage of Steven Avery's trial in its possession. At the time, Netflix employees and counsel had limited access to the company's files because of the pandemic lockdown measures. Because I did not want to mislead opposing counsel regarding a discovery issue, even inadvertently, I did not want to make representations regarding Netflix's possession or lack of possession of the raw footage until a full search could be made and I could answer the question with confidence.

4. Once I was able to answer the question with confidence, in September 2020, I told Ms. Barker that Netflix did not have and never had the raw footage from the Avery murder trial. *See* Barker Sanctions Decl. Ex. 5 at 1 (email informing Ms. Barker Netflix did not have raw footage).

5. After the parties' unsuccessful mediation, I sent an email to Ms. Barker in March 2021 reiterating that, "to avoid any surprises," Netflix's position that the removal of this action

2

Case 1:19-cv-00484-BHL   Filed 10/15/21   Page 2 of 7   Document 195

to federal court rendered Colborn's "first" set of discovery requests null and void. I told Ms. Barker that Netflix would answer those discovery requests if they were properly served, but urged her to modify the requests to take into account the developments in the case since it was first filed in state court. A true and correct copy of that email is attached hereto as Exhibit A. To date, neither I nor any other counsel for Netflix has received a response to this email.

6. This Court denied Defendants' pending motions to dismiss on May 26, 2021 and Netflix began identifying and collecting documents potentially relevant to this litigation within days of that order. Ultimately, it collected approximately 20,000 documents, and it used search terms to reduce that set to approximately 8,000 potentially relevant documents. Netflix has now been systematically reviewing those documents for weeks.

7. Approximately one month after the Court entered its order denying the motions to dismiss, Colborn mailed what was captioned as his "third" set of discovery requests to counsel for Netflix on June 16, 2021 (these were actually the *first* set of discovery requests properly served pursuant to the federal rules, coming more than 13 months after the parties' Rule 26(f) conference). I received those requests in my office on June 24, 2021. Netflix timely served its responses and objections to those discovery requests on July 19, 2021 and again noted its position that Colborn's "first" set of requests were never properly served. *See* Barker Sanctions Decl. Ex. 17 at 1 n.1. Colborn's counsel has not contested the scope of those responses and objections.

8. Counsel for the parties in this matter also began negotiating on an agreed protective order in this case in June 2021. *See* Barker Sanctions Decl. Ex. 16. On June 23, Kevin Vick, counsel for the Producer Defendants, circulated to counsel for the parties a proposed protective order based on this Court's template. *Id.* at 1. Ms. Barker did not respond until July

3

19, when she emailed a redline of the proposed protective order to me and Mr. Vick. A true and correct copy of that email is attached hereto as Exhibit B.

9. After a status conference with the Court on July 28 in which the protective order was discussed, Mr. Vick circulated to counsel for the parties on July 30 a copy of this Court's protective order template along with a proposed stipulation to address the issues raised at the conference. A true and correct copy of that email is attached hereto as Exhibit C.

10. On August 26, 2021, I emailed Ms. Barker and her co-counsel, George Burnett, a draft protocol for production of electronically stored information ("ESI"). *See* Barker Sanctions Decl. Ex. 20. As I had informed Ms. Barker on August 23, *see id.* Ex. 19, the ESI protocol addressed the format(s) in which ESI would be produced, Bates numbering of ESI, and other issues regarding ESI. *Id.* Ex. 20 at 2-13. In response to Ms. Barker's objections, I replied that Netflix wanted the ESI protocol because discovery potentially involves documents spanning many years, "and without a simple protocol we fear that Mr. Colborn will produce his responsive documents, which include not only email but also text messages and social media content, in unuseable formats, which will waste everyone's time, delay the litigation, and may necessitate involving the court." *Id.* Ex. 22 at 1.

11. The parties held a meet-and-confer telephone call on September 16, 2021. Those attending included myself, Ms. Barker, Mr. Vick, and James Friedman, who is local counsel for all Defendants.

