# Exhibit 3

Case 1:19-cv-00484-BHL   Filed 03/22/22   Page 1 of 6   Document 207-3

# Ballard Spahr
### LLP

_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _

2000 IDS Center
80 South 8th Street
Minneapolis, MN 55402-2119
TEL 612.371.3211
FAX 612.371.3207
www.ballardspahr.com

Leita Walker
Tel: 612.371.6222
Fax: 612.371.3207
walkerl@ballardspahr.com

March 8, 2022

***VIA E-MAIL***
(***jmayer@mgwlawwi.com***)

John F. Mayer
Mayer, Graff & Wallace, LLP
1425 Memorial Drive, Suite B
Manitowoc, WI 54220
Tel: (920) 683-5800

      **Re:**    ***Colborn v. Netflix, Inc. et al.*, 19-cv-484 (E.D. Wis.)**

Dear Counsel:

      As you know, this firm represents defendant Netflix in the above-captioned litigation (the "Litigation"). On February 10, 2022, Netflix served on your client, Michael Griesbach, a subpoena for the production of documents pursuant to Federal Rule of Civil Procedure 45 (the "Subpoena"). The Subpoena sought 11 categories of documents and communications, all of which relate to matters central to this Litigation:  namely, the extent to which *Making a Murderer* is a substantially accurate depiction of the events underlying it; how viewers (including Mr. Griesbach) reacted to *Making a Murderer;* and how *Making a Murderer* impacted the reputation of Plaintiff Andrew Colborn, if at all. On February 24, you submitted objections to the Subpoena on Mr. Griesbach's behalf (the "Objections"), and on that basis, Mr. Griesbach has withheld all documents responsive to the Subpoena.

      Mr. Griesbach's Objections can be categorized as follows:

      (1) the Subpoena seeks information that is inadmissible and not relevant to this case according to the standard set by Federal Rule of Evidence 401;

      (2) the Subpoena is overly broad and unduly burdensome;

      (3) the Subpoena seeks information that is both public or otherwise available to Netflix, but at the same time, protected because of its proprietary nature; and

      (4) because Mr. Griesbach is now counsel of record, his first-hand knowledge of the events which underlie *Making a Murderer* and which predates his notice of appearance in this case is suddenly beyond reach of discovery.

For the reasons explained below, however, these Objections lack merit. We therefore write to request that you withdraw the Objections and promptly disclose all documents responsive to the Subpoena so that Netflix is not forced to bring a motion to compel.

## I.     The Objections Are Waived In Light of Their Reliance on Boilerplate Language.

The objections consist of boilerplate language without specific factual or legal authority. *None* of the Objections address the Subpoena requests individually to explain why a particular request is improper. *See generally* Objections ¶¶ 1-8. Such rote, facially deficient Objections are "tantamount to no objections at all." *Ezell v. City of Chicago*, 2021 U.S. Dist. LEXIS 99624, at *17 (N.D. Ill. May 26, 2021) (collecting cases).

"The burden rests upon the objecting party to show why a particular discovery request is improper." *Gingerich v. City of Elkhart Prob. Dep't*, 273 F.R.D. 532, 536 (N.D. Ind. 2011) (internal quotation marks omitted). That burden is only met where the objections "state with specificity the grounds for objecting to the request, including reasons." *Fralish v. Digital Media Solutions*, 2021 U.S. Dist. LEXIS 225281, at *11 (N.D. Ind. Nov. 17, 2021). "[G]eneral objections that recite boilerplate language without explanation of how they apply to *specific discovery requests* do not meet this burden" and are "routinely overrule[d]" by the Seventh Circuit. *Id.* (emphasis added).

## II.     The Objections Ignore the Scope of Discovery Under the Federal Rules of Civil Procedure.

Mr. Griesbach objects to the Subpoena on the ground that "[t]he evidence is not relevant pursuant to Fed. R. [Evid.] 401." Objection ¶ 2. He also objects that the Subpoena "seek[s] information and material that could never be admitted into evidence." Objections ¶ 5. Neither objection is valid.

