# Exhibit 8

Case 1:19-cv-00484-BHL   Filed 03/22/22   Page 1 of 5   Document 207-8

United States District Court
Eastern District of Wisconsin

**Avery v. Manitowoc County**

04 C 986



Videotape Deposition of

**Michael Griesbach**

Recorded 09/22/2005 in Manitowoc, WI

11:43 a.m. - 1:06 p.m., 84 mins. elapsed

**Magne-Script**

(414) 352-5450

## Page 1

(1) Witness
(2) Michael Griesbach
(3)
(4) Thursday 09/22/2005 at 08:30 by: Barbara Cohen Joseph
(5)
(6) Nash, Spindler, Grimstad & McCracken
(7) 201 East Waldo Boulevard
(8) Manitowoc, WI
(9)
(10) Caption: Avery v. Manitowoc County
(11) Case No.: 04 C 986
(12) Venue: United States District Court
(13)       Eastern District of Wisconsin
(14)
(15)
(16)
(17)
(18)
(19)
(20)
(21)
(22)
(23)
(24)
(25)

## Page 2

(1)       APPEARANCES
(2) Walter F. Kelly
(3) Walter F. Kelly, S.C.
(4) 700 W. Michigan St. #400
(5) Milwaukee, WI 53233
(6) On behalf of the Plaintiff
(7)
(8) Claude J. Covelli
(9) Boardman, Suhr, Curry & Field
(10) 1 S. Pinckney St. #410, PO Box 927
(11) Madison, WI 53701-0927
(12) On behalf of Denis Vogel and Manitowoc County
(13)
(14) Timothy A. Bascom
(15) Bascom, Budish & Ceman, S.C.
(16) 2600 N. Mayfair Rd. #1140
(17) Wauwatosa, WI 53226-1308
(18) On behalf of Manitowoc County
(19)
(20) Raymond J. Pollen
(21) Crivello, Carlson & Mentkowski, S.C.
(22) 710 N. Plankinton Ave. #500
(23) Milwaukee, WI 53203
(24) On behalf of Tom Kocourek and Manitowoc County
(25)

00:01:15;00

## Page 3

(1) John F. Mayer
(2) Nash, Spindler, Grimstad & McCracken
(3) 201 East Waldo Boulevard
(4) Manitowoc, WI 54220
(5) On behalf of Tom Kocourek
(6)
(7) James E. McCambridge
(8) Wisconsin Department of Justice
(9) 17 W. Main St., PO Box 7857
(10) Madison, WI 53707-7857
(11) On behalf of Michael Griesbach
(12)
(13) Also Present: Steven Avery

## Page 4

(1) INDEX
(2) EXAMINATION BY PAGE NO.
(3) Mr. Kelly . . . . . . . . . . . . . . . . . . . 4, 54
(4) Mr. Covelli . . . . . . . . . . . . . . . . . . . 53
(5) (The sealed original transcript was sent to Mr. Kelly)
(6) ===========
(7) EXAMINATION
(8) BY MR. KELLY:
(9) Q Mr. Griesbach, would you tell me your date of birth
(10) and your age, please?
(11) A Sure. February 13th, 1961, and I'm 44 years old.
(12) Q Okay. And you're currently an assistant district
(13) attorney in the Manitowoc County D.A.'s office?
(14) A That is correct.
(15) Q Okay. How long have you been in the Manitowoc County
(16) D.A.'s office?
(17) A I believe it would be 14 years. 1991 to now, so 14
(18) years.
(19) Q Okay. And I understand – we had some testimony by
(20) Mark Rohrer just a little while ago that there was a
(21) brief period of time during which you were the
(22) district attorney of Manitowoc County?
(23) A It's kind of a complicated matter. I had been elected
(24) as the district attorney in 2002 after running for
(25) election. I chose, for basically personal reasons,

