```
 1        recollection was clearer, that is, as you got
 2        closer or were earlier in time, specifically
 3        November of 2005.
 4   A.   Yes.
 5   Q.   Do you remember both of your first two interviews
 6        with law enforcement?
 7   A.   I remember the first two.
 8   Q.   And do you remember in both of those interviews
 9        telling law enforcement officers that Barb left
10        your house sometime between 11:00 p.m. or
11        midnight and went home those nights?
12   A.   Yes, I assumed she went home. I thought she did.
13             ATTORNEY KRATZ: That's all I have of
14        Mr. Tadych. Thank you.
15             THE COURT: All right. The witness is
16        excused. You may call your next witness, Mr. Kratz.
17             ATTORNEY KRATZ: Call Bobbie Dohrwardt to
18        the stand. Could I have just a minute with
19        Mr. Strang, Judge?
20             THE COURT: Sure. Excuse me, counsel, I
21        think the witness is standing right behind you.
22             THE CLERK: Raise your right hand.
23             **BOBBIE DOHRWARDT,** called as a witness
24        herein, having been first duly sworn, was
25        examined and testified as follows:
```

150

**EXHIBIT A**

```
 1              THE CLERK:  Please be seated.  Please state
 2       your name and spell your last name for the record.
 3              THE WITNESS:  My name is Bobbie Dohrwardt,
 4       D-o-h-r-w-a-r-d-t.
 5    (Exhibit No. 359 and 360 marked for identification.)
 6                      DIRECT EXAMINATION
 7    BY ATTORNEY KRATZ:
 8    Q.   I'm sorry for the delay, Ms Dohrwardt.  Can you
 9         tell the jury, please, how are you employed?
10    A.   I work for Cellcom.
11    Q.   And what is Cellcom?
12    A.   Cellcom is a wireless carrier, local to northeast
13         Wisconsin.
14    Q.   Ms Dohrwardt, have you been asked and have you
15         reviewed cellular telephone records for a
16         subscriber by the name of Steven Avery, or
17         Avery's Salvage -- Auto Salvage for the dates on
18         and around October 31st, 2005?
19    A.   Yes, sir.
20    Q.   Let me ask you, Ms Dohrwardt, are -- in your
21         employment with Cellcom, are you what is known as
22         one of the custodians of the business records for
23         that business?
24    A.   Yes, I am.
25    Q.   Generally, what do you do for Cellcom?
```

Case 1:19-cv-00484-BHL   Filed 04/13/22   Page 2 of 8   Document 215-1

1  A.  I am the team leader for Technical Support
2      Department.
3  Q.  And as team leader, are you able to review, and
4      to the extent that, at least in general terms,
5      we're going to ask you questions; are you able to
6      interpret cellular telephone records that you
7      have been asked to look at?
8  A.  Yes, sir.
9           ATTORNEY KRATZ:  The Court has asked,
10  Judge, and I think Mr. Strang will agree, that we
11  not use telephone records in this instance -- excuse
12  me -- telephone numbers in this instance.  And Ms
13  Dohrwardt will be referring, then, to subscriber
14  names rather than numbers.  And, please, Mr. Strang,
15  if there's an issue, stop and we can either approach
16  the bench or we can approach the witness at that
17  time.  Does that sound fair, Judge?
18           ATTORNEY STRANG:  Your Honor, this actually
19  will be Mr. Buting's witness, but we did have an
20  agreement, we do have an agreement, that for
21  purposes of this trial, we'll not identify specific
22  telephone numbers at least without conferring
23  further.
24           THE COURT:  Very well.
25  BY ATTORNEY KRATZ:

1  Q.   Ms Dohrwardt, the first document that you have in
2       front of you, which is actually quite small
3       print, I would ask you to identify that document
4       number for me, please; what exhibit number is it?
5  A.   Exhibit 359.
6  Q.   And could you tell the jury, please, what
7       Exhibit 359 is?
8  A.   It is a call record that I produced.
9  Q.   And was this the call record, again, for both
10      incoming and outgoing telephone calls for the
11      cellular telephone records for Steven Avery?
12 A.   Yes.
13 Q.   Again, do these include calls on October 31st of
14      2005?
15 A.   Yes.
16 Q.   If I ask you at a specific time and if you have
17      another record next to you, which I think is
18      Exhibit No. 360, please feel free to refer to
19      that if that will assist you; does that sound
20      okay?
21 A.   Fine.
22 Q.   Let me ask you, then, Ms Dohrwardt, at 8:12 a.m.
23      on October 35 (sic), 2005, was a cellular
24      telephone call placed from that cellular
25      telephone of Steven Avery?

