IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

| | |
|---|---|
| ANDREW L. COLBORN,<br><br>               Plaintiff,<br><br>    vs.<br><br>NETFLIX, INC.; CHROME MEDIA<br>LLC, F/K/A SYNTHESIS FILMS, LLC;<br>LAURA RICCIARDI; AND MOIRA<br>DEMOS,<br><br>               Defendants. | Civil No.: 19-CV-484-BHL |

**DEFENDANT NETFLIX, INC.'S REPLY IN SUPPORT OF
MOTION TO COMPEL PRODUCTION OF DOCUMENTS
RESPONSIVE TO SUBPOENA TO MICHAEL GRIESBACH**

For more than 15 years before he ever became counsel to Mr. Colborn, Michael Griesbach had direct involvement with the events that gave rise to Mr. Colborn's lawsuit. Netflix's Subpoena to Mr. Griesbach is proper, and it seeks relevant documents that easily meet the applicable standard for discovery. In response, Mr. Griesbach blusters and accuses, but fails even to *address* the applicable standard for discovery under the Federal Rules of Civil Procedure. He focuses instead on whether the documents would be admissible at trial, and on Wisconsin's advocate-witness rule, neither of which govern whether the documents must be produced in the first place. Further, he on the one hand relies on the demonstrably false contention that his books analyze publicly available information, while *simultaneously acknowledging* that he relied on "admittedly non-public information." *See* Opp. at 8 (Dkt. 214). Netflix does not seek to "turn Mr. Griesbach into a witness in this matter." Opp. at 4. Netflix has not sought to depose Mr. Griesbach or indicated any intention of calling him as a witness at trial. Mr. Griesbach's own direct involvement in the underlying facts—over the course of more than 15 years *before* Mr. Colborn retained him as legal counsel—make his documents discoverable.

Further, Mr. Griesbach cannot now cloak himself in the protection of Wisconsin's reporter's privilege because he waived any protection in at least two ways: First, Mr. Griesbach failed to assert the privilege in his objections to the Subpoena. Second, by becoming plaintiff's *legal counsel* in this case, Mr. Griesbach abandoned his role as an author and became an advocate—and legal counsel are not protected by the reporter's privilege.

Because Mr. Griesbach's Opposition fails to provide any valid basis for failing to cooperate with the Subpoena, this Court should grant Netflix's Motion and order Mr. Griesbach to comply.

# ARGUMENT

## I. Mr. Griesbach Has Not Shown the Subpoena Is Unenforceable

As Netflix has shown in its Motion to Compel (Dkt. 206), the Subpoena is proportional to the needs of this case and seeks relevant, discoverable materials unavailable elsewhere, satisfying Federal Rules of Civil Procedure 26 and 45. Mot. at 4-15. Accordingly, this Court should grant Netflix's Motion, considering "the totality of the circumstances, weighing the value of the material sought against the burden of providing it, and taking into account society's interest in furthering the truthseeking function of the particular case before the court." *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 681 (7th Cir. 2002) (internal marks omitted).

### A. The Subpoena Meets the Relevance Standard for Discovery

Mr. Griesbach contends that under the Federal Rules of Evidence, "the evidence which Netflix seeks is irrelevant," and therefore none of the materials the Subpoena seeks would be admissible at trial. Opp. at 2-3; *see also* Decl. of L. Walker (Dkt. 207-1) Ex. 2. While Netflix disagrees with both contentions, whether the materials requested may ultimately be admissible at trial is not the question.

The federal rules could not be clearer on this issue: "Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1); *see also, e.g.*, *Banks v. Baraboo Sch. Dist.*, 2020 U.S. Dist. LEXIS 176620, at * 9 (W.D. Wisc. Sept. 25, 2020) ("Relevance in discovery is broader than relevance at trial; during discovery, a broad range of potentially useful information should be allowed when it pertains to issues raised by the parties claims." (internal marks and citations omitted)). Thus, the *only* issue for this Court to determine is whether the subpoenaed materials meet the broad standard of relevance in discovery, and Netflix has shown that they do. *See* Mot. at 7-15.

