IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

ANDREW L. COLBORN,

        Plaintiff,

v.

        Case No. 19-CV-484

NETFLIX, INC.,
CHROME MEDIA, LLC, f/k/a
SYNTHESIS FILMS, LLC,
LAURA RICCIARDI, and
MOIRA DEMOS,

        Defendants.

## MICHAEL GRIESBACH'S REPLY BRIEF OPPOSING DEFENDANT NETFLIX, INC.'S MOTION TO COMPEL

Michael Griesbach by his attorneys, Mayer, Graff & Wallace, LLP, provides the following in opposition of Defendant Netflix, Inc.'s Motion to Compel.

### ARGUMENT

**I.    Netflix Is Not Entitled To Discovery From Mr. Griesbach Under Federal R. Civ. P 26(B)(1)**

Federal R. Civ. P 26(b)(1) outlines the scope of discovery:

> Parties may obtain discovery regarding any **nonprivileged** matter that is relevant to any party's claim or defense and ***proportional to the needs of the case,*** considering the importance of the issues at stake in the action, the amount in controversy, ***the parties' relative access to relevant information,*** the parties' resources, the importance of the discovery in resolving the issues, and ***whether the burden or expense of the proposed discovery outweighs its likely benefit.*** (emphasis added)

Netflix fails this test in nearly every respect.

1

Prior to being retained as counsel in this matter, Mr. Griesbach authored two books concerning the events surrounding the Steven Avery saga: *The Innocent Killer: A Wrongful Conviction and Its Astonishing Aftermath* and *Indefensible: The Missing Truth about Steven Avery, Teresa Halbach, and Making a Murderer.* Netflix asserts Mr. Griesbach's books show that he uniquely possesses non-public information relevant to this case. (Dkt. 206, p. 7) But in fact, other than the three inconsequential matters (see Griesbach Aff., para 4) Netflix cited after scouring through 540 pages in Mr. Griesbach's books, Griesbach relied exclusively on publicly available information. (See Griesbach Aff., para 3.) Mr. Griesbach has repeatedly informed Netflix that the information they seek is already in their possession and is available to them via public access, a much less burdensome alternative than Mr. Griesbach supplying Netflix with a substantial amount of duplicative information.

Further, Mr. Griesbach is not the only person to have taken an interest in the Steven Avery saga and is not the only person to have published materials on the matter. Numerous other authors have published books on Mr. Avery and his convictions. This is where it becomes clear, Netflix is not merely on a search for information relevant to this matter, Netflix seeks to bog down Mr. Colborn's counsel with burdensome discovery requests and affect Mr. Griesbach's ability to effectively act as counsel and potentially entangle him in this matter as a witness.

With a few inconsequential exceptions, Mr. Griesbach has not relied on anything other than the same materials that Netflix had access to in the making of its documentary series. (Griesbach Aff., para 3.) Netflix, by its own admission, has not subpoenaed any other authors who published materials. Interestingly, a number of these authors had actual involvement in the Avery saga. For example, Ken Kratz ("Mr. Kratz") authored a novel, *Avery: The Case Against Steven Avery*

*and What* Making a Murderer *Gets Wrong*. Mr. Kratz was heavily involved in the events portrayed in *Making a Murderer* as he was the lead prosecutor in the Avery matter. Simply reading the title indicates that the material speaks directly to Netflix's *Making a Murderer*. On the other side of the case was Attorney Jerome F. Buting who later authored *Illusion of Justice: Inside Making a Murderer and America's Broken System*. Other authors and their novels and publications about Mr. Avery and the investigations and convictions which he faced include: John Ferak, *Wrecking Crew: Demolishing the Case Against Steven Avery*; Scott Carsen, *Steven Avery: Facts Not Fiction*; Michael Whitmore, *Steven Avery: A Biography*; Rebecca Frost, *Media and the Murderer: Jack the Ripper, Steven Avery and an Enduring Formula for Notoriety*; Roger Harrington, *The Making of a Murderer? The REAL Steven Avery Story*; Arnold Stone, *Steven Avery, A Biography*; Kelli Ritter, *Steven Avery: The Case Through the Eyes of Supporters*; Sam Dennis McDonough, *The Innocence and Guilt of Steven Avery*; Michael D. Cicchini, *Convicting Avery: The Bizarre Laws and Broken System Behind* Making a Murderer; Allison Grussing, *Steven Avery, A Case Study: Making a Murderer Or Making an Identity*; Brenda Irish Heintzelman, *Haters: An Essay on the Reaction to the Steven Avery Movie*; Shaun Atwood, *Un-Making a Murderer: The Framing of Steven Avery and Brendan Dassey*; The Dionysus Group, *Motion Denied: Dismantling Making a Murderer 2*; and Tony Castella, *Steven Avery – Missing Evidence: The Examination of the* Making a Murderer *Documentary.*

