# Exhibit A

# Marigny v. Centene Mgmt. Co. LLC

United States District Court for the Eastern District of Wisconsin

June 30, 2021, Decided; June 30, 2021, Filed

Case No. 18-cv-1386-bhl

**Reporter**
2021 U.S. Dist. LEXIS 121931 *; 2021 WL 2688717

GLORIA MARIGNY, Plaintiff, v. CENTENE MANAGEMENT COMPANY LLC, Defendant.

**Subsequent History:** Appeal dismissed by Marigny v. Centene Mgmt. Co. LLC, 2021 U.S. App. LEXIS 37219, 2021 WL 5985038 (7th Cir. Wis., Dec. 16, 2021)

**Prior History:** Marigny v. Centene Mgmt. Co. LLC, 2020 U.S. Dist. LEXIS 242591, 2020 WL 7698375 (E.D. Wis., Dec. 28, 2020)

**Counsel:** [*1] Gloria Marigny, Plaintiff, Pro se, Milwaukee, WI.

For Centene Management Company LLC, orignally names as Centene MHS Wisconsin, Defendant: Emery K Harlan, Grady Crosby, III, MWH Law Group LLP, Milwaukee, WI.

**Judges:** BRETT H. LUDWIG, United States District Judge.

**Opinion by:** BRETT H. LUDWIG

## Opinion

### DECISION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

On September 7, 2018, Plaintiff Gloria Marigny filed a *pro se* employment discrimination lawsuit against Defendant Centene Management Company LLC ("Centene"). (ECF No. 1.) In her August 22, 2019 amended complaint, Marigny claims Centene improperly terminated her employment, falsely accused her of bad behavior, and improperly trained her because of her age and race. (ECF No. 29.) She alleges she was harassed and retaliated against for prior Equal Employment Opportunity complaints, potentially in violation of the Age Discrimination in Employment Act (ADEA) of 1967, 29 U.S.C. §§621-634, and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-2(a). (*Id.*) Centene answered the Amended Complaint on September 5, 2019, and, after discovery, filed a motion for summary judgment on all of Marigny's claims. (ECF No. 37.)

With its summary judgment motion, Centene filed a set of 125 proposed factual propositions, and supporting affidavits, which Centene contends show it is entitled [*2] to summary judgment. (ECF Nos. 39-45.) In compliance with Civil Local Rule 56(a), which imposes requirements on parties seeking summary judgment against pro se parties, Centene's motion included a short and plain statement explaining that the Court would accept Centene's proposed factual statements as true unless Marigny submitted evidence contradicting them. (ECF No. 37.) Centene also complied with Civil Local Rule 56(a)'s requirement that it include the text of the local rules and Federal Rules of Civil Procedure relevant to summary judgment. (*Id.*)

On February 27, 2020, Marigny filed a two-page response brief along with nearly 100 pages of additional documents. (ECF No. 52.) The response does not address any of defendant's proposed undisputed facts directly. Instead, Marigny asserts that defendant's counsel violated two unrelated Federal Rules of Civil Procedure and failed to meet and confer with her before filing the motion for

summary judgment. (*Id.*) Marigny also claims that she has included documents that "show that the motion fails to list specific facts to support law of Summary Judgement." (*Id.*) The accompanying documents consist of emails and other materials that Marigny apparently believes support her position. **[*3]** (ECF Nos. 52-1, 52-2.) But none of the materials specifically responds to any of Centene's statement of facts. Nor are the materials supported by any affidavit or declaration that would make them admissible. Five days after filing her response, Marigny added another 47-page filing to the docket, but that filing again offers no explanation of how the documents respond to Centene's proposed undisputed facts or otherwise support her argument. (ECF No. 54.)

