IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

ANDREW L. COLBORN,

        Plaintiff,

vs.

NETFLIX, INC.; CHROME MEDIA
LLC, F/K/A SYNTHESIS FILMS, LLC;
LAURA RICCIARDI; AND MOIRA
DEMOS,

        Defendants.

Civil No.: 19-CV-484-BHL

**DEFENDANT NETFLIX, INC.'S SUPPLEMENTAL BRIEF
IN SUPPORT OF ITS MOTION TO COMPEL PRODUCTION
<u>OF DOCUMENTS RESPONSIVE TO SUBPOENA TO MICHAEL GRIESBACH</u>**

At the request of the Court, Defendant Netflix, Inc., ("Netflix") respectfully submits this supplemental brief regarding the Wisconsin Reporter's Privilege in support of its motion for an order directing Mr. Griesbach to produce documents responsive to its third-party subpoena (the "Subpoena").

**INTRODUCTION**

The circumstances surrounding Netflix's motion to compel the production of documents by Michael Griesbach are unusual, as the parties, Mr. Griesbach, and the Court all acknowledge. That is, it is unusual for a party's legal counsel to also be a fact witness in the matter based on the counsel's activities *prior to* taking on the party's representation. That, however, is precisely the situation Mr. Griesbach has brought upon himself. As Netflix detailed in its opening brief, Dkt. 206, Mr. Griesbach was "obsessed" with the Steven Avery case for more than 15 years before Plaintiff Andrew Colborn ever retained him as his counsel, first during his time as an assistant district attorney for Manitowoc County, Wisconsin, and then as the author of two books about the Avery case and about the documentary series at the heart of this matter, *Making a Murderer*.

Thus, as this Court recognized at a hearing on May 25, Netflix is not trying to *turn Mr. Griesbach into* a fact witness. Rather, Mr. Griesbach simply *is* a fact witness. Despite this, Mr. Griesbach has, to date, refused to produce even a single document responsive to the Subpoena and has raised various arguments against compelled disclosure, all of which—save one—the Court rejected at the May 25 hearing on Netflix's motion. The issue on which the Court reserved judgment is whether Mr. Griesbach is protected from compelled disclosure by the Wisconsin Reporter's Privilege, Wis. Stat. § 885.14. The Court requested supplemental briefing on that issue, which Netflix now provides.

1

Netflix recognizes the significance and importance of the reporter's privilege, and does not make arguments against its application lightly. Netflix concedes that, had Mr. Griesbach remained an author rather than a legal advocate, he might have found some refuge in that statute. But he did not. As detailed below and in Netflix's reply brief in support of this Motion, Dkt. 221, Mr. Griesbach waived any protection he may once have had under the reporter's privilege for two independent reasons.

*First*, Mr. Griesbach failed to assert the protection of the privilege in his written objections to the Subpoena. On this basis alone, he waived the privilege as a procedural matter. *Second*, by becoming counsel of record for Mr. Colborn (who featured prominently in Mr. Griesbach's books) and by using information he gathered for his books to litigate Mr. Colborn's claims against Netflix, Mr. Griesbach surrendered any claim to be a journalist and waived the privilege as a substantive matter. Stated differently, by using materials he gathered as an author as a sword in this proceeding, for which he is counsel of record, he can no longer hide behind the shield the statute's protections might otherwise provide.

On either, or both, of these bases, the Court should compel Mr. Griesbach to produce documents responsive to the Subpoena.[1]

---

[1] Further, whatever the Court decides on the issue of privilege, Netflix maintains that at least some of the documents responsive to the Subpoena are subject to compelled disclosure because they were not "obtained or prepared" by Mr. Griesbach in the "news person's capacity [of] gathering, receiving, or preparing news or information for potential dissemination to the public." Wis. Stat. § 885.14(2)(a). These include documents responsive to Request Nos. 7-11 in the Subpoena.

