# Exhibit 10

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

ANDREW L. COLBORN,

        Plaintiff,

                                          Case No. 19-CV-484

NETFLIX, INC.,
CHROME MEDIA, LLC, f/k/a
SYNTHESIS FILMS, LLC,
LAURA RICCIARDI, and MOIRA DEMOS,

        Defendants.

## PLAINTIFF'S RESPONSES TO DEFENDANT CHROME MEDIA LLC'S FIRST SET OF INTERROGATORIES

Plaintiff, Andrew L. Colborn, by and through his attorneys, Law Firm of Conway, Olejniczak and Jerry, S.C., responds to Defendant Chrome Media LLC's First Set of Interrogatories as follows:

## GENERAL OBJECTIONS

To the extent that any of the Interrogatories call for information which is protected by the attorney-client privilege, work-product doctrine or otherwise immune from discovery, Plaintiff hereby objects to furnishing any such information and such information is not being provided.

To the extent that any of the Interrogatories go beyond the scope of Fed.R.Civ.P. 26, Plaintiff objects and will comply only to the extent of the obligations set forth therein.

Plaintiff also objects to the wording of Defendants' requests on the basis that Wisconsin law requires that defamatory broadcasts be considered in their entirety, not just as a collection of allegedly separate statement. The entire MAM broadcasts must be considered with respect to

their falsity and Defendants' knowledge of falsity and/or reckless disregard of the truth with respect to the broadcasts. Plaintiff objects to the Interrogatories to the extent they suggest or imply otherwise.

Discovery and investigation are continuing in this matter and Plaintiff reserves the right to amend and/or supplement these responses accordingly. In addition, Plaintiff's counsel has only just been able to format produced raw footage to viewable format and have not had the opportunity to view it yet, and again, Plaintiff reserves the right to supplement his responses accordingly.

Subject to the foregoing objections and the specific objections asserted below, Plaintiff respectfully submits, without in any way conceding relevancy, or admissibility, the following responses to the Interrogatories:

**INTERROGATORY NO. 1:** Identify with specificity all "spliced and omitted portions of Plaintiff's trial testimony as set forth in Exhibit A and B" that you contend "distort the facts and nature of the 1994 or 1995 telephone call…[and] led viewers to falsely conclude that Plaintiff bears responsibility for seven or eight of Avery's 18 years of wrongful imprisonment, providing him [Colborn] with a motive to frame Avery for Halbach's murder," as alleged in Paragraph 27 of the Second Amended Complaint.

**RESPONSE NO 1:** Subject to Plaintiff's General Objections, Plaintiff refers to the summaries attached in chart form hereto. Discovery and investigation are ongoing, and Plaintiff reserves the right to supplement his responses accordingly.

**INTERROGATORY NO. 2:** For each "spliced and omitted portion" identified in your response to Interrogatory No. 1, state how that spliced or omitted portion "distort[ed] the facts and nature of the 1994 or 1995 telephone call…[and] let viewers to falsely conclude that Plaintiff bears responsibility for seven or eight of Avery's 18 years of wrongful imprisonment, providing him [Colborn] with a motive to frame Avery for Halbach's murder," as alleged in Paragraph 27 of the Second Amended Complaint.

**RESPONSE NO 2:** Subject to Plaintiff's General Objections, Plaintiff refers to the summaries attached in chart form hereto. Discovery and investigation are ongoing, and Plaintiff reserves the right to supplement his responses accordingly.

**INTERROGATORY NO. 3:** Describe in detail all facts that you contend support your allegation in Paragraph 33 of the Second Amended Complaint that "Defendants knew of [the]

falsity" of Steven Avery's criminal attorneys' "suggest[ion] that Plaintiff was looking directly at Halbach's vehicle when he called dispatch."

**RESPONSE NO 3:** Subject to Plaintiff's General Objections, Plaintiff responds as follows: Plaintiff's testimony at the civil trial regarding the call that he made to dispatch was reasonable and credible and he specifically denied that he was looking at Halbach's vehicle during his testimony.

In addition, upon information and belief, the Defendants had reviewed the Avery Trial Court's Decision and Order dated January 30, 2007, which explained that any theory regarding any alleged involvement of Plaintiff in planting Avery's blood in Halbach's vehicle was extremely weak and rested on an unexplained contradiction:

> [as] pointed out by the State at oral argument: How could Lenk or Colbom have known that Teresa Halbach was dead at the time they are alleged to have planted the defendant's blood in her vehicle? Under the defendant's theory, either Lenk, Colbom, or both would have had to have formulated a plan involving their own commission of serious felonies and executed that plan within a very short period of time, motivated apparently only by their embarrassment for not allegedly having acted more responsibly on information that could have led to Mr. Avery's exoneration back in 1995 or 1996.

Decision and Order at p. 11.

