IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

ANDREW L. COLBORN,

        Plaintiff,

v.

NETFLIX, INC.,
CHROME MEDIA, LLC, f/k/a
SYNTHESIS FILMS, LLC,
LAURA RICCIARDI, and
MOIRA DEMOS,

        Defendants

Case No. 19-CV-484

## MICHAEL GRIESBACH'S SUPPLEMENTAL BRIEF ON NETFLIX' MOTION TO COMPEL COMPLIANCE WITH ITS SUBPOENA

The Court directed the parties to file simultaneous supplemental briefs explaining the impact of Wisconsin's Reporter Privilege, including any applicable waiver of the privilege, on Netflix's motion to compel. The respondent wishes to clarify at the outset that the reporter privilege is the basis for his objection to document requests numbers 1 through 6, only (Dkt 207, Exh 1, 2022-02-09 Subpoena to M. Griesbach). The respondent's objections to the remaining requests are based on other grounds that have been argued at length in the parties' briefs and will not be repeated here.

As an additional preliminary matter, the respondent does not understand Netflix to be challenging that he is a "news person" under Wisconsin's reporter privilege statute. As noted in respondent's brief in opposition (Dkt. 214, page 15), included within the definition of a "news person" in Wis. Stat. § 885.14(1)(1) (b) is: "any person who is or has been engaged in gathering, receiving, preparing, or disseminating news or information to the public for an entity described in par. (a) … ." Among the entities enumerated in par. (a) are "book publishers." Thus, the respondent falls neatly under the definition of a news person, and Netflix has not claimed otherwise.

1

### I. Netflix Failed to Meet the Strict Procedural and Substantive Requirements in Wisconsin's Reporter Privilege Statute to Compel Disclosure

The procedure for subpoenaing a news reporter in Wisconsin is markedly different than that for subpoenaing anyone else. Only a court can issue a subpoena to a news reporter, and only after the person requesting the subpoena has met a rigorous showing justifying why disclosure should be compelled.

Wis. Stat. § 885.14 (2) provides in relevant part:
- **(2)** SUBPOENAS ISSUED TO NEWS PERSON
    - (a) *Prohibition*. Except as provided in par. (b), no person having the power to issue a subpoena may issue a subpoena compelling a news person to testify about or produce or disclose any of the following that is obtained or prepared by the news person in the news person's capacity in gathering, receiving, or preparing news or information for potential dissemination to the public…
    - (b) *Procedure before courts*. Subject to par. (c), a circuit court may issue a subpoena to compel a news person to testify about or disclose or produce any news, information, or identity of any source as specified in par. (a) 4. if the court finds, after notice to and an opportunity to be heard by the news person…

Netflix ignored this statutorily mandated procedure by subpoenaing the respondent directly without making application to the Court. That the subpoena also requested non-priviliged documents is not a reasonable excuse and the respondent is unaware of any cases suggesting otherwise. Moreover, Netflix would be hard pressed to claim ignorance of the requirement since one of its lawyers in this action has written extensively on Wisconsin's reporter privilege, including its stringent statutory procedural requirements. [1]

---

[1] Wisconsin Reporter's Privilege Compendium
James A. Friedman and Maxted Lenz
Godfrey & Kahn, S.C.
V. Procedures for issuing and contesting subpoenas
The shield law imposes rigid requirements before a subpoena can be issued to a member of the news media. …
For non-confidential information, a subpoena compelling a news person to testify about, disclose, or produce any news, information, or source can be issued only by a circuit court, not an attorney.
https://www.rcfp.org/privilege-compendium/wisconsin/#:~:text=The%20act%2C%20codified%20at%20section,to%20protect%20other%20newsgathering%20information

And Netflix' failure involves more than procedural error. To subpoena a news reporter in Wisconsin, the applicant for the subpoena must by clear and convincing evidence establish the following four criteria:

> 1) The news, information, or identity of the source is *highly relevant* to the investigation, prosecution, action, or proceeding.
>
> 2) The news, information, or identity of the source is *necessary* to the maintenance of a party's claim, defense, or to the proof of an issue material to the investigation, prosecution, action, or proceeding.
>
> 3) The news, information, or identity of the source is *not obtainable from any alternative source* for the investigation, prosecution, action, or proceeding.
>
> 4) There is an *overriding public interest in the disclosure* of the news, information, or identity of the source.

