UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

_____

ANDREW L COLBORN,

          Plaintiff,

v.                                                                   Case No. 19-cv-0484-bhl

NETFLIX INC, et al.,

          Defendants.
_____

## DECISION AND ORDER GRANTING MOTION TO COMPEL

        Lawyers and journalists comprise (perhaps apocryphally) two of our country's most respected professions. This order concerns efforts to enforce a subpoena against a person who, at different times, has served in both roles, and it is the combination of those roles that gives rise to the current dispute. Under Fed. R. Civ. P. 45(d)(2)(B)(i), a federal district court is empowered to compel production of materials responsive to a properly issued subpoena. The wrinkle here is that the target of the subpoena in question—Respondent Michael Griesbach—also happens to be one of Plaintiff Andrew Colborn's counsel of record. Defendant Netflix, Inc. asked Respondent to produce documents related to his journalistic work, which concerns the events underlying this case. Respondent has flatly refused, initially based on a number of written objections and, more recently, based on Wis. Stat. §885.14, Wisconsin's "Reporter Privilege" statute. Pending before the Court is Netflix's motion to compel, which asks the Court to order Respondent to produce responsive materials. At a June 14, 2022 hearing, the Court concluded that Respondent's objections were unavailing and granted Netflix's motion to compel. This decision supplements the Court's prior ruling.

## BACKGROUND

        Today, Respondent Michael Griesbach is one of three lawyers acting as counsel for Plaintiff Andrew Colborn in this lawsuit. In this capacity, Respondent electronically signed the latest complaint, which accuses Defendants Netflix, Inc., Chrome Media, LLC, Laura Ricciardi, and Moira Demos of defamation, negligence, and intentional infliction of emotional distress in

connection with their portrayal of Colborn in the popular docuseries *Making a Murderer*. (ECF No. 105.)

Over a decade before *Making a Murderer* premiered, though, Respondent was an assistant district attorney in Manitowoc County, Wisconsin, the epicenter of the events giving rise to the aforementioned series. (ECF No. 206 at 2.) He parlayed this front-row seat into the roles of chronicler and commentator. By his own admission, he "became obsessed" with the case against Steven Avery, the titular murderer. (*Id.*) He authored three books on the Avery saga: *Unreasonable Inferences: The True Story of a Wrongful Conviction and Its Astonishing Aftermath*; *The Innocent Killer: A True Story of a Wrongful Conviction and its Astonishing Aftermath*; and *Indefensible: The Missing Truth about Steven Avery, Teresa Halbach, and Making a Murderer.* (*Id.* at 2-3). He also gave related radio, television, and print interviews and even appeared in the first episode of the allegedly defamatory *Making a Murderer*. (*Id.* at 3.)

Because of Respondent's extensive involvement in all things Avery, Netflix served a third-party subpoena on him, demanding discovery of documents and communications related, in general, to the research, drafting, and fact-checking of his books; his communications regarding *Making a Murderer*, Netflix, and the producer Defendants; and his work on Avery's cases during his time as assistant district attorney. (*Id.*) Respondent objected on the grounds that: (1) the evidence sought did not meet the Fed. R. Evid. 401 standard for admissibility; (2) disclosure would prejudice Plaintiff by turning his attorney into a witness; (3) Respondent had no special knowledge concerning the evidence in the Avery case because he relied on public documents for his research; and (4) the evidence sought was available from alternative sources. (ECF No. 207-2 at 2-3.) He also made clear that he did not intend to produce *any* responsive documents. (*Id.*) Fifteen days later, he added an objection based on Wis. Stat. §885.14, Wisconsin's reporter privilege statute. (*See* ECF No. 239 at 4-5.) Netflix subsequently filed this motion to compel. (ECF No. 206.)