12. During that call, I informed Ms. Barker that Netflix believed having ground rules regarding the production of ESI would be fair and beneficial to all parties. I also offered to provide an extension of time for Colborn to reply to Netflix's discovery requests, which had been served on September 3, provided that Ms. Barker requested an extension. I noted that the parties

had, in good faith and as a matter of professional courtesy, agreed to extensions of deadlines previously in the litigation.

13. In addition, I explained to Ms. Barker that drafting and discussing the ESI protocol had not delayed Netflix's collection, review and eventual production of responsive documents. I informed Ms. Barker, however, that the facts that Netflix first began negotiating with the producers of "Making a Murderer" in 2013, the series premiered in 2015, and Colborn filed suit in 2018, meant that collecting, reviewing and producing all of the records responsive to Colborn's June 2021 discovery requests would take some time. I told Ms. Barker that Netflix intended to make a small production, primarily consisting of licensing agreements, shortly after the meet-and-confer call, followed by productions of responsive documents on a rolling basis, with the goal of completing most of the production by mid-October.

14. I also informed Ms. Barker that Netflix was coordinating with Mr. Vick to review documents in the possession of both sets of defendants, to avoid duplication of efforts and the necessity for Colborn's counsel to review multiple copies of the same documents. Mr. Vick said that his law firm recently had an associate resign and that, as a result, he might need a few more weeks, beyond mid-October, to complete the Producer Defendants' production. Ms. Barker said she understood Mr. Vick's staffing situation and did not object to his taking more time. I believed, based on this conversation, that Ms. Barker understood that although Netflix's production would be largely complete by mid-October, correspondence between the Defendants, reviewed in conjunction with Mr. Vick's firm, might be delayed by two to three weeks.

15. During that call, Ms. Barker did not raise or seek to resolve any other discovery issues, nor did she threaten to file any motions to compel or for sanctions. Instead, Ms. Barker

5

agreed to consult with her co-counsel about the ESI protocol and the sequencing of discovery to see if an agreement could be reached.

16. Shortly after the call ended, I sent an email to Ms. Barker summarizing the discussion and asking her to let me know if she had a different understanding. Barker Sanctions Decl. Ex. 24 at 1. Ms. Barker did not respond to this email, despite that request for clarification.

17. As promised, Netflix the following day produced seven documents totaling 135 pages.

18. Netflix made a second production of documents on September 27, 2021, consisting of four Excel spreadsheets and 60 documents. Colborn's responses to Netflix's first set of discovery, served on October 6, referenced many of these documents.

19. Without any warning, Colborn filed a Motion for Order Imposing Sanctions on September 24, 2021 (Dkt. 190). In response, my colleague Mr. Friedman called Ms. Barker on September 27 and attempted to persuade her that the motion was meritless and inappropriate. Mr. Friedman asked Ms. Barker to withdraw the motion, but she refused.

20. I wrote to Ms. Barker on October 7, 2021, again pointing out the motion's lack of any basis in fact or law and again asking for it to be withdrawn. A true and correct copy of that correspondence is attached hereto as Exhibit D.

21. Netflix made another production today, October 15, 2021, consisting of 347 documents responsive to Colborn's "third" set of document requests. Thus, it believes it has now produced the bulk of nonprivileged documents in its possession that are responsive to those requests, setting aside correspondence among Defendants that I told Ms. Barker was being reviewed in coordination with Mr. Vick's firm. In addition, Netflix is investigating whether potentially relevant documents may be stored on various third-party platforms, such as Pix and

Vimeo, referenced in documents its counsel recently reviewed and produced. Netflix anticipates that any remaining responsive, nonprivileged documents will be produced within the next few weeks.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: October 15, 2021

/s/ *Leita Walker*
Leita Walker

7
Case 1:19-cv-00484-BHL   Filed 10/15/21   Page 7 of 7   Document 195