"Information within th[e] scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1); *Fralish v. Digital Media Solutions*, 2021 U.S. Dist. LEXIS 225281, at *7 (N.D. Ind. Nov. 17, 2021) ("In discovery, what is relevant includes more than what is admissible at trial."). Moreover, "[a]s expansive as is the definition of relevancy under Rule 401 of the Federal Rules of Evidence, the standard under Rule 26 is even broader." *Hodgdon v. Northwestern Univ.*, 245 F.R.D. 337, 341 (N.D. Ill. 2007) (internal citations omitted). Indeed, relevancy is construed so broadly in discovery that it encompasses not just information which itself directly bears on an issue in the case but also "that [which] could lead to *other* matter that could bear on[] any issue that is or may be in the case." *Chavez v. Daimler Chrysler Corp.*, 206 F.R.D. 615, 619 (S.D. Ind. 2002) (emphasis added).

The Subpoena easily clears this low bar, as shown by even a cursory comparison of Mr. Colborn's Second Amended Complaint and Mr. Griesbach's books. For example, Mr. Griesbach writes of conversations he had with Mr. Colborn regarding the telephone call Mr. Colborn received while working at the Manitowoc County Jail. He also writes about drafting the initial search warrant for the Avery property and about the strange "coincidence of the timing" of Mr. Colborn's and Jim Lenk's depositions in Mr. Avery's civil lawsut and their finding Ms. Halbach's car key in Mr. Avery's bedroom. He also writes about public reaction to Mr. Avery's exoneration and subsequent arrest and trial for Ms. Halbach's murder and how people's opinions toward Mr. Avery "didn't evolve."

2

These are but a few examples of many demonstrating why Netflix's requests are reasonable, relevant, and proportionate to the needs of this case. As such, there is no basis for a relevance objection, and Mr. Griesbach is obligated to promptly produce all responsive material.

## III.    The Subpoena Is Neither Overly Broad Nor Unduly Burdensome.

Mr. Griesbach states his entire overbreadth and undue burden objection in a single, conclusory sentence:  "Th[e] requests are over-broad and unduly burdensome." Objections ¶ 6. "But, rote, unamplified, conclusory recitals *such as unduly burdensome, overbroad*, vague and ambiguous are ineffectual as every court in the country has held." *Ezell*, 2021 U.S. Dist. LEXIS 99624, at \*17 (collecting cases) (emphasis added). If Netflix is forced to compel production of documents responsive to the Subpoena, Mr. Griesbach will have to do more—he will have to "adequately demonstrate the nature and extent of the claimed burden by making a *specific showing* as to how disclosure of the requested documents and information would be particularly burdensome." *Perry v. City of Gary*, 2009 U.S. Dist. LEXIS 65103, at \*11 (N.D. Ind. July 27, 2009) (internal quotation marks omitted) (emphasis added). "This showing typically requires affidavits or other [affirmative] evidence supporting a party's assertions of burden." *Avenatti v. Gree USA, Inc.*, 2021 U.S. Dist. LEXIS 52969, at \*7 (S.D. Ind. March 17, 2021) (quoting *Whole Woman's Health All. v. Hill*, 2019 U.S. Dist. LEXIS 234048 (S.D. Ind. Oct. 7, 2019) (collecting cases)).

Here, Mr. Griesbach made *no* showing—specific or otherwise—as to how the Subpoena would burden him.

## IV.    Mr. Griesbach's Conflicting Objection That the Subpoena Seeks Information That Is Both Public and Proprietary Itself Demonstrates That This Objection Is Invalid.

Next, the Objections claim that "[t]he[] requests seek evidence that is otherwise available," but fail to identify with any specificity which requests seek only "publicly available records." *See* Objections ¶¶ 2, 4. Nor could they. The Subpoena seeks documents uniquely in Mr. Griesbach's custody and control. For example, Document Request 7 seeks "[a]ll documents and communications regarding or related to Making a Murderer." Clearly, documents responsive to this request, such as e-mails Mr. Griesbach sent from a private address, are not necessarily public records *and* may not be available to Netflix through another source. Similarly, Document Request 11 seeks "[a]ll correspondence between, among or involving . . . Ken Kratz . . . [regarding] Teresa Halbach [or] Steven Avery." We know that in November 2005, Mr. Griesbach had a private meeting with Ken Kratz, Mark Rohrer, and Detective Wiegert, resulting in the decision to draft a search warrant for the Avery Salvage Yard. *See* Manitowoc-000066. It is thus apparent that Mr. Griesbach has non-public information that is relevant to this case.