Case 1:19-cv-00484-BHL Filed 03/22/22 Page 3 of 5 Document 207-8

## Page 21

(1) Jill Mertens, former secretary in the district
(2) attorney's office during Mr. Vogel's administration,
(3) was probably mentioned, her name.
(4) Q All right. Anybody else who was mentioned, to your
(5) knowledge?
(6) A Not that I recall.
(7) Q How about the identification by Mr. Rohrer to
(8) representatives of the attorney general of any persons
(9) within the sheriff's department?
(10) A I really don't recall.
(11) Q Do you have any recollection of attending a meeting
(12) with Sheriff Peterson in his office in which the
(13) matter of the Avery prosecution and Gregory Allen was
(14) discussed?
(15) A Yes, I do.
(16) Q Can you tell me your best recollection of who was at
(17) that meeting?
(18) A I believe that Deputy Inspector Beck was present, Mr.
(19) Rohrer, myself, Sheriff Peterson, and perhaps Deputy
(20) Inspector Mike Bushman. Not certain of the last one.
(21) Q All right. Do you recall whether or not Steve
(22) Rollins, the county's corporation counsel, was there?
(23) A I don't believe he was at that particular meeting.
(24) Q Okay. Do you remember how it came to be that that
(25) meeting was set up?

## Page 22

(1) MR. COVELLI: Form.
(2) A I don't remember.
(3) BY MR. KELLY:
(4) Q All right. Was it called for by you and Mr. Rohrer?
(5) A I really don't know.
(6) Q All right. Do you have any recollection about whether
(7) Sheriff Peterson produced any files and records
(8) concerning Steven Avery and/or Gregory Allen at that
(9) meeting?
(10) A He may have had the Allen information regarding the
(11) record checks that we had requested of the dispatch
(12) earlier. Perhaps the photo array in the assault case
(13) in 1985.
(14) Q What was the subject matter of the meeting?
(15) A I think the subject matter was basically a recognition
(16) that, you know, that Mr. Allen was very likely the
(17) assailant here, that Mr. Avery was not, that there
(18) will be press inquiries regarding that, that it is
(19) what it is, that we are confident, the D.A.'s office,
(20) that Mr. Avery should be released from prison as soon
(21) as possible. There may have been, you know, some
(22) discussion about the photo array, that we would like
(23) to see it, that Mr. Rohrer and I would like to see it
(24) and that Sheriff Peterson thought we should look at,
(25) too, just to see how it was conducted. And I believe

## Page 23

(1) part of the focus was on Mr. Allen in how similar or
(2) not similar to the description by the victim, and Mr.
(3) Avery, was Mr. Allen and whether he was in the photo
(4) array or not.
(5) Q What did you find out about that?
(6) A Mr. Allen was not in the photo array. His physical
(7) appearance and height and weight and such were pretty
(8) consistent with the victim's description of the
(9) assailant at the time.
(10) Q Did you ever find out whether or not there was a
(11) booking photograph of Gregory Allen that was available
(12) on the evening of July 29th, 1985, when Mrs. Beerntsen
(13) had been attacked and the sheriff called for some
(14) photos to be brought over, whether there was an actual
(15) photo, booking photo of Gregory Allen from the 1983
(16) offense that you've already told us about that was
(17) available?
(18) A My best recollection is that there was not a photo, a
(19) booking photo of Mr. Allen. I could be mistaken. But
(20) that's my best recollection.
(21) Q When you say that, do you mean not available when you
(22) went to the meeting or not available on the evening of
(23) July 29th?
(24) A I guess I mean when we were at the dispatch center. I
(25) don't know about what was or was not available on the

## Page 24

(1) date of the original assault in 1985.
(2) Q Do you have any recollection, throughout the course of
(3) these events since you found out about them on
(4) September 3rd, as to whether or not there was at one
(5) time a booking photograph of Gregory Allen that was
(6) made in connection with the 1983 offense that
(7) subsequently was either lost or destroyed or for some
(8) reason disposed of?
(9) A I have no information about that.
(10) Q All right. Do you recall whether at the meeting with
(11) Sheriff Peterson there was any discussion about the
(12) matter of Gregory Allen as being identified in 1995 as
(13) having been Penny Beerntsen's assailant and then there
(14) was some discussion with Sheriff Kocourek about that?
(15) A If you could re- I think I lost you. Probably my
(16) losing more than your saying. But I lost it.
(17) Q At the meeting that took place in Sheriff Peterson's
(18) office with the people that you've described to us,
(19) was there any discussion about the fact that it had
(20) come to light in 1995 from some source or sources that
(21) it was actually Gregory Allen who had attacked Mrs.
(22) Beerntsen and not Steven Avery?
(23) MR. BASCOM: Object to the form of that
(24) question.
(25) A I don't recall that information discussed at that time