153

1  A. Yes.
2  Q. And again, referring to Exhibit No. 360, since
3     that will refer to subscriber names rather than
4     numbers, could you tell us who that call went to,
5     please?
6  A. That call was to *Auto Trader*.
7  Q. And how long or what was the duration of that
8     call?
9  A. Two minutes, forty-seven seconds.
10 Q. I would next ask you to review a outgoing
11    telephone call at 2:24 p.m.; do you note that
12    calling having been made?
13 A. Yes.
14 Q. And again, referring to Exhibit No. 360 and
15    Exhibit 359, in conjunction, are you able to tell
16    who that telephone call was made to?
17 A. To Teresa Halbach.
18 Q. What is the duration of that call?
19 A. Seven seconds.
20 Q. Now, Ms Dohrwardt, I'm going to ask you about a
21    specific cellular telephone feature, which is
22    called the *67 feature; are you familiar with
23    that?
24 A. Yes.
25 Q. Could you explain that to the jury; what is a *67

154

Case 1:19-cv-00484-BHL   Filed 04/13/22   Page 5 of 8   Document 215-1

1      feature?
2  A.  It is a remote feature activation that will allow
3      the outbound number to be blocked or restricted
4      on the terminating end.
5  Q.  If the individual on the receiving end had, let's
6      say, caller ID, you may have a better term than
7      that, but if they had what we all know as caller
8      ID, would they be able to see who the call is
9      being made from?
10 A.  No, it would appear as blocked, or restricted,
11     private, something like that.
12 Q.  And next, Ms Dohrwardt, I'm going to ask you to
13     review those records, again, Exhibit 359 and 360.
14     Ask, at 2:35 p.m., if another call, outgoing
15     call, was attempted from the cellphone of
16     Mr. Steven Avery?
17 A.  Yes.
18 Q.  And who was that call placed to?
19 A.  Teresa Halbach.
20 Q.  Is there a duration or was that a completed call?
21 A.  There was no duration.
22 Q.  All right.  Now, both the 2:24 call and the 2:35
23     call, do your records reflect that any specific
24     call feature was used on those two calls?
25 A.  Yes.

155

| | | |
|---|---|---|
| 1 | Q. | Which call feature was used? |
| 2 | A. | The *67 blocking feature. |
| 3 | Q. | At 4:35 p.m., Ms Dohrwardt, does another outgoing |
| 4 | | call appear on those records? |
| 5 | A. | Yes. |
| 6 | Q. | Who was that call made to? |
| 7 | A. | Teresa Halbach. |
| 8 | Q. | And is there a duration noted on that call? |
| 9 | A. | No duration. |
| 10 | Q. | So duration would be zero? |
| 11 | A. | Zero. |
| 12 | Q. | All right. At 5:57 p.m., do your records reflect |
| 13 | | another call being made? |
| 14 | A. | Yes. |
| 15 | Q. | And who was that call made to? |
| 16 | A. | Charles Avery. |
| 17 | Q. | And can you describe for the jury the duration of |
| 18 | | that call? |
| 19 | A. | Five minutes, twenty-three seconds. |
| 20 | Q. | Finally, Ms Dohrwardt, at 9:20 p.m., do your |
| 21 | | records reflect a final outgoing call that day? |
| 22 | A. | Yes. |
| 23 | Q. | And who is that call made to? |
| 24 | A. | Barb Janda. |
| 25 | Q. | And is there a call duration associated with that |

156

```
 1          call?
 2    A.    Zero.
 3    Q.    Now, we have talked about Exhibit No. 359 being
 4          your records, that is, the records of Cellcom;
 5          does Exhibit No. 360 appear to be, legal term is
 6          a summary exhibit, of what you have testified to
 7          here today?
 8    A.    Yes.
 9    Q.    And do the numbers or times of the calls, type of
10          call, and call durations, all appear consistent
11          with not only the records in 359, but also with
12          what you have testified here today?
13    A.    Yes.
14                ATTORNEY KRATZ:  With that, then, Judge, I
15          will move the admission of Exhibits 359,
16          provisionally 360, and maybe an additional
17          stipulation with that exhibit.  But I don't believe
18          I have any further questions of Ms Dohrwardt at this
19          time.  Thank you.
20                THE COURT:  Any objection to the exhibits?
21                ATTORNEY BUTING:  No objection.
22                THE COURT:  All right.  The exhibits are
23          received.
24                ATTORNEY BUTING:  Can we approach, your
25          Honor?
```