Mr. Griesbach insists that his "thoughts about evidence" are not "evidence themselves," Opp. at 2, essentially arguing that neither his views on Steven Avery's guilt or innocence nor his views on allegations that Mr. Colborn planted evidence to ensure Mr. Avery's conviction are relevant. But even assuming that is true, the truth or falsity Mr. Avery's frame-up theory and the accuracy of *MAM*'s portrayal of that theory are just two of many issues in this lawsuit. In addition to proving Defendants somehow mischaracterized Mr. Avery's accusations such that *MAM* misled viewers, Mr. Colborn must prove the challenged statements were defamatory—*i.e.*, that they harmed his reputation. And contrary to Mr. Griesbach's contention, Opp. at 2-4, 12-14, the impressions and opinions contained in responsive records are relevant to this issue, as even Mr. Colborn's counsel has admitted. *See* Decl. of L. Walker ¶ 2 (Dkt. 217-1). Specifically, how both the underlying court proceedings and, later, *MAM* impacted opinions of Mr. Colborn held not only by Mr. Griesbach but also by others in the community—many of whom Mr. Griesbach knew and possibly interviewed for his books—are relevant to Mr. Colborn's reputation and his damages. ███████████████████████████████████

███████████████████████████████

███████████████████████████████

███████████████████████████████

███████████████████████████████

███████████████████████████████

███████████████████████████████

███████████████████████████████

██████

Also contrary to Mr. Griesbach's suggestions, Opp. at 7-10, the examples discussed in the Motion were just that—*examples*—and are not the only proof that he has relevant, discoverable materials. In both *Innocent Killer* and *Indefensible*, Mr. Griesbach describes in nearly identical language how the Halbach murder was "the chief topic of discussion" at the local greasy spoon during the Teresa Halbach investigation and Mr. Avery's murder trial, and that "everyone had an opinion," split between those who thought Mr. Avery was guilty and those who thought he was framed, quoting pseudonymous "Joe" and "Tammy" as examples of each side. *Innocent Killer* at 215-16; *Indefensible* at 105-06. Specifically relevant to Mr. Colborn's reputation, Mr. Griesbach also wrote in *Innocent Killer* that "the number of people who suspected the police set up Steve again rose sharply" when news broke that Mr. Colborn and James Lenk, who both had been deposed in Mr. Avery's civil rights lawsuit shortly beforehand, had discovered the key to Ms. Halbach's SUV in their sixth search of Mr. Avery's trailer. *Innocent Killer* at 212-13. He then observed that news of Brendan Dassey's confession "even changed the views of some of the most conspiracy-minded people in town, convincing them that their former hero was guilty after all. But for those with an unshakable conviction that the police were corrupt, Brendan Dassey's confession only solidified their views." *Id.* at 227.

As these excerpts from his writings show, Mr. Griesbach was hardly "any other person." *See* Opp. at 4. He researched and wrote three books about the events giving rise to this lawsuit, and is in a better position than most to gauge the community's opinions about law enforcement in general and Mr. Colborn in particular. He literally wrote down and saved what people told him. Thus, Mr. Griesbach is uniquely positioned to have relevant evidence: his notes and drafts of the manuscripts of his books, as well as his written communications about relevant issues, are

likely to contain contemporary evidence of the community's views on the underlying facts of this case in general and Mr. Colborn in particular.

Moreover, the Subpoena is not limited to materials containing Mr. Griesbach's (and others') opinions. It seeks documents and communications regarding Mr. Griesbach's books; *MAM*; the underlying events, such as Mr. Avery's 2003 exoneration and the search warrant for the Avery property that Mr. Griesbach drafted; and communications between Mr. Griesbach and others about *MAM* and related topics at issue in this case. Those documents and communications are reasonably likely to contain not only evidence relevant to Mr. Colborn's reputation and his ability to meet unflattering speech with counter-speech, but also relevant information regarding the facts underlying this lawsuit, and they are likely to refer to other sources of admissible evidence. Mr. Griesbach has not shown and cannot show otherwise.