Again, Netflix has not made requests of any of these other authors leaving us to ask why they would be so insistent that they need materials for their defense yet they do not seek it from these easily ascertainable potential sources. The answer is clear, Netflix is attempting to pry into Mr. Colborn's counsel's mind and is attempting to burden him with duplicative and unnecessary discovery requests to place more strain on what is already a complex and burdensome matter. But

3

the results of Mr. Griesbach's research and his opinions are well-known to Netflix as they are published. Moreover, it is not Mr. Griesbach's opinions that are being litigated. The issue herein is how Netflix portrayed events and how this portrayal affected Mr. Colborn. Netflix states:

> Specifically, how both the underlying court proceedings and, later, MAM impacted opinions of Mr. Colborn held by not only Mr. Griesbach but also by others in the community – many of whom Mr. Griesbach knew and possibly interviewed for his books – are relevant to Mr. Colborn's reputation and his damages.

(Dkt. 221, p. 4). This assertion seems to imply that, somehow, Mr. Griesbach's personal opinion of Mr. Colborn is at issue in this matter. While Netflix claims it is not seeking anything more than documents, it is clear by this statement that it seeks something more. The fact that Netflix is admitting that it wants to obtain Mr. Griesbach's opinion again points to a desire to undermine Mr. Griesbach's ability to act as a zealous advocate for his client and possibly entangle him in an attorney-witness matter. Further, the relevance of Mr. Griesbach's opinion on the matter clearly does not have as forceful an effect as Netflix insinuates; what need would there be for a trial at all if Mr. Griesbach could simply sway the court of public opinion with such ease?

Simply put, Mr. Griesbach's research and the publishing of his novel have no bearing on the way Netflix chose to portray matters, how people were influenced by such portrayal, and what damages Mr. Colborn has suffered. There is nothing from which Netflix can glean any discoverable or relevant information from which it does not already possess or that it can easily obtain via public access. As such, the burden of and expense of complying with Netflix's subpoena vastly outweighs any benefit, namely, because there is no benefit. Compliance with the subpoena serves only to burden Mr. Colborn's counsel.

As its second justification for subpoenaing one of Mr. Colborn's attorneys, Netflix exaggerates Mr. Griesbach's involvement in the Avery cases, themselves. Griesbach's involvement

4

was extremely limited (see Griesbach Aff., paras 5 and 6), and as pointed out in his initial brief, the subject matter of his involvement is already a matter of public record (Dkt. 214, p. 10.) Netflix has failed to demonstrate that Griesbach's negligible involvement as set forth in his declaration might lead to information that is relevant to Mr. Colborn's defamation case. As Netflix correctly points out, the Court must consider "the totality of the circumstances, weighing the value of the material sought against the burden of providing it, and taking into account society's interest in furthering the truth-seeking function of the particular case before the court." (Dkt. 221, p. 3 citing Patterson v. Avery Dennison Corp., 281 F.3d 676, 681 (7th Cir. 2002)).