Centene filed a reply brief on March 13, 2020. (ECF No. 55.) Two months later, on May 22, 2020, Marigny filed, without leave of Court, a sur-reply opposing the motion for summary judgment. (ECF No. 59.) Centene responded by moving to strike the sur-reply, arguing that the sur-reply was untimely and Marigny had not obtained court permission to file it. (ECF No. 61). Marigny filed a response to Centene's motion to strike. (ECF No. 62.) After reviewing all the parties' filings, and for the reasons stated below, the Court will grant defendant's motion to strike the sur-reply and will also grant the defendant's motion for summary judgment.[1]

## LEGAL STANDARD

Summary judgment is appropriate if the record shows there are no genuine issues of material **[*4]** fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The Court must determine whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). A fact is "material" if, under the governing law, it could have an effect on the outcome of the lawsuit. *Id.* at 248; *Contreras v. City of Chicago*, 119 F.3d 1286, 1291-92 (7th Cir. 1997). A dispute over a material fact is "genuine" only if a reasonable trier of fact could find in favor of the non-moving party on the evidence presented. *Anderson*, 477 U.S. at 248.

The moving party bears the burden of proving the absence of any genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). To survive a properly supported summary judgment motion, the opposing party must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (citations omitted). If the parties assert different views of the facts, the Court must view the record in the light most favorable to the nonmoving party. *E.E.O.C. v. Sears, Roebuck & Co.*, 233 F.3d 432, 437 (7th Cir. 2000).

## UNDISPUTED FACTS

Marigny was hired by Defendant Centene Management Company LLC ("Centene") in October 2017 as one of the company's three service coordinators. (ECF No. 39, ¶ 11.) Marigny's direct supervisor in her new position **[*5]** was Deb Anderson. (*Id.* ¶13.) As a new hire, Marigny was required to complete extensive training to prepare her for her job duties. (*Id.* ¶16.) She participated in orientation and was trained on the required computer systems. (*Id.* ¶¶23, 26.) According to Marigny's first trainer, Marigny was not grasping or retaining the training and had fallen asleep during training sessions. (*Id.* ¶¶27, 28.) Her first trainer was concerned Marigny would not be successful as a service coordinator. (*Id.* ¶27.)

Because Marigny's initial training was not going well, Centene provided Marigny with additional

---

[1] Marigny has also filed a motion to appoint a new judge. (ECF No. 70). This is the fourth time she has sought such relief. (*See* ECF Nos. 64, 66, 68). Because Marigny has failed to identify any basis for recusal, for the same reasons the Court denied her previous motions to appoint a new judge, the Court will deny this motion.

training and a new employee responsible for her training, Karen McGuigan. (*Id.* ¶31.) McGuigan, a Senior Trainer-Auditor, had successfully provided training to numerous employees and was to train Marigny on Centene's policies and procedures. (*Id.* ¶¶ 32-34.) During this training, McGuigan reported to Anderson that Marigny was sleepy during training and struggled to understand the information. (*Id.* ¶35.) McGuigan also did not think Marigny would be a successful service coordinator. (*Id.* ¶36.)

In addition to formal training, Anderson asked the two other service coordinators, Vonetta Davis and Markella Reed, to [*6] work with Marigny as preceptors. (*Id.* ¶¶37, 38.) As the primary preceptor, Davis trained Marigny on the use of required computer programs, the proper way to interact with members, how to set up a National Committee for Quality Assurance's (NCQA) compliant voicemail message, and where to find required materials on the company's intranet. (*Id.* ¶¶39, 43.) Reed would serve as a preceptor for Marigny when Davis was unavailable. (*Id.* ¶48.) Both Reed and Davis reported to Anderson that Marigny repeatedly fell asleep, struggled to comprehend her job requirements, and inappropriately interacted with members. (*Id.* ¶¶44, 45, 51-55.) Based on their interactions with Marigny, neither Reed nor Davis believed Marigny could be a successful service coordinator at Centene. (*Id.* ¶¶44, 56.)

Because of the difficulty Marigny was having understanding and comprehending the required training, Anderson was concerned about Marigny's ability to meet the expectations of a service coordinator. (*Id.* ¶61.) Anderson had numerous meetings and conversations with Marigny during which she found Marigny defensive and blamed any shortcomings she may have had on her training and the company's technology. (*Id.* ¶63.) In response, [*7] a member of Centene's IT department confirmed that Marigny's technology was working properly and, despite Marigny's claims, all her required job aides were available on the intranet. (*Id.* ¶64.) After two trainers and the other two service coordinators were unable to teach Marigny how to perform her job, Anderson arranged for Marigny to participate by video in training for company employees in the Eau Claire office. (*Id.* ¶80.) At this point, when Anderson attempted to document Marigny's training with a training checklist, a company requirement for all employees, Marigny refused to acknowledge any of the training she had previously received. (*Id.* ¶87.)