## I. MR. GRIESBACH WAIVED ANY PROTECTION THE WISCONSIN REPORTER'S PRIVILEGE MAY HAVE AFFORDED HIM

### a. By Failing to Object to the Subpoena on the Basis of the Reporter's Privilege, Mr. Griesbach Waived any Claim of Privilege He May Have Had

As a threshold matter, Mr. Griesbach's characterization of these documents as "journalistic materials" under the Wisconsin statute came too late. He thus waived any protection the Wisconsin statute may have afforded him by failing to assert the privilege in his written objections to the Subpoena. As the Seventh Circuit has made clear, "Rule 45(c)(2)(B) requires the objecting party to raise its objection before 'the earlier of the time specified for compliance or 14 days after the subpoena is served'" "so that discovery does not become a game." *Ott v. City of Milwaukee*, 682 F.3d 552, 558 (7th Cir. 2012) (quoting Fed. R. Civ. P. 45(c)(2)(B) and citing *In re DG Acquisition Corp.*, 151 F.3d 75, 81 (2d Cir. 1998)); *see also Richter v. Mut. Of Omaha Ins. Co.*, 2006 U.S. Dist. LEXIS 26845, at * 8 (E.D. Wis. May 5, 2006) (objections asserted 19 days after service of third-party subpoena deemed waived because Rule 45's 14-day time limit is to be "strictly constru[ed]," and the "failure to timely file an objection *will result in waiver* of the right to object to enforcement of the subpoena.") (emphasis added); *Appleton Papers Inc. v. George A. Whiting Paper Co.*, 2009 U.S. Dist. LEXIS 71322, at *8 (E.D. Wis. July 31, 2009) (finding objections, "the first inkling" of which "came roughly a month" after service of subpoena, waived for failure to comply with 14-day requirement).

Netflix served the Subpoena on Mr. Griesbach on February 10, 2022, *see* Second Decl. of Leita Walker ¶ 2 & Ex. 9, thereby obligating Mr. Griesbach to assert *all objections* to the subpoena by February 24, 2022. Counsel for Mr. Griesbach served on Netflix objections to the Subpoena on February 24, but failed to assert *any* privilege, the reporter's privilege or otherwise. *See* Decl. of L. Walker at Ex. 2, Dkt. 207 (omitting any mention of any privilege, including the reporter's privilege). As Mr. Griesbach acknowledged, his counsel first asserted the privilege

3

two weeks later at a March 11 meet and confer—*29 days after* Netflix served the Subpoena on Mr. Griesbach and *15 days after* service of Mr. Griesbach's written objections.[2] On this basis alone, Mr. Griesbach should be ordered to comply with the Subpoena.

### b. Even if Mr. Griesbach Had Timely Raised the Reporter's Privilege, He Waived the Protections of the Privilege When He Took on the Representation of Mr. Colborn

As Netflix argued at length in its Reply brief, Mr. Griesbach waived the privilege in a separate, independent way: by morphing from an alleged journalist into a legal advocate when he became counsel of record for Mr. Colborn and began using and sharing his journalistic work product to pursue a damage award against Netflix of more than $10 million. Second Walker Decl. Ex. 10 (Pl's Responses to Chrome's First Interrogatories at 6).

*Simon v. Northwestern University*, 321 F.R.D. 328 (N.D. Ill. 2017), dealt with a nearly identical situation and is thus directly on point. Netflix discussed that case at length in its Reply brief and will not rehash that discussion here except to address Mr. Griesbach's two arguments from the May 25 hearing, both of which lack merit.

Mr. Griesbach first argued that *Simon* is distinguishable on its facts, though his argument suggests a fundamental misunderstanding of that case. The facts of *Simon* are eerily similar to those here: Andrew Hale created a work of nonfiction (albeit a film, rather than a book) about the plaintiff, a man named Alstory Simon. Mr. Hale's work of nonfiction was supportive of Mr.

---

[2] Indeed, even if controlling case law pointed to judicial discretion rather than mandatory waiver, there is no reason here for leniency. Four days after Mr. Griesbach served his written objections, Mr. Colborn produced to the parties in this matter a significant number of text message communications and withheld from that production all communications with journalists on the basis that the text exchanges were protected by the Wisconsin Reporter's Privilege. In other words, at the very time Mr. Griesbach was preparing his written objections with his legal counsel, he was acutely aware of the protection afforded journalists by the statute but failed to mention that statute in his written objections.

4

Simon and questioned whether accusations of misconduct against him were accurate. Then Mr. Hale became Mr. Simon's attorney. As the court in *Simon* concluded, Mr. Hale waived the reporter's privilege by joining the plaintiff's legal team.[3] Just the same, Mr. Griesbach created a work of nonfiction about Mr. Colborn, the Plaintiff here, which was supportive of Mr. Colborn and which questioned whether accusations against him were accurate. And then Mr. Griesbach became Mr. Colborn's attorney. Just as the *Simon* court concluded, so too should this Court conclude that, through his actions, Mr. Griesbach placed himself beyond the bounds of protection under the reporter's privilege.