It was only due to the extremely low bar afforded criminal defendants by law to attempt to offer theories to attempt to exculpate themselves that this theory was even allowed to be presented by the judge. Under any common-sense or reasonable standard, the assertion that Plaintiff had found Halbach' vehicle prior to the time that she was known to have been deceased was obviously false.

Defendants are educated persons; both have advanced degrees. In addition, Ms. Ricciardi has a law degree and practiced law for some time after graduation. Accordingly, it is reasonable to infer that both Ricciardi and Demos knew that there was no reasonable basis to believe that Plaintiff planted blood in Avery's car, that any theories to the contrary border on the fantastic and are patently ludicrous, and therefore, that they knew they were false.

**INTERROGATORY NO. 4:** Describe in detail all facts that you contend support your allegation in Paragraph 40 of the Second Amended Complaint that "defendants manipulated facts to convince viewers that MTSO officers, possibly including plaintiff, secreted Avery's blood from a vial still kept in evidence from his wrongful conviction case, and planted it in Halbach's car."

**RESPONSE NO 4:** Subject to Plaintiff's General Objections, Plaintiff responds as follows: The facts that support the allegation that Defendants manipulated the facts

in question are set forth in the remainder of Paragraph 40 of the Second Amended Complaint. Upon information and belief, Defendants had reviewed the Avery Trial Court's Decision and Order dated January 30, 2007 in which the Court noted the fact that the State intended to present evidence that the hole in the blood vial stopper had been created by the phlebotomist who withdrew Mr. Avery's blood on January 2, 1996.

**INTERROGATORY NO. 5**: Describe in detail all facts that you contend support your allegation in Paragraph 64 of the Second Amended Complaint that the Challenged Statement "tended to harm [you] and actually and irreparably harmed and damaged [your] reputation, lowering [you] in the estimation of the community and subjecting [you] to hostility, hatred and ridicule, and deterring third persons from associating or dealing with [you]."

**RESPONSE NO 5**: Subject to Plaintiff's General Objections, Plaintiff responds as follows: Plaintiff's counsel will be producing copies of numerous recorded voicemails that Plaintiff received from threatening and verbally abusive MAM viewers across the world, and Plaintiff designates those documents in response to this Interrogatory; Plaintiff's counsel will also be producing copies of email messages and online posts to the same effect; in addition, Plaintiff will testify regarding the countless telephone calls that he received at his personal residence and at work that were not recorded. Due to the intense verbal abuse that Plaintiff suffered from the public at large following the MAM broadcast, Plaintiff eventually resigned from the Sheriff's Department earlier than intended. In addition, the effect of the abuse on Plaintiff has contributed to the demise of Plaintiff's marriage of multiple decades. Plaintiff also incorporates in this response his response to Interrogatory No. 8, below. Damages are ongoing. Plaintiff reserves the right to supplement this response as discovery and investigation continue.

**INTERROGATORY NO. 6**: For each of the Challenged Statements, describe in detail all facts that you contend support your allegation that the Producer Defendants published that Challenged Statement with knowledge of their falsity or reckless disregard of their truth or falsity.

**RESPONSE NO 6**: Subject to Plaintiff's General Objections, Plaintiff refers to the summaries attached in chart form hereto.

**INTERROGATORY NO. 7**: For each material fact that you allege was omitted from Making a Murderer, state that omitted fact and describe in detail why you believe that the Producer Defendants had knowledge that omission of the fact would cause Making a Murderer to be false or that the Producer Defendants omitted the fact with reckless disregard of the series' truth or falsity.

**RESPONSE NO 7**: Subject to Plaintiff's General Objections, Plaintiff refers to the summaries attached in chart form hereto, and to the allegations of the specific paragraphs of the Second Amended Complaint that are described as "Challenged Statements," as the factual basis for many of the allegations is set forth therein,

including detailed descriptions of the specific alterations to and omissions of trial testimony by the Defendants. Defendants knew the alterations changed the impact of the testimony and it is evident that they made them for that reason, in order to continue to tell their story. This is further corroborated in the document productions by Netflix, which demonstrate the involvement of Netflix personnel in attempting to make the story more dramatic and to emphasize Plaintiff as an alleged villain of the story. (See Plaintiff's Responses to First Set of Interrogatories of Netflix, Inc.) Discovery and investigation are ongoing, and Plaintiff reserves the right to supplement his responses accordingly.

**INTERROGATORY NO. 8:** Describe in detail all items of damage you contend you sustained as a result of the Producer Defendants' acts or omissions alleged in the Second Amended Complaint.