Wis. Stat. § 885.14 (2)(c) (c)

Rather than trying to meet these proofs, Netflix repeatedly, but wrongly insists that the federal general rules of discovery apply, going so far as to represent that, "Thus, the *only* issue for this Court to determine is whether the subpoenaed materials meet the broad standard of relevance in discovery, ..." (Dkt. 221, p 3)

And it's no wonder that Netflix mischaracterizes the applicable standard, for it cannot meet the stringent criteria to overcome the privilege set forth in the reporter privilege statute. Having scoured the 540 pages of text in the respondent's book, Netflix cites a handful of inconsequential excerpts and then commands the respondent to turn over a myriad of privileged documents.[2] In none of these citations does Netflix come close to meeting § 885.14's rigorous standard to compel disclosure.

---

[2] Among the documents Netflix demands with respect to the respondent's books are the following: all documents drafted in connection with the books, whether formal or informal; outlines; treatments; draft and final manuscripts; marketing and promotion information; and communications with the respondent's agent. Dkt. 207, (Attachments: # 1 Exhibit 1 - 2022-02-09 Subpoena to M. Griesbach)

3

First, Netflix points to respondent's recounting in one of his books a conversation he overheard among coffee shop patrons' concerning their impressions of the Avery trial as proof that he possesses relevant information about damage to Mr. Colborn's reputation before Making a Murderer aired (Dkt. 221, Netflix Reply Brief, p 5). Netflix would be hard-pressed to prove, as they must under §885.14 (2) (b) 2(c), that the coffee shop patrons' opinions are "highly relevant" and "necessary" for its defense; or that it can't obtain similar information from alternative sources; or, especially, that an "overriding public interest" requires disclosure of the patrons names or other information the respondent might have about them.

Similarly, the fact that one of Mr. Colborn's colleagues was upset that a police offer falsely accused of planting evidence by a criminal defense lawyer during trial has little if any legal recourse (Dkt. 206, Motion to Compel, p 14), is neither "highly relevant" nor "necessary" for Netflix' defense. Nor is there an overriding public interest in the disclosure of the officer's frustration. The same holds true for respondent's sharing with readers that "[t]he quirky circumstances of the investigation scared [him]—especially how Colborn and Lenk were the ones to find the keys," and that the prosecutor's attempts to "soften the blow" of that evidence "rang hollow to many" (Dkt. 206, Motion to Compel, p 14).

Netflix can surely find other observers of Mr. Avery's trial who were inclined to believe the police planted evidence to frame him. Indeed, they have (Dkt. 84, Attachments: Exhibit 1 - Second Amended Complaint, pp 36-37, excerpts from Making a Murderer, Episode 3 depicting a number of Manitowoc County bar patrons expressing their opinions that the police framed Mr. Avery). The same is true for the respondent opining in one of his books that the police officers "looked more defensive (during their depositions) than they should have if they had nothing to hide" (Dkt. 206, Motion to Compel). Netflix can make the point without resorting to subpoenaing one of the plaintiff's lawyers.

4

The final book excerpt cited by Netflix – that either Mr. Colborn or one of his colleague's hopes for a peaceful Christmas Day were dashed by telephone calls from angry viewers of Making a Murderer – is the least compelling of all. "If" the respondent was referring to Mr. Colborn, Netflix argues, "this statement obviously undermines Mr. Colborn's claim that Making a Murderer destroyed his marriage." Aside from the illogic of the inference, Netflix is more than capable of digging into the demise of Mr. Colborn's marriage in other ways.

Having come up woefully short in the excerpts it cites, Netflix cannot meet its statutory burden by simply claiming, as it does in its reply brief, that "the examples discussed in the Motion (to Compel) were just that - *examples* - and are not the only proof that (the respondent) has relevant, discoverable materials" (Dkt. 221, Netflix Reply Brief, p 5). Wis. Stat. § 885.14 (2) (b) 2(c) requires more than self-serving speculation and Netflix has come up woefully short.

Despite these fundamental procedural and substantive errors, in the interest of judicial economy and in acknowledgement that both parties have made procedural missteps, the respondent does not seek relief on the basis of Netflix' procedural, albeit serious error.

**II. The Court Should not Deem the Respondent Waived the Protection Afforded Him Under Wisconsin's Reporter Privilege Statute by his Non-Compliance with Rule 45 of the Federal Civil Rules of Procedure**

Netflix argues the respondent waived his privilege claim by not including it in his written objections and by not describing the nature of the withheld documents as required by Fed. R. Civ. P. 45(e)(2)(A). While conceding his error, the respondent submits for the reasons stated below that the Court should not deem the privilege waived.