## LEGAL STANDARD

The information a subpoena seeks must not exceed the limits of Fed. R. Civ. P. 26(b)'s discovery standard. *Hoerchler v. Equifax Info. Servs., LLC*, -- F. Supp. 3d --, 2021 WL 4902452, at *2 (N.D. Ill. 2021). That standard provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). In other words, a subpoena should be enforced so long as it "is reasonable in the circumstances." *McKevitt v. Pallasch*, 339 F.3d 530, 533 (7th Cir. 2003).

To make this determination, a court should consider "timeliness, good cause, utility, and materiality." *CSC Holdings, Inc. v. Redisi*, 309 F.3d 988, 993 (7th Cir. 2002). In addition, a court must weigh "the value of the material sought against the burden of providing it" and take account of "society's interest in furthering 'the truthseeking function' in the particular case." *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 681 (7th Cir. 2002). Importantly, it is the objecting party's burden "to show why a particular discovery request is improper." *E.E.O.C. v. Klockner H & K Machines, Inc.*, 168 F.R.D. 233, 235 (E.D. Wis. 1996) (citing 8 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure*, §2173 at 543-544 (1970)) (other citations omitted). If they cannot, the motion to compel should be granted.

## ANALYSIS

Respondent objects to Netflix's subpoena on five grounds: (1) the evidence sought does not meet the Fed. R. Evid. 401 standard for admissibility; (2) disclosure would prejudice Plaintiff by turning his attorney into a witness; (3) Respondent has no special knowledge concerning the evidence in the Avery case because he relied on public documents for his research; (4) the evidence sought is available from alternative sources; and (5) Wisconsin's reporter privilege shields the information sought from disclosure. (ECF No. 207-2 at 2-3; ECF No. 214 at 14-16.) Because none of these grounds demonstrates that the subpoena exceeds the limits of Rule 26(b) or is unreasonable in the circumstances, the motion to compel will be granted.

**I.  Respondent Mistakenly Conflates the Evidentiary Standards for Admissibility with the Standards Governing Discovery.**

Respondent first objects that nothing Netflix has requested would be admissible at trial under Fed. R. Evid. 401-403. (ECF No. 214 at 2-4.) This is a classic category error. What is discoverable is not always, and indeed does not need to be, admissible. The key at the discovery stage is *relevance*. *See* Fed. R. Civ. P. 26(b)(1). And relevance does not turn on whether the evidence sought, itself, would be admissible at trial, but rather, whether the evidence "'reasonably could lead to other matters that could bear on[] any issue that is or may be in the case.'" *Varelas v. Crown Equip. Corp.*, No. 17-CV-869-JPS, 2018 WL 1307961, at *1 (E.D. Wis. Mar. 13, 2018) (quoting *Chavez v. Daimler Chrysler*, 206 F.R.D. 615, 619 (S.D. Ind. 2002)); *see Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). So a party who refuses to respond to a subpoena on the grounds that nothing produced would be admissible at a trial propounds a position no more logical than a detective who rebukes fingerprint evidence simply because that, in and of itself, will not conclusively identify the culprit. The discovery provisions of the Federal Rules of Civil

Procedure "are to be applied as broadly and liberally as possible" to allow parties to explore possible leads. *Hickman v. Taylor*, 329 U.S. 495, 506 (1947). Respondent has not established that Netflix's subpoena does anything more.

II. **The Subpoena Does Not Seek Purely Public Documents, Obtainable from Other Sources, for the Purpose of Turning Respondent into a Witness to His Client's Detriment.**

Respondent's second, third, and fourth objections are effectively premises supporting his proposed conclusion that Netflix issued its subpoena in bad faith, as part of a strategy to embarrass him and prejudice his client. (ECF No. 214 at 4-14.) If, his theory goes, the only documents sought are publicly available, then the only reason to request them from Respondent and not any of the other possible sources is underhanded gamesmanship. Were this true, it would represent good cause to limit the scope of discovery under Fed. R. Civ. P. 26(b)(2). There is no reason to burden one party's attorney with the task of compiling and turning over documents that already exist in the public domain. *See Patterson*, 281 F.3d at 681. The problem for Respondent is that his argument strawmans Netflix's position, selectively ignoring multiple requests for overtly non-public information in his possession.[1]