What's more, Mr. Griesbach simultaneously claims that he "relied exclusively on publicly available records, the same records that the Netflix series is based on," and that "[t]he requested information is protected because of its proprietary nature." *Compare* Objections ¶¶ 2, 4, 7, *with id*. ¶ 3. These Objections are mutually exclusive, and your failure to specify which requests you believe seek publicly-available information and which seek purportedly proprietary information is sufficient to find waiver of both.

In any event, the purportedly proprietary nature of the information is insufficient ground to withhold discoverable material. Attached as Exhibit B to the Subpoena was the Protective

3

Order entered in this case. That Protective Order contemplates that a producing party may designate responsive material either "CONFIDENTIAL" or "ATTORNEYS' EYES ONLY" when that material "contain[s] trade secrets or nonpublic confidential technical, commercial, financial, personal, or business information" (*i.e.*, information that is proprietary in nature). *See* Subpoena Ex. B ¶¶ (A)(1), (2). In other words, it is *not* permissible for Mr. Griesbach to withhold relevant, responsive material because of its of allegedly proprietary nature.

And to the extent Mr. Griesbach is withholding documents based on the (incorrect) notion that "[t]here is simply nothing which [he] could provide which is not already available to Netflix," *see* Objections ¶ 2, "[i]t is no objection to discovery that the moving party may already have" the documents sought. *Cf. Burton Mechanical Contractors, Inc. v. Foreman*, 148 F.R.D. 230, 236 (N.D. Ill. Dec. 11, 1992) ("To the extent that Mr. Foreman has declined to produce requested documents in his possession or under his control on the ground that they are in Burton's possession as the result of separate litigation, his response is insufficient. Burton is entitled to production of the documents in this action, without regard to whether they may have been provided to Burton in other litigation.").

## V.     Mr. Griesbach Is—And Always Has Been—A Material Fact Witness In This Case.

The Objections make several claims that "Mr. Griesbach is not a witness in this matter, nor should he be permitted to become one." Objections ¶ 1. Notably, Netflix has not yet served a deposition or trial subpoena upon Mr. Griesbach; it has simply requested he produce various documents. But respectfully, assertions that Mr. Griesbach is not a witness in this matter are patently false. Mr. Griesbach's role in the underlying events long predates his representation of Mr. Colborn in this Litigation,[1] and any suggestion to the contrary is but a feeble attempt by Mr. Griesbach to avoid his obligations as a fact witness. That he has personal knowledge of—and relevant, discoverable material related to—matters at the very heart of this Litigation is readily apparent throughout his books.

Beyond those examples already provided above, in *The Innocent Killer* (which was originally published in 2014, more than a year before the release of *Making a Murderer*), Mr. Griesbach details that he was the first person to discover information about Gregory Allen in the Steven Avery files of the Manitowoc County District Attorney's Office (*id*. at 128); that he directly communicated with the Wisconsin Innocence Project which was representing Mr. Avery; that he was one of only two people in the room when the DNA analyst at the crime lab delivered the news that Mr. Avery was excluded as a match for the pubic hair recovered from Penny Beerntsen (*id*. at 128-35); and that he was subpoenaed *and actually deposed* in Steven Avery's lawsuit against Manitowoc County (*id*. at 180-81)—the same lawsuit in which Mr. Colborn was deposed for his role in Mr. Avery's wrongful conviction. All of these monumental points in the Steven Avery exoneration were depicted in *Making a Murderer*, and go directly to whether the series is, in fact, a truthful depiction of these events. Indeed, Mr. Griesbach himself appears in *Making a Murderer* and angled for a more substantial role in the series.

All of these examples highlight that any characterization of the Subpoena as an "obvious effort to turn a plaintiff's attorney into a witness for its prejudicial effect," *see* Objections ¶ 8,

---

[1] "If only I had not been involved in the Avery story myself, perhaps then I could have simply enjoyed the craftsmanship" of *Making a Murderer*. Michael Griesbach, *Indefensible* at 9.

blatantly ignores the central role Mr. Griesbach has played in the saga that is the subject of *Making a Murderer*.

*    *    *

Please advise when you are available this week to discuss this matter by phone. We remain open to your input on whether there are ways to narrow the scope of the Subpoena so as to avoid the need for formal motion practice. At this point, however, we see no legal basis for Mr. Griesbach to refuse to comply with the Subpoena, and we trust that prior to our meet-and-confer you will endeavor to determine which, if not all, of the Objections your client will withdraw.

Sincerely,

Leita Walker

cc:    April Rockstead Barker
       George Burnett
       Kevin Vick