Page 25

(1) during that meeting. Might have been, might not have
(2) been.
(3) BY MR. KELLY:
(4) Q Okay. I'm going to show you what's been marked as
(5) Exhibit 124 and ask you if you'd take a moment and
(6) examine that.
(7) A Yeah, I've taken a look at it.
(8) Q Okay. And, first of all, is this a document that
(9) you've seen before today?
(10) A I think I have.
(11) Q It's dated September 18th of '03. Doug Jones was an
(12) attorney in the D.A.'s office at that time, right?
(13) A Still is, yes.
(14) Q Okay. A colleague of yours?
(15) A Yes.
(16) Q And was this information that's in 124 made available
(17) to you at the time that this memo was prepared?
(18) A Yeah. I think by the time that memo was prepared, I
(19) was aware of the contents of that memo. My earlier, I
(20) guess, hesitation was I don't recall that the contents
(21) of that memo was discussed at the meeting with Sheriff
(22) Peterson sometime earlier.
(23) Q All right.
(24) A It may have been, may not have been.
(25) Q Okay. Was any further investigation, to your

Page 26

(1) knowledge, of the statements that are made in this
(2) memorandum about the information that was provided to
(3) Sheriff Kocourek and how he responded, was there any
(4) further investigation of that by you or Mr. Rohrer as
(5) far as you know?
(6) A No, I don't know.
(7) Q Okay. So was there any further discussion, to your
(8) knowledge, of the information that's stated in here
(9) about Mr. Allen by you or Mr. Rohrer with either
(10) Colburn or Lenk?
(11) A There very well may have been. It was likely from Mr.
(12) Rohrer. I, you know, vaguely remember this topic, the
(13) contents of that memo being discussed here and there
(14) over the – you know, the following weeks. I was more
(15) of a receiver of information. I was not directing
(16) anybody to look into anything. But I do recall this
(17) same topic coming up once or twice more.
(18) Q And what further information, if any, that you recall,
(19) did you receive about that?
(20) A My recollection is just that it was confirmed that
(21) indeed that Sheriff Kocourek had said, upon hearing
(22) that somebody else did this, that we've got the right
(23) guy and that he should not concern himself. My
(24) impression is that that was what people were saying
(25) was the case. I don't have personal knowledge that he

Page 27

(1) said that, but...
(2) Q Okay. And when you say "what people were saying was
(3) the case," can you identify the people that you're
(4) talking about?
(5) A I believe it would be Officer Colburn, and he's the
(6) only one I can say with any level of certainty that
(7) confirmed that. Now, you know, what one reads into "I
(8) think we have the right guy" is another story. I'm
(9) not speaking to that issue. But as far as that having
(10) been said by – allegedly said by Sheriff Kocourek,
(11) that is my understanding of Deputy Colburn's
(12) recollection of what was said.
(13) Q All right. And do you have any understanding of what
(14) Mr. Lenk says about that?
(15) A I don't.
(16) Q Okay. And who was your source of information as to
(17) what Colburn was saying?
(18) A Probably Mark, Mr. Rohrer.
(19) Q All right. To your knowledge, was the information
(20) concerning what Colburn said and how Kocourek
(21) responded provided by Rohrer to the attorney general's
(22) office?
(23) A I believe it probably was.
(24) Q And what's the basis for that belief?
(25) A Just from the general way in which Mark, the district

Page 28

(1) attorney, and I, for whatever it's worth, were
(2) handling this case. All information we had was
(3) provided to the attorney general.
(4) Q To your knowledge, did Mark Rohrer make any notes of
(5) any of the interviews he had with Brenda Petersen or
(6) Beverly Badker or Colburn or Sheriff Peterson?
(7) A I don't know whether he did or not.
(8) Q Did you?
(9) A No.
(10) Q Is there some reason you didn't?
(11) MR. COVELLI: Well, objection. He didn't –
(12) lack of foundation. He never said he interviewed
(13) these people.
(14) BY MR. KELLY:
(15) Q You can answer.
(16) A I don't – I didn't make any notes of whatever
(17) conversations I heard. My main focus was on whether
(18) or not Mr. Avery should be released, and quickly. And
(19) after that, I think I memoed up a few things: a call
(20) from Mr. Vogel that I'm sure you're aware of.
(21) Q I am.
(22) A And some conversations that I think I had with Penny
(23) Beerntsen, the alleged victim, and I think with Janine
(24) Geske as well. But I did not memo up much in the
(25) office. Frankly, there wasn't a lot discussed in the