### B. The Subpoenaed Materials Are Not Available Publicly Or From Others

The Opposition falsely, and repeatedly, states that "[i]t is undisputed that Mr. Griesbach's books are based entirely on his own impression of publicly available records." Opp. at 2; *see also id.* at 3-4, 7-14. Not only is that assertion very much disputed, *see* Mot. at 7-9, it is demonstrably false, and even if it were true, it would not render the materials irrelevant in the discovery context.[1]

The Opposition repeatedly cites Mr. Griesbach's affidavit as support for the claim that he based his books solely on public information, Opp. at 2, 9, the affidavit itself says no such thing.

---

[1] As Mr. Griesbach already knows, however, Netflix is not seeking the published versions of Mr. Griesbach's books, as those are already in Netflix's possession. Moreover, had Mr. Griesbach demonstrated any willingness to negotiate the scope of his document production, Netflix may have concluded it did not need him to produce certain publicly available court records. Instead, Mr. Griesbach took a hard line that he would not produce *anything*, shutting down constructive discussion about how Netflix might narrow its requests.

6
Case 1:19-cv-00484-BHL   Filed 04/26/22   Page 6 of 16   Document 221

*See* Aff. of Michael Griesbach (Dkt. 216). Rather, it simply authenticates six exhibits, five of which are publicly available records and one of which is a copy of one of Mr. Colborn's interrogatory responses. *Id.* Thus, Mr. Griesbach does not provide *any* evidentiary support for the contention his books are entirely his analysis of public information.

In his books, as discussed above, Mr. Griesbach wrote in the first person about his conversations with various people, both named and pseudonymous, about key facts and about their attitudes that shaped Mr. Colborn's reputation. Further, in *Innocent Killer*, Mr. Griesbach recounts in detail his non-public actions and conversations as a Manitowoc County prosecutor regarding *both* Mr. Avery's exoneration and the later murder case against him. *E.g.*, *Innocent Killer* at 127-170. For example, Mr. Griesbach describes one-on-one conversations he had with Denis Vogel, the former district attorney who prosecuted Mr. Avery in 1985, including one in which Vogel asked if there was anything in the Avery file about Gregory Allen, the actual rapist (there was). *Id.* at 157-58. He also describes arriving at the Avery Salvage Yard after the discovery of Teresa Halbach's SUV and "gathering information from detectives for a search warrant." *Id.* at 192. Mr. Griesbach's false contention that he "had no special powers allowing him access to material, his only access came from reviewing public materials," Opp. at 7, is therefore belied by what he published showing precisely the opposite.

Mr. Griesbach also claims that the evidence Netflix cited to show he likely has relevant, responsive materials do not suggest that he has any non-public information to discover. Opp. at 7-14. As discussed above, however, there is plenty of evidence, including but not limited to the examples cited in the Motion, suggesting that it is *highly* likely that Mr. Griesbach has responsive, non-public materials. For example, Mr. Griesbach claims that Netflix's citation of an email he forwarded to a Manitowoc County sheriff's officer does not indicate he has non-public

records because that email attached a publicly available radio interview and was obtained via a subpoena to the sheriff's office. Opp. at 9. This is not, as Mr. Griesbach suggests, "a speculative attempt on the part of Netflix to create an impression that Mr. Griesbach must be hiding something," Opp. at 9, but rather part of the proper support for the conclusion that Mr. Griesbach is likely to have responsive, relevant, and non-public materials—the email shows Mr. Griesbach used his private email address to communicate with others about topics relevant to this litigation, and therefore is likely to possess other non-public, relevant communications. *See* Mot. at 8.

In this vein, Mr. Griesbach also attempts to downplay his participation in, and knowledge of, underlying events at issue in this case, such as Mr. Colborn's receipt of and reporting to superiors about a phone call at the Manitowoc County Jail that may have indicated Mr. Avery's 1985 rape conviction was in error. Mr. Griesbach acknowledges, as he must, that he was deposed about the call in Mr. Avery's civil rights lawsuit, but points to his testimony that he did not have "personal knowledge" of what Mr. Colborn did with his report about the call but that he recounted his "impression . . . that that was what people were saying" about it. Opp. at 11. While that testimony may constitute hearsay, hearsay is discoverable. What's more, the Subpoena seeks documents, not testimony. Documentation of which people were saying what to Mr. Griesbach on this topic are relevant in discovery and would likely lead to admissible evidence.