Despite Mr. Griesbach's repeated efforts to explain to Netflix that all the information is available to them, Netflix persists. Interestingly, Netflix admits that it has "not issued document subpoenas to any third parties other than the Manitowoc County Sheriff's Department, including those individuals listed in Mr. Griesbach's Opposition." (Dkt. 221, p. 9). This begs the question, **what makes Mr. Griesbach stand out to Netflix such that they are requesting all of this burdensome information**? (Information which they already possess and/or have access to, as Mr. Griesbach and their documentary series *Making a Murderer*, demonstrate.) Netflix has now admitted that they are subpoenaing documents from the Manitowoc County Sheriff's Department and individuals who would actually possess information about the investigation. Id.

**II. Mr. Griesbach Did Not Waive His Reporter Privilege**

One of Mr. Griesbach's objections to the subpoena is that his efforts fall under Wisconsin's reporter privilege. (See generally, Dkt. 214, Mayer Aff., ¶ 3). While Netflix indicates Mr. Griesbach waived such privilege by failing to bring such objection, they neglect to mention that the objection was conveyed during the March 11, 2022, meet and confer regarding Netflix's

5

subpoena. (Mayer Aff., ¶¶ 2-3). Thus, Netflix was aware that Mr. Griesbach was making such objection.

However, Netflix argues that, even if Mr. Griesbach did not waive the privilege, Mr. Griesbach is not entitled to the privilege due to abandoning it when he became counsel for Mr. Colborn. (Dkt. 221, p. 13). As Mr. Griesbach has repeatedly indicated, there is nothing which he relied upon that is being kept secret from Netflix. (See generally Griesbach Aff.) Netflix asserts that there is something which Mr. Griesbach had access to which it does not. The case cited by Netflix, Simon v. Northwestern University, 321 F.R.D. 328, expressed similar concerns:

> Significant to the Court is that Defendants are comparatively disadvantaged by Hale's involvement in Plaintiff's representation for the last two years: Plaintiff's counsel (through Hale's mind and memory) has access to certain relevant information and Defendants' counsel does not. Based on the motion to compel, Defendants appreciate this inequity and have rightfully demonstrated their unwillingness to forgive the situation.

Simon v. Nw. Univ., 321 F.R.D. 328, 335 (N.D. Ill. 2017). There simply is no such inequity here. Again, Mr. Griesbach relied on the same information which Netflix utilized to make its documentary.

Further, the fact that Netflix already has access to the information which it is requesting demonstrates that the burden it is placing on Mr. Griesbach by forcing him to provide the requested documents is not sufficient to overcome the reporter privilege. Pursuant to Wis. Stat. § 885.14(b):

> {A] circuit court may issue a subpoena to compel a news person to testify about or disclose or produce any news, information, or identity of any source . . . if the court finds, after notice to and an opportunity to be heard by the news person that the person requesting the subpoena established, based on information obtained from a person other than the news person . . . by clear and convincing evidence: . . . In a civil action or proceeding that the complaint states a claim upon which relief can be granted.

However, this is not the only limitation. Wis. Stat. § 885.14(c) further provides:

> A circuit court may issue a subpoena under par. (b) only if **all** of the following conditions are met:
> 1. The news, information, or identity of the source is highly relevant to the investigation, prosecution, action, or proceeding.
> 2. The news, information, or identity of the source is necessary to the maintenance of a party's claim, defense, or to the proof of an issue material to the investigation, prosecution, action, or proceeding.
> 3. The news, information, or identity of the source is not obtainable from any alternative source for the investigation, prosecution, action, or proceeding.
> 4. There is an overriding public interest in the disclosure of the news, information, or identity of the source.

Wis. Stat. § 885.14(c) (emphasis added).

The Wisconsin legislature provided an express means by which the reporter privilege may be overcome, and Netflix has failed to demonstrate that this burden has been met. Netflix has not shown that there is information which is highly relevant to its investigation and/or defense, nor has it demonstrated that the documents are *necessary* to their defense or proof of an issue material to this matter. This is because Netflix *cannot* make such a showing as Netflix already possesses the information. Further, because this information is publicly available and in Netflix's possession Netflix cannot possibly argue that the information "is not obtainable from any alternative source". Lastly, Netflix has not demonstrated any "overriding public interest in the disclosure" of the requested documents. The Wisconsin legislature is clear on how Netflix may overcome the privilege. Netflix's argument, based on an Illinois matter interpreting the Illinois Reporter Privilege, does not overcome Wisconsin's own reporter privilege.