On February 21, 2018, Anderson was informed that Marigny had not completed "Cornerstone" training, an important training requirement for all Centene employees. (*Id.* ¶65.) In response, Marigny claimed she had not received any of the emails reminding her to take the training. (*Id.* ¶68.) Anderson again requested assistance from the IT department to ensure Marigny's email was working properly. (*Id.*) In addition to confirming that Marigny's email was working, a member of the IT department was able to verify that Marigny had opened and read some [*8] of the emails she claimed not to have received. (*Id.*) Additionally, Anderson also became aware that Marigny's voicemail was still not NCQA compliant. (*Id.* ¶70.) By not completing her training on time and not having an NCQA compliant voicemail, Marigny put Centene at risk of violating contractual commitments Centene had made to certain customers. (*Id.* ¶75.)

Throughout Marigny's training, Anderson continuously updated her direct supervisor, Michelle Schroeder. (*Id.* ¶95.) On March 9, 2018, Anderson and Schroeder met with Karen Lusher, a Human Resources manager, to discuss Marigny's failure to absorb and comprehend the provided training and her failure to comply with certain employee requirements. (*Id.* ¶¶95, 96.) At first, Lusher recommended that Marigny be placed on a Performance Improvement Plan. (*Id.* ¶96.) However, after further consideration later that day, Lusher and Anderson concluded that Marigny would not be able to successfully complete a Performance Improvement Plan and recommended that Schroeder terminate Marigny's employment

with Centene. (*Id.* ¶97.) Schroeder agreed with the recommendation and terminated Marigny's employment effective March 9, 2018. (*Id.*) Marigny was terminated **[*9]** based on her inability to navigate the technology at Centene or absorb and retain the information necessary to perform her job. (*Id.*) The decision was not based on Marigny's age, race, or previously filed claims of discrimination against prior employers. (*Id.* ¶¶100, 111.)

## ANALYSIS

### I. The Court Will Strike Marigny's Sur-Reply Filings Because She Did Not Seek Leave of Court and They Are Untimely.

More than two months after Centene filed its summary judgment reply brief, Marigny filed two documents, apparently in opposition to Centene's motion. She also filed a letter she had written to defendant's counsel. (ECF Nos. 58, 59, 60.) Marigny did not seek leave of Court before filing these documents and did not provide any justification for the additional filings. Centene moved to strike these materials as an improper and unauthorized sur-reply. (ECF No. 61.) Marigny opposed the motion to strike by citing to state court procedural rules that have no application in federal court and otherwise failed to justify her sur-reply filings. (ECF No. 62.)

After reviewing the various filings, the Court will grant Centene's motion to strike. Although the Court liberally construes a *pro se* plaintiff's pleadings, **[*10]** "pro se litigants are not entitled to a general dispensation from the rules of procedures or court imposed deadlines." *Jones v. Phipps*, 39 F.3d 158, 164 (7th. Cir. 1994). The Court's local rules provide for three sets of filings on summary judgment: (1) the Moving Party's Principal Materials in Support of Motion, (2) the Opposing Party's Materials in Opposition, and (3) the Moving Party's Materials in Reply. *See* Civ. L. R. 56(b). No additional filings are permitted without Court permission. To file additional materials, a party must file a motion asking the Court for leave to make the additional filing and attach the proposed filing to the motion. Civ. L. R. 7(i). Marigny did not seek permission from the Court before filing her sur-reply,[2] and even if she had, the Court would have denied her request. *See Groshek v. Time Warner Cable, Inc.*, No. 15-C-157, 2016 U.S. Dist. LEXIS 104952, at *13 (E.D. Wis. Aug. 9, 2016) ("This court grants such leave only rarely; the local rules provide for a motion, a response and a reply, and in the vast majority of cases, this is sufficient."). Moreover, nothing in Marigny's sur-reply filings affects the outcome on Centene's summary judgment motion. The sur-reply documents largely restate conclusory allegations found in the complaint and do not address Centene's factual assertions in support of its motion for summary judgment. **[*11]** Thus, Marigny's sur-reply filings, (ECF Nos. 58, 59, 60), will be stricken from the record.