Second, Mr. Greisbach argued that this Court should distinguish the *Simon* case as it interpreted the Illinois reporter's privilege, and the Wisconsin privilege is different, pointing specifically to Wis. Stat. § 885.14(4), which states that "disclosure to another person or dissemination to the public of news, information, or the identity of a source . . . by a news person does not constitute a waiver of the protection from compelled disclosure." Wis. Stat. § 885.14(4). As discussed at the hearing, there is a dearth of case law on Wisconsin's relatively new reporter's privilege and subsequent research has revealed a dearth of legislative history, as well. But both common sense and case law from other jurisdictions reveal the futility of Mr. Griesbach's position and confirm that, whatever he might have safely disclosed *as a journalist* without waiving the privilege, he waived the privilege when he assumed the role of counsel for Mr. Colborn in this action.

As the undersigned explained on May 25, Wis. Stat. § 885.14(4) is a provision typical of many state reporter's privilege laws and reflects the fact that journalists are in the business of not

---

[3] At the May 25 hearing, now-discharged counsel for Mr. Griesbach seemed to argue that Mr. Hale's documentary was the subject of plaintiff's defamation claim in *Simon* and that this somehow was material to the outcome of the case. That is patently incorrect.

5

just gathering news, but also publishing news, and that publishing *some* of what they gather does not waive the privilege for what they hold back. If it did, the privilege would be pointless because no journalist gathers information only to lock it all up and keep it secret. As the *Simon* court explained, "[a] reporter gathers information from her sources for the very purposes of disclosing the information. Thus, a reporter obviously cannot waive her privilege as to undisclosed source information by sharing other portions of the gathered source information with the public." 321 F.R.D. at 333; *see also People ex rel. Scott v. Silverstein*, 89 Ill. App. 3d 1039, 1044 (Ill. 1st Dist. Ct. App. 1980) ("Thus, to find that [the journalist] waived his privilege, simply because he revealed some of his sources . . . would defeat the express purpose of this legislation."), *rev'd on other grounds* 87 Ill. 2d 167 (1981)*; In re Venezia*, 191 N.J. 259, 273 (2007) ("publication of an article does not constitute a waiver of a reporter's privilege to refuse to disclose information obtained in the course of pursuing his professional activities, even if the source of the article is identified."); *United States v. Cuthbertson*, 630 F.2d 139, 147 (3d Cir. 1980) (holding that the privilege extends to unpublished materials in the possession of CBS); *Saxton v. Ark. Gazette Co.*, 264 Ark. 133, 136 (1978) ("Neither can we agree with appellant's contention that appellee . . ., by the voluntary disclosure of the identity of one of her sources, waived whatever privilege she had."); *In re Paul*, 270 Ga. 680, 686 (1999) ("Contrary to the state's contention, publication of part of the information gathered does not waive the privilege as to all of the information gathered on the same subject matter because it would chill the free flow of information to the public.") (marks and citation omitted)); *In re Taylor*, 412 Pa. 32, 44 (1963) ("a waiver by a newsman applies only to the statements made by the informer which are actually published or publicly disclosed and not to other statements made by the informer to the newspaper.").

Separately, the *Silverstein* case—which is cited in *Simon*—also sheds light on what the phrase "disclosure to another person" in Wis. Stat. § 885.14(4) means. Specifically, *Silverstein* addressed whether a journalist had waived the protection of the reporter's privilege by disclosing some of his sources to a prosecutor in a criminal matter. As the court concluded, there was no indication that the journalist had "personally motivated" the actions of the prosecutor in investigating the matter at hand. *Silverstein*, 89 Ill. App. 3d at 1045. Rather, his "regular contacts" with the attorney "were clearly within the scope of [his] role as a newspaper reporter and any information [he] may have given [the attorney] concerning his news-gathering efforts, most of which was made public in [his] articles, did not cause [him] to forfeit his privilege as a reporter." *Id*. As the court made clear however, had the journalist "abandoned the role of newspaper reporter and *assumed the duties of an investigator*, then arguably he waived his reporter's privilege." *Id*. (internal marks omitted) (emphasis added).