**RESPONSE NO 8:** Subject to his General Objections, Plaintiff responds as follows: Making a Murderer damaged if not destroyed my reputation, my health and my personal life. My reputation as a police officer, so important to maintain as trustworthy and being with integrity as well as honest, was severely damaged as millions viewed and believed the falsehood that was Making a Murderer. In the social media realm my reputation was totally destroyed as I was, and still am portrayed as the poster child for corruption. I began to fear that this annihilation of my reputation would affect the weight of my courtroom testimony on other cases, effectively ruining my career as a police officer. My health was affected as I did and continue to live in a state of constant hypervigilance, as Making a Murder prompted a multitude of death threats to me and towards my family. Never being able to totally relax, as well as constantly anticipating an attack on me and/or a member of my family has caused me to develop both hypertension and anxiety, which has to be treated with prescription medication. Due to the stress caused by MAM, I have trouble sleeping and I find myself often angry and irritable. I no longer feel I can trust anyone totally ever again. My personal life has also been greatly damaged as a result of MAM. My inability to go back to the person I was before MAM has destroyed my 30 year marriage and the marriage ended in divorce. I have lost family members and friends because of MAM's false narrative, reckless agenda and portrayal of me, which is only exacerbated by the social media crazies who continually, 7 years after its release, claim that I am a corrupt evil person and that MAM is truthful. I am often confronted by total strangers who inform me that they despise me for "what I've done" regarding Steven Avery. I'm not allowed to be present at any media event at my current employer as my presence could be disruptive.

**INTERROGATORY NO. 9:** For each item of damages that you identified in Interrogatory No. 8, identify the amount of damages you are claiming and your method for calculating such amount.

**RESPONSE NO 9:** Subject to his General Objections, Plaintiff responds as follows: The damage to my reputation prompted me to retire from law enforcement

4 years earlier than I had wanted too, costing me at least $400,000. The value of the damage to my personal life, the destruction of my marriage and the loss of friends and family, personal health and wellbeing, sense of calm and sense of safety and security, and general damage to my reputation I am requesting be determined at trial by the jury. In my personal opinion, a value of a million dollars per Episode of MAM 1 and 2 would not even cover the loss of personal happiness caused by Defendants, yet Defendants have undoubtedly been enriched by at least that amount through what they took from me.

**INTERROGATORY NO. 10:** Identify all persons with knowledge of facts relating to the damages you describe in Interrogatory No. 8, and the substance of each person's knowledge.

**RESPONSE NO 10:** Subject to his General Objections, Plaintiff responds as follows: I have discussed the facts of the damages detailed in my response to Interrogatory No. 8 with very few people due to my newfound inability to trust anyone. I have disclosed those damages to my healthcare providers, and to the law firms who represent me in this suit. I have also disclosed how MAM damaged me personally to the law firm representing me in my divorce case. I further have disclosed how MAM has caused me damage to the producers of an upcoming documentary entitled Convicting a Murderer during interviews with them. Beyond that, I rarely, if ever discuss how MAM caused me damages, I instead only defend myself, my fellow deputies, my former agency and law enforcement in general when asked or confronted about Netflix or the producers of MAM or MAM itself.

**INTERROGATORY NO. 11:** Identify every health care provider that you have seen for treatment of any condition(s) that you believe was caused or exacerbated by Making a Murderer, and for each, describe that nature of the symptoms for which you sought treatment, the diagnosis you received, all medication(s) you were prescribed, and all treatments and therapy you received and the dates of the treatments and therapy.

**RESPONSE NO 11:** Subject to his General Objections, Plaintiff designates his previously produced health care records in response to this Interrogatory, without waiving the confidentiality designations in said prior production, which are incorporated by reference herein. Plaintiff further responds that he has seen the following providers that he has seen for anxiety relating to the effects of MAM: Theresa J. Kruegerjunk, NP, of Prevea on December 28, 2018, noted as having "presented for" anxiety; follow-up June 28, 2019. Plaintiff has taken Busiprone / Buspar as a result of his anxiety caused by MAM. Plaintiff believes that the stress is also adversely affecting his blood pressure, for which he takes Lisinopril. Damages are ongoing, and Plaintiff reserves the right to supplement this response.

**As to Objections:**

Dated this 28th day of January, 2022.

        LAW FIRM OF CONWAY, OLEJNICZAK & JERRY, S.C.
        Attorneys for Plaintiff, Andrew L. Colborn

By: _____
        George Burnett

April Rockford Bankler
SBN# 1026163

**POST OFFICE ADDRESS**
231 S. Adams Street
Green Bay, WI 54301
P.O. Box 23200
Green Bay, WI 54305-3200
Phone: (920) 437-0476
Fax: (920) 437-2868
State Bar No. 1005964

**AS TO RESPONSES:**

STATE OF WISCONSIN   )
                     ) ss:
COUNTY OF _____ )


ANDREW L. COLBORN, being first duly sworn on oath, states that he has read the foregoing responses to the Interrogatories and that the same are true to the best of his knowledge at this time. Further, he reserves the right to amend the responses should later discovered information suggest that any of the foregoing responses are incorrect or incomplete.


_____
ANDREW L. COLBORN

Subscribed and sworn to before me
this _____ day of _____, 2022.


_____
Notary Public, _____ County, Wis.
My Commission is permanent.