While violations of Rule 45 (of the Federal Rules of Civil Procedure) can result in waiver, waiver is not required. As the court stated in *First Sav. Bank, F.S.B. v. First Bank Sys., Inc.*, 902 F.Supp. 1356 (D.Kan.1995): "Acknowledging the harshness of a waiver sanction, courts have reserved the sanction for those cases where the offending party committed unjustified delay in

5

responding to discovery. Minor procedural violations, good faith attempts at compliance, and other such mitigating circumstances militate against finding waiver. *First Sav. Bank* at 1361-63 (collecting cases). The Seventh Circuit has stated that, "[d]iscovery 'sanctions may only be imposed where a party displays willfulness, bad faith, or fault.'" *Am. Nat'l Bank & Trust Co. v. Equitably Life Assur. Soc'y of U.S.*, 406 F.3d 867, 877 (7th Cir. 2005)(quoting *Langley v. Union Elect. Co.*, 107 F.3d 510, 514 (7th Cir. 1997)). More pointedly, "when the disclosing party raises an untimely objection on the grounds of privilege, courts have noted that waiver is particularly severe." *Romary Assocs., Inc. v. Kibbi LLC*, No. 1:10-CV-376, 2011 WL 4005346, at *3 (N.D. Ind. Sept. 8, 2011).

Courts have considered four factors when deciding whether to sanction discovery violations; (1) the prejudice or surprise to the party against whom the evidence is being offered; (2) the ability of the party to cure the prejudice; (3) the likelihood of disruption to the trial; and (4) the bad faith or willfulness involved in not disclosing evidence at an earlier date. *Romary*, 2011 WL 4005346 at *3 (citing *Judson Atkinson Candies, Inc. v. LatiniHohberger Dhimantec*, 529 F.3d 371, 386 (7th Cir. 2008)).

Here, Netflix has not been prejudiced by the late privilege objections. Although not raised in the initial responses, Netflix was apprised of the privilege issues during a meet and confer prior to bringing its motion to compel (see Griesbach Decl, para. 1-4). The delay is relatively brief in the context of the lengthy time period Mr. Colborn's case has been pending, and it will not cause prejudice or disruption of the trial. Discovery is still open and with this issue thoroughly briefed by the parties, it will soon be resolved. Finally and perhaps most significantly, there is no evidence that the respondent's procedural error was made in bad faith and Netflix does not appear to argue otherwise.

Even if a technical waiver would ordinarily result, the respondent's failure to comply with Rule 45 involves constitutional considerations which require special considerations militating against

waiver. Courts within the Seventh Circuit have recognized that waiver may be relieved if constitutional concerns are present. *Appleton Papers Inc. v. George A. Whiting Paper Co.*, No. 08-C-16, 2009 WL 2408898, at *2 (E.D. Wis. July 31, 2009)(citing *In re DG Acquisition Corp.*, 151 F.3d 75, 81 (2d Cir. 1998)). "[W]here a constitutional privilege is involved a trial court possesses the discretion not to find waiver." *DG Acquisition Corp.*, 151 F.3d at 81.

Although courts have stated that constitutional privileges are not inherently self-executing, waiver of constitutional rights are "not lightly to be inferred." *Emspak v. United States*, 349 U.S. 190, 19675 S.Ct. 687, 99 L.Ed. 997 (1955)(discussing waiver of 5th Amendment). Further, "courts must indulge every reasonable presumption against waiver." *United States v. O'Henry's Film Works, Inc.*, 598 F.2d 313, 318-19 (2d Cir. 1979). Although these cases do not directly address the reporter privilege, arguably all constitutional privileges are subject to a heightened standard due to the nature of the underlying right and its importance

Further, the respondent's procedural error should not result in waiver when Netflix ignored the more fundamental requirements set forth in Wisconsin's reporter privilege statute. As explained in Section I above, a party seeking to subpoena a news reporter must apply to a court and prove the requisite criteria enumerated under Wis. Stat. § 885.14 by clear and convincing evidence before a valid subpoena is issued. Having chosen not to comply with this statutorily mandated procedure, Netflix is not in a position to complain about the respondent's relatively speaking more minor procedural error.

The respondent is unaware of case law identifying the proper remedy for failure to comply with § 885.14, but other technical deficiencies have been held to invalidate a subpoena. NLFC, Inc. v. Devcom Mid-Am., Inc., No. 93 C 0609, 1994 WL 188478, at *7 (N.D. Ill. May 11, 1994)(determining that a subpoena with the incorrect district in the heading was invalid and denying a motion to compel based on invalidity.); Ray v. City of Milwaukee, No. 06-C-1226, 2008 WL

7

2785631, at *1 (E.D. Wis. July 16, 2008)(holding that technical failure to include witness fee or mileage check invalidates a subpoena). Netflix failure to comply with § 885.14 (2) (2) to apply to the Court and meet the statutory criteria to subpoena the respondent is a significantly more fundamental deficiency than the minor technical errors held to invalidate subpoenas in the cases cited above. Logic provides no reason why Netflix' more serious error should be treated differently.