For instance, Respondent complains that he should not be required to respond to a subpoena seeking copies of his books when those books are in print and publicly available. (ECF No. 214 at 3.) But the subpoena does not simply request copies of the books. (*See* ECF No. 207-1 at 10-11.) Rather, it seeks "documents drafted in connection with the books;" "documents and communications ... consulted, relied upon, sent, received, or used in writing the books;" "documents and communication regarding . . . drafting, editing, or fact-checking of the books;" and "documents and communications regarding . . . marketing and promotion of [the] books." (*Id.* at 10.) Respondent asks the Court to take him at his word that even these related documents and communications are publicly available. (ECF No. 241 at 11.) But "there's nothing to see here" is not a valid defense to a properly issued subpoena. *See Deitchman*, 740 F.2d at 563 (holding that even an expectation of futility is insufficient to justify cutting off a party's discovery rights); *CSC Holdings*, 309 F.3d at 993 (noting that it would be improper to deny a motion to compel based on

---

[1] Because Respondent was unwilling to negotiate the scope of the subpoena with Netflix directly, the subpoena, as currently constructed, likely does sweep up some publicly available information. But this is not enough for Respondent to prevail. A subpoena is usually just the opening salvo. *See Deitchman v. E.R. Squibb & Sons, Inc.*, 740 F.2d 556, 560 (7th Cir. 1984). "The discoverer asks for too much because he is not, until he is told, aware of the discoveree's problems." *Id.* Respondent cannot refuse to discuss any potentially legitimate problems and then try to invalidate the entire subpoena on grounds that parts that could have been winnowed remain broad.

the "bare representation that [the deponent] knew nothing about the case" and that other deponents knew more). This is especially true where, as in this case, the available evidence flatly contradicts the discoveree's assertions. As Netflix points out, in his book, *Indefensible*, Respondent references at least two non-public sources who provided information responsive to the subpoena's second request. (ECF No. 206 at 7.) In another book, *Innocent Killer*, Respondent recounts his non-public actions and conversations as a Manitowoc County prosecutor regarding Avery's exoneration and subsequent murder conviction. (ECF No. 221-1 at 7.) These examples undermine Respondent's contention that "[i]t is undisputed that [his] books are based entirely on his own impressions of publicly available records." (ECF No. 214 at 2.) The subpoena also seeks "documents and communications regarding or related to *Making a Murderer*." (ECF No. 207-1 at 10.) Respondent again claims that no such private communications exist. But, through a subpoena issued to the Manitowoc County Sheriff's Department, Netflix was able to discover messages that Respondent sent from his private email address specifically discussing *Making a Murderer* with members of the Sheriff's Department. (ECF No. 206 at 8.) Unless he cc'd the Department on every email in which he broached the docuseries, Respondent is likely in possession of additional private discussions responsive to Netflix's subpoena. At the very least, he has not carried his burden to show that Netflix's discovery requests were improper.

And the fact that Netflix has not sent Respondent on an unnecessary scavenger hunt cripples his argument for bad faith. It is one thing to burden an attorney with needless discovery, and a presumption of impropriety might follow from that. But "no special privilege or immunity shields a person from [discovery] simply because he or she is an attorney, or even an attorney for a party to the suit." *Kaiser v. Mut. Life Ins. Co.*, 161 F.R.D. 378, 379 (S.D. Ind. 1994) (citations omitted). "Attorneys who [are] fact witnesses . . . cannot claim harassment and undue burden when the opposing party seeks discovery from them." *Dewey v. Bechthold*, No. 18-CV-1739-JPS, 2019 WL 5429373, at *7 (E.D. Wis. Oct. 23, 2019). The discovery Netflix seeks, while broad, is, at face value, legitimate. Respondent is not exempt from it simply because, in choosing to wear many hats, he has inadvertently taken on a dual role as attorney and witness.