Even taking all of Mr. Griesbach's criticisms of Netflix's factual citations as true, those citations still support the conclusion that Mr. Griesbach is likely to have responsive, non-public documents and communications, or, at a minimum, that he has materials that could lead to information that is relevant and admissible. Absolute certainty that a third party has responsive materials is not required to support a subpoena. As the Seventh Circuit put it:

> The trouble is, when discovery has not been tried, no one can say for sure whether it is going to be futile or not. The expectation that it will be futile is, therefore, not

the certainty that justifies cutting off a party's discovery rights without any effort
to satisfy them even in the most essential particulars.

*Deitchman v. E.R. Squibb & Sons, Inc.*, 740 F.2d 556, 563 (7th Cir. 1984). Netflix has shown that it is reasonable to believe that Mr. Griesbach has relevant, discoverable materials, which is all that is required.

Finally, Mr. Griesbach claims that he need not comply with the Subpoena because Netflix "has issued document subpoenas to persons who may have more direct knowledge of the information it seeks." Opp. at 11. This argument is both irrelevant and incorrect. For the reasons stated herein, the information is *not* available from other sources. What's more, Netflix has not issued document subpoenas to any third parties other than the Manitowoc County Sheriff's Department, including those individuals listed in Mr. Griesbach's Opposition. *See* Opp. at 12 n.6.[2] And even if those witnesses possess some of the same information, the Seventh Circuit has held that it is improper to deny a motion to compel based only on the "bare representation that [the deponent] knew nothing about the case" and that other deponents knew more. *CSC Holdings, Inc. v. Redisi*, 309 F.3d 988, 993 (7th Cir. 2002).

### C. Mr. Griesbach Has Not Met His Burden to Show the Subpoena Is Overly Broad or Unduly Burdensome

Mr. Griesbach acknowledges that "[t]he Court must determine whether the burden imposed" by the subpoena "exceeds the benefit," Opp. at 8, and notably, he does not dispute that "[t]he burden rests upon the objecting party to show why a particular discovery request is improper." Mot. at 6 (quoting *Gingerich v. City of Elkhart Prob. Dep't*, 273 F.R.D. 532, 536 (N.D. Ind. 2011)). Despite this, Mr. Griesbach offers no more than a passing glance at precisely

---

[2] Netflix's co-defendants served the subpoenas that Mr. Griesbach references, and in any event, as is clear from the Subpoena served on Mr. Griesbach, none of the individuals subpoenaed by Netflix's co-defendants seek the same information as the Subpoena at issue.

9

Case 1:19-cv-00484-BHL   Filed 04/26/22   Page 9 of 16   Document 221

*how* the Subpoena would burden him, and he does not provide *any* facts showing that the burden on him to comply with the Subpoena would outweigh the benefit to Netflix, the other Defendants, and "society's interest in furthering the truthseeking function in the particular case before the court." *Patterson*, 281 F.3d at 681 (internal marks omitted). Instead, the Opposition makes only a vague reference to "the burden placed on Mr. Griesbach's searching through documents dating back nearly twenty years," Opp. at 12, and argues that the "limited, if any, relevance" of the statement in *Indefensible* that Mr. Colborn had not watched *Making a Murderer* somehow tips the balance of hardships in Mr. Griesbach's favor, *id.* at 8. Mr. Griesbach provides neither specific details of the burden he would face nor any sworn testimony regarding any such alleged burden.

This falls far short of making the necessary showing, which "typically requires affidavits or other [affirmative] evidence supporting a party's assertions of burden." *Avenatti v. Gree USA, Inc.*, 2021 U.S. Dist. LEXIS 52969, at *7 (S.D. Ind. March 17, 2021) (citation omitted). As discussed *supra*, Mr. Griesbach's affidavit merely authenticates documents. It does not contain *any* discussion of *any* burden he might face if forced to comply with the Subpoena.