Lastly, the facts of Simon are easily differentiated than those herein. While a cursory review of Simon reveals Mr. Hale, reporter-turned-attorney, trying to invoke the reporter privilege, a more in-depth review shows that Mr. Hale was far more involved in the underlying matter than Mr.

Griesbach. Mr. Griesbach did not have anything to do with *Making a Murderer* or the events on which it is premised outside of being an attorney in the District Attorney's office at the time of the search warrant and subsequent recusal of the office. Mr. Hale, on the other hand, was extensively involved in the underlying matter as he was one of the filmmakers, an executive producer of the documentary which the plaintiff argued created false evidence against him to frame him for a murder and which was at the center of the case. Simon at p. 330. Mr. Hale's role included "reading case documents, coordinating and conducting witness interviews, determining what footage to shoot, helping to develop the story structure of the piece, and reviewing raw footage." Id. Mr. Griesbach was in no way involved in the filming or production of *Making a Murderer*. He did not affect the way which Netflix chose to portray information, unlike Mr. Hale who dictated what was portrayed in the documentary at issue.

As such, the court was validly concerned about the information Mr. Hale possessed that could give him an inequitable advantage over the opposing side. Unlike Mr. Griesbach, Mr. Hale was actively involved in the events portrayed in the documentary and the manner in which they were portrayed. Mr. Griesbach had no influence on the events surrounding Mr. Avery, nor did he have any influence on Netflix's portrayal of the events in *Making a Murderer*. Accordingly, the reporter privilege is not waived, nor is there cause to pierce the privilege under caselaw or the statute.

## CONCLUSION

Federal R. Civ. P 26(b)(1) requires the Court consider various factors when determining whether a party may obtain discovery. The Rule provides that a court should consider whether the material requested is proportional to the needs of the case, the parties' resources, and the need for

the requested documents outweighs the burden or expense of the request. Netflix has failed to demonstrate that its need for this discovery outweighs the burden and expense it would place on Mr. Griesbach. The burden they seek to place on Mr. Griesbach simply is not justified or productive.

Furthermore, Netflix readily admits that it has only sought information from one other third party source, the Manitowoc County Sheriff's Department. Certainly there are numerous other parties that were involved in the events depicted in *Making a Murderer* and many others that have written about such events. This begs us to ask the question, why Mr. Griesbach? The answer is clear. Netflix is a multi-billion-dollar corporation which already has access to the documents which they have requested. Mr. Griesbach is an attorney representing a retired law enforcement officer. The document requests are merely a thinly veiled effort to undermine Mr. Griesbach's efforts to act as counsel by taxing his time, energy, and funds, not to mention potentially embroil him in an attorney-witness conflict.

Lastly, Mr. Griesbach has not waived the reporter privilege. Netflix was made aware of the privilege when the parties discussed the subpoena in March. Further, Wisconsin outlines a specific set of circumstances under which the reporter privilege may be overcome. Netflix has failed to demonstrate that they are entitled to the documents pursuant to Wis. Stat. § 885.14(c). <u>Simon</u> simply does not apply as it interprets the Illinois Reporter Privilege, does not consider the Wisconsin statutory exception to the privilege, and is factually distinguishable from the matter at hand.

For the reasons articulated above, Attorney Michael Griesbach respectfully requests this Court DENY Netflix's Motion to Compel.

9

Case 1:19-cv-00484-BHL   Filed 05/10/22   Page 9 of 10   Document 225

Dated this 10th day of May, 2022.

By: /s/ John F. Mayer
_____
John F. Mayer, SBN: 1017384
Attorney for Michael Griesbach
MAYER, GRAFF & WALLACE, LLP
1425 Memorial Drive, Suite B
Manitowoc, WI 54220
Telephone: (920) 683-5800
Facsimile: (800) 465-1031
Email: jmayer@mgwlawwi.com