### II. The Undisputed Facts Defeat Marigny's Discrimination and Retaliation Claims.

In Marigny's response to Centene's motion for summary judgment, she does not respond to any of defendant's arguments or address any of the asserted facts. Accordingly, the Court will consider defendant's asserted facts as undisputed. *See* Fed. R. Civ. P. 56(e)(2). Since those undisputed facts show Centene is entitled to summary judgment, the Court will grant summary judgment. *See* Fed. R. Civ. P. 56(e)(3).

To survive summary judgment on her discrimination claim, Marigny must show evidence sufficient for a reasonable jury to find that she was subject to a materially adverse employment action because of her age or race. *See Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016) ("Th[e] legal standard ... is simply whether the

---

[2] This is not the first time that Marigny has failed to follow the Court's local rules or the Federal Rules of Civil Procedure. *(See* ECF No. 36.)

evidence would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion or other proscribed factor caused the discharge or other adverse employment action."). To survive summary judgment on her retaliation claim, Marigny must come forward with evidence sufficient to prove that the defendant discriminated against her either because she opposed an employment [*12] practice made unlawful by either the ADEA or Title VII, or that she participated in any manner in an investigation, proceeding, or hearing under either act. *See* 42 U.S.C. §2000e-3(a); 29 U.S.C. §623(d).

Marigny has suffered at least one adverse employment action; she was terminated from her job. Marigny's complaint also alleges that Centene declined to train her or provide her with the tools she needed to perform her job, that Centene attempted to coerce her into signing documents attesting to events that did not take place, that she received less training than her peers, and that Centene did not provide her with orientation. (ECF No. 29 at 2-3.) Marigny also alleges that, after discovering she had previously filed an employment discrimination complaint against a former employer, Centene retaliated against her. (*Id.*)

The undisputed facts show that none of these potentially adverse employment actions were based on Marigny's age, race, or prior allegations of discrimination. The record establishes that Centene terminated Marigny's employment because she was unable to perform the duties of her position. (ECF No. 39, ¶97.) Marigny missed important deadlines, fell asleep during training, and failed to comply with important company [*13] policies. (*Id.* ¶¶75, 89, 91.) Before terminating her, Centene provided Marigny with a significant amount of training. In many cases, Centene provided her with more training opportunities than they provided other new employees. (*Id.* ¶83.) The decision to terminate Marigny was not based on her age or race. (*Id.* ¶¶99-101.)

Marigny's retaliation claim likewise fails as a matter of law. The record shows that Centene could not have retaliated against Marigny for prior protected employment activities because, at the time of her termination, Centene was not aware that she had made prior allegations of discrimination or retaliation. (*Id.* ¶110.)

Since there are no genuine issues of material fact, and all the undisputed facts support Centene's motion for summary judgment, no reasonable jury could find merit in any of Marigny's claims. Accordingly, Centene is entitled to summary judgment on all of Marigny's claims.

## CONCLUSION

**IT IS HEREBY ORDERED** that plaintiff's motion to appoint a new judge, (ECF No. 70), is **DENIED**.

**IT IS FURTHER ORDERED** that defendant's motion to strike plaintiff's sur-reply, (ECF No. 61), is **GRANTED**. Plaintiff's sur-reply filings, (ECF Nos. 58, 59, 60), are stricken from the record. [*14]

**IT IS FURTHER ORDERED** that defendant's motion for summary judgment, (ECF No. 37), is **GRANTED** and plaintiff's case is **DISMISSED** with prejudice. The clerk's office is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin on June 30, 2021.

/s/ *Brett H. Ludwig*

BRETT H. LUDWIG

United States District Judge

**End of Document**