In other words, sometimes journalists need to tell their sources certain unpublished information to provide context for the questions they pose and the information they seek, and those sorts of disclosures do not constitute a waiver of the privilege, either—as both the Wisconsin statute and other courts around the country recognize. For example, in *In re Venezia*, the New Jersey Supreme Court explained that the state's reporter's privilege could be waived but that it is "[d]isclosure of information . . . by a newsperson *outside* of the newsgathering and news reporting process [that] constitutes a waiver of the privilege." 191 N.J. at 271 (emphasis added). Courts have also held that it is one thing to disclose information for the purpose of newsgathering and quite another to disclose information in pursuit of an agenda—and that the latter constitutes waiver even though the former does not. For example, in *Ayala v. Ayers*, a federal court noted that "[i]n the interests of fairness, a journalist/author should not be permitted

7

to disclose information to advance the interests of one litigant, and then invoke the journalist's privilege to prevent discovery of this same information by another litigant." 668 F. Supp. 2d 1248, 1250 (S.D. Cal. 2009).[4] Similarly, the Second Circuit Court of Appeals has held that "[t]hose who do not retain independence as to what they will publish but are subservient to the objectives of others who have a stake in what will be published have either a weaker privilege or none at all." *Chevron Corp. v. Berlinger*, 629 F.3d 297, 307-08 (2d Cir. 2011); *see also Pinkard v. Johnson*, 118 F.R.D. 517, 523 (M.D. Ala. 1987) ("A reporter is not free to give a sworn statement to a litigant, and later invoke the qualified reporter privilege to keep this information from the Court.").[5]

---

[4] The journalist in that action "admit[ted] that he [was] biased in favor of Petitioner, and it can be assumed that [he] wished to be of assistance to Petitioner's counsel. It would be unfair and improper to allow [him] to invoke the journalist's privilege with respect to this same material now that Respondent's counsel wants to see it." *Id.*

[55] *See also Wheeler v. Goulart*, 593 A.2d 173, 175 (D.C. Ct. App. 1991) ("[A]ppellant cannot choose to disclose to others in 1986 – with no request for confidentiality *and under circumstances which did not involve any newsgathering function* – that Fulwood was her source for the classified information . . . and then choose in 1991 – as a witness in a judicial proceeding – not to make this same disclosure." (emphasis added)); *News-Journal Corp. v. Carson*, 741 So. 2d 572, 574 (Fla 5th DCA 1999) ("Although the statute provides that publication or broadcasting the information does not waive the privilege, the act of filing a document in the public records [of a lawsuit] is a different matter."); *Diaz v. Eighth Jud. Dist. Ct.*, 116 Nev. 88, 101 (2000) ("We emphasize that our decision today extends protection only to the journalist's newsgathering and dissemination activities within the journalist's professional capacity. Nevada's news shield statute provides no protection for information gathered in other capacities. We further recognize that although the news shield statute provides an absolute privilege to reporters engaged in the newsgathering process, there may be certain situations . . . in which the news shield statute might have to yield so that justice may be served."). And as the Second Circuit articulated in a broader discussion about evidentiary privileges, "[w]hether fairness requires disclosure is best decided on a case by case basis, and depends primarily on the specific context in which the privilege is asserted. For example, we look to see whether the privilege holder took affirmative steps to inject privileged materials into the litigation." *Sims v. Blot*, 534 F.3d 117, 132 (2d Cir. 2008) (internal marks and citations omitted).

Thus, for example, if a journalist is investigating a news tip—what amounts to a rumor—she typically has to share the tip with her sources in order to assess its validity. The journalist may ultimately decide the tip is baseless and never publish anything about it, but the fact that she shared it with discrete individuals as part of her investigative efforts does not, itself, waive the privilege such that she could be compelled to testify about the tip.[6] Similarly, a journalist attempting to determine if a leaked document is authentic may need to share the document or information about it to other sources before deciding whether or how to report on it. In short, piecemeal disclosure of unpublished information *in the context of a journalist's newsgathering and publishing activities* does not waive the privilege, and the "disclosure to another person" language in Wis. Stat. § 885.14(4) simply makes that clear.