Additionally, as indicated above, Netflix failed to respond in its motion to compel despite being notified of the respondent's privilege claim at the meet and confer (see Griesbach Decl, para. 1-4). Courts have held that arguments raised for the first time in a reply brief are waived.[3] Still worse, and as also explained above, Netflix chose to apply an inapplicable standard of relevance in its reply brief rather than the correct standard set forth in § 885.14(2) (2).

Under all these circumstances, Netflix' insistence that the respondent should be held to strict compliance while it should be relieved of its more fundamental error is clearly unwarranted.

### III. The Respondent Did Not Waive the Protection Afforded Him by the Wisconsin Reporter Privilege Statute by Agreeing to Represent Mr. Colborn

Wis. Stat. § 885.14.14(4) (4) provides as follows:
> A disclosure to another person or dissemination to the public of news, information, or the identity of a source as described in sub. (2) (a) 1. to 4. by a news person does not constitute a waiver of the protection from compelled disclosure under sub. (2) or (3).

The respondent is unaware of any case law in Wisconsin interpreting this provision. As such, the Court must apply Wisconsin law and attempt to predict how the Wisconsin Supreme Court would rule on the issue. *State Farm Fire & Cas. Co. v. Amazon.com, Inc.*, 390 F. Supp. 3d 964, 969 (W.D.

---

[3] *Prince v. Ka*to, No. 18 C 2952, 2020 WL 7698373, at *2 (N.D. Ill. Dec. 28, 2020)("In their reply brief, Defendants also insist that Prince waived his current objections by failing to object to Defendant's original subpoena to IDOC within the time frame specified in Rule 45(d)(2)(B). . . This argument is raised for the first time in a reply brief and is waived."(citing William v. Bd. Of Ed. Of City of Chicago, ---F.3d----, 2020 WL 7218499, at *7 n.30 ("arguments raised for the first time in a reply brief are waived."))

Wis. 2019)[4]; *See Wittman v. Koenig*, 831 F.3d 416, 422 (7th Cir. 2016). When engaging in statutory interpretation, courts must follow the framework provided by the Wisconsin Supreme Court in *Kalal*. *State ex rel. Kalal v. Circuit Court for Dane Cty.,* 2004 WI 58, ¶ 44, 271 Wis. 2d 633, 662, 681 N.W.2d 110, 123. Under this framework, statutory interpretation begins with an examination of the plain meaning of the statutory language in which each term is given "its common, ordinary, and accepted meaning." *Id*. at ¶ 45. Where the plain language is unambiguous the analysis ends, and other extraneous sources are not be consulted. *Kalal*, 2004 WI 58 at ¶ 45.

§ 885.14(4) expressly states that disclosure to *another person* does not amount to waiver. The statute does not facially place any qualifications on who, "another person" may or may not be. Instead, the statute is worded to protect disclosure to any other person, regardless of the relationship between the reporter and the person. The statute contains nothing to suggest that the respondent's communications to Mr. Colborn or co-counsel are precluded. Instead, it broadly precludes waiver where information is disclosed to "another person."

Additionally Wisconsin's anti-waiver protection applies to disclosures made by "news persons" which is also broadly statutorily defined and includes "[a]ny person who is or *has been* engaged in gathering receiving . . . news or information to the public . . ." Wis. Stat. §885.14(1)(b)(emphasis added). As such, the statute clearly contemplates protection for news persons who previously engaged in news reporting activities even if they arguably are not currently acting in that capacity. This distinction is crucial because in the case relied upon by Netflix, *Simon v. Northwestern University*, 321 F.R.D. 328 (N.D. Ill. 2017), the court largely took issue with the reporter acting in another capacity—that of a lawyer. Unlike Illinois, the Wisconsin legislature saw fit to create a broad anti-waiver provision which applies to news reporters when they make disclosures to any other person even if they are not currently engaged in news reporting. No statutory

---

[4] "This case is in federal court on the basis of diversity jurisdiction, so the court applies the law of the forum state, Wisconsin. And, if Wisconsin law is unclear, the court must predict how the Wisconsin Supreme Court would decide the issue." (citations omitted)

9

language indicates that disclosure to a client is different than the protected disclosure to "another person."