III. **The Wisconsin Reporter Privilege Does Not Apply to Reporters Who Choose to Join a Party's Legal Team.**

Respondent's final argument is that Wisconsin's reporter privilege, codified at Wis. Stat. Section 885.14, is an absolute bar to any discovery related to his three books. (*See* ECF No. 241.) Unfortunately, that statute only took effect on June 2, 2010, and there is therefore a dearth of

caselaw (actually none) interpreting it. Accordingly, Respondent relies on a plain text argument, insisting the statutory text absolutely precludes enforcement of the first six document requests in Netflix's subpoena. (*Id.* at 1.) Before reaching the substance of that argument, the Court must consider Netflix's contention that Respondent waived the privilege when he failed to invoke it in his initial set of objections. (ECF No. 239 at 4-5.)

The Seventh Circuit has clearly stated that Fed. R. Civ. P. 45(d)(2)(B) "requires the objecting party to raise its objections before 'the earlier of the time specified for compliance or 14 days after the subpoena is served.'" *Ott v. City of Milwaukee*, 682 F.3d 552, 558 (7th Cir. 2012) (quoting Fed. R. Civ. P. 45(c)(2)(B)[2]). Here, it is undisputed that Respondent first asserted the reporter privilege at a March 11, 2022 meet and confer—29 days *after* Netflix served the subpoena on him and 15 days *after* he filed his written objections. (ECF No. 239 at 4-5.) Citing *Richter v. Mutual of Omaha Ins. Co.*, No. 06-Misc.-011, 2006 WL 1277906, at *3 (E.D. Wis. May 5, 2006), and *Appleton Papers, Inc. v. George A. Whiting Paper Co.*, No. 08-C-16, 2009 WL 2408898, at *1-2 (E.D. Wis. July 31, 2009), Netflix argues that Respondent's untimely objection mandates a finding of waiver. In *Richter*, the Court strictly construed Rule 45(d)(2)(B)'s 14-day time limit to deem the objecting party's objection waived because that objection came 19 days after the service of the subpoena. In *Appleton Papers*, the Court found waiver where objections first appeared a month after a subpoena had issued.

Netflix's arguments notwithstanding, courts have not generally adopted such a hardline stance on waiver. For example, in *Yousuf v. Samantar*, 451 F.3d 248, 252 (D.C. Cir. 2006), the Court held that a district court may consider an untimely objection to a subpoena. In *In re New York City Policing During Summer 2020 Demonstrations*, 563 F. Supp. 3d 84, 87-88 (S.D.N.Y. 2021), the Southern District of New York noted that many courts have not viewed Rule 45's 14-day deadline as providing a bar to any later objection based on privilege. And in *Celanese Corp. v. E. I. duPont de Nemours & Co.*, 58 F.R.D. 606, 609-10 (D. Del. 1973), the Court excused late-filed objections when the delay was not the result of willfulness or bad faith.

In this case, the Court would be justified in finding a technical waiver based on Respondent's unnecessary delay in raising Wis. Stat. Section 885.14. But, as Netflix acknowledged at a status conference held on June 14, 2022, (ECF No. 248), the delay has not

---

[2] At the time of the Court's decision in *Ott*, the quoted language that now appears at Fed. R. Civ. P. 45(d)(2)(B) was found at Fed. R. Civ. P. 45(c)(2)(B).

caused it any real prejudice. Given the significance of the issue and the utter lack of harm to Netflix, the Court will excuse any technical waiver.