## II. Mr. Griesbach's Status as Counsel Does Not Excuse His Refusal to Comply With the Subpoena

Mr. Griesbach's Opposition relies heavily on his argument that the Subpoena is improper in light of his role as counsel for Mr. Colborn. Opp. at 4-7. He invokes weighty constitutional notions, such as erosion of the right to effective counsel, which notably does not apply in civil litigation,[3] to distract from the substance of his argument, which can be distilled to the belief

---

[3] The right to effective counsel is a constitutional right that belongs to criminal defendants rooted in the Sixth Amendment. There is no right to counsel in civil cases.

10
Case 1:19-cv-00484-BHL   Filed 04/26/22   Page 10 of 16   Document 221

that, by becoming counsel of record, Mr. Griesbach has somehow insulated his relevant records from the reach of discovery.

The law on this issue, however, is directly to the contrary. As Netflix demonstrated in its opening brief, and which Mr. Griesbach entirely fails to address, "no special privilege or immunity shields a person from [discovery] simply because he or she is an attorney, or even an attorney for a party to the suit." Mot. at 16 (collecting cases and quoting *Kaiser v. Mut. Life Ins. Co.*, 161 F.R.D. 378, 379 (S.D. Ind. 1994) (citation omitted)); *see also Dewey v. Bechthold*, 2019 U.S. Dist. LEXIS 183381, at * 20 (E.D. Wisc. Oct. 23, 2019) (attorneys who are fact witnesses "cannot claim harassment and undue burden when the opposing party seeks discovery from them."). And even a cursory review of the case law to which Mr. Griesbach cites reveals that the authority is entirely inapposite.

Rather, the Opposition strings together a series of red herrings, including the ethical and legal restrictions on attorneys testifying as witnesses for their clients and case law concerning motions to disqualify opposing counsel. None of this is relevant because Netflix has not subpoenaed Mr. Griesbach for a deposition, listed him as a trial witness, or filed a motion to disqualify him. Netflix has simply served a Rule 45 subpoena on Mr. Griesbach seeking documents and communications in his possession that are relevant to this case and/or could lead to the discovery of admissible evidence. Therefore, the law restricting attorneys' ability to be trial witnesses in their clients' cases and that would require recusal or disqualification of attorney witnesses is simply not before this Court. *See Kaiser*, 161 F.R.D. at 382 ("[T]he question of whether [counsel] may be deposed is distinct from the question of whether he should be disqualified because of his role as a witness.").

11

Case 1:19-cv-00484-BHL   Filed 04/26/22   Page 11 of 16   Document 221

But even if this law were relevant, attorneys—even attorneys for parties—have no talismanic immunity from discovery. *See* Mot. at 16 (citing *Appvion, Inc. v. P.H. Glatfelter Co.*, 2016 U.S. Dist. LEXIS 42519, at *11 (E.D. Wis. Mar. 30, 2016) ("[T]he mere fact that an individual, employed by a party, has a license to practice law does not insulate him from discovery.")). Mr. Griesbach has, by his own admission, "played a significant role in some of the events" depicted in *MAM* and at issue in this case. *Innocent Killer* at 267. To the extent that producing the relevant, non-privileged materials the Subpoena seeks might affect his representation of Mr. Colborn, it is a quandary for which Mr. Griesbach is entirely responsible and it would be fundamentally unfair to resolve that quandary by depriving Netflix of evidence to which it is entitled. Mr. Greisbach took on this representation knowing that he was deeply involved in the Steven Avery saga. *See Indefensible* at 9 ("If only I had not been involved in the Avery story myself, perhaps then I could have simply enjoyed the craftsmanship" of *Making a Murderer*.). He cannot avoid his responsibility under the Federal Rules of Civil Procedure to comply with the Subpoena by taking on representation of Mr. Colborn. Netflix is not advocating for disqualification of Mr. Gresibach. But if a choice must be made between his ongoing representation of Mr. Colborn (who has two other attorneys at different law firms) or his disclosure of discovery evidence, the law is clear that the truth—the evidence—is paramount.