But that's not what we're talking about here. Netflix is not claiming Mr. Griesbach waived the reporter's privilege by giving unpublished information to his publisher or his agent or even his sources in the course of writing and publishing his books. Rather, it is arguing that he is a journalist-turned-counsel just like the filmmaker in *Simon* and that, just like that filmmaker, he waived the privilege when he stopped using his journalistic work product to inform and enlighten the public and started using it to "personally motivate[]" Mr. Colborn's legal strategy in his attempt to win a multi-million dollar lawsuit against Netflix. *See Silverstein*, 89 Ill. App. 3d at 1045.

Like the filmmaker in *Simon*, Mr. Griesbach appears to not "recognize the consequences of acting as a reporter and a lawyer on the same matter." 321 F.R.D. at 334. Mr. Griesbach "'shared' all of the information he gathered during the [research and writing of his books] when

---

[6] In addition to sources, journalists sometimes need to share unpublished information with their editors, publishers, and lawyers, among others, and Wis. Stat. § 885.14(4) likewise allows for that.

9

he joined [Mr. Colborn's] legal team" and thus "he has placed at risk all of the source information that may have been shielded by the reporter's privilege." *Id*. at 333, 336. Moreover, whatever Mr. Griesbach might have safely shared as a journalist, he "clearly acted outside the scope of a reporter when he became an attorney on Plaintiff's legal team," and "[a]fter serving as Plaintiff's counsel for more than two years, [the attorney] cannot artificially divest himself of that status in order to take advantage of the reporter's privilege." *Id.* at 332. When Mr. Griesbach "filed an appearance on Plaintiff's case, he abandoned the role of reporter and transitioned to the role of legal advocate. . . . Assertion of the reporter's privilege in this context is well beyond the scope of the statute." *Id*. at 332-33.

This all makes perfect sense in light of the policies animating journalist's privileges around the country—i.e., that subpoenas should not distract journalists from their important, constitutionally protected work of gathering and reporting news, nor burden journalists or their newsrooms with unnecessary expense, nor threaten journalists' independence (and reputations for neutrality) by positioning them as an extension of law enforcement or as advocates for private litigants. *See United States v. LaRouche Campaign*, 841 F.2d 1176, 1182 (1st Cir. 1998); *United States v. Cuthbertson*, 630 F.2d 139, 147 (3d Cir. 1980); *Zerilli v. Smith*, 656 F.2d 705, 712 (D.C. Cir. 1981); *Silkwood v. Keer-McGee Corp.*, 563 F.2d 433, 437 (10th Cir. 1977); *Branzburg v. Hayes*, 408 U.S. 665, 709 (1972) (Powell, J., concurring) ("Certainly, we do not hold . . . that state and federal authorities are free to 'annex' the news media as 'an investigative arm of government.'").

Subpoenas to attorneys such as Mr. Griesbach simply do not threaten these policies. Compelling Mr. Griesbach's compliance with the subpoena cannot inhibit his newsgathering activities or undermine future claims of "journalistic objectivity" in any way materially different

than what he voluntarily accepted, even invited, when, nearly four years ago, he voluntarily abandoned any semblance of neutrality and agreed to sue Netflix on Mr. Colborn's behalf. Similarly, as counsel of record, Mr. Griesbach quickly became and remains deeply involved in this lawsuit, and compelling his compliance with the subpoena simply cannot burden or distract him in any manner materially greater than the burden he already faces as counsel of record. Simply stated, the policy considerations behind the privilege no longer apply to Mr. Griesbach, and on this basis as well, Mr. Griesbach should be compelled to comply with the subpoena.

II. THE COURT NEED NOT—AND SHOULD NOT—ADDRESS THE FOUR-FACTOR TEST FOR OVERCOMING THE PRIVILEGE

Even in the absence of waiver, pursuant to Wisconsin's Reporter's Privilege, a court may order discovery of a journalist's newsgathering materials if four conditions are met:

1. The news, information, or identity of the source is highly relevant to the . . . proceeding.
2. The news, information, or identity of the source is necessary to the maintenance of a party's . . . defense, or to the proof of an issue material to the . . . proceeding.
3. The news, information, or identity of the source is not obtainable from any alternative source for the . . . proceeding.
4. There is an overriding public interest in the disclosure of the news, information, or identity of the source.

Wis. Stat. § 885.14. At the May 25 hearing, counsel for Mr. Griesbach repeatedly argued that Netflix had failed to satisfy these four conditions and thus its motion to compel should be denied.