Ignoring Wisconsin's statutory "anti-waiver" provision, Netflix relies instead on an Illinois district court decision—*Simon v. Northwestern University*, 321 F.R.D. 328 (N.D. Ill. 2017) But *Simon* is distinguishable both legally and factually. The text of the Illinois reporter's privilege is materially different than Wisconsin's. While Illinois has codified its own version of a reporter's shield statute in 735 ILCS 5/8-902, nothing in its statute addresses waiver. In fact, courts in the Northern District of Illinois have expressly noted that, "the statute is silent on the question of whether a reporter may waive the privilege by her conduct and the case law addressing the question is sparse." *Von Ribbeck v. Negroni*, No. 19 C 1205, 2019 WL 6894400, at *6 (N.D. Ill. Dec. 18, 2019).

The facts in *Simon* are distinguishable as well. In *Simon*, the court determined that a news reporter, in this case a documentarian, who became counsel for a party in the litigation, waived protection under Illinois's reporter's privilege. Although a cursory review suggests the case is factually similar, an in-depth analysis reveals several significant distinguishing facts. The attorney in *Simon*, a Mr. Hale, was far more involved in the underlying legal dispute than the respondent was in this case. Hale and his team's investigation included jailhouse interviews and other investigative techniques far beyond the research the respondent conducted in preparation for writing his books. Hale's documentary, "A Murder in the Park," ultimately led to the release of Mr. Simon, who had been convicted of murder after falsely confessing to the crime. While the respondent's has become embroiled in the controversy surrounding Mr. Avery's murder conviction by virtue of authoring some books, his efforts had no effect on the outcome of Avery's conviction or his multiple failures on appeal.

Significant to the court in *Simon* was the defendant's comparative disadvantage by Hale's representation of the plaintiff. Plaintiff's counsel, the court explained, had access to relevant information not available to the defendant's counsel. *Simon*, at 335. There is no such inequity here.

10

Having relied almost exclusively on publicly available documents, the respondent possesses little, if any relevant information that Netflix does not already have. Netflix has tried but failed to show otherwise in the parties filings to date. Indeed, Netflix has turned the inequity on its head. The producer defendants spent ten years compiling countless interviews and listening to recorded phone calls. They had access to the defense team and the Avery family. As co-defendant with lawyers in common with the producer defendants, it is Netflix, not the respondent who has a wealth of information inaccessible to the opposing party.

Ignoring these factual distinctions, Netflix none too subtly accuses the respondent of bad faith by citing the *Simon* court's commentary that privilege statutes were "clearly not meant to be used as a vehicle for a party to initiate litigation and retroactively use the reporter's privilege to keep information out of discovery." S*imon,* at 332. In doing so, Neflix ignores a significant distinguishing fact that it is well aware of. While Hale joined a legal team in place within a week of Simon's release and well after the complaint had been filed, *Simon*, at 330, the respondent filed the complaint as sole counsel after Mr. Colborn's attempt to secure other counsel failed at the last possible moment before the statute of limitations expired (Dkt. 72, Decl of Michael Griesbach). It appears the *Simon* court's cautionary note against reading too much into its decision was lost on Netflix. (Thus, we caution that the precedential value of this opinion to resolve waiver under Illinois' reporter privilege should be considered cautiously. The issue of waiver under the Act is complex, and very factually driven. The factual scenario presented here is extremely unique. We believe the legal analysis of waiver in other contexts would require far more detailed considerations. *Simon*, at 336)

It is generally unwise to ascribe another's motivation, even a litigant or an attorney's, but it is difficult not to suspect that Netflix is seeking something other than documents from the respondent that it neither needs nor is entitled to. Undoubtedly to the Court's chagrin, this lawsuit plays out in the context of an ongoing public controversy between supporters of Mr. Avery, his past and current attorneys, and Netflix and the producer defendants on one hand, and those who have dared to cry foul

11

and attempt to rebut Making a Murderer's false claims, on the other. Netflix should receive whatever discovery it is entitled to under the law, but it should not be permitted to conflate Mr. Colborn's lawsuit with the respondent's books or the executive producer's work on an as yet unsold competing documentary to distract, harass, and embarrass. (Dkt. 222: Decl of Isabella Salomao Nascimento with accompanying 5 exhibits) The respondent respectfully asks the Court to take this reality into account as it considers the facts and applicable law.

## CONCLUSION

For all these reasons, and for the reasons set forth in his initial brief, the respondent respectfully requests that the Court deny Netflix' motion to compel.

Dated: June 8, 2022

Respectfully submitted,

*s/ Michael C Griesbach*

Michael C Griesbach
Griesbach Law Offices
830 N. 12th Street
Manitowoc, WI 54220
T: (920) 320-1358
attymgriesbach@gmail.com