Having forgiven Respondent's procedural failings, the Court now moves to the substance of Wis. Stat. Section 885.14. In not so many words, the statute prohibits issuance of subpoenas compelling "news persons" (a category that undeniably includes Respondent) to testify about or disclose certain covered information obtained while acting in their capacity as news persons, absent narrow exceptions. *See* Wis. Stat. §885.14. Of particular note is subsection (4), which provides: "A disclosure to another person or dissemination to the public of news, information, or the identity of a source . . . by a news person does not constitute waiver of the protection from compelled disclosure." Wis. Stat. §885.14(4). Invoking this subsection, Respondent argues that, even though he is currently Colborn's attorney, any disclosures he made to Colborn in that capacity did not waive his right to invoke the reporter privilege as to Defendant Netflix. (ECF No. 241 at 9.) Respondent's straightforward position is that Subsection (4) clearly says that a "disclosure to another person . . . does not constitute a waiver of the protection from compelled disclosure." Wis. Stat. §885.14(4). This means that a news person who shares information with another does not forfeit his right to invoke Section 885.14, and in Wisconsin, "[i]f the meaning of the law is clear from the text, then the analysis ends." *Winebow, Inc. v. Capitol-Husting Co.*, 867 F.3d 862, 868 (7th Cir. 2017) (citing *Ziegler Co. v. Rexnord, Inc.*, 433 N.W.2d 8, 12 (1988)). Thus, according to Respondent, the Court should find in his favor and deny the motion to compel.[3]

But this syllogism ignores the thrust of Netflix's argument. Netflix has never suggested that a "news person" who releases certain information to another forfeits reporter privilege. Indeed, that is the whole point of the reporter privilege. *See United States v. Cuthbertson*, 630 F.2d 139, 147 (3d Cir. 1980) (holding that the privilege extends to unpublished materials that a reporter holds back). Journalists do not generally accumulate information for the purposes of burying it. The nature of the profession contemplates eventual public disclosure. If such disclosure waived the privilege as to undisclosed source information, then the pledge to keep something "off-the-record" would carry less weight than a pinky promise. Recognizing this, state legislatures across the country have drafted statutes that protect a reporter's right to disclose some

---

[3] As noted above, Wisconsin courts have not yet interpreted this, or indeed any, subsection of the statute. Because of that, to resolve the present dispute, the Court must interpret Wis. Stat. Section 885.14 "as [it] think[s] the state's highest court would." *Frye v. Auto-Owners Ins. Co.*, 845 F.3d 782, 786 (7th Cir. 2017) (citations omitted).

information without jeopardizing the anonymity of their sources. *See Simon v. Northwestern Univ.*, 321 F.R.D. 328, 333 (N.D. Ill. 2017) ("a reporter obviously cannot waiver her privilege as to undisclosed source information by sharing other portions of the gathered source information with the public"); *In re Venezia*, 922 A.2d 1263, 1272 (N.J. 2007) ("publication of an article does not constitute a waiver of a reporter's privilege to refuse to disclose 'information obtained in the course of pursuing his professional activities'"); *Saxton v. Ark. Gazette Co.*, 569 S.W.2d 115, 117 (Ark. 1978) (in banc) ("Neither can we agree with appellant's contention that appellee . . . , by the voluntary disclosure of the identity of one of her sources, waived whatever privilege she had."); *In re Paul*, 513 S.E.2d 219, 224 (Ga. 1999) ("Contrary to the state's contention, publication of part of the information gathered does not waive the privilege as to all of the information gathered on the same subject matter[.]"); *In re Taylor*, 193 A.2d 181, 186 (Pa. 1963) ("a waiver by a newsman applies only to the statements made by the informer which are actually published or publicly disclosed and not to other statements made by the informer to the newspaper").