### III. Mr. Griesbach Long Ago Waived Any Protection that May Once Have Been Afforded Him by Wisconsin's Reporter's Privilege

Mr. Griesbach claims for the first time in his Opposition that materials responsive to Netflix's Subpoena are protected from compelled disclosure by Wisconsin's reporter's privilege, Wis. Stat. § 885.14. *See* Opp. at 14-16. But Mr. Griesbach failed to object to Netflix's Subpoena on the basis of this, or any, privilege. *See* Decl. of L. Walker Ex. 2. Such an objection at this stage is untimely and therefore waived. This is not all, though. Perhaps even more significantly,

12

Case 1:19-cv-00484-BHL   Filed 04/26/22   Page 12 of 16   Document 221

Mr. Griesbach also waived any claim to the reporter's privilege he may have had by joining Mr. Colborn's legal team in 2018.

Federal Rule of Civil Procedure 45 allows a third party served with a subpoena *duces tecum* to serve written objections on the subpoenaing party. But the rule also requires that "[a] person withholding subpoenaed information under a claim that it is privileged . . . expressly make the claim; and [ ] describe the nature of the withheld [responsive material]." Fed. R. Civ. P. 45(e)(2)(A). What's more, Seventh Circuit case law is clear: "Rule 45 requires the recipient of a subpoena to *raise all objections at once*, rather than in staggered batches, so that discovery does not become a game." *Ott v. City of Milwaukee*, 682 F.3d 552, 558 (7th Cir. 2012) (citing *In re DG Acquisition Corp.*, 151 F.3d 75, 81 (2d Cir. 1998)) (cleaned up) (emphasis added); *see also Granite State Ins. Co. v. Pulliam Enters., Inc.*, 2015 U.S. Dist. LEXIS 197712, at *15 (N.D. Ind. Oct. 13, 2015) ("Chartis had the opportunity to raise any specific privilege-based objections in its original objections[.] . . . As a result, Chartis did not timely raise any privilege objections with the specificity needed to preserve the objections."). Failure to comply results in waiver. *See id*.

Here, Mr. Griesbach procedurally waived his ability to seek the protection of the reporter's privilege for at least two reasons. *First*, he failed to object to Netflix's Subpoena on this basis. *See* Decl. of L. Walker Ex. 2 (omitting mention of any privilege, including the reporter's privilege). Mr. Griesbach has offered no excuse for his failure to raise the privilege in his objections in the first instance. Thus, according to Seventh Circuit case law, the privilege is waived. *Ott*, 682 F.3d at 558; *see also* Fed. R. Civ. P. 45(e)(2)(A)(i) (requiring a privilege claim to be "expressly ma[d]e"). *Second*, in neither his objections to Netflix's Subpoena nor his opposition brief does Mr. Griesbach indicate whether any documents have been withheld pursuant to the privilege, let alone describe the nature of any such documents, as is required by

Rule 45. *See* Fed. R. Civ. P. 45(e)(2)(A)(ii). This is an independently sufficient basis to find waiver of the reporter's privilege.

Because Mr. Griesbach has procedurally waived the privilege, the Court need not determine whether the Wisconsin reporter's privilege statute applies to him. *See* Wis. Stat. § 885.14. But even assuming for the sake of argument that the privilege did apply at one point, it certainly no longer does. Mr. Griesbach substantively waived that protection when he joined this case as counsel of record for Mr. Colborn.

Here, *Simon v. Northwestern University*, 321 F.R.D. 328 (N.D. Ill. 2017), is instructive. In *Simon*, defendants served a subpoena on a filmmaker for the production of his unpublished, responsive materials related to the production of a documentary that portrayed events which were the underlying subject matter of the litigation. *Id*. at 329. When he was subpoenaed, however, the filmmaker had already joined the plaintiff's litigation team as counsel of record. *Id*. at 330. The filmmaker-turned-attorney thus refused to produce the materials responsive to defendants' subpoena on the grounds that such materials were protected from compelled disclosure under the Illinois reporter's privilege statute. *Id*. The court assessed whether the filmmaker "waived the reporter's privilege by joining [plaintiff]'s legal team." *Id*.

The court unequivocally found that the privilege had been waived. *Id*. at 335-36 ("We believe the answer to this question is a simple and definitive 'yes.'"). It explained:

> When Hale filed an appearance on Plaintiff's case, he abandoned the role of reporter and transitioned to the role of legal advocate. . . . Hale chose to become as intimately involved in the Plaintiff's litigation as possible by joining Plaintiff's legal team. Assertion of the reporter's privilege in this context is well beyond the scope of the statute.

*Id*. at 333. The court continued:

> [T]he assertion that Hale has not disclosed privileged information to anyone on Plaintiff's legal team is simply false. If Reporter A joins Plaintiff Attorney B's legal team as an investigator, and then shares every single piece of unpublished information he has learned while producing a documentary on the subject of Attorney B's case, then clearly

> Reporter A has waived the reporter's privilege. If Reporter A could somehow magically transfer that same information to Attorney B's head without uttering a word the same analysis would apply: Reporter A waived the reporter's privilege. Finally, ***if Reporter A transformed into Attorney B and brought with him all of the information he learned from producing the documentary*** then Reporter A/Attorney B waived the reporter's privilege.

*Id*. at 333-34 (emphasis added).

Finally, the court made a few other observations which are highly relevant to Mr. Griesbach's arguments in opposition to Netflix's motion to compel:

> What permeates the filmmakers' motion is the failure to recognize the consequences of acting as a reporter and a lawyer on the same matter. . . . Under Hale's analysis, he would enjoy both the benefits of the reporter's privilege and the attorney-client privilege throughout this litigation. Unfortunately for Hale, he cannot have it both ways. Hale cannot pick and choose when it is convenient for him to be a lawyer and when it is convenient for him to be a reporter[.]
>
> [ . . . ]
>
> Significant to the Court is that Defendants are comparatively disadvantaged by Hale's involvement in Plaintiff's representation for the last two years: Plaintiff's counsel (through Hale's mind and memory) has access to certain relevant information and Defendants' counsel does not. Based on the motion to compel, Defendants appreciate this inequity and have rightfully demonstrated their unwillingness to forgive the situation. Defendants have not brought this motion to protect Plaintiff's right to effective representation, but rather to ensure a robust defense for themselves.

*Id*. at 334-35.

Whatever protection under the statute Mr. Griesbach may once have been entitled to as an author prior to joining Mr. Colborn's legal team, he waived it by becoming counsel of record. *Id*. at 332 (Reporter's privilege statutes were "clearly not meant to be used as a vehicle for a party to initiate litigation and retroactively use the reporter's privilege to keep information out of discovery."). Ironically, the court in *Simon* closed with this note: "[T]his opinion is premised on a unique set of facts that we suspect unlikely to reoccur—a journalist converted to an attorney representing a party in a civil action premised on the original journalistic effort." *Id*. at 336. History has now repeated itself, and nothing here counsels a different result.

## CONCLUSION

For these reasons, and for all of the reasons set forth in its Motion, Netflix respectfully requests that this Court issue an order compelling Mr. Griesbach to comply with the Subpoena.

Dated: April 26, 2022

Respectfully submitted,

*s/ James A. Friedman*

James A. Friedman
Godfrey & Kahn, S.C.
One East Main Street
Suite 500
Madison, WI 53703-3300
T: (608) 284-2617
F. (608) 257-0609
jfriedman@gklaw.com

Leita Walker
Isabella Salomão Nascimento
Ballard Spahr LLP
2000 IDS Center, 80 South 8th Street
Minneapolis, MN 55402-2119
T: (612) 371-6222
F: (612) 371-3207
walkerl@ballardspahr.com
salamaonascimentoi@ballardspahr.com

Matthew E. Kelley
Emmy Parsons
Ballard Spahr LLP
1909 K Street, NW, Suite 1200
Washington, D.C. 20006-1157
T: (202) 508-1112
F: (202) 661-2299
kelleym@ballardspahr.com
parsonse@ballardspahr.com

*Counsel for Netflix, Inc.*