This argument raised interesting questions about whether Netflix could meet those conditions, but ignored that *Netflix has never actually tried to do so*. Indeed, Netflix has been deliberately silent on whether—in the unlikely event the Court deems the privilege unwaived—the privilege has been overcome. Netflix has been silent on this issue not only because the case for waiver is so strong that argument on the four conditions is superfluous but also because it believes so strongly in the importance of the privilege that it does not wish to chip away at its

protections in a way that could harm *bona fide* news persons who do important work in this State. Moreover, this case, given its unusual fact pattern, is hardly the best vehicle for analyzing the contours of the four-factor test. For all of these reasons, and also because any written order on the four-factor test would likely carry disproportionate weight given the lack of published decisions interpreting the statute, Netflix discourages the Court from issuing any *dicta* on whether the test has been or could be satisfied.

That said, without attempting to show that it has satisfied all four factors, Netflix directs the Court's attention to the fourth and final one, which requires examination of the public interest. As the case law discussed above makes clear, courts take an unfavorable view toward journalists who try to put a thumb on the scales of justice by using the privilege as both a shield and a sword, offering information to help one party, while withholding information from another. *See supra* at 7-8. As a California court said, providing selective access to litigants of newsgathering material is simply not fair. *See Ayala*, 668 F. Supp. 2d at 1250. And as a Nevada court made clear, there are certain circumstances where justice requires that a journalist be compelled to provide discovery of their newsgathering material. *See Diaz*, 116 Nev. at 88.

Here we have more than a thumb on a scale—more than mere selective or strategic disclosure by a journalist. Instead, we have a long-time lawyer and two-time author who has completely abandoned any journalistic principles of neutrality and objectivity he once held in pursuit of a multi-million dollar damage award that he hopes to obtain through use of journalistic work product that he mistakenly believes is somehow still sacrosanct.

For 15 years before Mr. Colborn retained him as counsel, Mr. Griesbach "obsessed" over the Avery saga, first as a prosecutor and then as the author of two books on the matter. Whether Mr. Griesbach, a fact witness in this case who even appears in *Making a Murderer* itself, should

have accepted representation of Mr. Colborn is a question for another day, but the fact remains that once Mr. Griesbach became counsel for Mr. Colborn, he unquestionably drew on his lengthy history with the facts at issue in this litigation to benefit Mr. Colborn, indeed even asking the fact-checker of his book, Ms. Schuler, to edit an early draft of Mr. Colborn's first complaint in this lawsuit. Second Walker Decl. Ex. 11 (COLBORN-004587). Prohibiting Netflix from receiving access to the same information that Mr. Griesbach accumulated prior to his representation of Mr. Colborn places Netflix at a distinct disadvantage that exists as a direct consequence of Mr. Griesbach's actions in this matter. *See Hickman v. Taylor*, 329 U.S. 495, 507 (1947) ("Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation.").

## CONCLUSION

For the foregoing reasons, and for those stated in Netflix's earlier briefing on this matter, Netflix respectfully requests that the Court find that Mr. Griesbach waived any privilege to which he may once have been entitled under Wisconsin's Reporter's Privilege, and that Mr. Griesbach be compelled to comply in full with the Subpoena.

Dated: June 8, 2022                     Respectfully submitted,

                                        s/ James A. Friedman

                                        James A. Friedman
                                        Godfrey & Kahn, S.C.
                                        One East Main Street
                                        Suite 500
                                        Madison, WI 53703-3300
                                        T: (608) 284-2617
                                        F. (608) 257-0609
                                        jfriedman@gklaw.com

                                        Leita Walker
                                        Isabella Salomão Nascimento
                                        Ballard Spahr LLP
                                        2000 IDS Center, 80 South 8th Street
                                        Minneapolis, MN 55402-2119
                                        T: (612) 371-6222
                                        F: (612) 371-3207
                                        walkerl@ballardspahr.com
                                        salamaonascimentoi@ballardspahr.com

                                        Matthew E. Kelley
                                        Emmy Parsons
                                        Ballard Spahr LLP
                                        1909 K Street, NW, Suite 1200
                                        Washington, D.C. 20006-1157
                                        T: (202) 508-1112
                                        F: (202) 661-2299
                                        kelleym@ballardspahr.com
                                        parsonse@ballardspahr.com

                                        *Counsel for Netflix, Inc.*