As an entity that itself enjoys the protections of this privilege, Netflix recognizes and supports application of this anti-waiver exception. It also clarifies it is not suggesting that, by doing his journalistic duty in the abstract, Respondent made his notepad a matter of public record. Rather, it argues that the protections of Wis. Stat. Section 885.14 simply do not apply when a news person chooses to join a party's litigation team. Doing so implicates concerns separate and distinct from those that reporter privilege statutes seek to address. That is, the reporter privilege is meant to stymie the threat of judicial intrusion into the newsgathering and editorial process and thereby support a free and independent press. *See United States v. LaRouche Campaign*, 841 F.2d 1176, 1182 (1st Cir. 1988). But freedom of the press is not imperiled when a news person voluntarily joins a lawsuit and, in doing so, assumes additional responsibilities to the Court and his legal adversary. The Northern District of Illinois reached this same conclusion in *Simon v. Northwestern University*. 321 F.R.D. at 334. In that uncannily similar case, the defendant moved to compel discovery of otherwise privileged material from a filmmaker who had joined the plaintiff's litigation team. The Court granted the motion, holding that the filmmaker could not wield the reporter's privilege as both a sword and shield to benefit his client and disadvantage the opponent. *Id.* Other courts agree that reporters who involve themselves in litigation may not use the shield of privilege as a sword to undermine the defense. *See Anderson v. Nixon*, 444 F. Supp. 1195, 1199 (D.D.C. 1978); *Driscoll v. Morris*, 111 F.R.D. 459, 463 (D. Conn. 1986); *see also Fischer v.*

*McGowan*, 585 F. Supp. 978, 987 (D.R.I. 1984) (distinguishing the case from *Anderson v. Nixon* where the reporter's dual role as party and reporter required special considerations of fairness).

Despite Respondent's argument to the contrary, Wisconsin's reporter privilege statute does not abrogate this broader waiver principle. Section 885.14(4) simply does not contemplate the facts of this case. It does not, as Respondent appears to claim, state that the reporter privilege cannot be waived *in any circumstances*; it delineates a particular circumstance in which, consistent with a free and independent press, disclosure will not constitute waiver. The circumstance identified in Section 885.14(4) is not the situation that is presented here.

It also does not matter, as Plaintiff represents, that Respondent has never shared unique information with Colborn or co-counsel. (*See* ECF No. 248.) Respondent has seen what he has seen and knows what he knows. He cannot compartmentalize the region of his brain responsible for Avery-related newsgathering. Thus, when he agreed to act as Colborn's counsel, he inherently imparted his knowledge to Colborn's legal team. *See Simon*, 321 F.R.D. at 334. Having done so, Respondent cannot allow Colborn to selectively access and thereby weaponize only the most advantageous facts, while his adversaries are denied that access and left grasping in the dark. This is precisely the kind of situation that the sword-and-shield waiver doctrine is meant to prevent. The Court therefore finds that Wis. Stat. Section 885.14 is not applicable in Respondent's case.

As a coda to this discussion, the Court notes that it does not know what, if any, responsive documents Respondent has. He refused to engage in negotiations and has addressed the subpoena in only the broadest terms. Netflix may have cast a net that will ultimately come up empty. But it cannot be thwarted in the attempt.

Lastly, the Court notes that even if Wis. Stat. Section 885.14 applied to bar discovery as to Respondent, Netflix could likely obtain the same information from Colborn himself. Under Fed. R. Civ. P. 34, "[a] party may serve on any other party a request within the scope of Rule 26(b) to produce [documents] in the responding party's possession, custody, or control." Fed. R. Civ. P. 34(a)(1). "An attorney is an agent of a principal, and documents held by an agent/attorney are within the control of the client/principal." *Avery Dennison Corp. v. UCB Films PLC*, No. 95-C-6351, 1998 WL 293002, at *2 (N.D. Ill. May 28, 1998). Accordingly, to the extent Respondent possesses any documents related to the issues in this case, those documents are also in Colborn's "possession, custody, or control." Because of this, and considering the fundamental unfairness implicated herein, were Wis. Stat. Section 885.14 an impediment, the Court would reopen

discovery and allow Netflix to issue new discovery requests seeking relevant information from its litigation adversary, Colborn himself.

## CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Defendant Netflix, Inc.'s motion to compel discovery, ECF No. 206, is **GRANTED**. Attorney Michael Griesbach must produce documents responsive to the requests.

Dated at Milwaukee, Wisconsin on June 23, 2022.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge