# Exhibit 1

## Issued by the
# UNITED STATES DISTRICT COURT

WESTERN _____ DISTRICT OF _____ WISCONSIN

STEVEN A. AVERY, Plaintiff

v.

MANITOWOC COUNTY,
THOMAS H. KOCOUREK and DENIS
R. VOGEL, defendants.

## SUBPOENA IN A CIVIL CASE

CASE NUMBER: 04-C-986

(Eastern District of Wisconsin)

TO:
Amy Lehmann
Dept. of Justice, State of Wisconsin
17 West Main Street, P.O. Box 7857
Madison, WI 53707-7857

☐ YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | |
| | DATE AND TIME |
| | |

☒ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION Law Offices of Fox & Fox, S.C., 124 West Broadway, Monona, Wisconsin 53716-3999 | DATE AND TIME May 12, 2005 at 11:00 A.M. |
|---|---|

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

See Attachment.

*Tinley 9 5/12/05*

| PLACE | DATE AND TIME |
|---|---|
| | |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) *Walter F. Kelly* Attorney for Plaintiff | DATE April 11, 2005 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Walter F. Kelly; Walter F. Kelly, S.C., 158 North Broadway, Suite 600, Milwaukee, WI 53202. PHONE: (414) 271-6989

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on Reverse)

005496

CHRM004677

## ATTACHMENT

Any and all documents in any format whatsoever concerning the investigation of the Steven Avery case requested by Manitowoc County District Attorney Mark Rohrer in September, 2003 and conducted by the Wisconsin Department of Justice which resulted in CORRESPONDENCE/MEMORANDUM of December 17, 2003 signed by Attorney General Peggy A. Lautenshlager including without limitation by reason of this specification;

1) all documents obtained by the investigation;
2) all investigatory interview notes, reports, and/or recordings created during the investigation;
3) all internal drafts, memoranda, notes, correspondence, emails, statements, recordings, press releases, or other information of, about or pertaining to the investigation;
4) all records, notes, correspondence, phone calls, interviews, or other information concerning any contacts made with the Department of Justice or any of its representatives or employees by any person whatsoever concerning the investigation, its subject matter, and/or its witnesses or potential witnesses; and
5) any documents provided to the Department of Justice or any of its representatives or employees by any other law enforcement agency, police department, or sheriff's department in Wisconsin in connection with the 1985 Steven Avery case.

005497

CHRM004678

# Wisconsin DOJ Division of Criminal Investigation

*ACISS Case Master Report*

Case Number **DCIR13280**

Date Initiated **09/22/2003**

## Primary Information

| | |
|---|---|
| Agency: | **Department of Justice** |
| Division: | **Criminal Investigation** |
| Sensitive Cases: | **Public Integrity** |
| Lead LEO: | **Strauss, Debra K (Appleton Public Integrity / Wisconsin DOJ Division of Criminal Investigation)** |
| Type Of Case: | **Public Integrity** |
| Case Sub Type: | **PI-Public Int -Misconduct in Public Office** |
| Case Description: | **STEVEN AVERY PROSECUTION** |

## Case Status

| | |
|---|---|
| Case Status: | **Closed** |
| Case Status Date: | **01/08/2004** |

005498

This report is property of Wisconsin DOJ Division of Criminal Investigation. Neither it or its contents may be disseminated to unauthorized personnel.

Case 1:19-cv-00484-BHL   Filed 09/06/22   Page 4 of 122   Document 264-1

CHRM004679

# Wisconsin DOJ Division of Criminal Investigation

*ACISS Investigative Report*

## Primary Information

| | |
|---|---|
| Report Number: | DCIR13280/1 |
| Type Of Report: | Investigative |
| Description: | dci2 beerntsen interview |
| Approval Status: | Approved |
| Approved Date: | 04/12/2004 |
| Approved By: | Conversion User (Criminal Investigation / Wisconsin DOJ Division of Criminal Investigation) |

## Narrative

CASE ACTIVITY REPORT    Wisconsin Department of Justice
DJ-DCI-2 (Rev. 8/91)    DIVISION OF CRIMINAL INVESTIGATION

1.   Case Number

   GC-13280
2.   Date

   09/27/2003
3.   Case Title

   STEVEN AVERY PROSECUTION
4.   Activity

   INTERVIEW: BEERNTSEN
5.   Date of Activity

   09/26/2003

6.

On Friday, September 26, 2003, at approximately 11:15 a.m., S/A Debra K. Strauss, S/A Amy A. Lehmann, Attorney Janine P. Geske, Distinguished Professor of Law at Marquette University and Dr. Daniel D. Blinka, Professor of Law at Marquette University interviewed:

| | |
|---|---|
| NAME: | PENELOPE A. BEERNTSEN (PENNY) |
| ADDRESS: | 2211 Markham Street, Manitowoc, WI |
| DATE OF BIRTH: | 02/08/1949 |
| HOME TELEPHONE: | 920-684-5274 (NON LISTED) |
| CELL TELEPHONE: | 920-242-8066 |
| WORK TELEPHONE: | 920-684-9616 |

This interview was conducted in a conference room at the Marquette Law School, 1103 W. Milwaukee Street, Milwaukee, WI.

The special agents told BEERNTSEN they originally contacted her because BEERNTSEN had previously contacted the Attorney General's office regarding some harassing phone calls she had been receiving. BEERNTSEN said she originally received three phone calls on Saturday, September 20, 2003 and one phone call on Monday, September 22, 2003. BEERNTSEN said when she received these phone calls, the person on the other end of the line would not say anything. Since Monday, BEERNTSEN has not received anymore of these phone calls and she said this was no longer an issue. The special agents told BEERNTSEN that if she starts receiving these types of calls again she should contact

*This report is property of Wisconsin DOJ Division of Criminal Investigation. Neither it or its contents may be disseminated to unauthorized personnel.*

Case 1:19-cv-00484-BHL   Filed 09/06/22   Page 5 of 122   Document 264-1

CHRM004680

**Narrative - Continued**

either S/A Strauss or S/A Lehmann.

S/A Strauss and BEERNTSEN had a previous telephone conversation on Tuesday, September 23, 2003. During this telephone conversation, BEERNTSEN stated she had other issues she would like to tell the special agents regarding the events that occurred after her assault in July 1985. S/A Strauss asked BEERNTSEN what these other issues were.

BEERNTSEN said she was originally taken to the emergency room at the hospital. While there, the physicians completed a rape protocol kit. Besides having the rape protocol kit performed, BEERNTSEN said she sustained injuries such as a concussion, cuts to the back of her head, her vision was blurred, a broken nose and a jaw injury. BEERNTSEN also stated that while she was being questioned by the investigators from the sheriff's department, BEERNTSEN was also overhearing the emergency room doctor contact someone at the eye clinic saying he did not want to stitch BEERNTSENS injuries because they were so close to the eye. BEERNTSEN overheard the physician tell the person from the eye care clinic that he had never stitched anything so close to the eye. The person on the other end of the phone offered to verbally tell the physician what to do. While BEERNTSEN was overhearing this conversation between the emergency room doctor and the person at the eye care clinic, BEERNTSEN was also being questioned by Manitowoc County Sheriff Tom Kocourek and Manitowoc County Sheriff's Deputy Judy Dvorak. BEERNTSEN was asked why the Sheriff was involved and BEERNTSEN said she seems to recall the Sheriff was involved in this process because the deputy who was on call at the time did not answer the page.

BEERNTSEN stated Deputy Dvorak asked most of the questions and the Sheriff kept coming in and out of the room. BEERNTSEN said the entire time she was answering the investigator's questions she was being treated by the physician. BEERNTSEN did not think Deputy Dvorak ever left the room, however, the Sheriff left the room during certain parts of the examination by the physician. As part of the interview with Deputy Dvorak and the Sheriff, BEERNTSEN provided a physical description of her assailant and gave a statement as to what happened.

While still in the emergency room, BEERNTSEN was handed a statement and asked to read it and sign it. This statement had been completed by Deputy Dvorak and was a summary of the information BEERNTSEN had provided. BEERNTSEN told Deputy Dvorak and the Sheriff that she was unable to read the statement because of her blurred vision. BEERNTSEN was told to sign the document anyhow. BEERNTSEN said she could not remember if she was told to sign this document by Sheriff Kocourek or Deputy Dvorak. At the direction of the law enforcement official, BEERNTSEN said she signed the statement that night even though she could not read it.

BEERNTSEN told the special agent she did not read the statement she signed at the hospital until approximately July 31 or August 1, 1985. When BEERNTSEN read the statement, she said there were errors. Most of these errors were regarding the sequence of events and BEERNTSEN asked to complete a second, more accurate statement. BEERNTSEN said she did not think the original statement was wrong because Deputy Dvorak wrote things down incorrectly, instead, BEERNTSEN believes she may have made some errors in telling Deputy Dvorak what happened. For example, BEERNTSEN initially said her assailant had brown eyes but later said they were blue. BEERNTSEN told the special agent she originally told Deputy Dvorak that her assailant had brown eyes. BEERNTSEN referred to some of the statements she made the night of the assault as "excited utterances".

That same night, after BEERNTSEN was moved from the emergency room into a hospital room, Sheriff Kocourek and Gene Kusche from the Manitowoc County Sheriff's Department asked BEERNTSEN if she was able to give a physical description of her assailant for a composite drawing. BEERNTSEN said that she provided a physical description to Kusche, such as the shape of her assailant's face, facial features, etc. BEERNTSEN and Kusche worked together until they came up with an accurate representation of her assailant.

Within a half-hour after the composite drawing had been completed, Sheriff Kocourek displayed to BEERNTSEN nine photos of individuals who matched BEERNTSENS physical description. BEERNTSEN described these photos as fairly uniform in size and shape. Sheriff Kocourek placed these photos on her bed tray for her to look at. BEERNTSEN said she was not sure if she knew whether or not the Sheriff's Department had a suspect in mind at this time or not. After Sheriff Kocourek placed the nine photos on the bed tray he asked her if she recognized the man who assaulted her. BEERNTSEN said the minute she saw STEVEN AVERY's photo, she had a fearful

*This report is property of Wisconsin DOJ Division of Criminal Investigation. Neither it or its contents may be disseminated to unauthorized personnel.*

Case 1:19-cv-00484-BHL    Filed 09/06/22    Page 6 of 122    Document 264-1

CHRM004681

**Narrative - Continued**

reaction.

*you ever notice that?*

Sometime during the night of the assault, BEERNTSEN remembers asking Sheriff Kocourek if the sheriff's department had a suspect in mind. The Sheriff responded affirmatively. BEERNTSEN told the special agent she was not sure when this conversation occurred but she assured it happened on the night of the assault. BEERNTSEN was not sure if this conversation took place before or after the composite drawing and the photo-lineup.

Sometime during BEERNTSENS hospital stay, her husband, TOM BEERNTSEN told BEERNTSEN, that a suspect had been arrested in her assault case.

BEERNTSEN was released from the hospital the following day, July 30, 1985. Approximately the second night at home, BEERNTSEN had developed a bad case of poison ivy. Because of this, BEERNTSEN stated she was sleeping on the couch. Late that night, at approximately 12:07 a.m. (August 1, 1985) the BEERNTSEN residence received a phone call. BEERNTSEN told the special agent the phone call went like this:

BEERNTSEN:          "Hello"

CALLER:              "This is TOM"

BEERNTSEN:          "What do you want?"

CALLER:              "I want you."

BEERNTSEN said she hung up the phone and called Sheriff Kocourek the first thing the following morning.

BEERNTSEN was asked if she received any other harassing phone calls. BEERNTSEN responded that after the AVERY trial, BEERNTSEN started receiving phone calls. BEERNTSEN said she received these phone calls almost as if someone was watching her. For example, BEERNTSEN would receive phone calls that were sexual in nature within 5 minutes of her coming home from work. BEERNTSEN told the special agent that she did not know who was making these harassing phone calls.

The only harassing phone call BEERNTSEN received where she could identify the caller was on March 10, 1986. This phone call came from one of AVERY's alibi witnesses. BEERNTSEN said when she answered the phone on this date the person stated, "I hope you feel good putting an innocent boy in prison."

BEERNTSEN said on August 1, 1985 she contacted the sheriff's department regarding the harassing phone call she received the night before. Sheriff Kocourek sent Deputy Dvorak to her house because the Sheriff was concerned about BEERNTSENS personal safety. Deputy Dvorak told BEERNTSEN the sheriff's department was going to put together a live lineup for BEERNTSEN to look at because the sheriff's department wanted to make sure the right suspect was in custody.

While Deputy Dvorak was at the BEERNTSEN residence, BEERNTSEN read her original statement for the first time. BEERNTSEN said this would have occurred sometime during late afternoon, August 1, 1985. This is when BEERNTSEN asked to complete a second, more accurate statement.

While Deputy Dvorak and BEERNTSEN were waiting for the sheriff's department to create the lineup, Deputy Dvorak and BEERNTSEN went to a restaurant across the street from the sheriff's department. When the lineup was ready, Deputy Dvorak and BEERNTSEN went to the sheriff's department. BEERNTSEN was given pieces of paper, numbered 1 through 8, and instructed to put an "x" next to the appropriate number of who her assailant was. BEERNTSEN was told that if she could not identify her assailant, BEERNTSEN was to fold her paper in half. BEERNTSEN said when she saw AVERY in the lineup, she started shaking. BEERNTSEN again identified AVERY as her assailant. BEERNTSEN was asked if any of the people in the lineup was asked to speak and BEERNTSEN responded negatively.

BEERNTSEN expressed some concerns about this lineup because some of the men in the lineup did not look at all like

*This report is property of Wisconsin DOJ Division of Criminal Investigation. Neither it or its contents may be disseminated to unauthorized personnel.*

**Narrative - Continued**

her physical description. BEERNTSEN said some of the individuals were much taller then BEERNTSEN had described and others had the wrong hair color. BEERNTSEN told the Sheriff that some of the men in the lineup did not look at all like what she had described and the Sheriff had responded something to the effect of do you know how hard it is to find eight guys with a beard in this small town?

BEERNTSEN said that when she saw AVERY in the live lineup, BEERNTSEN put an "x" next to AVERY's number. BEERNTSEN stated AVERY was the only person in the live lineup who was also in the photo lineup she was shown the night of the assault.

When the live lineup was over, Sheriff Kocourek took BEERNTSEN and her husband, TOM, to the sheriff's office. While sitting in the sheriff's office, BEERNTSEN saw two of the men who were in the lineup walk down the hall. Since BEERNTSEN had never been involved in this type of situation before, BEERNTSEN was concerned as to why two of the people in the lineup were walking freely in the halls. The Sheriff told BEERNTSEN that one of the men in the lineup was a radio announcer and the second man was a mailman.

BEERNTSEN indicated that both times she identified AVERY in the separate lineups, BEERNTSEN was sure she was identifying the man who was her assailant. BEERNTSEN said after seeing AVERY in the live lineup, BEERNTSEN did not see AVERY again until his court appearances.

A few days after the assault, the sheriff's department took BEERNTSEN and her husband to the beach and had them role play the assault. The sheriff's department asked TOM BEERNTSEN to act as the assailant. PENNY BEERNTSEN demonstrated to the investigators how she was grabbed and attacked on the beach. (It did not appear as if BEERNTSEN had an issue with the sheriff's department asking her and her husband to role-play, however, this scenario was upsetting to Attorney Geske.)

Within weeks of the assault, BEERNTSEN received a telephone call from someone from the Manitowoc Police Department. The representative from the police department told BEERNTSEN that the Manitowoc Police Department had someone in mind that matches the description of BEERNTSENS' assailant. The representative told BEERNTSEN since the subject was not AVERY. The representative from the police department then asked BEERNTSEN if she ever noticed anyone watching her while she was at home, watching her at the "Y" where she worked or simply following her around. BEERNTSEN responded negatively.

*Tell her not re-calling the calls*

After receiving this call from the Manitowoc Police Department, BEERNTSEN contacted someone at the sheriff's department. BEERNTSEN thinks she may have talked directly to Sheriff Kocourek. BEERNTSEN asked the sheriff if there was another suspect. BEERNTSEN then relayed the contents of the phone call from the Manitowoc Police Department. BEERNTSEN was told the sheriff's department would contact the police department and that BEERNTSEN should not worry about this phone call because the sheriff's department has jurisdiction over this case. BEERNTSEN said she was never re-contacted by the Manitowoc Police Department. *say she ever followed up with Sheriff*

After the BEERNTSENS were told that DNA tests revealed AVERY was not the assailant, BEERNTSENS husband went to the Manitowoc Police Department to let them know AVERY was going to be released from prison. BEERNTSENS husband was going to ask the Manitowoc Police Department to keep an eye on their house because the BEERNTSENS were going to be out of town for a while. When TOM BEERNTSEN went to the police department he spoke with Manitowoc Police Department Deputy Chief Thomas Bergner. Deputy Chief Bergner told BEERNTSENS husband that BEERNTSENS assailant, GREGORY ALLEN, was a known sex offender and the Manitowoc Police Department had been monitoring since the mid 1980s. Deputy Chief Bergner told BEERNTSENS husband the police department actually had a code name for ALLEN and any time an officer saw ALLEN, they would use that code name on the radio, then any officer who was in the same area as ALLEN would monitor ALLEN's movements.

BEERNTSEN was then asked to describe the interaction she had with Manitowoc District Attorney Denis Vogel. BEERNTSEN said that Vogel came to her house on one occasion. At this time BEERNTSEN was still physically healing from the injuries she sustained. Vogel asked BEERNTSEN to tell her story and then he asked her how sure she was that she had identified the right person. BEERNTSEN responded she was 95% to 99% sure. Vogel told BEERNTSEN that when she was testifying on the stand she needed to say she was 100% sure. BEERNTSEN told the special agents

*only one other present?*

*This report is property of Wisconsin DOJ Division of Criminal Investigation. Neither it or its contents may be disseminated to unauthorized personnel.*

Case 1:19-cv-00484-BHL    Filed 09/06/22    Page 8 of 122    Document 264-1

CHRM004683

**Narrative - Continued**

that there were no doubts in her mind when she testified in court that AVERY was her assailant.

Vogel told BEERNTSEN that there was no physical evidence tying AVERY and BEERNTSEN together. As a result, BEERNTSEN needed to do the best job she could in testifying. While prepping BEERNTSEN for trial, Vogel told BEERNTSEN that he did not want her to carry on while she was testifying on the stand. Vogel said BEERNTSEN needed to be a believable witness who was in control of her emotions. Vogel did not want the jury to think that BEERNTSEN was a hysterical witness. BEERNTSEN said this put a lot of pressure on her because BEERNTSEN felt the entire case was hinging on her testimony.

During the trial, BEERNTSEN said she was sequestered so she did not hear all of the courtroom testimony. BEERNTSEN recalled on the day STEVE AVERY testified, BEERNTSEN asked Vogel how it was going. Vogel responded "not very good because AVERY was a very creditable witness".

The special agents asked BEERNTSEN if she ever saw a photo of GREGORY ALLEN during the investigation. BEERNTSEN responded she never saw ALLEN's photo and she never heard his name being mentioned. BEERNTSEN continued to say she did not know anything about ALLEN until AVERY had been released from prison and it was announced that ALLEN was in fact BEERNTSENS assailant.

After the trial BEERNTSEN had contact with the foreman of the jury who convicted AVERY. The foreman commented to BEERNTSEN that three of the people on the jury worked with cement. All three of these jurors felt that AVERY's alibi witnesses were not credible because some of these witnesses said they were working with AVERY on the day of the assault, pouring cement. These jurors all believed that if AVERY would have been pouring cement that day there would have been residue on AVERY's clothes. Because there was no residue found on AVERY's clothes, the jurors did not believe AVERY's alibi witnesses.

Several times during the interview, BEERNTSEN indicated everyone in the sheriff's department treated her very kindly and sensitively.

During the week of September 22, 2003, BEERNTSEN received a telephone call from BRENDA PETERSEN, the Victim Witness Coordinator for Manitowoc County. BEERNTSEN stated PETERSEN has always been very good to her. PETERSEN began the conversation by asking BEERNTSEN how she was doing. As the conversation went on, BEERNTSEN had the feeling PETERSEN had something else to say. PETERSEN told BEERNTSEN that some mistakes had been made during the trial but PETERSEN believed they were honest mistakes. PETERSEN also told BEERNTSEN that Jim Fitzgerald, the former Manitowoc County District Attorney, wanted to get in touch with BEERNTSEN. BEERNTSEN said Fitzgerald has not contacted her as of this time.

During the AVERY trial, Fitzgerald worked as an Assistant District Attorney for Manitowoc County. BEERNTSEN thought Fitzgerald was on paternity leave during the trial. BEERNTSEN remembers Vogel commenting that if Fitzgerald came into the office for some reason, Fitzgerald was not to get near this case because he would "fuck it up".

BEERNTSEN was asked if she has spoken with either Sheriff Kocourek or D. A. Vogel since AVERY's release. BEERNTSEN responded that she recently ran into Sheriff Kocourek at a Letterman Concert at the Capitol Civic Center. BEERNTSEN originally saw Sheriff Kocourek talking to the current Manitowoc County Sheriff, Ken Petersen. Later that evening, BEERNTSENS husband had a brief conversation with the sheriff. BEERNTSEN said she did not talk to the sheriff that evening, nor has she had any contact with Sheriff Kocourek or D. A. Vogel about this issue.

BEERNTSEN told the special agents that after AVERY had been sentenced, BEERNTSEN learned that Sheriff Kocourek went to a county budget hearing, taking the photographs of BEERNTSEN that had been used during the trial. Sheriff Kocourek showed these photos to the members of the County Board and stated these photos demonstrate the reason the sheriff's department needed more money in their budget.

BEERNTSEN was asked how she received an Affidavit from an inmate indicating AVERY confessed to committing the assault. BEERNTSEN responded that she was doing advocate work and going to the various prisons to talk about her assault. As part of BEERNTSENS presentations, she never uses AVERY's first or last name. During a lunch break at the

*This report is property of Wisconsin DOJ Division of Criminal Investigation. Neither it or its contents may be disseminated to unauthorized personnel.*

Case 1:19-cv-00484-BHL   Filed 09/06/22   Page 9 of 122   Document 264-1

CHRM004684

# Wisconsin DOJ Division of Criminal Investigation

*ACISS Investigative Report*

Report Number: DCIR13280/1

Report Date:

## Narrative - Continued

Green Bay Correctional Institute, an inmate approached BEERNTSEN and stated that he has heard her story in the past. The man stated he was incarcerated in the Green Bay Prison and had a cell next to AVERY's. The inmate stated that AVERY would brag about his crime.

BEERNTSEN said Attorney Bruce Kittle, a lawyer for the Restorative Justice Project at the time, got this Affidavit for BEERNTSEN. BEERNTSEN thought Kittle was currently working for the Restorative Justice Program in Iowa. Geske stated that she would e-mail Kittle's address and phone number to S/A Strauss at a later time.

As part of the interview, BEERNTSEN said most people in the community seem to think that she and the Sheriff are good friends. BEERNTSEN said that even though their daughters may socialize, she and the Sheriff do not. They know each other but they do not socialize together.

During the interview, BEERNTSEN was asked if she ever saw a photo of ALLEN since the assault. BEERNTSEN responded that since AVERY was released and ALLEN was positively identified as her assailant, BEERNTSEN has seen a 1987 photo of ALLEN. When BEERNTSEN originally saw the photo she thought AVERY and ALLEN could be brothers. BEERNTSEN stated that after seeing the photo of ALLEN, it did not strike the fear in her memory of AVERY does.

Geske provided the special agents with the booking photo of AVERY on June 30, 1985 and a booking photograph of ALLEN that is believed to have been taken in March 1987. A copy of these photos can be found in the main case file.

BEERNTSEN had no additional information and the interview was at that time terminated.

dmg: 10/02/2003

13280 dci2 beerntsen interview 09262003 straussdk

## Record Status Information

| | |
|---|---|
| Record Origination Operator: | Conversion User (Criminal Investigation / Wisconsin DOJ Division of Criminal Investigation) |
| Record Origination Date: | 04/12/2004 14:13 |
| Last Update Operator: | Conversion User (Criminal Investigation / Wisconsin DOJ Division of Criminal Investigation) |
| Last Update Date: | 04/12/2004 14:13 |

*This report is property of Wisconsin DOJ Division of Criminal Investigation. Neither it or its contents may be disseminated to unauthorized personnel.*

Case 1:19-cv-00484-BHL   Filed 09/06/22   Page 10 of 122   Document 264-1

CHRM004685

# Wisconsin DOJ Division of Criminal Investigation

## ACISS Investigative Report

Report Number:    DCIR13280/10            Report Date:

### Primary Information

| | |
|---|---|
| Report Number: | DCIR13280/10 |
| Type Of Report: | Investigative |
| Description: | dci2 int-reesa evans |
| Approval Status: | Approved |
| Approved Date: | 04/12/2004 |
| Approved By: | Conversion User (Criminal Investigation / Wisconsin DOJ Division of Criminal Investigation) |

### Narrative

CASE ACTIVITY REPORT    Wisconsin Department of Justice
DJ-DCI-2 (Rev. 8/91)    DIVISION OF CRIMINAL INVESTIGATION

1.   Case Number

   GC-13280
2.   Date

   10/29/2003
3.   Case Title

   STEVEN AVERY PROSECUTION
4.   Activity

   Interview/REESA G. EVANS
5.   Date of Activity

   10/27/2003

6.
On Monday, October 27, 2003, at approximately 11:05 a.m., S/A Debra K. Strauss and S/A Amy A. Lehmann interviewed REESA G. EVANS, DOB 02/07/1949. EVANS currently resides at 200 Airport Drive, PO Box 213, Friendship, WI, 608-339-6875. EVANS stated she was moving from this location in approximately one month and she was not sure where she would be moving to.

This interview was conducted in a conference room in the Adams County Courthouse. For the past 13 months, EVANS has been working at the Adams County Land Conservation office.

The purpose of this interview was to obtain information EVANS may have regarding the events that occurred after the PENNY BEERNTSEN assault on July 29, 1985, through the arrest and conviction of STEVEN AVERY.

EVANS provided the following information:

EVANS stated she worked as a public defender in Manitowoc County from December 1983 through September 1987. In July 1985, EVANS said she was the only public defender in Manitowoc County. In July 1985, when AVERY was arrested for the assault on BEERNTSEN, EVANS was already representing AVERY for a crime AVERY had committed on January 3, 1985. (According to records previously obtained from the Manitowoc County Clerk of Court, these charges were for endangering safety by conduct regardless of life as a repeater and a felon in possession a firearm as a repeater.)

EVANS was asked if she recalled having any concerns about the way the AVERY case was handled. EVANS responded she recalls this case made her mad. EVANS explained that every day, the public defender's office would receive a "lock up list" from the sheriff's department. The day after AVERY had been arrested, EVANS received the lock up list from the sheriff's department but AVERY's name was not on the list. EVANS said she knew AVERY's name should have been

*This report is property of Wisconsin DOJ Division of Criminal Investigation. Neither it or its contents may be disseminated to unauthorized personnel.*

Case 1:19-cv-00484-BHL    Filed 09/06/22    Page 11 of 122    Document 264-1

CHRM004686

# Wisconsin DOJ Division of Criminal Investigation
## *ACISS Investigative Report*

Report Number:    DCIR13280/10                                      Report Date:

**Narrative - Continued**

on the list because she had already been contacted by LAURIE AVERY, STEVEN AVERY's wife and told that AVERY had been arrested for the BEERNTSEN assault. EVANS said she asked the jailer why AVERY's name was not on the lock up list. The jailer responded that it was the sheriff's orders. EVANS was told by the jailer that the sheriff indicated that AVERY was not to receive any phone calls, have no visitors and was not to have any contact with any attorneys. EVANS said that she had never seen this happen at the sheriff's department prior to this incident. Even though the sheriff had given written orders that AVERY could not have any visitors, the jailer allowed EVANS to see AVERY that day.

When EVANS saw AVERY, AVERY was being held in a jail cell by himself. EVANS said that this was not a common practice within the sheriff's department.

To the best of EVANS's recollection, the BEERNTSEN assault case was the only case that sheriff TOM KOUCEREK had ever personally investigated. EVANS believed that the sheriff investigated this case himself because BEERNTSEN and the sheriff went to the same church and they only lived a few houses apart from each other.

EVANS said she felt AVERY's Constitutional Rights were being violated by Sheriff KOUCEREK and Manitowoc County District Attorney DENIS VOGEL. Because of these concerns, EVANS filed a motion to dismiss the sheriff and the district attorney from the case. EVANS said she lost this motion.

After AVERY had been arrested, DA VOGEL placed AVERY in preventive detention. EVANS said this was the only time she had ever seen preventive detention used in Manitowoc County. When a person is placed in preventive detention, it means they are denied bail. EVANS said she did not think DA VOGEL would do a preventive detention hold on someone without a request being made by the sheriff's department because it creates a lot of paperwork for the district attorney's office.

During one of the preliminary hearings, when EVANS was questioning the sheriff, the sheriff was being evasive to EVANS's questions. For example, the sheriff would not answer EVANS when she asked the sheriff what his connection was to the victim. The sheriff would also not answer EVANS when she asked why he made a written order indicating AVERY was not to have contacts with anyone after he had been arrested. EVANS said she eventually asked the presiding judge (AL DEER) to order the sheriff to answer EVANS's questions. EVANS recalled that when she made this request to the judge, the judge responded, "What do you think he's trying to do woman?" EVANS said that the judge's tone was very demeaning. After the preliminary hearing, EVANS and DA VOGEL went into the judge's chambers and EVANS demanded an apology from the judge, which she did receive.

Another issue EVANS had with this case was the photo lineup. ~~EVANS stated that when the victim was taken to the hospital, the victim was shown a photo of AVERY after the victim had given a verbal description of her assailant. The victim was shown the photo of AVERY because after the victim provided a verbal description,~~ someone stated that the description sounded like AVERY. When EVANS was asked how she knew this information, EVANS stated that it was in the sheriff's department's reports. EVANS did not think the photo lineup shown to the victim was a fair photo lineup because it only showed the individuals from their shoulders up. EVANS did not think the complete physical description provided by the victim accurately described AVERY. For example, the victim stated that her assailant came from behind and picked her up off of the ground. Since AVERY and the victim are the same height, there was no way AVERY could have come from behind and picked the victim up.

EVANS said that after the victim had identified AVERY as her assailant, the sheriff's department used AVERY's uncle, ARLAND AVERY, to go into the house to get AVERY. ARLAND AVERY had previously indicated that when he saw STEVE AVERY the night of the assault, STEVE AVERY had cement dust on his shoulders. EVANS said the defense tried to get ARLAND AVERY to sign an Affidavit indicating AVERY had cement dust on his shoulders at the time of his arrest. ARLAND AVERY would not sign this Affidavit because it was made very clear to ARLAND AVERY by someone within the sheriff's department that if he signed such an Affidavit, his job at the sheriff's department would be in jeopardy.

Another motion made by EVANS was a motion to suppress the victim's positive identification of her assailant. EVANS said that she made this motion because EVANS did not think that the people in the live lineup matched the victim's

This report is property of Wisconsin DOJ Division of Criminal Investigation. Neither it or its contents may be disseminated to unauthorized personnel.

lehmannaa 04/13/2005 13:31                                  **005506**                        Page 2 of 4

Case 1:19-cv-00484-BHL   Filed 09/06/22   Page 12 of 122   Document 264-1

CHRM004687

# Wisconsin DOJ Division of Criminal Investigation
### *ACISS Investigative Report*

Report Number: DCIR13280/10

Report Date:

physical description. EVANS stated she lost this motion.

EVANS was asked what she knew about a canvass being conducted by the sheriff's department. EVANS responded that when investigators for the defense went to interview people who lived near the site of the assault, the investigators learned these neighbors had been interviewed by members of the Manitowoc County Sheriff's Department. EVANS said that she did not think the people contacted as part of the canvass or their responses were reduced to writing. EVANS said she did not think it was put in writing because if it would have been, the prosecution would have had to give this information to EVANS as part of discovery.

EVANS said that she filed a lot of motions above the normal motions filed in a case such as this. EVANS again spoke about her motions to suppress the victim's positive identification. EVANS said that another reason she wanted to suppress the identification by the victim was because during the live lineup, EVANS was not able to attend. As a result, EVANS asked someone from the Green Bay office to attend this process. At a later date, the victim identified EVANS as the person who was at the live lineup from the Public Defender's office. EVANS said that she and the woman who went to the lineup on EVANS's behalf did not look alike in any way.

At one point, EVANS would have asked DA VOGEL for any exculpatory evidence. EVANS said that she did not receive anything as far as other suspects from the District Attorney's office. EVANS said she could not remember if she filed a specific request to obtain information about other sexual assaults in the Manitowoc area. EVANS said that she may have discussed this possible issue with DA VOGEL but she was never given access to this information.

If EVANS would have obtained information about other potential suspects, EVANS would have ordered reports from agencies such as NCIC and the local police departments. EVANS said that this was a routine procedure for her.

In mid to late October 1985, EVANS developed pneumonia and had to find another Public Defender for AVERY. EVANS said that because AVERY had been placed on preventive detention, the trial was scheduled to take place and there was nothing EVANS could do about postponing the trial.

The person eventually hired to represent AVERY in this trial was JIM BOLGERT. After the trial was over, EVANS said she read the transcript of the trial and EVANS did not think BOLGERT did a very good job. EVANS believed that BOLGERT had never been involved in a trial where the use of eye witness testimony had been used. As a result, BOLGERT did not emphasize the weaknesses of a case based largely on eye witness identification. EVANS said that approximately one week before the trial, EVANS saw BOLGERT in the courthouse. After a brief conversation, EVANS got the impression that BOLGERT was overwhelmed with this case. Prior to running into BOLGERT, EVANS said she did not have any conversations with BOLGERT about the case.

After AVERY was convicted, EVANS worked with JACK SCHEIER on AVERY's appeal. EVANS stayed involved in the AVERY appeal case until she went back to school in 1999. That is when EVANS quit working on the AVERY appeal and submitted the case to Project Innocence in New York. EVANS said she did not send the file to Project Innocence in Wisconsin because she did not know that Project Innocence of Wisconsin existed. EVANS said that by the time she went back to school in 1999, Project Innocence of New York had accepted AVERY's case. EVANS believed that this was AVERY's best chance to win an appeal.

During the time EVANS worked as a public defender in Manitowoc County, EVANS did not have any one-on-one interaction with the sheriff. The only time EVANS had contact with the sheriff was during the preliminary hearings. EVANS stated she had a good working relationship with DA VOGEL. Because EVANS was the only public defender in Manitowoc County for many years, EVANS had almost daily contact with DA VOGEL. EVANS was sure that as the AVERY case progressed, she was sure that she would have talked to DA VOGEL about the possibility that she felt DA VOGEL was hiding evidence. EVANS was unable to recall any specifics about such a conversation but stated that she would have notes of these conversations in her case file. In 1997, EVANS sent her entire case file to AVERY's parents. This would include EVANS's notes regarding conversations that she had with DA VOGEL.

EVANS could not remember ever hearing about an individual named, GREG ALLEN. EVANS said that she had a lot of clients while working in the Public Defender's office and she was not able to remember the name of every client she has

*This report is property of Wisconsin DOJ Division of Criminal Investigation. Neither it or its contents may be disseminated to unauthorized personnel.*

CHRM004688

Report Number: DCIR13280/10

Report Date:

had. EVANS stated that it was possible that ALLEN may have been represented by someone in the Manitowoc County Public Defender's office but she was not sure.

EVANS told the special agents that she never thought AVERY committed the BEERNTSEN assault. When EVANS was asked why, EVAN responded that AVERY's "intelligence was borderline." EVANS described AVERY as someone who was impulsive and would not be able to think out and plan a crime such as the BEERNTSEN assault. EVANS also described AVERY as a person who could not lie and, even though his actions may have been wrong, AVERY would admit to the crime. Because AVERY never admitted to the BEERNTSEN assault, EVANS was sure that he did not commit the crime.

EVANS suggested that the special agents contact JUDY VAN. VAN was a secretary at the Public Defender's office at the time EVANS was working there. EVANS said that VAN was still working as a secretary for the Manitowoc County Public Defender's office.

EVANS had no additional information and the interview concluded at approximately 12:00 noon.

dp 10/30/03
13280 dci2 int-reesa evans 10272003 straussdk

| | |
|---|---|
| Record Origination Operator: | Conversion User (Criminal Investigation / Wisconsin DOJ Division of Criminal Investigation) |
| Record Origination Date: | 04/12/2004 14:13 |
| Last Update Operator: | Conversion User (Criminal Investigation / Wisconsin DOJ Division of Criminal Investigation) |
| Last Update Date: | 04/12/2004 14:13 |

*This report is property of Wisconsin DOJ Division of Criminal Investigation. Neither it or its contents may be disseminated to unauthorized personnel.*

CHRM004689

# Wisconsin DOJ Division of Criminal Investigation

*ACISS Investigative Report*

## Primary Information

| | |
|---|---|
| Report Number: | DCIR13280/11 |
| Type Of Report: | Investigative |
| Description: | dci2 intel info-avery-allen photos |
| Approval Status: | Approved |
| Approved Date: | 04/12/2004 |
| Approved By: | Conversion User (Criminal Investigation / Wisconsin DOJ Division of Criminal Investigation) |

## Narrative

CASE ACTIVITY REPORT    Wisconsin Department of Justice
DJ-DCI-2 (Rev. 8/91)    DIVISION OF CRIMINAL INVESTIGATION

1.    Case Number

   GC-13280
2.    Date

   10/06/2003
3.    Case Title

   STEVEN AVERY PROSECUTION
4.    Activity

   Intelligence Information/AVERY/ALLEN Photos
5.    Date of Activity

   09/26/2003

6.
On Friday, September 26, 2003, S/A Debra K. Strauss and S/A Amy A. Lehmann interviewed PENELOPE A. BEERNTSEN. Also sitting in on the interview were BEERNTSEN's Attorney, Janine P. Geske, Distinguished Professor of Law at Marquette University and Dr. Daniel D. Blinka, Professor of Law at Marquette University. This interview was conducted in a conference room at the Marquette Law School, 1103 West Milwaukee Street, Milwaukee, WI.

During the interview, Attorney Geske provided the special agents with mug shot photos of GREGORY A. ALLEN, DOB 01/17/1954 and STEVEN A. AVERY, DOB 07/09/1963. The photo of ALLEN was taken on March 24, 1987 and the photo of AVERY was taken on July 30, 1985.

A copy of these photos can be found in the main case file.

dp 10/14/03
13280 dci2 intel info-avery-allen photos 09262003 straussdk

## Record Status Information

| | |
|---|---|
| Record Origination Operator: | Conversion User (Criminal Investigation / Wisconsin DOJ Division of Criminal Investigation) |
| Record Origination Date: | 04/12/2004 14:13 |
| Last Update Operator: | Conversion User (Criminal Investigation / Wisconsin DOJ Division of Criminal Investigation) |

*This report is property of Wisconsin DOJ Division of Criminal Investigation. Neither it or its contents may be disseminated to unauthorized personnel.*

Case 1:19-cv-00484-BHL   Filed 09/06/22   Page 15 of 122   Document 264-1

CHRM004690

**Record Status Information - Continued**

| | |
|---|---|
| Last Update Date: | 04/12/2004 14:13 |

*This report is property of Wisconsin DOJ Division of Criminal Investigation. Neither it or its contents may be disseminated to unauthorized personnel.*

Case 1:19-cv-00484-BHL   Filed 09/06/22   Page 16 of 122   Document 264-1

CHRM004691

# Wisconsin DOJ Division of Criminal Investigation

## ACISS Investigative Report

### Primary Information

| | |
|---|---|
| Report Number: | DCIR13280/12 |
| Type Of Report: | Investigative |
| Description: | dci2 interview badker |
| Approval Status: | Approved |
| Approved Date: | 04/12/2004 |
| Approved By: | Conversion User (Criminal Investigation / Wisconsin DOJ Division of Criminal Investigation) |

### Narrative

CASE ACTIVITY REPORT    Wisconsin Department of Justice
DJ-DCI-2 (Rev. 8/91)    DIVISION OF CRIMINAL INVESTIGATION

1.  Case Number

    GC-13280
2.  Date

    09/25/2003
3.  Case Title

    STEVEN AVERY PROSECUTION
4.  Activity

    INTERVIEW: BADKER
5.  Date of Activity

    09/23/2003

6.

On Tuesday, September 23, 2003 at approximately 10:00 a.m., S/A Debra K. Strauss and S/A Amy A. Lehmann interviewed:

        NAME:        BEVERLY A. BADKER (BEV)
        ADDRESS:      4824 Sunset Road, Manitowoc, WI
        DATE OF BIRTH:   11/22/1949
        HOME PHONE:   920-684-0635
        WORK PHONE:   920-683-4073

The purpose of this interview was to obtain information BADKER would have regarding the investigation and subsequent conviction of STEVEN A. AVERY, DOB: 07/09/1963 in 1985.

BADKER stated she has been working for Manitowoc County since April 1975. For the last 9 years BADKER has been working as a Paralegal in the District Attorney's office. During 1995, BADKER worked as a Secretary for the District Attorney's office.

BADKER told the special agents she did not think AVERY was the person who committed this crime long before it was determined the crime was actually committed by GREGORY ALLEN. When the special agents asked BADKER who she thought committed this crime and why, BADKER responded it was a "gut instinct". BADKER continued by saying when she saw the composite picture that had been drawn, this picture instantly reminded her of ALLEN. BADKER said she

*when was that?*

This report is property of Wisconsin DOJ Division of Criminal Investigation. Neither it or its contents may be disseminated to unauthorized personnel.

Case 1:19-cv-00484-BHL   Filed 09/06/22   Page 17 of 122   Document 264-1

CHRM004692

**Narrative - Continued**

knew of ALLEN because he had previously been charged of other crimes by the district attorney's office. BADKER said she believed it was possible that ALLEN may have come to the front counter of the district attorney's office for some reason and that is how BADKER would have known what ALLEN looked like.

BADKER stated that after she saw the picture composite, BADKER recalled talking about this with Jill Mertens. Mertens was also working in the district attorney's office at this time. BADKER recalled she and Mertens talking about this photo and how they both agreed it looked like ALLEN.

BADKER stated that at one time she told the Manitowoc County District Attorney at the time, Denis Vogel, she thought this composite photo looked like ALLEN and not AVERY. Vogel told BADKER that ALLEN could not have committed this crime because ALLEN was on probation in Door County at the time the crime was committed. Vogel told BADKER that ALLEN's probation officer had been contacted and the probation officer verified that ALLEN had an alibi at the time the crime was committed. BADKER told the special agents it was later determined the probation officer said he had seen ALLEN within a day or so of the incident and did not provide an alibi as to ALLEN's whereabouts at the time the crime was committed.

BADKER said that as the case progressed, the detectives investigating this crime drove their car to Green Bay to recreate AVERY's alibi as to where he was when the crime was being committed. BADKER said she has issues with the way this was done because when the officers recreated the scenario they would have had to have been speeding and the detectives did not have five small children, including two newborns, with them at the time. BADKER was asked who she thought the detectives were who did this run and BADKER said she was not sure. BADKER said it could have been Det. Fred Nicholson, Det. Roger Meihsner and/or Det. Al Kolanczyk. BADKER stated all of these detectives have since retired.

In BADKER's opinion, the detectives were not necessarily trying to prove whether or not the crime could have been committed by AVERY, instead she feels the detectives were going to find a way to show that AVERY could have done the things he did in Green Bay and still have been in the Two Rivers area to commit the crime.

BADKER was asked if there were any other suspects in this investigation and BADKER said she was not aware of any. BADKER was then asked if she knows how it was determined AVERY was a suspect and BADKER again stated she did not know.

BADKER told the special agents she was surprised at how involved Manitowoc County Sheriff Tom Kocourek was in this case. BADKER said she later learned that Sheriff Kocourek and PENNY BEERNTSEN, the victim, were friends. BADKER said she did not know how involved Sheriff Kocourek was in the investigation but she did know the sheriff came to every court hearing and the trial.

From the time AVERY was arrested until his prosecution, BADKER could not recall D. A. Vogel ever vocalizing any doubts or second thoughts about prosecuting AVERY as the perpetrator of these crimes. BADKER said on a couple of different occasions she would tell D. A. Vogel she had a "gut feeling" that the facts of the assault did not seem right and BADKER would bring up ALLEN's name. D. A. Vogel would simply tell BADKER that ALLEN could not have committed this crime.

In BADKER's opinion, there seemed to be pressure on arresting and convicting someone right away for this offense. Both D. A. Vogel and Sheriff Kocourek applied this pressure. BADKER does not believe that either D. A. Vogel or Sheriff Kocourek intentionally prosecuted the wrong person. BADKER believes that at the time of the arrest and the trial, both D. A. Vogel and Sheriff Kocourek were sure they were prosecuting the right person.

BADKER told the special agents that as the trial was going on, BADKER was not involved in the trial. BADKER told the special agents the only person who would know what went on during the trial was Brenda Petersen. Petersen was the Victim Witness Coordinator at that time.

BADKER had no additional information and the interview concluded at approximately 10:20

**005512**

*This report is property of Wisconsin DOJ Division of Criminal Investigation. Neither it or its contents may be disseminated to unauthorized personnel.*

Case 1:19-cv-00484-BHL   Filed 09/06/22   Page 18 of 122   Document 264-1

CHRM004693

# Wisconsin DOJ Division of Criminal Investigation

*ACISS Investigative Report*

### Narrative - Continued

a.m.

dmg: 10/02/2003

13280  dci2 interview badker 09232003 straussdk.doc

### Record Status Information

| | |
|---|---|
| Record Origination Operator: | Conversion User (Criminal Investigation / Wisconsin DOJ Division of Criminal Investigation) |
| Record Origination Date: | 04/12/2004 14:13 |
| Last Update Operator: | Conversion User (Criminal Investigation / Wisconsin DOJ Division of Criminal Investigation) |
| Last Update Date: | 04/12/2004 14:13 |

005513

*This report is property of Wisconsin DOJ Division of Criminal Investigation. Neither it or its contents may be disseminated to unauthorized personnel.*

CHRM004694

Report Number:    DCIR13280/13                                    Report Date:

| | |
|---|---|
| Report Number: | DCIR13280/13 |
| Type Of Report: | Investigative |
| Description: | dci2 kolanczyk int |
| Approval Status: | Approved |
| Approved Date: | 04/12/2004 |
| Approved By: | Conversion User (Criminal Investigation / Wisconsin DOJ Division of Criminal Investigation) |

CASE ACTIVITY REPORT    Wisconsin Department of Justice
DJ-DCI-2 (Rev. 8/91)    DIVISION OF CRIMINAL INVESTIGATION

1.    Case Number

   GC-13280
2.    Date

   10/06/2003
3.    Case Title

   STEVEN AVERY PROSECUTION
4.    Activity

   Interview/Kolanczyk
5.    Date of Activity

   10/02/2003

6.

On Thursday, October 2, 2003 at approximately 12:45 p.m., S/A Debra K. Strauss and S/A Amy A. Lehman interviewed ALLAN (AL) R. KOLANCZYK, DOB: 07/20/1936. This interview was conducted at KOLANCZYK's residence, 1622 S. 16th Street, Manitowoc, WI, telephone number 920-682-4306. The purpose of this interview was to obtain information KOLANCZYK may have regarding the investigation of the PENNY BEERNTSEN assault and the arrest and conviction of STEVEN AVERY.

KOLANCZYK provided the following information:

KOLANCZYK said he has been retired from the sheriff's department for approximately 13 years. In July 1995, when the BEERNTSEN assault occurred, KOLANCZYK was working as a detective for the Manitowoc County Sheriff's Department. KOLANCZYK stated on the day of the assault it was his day off and he was in the process of moving out of his ex-wife's house. KOLANCZYK said he received a call from the sheriff's department and was advised by a dispatcher that a rape had occurred and they needed a detective to investigate the crime. The dispatcher told KOLANCZYK they could not find any other detectives so KOLANCZYK agreed to come into work. KOLANCZYK said he would be there in approximately 1 hour. KOLANCZYK was told to go directly to Memorial Hospital, where the victim was taken, and meet with BILL BECK.

KOLANCZYK stated that approximately 1 hour later, at 7:00 p.m., KOLANCZYK arrived at Memorial Hospital. When KOLANCZYK arrived at the hospital, Sheriff Tom Kocourek was there. Sheriff Kocourek was mad that it took so long for KOLANCZYK to get to the hospital. KOLANCZYK asked the sheriff what the sheriff wanted KOLANCZYK to do. The sheriff responded, "do what you want". While KOLANCZYK was still standing there, a jailer came to the hospital and

*This report is property of Wisconsin DOJ Division of Criminal Investigation. Neither it nor its contents may be disseminated to unauthorized personnel.*

# Wisconsin DOJ Division of Criminal Investigation
*ACISS Investigative Report*

Report Number:  DCIR13280/13                     Report Date:

Narrative - Continued

handed the sheriff a stack of pictures. KOLANCZYK stated that Sheriff Kocourek put these pictures in his pocket. KOLANCZYK asked the sheriff if KOLANCZYK should set up a Photo ID for the victim to review and the sheriff responded he would handle it.

While KOLANCZYK was still at the hospital, GENE KUSCHE from the Manitowoc County Sheriff's Department came to the hospital. KUSCHE was going to work with the victim to draw a composite picture. KOLANCZYK heard KUSCHE state that no one should show the victim any pictures of potential suspects until the composite picture is completed. KOLANCZYK then observed KUSCHE and Sheriff Kocourek go into the victim's hospital room to do the drawing.

When the sheriff came out of the victim's hospital room the sheriff asked KOLANCZYK if he knew where the Crime Lab was in Madison. KOLANCZYK responded that he did. The sheriff then told KOLANCZYK to be at the sheriff's department at 7:00 o'clock the following morning to pick up the evidence and take it to the Crime Lab.

KOLANCZYK said he left the emergency room and went home.

The next morning KOLANCZYK was at the sheriff's department at 7:00 a.m. KOLANCZYK was told that a search warrant was going to be executed at AVERY's residence so KOLANCZYK would not be going to the Crime Lab, instead KOLANCZYK was going to help with the search warrant.

KOLANCZYK was asked if he knew that STEVEN AVERY was considered a suspect at the time. KOLANCZYK responded that he thought he was aware of this information because he had thought he had heard that AVERY was a suspect while KOLANCZYK was still at the hospital.

KOLANCZYK said he helped execute the search warrant with KUSCHE, Sheriff Kocourek, JUDY DVORAK and another part time deputy. KOLANCZYK stated that as part of the search warrant, the officers were looking for a leather jacket. During the execution of the search warrant, KUSCHE came down the stairs stating he had found a leather jacket. KOLANCZYK remembers telling KUSCHE to put the jacket back where he found it until the search team was ready to search that particular room.

When the search warrant was completed, the jacket had been seized. It was KOLANCZYK's job to log the evidence. KOLANCZYK was asked if he took this evidence to the Crime Lab. KOLANCZYK responded he did not. KOLANCZYK said he never went to the Crime Lab for this case and he is not sure who did.

KOLANCZYK was asked if he was involved in a trial run to the ShopKo in Green Bay to determine if AVERY would have had time to commit this assault and then drive to the ShopKo in Green Bay to purchase paint. KOLANCZYK said he was not involved in this timed run and he thought Det. LARRY CONRAD or another officer may have done this.

KOLANCZYK said STEVE AVERY was a suspect for this crime from the very beginning. KOLANCZYK said AVERY was the first name KOLANCZYK heard as a possible suspect for this assault. According to KOLANCZYK, AVERY had a bad reputation. Even though AVERY had this bad reputation, KOLANCZYK did not know if a sexual assault was part of AVERY's criminal history. KOLANCZYK said he could never understand what AVERY would have been doing in a location where the sexual assault occurred. KOLANCZYK also said the place where the assault took place was not a place where AVERY would have been. Because of this, KOLANCZYK had doubts as to whether or not AVERY actually committed this crime. KOLANCZYK stated he has never had any personal dealings with AVERY, however, he was familiar with the AVERY family and he knew the AVERY reputation.

KOLANCZYK was then asked if he knew GREGORY ALLEN. KOLANCZYK said he did not. KOLANCZYK continued to state that he did not know ALLEN's name until he heard it on the t.v. after AVERY's release from prison and ALLEN's positive identification through DNA.

KOLANCZYK was then asked if there were other suspects in this case except for AVERY. KOLANCZYK responded he did not know of any other suspects but KOLANCZYK stated he was "not in the loop".

The night of the BEERNTSEN assault, when KOLANCZYK went to the hospital, KOLANCZYK recalls the sheriff

This report is property of Wisconsin DOJ Division of Criminal Investigation. Neither it or its contents may be disseminated to unauthorized personnel.

lehmannaa 04/13/2005 13:31                   005515                   Page 2 of 3

Case 1:19-cv-00484-BHL   Filed 09/06/22   Page 21 of 122   Document 264-1

CHRM004696

## Narrative - Continued

commenting to him that no detectives were available so the sheriff had to come in. KOLANCZYK remembers the sheriff being very mad about this. When KOLANCZYK arrived at the hospital, KOLANCZYK estimated there was still between 1 to 1 1/2 hours of daylight left. KOLANCZYK offered to go out to the crime scene to look for evidence. The sheriff told KOLANCZYK this was not necessary because the counties' dog, BRUNO, was already out there.

KOLANCZYK was then asked if he ever heard any other detective express any doubts about AVERY committing this crime. The only thing KOLANCZYK could remember was the detectives talking about how they could not understand why AVERY would be in the area where the crime was committed.

KOLANCZYK stated that on the Monday after this crime occurred, the sheriff put KOLANCZYK on a 3-day suspension because it took him so long to get to the hospital that night. KOLANCZYK said he grieved the suspension through the Union and had the suspension reduced to 1-day. KOLANCZYK said he does not think he ever served that 1-day suspension.

KOLANCZYK had no additional information and the interview concluded at approximately 1:20 p.m.

DKS:dmg: 10/17/2003

13280 dci2 kolanczyk int 10022003 straussdk

## Record Status Information

| | |
|---|---|
| Record Origination Operator: | Conversion User (Criminal Investigation / Wisconsin DOJ Division of Criminal Investigation) |
| Record Origination Date: | 04/12/2004 14:13 |
| Last Update Operator: | Conversion User (Criminal Investigation / Wisconsin DOJ Division of Criminal Investigation) |
| Last Update Date: | 04/12/2004 14:13 |

005516

*This report is property of Wisconsin DOJ Division of Criminal Investigation. Neither it or its contents may be disseminated to unauthorized personnel.*

Case 1:19-cv-00484-BHL   Filed 09/06/22   Page 22 of 122   Document 264-1

CHRM004697

# Wisconsin DOJ Division of Criminal Investigation

*ACISS Investigative Report*

Report Number: DCIR13280/14

Report Date:

## Primary Information

| | |
|---|---|
| Report Number: | DCIR13280/14 |
| Type Of Report: | Investigative |
| Description: | dci2 lec sheb |
| Approval Status: | Approved |
| Approved Date: | 04/12/2004 |
| Approved By: | Conversion User (Criminal Investigation / Wisconsin DOJ Division of Criminal Investigation} |

## Narrative

CASE ACTIVITY REPORT   Wisconsin Department of Justice
DJ-DCI-2 (Rev. 8/91)   DIVISION OF CRIMINAL INVESTIGATION

1.   Case Number

GC-13280
2.   Date

11/19/2003
3.   Case Title

STEVEN AVERY PROSECUTION
4.   Activity

Law Enforcement Contact: Sheboygan County
5.   Date of Activity

10/21/2003

6.

On Tuesday, October 21, 2003, S/A Debra K. Strauss received a voice mail message from the records section of the Sheboygan County Sheriff's Department. S/A Strauss had previously contacted the records section of the sheriff's department to determine if the sheriff's department had any previous contacts with GREGORY A. ALLEN, DOB 01/17/1954.

S/A Strauss was advised a review of the records maintained by the Sheboygan County Sheriff's Department indicates the sheriff's department has not had any previous contacts with ALLEN.

The voice mail message did not contain any additional information.

alk 11/19/03
13280 dci2 lec sheb 10212003 straussdk.doc

## Record Status Information

| | |
|---|---|
| Record Origination Operator: | Conversion User (Criminal Investigation / Wisconsin DOJ Division of Criminal Investigation) |
| Record Origination Date: | 04/12/2004 14:13 |
| Last Update Operator: | Conversion User (Criminal Investigation / Wisconsin DOJ Division of Criminal Investigation) |

*This report is property of Wisconsin DOJ Division of Criminal Investigation. Neither it or its contents may be disseminated to unauthorized personnel.*

**Record Status Information - Continued**

Last Update Date:          04/12/2004 14:13

005518

*This report is property of Wisconsin DOJ Division of Criminal Investigation. Neither it or its contents may be disseminated to unauthorized personnel.*

Case 1:19-cv-00484-BHL   Filed 09/06/22   Page 24 of 122   Document 264-1

CHRM004699

# Wisconsin DOJ Division of Criminal Investigation

## ACISS Investigative Report

Report Number:    DCIR13280/15

Report Date:

### Primary Information

| | |
|---|---|
| Report Number: | DCIR13280/15 |
| Type Of Report: | Investigative |
| Description: | dci2 meihsner int |
| Approval Status: | Approved |
| Approved Date: | 04/12/2004 |
| Approved By: | Conversion User (Criminal Investigation / Wisconsin DOJ Division of Criminal Investigation) |

### Narrative

CASE ACTIVITY REPORT    Wisconsin Department of Justice
DJ-DCI-2 (Rev. 8/91)    DIVISION OF CRIMINAL INVESTIGATION

1.   Case Number

GC-13280
2.   Date

10/09/2003
3.   Case Title

STEVEN AVERY PROSECUTION
4.   Activity

Interview/Meihsner
5.   Date of Activity

10/07/2003

6.

On Tuesday, October 7, 2003, S/A Debra K. Strauss interviewed ROGER C. MEIHSNER, telephone number 920-684-8961. This interview was conducted at MEIHSNER's residence, 1309 S. 15th Street, No. A, Manitowoc, WI. The purpose of this interview was to obtain information MEIHSNER may have regarding the events that occurred after the PENNY BEERNTSEN assault on July 29, 1985 through the arrest and conviction of STEVEN AVERY, DOB: 07/09/1962.

MEIHSNER provided the following information:

MEIHSNER stated he retired from the Manitowoc County Sheriff's Department in MARCH 1991. During July 1985, MEIHSNER was working as a detective for the Manitowoc County Sheriff's Department.

MEIHSNER told S/A Strauss he did not have much to do with the investigation regarding BEERNSTEN's assault. S/A Strauss asked MEIHSNER if he went to the hospital the night of the assault to provide any assistance. MEIHSNER stated he was not. MEIHSNER said he did not think he was even in the city of Manitowoc when the assault occurred. MEIHSNER told S/A Strauss he thought LEO JADOWSKI and Sheriff Kocourek had the most to do with the investigation.

S/A Strauss asked MEIHSNER what his involvement was in the investigation and MEIHSNER said he could not recall. MEIHSNER said he was not involved in taking the evidence to the Crime Lab, he was not involved in any of the timed trial runs to Green Bay and he can't remember if he took any statements. S/A Strauss then asked MEIHSNER if he ever went to the scene of the crime to help look for evidence and MEIHSNER again stated he could not

This report is property of Wisconsin DOJ Division of Criminal Investigation. Neither it nor its contents may be disseminated to unauthorized personnel.

005519

CHRM004700

**Narrative - Continued**

remember.

S/A Strauss asked MEIHSNER if he thought AVERY was the person who committed this crime and MEIHSNER responded there was always a doubt in his mind as to whether or not AVERY was the assailant. S/A Strauss asked MEIHSNER why he had this doubt and MEIHSNER responded, "AVERY had a history". S/A Strauss asked MEIHSNER about AVERY's history and MEIHSNER said he did not know much about AVERY's background. MEIHSNER again stated he did not think AVERY committed this crime and said it was just "a gut feeling". S/A Strauss asked MEIHSNER if there were other suspects for this crime and MEIHSNER said he could not recall.

S/A Strauss asked MEIHSNER if he knew who GREG ALLEN was and MEIHSNER said he did not. S/A Strauss asked MEIHSNER if he knew who ALLEN was at the time of the interview and MEIHSNER again said he did not.

MEIHSNER said most of this case was handled through Sheriff Kocourek and LEO JADOWSKI. MEIHSNER concluded by stating Sheriff Kocourek took this case under his wing because Sheriff Kocourek and the victim went to the same church.

MEIHSNER had no additional information and the interview concluded at 10:40 a.m.

DKS:dmg: 10/17/2003

13280 dci2 meihsner int 10072003 straussdk

**Record Status Information**

| | |
|---|---|
| Record Origination Operator: | Conversion User (Criminal Investigation / Wisconsin DOJ Division of Criminal Investigation) |
| Record Origination Date: | 04/12/2004 14:13 |
| Last Update Operator: | Conversion User (Criminal Investigation / Wisconsin DOJ Division of Criminal Investigation) |
| Last Update Date: | 04/12/2004 14:13 |

005520

*This report is property of Wisconsin DOJ Division of Criminal Investigation. Neither it or its contents may be disseminated to unauthorized personnel.*

lehmannaa 04/13/2005 13:31

Case 1:19-cv-00484-BHL   Filed 09/06/22   Page 26 of 122   Document 264-1

CHRM004701

Report Number: DCIR13280/16

Report Date:

**Primary Information**

| | |
|---|---|
| Report Number: | DCIR13280/16 |
| Type Of Report: | Investigative |
| Description: | dci2 phone contact-anderson |
| Approval Status: | Approved |
| Approved Date: | 04/12/2004 |
| Approved By: | Conversion User (Criminal Investigation / Wisconsin DOJ Division of Criminal Investigation) |

**Narrative**

CASE ACTIVITY REPORT    Wisconsin Department of Justice
DJ-DCI-2 (Rev. 8/91)    DIVISION OF CRIMINAL INVESTIGATION

1.    Case Number

    GC-13280
2.    Date

    10/21/2003
3.    Case Title

    STEVEN AVERY PROSECUTION
4.    Activity

    Telephone Contact/ANDERSON
5.    Date of Activity

    10/14/2003

6.

On Tuesday, October 14, 2003, S/A Debra K. Strauss contacted ELMA ANDERSON at 920-388-7194. ANDERSON is currently the District Attorney in Kewaunee County.

S/A Strauss called ANDERSON because it was believed ANDERSON was working as an Assistant District Attorney for the Manitowoc County Sheriff's Department, in July 1985. The purpose of the phone call was to determine if ANDERSON had any information regarding the assault on PENNY BEERNTSEN, on July 29, 1985 or the subsequent arrest/conviction of STEVEN AVERY.

ANDERSON told S/A Strauss that she did not have anything to do with the prosecution of AVERY. In fact, ANDERSON stated even though she did at one time work for the Manitowoc County District Attorney's Office, in July 1985, ANDERSON was working in private practice. Since ANDERSON was not with the District Attorneys Office at the time of the assault and conviction, ANDERSON did not have any information regarding the case.

ANDERSON had no additional information and the telephone contact was at that time terminated.

dp 10/21/03
13280 dci2 phone contact-anderson 10142003 straussdk

**Record Status Information**

Record Origination Operator:    Conversion User (Criminal Investigation / Wisconsin DOJ Division of Criminal Investigation)

*This report is property of Wisconsin DOJ Division of Criminal Investigation. Neither it or its contents may be disseminated to unauthorized personnel.*

lehmannaa 04/13/2005 13:31

005521

Page 1 of 2

CHRM004702

## Record Status Information - Continued

| | |
|---|---|
| Record Origination Date: | 04/12/2004 14:13 |
| Last Update Operator: | Conversion User (Criminal Investigation / Wisconsin DOJ Division of Criminal Investigation) |
| Last Update Date: | 04/12/2004 14:13 |

*This report is property of Wisconsin DOJ Division of Criminal Investigation. Neither it or its contents may be disseminated to unauthorized personnel.*

Case 1:19-cv-00484-BHL   Filed 09/06/22   Page 28 of 122   Document 264-1

CHRM004703

# Wisconsin DOJ Division of Criminal Investigation

## ACISS Investigative Report

Report Number: DCIR13280/17

Report Date:

### Primary Information

Report Number: DCIR13280/17
Type Of Report: Investigative
Description: dci2 phone contact-fusfeld
Approval Status: Approved
Approved Date: 04/12/2004
Approved By: Conversion User (Criminal Investigation / Wisconsin DOJ Division of Criminal Investigation)

### Narrative

CASE ACTIVITY REPORT    Wisconsin Department of Justice
DJ-DCI-2 (Rev. 8/91)   DIVISION OF CRIMINAL INVESTIGATION

1.    Case Number

GC-13280
2.    Date

10/06/2003
3.    Case Title

STEVEN AVERY PROSECUTION
4.    Activity

Telephone Contact/FUSFELD
5.    Date of Activity

09/30/2003

6.
On Tuesday, September 30, 2003, S/A Debra K. Strauss contacted via the telephone Probation and Parole Agent ROBERT FUSFELD, 920-448-5406. FUSFELD is the agent assigned to GREGORY A. ALLEN, DOB 01/17/1954.

S/A Strauss asked Agent FUSFELD to review the case file regarding ALLEN and determine if ALLEN's probation/parole agent was ever contacted by someone from the Manitowoc Sheriff's Department regarding a sexual assault case they were working on. The sexual assault in question occurred on July 29, 1985. Agent FUSFELD reviewed the file and advised S/A Strauss that ALLEN was not on probation in July 1985. According to the records, ALLEN was not placed on probation until April 2, 1986.

Agent FUSFELD advised S/A Strauss that he was not ALLEN's probation agent in 1986. Agent FUSFELD indicated that even though he is currently listed as ALLEN's probation agent, Agent FUSFELD has never met ALLEN.

The contact with Agent FUSFELD was at that time terminated.

dp 10/14/03
13280 dci2 phone contact-fusfeld 09302003 straussdk

### Record Status Information

Record Origination Operator:   Conversion User (Criminal Investigation / Wisconsin DOJ Division of Criminal Investigation)

This report is property of Wisconsin DOJ Division of Criminal Investigation. Neither it or its contents may be disseminated to unauthorized personnel.

Case 1:19-cv-00484-BHL   Filed 09/06/22   Page 29 of 122   Document 264-1

CHRM004704

# Wisconsin DOJ Division of Criminal Investigation
*ACISS Investigative Report*

Report Number:  DCIR13280/17

Report Date:

## Record Status Information - Continued

| | |
|---|---|
| Record Origination Date: | 04/12/2004 14:13 |
| Last Update Operator: | Conversion User (Criminal Investigation / Wisconsin DOJ Division of Criminal Investigation) |
| Last Update Date: | 04/12/2004 14:13 |

005524

*This report is property of Wisconsin DOJ Division of Criminal Investigation. Neither it or its contents may be disseminated to unauthorized personnel.*

## Primary Information

| | |
|---|---|
| Report Number: | DCIR13280/18 |
| Type Of Report: | Investigative |
| Description: | dci2 phone contact-geigel |
| Approval Status: | Approved |
| Approved Date: | 04/12/2004 |
| Approved By: | Conversion User (Criminal Investigation / Wisconsin DOJ Division of Criminal Investigation) |

## Narrative

CASE ACTIVITY REPORT    Wisconsin Department of Justice
DJ-DCI-2 (Rev. 8/91)    DIVISION OF CRIMINAL INVESTIGATION

1.   Case Number

    GC-13280
2.   Date

    10/21/2003
3.   Case Title

    STEVEN AVERY PROSECUTION
4.   Activity

    Telephone Contact/GEIGEL
5.   Date of Activity

    10/17/2003

6.

On Friday, October 17, 2003, S/A Debra K. Strauss contacted BERNIE GEIGEL at 920-793-1927. GEIGEL currently resides at 1714 29th Street, Two Rivers, WI. The purpose of this telephone contact was to determine if GEIGEL had any information regarding the PENNY BEERNTSEN assault, on July 29, 1985 or the subsequent arrest and conviction of STEVEN AVERY.

GEIGEL told S/A Strauss that in July 1985, GEIGEL was working as a detective for the Two Rivers Police Department. During the time GEIGEL worked for the Two Rivers Police Department, GEIGEL never met GREGORY ALLEN. GEIGEL told S/A Strauss that he did not know who ALLEN was.

GEIGEL said after it was determined that AVERY had not committed the crime against BEERNTSEN and ALLEN had, GEIGEL discussed ALLEN with HENRY OSPEDALE. OSPEDALE was formerly a detective with the Manitowoc Police Department. GEIGEL stated that he could not remember when or why he and OSPEDALE would have had a discussion about ALLEN.

GEIGEL concluded his conversation with S/A Strauss by stating ever since he learned that AVERY had not committed this crime and ALLEN had, GEIGEL has been going over this time period in his mind. GEIGEL stated that he could not seem to remember anything about this case.

GEIGEL had no additional information and the telephone contact was terminated.

dp

*This report is property of Wisconsin DOJ Division of Criminal Investigation. Neither it or its contents may be disseminated to unauthorized personnel.*

Case 1:19-cv-00484-BHL   Filed 09/06/22   Page 31 of 122   Document 264-1

CHRM004706

## Narrative - Continued

10/21/03
13280 dci2 phone contact-geigel 10172003 straussdk

## Record Status Information

| | |
|---|---|
| Record Origination Operator: | Conversion User (Criminal Investigation / Wisconsin DOJ Division of Criminal Investigation) |
| Record Origination Date: | 04/12/2004 14:13 |
| Last Update Operator: | Conversion User (Criminal Investigation / Wisconsin DOJ Division of Criminal Investigation) |
| Last Update Date: | 04/12/2004 14:13 |

005526

*This report is property of Wisconsin DOJ Division of Criminal Investigation. Neither it or its contents may be disseminated to unauthorized personnel.*

Case 1:19-cv-00484-BHL   Filed 09/06/22   Page 32 of 122   Document 264-1

CHRM004707

# Wisconsin DOJ Division of Criminal Investigation

*ACISS Investigative Report*

Report Number:    DCIR13280/19                                                Report Date:

**Primary Information**

| | |
|---|---|
| Report Number: | DCIR13280/19 |
| Type Of Report: | Investigative |
| Description: | dci2 phone contact-hartman |
| Approval Status: | Approved |
| Approved Date: | 04/12/2004 |
| Approved By: | Conversion User (Criminal Investigation / Wisconsin DOJ Division of Criminal Investigation) |

**Narrative**

CASE ACTIVITY REPORT    Wisconsin Department of Justice
DJ-DCI-2 (Rev. 8/91)    DIVISION OF CRIMINAL INVESTIGATION

1.    Case Number

    GC-13280
2.    Date

    10/14/2003
3.    Case Title

    STEVEN AVERY PROSECUTION
4.    Activity

    Telephone Contact/HARTMAN
5.    Date of Activity

    10/14/2003

6.
On Tuesday, October 14, 2003, S/A Debra K. Strauss made telephone contact with ROGER HARTMAN, 317-867-3012. HARTMAN worked as a detective for the Manitowoc Police Department and has since retired. The purpose of this telephone contact was to determine if HARTMAN had any information regarding the assault on PENNY BEERNTSEN, on July 29, 1985 and/or the arrest and conviction of STEVEN AVERY.

HARTMAN advised S/A Strauss in July 1985, HARTMAN was working as a detective for the Manitowoc Police Department. HARTMAN was working with Detective RICHARD BREY. HARTMAN told S/A Strauss that he did not have anything to do with the BEERNTSEN assault investigation. S/A Strauss asked HARTMAN if he contacted BEERNTSEN to ask her if she was sure she identified the right person. HARTMAN responded he did not. HARTMAN suggested that S/A Strauss contact Detective BREY, 920-682-3866. HARTMAN thought Detective BREY may have more information about this crime than HARTMAN did.

S/A Strauss asked HARTMAN if he knew who GREGORY ALLEN was in July 1985. HARTMAN responded that while working as a detective for the Manitowoc Police Department, HARTMAN would have had some minor run-ins with ALLEN, such as Disorderly Conduct issues. HARTMAN said none of his contacts with ALLEN were regarding criminal issues.

HARTMAN had no additional information and the telephone contact was at that time terminated.

dp 10/14/03
13280 dci2 phone contact-hartman 10142003

005527

*This report is property of Wisconsin DOJ Division of Criminal Investigation. Neither it or its contents may be disseminated to unauthorized personnel.*

lehmannaa 04/13/2005 13:31

Case 1:19-cv-00484-BHL   Filed 09/06/22   Page 33 of 122   Document 264-1

CHRM004708

## Narrative - Continued

straussdk

## Record Status Information

| | |
|---|---|
| Record Origination Operator: | Conversion User (Criminal Investigation / Wisconsin DOJ Division of Criminal Investigation) |
| Record Origination Date: | 04/12/2004 14:13 |
| Last Update Operator: | Conversion User (Criminal Investigation / Wisconsin DOJ Division of Criminal Investigation) |
| Last Update Date: | 04/12/2004 14:13 |

005528

*This report is property of Wisconsin DOJ Division of Criminal Investigation. Neither it or its contents may be disseminated to unauthorized personnel.*

Case 1:19-cv-00484-BHL   Filed 09/06/22   Page 34 of 122   Document 264-1

CHRM004709

# Wisconsin DOJ Division of Criminal Investigation

*ACISS Investigative Report*

Report Number: DCIR13280/2                                    Report Date:

**Primary Information**

| | |
|---|---|
| Report Number: | DCIR13280/2 |
| Type Of Report: | Investigative |
| Description: | dci2 beilke int |
| Approval Status: | Approved |
| Approved Date: | 04/12/2004 |
| Approved By: | Conversion User (Criminal Investigation / Wisconsin DOJ Division of Criminal Investigation) |

**Narrative**

CASE ACTIVITY REPORT    Wisconsin Department of Justice
DJ-DCI-2 (Rev. 8/91)    DIVISION OF CRIMINAL INVESTIGATION

1.   Case Number

GC-13280
2.   Date

10/09/2003
3.   Case Title

STEVEN AVERY PROSECUTION
4.   Activity

Interview/Beilke
5.   Date of Activity

10/07/2003

6.

On Tuesday, October 7, 2003 at approximately 9:30 a.m., S/A Debra K. Strauss interviewed LEROY BEILKE, telephone number 920-684-4230. This interview was conducted at BEILKE's residence, 1733 Lilac Drive, Manitowoc, WI. The purpose of this interview was to obtain information BEILKE may have regarding the events that occurred between the PENNY BEERNTSEN assault on July 29, 1985 through the arrest and conviction of STEVEN AVERY.

BEILKE provided the following information:

BEILKE stated he retired from the Manitowoc County Sheriff's Department in January 1990. At the time of the assault, in July 1985, BEILKE was working as a Lieutenant in the Traffic Department for the Manitowoc County Sheriff's Department.

BEILKE told S/A Strauss that after the assault, BEILKE was told by one of the Manitowoc County sheriff's deputies that a man was seen in the area of where the sexual assault took place at the time the assault took place. This man observed was known for committing these types of sexual crimes and he matched the physical description provided by the victim. BEILKE said he believed this individual was from the Sheboygan, WI area. BEILKE said after receiving this information, BEILKE immediately went and told the Manitowoc County Sheriff's Department Captain of Detectives, DON BELZ. BEILKE provided BELZ with the same information he had received from the sheriff's deputy. BELZ told BEILKE the sheriff's department was not going to bring this individual in for questioning. BELZ said he could not do it because the sheriff wanted STEVEN AVERY convicted of this crime because the description provided by the victim matched AVERY's. When asked, BEILKE said he could not recall who the sheriff's deputy was that provided him with this information.

This report is property of Wisconsin DOJ Division of Criminal Investigation. Neither it nor its contents may be disseminated to unauthorized personnel.

lehmannaa 04/13/2005 13.31                                         005529        Page 1 of 2

*[handwritten annotations in margins:]* The Carved Issue ? Consistent with what Sheriff told Penny when he had his ??? Consistent with Sheriff not pursuing Allen when Allen suggested to him by Berner?

S/A Strauss asked BEILKE if he knew who GREGORY ALLEN was and BEILKE responded he did not.

S/A Strauss then asked BEILKE if he had anything to do with the investigation of the assault and BEILKE again responded negatively.

BEILKE was asked if he discussed knowing about this man with anyone else. BEILKE said he did not. BEILKE said he did not discuss this information with GENE KUSCHE or Sheriff Tom Kocourek. In hindsight, BEILKE does not know why he did not go to the sheriff. BEILKE believed it could have been that after BELZ ignored BEILKE's information, BEILKE may have felt it was not worth the effort to contact the sheriff.

BEILKE told S/A Strauss that when he discussed this issue with BELZ, BELZ told BEILKE the sheriff had already contacted the Manitowoc County District Attorney, DENIS VOGEL. BELZ told BEILKE the sheriff told the D.A. not to screw this case up because the sheriff wanted AVERY convicted of this crime.

BEILKE stated he also contacted ARLAND AVERY, STEVEN AVERY's uncle and a member of the sheriff's department. BEILKE tried to encourage AVERY to contact the sheriff to tell the sheriff there may be another suspect. BEILKE said AVERY refused to get involved in the investigation.

BEILKE suggested S/A Strauss contact VERN KLIMENT at 920-682-7448. BEILKE stated KLIMENT was the Chief Deputy at the sheriff's department during this time and he may have additional information.

BEILKE had no additional information and the contact was at that time terminated.

DKS:dmg: 10/17/2003

13280 dci2 beilke int 10072003 straussdk

| | |
|---|---|
| Record Origination Operator: | Conversion User (Criminal Investigation / Wisconsin DOJ Division of Criminal Investigation) |
| Record Origination Date: | 04/12/2004 14:13 |
| Last Update Operator: | Conversion User (Criminal Investigation / Wisconsin DOJ Division of Criminal Investigation) |
| Last Update Date: | 04/12/2004 14:13 |

005530

*This report is property of Wisconsin DOJ Division of Criminal Investigation. Neither it or its contents may be disseminated to unauthorized personnel.*

# Wisconsin DOJ Division of Criminal Investigation

## ACISS Investigative Report

Report Number:    DCIR13280/20                    Report Date:

### Primary Information

| | |
|---|---|
| Report Number: | DCIR13280/20 |
| Type Of Report: | Investigative |
| Description: | dci2 phone contact-meyer |
| Approval Status: | Approved |
| Approved Date: | 04/12/2004 |
| Approved By: | Conversion User (Criminal Investigation / Wisconsin DOJ Division of Criminal Investigation) |

### Narrative

CASE ACTIVITY REPORT    Wisconsin Department of Justice
DJ-DCI-2 (Rev. 8/91)   DIVISION OF CRIMINAL INVESTIGATION

1.   Case Number

   GC-13280
2.   Date

   10/21/2003
3.   Case Title

   STEVEN AVERY PROSECUTION
4.   Activity

   Telephone Contact/MEYER
5.   Date of Activity

   10/17/2003

6.

On Friday, October 17, 2003, S/A Debra K. Strauss contacted KENNY MEYER at 920-553-3040. MEYER currently resides at 2168 Hawthorne Ave., Two Rivers, WI. MEYER was working for the Two Rivers Police Department during July 1985. MEYER told S/A Strauss that he remembered the STEVEN AVERY prosecution, however, he did not have anything to do with the case. At the time the AVERY case was getting ready for trial, MEYER was in the process of retiring from the police department.

S/A Strauss asked MEYER if MEYER knew who GREG ALLEN was in 1985. MEYER responded he did not. MEYER told S/A Strauss he never would have thought ALLEN should have been considered a suspect in the BEERNTSEN assault because he did not know who ALLEN was at the time.

S/A Strauss asked MEYER if he ever discussed this case with anyone from the Manitowoc County Sheriff's Department. MEYER said he did not.

MEYER had no additional information and the telephone contact was at that time terminated.

dp 10/21/03
13280 dci2 phone contact-meyer 10172003 straussdk

### Record Status Information

| | |
|---|---|
| Record Origination Operator: | Conversion User (Criminal Investigation / Wisconsin DOJ Division of Criminal Investigation) |

This report is property of Wisconsin DOJ Division of Criminal Investigation. Neither it or its contents may be disseminated to unauthorized personnel.

| Record Status Information - Continued | |
|---|---|
| Record Origination Date: | 04/12/2004 14:13 |
| Last Update Operator: | Conversion User (Criminal Investigation / Wisconsin DOJ Division of Criminal Investigation) |
| Last Update Date: | 04/12/2004 14:13 |

005532

*This report is property of Wisconsin DOJ Division of Criminal Investigation. Neither it or its contents may be disseminated to unauthorized personnel.*

Case 1:19-cv-00484-BHL   Filed 09/06/22   Page 38 of 122   Document 264-1

CHRM004713

## Primary Information

| | |
|---|---|
| Report Number: | DCIR13280/21 |
| Type Of Report: | Investigative |
| Description: | dci2 phone contact-ospedale |
| Approval Status: | Approved |
| Approved Date: | 04/12/2004 |
| Approved By: | Conversion User (Criminal Investigation / Wisconsin DOJ Division of Criminal Investigation) |

## Narrative

CASE ACTIVITY REPORT    Wisconsin Department of Justice
DJ-DCI-2 (Rev. 8/91)    DIVISION OF CRIMINAL INVESTIGATION

1.    Case Number

    GC-13280
2.    Date

    10/14/2003
3.    Case Title

    STEVEN AVERY PROSECUTION
4.    Activity

    Telephone Contact/OSPEDALE
5.    Date of Activity

    10/14/2003

6.

On Tuesday, October 14, 2003, S/A Debra K. Strauss contacted HENRY OSPEDALE, at 920-684-4095. OSPEDALE currently resides at 1611 Wisconsin Ave., Manitowoc, WI. The purpose of this contact was to obtain information OSPEDALE may have regarding the PENNY BEERNTSEN assault on July 29, 1985 and the subsequent arrest/conviction of STEVEN AVERY.    *what kind of problem?*

                                                                            *how know?*
OSPEDALE provided the following information:

OSPEDALE stated that in July 1985, OSPEDALE was working as a detective for the Manitowoc Police Department. OSPEDALE said at that time, he was familiar with GREGORY ALLEN, DOB 01/17/1954. OSPEDALE said that in July 1985, ALLEN was a problem in the Manitowoc area. Prior to ALLEN being a problem for the Manitowoc Police Department, ALLEN was a problem for law enforcement agencies on the East Coast. OSPEDALE said that ALLEN's background included such things as window peeping and burglary. OSPEDALE could not imagine how many rapes ALLEN has gotten away with because ALLEN's victims were too afraid to talk about what happened.    *Elaborate documents surveillance?*

S/A Strauss asked OSPEDALE if he ever contacted PENNY BEERNTSEN, the victim of the assault on July 29, 1985, to ask her if she was sure she identified the right person as her assailant. OSPEDALE said he did not. S/A Strauss then asked OSPEDALE if he ever talked with anyone from the sheriff's department about the possibility of there being another suspect. OSPEDALE again responded negatively.

OSPEDALE suggested S/A Strauss contact the detectives from the Two Rivers Police Department to inquire as to whether or not they may have contacted anyone from the sheriff's department. OSPEDALE said the detectives from the

*tell about Allen in M.P.D.? Policed?*

*This report is property of Wisconsin DOJ Division of Criminal Investigation. Neither it or its contents may be disseminated to unauthorized personnel.*

Case 1:19-cv-00484-BHL   Filed 09/06/22   Page 39 of 122   Document 264-1

CHRM004714

# Wisconsin DOJ Division of Criminal Investigation

## ACISS Investigative Report

### Narrative - Continued

Two Rivers Police Department, in July 1985, were BERNIE GEIGEL, 920-793-1927, LLOYD WILDA, KENNY MEYER and WAYNE STADLER. OSPEDALE said these detectives have all retired from the Two Rivers Police Department but he believes that they are all still living in the Two Rivers area.

OSPEDALE had no additional information and the telephone contact was at that time terminated.

dp 10/14/03
13280 dci2 phone contact-ospedale 10142003 straussdk

### Record Status Information

| | |
|---|---|
| Record Origination Operator: | Conversion User (Criminal Investigation / Wisconsin DOJ Division of Criminal Investigation) |
| Record Origination Date: | 04/12/2004 14:13 |
| Last Update Operator: | Conversion User (Criminal Investigation / Wisconsin DOJ Division of Criminal Investigation) |
| Last Update Date: | 04/12/2004 14:13 |

This report is property of Wisconsin DOJ Division of Criminal Investigation. Neither it or its contents may be disseminated to unauthorized personnel.

Case 1:19-cv-00484-BHL   Filed 09/06/22   Page 40 of 122   Document 264-1

CHRM004715

# Wisconsin DOJ Division of Criminal Investigation

## ACISS Investigative Report

Report Number:    **DCIR13280/22**        Report Date:

**Primary Information**

| | |
|---|---|
| Report Number: | DCIR13280/22 |
| Type Of Report: | Investigative |
| Description: | dci2 phone contact-richard brey |
| Approval Status: | Approved |
| Approved Date: | 04/12/2004 |
| Approved By: | Conversion User (Criminal Investigation / Wisconsin DOJ Division of Criminal Investigation) |

**Narrative**

CASE ACTIVITY REPORT    Wisconsin Department of Justice
DJ-DCI-2 (Rev. 8/91)    DIVISION OF CRIMINAL INVESTIGATION

1.   Case Number

   GC-13280
2.   Date

   10/21/2003
3.   Case Title

   STEVEN AVERY PROSECUTION
4.   Activity

   Telephone Contact/RICHARD BREY
5.   Date of Activity

   10/17/2003

6.

On Friday, October 17, 2003, S/A Debra K. Strauss contacted RICHARD (RICH) BREY at 920-682-3866. BREY currently resides at 1437 North Union Road, Manitowoc, WI. The purpose of this telephone contact was to determine if BREY had any information regarding the PENNY BEERNTSEN assault on July 29, 1985 or the subsequent arrest and conviction of STEVEN AVERY.

BREY provided the following information:

BREY stated that in July 1985, BREY was working as a detective for the Manitowoc Police Department. BREY told S/A Strauss that he does not recall a lot about the AVERY case.

S/A Strauss asked BREY if he would have contacted the victim, asking her if she was sure she identified the right person as her assailant. BREY responded that he did not. BREY stated he would never go directly to a victim of another agency's investigation and ask a question such as this.

S/A Strauss then asked BREY if he ever talked to anyone from the sheriff's department about GREGORY ALLEN. BREY responded that he doubted he would have done that. In July 1985, BREY was working a lot of narcotics cases with LARRY CONRAD, from the Manitowoc County Sheriff's Department. Most of the cases BREY was working on in the mid 1980's were narcotics related and BREY did not get involved in other investigations.

S/A Strauss asked BREY if he knew who GREG ALLEN was. BREY responded that the first incident he recalled having direct contact with ALLEN was when ALLEN was arrested for Battery to a Peace Officer at a local Prange-Way, in Manitowoc. (A review of the records maintained by the Manitowoc Police Department indicated that this incident occurred

This report is property of Wisconsin DOJ Division of Criminal Investigation. Neither it or its contents may be disseminated to unauthorized personnel.

lehmannaa 04/13/2005 13:31       **005535**       Page 1 of 2

CHRM004716

### Narrative - Continued

on March 28, 1986).

BREY had no additional information and the telephone contact was at that time terminated.

dp 10/21/03
13280 dci2 phone contact-richard brey 10172003 straussdk

### Record Status Information

| | |
|---|---|
| Record Origination Operator: | Conversion User (Criminal Investigation / Wisconsin DOJ Division of Criminal Investigation) |
| Record Origination Date: | 04/12/2004 14:13 |
| Last Update Operator: | Conversion User (Criminal Investigation / Wisconsin DOJ Division of Criminal Investigation) |
| Last Update Date: | 04/12/2004 14:13 |

005536

*This report is property of Wisconsin DOJ Division of Criminal Investigation. Neither it or its contents may be disseminated to unauthorized personnel.*

lehmannaa 04/13/2005 13:31

Case 1:19-cv-00484-BHL   Filed 09/06/22   Page 42 of 122   Document 264-1

CHRM004717

Report Number: DCIR13280/23

Report Date:

| | |
|---|---|
| Report Number: | DCIR13280/23 |
| Type Of Report: | Investigative |
| Description: | dci2 phone contact-stadler |
| Approval Status: | Approved |
| Approved Date: | 04/12/2004 |
| Approved By: | Conversion User (Criminal Investigation / Wisconsin DOJ Division of Criminal Investigation) |

## Narrative

CASE ACTIVITY REPORT    Wisconsin Department of Justice
DJ-DCI-2 (Rev. 8/91)    DIVISION OF CRIMINAL INVESTIGATION

1.    Case Number

   GC-13280
2.    Date

   10/21/2003
3.    Case Title

   STEVEN AVERY PROSECUTION
4.    Activity

   Telephone Contact/STADLER
5.    Date of Activity

   10/21/2003

6.

On Tuesday, October 21, 2003, S/A Debra K. Strauss had telephone contact with WAYNE STADLER, 920-793-3777. STADLER currently resides at 3402 Mishicot Road, Two Rivers, WI.

The purpose of this contact was to determine if STADLER had any information regarding the PENNY BEERNTSEN assault on July 29, 1985 through the subsequent arrest and conviction of STEVEN AVERY.

STADLER advised S/A Strauss that in July 1985, STADLER was working as a supervisor in the Two Rivers Police Department. S/A Strauss asked STADLER if he would have had any contact with anyone from the Manitowoc County Sheriff's Department about either GREGORY ALLEN or STEVEN AVERY after the assault occurred. STADLER responded he did not have anything to do with the investigation and he did not contact anyone from the sheriff's department about either ALLEN or AVERY.

STADLER had no additional information and the telephone contact was at that time terminated.

dp 10/21/03
13280 dci2 phone contact-stadler 10212003 straussdk

## Record Status Information

| | |
|---|---|
| Record Origination Operator: | Conversion User (Criminal Investigation / Wisconsin DOJ Division of Criminal Investigation) |

*This report is property of Wisconsin DOJ Division of Criminal Investigation. Neither it or its contents may be disseminated to unauthorized personnel.*

CHRM004718

| Record Status Information - Continued | |
|---|---|
| Record Origination Date: | 04/12/2004 14:13 |
| Last Update Operator: | Conversion User (Criminal Investigation / Wisconsin DOJ Division of Criminal Investigation) |
| Last Update Date: | 04/12/2004 14:13 |

005538

This report is property of Wisconsin DOJ Division of Criminal Investigation. Neither it or its contents may be disseminated to unauthorized personnel.

Case 1:19-cv-00484-BHL   Filed 09/06/22   Page 44 of 122   Document 264-1

CHRM004719

# Wisconsin DOJ Division of Criminal Investigation

## ACISS Investigative Report

### Primary Information

| | |
|---|---|
| Report Number: | DCIR13280/24 |
| Type Of Report: | Investigative |
| Description: | dci2 re coc allen |
| Approval Status: | Approved |
| Approved Date: | 04/12/2004 |
| Approved By: | Conversion User (Criminal Investigation / Wisconsin DOJ Division of Criminal Investigation) |

### Narrative

CASE ACTIVITY REPORT    Wisconsin Department of Justice
DJ-DCI-2 (Rev. 8/91)    DIVISION OF CRIMINAL INVESTIGATION

1.    Case Number

    GC-13280
2.    Date

    09/30/2003
3.    Case Title

    STEVEN AVERY PROSECUTION
4.    Activity

    Records Examination: Clerk of Court - ALLEN
5.    Date of Activity

    09/30/2003

6.

On Thursday, September 25, 2003, S/A Debra K. Strauss obtained all of the Judgment of Convictions regarding
GREGORY A. ALLEN, from the Manitowoc County Clerk of Courts office. An examination of these records indicate the
following:    → What about 1983 conviction? Bench in Two Rivers

Conviction #1

On 02/28/1984, GREGORY A. ALLEN, 1621 Dewey St., Manitowoc, WI, was convicted of the crime of Disorderly Conduct
in the City of Two Rivers, Manitowoc, WI, on 08/02/1983. The defendant was ordered to pay a fine of $100 and the costs
of the action in the sum of $55.

The district attorney for this case was Denis R. Vogel, the defense attorney was Thomas Rusboldt, and the judge was
Judge Fred Hazlewood.

Conviction #2

On 03/10/1986, GREGORY A. ALLEN, DOB 01/17/1954, was convicted of the crime of Disorderly Conduct. ALLEN was
sentenced to 90 days in county jail, under the Huber Law. The execution of this sentence was stayed and the defendant
was placed on probation for a period of 2 years. This crime was committed on 10/22/1985.

The prosecuting attorney for this case was Denis R. Vogel, ALLEN had no defense attorney, and the judge was Judge
Allan J.

This report is property of Wisconsin DOJ Division of Criminal Investigation. Neither it or its contents may be disseminated to unauthorized personnel.

Case 1:19-cv-00484-BHL   Filed 09/06/22   Page 45 of 122   Document 264-1

CHRM004720

**Narrative - Continued**

Deehr.

Conviction #3

On 03/24/1987, GREGORY A. ALLEN was convicted of Felony Battery to a Peace Officer. This crime was committed on 03/28/1986. ALLEN was sentenced to the Wisconsin State Prison for an indeterminate term of not more than 3 ½ years.

The prosecuting attorney for this case was E. James Fitzgerald, and the presiding judge was Judge Fred Hazlewood.

Conviction #4

On 03/24/1987, ALLEN was convicted of misdemeanor counts of Criminal Damage to Property and Disorderly Conduct. The defendant was placed on probation for the period of 2 years on each count, concurrent, but consecutive to 3 ½ years felony prison sentence.

The prosecutor for this case was E. James Fitzgerald, ALLEN had no defense attorney, and the presiding judge was Judge Fred Hazlewood.

aik 10/02/03
13280 dci2 re coc allen 09302003 straussdk.doc

**Record Status Information**

| | |
|---|---|
| Record Origination Operator: | Conversion User (Criminal Investigation / Wisconsin DOJ Division of Criminal Investigation) |
| Record Origination Date: | 04/12/2004 14:13 |
| Last Update Operator: | Conversion User (Criminal Investigation / Wisconsin DOJ Division of Criminal Investigation) |
| Last Update Date: | 04/12/2004 14:13 |

005540

*This report is property of Wisconsin DOJ Division of Criminal Investigation. Neither it or its contents may be disseminated to unauthorized personnel.*

Case 1:19-cv-00484-BHL   Filed 09/06/22   Page 46 of 122   Document 264-1

CHRM004721

## Primary Information

| | |
|---|---|
| Report Number: | DCIR13280/25 |
| Type Of Report: | Investigative |
| Description: | dci2 re coc avery |
| Approval Status: | Approved |
| Approved Date: | 04/12/2004 |
| Approved By: | Conversion User (Criminal Investigation / Wisconsin DOJ Division of Criminal Investigation) |

## Narrative

CASE ACTIVITY REPORT    Wisconsin Department of Justice
DJ-DCI-2 (Rev. 8/91)    DIVISION OF CRIMINAL INVESTIGATION

1. Case Number

   GC-13280
2. Date

   09/30/2003
3. Case Title

   STEVEN AVERY PROSECUTION
4. Activity

   Records Examination: Clerk of Court - AVERY
5. Date of Activity

   09/30/2003

6.

On Thursday, September 25, 2003, S/A Debra K. Strauss obtained all of the Judgment of Convictions regarding STEVEN ALLEN AVERY, DOB 07/09/1962. An examination of these records indicate the following:

Conviction #1

On 03/23/1981, AVERY was convicted of two counts of Burglary. AVERY was sentenced to two years on each count, concurrent, with credit for 30 days time already served at the Green Bay Correctional Institute. The execution of the sentence was stayed, and the defendant was placed on probation for the period of 5 years on each count, concurrent. The defendant was to spend the first 10 months of his probation in the county jail between the hours of his employment.

The Judgment of Conviction has a note indicating on 12/22/1981, the balance of the jail condition of probation was suspended by the court per stipulation and order dated 12/22/1981. AVERY was released from custody at 8:00 a.m. on 12/23/1981.

The prosecuting attorney for this case was Assistant District Attorney Richard P. Mozinski. AVERY's defense attorney was Michael J. Dally, and the presiding judge was Judge Leon Jones.

Conviction #2

On 11/23/1982, AVERY was convicted of Party to the Crime of Cruelty to Animals, committed on 09/02/1982. AVERY was

*This report is property of Wisconsin DOJ Division of Criminal Investigation. Neither it or its contents may be disseminated to unauthorized personnel.*

Case 1:19-cv-00484-BHL    Filed 09/06/22    Page 47 of 122    Document 264-1

CHRM004722

**Narrative - Continued**

committed to the county jail of Manitowoc for 9 months.

The prosecuting attorney for this case was Assistant District Attorney Elma Anderson. AVERY's defense attorney was Michael J. Dally, and the presiding judge was Judge Leon Jones.

## Conviction #3

On 03/10/1986, AVERY was sentenced for his convictions of a crime committed on 07/29/1985. AVERY was convicted of First Degree Sexual Assault, Attempted First Degree Murder, and False Imprisonment. AVERY was sentenced to not more than 15 years on Count 1; 15 years on Court 2; and 2 years on Count 3. All of the sentences are to be served consecutively. AVERY received 223 days sentence credit.

The prosecuting attorney for this case was Manitowoc County District Attorney Denis Vogel. AVERY's defense attorney was James Bolgert, and the presiding judge was Judge Fred Hazlewood.

## Conviction #4

*Complaint signed by Anderson*

STEVEN AVERY was convicted of felony counts of Endangering Safety by Conduct Regardless of Life as a Repeater and as a Felon Possessing a Firearm as a Repeater. These crimes were committed on 01/03/1985.

On 09/22/1986, AVERY was sentenced to a term not more than 6 years on each count, to be served concurrently with one another and concurrently with the sentences defendant is presently serving (conviction #3).

The prosecuting attorney for this case was Assistant District Attorney E. James Fitzgerald. AVERY's defense attorney was Lynn Hackbarth, and the presiding judge was Judge Fred Hazlewood.

alk 10/02/03
13280 dci2 re coc avery 09302003 straussdk.doc

**Record Status Information**

| | |
|---|---|
| Record Origination Operator: | Conversion User (Criminal Investigation / Wisconsin DOJ Division of Criminal Investigation) |
| Record Origination Date: | 04/12/2004 14:13 |
| Last Update Operator: | Conversion User (Criminal Investigation / Wisconsin DOJ Division of Criminal Investigation) |
| Last Update Date: | 04/12/2004 14:13 |

005542

*This report is property of Wisconsin DOJ Division of Criminal Investigation. Neither it or its contents may be disseminated to unauthorized personnel.*

**Primary Information**

| | |
|---|---|
| Report Number: | DCIR13280/26 |
| Type Of Report: | Investigative |
| Description: | dci2 re safe docs |
| Approval Status: | Approved |
| Approved Date: | 04/12/2004 |
| Approved By: | Conversion User (Criminal Investigation / Wisconsin DOJ Division of Criminal Investigation) |

**Narrative**

CASE ACTIVITY REPORT    Wisconsin Department of Justice
DJ-DCI-2 (Rev. 8/91)    DIVISION OF CRIMINAL INVESTIGATION

1. Case Number

   GC-13280
2. Date

   09/30/2003
3. Case Title

   STEVEN AVERY PROSECUTION
4. Activity

   Records Examination: Safe Documents
5. Date of Activity

   09/30/2003

6.

*[handwritten: Talk with any MPE? about this meeting?]*

On Monday, September 22, 2003, S/A Debra K. Strauss met with Manitowoc County Sheriff Kenneth J. Petersen. During this meeting, S/A Strauss told Sheriff Petersen the Attorney General's office has been asked to review the events which occurred between the PENNY BEERNTSEN assault on 07/29/1985 through the STEVEN AVERY prosecution. S/A Strauss assured Sheriff Petersen the Attorney General's office was not going to re-investigate the crime.

S/A Strauss asked Sheriff Petersen for a copy of the Manitowoc County Sheriff's Department case file regarding the assault and subsequent investigation. Sheriff Petersen pulled out to his safe because that is where he thought the entire case file was being kept. Sheriff Petersen pulled out a small stack of documents regarding AVERY.

Sheriff Petersen then went to a second location and obtained the entire case file regarding the assault and conviction.

Sheriff Petersen said he would be willing to provide S/A Strauss with a copy of the documents in the safe, but Sheriff Petersen would need time to have the case file copied. Sheriff Petersen would not release the case file to S/A Strauss because it is a policy of the sheriff's department that the case files need to stay in-house.

The following is a list of the documents which were being maintained in a safe in the office of Sheriff Petersen:

The first document examined by S/A Strauss was an affidavit of MICHAEL ERNEST LUCERO. This affidavit is dated 06/14/2000. As part of the affidavit, LUCERO states that while he was an inmate at the Green Bay Correctional Institution, he met STEVE AVERY. During one of LUCERO's conversations with AVERY, AVERY admits to raping a woman on a beach in Manitowoc.

*This report is property of Wisconsin DOJ Division of Criminal Investigation. Neither it or its contents may be disseminated to unauthorized personnel.*

Case 1:19-cv-00484-BHL   Filed 09/06/22   Page 49 of 122   Document 264-1

CHRM004724

**Narrative - Continued**

WI.

The next document examined by S/A Strauss was a statement of JAMES M. LENK. This statement is dated 09/12/2003. This statement was regarding a conversation Lieutenant LENK had with Sergeant COLBORN regarding a phone call Sgt. COLBORN had received from Brown County. The person from Brown County was talking to Sgt. COLBORN because Brown County had a person in custody, who stated that a few years prior he committed an assault in Manitowoc County.

The third document examined by S/A Strauss was a one-page statement signed by Sergeant ANDREW L. COLBORN. This statement was prepared on 09/12/2003. According to this statement, in 1994 or 1995, Sgt. COLBORN was working as a corrections officer in the Manitowoc County Jail. While working as the corrections officer, Sgt. COLBORN received a call from a man who identified himself as a detective from outside the Manitowoc County area. The detective stated he had received information that a person in their custody had been commenting that he had committed an assault in Manitowoc County and someone else was in jail for it.

The next document examined by S/A Strauss is dated 09/12/2003. This document is a memo on Manitowoc County Sheriff's Department to all department personnel from Sheriff Kenneth Petersen. This memo states that employees shall make no comments concerning the STEVEN AVERY case. All news releases shall be issued by either Sheriff Petersen or Inspector Hermann.

Another document examined by S/A Strauss was a press release by Mark R. Rohrer, Manitowoc County District Attorney. This press release is regarding the release of STEVEN A. AVERY. This press release states that, according to DNA test results, GREGORY ALLEN had actually committed the sexual assault and attempted homicide, not STEVEN AVERY.

The final set of documents examined by S/A Strauss were master look-up files dated 09/10/2003 and 09/12/2003. The print-out, which was prepared on 09/10/2003, was regarding STEVEN A. AVERY, DOB 07/09/1962. The master look-files dated 09/12/2003 were regarding GREGORY A. ALLEN, DOB 01/17/1954.

A copy of the previously mentioned documents can be found in the main case file.

alk 10/03/03
13280 dci2 re safe docs 09302003 straussdk.doc

**Record Status Information**

| | |
|---|---|
| Record Origination Operator: | Conversion User (Criminal Investigation / Wisconsin DOJ Division of Criminal Investigation) |
| Record Origination Date: | 04/12/2004 14:13 |
| Last Update Operator: | Conversion User (Criminal Investigation / Wisconsin DOJ Division of Criminal Investigation) |
| Last Update Date: | 04/12/2004 14:13 |

005544

*This report is property of Wisconsin DOJ Division of Criminal Investigation. Neither it or its contents may be disseminated to unauthorized personnel.*

CHRM004725

Report Date:

## Primary Information

| | |
|---|---|
| Report Number: | DCIR13280/27 |
| Type Of Report: | Investigative |
| Description: | dci2 tele beerntsen |
| Approval Status: | Approved |
| Approved Date: | 04/12/2004 |
| Approved By: | Conversion User (Criminal Investigation / Wisconsin DOJ Division of Criminal Investigation) |

## Narrative

CASE ACTIVITY REPORT    Wisconsin Department of Justice
DJ-DCI-2 (Rev. 8/91)    DIVISION OF CRIMINAL INVESTIGATION

1.  Case Number

    GC-13280
2.  Date

    09/25/2003
3.  Case Title

    STEVEN AVERY PROSECUTION
4.  Activity

    Telephone Contact: Beerntsen
5.  Date of Activity

    09/23/2003

6.

On Tuesday, September 23, 2003, S/A Debra K. Strauss made telephone contact with:

NAME:            PENELOPE BEERNTSEN (PENNY)
ADDRESS:         2211 Markham Street, Manitowoc, WI
DATE OF BIRTH:   02/08/1949
HOME TELEPHONE:  920-684-5274 (NON LISTED)
CELL TELEPHONE:  920-242-8066
WORK TELEPHONE:  920-684-9616

S/A Strauss made contact with BEERNTSEN because BEERNTSEN had previously contacted the Attorney General's office regarding some nuisance phone calls she had been receiving. BEERNTSEN stated she would like to speak with the special agents but her attorney, Janine Geske, 414-288-7877 would like to be present during the interview. BEERNTSEN stated Geske was out of State until Friday and BEERNTSEN wanted to know if Friday morning (September 26, 2003) would be acceptable for the special agents to meet with her. S/A Strauss told BEERNTSEN that would be fine and that BEERNTSEN should contact Geske to determine when and where the meeting should take place. (It was later determined this interview would take place on Friday, September 26, 2003 in Geske's office, 1103 W. Wisconsin Street, Milwaukee, WI. Geske's office is at the Marquette Law School.)

During the phone conversation with BEERNTSEN, BEERNTSEN told S/A Strauss that after STEVEN AVERY had been sent to prison it was almost as if someone had been watching her house. Sometime during 1986 or 1987 the

*This report is property of Wisconsin DOJ Division of Criminal Investigation. Neither it or its contents may be disseminated to unauthorized personnel.*

Case 1:19-cv-00484-BHL   Filed 09/06/22   Page 51 of 122   Document 264-1

CHRM004726

**Narrative - Continued**

BEERNTSENS began receiving obscene phone calls. BEERNTSEN told S/A Strauss these calls were of a sexual content, such as asking BEERNTSEN if "she gave blow jobs." BEERNTSEN said in hindsight, she is wondering if GREGORY ALLEN had been watching her house. BEERNTSEN said that within 5 minutes of BEERNTSEN returning home from work her phone would ring and it would be the caller with obscene messages.

BEERNTSEN stated she has recently been receiving telephone calls where no one says anything. The phone will ring and BEERNTSEN will answer it but the caller will not speak. All BEERNTSEN can hear is breathing on the other end of the line. BEERNTSEN stated she has received three of these calls on Saturday, September 20, 2003 and one on Monday, September 22, 2003.

BEERNTSEN told S/A Strauss that she has offered to meet with AVERY and that if AVERY agreed to a meeting, AVERY could contact BEERNTSEN through BEERNTSENS attorney. As of this date, AVERY has not accepted this offer and all BEERNTSEN has heard for a response is what BEERNTSEN is reading in the newspaper.

BEERNTSEN had no additional information and the telephone contact was terminated.


dmg: 10/02/2003

13280 dci2 tele beerntsen 09232003 straussdk


**Record Status Information**

| | |
|---|---|
| Record Origination Operator: | Conversion User (Criminal Investigation / Wisconsin DOJ Division of Criminal Investigation) |
| Record Origination Date: | 04/12/2004 14:13 |
| Last Update Operator: | Conversion User (Criminal Investigation / Wisconsin DOJ Division of Criminal Investigation) |
| Last Update Date: | 04/12/2004 14:13 |

005546

*This report is property of Wisconsin DOJ Division of Criminal Investigation. Neither it or its contents may be disseminated to unauthorized personnel.*

Case 1:19-cv-00484-BHL   Filed 09/06/22   Page 52 of 122   Document 264-1

CHRM004727

# Wisconsin DOJ Division of Criminal Investigation

## ACISS Investigative Report

Report Number:  DCIR13280/28

Report Date:

### Primary Information

| | |
|---|---|
| Report Number: | DCIR13280/28 |
| Type Of Report: | Investigative |
| Description: | dci2corpcounsel |
| Approval Status: | Approved |
| Approved Date: | 04/12/2004 |
| Approved By: | Conversion User (Criminal Investigation / Wisconsin DOJ Division of Criminal Investigation) |

### Narrative

CASE ACTIVITY REPORT   Wisconsin Department of Justice
DJ-DCI-2 (Rev. 8/91)   DIVISION OF CRIMINAL INVESTIGATION

1.   Case Number

   GC-13280
2.   Date

   10/17/2003
3.   Case Title

   STEVEN AVERY PROSECUTION
4.   Activity

   Examination of Records/Manitowoc County Corporation Counsel
5.   Date of Activity

   10/01/2003

6.
On 10/01/2003, Special Agent Amy A. Lehmann received a cover letter and documents from the Manitowoc County Assistant Corporation Counsel David Hemery. The cover letter explained the bate stamped numbers on the pages of the Manitowoc Sheriff's case file of STEVEN AVERY that was turned over to DCI on 09/23/2003. The pages bate stamped MTSO-001 through MTSO-322 were the entire STEVEN AVERY case file and the pages bate stamped MTSO-323 through MTSO-332 were other miscellaneous documents requested by the DCI.

Enclosed with the letter were copies of documents from the Sheriff's Department case file that at the time the case file was turned over were redacted versions of the reports. These documents enclosed with the letter from the Corporation Counsel are copies of the originals.

The letter and above-mentioned documentation are attached to this report.

13280 dci2corpcounsel 10012003 lehmannaa                    005547

### Record Status Information

| | |
|---|---|
| Record Origination Operator: | Conversion User (Criminal Investigation / Wisconsin DOJ Division of Criminal Investigation) |

*This report is property of Wisconsin DOJ Division of Criminal Investigation. Neither it or its contents may be disseminated to unauthorized personnel.*

Case 1:19-cv-00484-BHL   Filed 09/06/22   Page 53 of 122   Document 264-1

CHRM004728

| Report Number: | DCIR13280/28 | Report Date: |
|---|---|---|

| | |
|---|---|
| Record Origination Date: | 04/12/2004 14:13 |
| Last Update Operator: | Conversion User (Criminal Investigation / Wisconsin DOJ Division of Criminal Investigation) |
| Last Update Date: | 04/12/2004 14:13 |

005548

*This report is property of Wisconsin DOJ Division of Criminal Investigation. Neither it or its contents may be disseminated to unauthorized personnel.*

lehmannaa 04/13/2005 13:31

CHRM004729

# Wisconsin DOJ Division of Criminal Investigation

*ACISS Investigative Report*

| | |
|---|---|
| Report Number: | DCIR13280/29 |

Report Date:

**Primary Information**

| | |
|---|---|
| Report Number: | DCIR13280/29 |
| Type Of Report: | Investigative |
| Description: | dci2exrecmanitowocpd |
| Approval Status: | Approved |
| Approved Date: | 04/12/2004 |
| Approved By: | Conversion User (Criminal Investigation / Wisconsin DOJ Division of Criminal Investigation) |

**Narrative**

CASE ACTIVITY REPORT    Wisconsin Department of Justice
DJ-DCI-2 (Rev. 8/91)    DIVISION OF CRIMINAL INVESTIGATION

1.    Case Number

   GC-13280
2.    Date

   09/29/2003
3.    Case Title

   STEVEN AVERY PROSECUTION
4.    Activity

   Receipt of Documents/Manitowoc Police Department
5.    Date of Activity

   09/22/2003

*Any other documents leaving in Avery case requested?*

6.
On 09/22/2003, Special Agent Debra K. Strauss received the City of Manitowoc case file for GREGORY A. ALLEN, DOB: 01/17/54. Manitowoc Deputy Chief Tom Bergner gave the original documents to S/A Strauss, which S/A Strauss copied. The originals were then returned to Deputy Chief Bergner on 09/23/2003.

The following reports are included:

Documentation of a 1970 juvenile arrest for Robbery and Burglary from the Westminster, California Police Department.
Documentation involving a 1971 arrest for Aggravated Assault and Aggravated Battery with the Ramsey County, Minnesota Sheriff's Department.
Documentation of a citation for Driving too Fast for Conditions with the Manitowoc Police Department.
Reports by the City of Manitowoc Police Department documenting an Attempted Rape on July 14, 1985. *1985?*
Reports by the City of Manitowoc Police Department documenting contacts with ALLEN in July of 1986.
Reports by the City of Manitowoc Police Department documenting a Sexual Assault on May 28, 1986.
Documentation from the FBI and Manitowoc Sheriff's Department regarding an unsolved homicide in North Carolina in 1975 and documents of indecent exposure.
A document from the Crime Information Bureau showing contacts with the Manitowoc Police and Sheriff's Department in 1980 and 1983.
Reports by the Two Rivers Police Department documenting Indecent Exposure on August 2, 1983.
Reports by the Two Rivers Police Department documenting Lewd Behavior on August 4, 1983.
Reports by the City of Manitowoc Police Department documenting a Suspicious Person on March 10, 1984.
Reports by the City of Manitowoc Police Department documenting an incident of Prowler on June 13, 1984.
Reports by the City of Manitowoc Police Department documenting an incident of Suspicious Person on January 24,

*This report is property of Wisconsin DOJ Division of Criminal Investigation. Neither it or its contents may be disseminated to unauthorized personnel.*

Case 1:19-cv-00484-BHL   Filed 09/06/22   Page 55 of 122   Document 264-1

CHRM004730

# Wisconsin DOJ Division of Criminal Investigation

*ACISS Investigative Report*

## Narrative - Continued

1985.
Reports by the City of Manitowoc Police Department documenting an incident of Indecent Exposure on June 26, 1985.
Reports by the City of Manitowoc Police Department documenting Suspicious Person on June 26, 1985.
Reports by the City of Manitowoc Police Department documenting Surveillance on July 17, 1985.
Reports by the City of Manitowoc Police Department documenting a Prowler on October 17, 1985.
Reports by the City of Manitowoc Police Department documenting a Prowler on October 22, 1985.
Reports by the City of Manitowoc Police Department documenting Vandalism to Vehicle on December 21, 1985.
Reports by the City of Manitowoc Police Department documenting a Suspicious Person on May 3, 1986.
Reports by the City of Manitowoc Police Department documenting a Window Peeper on July 31, 1986.
A copy of the arrest records for GREGORY ALLEN.
A contact sheet showing the contacts between the Manitowoc Police Department and GREGORY ALLEN.

Copies of the Manitowoc Police Department reports are attached to this report.

13280 dci2exrecmanitowocpd 09222003 lehmannaa

## Record Status Information

| | |
|---|---|
| Record Origination Operator: | Conversion User (Criminal Investigation / Wisconsin DOJ Division of Criminal Investigation) |
| Record Origination Date: | 04/12/2004 14:13 |
| Last Update Operator: | Conversion User (Criminal Investigation / Wisconsin DOJ Division of Criminal Investigation) |
| Last Update Date: | 04/12/2004 14:13 |

005550

*This report is property of Wisconsin DOJ Division of Criminal Investigation. Neither it or its contents may be disseminated to unauthorized personnel.*

CHRM004731

# Wisconsin DOJ Division of Criminal Investigation

### ACISS Investigative Report

Report Date:

### Primary Information

| | |
|---|---|
| Report Number: | DCIR13280/3 |
| Type Of Report: | Investigative |
| Description: | dci2 ii manitowoc photos |
| Approval Status: | Approved |
| Approved Date: | 04/12/2004 |
| Approved By: | Conversion User (Criminal Investigation / Wisconsin DOJ Division of Criminal Investigation) |

### Narrative

CASE ACTIVITY REPORT     Wisconsin Department of Justice
DJ-DCI-2 (Rev. 8/91)     DIVISION OF CRIMINAL INVESTIGATION

1.    Case Number

   GC-13280
2.    Date

   10/09/2003
3.    Case Title

   STEVEN AVERY PROSECUTION
4.    Activity

   Intelligence Information: Manitowoc Co. Sheriff's Dept. Photos
5.    Date of Activity

   10/07/2003

6.

On Tuesday, October 7, 2003, S/A Debra K. Strauss spoke with Manitowoc County Sheriff's Department Inspector Robert
C. Hermann. S/A Strauss was directed to Inspector Hermann when S/A Strauss asked for a copy of all of the different
booking photographs the sheriff's department had of GREGORY A. ALLEN, DOB 01/17/1954.

Inspector Hermann told S/A Strauss that after he learned ALLEN was the person who had committed the crimes against
PENNY BEERNTSEN, Inspector Hermann obtained the booking information, including the photos, for ALLEN. Inspector
Hermann told S/A Strauss that ALLEN was originally booked into the Manitowoc County Jail in 1984. However, that
photo has since been taken out of the file and replaced with a more recent photo.

Inspector Hermann explained in 1984, when a person was processed, a photo would be taken. This photo would then be
placed on a card that contained identifying information about the person being processed. If that same person was to
be arrested and processed again at a later time, it was not uncommon for the previous photo to be disposed of.
Inspector Hermann stated that since ALLEN has been processed through the jail since his initial booking in 1984,
Inspector Hermann suspects the 1984 photo may have been destroyed. — in 1987 - so there in 1985

Inspector Hermann also stated that when the crime occurred in July, 1985, Inspector Hermann was working in the traffic
department. Inspector Hermann was asked if he knew anything about GREG ALLEN in July, 1985 and Inspector
Hermann responded he did not think so.

Inspector Hermann was then asked if remembers learning that another person, with a history of these types of sexual
crimes and matching the physical description provided by the victim, was seen in the area of the sexual assault at the

*[handwritten annotation in right margin]:* P.B. photo array come from booking photos ??

*This report is property of Wisconsin DOJ Division of Criminal Investigation. Neither it or its contents may be disseminated to unauthorized personnel.*

Case 1:19-cv-00484-BHL   Filed 09/06/22   Page 57 of 122   Document 264-1

CHRM004732

**Narrative - Continued**

time the crime was committed. Inspector Hermann said he does not recall ever learning this information.

Inspector Hermann told S/A Strauss the only photograph the Manitowoc County Sheriff's Department has of ALLEN was the booking photo taken of ALLEN in 1987. This was the same photo already in the possession of the investigators.

Inspector Hermann had no additional information and the contact was at that time terminated.

alk 10/13/03
13280 dci2 ii manitowoc photos 10072003 straussdk.doc

**Record Status Information**

| | |
|---|---|
| Record Origination Operator: | Conversion User (Criminal Investigation / Wisconsin DOJ Division of Criminal Investigation) |
| Record Origination Date: | 04/12/2004 14:13 |
| Last Update Operator: | Conversion User (Criminal Investigation / Wisconsin DOJ Division of Criminal Investigation) |
| Last Update Date: | 04/12/2004 14:13 |

*This report is property of Wisconsin DOJ Division of Criminal Investigation. Neither it or its contents may be disseminated to unauthorized personnel.*

CHRM004733

# Wisconsin DOJ Division of Criminal Investigation

*ACISS Investigative Report*

Report Number: DCIR13280/30

Report Date:

## Primary Information

| | |
|---|---|
| Report Number: | DCIR13280/30 |
| Type Of Report: | Investigative |
| Description: | dci2exrecmso2 |
| Approval Status: | Approved |
| Approved Date: | 04/12/2004 |
| Approved By: | Conversion User (Criminal Investigation / Wisconsin DOJ Division of Criminal Investigation) |

## Narrative

CASE ACTIVITY REPORT    Wisconsin Department of Justice
DJ-DCI-2 (Rev. 8/91)    DIVISION OF CRIMINAL INVESTIGATION

1.    Case Number

GC-13280
2.    Date

09/25/2003
3.    Case Title

STEVEN AVERY PROSECUTION
4.    Activity

Receipt of Documents/Manitowoc Sheriff's Department
5.    Date of Activity

09/23/2003

6.
On 09/23/2003, Special Agents Amy A. Lehmann and Debra K. Strauss received a copy of the case file case involving STEVEN AVERY and PENNY BEERNTSEN from the Manitowoc County Sheriff's Department. The Corporation Counsel for Manitowoc County, Steven Rollins, turned over the case file to the DCI. The documents turned over were bate stamped numbers 001 through 332.

Corporation Counsel Rollins explained that ~~a memo~~ would be forthcoming explaining in more detail the records that were turned over. Rollins stated that a couple of the documents toward the end of the group were not from the AVERY file but from information gathered on GREGORY ALLEN. S/A Lehmann will provide a supplemental report when the memo is received from Rollins. *(handwritten: ?)*

*(handwritten annotation: where gathered?)*

Attached to this report is a copy of the documents turned over to the DCI.

13280 dci2exrecmso2 09232003 lehmannaa

## Record Status Information

| | |
|---|---|
| Record Origination Operator: | Conversion User (Criminal Investigation / Wisconsin DOJ Division of Criminal Investigation) |
| Record Origination Date: | 04/12/2004 14:13 |
| Last Update Operator: | Conversion User (Criminal Investigation / Wisconsin DOJ Division of Criminal Investigation) |

*This report is property of Wisconsin DOJ Division of Criminal Investigation. Neither it or its contents may be disseminated to unauthorized personnel.*

Case 1:19-cv-00484-BHL   Filed 09/06/22   Page 59 of 122   Document 264-1

CHRM004734

**Record Status Information - Continued**

Last Update Date:                    04/12/2004 14:13

005554

*This report is property of Wisconsin DOJ Division of Criminal Investigation. Neither it or its contents may be disseminated to unauthorized personnel.*

Case 1:19-cv-00484-BHL   Filed 09/06/22   Page 60 of 122   Document 264-1

CHRM004735

### Primary Information

| | |
|---|---|
| Report Number: | DCIR13280/31 |
| Type Of Report: | Investigative |
| Description: | dci2exrecsheriffsfilesuspects |
| Approval Status: | Approved |
| Approved Date: | 04/12/2004 |
| Approved By: | Conversion User (Criminal Investigation / Wisconsin DOJ Division of Criminal Investigation) |

### Narrative

CASE ACTIVITY REPORT     Wisconsin Department of Justice
DJ-DCI-2 (Rev. 8/91)     DIVISION OF CRIMINAL INVESTIGATION

1.   Case Number

   GC-13280
2.   Date

   10/20/2003
3.   Case Title

   STEVEN AVERY PROSECUTION
4.   Activity

   Examination of Records
5.   Date of Activity

   10/20/2003

6.
During the month of October, Special Agent Amy A. Lehmann reviewed the Manitowoc County Sheriff's Department's STEVEN AVERY case file. These documents were bate stamped MTSO-001 through MTSO-322. The following notations were made in the case file regarding suspects in the investigation where PENNY BEERNTSEN was the victim.

MTSO-004, a Manitowoc County Sheriff's Department photograph and descriptors for BRYAN DAVID GARRISON.

MTSO-006, a letter dated November 22, 1985, from JAMES BOLGERT to Sheriff THOMAS KOCOUREK. The letter was a request that the Sheriff's Department look at BRYAN GARRISON as the possible suspect for the BEERNTSEN attack.

MTSO-010 and 011, a letter, dated 08/26/1983, from the Bureau of Community Corrections to BRYAN GARRISON, regarding GARRISON's revocation for a 1983 sexual assault.

MTSO-021 and 022, handwritten papers containing the following notations. Some of the writing is illegible:
GREG MANTHY – was in live line-up
Info from AL AVERY – Re: suspect KLEIN LAWRENCE. Letter from Attorney Bolgert – Re: BRIAN GARRISON
Call from Attorney Bolgert – Re: suspect ALLEN L. PENNE

MTSO-024, a handwritten note stating, "Ref – suspect BRYAN GARRISON – follow-up ref: GARRISON by Det. Conrad.

MTSO-051, a notation in the Manitowoc County Sheriff's Department reports under the date of 08/01/85 at 0915 hours, "...note and fingerprint cards of STEVEN AVERY, BRUNO FRAUENFELD and GREGORY MANTHEY were transported to the State Crime

*This report is property of Wisconsin DOJ Division of Criminal Investigation. Neither it or its contents may be disseminated to unauthorized personnel.*

Case 1:19-cv-00484-BHL   Filed 09/06/22   Page 61 of 122   Document 264-1

CHRM004736

**Narrative - Continued**

Laboratory".

MTSO-061, a Manitowoc County Sheriff's Department report under the date of 09/09/85 at 1515 hours stating, "Sheriff Thomas Kocourke requested that Det. Conrad interview LAWRENCE THOMAS KLEIN, DOB: 03/19/60, resides in the City of Two Rivers.  Sheriff Kocourek was informed that KLEIN is very similar in appearance to AVERY."  The report continues to relay the interview that took place of KLEIN and his father.

MTSO-063-064, a Manitowoc County Sheriff's Department report noting that on 11/25/85, a letter was received from Attorney Bolgert regarding a possible suspect being BRYAN GARRISON.  Det. Conrad attempted to locate and interview GARRISON but was unsuccessful in locating him.

MTSO-095, Wisconsin State Crime Laboratory submission receipt for fingerprint cards for STEVEN AVERY and GREGORY MICHAEL MANTHEY.

MTSO-129, a handwritten note stating, "KLEIN LAWRENCE T. – Suspect (cleared)", "MANTHEY GREGORY – Suspect in line up (cleared)", "GARRISON BRYAN – Suspect L.N.C." and "PENNE ALLEN – Suspect (cleared)".

MTSO-197-198, handwritten page stating, "Larry Conrad assigned to meet w/ Klein, Lawrence b/c Al Avery requested same" and "Jim Bolgert sends a letter stating Bryan Garrison was investigated relating to a sexual assault case" and "Call from Atty. Bolgert naming Allen L. Penne as subject (in MO at the time)".

MTSO-213-215, an interview of Detective Larry Conrad.  In the interview, Conrad stated that he interviewed Greg Manthey and was able to determine that he had a alibi at the time that the crime occurred.

There is no mention in the Manitowoc County Sheriff's Department records of GREGORY ALLEN.

*[handwritten note:]* the 2 Rivers in PS booked into jail in 64

13280 dci2exrecsheriffsfilesuspects 10202003 lehmannaa

**Record Status Information**

| | |
|---|---|
| Record Origination Operator: | Conversion User (Criminal Investigation / Wisconsin DOJ Division of Criminal Investigation) |
| Record Origination Date: | 04/12/2004 14:13 |
| Last Update Operator: | Conversion User (Criminal Investigation / Wisconsin DOJ Division of Criminal Investigation) |
| Last Update Date: | 04/12/2004 14:13 |

005556

*This report is property of Wisconsin DOJ Division of Criminal Investigation. Neither it nor its contents may be disseminated to unauthorized personnel.*

Case 1:19-cv-00484-BHL   Filed 09/06/22   Page 62 of 122   Document 264-1

CHRM004737

# Wisconsin DOJ Division of Criminal Investigation

## ACISS Investigative Report

Report Number: DCIR13280/32

Report Date:

### Primary Information

| | |
|---|---|
| Report Number: | DCIR13280/32 |
| Type Of Report: | Investigative |
| Description: | dci2greenbaypdcontact |
| Approval Status: | Approved |
| Approved Date: | 04/12/2004 |
| Approved By: | Conversion User (Criminal Investigation / Wisconsin DOJ Division of Criminal Investigation) |

### Narrative

CASE ACTIVITY REPORT    Wisconsin Department of Justice
DJ-DCI-2 (Rev. 8/91)    DIVISION OF CRIMINAL INVESTIGATION

1.    Case Number

GC-13280
2.    Date

10/04/2003
3.    Case Title

STEVEN AVERY PROSECUTION
4.    Activity

Contact with the Green Bay Police Department
5.    Date of Activity

10/03/2003

6.
On 10/03/2003, Special Agents Amy A. Lehmann and Debra K. Strauss met with Lieutenant Michael Graham and Detectives Denise Servais and Tom Molitor regarding GREGORY ALLEN. Special Agents explained that they were reviewing the STEVEN AVERY issue. As a part of that, there was a report that a Manitowoc Sheriff's Deputy had received a telephone call in 1995 from a law enforcement officer in Brown County. This Brown County officer stated that a person in custody was making comments that a few years back he had committed an assault in Manitowoc County.

(In this report there was not a name of the law enforcement officer that called from the Brown County area and also not a name of the person in custody who was making the alleged comments.)

Special Agents stated that they knew GREGORY ALLEN was arrested in that 1995 time period for a sexual assault in the City of Green Bay, Brown County and wondered if it was he who was the person making the allegations. If so, special agents wondered about those comments being documented in the ALLEN case file.

Detectives' Servais and Molitor were the lead investigators for the ALLEN case and provided special agents with narrative of the case against ALLEN. Dets. Servais and Molitor stated that after ALLEN was arrested they probably spent at least 30 hours with him interviewing him, both after the arrest and while he was incarcerated. Dets. Servais and Molitor stated that ALLEN was definitely not the type to ever admit to any crime. In addition to the one that he was arrested and eventually convicted on there was an additional sexual assault that they tried to get ALLEN to make comments on, which he would not. Never in the time that ALLEN was in the jail did he make any references to having been involved in any other sexual assaults. Dets. Servais and Molitor stated that at one point they had informants in the jail cell with ALLEN, with the hope that ALLEN would make admissions to another inmate about other possible

**005557**

*This report is property of Wisconsin DOJ Division of Criminal Investigation. Neither it or its contents may be disseminated to unauthorized personnel.*

Case 1:19-cv-00484-BHL   Filed 09/06/22   Page 63 of 122   Document 264-1

CHRM004738

**Narrative - Continued**

assaults, which ALLEN did not.

13280 dci2greenbaypdcontact 10032003 lehmannaa

**Record Status Information**

| | |
|---|---|
| Record Origination Operator: | Conversion User (Criminal Investigation / Wisconsin DOJ Division of Criminal Investigation) |
| Record Origination Date: | 04/12/2004 14:13 |
| Last Update Operator: | Conversion User (Criminal Investigation / Wisconsin DOJ Division of Criminal Investigation) |
| Last Update Date: | 04/12/2004 14:13 |

005558

This report is property of Wisconsin DOJ Division of Criminal Investigation. Neither it or its contents may be disseminated to unauthorized personnel.

Case 1:19-cv-00484-BHL   Filed 09/06/22   Page 64 of 122   Document 264-1

CHRM004739

# Wisconsin DOJ Division of Criminal Investigation

*ACISS Investigative Report*

Report Number: DCIR13280/33

Report Date:

## Primary Information

| | |
|---|---|
| Report Number: | DCIR13280/33 |
| Type Of Report: | Investigative |
| Description: | dci2intarlandavery |
| Approval Status: | Approved |
| Approved Date: | 04/12/2004 |
| Approved By: | Conversion User (Criminal Investigation / Wisconsin DOJ Division of Criminal Investigation) |

## Narrative

CASE ACTIVITY REPORT   Wisconsin Department of Justice
DJ-DCI-2 (Rev. 8/91)   DIVISION OF CRIMINAL INVESTIGATION

1.   Case Number

   GC-13280
2.   Date

   11/04/2003
3.   Case Title

   STEVEN AVERY PROSECUTION
4.   Activity

   Interview/Arland Avery
5.   Date of Activity

   10/22/2003

6.
On 10/22/2003, Special Agents Amy A. Lehmann and Debra K. Strauss interviewed ARLAND E. AVERY, DOB: 05/24/38. The interview took place at his residence located at 11806 Lakeshore Road, Two Rivers, WI, telephone number 920-755-4416.  Also present during the interview was AVERY's wife, AGNES AVERY.  ARLAND AVERY provide the following information:

ARLAND AVERY retired from the Manitowoc County Sheriff's Department in 1999.  The three years prior to retirement ARLAND AVERY was the Huber Law Officer for the county.  Prior to that ARLAND AVERY was a patrolman, starting with the department in 1975.  Special Agents told ARLAND AVERY that they wanted to speak with ARLAND AVERY about the night that his nephew, STEVEN AVERY, was arrested for the attack against PENNY BEERTNSEN.

ARLAND AVERY stated that on July 29, 1985, he had a day off from the Sheriff's Department.  ARLAND AVERY stated that he got a call from MIKE BUSHMAN, who was head of the SWAT team at that time.  BUSHMAN told ARLAND AVERY that they had an arrest warrant for STEVEN AVERY and that they were arresting him for assault.

ARLAND AVERY stated that he offered to go along to the STEVEN AVERY house.  ARLAND AVERY stated that he had lived there prior and knew the house well.  In addition, STEVEN AVERY had a wife and five children in the house and ARLAND AVERY did not want the SWAT team running in the house with all the children there.

ARLAND AVERY stated that he drove to the STEVEN AVERY house.  When he got there the SWAT team was already there.  ARLAND AVERY knocked on the door of the residence and nobody answered.  At that point, ARLAND AVERY stated that he walked inside of the residence and called STEVE's name.  ARLAND AVERY stated that he stood in the kitchen area of the house and STEVE AVERY and his wife, LORI AVERY came down the stairs and asked what was going

*This report is property of Wisconsin DOJ Division of Criminal Investigation.  Neither it or its contents may be disseminated to unauthorized personnel.*

Case 1:19-cv-00484-BHL   Filed 09/06/22   Page 65 of 122   Document 264-1

CHRM004740

**Narrative - Continued**

on.

At that point, one of the other officers placed STEVEN AVERY in handcuffs and told him he was under arrest.

ARLAND AVERY stated that when STEVEN AVERY came down the stairs he was wearing pants and no shirt. On STEVEN AVERY's right shoulder he had concrete residue. LORI AVERY asked the officers what STEVEN AVERY was being arrested for and the SWAT team members would not tell her.

ARLAND AVERY stated that at the preliminary hearing the Manitowoc County District Attorney DENIS VOGEL called ARLAND AVERY into his office. At that time, ARLAND AVERY told VOGEL that STEVEN AVERY had the white concrete powder on his shoulder the night he was arrested. ARLAND AVERY stated that VOGEL ignored him. ARLAND AVERY stated that he also relayed this information to REESA EVANS.

ARLAND AVERY stated that he knew the Manitowoc County Sheriff's Department took some of STEVEN AVERY's clothes. ARLAND AVERY stated that VOGEL claimed that STEVEN AVERY had taken a shower and that was why no residue was observed. ARLAND AVERY stated that there was residue on STEVEN AVERY because he saw it and therefore STEVEN AVERY could not have taken a shower. ARLAND AVERY stated that his comments about the white concrete powder were ignored.

ARLAND AVERY stated that because he worked for the Manitowoc County Sheriff's Department he tried to stay out of the investigation as much as possible.

ARLAND AVERY stated that the lead investigator on the STEVEN AVERY case was JIM GOSPODAREK. LEO JADOWSKI was very good friends with GOSPODAREK and would have information on the case as GOSPODAREK is now deceased.

ARLAND AVERY was asked is he was ever threatened by anyone that if he spoke out about seeing the concrete dust on STEVEN AVERY's body that his job would be in jeopardy. ARLAND AVERY stated that he was never afraid of losing his job.

*L— Contradicted by Beilke?*

ARLAND AVERY stated that although he was not investigating the case, he heard information from LEO JADOWSKI. JADOWSKI told ARLAND AVERY that STEVE AVERY did not commit the crimes he was charged with and that JADOWSKI knew this from GOSPODAREK. JADOWSKI stated that GOSPODAREK wanted to continue to investigate the case and that the Sheriff, TOM KOCOUREK, said, "no", and that the case was closed. *consistent w/ Beilke*

*assist w/ Beertsen?*

ARLAND AVERY was asked if he ever made any comment to the sheriff himself about STEVEN AVERY being the wrong man. ARLAND stated that he never had any conversations with the sheriff about the case.

ARLAND AVERY stated that the sheriff was very involved because the sheriff's wife was a close friend with BEERTNSEN. Also, the sheriff really wanted a conviction.

ARLAND AVERY stated that it was his opinion that the case started with JUDY DVORAK. DVORAK worked for the sheriff's department and was the one who interviewed BEERTNSEN at the hospital. DVORAK was the person at the hospital who said out loud that the description of the assailant sounded like STEVEN AVERY. ARLAND AVERY stated that it was after DVORAK made that announcement that the composite drawing was done. ARLAND AVERY stated that he was told by JADOWSKI that GENE KUSCHE drew the composite drawing by looking at a photograph of AVERY.

*Agree*

*Kusche denied*

After BEERTNSEN was shown the composite drawing she was then brought a photo line-up.

ARLAND AVERY stated that at the Manitowoc County Sheriff's Department, STEVEN AVERY's name was not brought up very much. It was his father, ALLEN AVERY, who was talked about much more. The AVERY name was not respected in the community.

ARLAND AVERY stated that at the time of STEVEN AVERY 's arrest, he had never heard of GREG ALLEN. ARLAND

*This report is property of Wisconsin DOJ Division of Criminal Investigation. Neither it or its contents may be disseminated to unauthorized personnel.*

## Narrative - Continued

AVERY said that he had heard from JADOWSKI that there was another suspect in the BEERNTSEN attack in Sheboygan who had previous sexual convictions.

ARLAND AVERY was asked if he every heard of a canvass being done at the beach after the assault. ARLAND AVERY stated that he never heard about that. ARLAND AVERY believes that he would have heard about one being done if there was one done. ARLAND AVERY was asked if there had been a canvass done in the neighborhood would reports have been completed. ARLAND AVERY stated that there should definitely been reports done, if the activity occurred.

ARLAND AVERY stated that he was aware that there was a test drive that was done from the crime scene to Green Bay to see if the time frame fit.

*p. 5100 Invc. Agree - same day - (Ex. 16)*

ARLAND AVERY stated that he felt that an investigation was never done on this case. It was because DVORAK named STEVEN AVERY that it just took off. DVORAK did not like STEVEN AVERY. ARLAND AVERY thought that DVORAK's dislike of STEVEN AVERY might have come from the crime he committed against SANDY MORRIS.

ARLAND AVERY stated that it was the consensus of the detectives and officers working for the sheriff's department that STEVEN AVERY did not commit the crimes for which he was charged. However, everyone was told not to investigate further by the sheriff, TOM KOCOUREK.

*Sh. Petersen we tell you same thing?*

13280 dci2intarlandavery 102203 lehmannaa

## Record Status Information

| | |
|---|---|
| Record Origination Operator: | Conversion User (Criminal Investigation / Wisconsin DOJ Division of Criminal Investigation) |
| Record Origination Date: | 04/12/2004 14:13 |
| Last Update Operator: | Conversion User (Criminal Investigation / Wisconsin DOJ Division of Criminal Investigation) |
| Last Update Date: | 04/12/2004 14:13 |

005561

*This report is property of Wisconsin DOJ Division of Criminal Investigation. Neither it or its contents may be disseminated to unauthorized personnel.*

CHRM004742

**Primary Information**

| | |
|---|---|
| Report Number: | DCIR13280/34 |
| Type Of Report: | Investigative |
| Description: | dci2intbelz |
| Approval Status: | Approved |
| Approved Date: | 04/12/2004 |
| Approved By: | Conversion User (Criminal Investigation / Wisconsin DOJ Division of Criminal Investigation) |

**Narrative**

CASE ACTIVITY REPORT     Wisconsin Department of Justice
DJ-DCI-2 (Rev. 8/91)     DIVISION OF CRIMINAL INVESTIGATION

1.     Case Number

    GC-13280
2.     Date

    10/10/2003
3.     Case Title

    STEVEN AVERY PROSECUTION
4.     Activity

    Interview/Don Belz
5.     Date of Activity

    10/06/2003

6.
On 10/06/2003, Special Agents Amy A. Lehmann and Debra K. Strauss interviewed DON BELZ, residing at 1605 23rd Street, Two Rivers, WI 920-793-3352. BELZ is currently a gunsmith, having retired from the Manitowoc County Sheriff's Department in 1998. BELZ was questioned regarding his involvement in the 1985 case and conviction of STEVEN AVERY, where the victim was PENNY BEERNTSEN. In 1985, BELZ was the Captain of Detectives for the Sheriff's Department and relayed the following information:

BELZ said that when BEERNTSEN was attacked in 1985, the Sheriff then, TOM KOCOUREK, was a new sheriff and BEERNTSEN was a personal friend of the KOCOUREK family. This was also KOCOUREK's first big crime, since taking the position of sheriff. KOCOUREK took charge of the investigation from the beginning and BELZ stated that no one had any control over what was occurring. On any other case, BELZ stated that it was normally his job to run an investigation.

BELZ stated that he remembered that BEERNTSEN was so positive that her assailant was AVERY. BELZ could remember thinking that it was all happening so fast, with the identification of AVERY and his immediate arrest. BELZ stated that AVERY was an instant suspect because of the composite drawing. BELZ could remember someone looking at the composite drawing and saying, "I know him, it's Steve Avery". BELZ again said that the whole thing moved way too fast and thought people should have taken a step back and reviewed the situation a little more closely. BELZ did not believe that he expressed his concerns to anyone other than possibly Detective FRED NICHOLSON.

*L Belka ? Ask him*

BELZ said that he was the person who drove from AVERY's father's house, to the crime scene and back to AVERY's father's house, to see how long the drive would take would take. Other than assisting with that aspect, BELZ stated that he did not have a direct role in the investigation.

**005562**

*This report is property of Wisconsin DOJ Division of Criminal Investigation. Neither it or its contents may be disseminated to unauthorized personnel.*

CHRM004743

## Narrative - Continued

BELZ stated that he knew the AVERY family very well and was friends with ALLAN AVERY. BELZ believed that STEVEN AVERY was capable of committing the types of crimes he was convicted of.

BELZ said that he observed BEERNTSEN do the physical line-up of possible suspects. BEERNTSEN appeared very sure of herself and pointed AVERY out without a problem.

BELZ stated that he never heard about any other possible suspects for the case or any other names even mentioned.

BELZ relayed that typically reports from the detectives go through BELZ first. However for this investigation, all reports were directed to go to Sheriff KOCOUREK first and then to BELZ. This was unusual, but not uncommon according to BELZ.

BELZ stated that he was a little doubtful about AVERY being the correct suspect, but BEERNTSEN was an excellent witness and the jury did a good job. BELZ said that the only thing that made BELZ feel like AVERY probably did it was that BEERNTSEN was such a good witness.

BELZ said that his doubts came from the photo line-up coming so fast and having someone in law enforcement saying it was AVERY.

*[handwritten: Dvorak]*

BELZ stated that he did not know who GREGORY ALLEN was until AVERY was released from prison.

BELZ was unable to provide any additional information and the contact was terminated.

13280 dci2intbelz 10062003 lehmannaa

## Record Status Information

| | |
|---|---|
| Record Origination Operator: | Conversion User (Criminal Investigation / Wisconsin DOJ Division of Criminal Investigation) |
| Record Origination Date: | 04/12/2004 14:13 |
| Last Update Operator: | Conversion User (Criminal Investigation / Wisconsin DOJ Division of Criminal Investigation) |
| Last Update Date: | 04/12/2004 14:13 |

005563

This report is property of Wisconsin DOJ Division of Criminal Investigation. Neither it or its contents may be disseminated to unauthorized personnel.

lehmannaa 04/13/2005 13:31

CHRM004744

| Primary Information | |
|---|---|
| Report Number: | DCIR13280/35 |
| Type Of Report: | Investigative |
| Description: | dci2intbolgert |
| Approval Status: | Approved |
| Approved Date: | 04/12/2004 |
| Approved By: | Conversion User (Criminal Investigation / Wisconsin DOJ Division of Criminal Investigation) |

## Narrative

CASE ACTIVITY REPORT    Wisconsin Department of Justice
DJ-DCI-2 (Rev. 8/91)    DIVISION OF CRIMINAL INVESTIGATION

1.    Case Number

   GC-13280
2.    Date

   10/28/2003
3.    Case Title

   STEVEN AVERY PROSECUTION
4.    Activity

   Interview/James J. Bolgert
5.    Date of Activity

   10/22/2003

6.
On 10/22/2003, Special Agents Amy A. Lehmann and Debra K. Strauss interviewed JAMES J. BOLGERT. BOLGERT is currently a Sheboygan County Circuit Court Judge and the interview was conducted in BOLGERT's office at the courthouse. BOLGERT has been a circuit court judge since 1994. Prior to 1994 BOLGERT was in private practice. In 1985 BOLGERT was a sole practitioner.

In 1985, while practicing law, BOLGERT was contacted by BOB WELLS, who was a staff public defender, looking for someone to take the case of STEVEN AVERY. The trial date had been set and could not be changed. It was sometime in October or November of 1985 that BOLGERT took over the AVERY case from Attorney REESA EVANS. It was BOLGERT's understanding that EVANS had some kind of illness and was unable to continue representing AVERY.

BOLGERT recalled meeting with EVANS at her office in Manitowoc and she had a box of records, which was organized by what she had completed by that time.

BOLGERT was asked if he would have issued a new discovery demand if one would have already been submitted by EVANS. BOLGERT stated that if EVANS had issued one, he would not have issued another. BOLGERT stated that at the point he got the case, he was in the mode to just prepare what was there already for trial. BOLGERT said that EVANS had already even lined up the expert witness by that point.

BOLGERT said that he could remember interviewing the alibi witnesses and meeting with AVERY while he was in custody. BOLGERT stated that it was possible that he did a suppression hearing, but that he was not sure about that.

BOLGERT stated that he did not receive any discovery from then District Attorney DENNIS VOGEL. All discovery that

*This report is property of Wisconsin DOJ Division of Criminal Investigation. Neither it or its contents may be disseminated to unauthorized personnel.*

lehmannaa 04/13/2005 13:31                                    **005564**                        Page 1 of 2

Case 1:19-cv-00484-BHL   Filed 09/06/22   Page 70 of 122   Document 264-1

CHRM004745

# Wisconsin DOJ Division of Criminal Investigation

*ACISS Investigative Report*

Report Number:    DCIR13280/35                                        Report Date:

was turned over was received by EVANS, prior to BOLGERT taking the case over.

BOLGERT stated that he could not remember receiving names of other suspects from any source. BOLGERT said that when he heard the name GREGORY ALLEN, he was very surprised and did not recall ever hearing ALLEN's name before. BOLGERT stated that he first heard the name ALLEN in September of 2003, when AVERY was to be released.

BOLGERT stated that he has no recall of knowing about ALLEN at the time of the AVERY trial.

BOLGERT said that he couldn't remember doing any research on other suspects. BOLGERT was asked what he would have done had he know about other possible suspects. BOLGERT stated that he did not know what he would have done. BOLGERT stated that he could not remember if there were other suspects in the case file or not.

BOLGERT said that he always believed AVERY did not do the crimes for which he was charged. BOLGERT stated that he believed AVERY and the alibi witnesses. BOLGERT stated that the Sheriff's Department locked into AVERY because of the photo identification.

BOLGERT was shown a letter that he wrote while defending AVERY. The letter requested that the Sheriff's Department look into another possible suspect, BRYAN GARRISON. BOLGERT stated that it was his signature on the letter, however, he could not remember the letter.

13280 dci2intbolgert 10222003 lehmannaa

## Record Status Information

| | |
|---|---|
| Record Origination Operator: | Conversion User (Criminal Investigation / Wisconsin DOJ Division of Criminal Investigation) |
| Record Origination Date: | 04/12/2004 14:13 |
| Last Update Operator: | Conversion User (Criminal Investigation / Wisconsin DOJ Division of Criminal Investigation) |
| Last Update Date: | 04/12/2004 14:13 |

005565

*This report is property of Wisconsin DOJ Division of Criminal Investigation. Neither it or its contents may be disseminated to unauthorized personnel.*

Case 1:19-cv-00484-BHL   Filed 09/06/22   Page 71 of 122   Document 264-1

CHRM004746

**Primary Information**

| | |
|---|---|
| Report Number: | DCIR13280/36 |
| Type Of Report: | Investigative |
| Description: | dci2intdahle |
| Approval Status: | Approved |
| Approved Date: | 04/12/2004 |
| Approved By: | Conversion User (Criminal Investigation / Wisconsin DOJ Division of Criminal Investigation) |

**Narrative**

CASE ACTIVITY REPORT    Wisconsin Department of Justice
DJ-DCI-2 (Rev. 8/91)    DIVISION OF CRIMINAL INVESTIGATION

1.   Case Number

   GC-13280

2.   Date

   10/09/2003

3.   Case Title

   STEVEN AVERY PROSECUTION

4.   Activity

   Interview/Tina Dahle

5.   Date of Activity

   10/07/2003

6.

On 10/07/2003, Special Agent Amy A. Lehmann interviewed TINA DAHLE. The interview took place at her place of employment, the law offices of Dennisen, Kranzush & Manhoney, 3000 Riverside Drive, Green Bay, WI 920-435-4391. DAHLE is currently an attorney with the firm. Approximately five years ago, DAHLE was a law student doing work for Project Innocence through the University of Wisconsin – Madison. DAHLE provided the following information as it pertained to the STEVEN AVERY case.

DAHLE stated that she received credits for college by working for Project Innocence. DAHLE was assigned the STEVEN AVERY case along with ROB (last name DAHLE could not remember), another law student. WENDY PAUL was the attorney who supervised the work that was done by DAHLE and ROB. DAHLE explained that Project Innocence takes on a case after there is a request by the person convicted or their family. Then there are criteria that are used to decide if the case is one worth reviewing.

DAHLE explained that the initial documents that are reviewed by Project Innocence are the ones kept by the defendant and then the defense counsel. After that there is a request for Sheriff's Department records and for records able to be disclosed by the District Attorney's office.

DAHLE said that upon reviewing these documents for AVERY, they noted problems with the interview of the victim. The victim, PENNY BEERNTSEN was interviewed and asked descriptions of her assailant a short time after the assault. DAHLE said that it was her recollection that BEERNTSEN was shown a picture of AVERY prior to AVERY being shown to her in an array of photographs for the photo line-up. In addition to that, there was a problem with the array of photographs as they were too dissimilar. DAHLE believed that there was a report in the Project Innocence file that related to the individual photograph being shown to BEERNTSEN.

*This report is property of Wisconsin DOJ Division of Criminal Investigation. Neither it or its contents may be disseminated to unauthorized personnel.*

Case 1:19-cv-00484-BHL    Filed 09/06/22    Page 72 of 122    Document 264-1

CHRM004747

**Narrative - Continued**

DAHLE stated that initially upon reading the case file she had issues with the leather jacket, which BEERNTSEN claimed her assailant wore on the day of the attack. DAHLE said that it was July at the time of the assault and it happened on a beach, which drew her to the conclusion that it was probably a motorcycle jacket or one used when riding a motorcycle. DAHLE stated that she believed that angle was brought to the attention of law enforcement, however it was never checked out.

DAHLE said that in the AVERY case there were large problems with the timing of events. In addition there were problems with the statements and testimony of the cement truck driver. The driver gave times inconsistent with others that were alibis for AVERY. DAHLE said that in part of the driver's statement, he stated that he was home at a certain time because he had watched a particular show on television. DAHLE stated that the show that the driver claimed to have watched was in fact not on the TV at that time.

DAHLE stated that as it related to the cement dust being on AVERY or not, DAHLE said that there were questions to exactly what clothing law enforcement gathered for testing at the crime lab. There was also a report that AVERY's wife had been doing laundry and it was noted by law enforcement that if the clothes in the washer happened to be the clothes that AVERY wore while cementing, his wife was helping to destroy evidence.

DAHLE stated that during her review of all the different documents and files pertaining to the AVERY case, she did not recall anything about any other possible suspects, and no mention of GREGORY ALLEN.

DAHLE said that while she was reviewing the file there was a phone call received. The caller was someone's girlfriend who said that she knew that the case was being reviewed and the attacker sounded like another person that she was familiar with. DAHLE believed that there was a report about this call in the Project Innocence file.

DAHLE said as part of their work for they pulled photographs from AFIS of individuals that matched the description given by the victim. DAHLE believed that one photograph they pulled was for ALLEN. DAHLE stated that some of her work consisted of going into local pubs, probably with the ALLEN photo, to see if someone recognized the photo. DAHLE said that they learned that two people saw him in the area during BEERNTSEN's attack.

DAHLE stated that she also spoke with former District Attorney DENNIS VOGEL, who was DA at the time of the AVERY conviction. DAHLE said that VOGEL would not help, stating, "we have the right guy".

After 1996, DAHLE stated that she contacted the current District Attorney, JIM FITZGERALD, asking for the original evidence so that Project Innocence could test for DNA. DAHLE stated that FITZGERALD was told that Project Innocence would pay for the tests and that as far as any press was concerned, FITZGERALD could play that anyway he wanted to, to make the DA's office look favorable. FITZGERALD firmly said no to the request. DAHLE said FITZGERALD said he wanted to talk to BEERNTSEN about it after which BEERNTSEN called DAHLE to discuss it. BEERNTSEN told DAHLE that she was positive that AVERY was the right guy, but that she would not oppose the tests being done, however BEERNTSEN believed that DAHLE was wasting her time. DAHLE then recontacted FITZGERALD and relayed that BEERNTSEN was not opposed to Project Innocence testing for DNA. FIZTGERALD stated, "Absolutely not, there is something to be said for closure".

DAHLE said that was the start of a long court process of getting the court to order that the evidence be turned over to Project Innocence for testing. The Manitowoc District Attorney's office fought the process the whole way, making the comment at one point of, "Even if the DNA comes back as not belonging to AVERY, it does not mean that AVERY did not do it. BEERNTSEN could have grabbed at anyone at the scene".

DAHLE stated that she left Project Innocence about two years ago and at that time the DNA testing was still in court hearings with notices filed.

DAHLE relayed that at one point she reviewed the evidence that was taken for the AVERY case. It was stored in the Clerk of Court's office in one large box. Clothing, hair samples, etc. were all stored together.

*This report is property of Wisconsin DOJ Division of Criminal Investigation. Neither it or its contents may be disseminated to unauthorized personnel.*

Case 1:19-cv-00484-BHL   Filed 09/06/22   Page 73 of 122   Document 264-1

CHRM004748

## Narrative - Continued

13280 dci2intdahle 10072003 lehmannaa

## Record Status Information

| | |
|---|---|
| Record Origination Operator: | Conversion User (Criminal Investigation / Wisconsin DOJ Division of Criminal Investigation) |
| Record Origination Date: | 04/12/2004 14:13 |
| Last Update Operator: | Conversion User (Criminal Investigation / Wisconsin DOJ Division of Criminal Investigation) |
| Last Update Date: | 04/12/2004 14:13 |

005568

*This report is property of Wisconsin DOJ Division of Criminal Investigation. Neither it or its contents may be disseminated to unauthorized personnel.*

Case 1:19-cv-00484-BHL   Filed 09/06/22   Page 74 of 122   Document 264-1

CHRM004749

**Primary Information**

| | |
|---|---|
| Report Number: | DCIR13280/37 |
| Type Of Report: | Investigative |
| Description: | dci2intkocourek |
| Approval Status: | Approved |
| Approved Date: | 04/12/2004 |
| Approved By: | Conversion User (Criminal Investigation / Wisconsin DOJ Division of Criminal Investigation) |

**Narrative**

CASE ACTIVITY REPORT    Wisconsin Department of Justice
DJ-DCI-2 (Rev. 8/91)    DIVISION OF CRIMINAL INVESTIGATION

1.    Case Number

   GC-13280
2.    Date

   11/03/2003
3.    Case Title

   STEVEN AVERY PROSECUTION
4.    Activity

   Interview/Tomas Kocourek
5.    Date of Activity

   *who are they*

   10/29/2003

6.

On 10/29/2003, Special Agents Amy A. Lehmann and Debra K. Strauss interviewed THOMAS H. KOCOUREK, DOB: 12/05/45. The interview began at approximately 6:00 p.m., and took place at KOCOUREK's residence, 1601 Shoto Road, Two Rivers, WI 920-684-3871. Also present during the interview was ELIZABETH BLITZ-KOCOUEK, TOM KOCOUREK's wife. KOCOUREK is currently the Executive Director of Big Brothers Big Sisters of Manitowoc County, Inc., KOCOUREK was interviewed regarding the case of STEVEN AVERY. At the time of AVERY's arrest, KOCOUREK was the Sheriff of Manitowoc County. KOCOUREK provided the following information:

KOCOUREK stated that regarding the crimes that were committed against PENNY BEERNTSEN, those crimes were ones KOCOUREK was not normally directly involved with. The policy of the sheriff's department was to notify the sheriff in the event of a homicide or traffic fatality. In July of 1985, there was no money in the budget for pagers and portable radios for the five detectives that worked for the sheriff's department. The only two individuals that had these available to them were KOCOUREK and his Chief Deputy who was either VERN KLEMENT or RICHARD ANDREWS at the time.

KOCOUREK stated that after the report came in about BEERNTSEN being attacked on the beach, dispatch attempted to locate a detective to come to the hospital and take the complaint and report. KOCOUREK said that the only detective that was located by dispatch was AL KOLANCZYK and he said that he was not able to come in. Dispatch then contacted KOCOUREK and because he had some previous criminal investigative experience he went to the hospital. Prior to being elected sheriff, KOCOUREK worked as a detective for the Manitowoc Police Department.

Once KOCOUREK got to the hospital, he spoke with BILL BECK who was at the hospital already. BECK would have been

*This report is property of Wisconsin DOJ Division of Criminal Investigation. Neither it or its contents may be disseminated to unauthorized personnel.*

**Narrative - Continued**

an officer or sergeant at that time. BECK relayed that he was unable to locate any detectives and he himself did not have any investigative background and so did not know how to proceed.

KOCOUREK stated that BEERNTSEN was located in the emergency room of the hospital when he arrived and he believed that he would have requested that the doctor on duty to do a sexual assault work up on BEERNTSEN. KOCOUREK stated that BEERNTSEN was alert and talking while in the emergency room. *(compare w. Beerntsen self-descrip)*

Also present at the hospital was a female deputy, possible JUDY DVORAK. KOCOUREK stated that while BEERNTSEN was in the emergency room other than asking her for a verbal description of her attacker, there were no questions asked of her until she was moved to a private room. KOCOUREK stated that he wanted the verbal description of BEERNTSEN's attacker so that officers on the street could keep a look out for a suspect. KOCOUREK stated that he could remember BEERNTSEN making the comment to him that while she was being attacked she knew that she needed to remember what her assailant looked like, so BEERNTSEN made it a point to concentrate on her assailants face and other descriptors.

KOCOUREK believed that in July of 1985 he would have heard of STEVEN AVERY before but probably had never met him or knew what he looked like.

KOCOUREK said that at the point that BEERNTSEN gave a verbal description of her assailant, no particular person came to mind. KOCOUREK said that GENE KUSCHE was called to complete a composite drawing working with BEERNTSEN and that it was after this was finished that someone in the room made a mention that the drawing looked like AVERY. *(not so, right?)* *(who was in the room)*

KOCOUREK stated that he could not remember if he was in the room with KUSCHE when he drew the composite drawing. When the composite drawing was completed KOCOUREK could remember KUSCHE asking BEERNTSEN if the drawing looking like her assailant. BEERNTSEN responded that it did. It was at this point that KOCOUREK could remember someone saying that the drawing looked like AVERY. KOCOUREK believed that this comment was made away from the victim. *(who?)* *(looking cards)*

Following the composite drawing, a photo line-up was created. KOCOUREK said that several photographs from the jail were placed in a paper cut out so that the booking numbers were not visible. KOCOUREK believed that BEERNTSEN was shown one or two sheets of photographs. KOCOUREK stated that he worked with KUSCHE in showing the victim the photo line-up. KOCOUREK said that BEERNTSEN looked at the photographs and instantly picked AVERY out as her assailant. KOCOUREK was asked if BEERNTSEN at any time was shown an individual photograph of AVERY prior to his photo being part of the photo line-up. KOCOUREK stated that she was not and that doing that would defeat the purpose of having a photo line-up. *(except Steven Avery)*

KOCOUREK stated that in regards to the photo line-up he relied on his jailers to come up with photographs, as they were more familiar with individuals that were committing particular crimes. *(what crimes?)*

KOCOUREK said that after BEERNTSEN identified AVERY in the photo line-up the decision was made to take AVERY into custody. A squad car was dispatched to take AVERY into custody. KOCOUREK stated that he did not know if he had spoken to the district attorney prior to making the decision to arrest AVERY. KOCOUREK believed that AVERY's uncle ARLAND AVERY may have went along to help with the arrest along with KEN PETERSON (the current sheriff).

STEVEN AVERY was arrested and taken to the Manitowoc County Jail. KOCOUREK stated that he was told by one of the arresting officers that AVERY made a comment during his arrest that made him look like he was guilty. AVERY told his wife that he was being arrested for "killing a woman". KOCOUREK stated that AVERY had not been told anything about a woman being the victim prior to his arrest. After his arrest, samples of hair, fingernail scrapings and other potential evidence were taken from AVERY. KOCOUREK believed that LARRY CONRAD was the detective that interviewed AVERY after his arrest. AVERY denied his involvement in the assault against BEERNTSEN on that night and all the way through the court process. *(had gotten Steven to admit to exam.?)*

KOCOUREK stated that sometime during that evening of the arrest a detective had been contacted and it was possible

*This report is property of Wisconsin DOJ Division of Criminal Investigation. Neither it or its contents may be disseminated to unauthorized personnel.*

lehmannaa 04/13/2005 13:31                                         005570                    Page 2 of 5

Case 1:19-cv-00484-BHL   Filed 09/06/22   Page 76 of 122   Document 264-1

CHRM004751

**Narrative - Continued**

it was LARRY CONRAD. It was at that point that KOCOUREK stated that he backed out of the investigation and had a limited role.

KOCOUREK was asked about the policies at the Sheriff's Department when it came to writing reports. KOCOUREK stated that all information obtained during an investigation was to be documented on a report. KOCOUREK readily admitted that some of the detectives were a little lax with this policy. *[handwritten: WRITTEN POLICY? None for Seigner in review? not the women in the D.A.'s office?]*

KOCOUREK was asked who the lead detective was in the AVERY investigation. KOCOUREK stated that because he could not get a hold of an investigator at the onset of the crime, he started the investigation. KUSCHE and CONRAD then were pulled in to help and the investigation ended up being a team effort with no real lead detective. KOCOUREK was asked if he could remember what other detectives had a role in the investigation. KOCOUREK stated that it was possible other detectives helped out as several were at the beach looking for physical evidence at the scene of the crime.

KOCOUREK was asked what position JIM GOSPADAREK held at that time. KOCOUREK stated that GOSPADAREK was a training officer at that time and prior to that held the position of detective, so it was possible that he was asked to assist at some point during the investigation. *[handwritten: death of Gospardarek]*

KOCOUREK was asked about the canvas of the beach area that was completed by his detectives at that time. KOCOUREK stated that he was sure a canvass had been completed although he could not name which detectives would have assisted with it. KOCOUREK stated that for every contact made there should have been interviews corresponding with that contact by the detectives. S/A Strauss informed KOCOUREK that there were no reports done by detectives in regards to the canvas of the area that was done. KOCOUREK responded that it was "sloppy police work". KOCOUREK thought that DON BELZ, Captain of the Detectives, would have been the person to have coordinated the canvass.

KOCOUREK was asked his relationship with the BEERNTSEN's. KOCOUREK stated that he knew the family from church and their children were the same ages. KOCOUREK said that they were not social friends. KOCOUREK was asked about his interest in the case. KOCOUREK stated that he did not have a real interest in the case for reasons other than he was the one to start the investigation and wanted to know how it was going as it went along. *[handwritten: Kocourek wouldn't interview?]*

KOCOUREK remembered that the day after the arrest of AVERY a search warrant was obtained for the AVERY house. Law enforcement was looking for clothing that AVERY would have been wearing on the day that BEERTNSEN was assaulted. KOCOUREK stated that he might have gone to the house to assist with the search warrant. At the warrant a leather jacket was located along with clothing that AVERY said he was wearing the day of the assault.

KOCOUREK relayed that a live line-up was also organized and occurred in the room just across from his office in the Sheriff's Department so he as able to observe it. KOCOUREK was asked if he could remember BEERTNSEN making any comments that AVERY was the only person in the line-up that fit her description. KOCOUREK stated that he could not remember any comments like that from BEERNTSEN. KOCOUREK said that some people who were in the line up were concerned that they looked too much like AVERY. KOCOUREK said it was hard to find people for a line-up that had a beard in July.

KOCOUREK was asked if he remembered TOM BERGNER from the Manitowoc Police Department coming to him to talk about another possible suspect. KOCOUREK stated that he could not recall that happening. *[handwritten: Did he deny it?]*

KOCOUREK stated that there were other suspects that were looked at by the Sheriff's Department and cleared. One was a man from Two Rivers, who Det. CONRAD may have looked in to. There may also have been another suspect out of Sheboygan. KOCOUREK could not remember how those individuals came to the attention of the Sheriff's Department. KOCOUREK stated that he did not do any of the follow-up on any suspects. KOCOUREK stated that any suspect name that the sheriff's department would have received would have been followed up on. This lead KOCOUREK to believe that if BERGNER would have come to him with another name it would have been documented somewhere and would have been checked out as well.

*[handwritten: by him? in what format]*

This report is property of Wisconsin DOJ Division of Criminal Investigation. Neither it or its contents may be disseminated to unauthorized personnel.

Case 1:19-cv-00484-BHL   Filed 09/06/22   Page 77 of 122   Document 264-1

CHRM004752

Narrative - Continued

KOCOUREK stated that he never had many doubts of AVERY being the assailant because BEERNTSEN was so certain and convincing that AVERY was the person who assaulted her.

KOCOUREK relayed that he did not know who GREGORY ALLEN was and did not think that the Manitowoc Sheriff's Department knew who he was in 1985. KOCOUREK stated that to this day he still does not know what ALLEN looks like.

wrong - inconsistent with Thomas telling you - Allen booked + photoed + photo was there in 85

KOCOUREK relayed that AVERY had a background that caused some concern. There was an incident in 1985 where a woman had filed a complaint against AVERY for exposing himself in the front yard of his residence wearing nothing but a pair of shoes.

KOCOUREK was asked if he was ever concerned that AVERY was not the person who committed the crimes he was charged with. KOCOUREK stated that AVERY was mainly convicted by the testimony of the victim, as they didn't have DNA at that time like they do now. KOCOUREK stated that there was not a lot of physical evidence and that would have been his main concern.

KOCOUREK was asked if he could remember being contacted by BEERTNSEN with BEERTNSEN relaying that she was contacted by the Manitowoc Police Department with the question of, did she think that she had the correct person. KOCOUREK stated that did not "ring a bell" with him. The only telephone call that KOCOUREK could remember receiving from BEERTNSEN was when she thought one of the AVERY family members was calling her house with vale threats.

Write a report by his standards?

KOCOUREK stated that AVERY had many alibi witnesses. However, there were so many statements that differed that they all looked like they were incompetent. There were time frame issues and issues with the lack of cement dust and the cement truck driver said that someone other than AVERY was running the cement spout.

KOCOUREK was asked why he attended all the court hearing that took place. KOCOUREK stated that he was a witness for several hearing and was sequestered for those. He was also there more for the BEERTNSEN's benefit. PENNY BEERTNSEN was concerned for her safety and so KOCOUREK told her that he would try to attend the hearings. In addition TOM BEERTNSEN was making comments that if AVERY was not found guilty that he may take matters into his own hands.

pressure?

KOCOUREK was asked if he could remember any of the detectives having concern about the guilt of AVERY. KOCOUREK stated that he could not recall that at all.

KOCOUREK was asked if he met more frequently with DENIS VOGEL during this investigation that he normally would have as sheriff. KOCOUREK stated that he only met with VOGEL because he was originally involved with the investigation and was a witness. KOCOUREK stated that he would have also met with VOGEL to discuss the live line-up. KOCOUREK was asked if VOGEL ever needed encouragement or any pushing to prosecute AVERY for the crimes. KOCOUREK stated that VOGEL was an aggressive prosecutor and there was no problems getting VOGEL to prosecute AVERY.

KOCOUREK was asked if there were any detectives that worked for him in 1985 that he did not get along with or where there were any conflicts. KOCOUREK stated that he got along with most detectives, however he did have some problems with AL KOLANCZYK. KOCOUREK considered KOLANCZYK lazy and stated that he lacked motivation.

? documents / dept — content

KOCOUREK was asked who had had spoken with about the AVERY case since AVERY was released from prison. KOCOUREK stated that he met with KEN PETERSON, the current Sheriff, on another topic and the STEVEN AVERY issue came up. KOCOUREK spoke briefly with DON BELZ about the case as KOCOUREK was dropping a gun off for repair, and KOCOUREK also spoke with VOGEL during the week of October 19, 2003, after VOGEL called him.

content

KOCOUREK was asked if the way he reviewed reports changed for this investigation. KOCOUREK was told that special

This report is property of Wisconsin DOJ Division of Criminal Investigation. Neither it or its contents may be disseminated to unauthorized personnel.

**Narrative - Continued**

agents were informed that for this investigation KOCOUREK insisted on viewing all reports prior to BELZ receiving them. KOCOUREK stated that nothing changed for this investigation, all detectives reports went to BELZ and then to KOCOUREK.

*when berger spoke to him - he could have seen such a photo* (handwritten)

KOCOUREK was asked looking back where he thought things went wrong with the investigation. KOCOUREK stated that he would like to see a photograph of ALLEN from that time period to see if there were similarities between ALLEN and AVERY. KOCOUREK said that maybe he would have questioned the identity of the alleged assailant more, however, BEERNTSEN's identification was convincing to him, the district attorney and the jury of twelve. KOCOUREK stated that it would have been nice to have information on ALLEN, however the sheriff's department and the police department did not have joint records or joint dispatch in 1985, where today they do.

KOCOUREK was asked if he presented photographs of BEERTNSEN showing her injuries after her attack to the Manitowoc County Board, using the photographs as a way to request more money. KOCOUREK stated that he did not recall that ever happening.

The interview of KOCOUREK was terminated at approximately 7:30 p.m.

13280 dci2intkocourek 10292003 lehmannaa

**Record Status Information**

| | |
|---|---|
| Record Origination Operator: | Conversion User (Criminal Investigation / Wisconsin DOJ Division of Criminal Investigation) |
| Record Origination Date: | 04/12/2004 14:13 |
| Last Update Operator: | Conversion User (Criminal Investigation / Wisconsin DOJ Division of Criminal Investigation) |
| Last Update Date: | 04/12/2004 14:13 |

*This report is property of Wisconsin DOJ Division of Criminal Investigation. Neither it or its contents may be disseminated to unauthorized personnel.*

**Primary Information**

| | |
|---|---|
| Report Number: | DCIR13280/38 |
| Type Of Report: | Investigative |
| Description: | dci2intkusche |
| Approval Status: | Approved |
| Approved Date: | 04/12/2004 |
| Approved By: | Conversion User (Criminal Investigation / Wisconsin DOJ Division of Criminal Investigation) |

**Narrative**

CASE ACTIVITY REPORT     Wisconsin Department of Justice
DJ-DCI-2 (Rev. 8/91)     DIVISION OF CRIMINAL INVESTIGATION

1.    Case Number

    GC-13280
2.    Date

    10/10/2003
3.    Case Title

    STEVEN AVERY PROSECUTION
4.    Activity

    Interview/Eugene Kusche
5.    Date of Activity

    09/24/2003

6.
On 09/24/2003, Special Agents Amy A. Lehmann and Debra K. Strauss interviewed EUGENE KUSCHE, residing at 2001 S. 10th Street, Manitowoc, WI, 920-684-7095 (h) and 920-901-2027 (c). KUSCHE is currently retired from the Manitowoc Sheriff's Department. However, in 1985 during the STEVEN AVERY prosecution, KUSCHE was the Chief Deputy at the Sheriff's Department. KUSCHE provided the following information regarding his involvement with the AVERY case.

KUSCHE stated that prior to the arrest of AVERY, he had been attending Mount Senario College, taking some classes. One of the classes that he took was a composite drawing class. KUSCHE stated that he had no training in this topic prior to taking the class but found out while attending the class that he had some natural skill in the area of composite drawing. So, on the night of the attack on PENNY BEERNTSEN, KUSCHE had been sitting at home when he received a telephone call from dispatch, who told him that he was needed at the hospital and to come right away.

KUSCHE stated that he went to the hospital and met with WILLIAM BECK, who briefed KUSCHE on what had occurred in relation to the attack on BEERNTSEN. KUSCHE stated that at the hospital BEERNTSEN provided a verbal description of her attacker. After giving the verbal description, KUSCHE stated that he could remember someone saying, "sounds like STEVE AVERY". KUSCHE believed that the Sheriff TOM KOCOUREK was not there at the time. Around that same time there was someone on the telephone calling for photographs to get a photo line-up together. KUSCHE stated that at that time he did not know who AVERY was and had not heard of him before.    ⌐ *include Avery ?*
           ⌐ *Kocorek*

KUSCHE stated that he was very careful to tell individuals that he did not want to see any photographs prior to drawing the composite of the suspect. KUSCHE stated that he sat with BEERNTSEN in the hospital to do the composite drawing. KUSCHE said that the drawing of the suspect was the first composite sketch he had done for an investigation and it was done in charcoal.

*This report is property of Wisconsin DOJ Division of Criminal Investigation. Neither it or its contents may be disseminated to unauthorized personnel.*

CHRM004755

**Narrative - Continued**

KUSCHE stated that BEERNTSEN was very good in describing her assailant. BEERNTSEN had good accuracy and changes that she asked for in the drawing were good. KUSCHE stated that he could remember BEERNTSEN saying that at one point the drawing looked too old and so KUSCHE made the face look younger. KUSCHE estimated that the drawing took 1-1 ½ hours to complete.

After the composite drawing was completed, a photo line-up was brought in for BEERNTSEN to look at. Based upon the photographs collected, KUSCHE stated that he could pick out AVERY as the person who most closely matched the composite drawing. KUSCHE relayed that he was not in the room when BEERNTSEN picked AVERY out of the photo line-up. When KUSCHE finished his drawing, he stated that he left the room. KUSCHE said that he currently has the original composite drawing in his possession.

KUSCHE was asked if he knew who GREGORY ALLEN was at that time. KUSCHE stated that he did not.

KUSCHE stated that in addition to doing the composite drawing he was also involved in the case with helping in the neighborhood canvass and KUSCHE may have also been involved in going to Green Bay to obtain a receipt at Shopko.

KUSCHE said that would have been the extent of his involvement because shortly thereafter, in August of 1995, he had a heart attack. KUSCHE stated that he could not recall who would have conducted the investigation as the lead investigator.

KUSCHE relayed that years later on one of the appeals he had to interview DON BELZ, LARRY CONRAD, AL KOLANCZYK and LEO JADOWSKI, all former Manitowoc County Sheriff's Department Detectives. There was some talk of another suspect being involved from the Sheboygan area. KUSCHE stated that none of the detectives in their interviews recalled another suspect being mentioned in the BEERNTSEN attack.

KUSCHE stated that he did not sit through the trial of AVERY. KUSCHE said that based upon what he did hear about the trial he did not think that there seemed to be enough to convict AVERY.

KUSCHE said that after BEERNTSEN picked AVERY out as her assailant, he could not remember hearing about any other suspects in the case.

KUSCKE stated that last Friday, 09/19/03, he saw LEROY BEILKE, a former Detective, at a retirement party. At that time BEILKE made reference to having told DON BELZ at the time of the BEERNTSEN attack that there was someone else that looked like the composite drawing. *Consistent w Beilka + Avland Adley*

KUSCHE was unable to provide any additional information and the contact was terminated.


13280 dci2intkusche 09242003 lehmannaa

**Record Status Information**

| | |
|---|---|
| Record Origination Operator: | Conversion User (Criminal Investigation / Wisconsin DOJ Division of Criminal Investigation) |
| Record Origination Date: | 04/12/2004 14:13 |
| Last Update Operator: | Conversion User (Criminal Investigation / Wisconsin DOJ Division of Criminal Investigation) |

*This report is property of Wisconsin DOJ Division of Criminal Investigation. Neither it or its contents may be disseminated to unauthorized personnel.*

Case 1:19-cv-00484-BHL    Filed 09/06/22    Page 81 of 122    Document 264-1

CHRM004756

Report Number: **DCIR13280/38**                                    Report Date:

**Record Status Information - Continued**

| Last Update Date: | 04/12/2004 14:13 |
|---|---|

*This report is property of Wisconsin DOJ Division of Criminal Investigation. Neither it or its contents may be disseminated to unauthorized personnel.*

Case 1:19-cv-00484-BHL   Filed 09/06/22   Page 82 of 122   Document 264-1

CHRM004757

Report Number:    DCIR13280/39                   Report Date:

## Primary Information

| | |
|---|---|
| Report Number: | DCIR13280/39 |
| Type Of Report: | Investigative |
| Description: | dci2intnicholson |
| Approval Status: | Approved |
| Approved Date: | 04/12/2004 |
| Approved By: | Conversion User (Criminal Investigation / Wisconsin DOJ Division of Criminal Investigation) |

## Narrative

CASE ACTIVITY REPORT     Wisconsin Department of Justice
DJ-DCI-2 (Rev. 8/91)    DIVISION OF CRIMINAL INVESTIGATION

1.   Case Number

   GC-13280
2.   Date

   10/10/2003
3.   Case Title

   STEVEN AVERY PROSECUTION
4.   Activity

   Interview/Fred Nicholson
5.   Date of Activity

   10/06/2003

6.
On 10/06/2003, Special Agents Amy A. Lehmann and Debra K. Strauss interviewed FRED NICHOLSON, currently residing at 1906 Friday Street, Manitowoc, WI 920-684-4804 (h) and 920-793-1348 (w). NICHOLSON is currently employed at Comfort Solutions as the General Manager, a job that he obtained after retiring from the Manitowoc County Sheriff's Department 3 ½ years ago. NICHOLSON served 27 years as a detective with the sheriff's department and therefore would have been a detective in 1985 when STEVEN AVERY was arrested for the attack on PENNY BEERNTSEN. NICHOLSON provided the following information about that time period.

NICHOLSON stated that he assisted with the investigation by doing a "pace-off", driving a police vehicle to the Shopko store in Green Bay. The sheriff's department wanted to know how long it would take to get from the scene of the crime to the Shopko. NICHOLSON said that he drove as fast as he could, approximately 20 miles over the speed limit. NICHOLSON said that there was a second police vehicle that also drove that distance, however, the vehicle was driven at posted speed limits. Deputy JUDY DVORAK drove the second vehicle.

NICHOLSON said that they drove fast to see how long it would take to get to Green Bay and obtain a receipt and alibi if AVERY was looking for one for his defense. NICHOLSON was asked if it was taken into account that AVERY and his wife said that they had their five children with them when they went to Shopko. NICHOLSON stated that he couldn't remember if he knew AVERY had children at that time or not. NICHOLSON was asked if he knew the time frame that was needed to put AVERY at the scene of the crime. NICHOLSON stated that he was not aware of the time frame for AVERY to be a viable suspect.

NICHOLSON relayed that he would have written a report about the drive that he made to Green

*This report is property of Wisconsin DOJ Division of Criminal Investigation. Neither it or its contents may be disseminated to unauthorized personnel.*

Case 1:19-cv-00484-BHL    Filed 09/06/22    Page 83 of 122    Document 264-1

CHRM004758

**Narrative - Continued**

Bay.

NICHOLSON stated that he did not assist in the search warrant or arrest of AVERY.

NICHOLSON relayed that he did not know who GREG ALLAN was until he saw him on the news recently as the person who committed the crimes against BEERNTSEN.

NICHOLSON said that he had a "gut feeling" that AVERY did not commit the crimes he was charged with. When asked why he had that "gut feeling", NICHOLSON was unable to explain why he felt that way, other than to say that the only evidence was the positive identification.

NICHOLSON was asked if he was aware of any other suspect that was looked at in the course of investigating this case. NICHOLSON stated that he was not aware of any other suspects. NICHOLSON relayed that other than doing the drive to Green Bay, he was not involved in the investigation.

NICHOLSON was unable to provide any additional information and the contact was terminated.

13280 dci2intnicholson 10062003 lehmannaa

**Record Status Information**

| | |
|---|---|
| Record Origination Operator: | Conversion User (Criminal Investigation / Wisconsin DOJ Division of Criminal Investigation) |
| Record Origination Date: | 04/12/2004 14:13 |
| Last Update Operator: | Conversion User (Criminal Investigation / Wisconsin DOJ Division of Criminal Investigation) |
| Last Update Date: | 04/12/2004 14:13 |

005578

This report is property of Wisconsin DOJ Division of Criminal Investigation. Neither it or its contents may be disseminated to unauthorized personnel.

Case 1:19-cv-00484-BHL   Filed 09/06/22   Page 84 of 122   Document 264-1

CHRM004759

# Wisconsin DOJ Division of Criminal Investigation

## ACISS Investigative Report

### Primary Information

| | |
|---|---|
| Report Number: | DCIR13280/4 |
| Type Of Report: | Investigative |
| Description: | dci2 ii-beerntsen 0927- |
| Approval Status: | Approved |
| Approved Date: | 04/12/2004 |
| Approved By: | Conversion User (Criminal Investigation / Wisconsin DOJ Division of Criminal Investigation) |

### Narrative

CASE ACTIVITY REPORT    Wisconsin Department of Justice
DJ-DCI-2 (Rev. 8/91)    DIVISION OF CRIMINAL INVESTIGATION

1.    Case Number

GC-13280
2.    Date

10/06/2003
3.    Case Title

STEVEN AVERY PROSECUTION
4.    Activity

Intelligence Information/BEERNTSEN
5.    Date of Activity

09/27/2003 Through 10/06/2003

6.
Between September 27, 2003 through October 6, 2003, S/A Debra K. Strauss has had several contacts with PENNY BEERNTSEN. These contacts have been regarding harassing phone calls BEERNTSEN has been receiving at her home, 2211 Markham Street, Manitowoc, WI. BEERNTSEN advised S/A Strauss that she received the harassing phone calls on the following dates:

Saturday, September 20, 2003 – 3 phone calls;
Monday, September 22, 2003 – 1 phone call; and
Friday, September 26, 2003, at 7:40 p.m. – one phone call.

BEERNTSEN advised S/A Strauss that the first four phone calls she received, BEERNTSEN would answer the phone and no one would respond. However, the phone call BEERNTSEN received on September 26, 2003, at 7:40 p.m., BEERNTSEN stated that she answered the phone and the caller did not say anything. Eventually, the caller asked, "Is this PENNY", BEERNTSEN responded, "Yes" and asked, "Who is on this phone", there was no answer to BEERNTSEN's question and after a long pause, BEERNTSEN stated, "There was a tracer on the phone and her calls were being monitored by the police." The caller then hung up the phone. BEERNTSEN was unable to identify who the caller may have been but indicated that it was a male voice.

During S/A Strauss's contact with BEERNTSEN on October 5, 2003, S/A Strauss asked BEERNTSEN if she told Manitowoc County District Attorney DENIS VOGEL about the phone call she received from a representative of the Manitowoc Police Department. This particular phone call was regarding BEERNTSEN's assailant. The representative from the police department asked BEERNTSEN if she was sure she had positively identified her assailant correctly because the Manitowoc Police Department indicated they had another suspect in mind who was capable of committing a

This report is property of Wisconsin DOJ Division of Criminal Investigation. Neither it or its contents may be disseminated to unauthorized personnel.

**Narrative - Continued**

crime such as this. BEERNTSEN advised S/A Strauss that she did not tell D/A VOGEL about this phone call. The only person BEERNTSEN told about the call was the sheriff.

dp 10/14/03
13280 dci2 ii-beerntsen 0927-10062003 straussdk

**Record Status Information**

| | |
|---|---|
| Record Origination Operator: | Conversion User (Criminal Investigation / Wisconsin DOJ Division of Criminal Investigation) |
| Record Origination Date: | 04/12/2004 14:13 |
| Last Update Operator: | Conversion User (Criminal Investigation / Wisconsin DOJ Division of Criminal Investigation) |
| Last Update Date: | 04/12/2004 14:13 |

*This report is property of Wisconsin DOJ Division of Criminal Investigation. Neither it or its contents may be disseminated to unauthorized personnel.*

Case 1:19-cv-00484-BHL   Filed 09/06/22   Page 86 of 122   Document 264-1

CHRM004761

# Wisconsin DOJ Division of Criminal Investigation

*ACISS Investigative Report*

Report Number:     DCIR13280/40                                    Report Date:

## Primary Information

| | |
|---|---|
| Report Number: | DCIR13280/40 |
| Type Of Report: | Investigative |
| Description: | dci2intpeterson |
| Approval Status: | Approved |
| Approved Date: | 04/12/2004 |
| Approved By: | Conversion User (Criminal Investigation / Wisconsin DOJ Division of Criminal Investigation) |

## Narrative

CASE ACTIVITY REPORT     Wisconsin Department of Justice
DJ-DCI-2 (Rev. 8/91)     DIVISION OF CRIMINAL INVESTIGATION

1.    Case Number

GC-13280
2.    Date

10/04/2003
3.    Case Title

STEVEN AVERY PROSECUTION
4.    Activity

Interview/Brenda L. Petersen
5.    Date of Activity

09/23/2003

6.
On 09/23/2003, Special Agents Amy A. Lehmann and Debra K. Strauss interviewed BRENDA L. PETERSON, formerly BRENDA GUSE, DOB: 03/24/62, residing at 4928 Remiker Lane, Manitowoc, WI 920-682-5448 (home) and 920-683-4074 (w). PETERSON is the Manitowoc County Victim/Witness coordinator and was employed by the county during the time period in 1985 when STEVEN AVERY was convicted for the attack on PENNY BEERNTSEN. PETERSON provided the following information.

PETERSON stated that from the beginning when she had heard that BEERNTSEN had been attacked and when she saw the composite drawing that had been done she thought it was GREGORY ALLEN that committed the offense. PETERSON said that she was familiar with ALLEN at that time from court hearings that he attended. PETERSON stated that at the time she saw the composite drawing, she knew what ALLEN looked like. PETERSON said that from what she also knew of ALLEN's history, the attack on BEERNTSEN seemed to fit ALLEN.

PETERSON said that in 1985 ALLEN had been in court for various things including stalking, window peeping, watching women at Red Arrow Beach and stealing women's undergarments. PETERSON stated that the Manitowoc Police Department was watching ALLEN because of his behavior.

PETERSON stated that she was also familiar with AVERY because she was working with SANDY MORRIS, who was a victim of AVERY. AVERY was charged with exposing himself to her. *-- Was he so charged? No - endangement?*

PETERSON stated that all through the trial of AVERY she never thought that he committed the crime for which he was charged. PETERSON believed that she was vocal about how she felt and had some conversations about it with former clerk SHIRLEY WILDA and officers involved with the case. PETERSON and WILDA would talk about how they would not

*This report is property of Wisconsin DOJ Division of Criminal Investigation. Neither it or its contents may be disseminated to unauthorized personnel.*

lehmannaa 04/13/2005 13:31                              **005581**                     Page 1 of 3

Case 1:19-cv-00484-BHL   Filed 09/06/22   Page 87 of 122   Document 264-1

CHRM004762

*also Beverly Barber + Jill Morteu* *(handwritten)*

## Narrative - Continued

convict AVERY on the evidence that they heard in court. PETERSON believed that because she talked about how she ~~did not believe that AVERY was the right man charged~~, that former Manitowoc District Attorney DENNIS VOGEL would have heard her make those comments.

PETERSON said that she heard that someone had checked with a probation officer in Door County who stated that ALLEN was in Sturgeon Bay at the time of the assault. PETERSON believed that she would have heard this in general discussion in VOGEL's office.

PETERSON relayed that one thing that was odd about the investigation was how involved the Sheriff, TOM KOCOUREK, was in the case. At one point KOCOUREK gave BEERNTSEN her own police radio to keep at her house. PETERSON stated that in twenty years she has never seen that happen. BEERNTSEN received special treatment that normal victims didn't receive. PETERSON described BEERNTSEN as affluent in the community and a friend of KOCOUREK. PETERSON relayed that KOCOUREK gave Vogel lots of pressure to get a conviction for the assault on BEERNTSEN, making comments like "don't lose this" or "he better not walk".

PETERSON stated that she never had any conversations with BEERNTSEN about if she thought she had chosen the correct person as her attacker. PETERSON stated that although it has come out that BEERNTSEN picked the wrong man as her attacker, PETERSON said that AVERY was not picked maliciously and that BEERNTSEN truly believed that AVERY was the person who committed the crime.

PETERSON stated that she was not aware of other suspects that were looked at by the Sheriff's Department. PETERSON did not know if there even were other individuals considered for the attack on BEERNTSEN.

Another problem that PETERSON had with the case was the issue with the attacker's hair. PETERSON stated that BEERNTSEN had said her attacker had curly hair and AVERY's hair was straight. The prosecution led the jury to believe that the hair curled because of the humidity, however, PETERSON stated that she had a problem with that as hair typically goes flat in the humidity.

The biggest concern to PETERSON was the timed drive that the detectives did from the Sheriff's Department demonstrating how AVERY could have committed the crime in the time frame available. It was PETERSON's "gut feeling" that there was a lot of pressure by the Sheriff to "make it fit". When the detectives made the run, they did not have five children in the vehicle like the AVERY's did.

There was also the issue of the attacker's underwear that caused concern for PETERSON. BEERNTSEN stated that her attacker had on white underwear. There was testimony in court that AVERY never wore any underwear. On that day that was revealed in court the prosecution was very upset when they left for the day. The next day VOGEL came into court all excited because BEERNTSEN had an explanation for the white underwear she thought she had seen. BEERNTSEN had been doing her wash the night before and when she pulled her jeans out of the dryer she noticed that the pocket linings were white, which therefore must have been what she saw when she thought she saw white underwear. This is the information that was relayed to the jury. *prep Beerntsen - 100% certain doberg + no current do (handwritten annotation)* *no 95% on shoulder (handwritten)*

For this case, PETERSON relayed that there were lots of closed-door sessions with only VOGEL, BEERNTSEN and Sheriff KOCOUREK attending. PETERSON stated that this was unusual from how things were normally handled. Typically VOGEL would have PETERSON in the room when meeting with a victim.

PETERSON described VOGEL as an excellent attorney and did not know if VOGEL did anything intentionally wrong. PETERSON again relayed ~~that the Sheriff put a lot of pressure on him~~.

PETERSON stated that if she would have been on the jury she would not have convicted AVERY. PETERSON was surprised when the jury found him guilty.

PETERSON was unable to provide any additional information and the contact was terminated at approximately 10:50

*This report is property of Wisconsin DOJ Division of Criminal Investigation. Neither it or its contents may be disseminated to unauthorized personnel.*

Case 1:19-cv-00484-BHL   Filed 09/06/22   Page 88 of 122   Document 264-1

CHRM004763

Report Number:  **DCIR13280/40**

Report Date:

## Narrative - Continued

am.

13280 dci2intpeterson 09232003 lehmannaa

## Record Status Information

| | |
|---|---|
| Record Origination Operator: | **Conversion User (Criminal Investigation / Wisconsin DOJ Division of Criminal Investigation)** |
| Record Origination Date: | **04/12/2004 14:13** |
| Last Update Operator: | **Conversion User (Criminal Investigation / Wisconsin DOJ Division of Criminal Investigation)** |
| Last Update Date: | **04/12/2004 14:13** |

005583

*This report is property of Wisconsin DOJ Division of Criminal Investigation. Neither it or its contents may be disseminated to unauthorized personnel.*

Case 1:19-cv-00484-BHL   Filed 09/06/22   Page 89 of 122   Document 264-1

CHRM004764

# Wisconsin DOJ Division of Criminal Investigation
## ACISS Investigative Report

Report Number:    DCIR13280/41                                          Report Date:

**Primary Information**

| | |
|---|---|
| Report Number: | DCIR13280/41 |
| Type Of Report: | Investigative |
| Description: | dci2intvogel |
| Approval Status: | Approved |
| Approved Date: | 04/12/2004 |
| Approved By: | Conversion User (Criminal Investigation / Wisconsin DOJ Division of Criminal Investigation) |

**Narrative**

CASE ACTIVITY REPORT    Wisconsin Department of Justice
DJ-DCI-2 (Rev. 8/91)    DIVISION OF CRIMINAL INVESTIGATION

1.    Case Number

GC-13280
2.    Date

11/04/2003
3.    Case Title

STEVEN AVERY PROSECUTION
4.    Activity

Interview/ Denis Vogel
5.    Date of Activity

10/28/2003

6.
On 10/28/2003, Special Agents Amy A. Lehmann and Debra K. Strauss interviewed DENIS R. VOGEL. Also present during the interview were Assistant Attorney Generals Jennifer Nashold and Tom Fallon. The interview took place at the WI Department of Justice – Madison DCI office and began at approximately 1:00 p.m. In 1985, VOGEL was the Manitowoc County District Attorney and handled the prosecution of STEVEN AVERY. VOGEL provided the following information.

(It should be noted that prior to the interview of VOGEL he was given the opportunity to review the Manitowoc County District Attorney's Office case file of STEVEN AVERY).

*[handwritten annotations: "prior contact?", "Who prepped by lawyer?", "P5586", "? when"]*

VOGEL was the Manitowoc County District Attorney from January of 1977 until 1986. VOGEL then went into private practice in Minneapolis for a short time and is currently working for the law firm of Wheeler, Van Sickle & Anderson, S.C. located in Madison, WI.

VOGEL was asked when he first could remember hearing about the assault of PENNY BEERTNSEN. VOGEL stated that he could not remember if he was called about the assault on the day that it happened or the following day. However, VOGEL was contacted prior to a photo line-up being shown to BEERTNSEN. VOGEL stated that he could remember discussing with officers that they needed to make sure that the photographs were a fair representation of who BEERTNSEN was describing. VOGEL thought maybe he would have had this conversation with either TOM KOCOUREK or GENE KUSCHE. VOGEL said that it was possible that he saw the photographs before they were shown to BEERTNSEN but he was not sure.

VOGEL stated that he was not sure if he ever went to the hospital while BEERTNSEN was there being treated. VOGEL

This report is property of Wisconsin DOJ Division of Criminal Investigation. Neither it or its contents may be disseminated to unauthorized personnel.

Case 1:19-cv-00484-BHL   Filed 09/06/22   Page 90 of 122   Document 264-1

CHRM004765

# Wisconsin DOJ Division of Criminal Investigation

*ACISS Investigative Report*

Report Number:  DCIR13280/41

Report Date:

## Narrative - Continued

said that if someone said he was there then it was possible, although VOGEL could not recall that. VOGEL stated that it was not uncommon to be called by law enforcement to discuss cases, but it would have been uncommon for VOGEL to actually go to the hospital on this type of issue.

VOGEL stated that his first memory of the BEERTNSEN's was when he received a telephone call from TOM BEERTNSEN. TOM BEERTNSEN wanted to know if VOGEL was going to be the prosecutor on the case and TOM BEERTNSEN also wanted to know if it was possible for him to hire his own prosecutor. VOGEL told him that it was not possible.

VOGEL stated that he met with PENNY BEERTNSEN several times in his office. One such occasion would have been before she viewed the live line-up. VOGEL said that he could remember getting the public defender's office involved in the live line-up so that later there would be no disputing of how it was handled. VOGEL relayed that his conversation with PENNY BEERTNSEN about the live line-up would have consisted of telling her to come down to the sheriff's department to do it. It would not have included what she should expect or who was in the live line-up.

VOGEL was asked why there was both a photo line-up and a live line-up. VOGEL stated that he did not want BEERTNSEN challenged in court that her picking out AVERY in the courtroom was her first time identifying him. VOGEL was asked why AVERY was the only person that was in both the photo line-up and the live line-up. VOGEL stated that he did not know why that was. VOGEL stated that he knew that they tried to get bearded men for both line-ups.

VOGEL stated that he found out that AVERY was the suspect after the composite drawing was completed. VOGEL said that there was also someone at the hospital that believed that the description was that of AVERY.

VOGEL stated that the name STEVEN AVERY was not unfamiliar to him at the time of the attack on BEERTNSEN. VOGEL stated that AVERY had a history of animal abuse, assaulting a lady on the road, and burglary. VOGEL said that he assumed that the assault of the lady was sexually related. *— explain that?*

VOGEL was asked if he was aware of BEERTNSEN being shown a photograph of AVERY prior to being shown the full photo line-up. VOGEL stated that he was not aware of that.

VOGEL was asked if he was asked for or gave any guidance when it came to the composite drawing that was completed. VOGEL stated that he did not.

VOGEL said that it was his recollection that BEERTNSEN gave a verbal description of her assailant, a composite drawing was done and a detective made a comment that is sounded and looked like AVERY. VOGEL stated that it was then that a photo line-up was put together. BEERTNSEN then looked at the photographs and picked AVERY out as her assailant. *that nite?* *next morning?*

There was a decision made by Sheriff KOCOUREK to arrest AVERY and a search warrant was also drafted in front of Judge HAZELWOOD. Evidence was taken from the AVERY home, was inventoried and placed in a box.

VOGEL stated that in addition to the identification by BEERTNSEN, he focused on the physical evidence that was available for the case. VOGEL stated that the clothing that AVERY claimed to have worn on the day of the assault did not contain any cement dust. Two people from the State Crime Laboratory testified about the clothing at the trial. In addition there was a hair found that was consistent with AVERY's hair. *— which - cement dust?*

VOGEL relayed that there was not even a trace of cement powder on the clothing of AVERY's. VOGEL stated that he could not remember how certain pieces of clothing were linked to the day of the crime, but thought that AVERY must have pointed the clothes out. VOGEL stated that as far as ARLAND AVERY's observations, ARLAND would not have been in the position to see what was seized from the STEVEN AVERY home as it related to clothing. VOGEL was asked if he could recall any talk about LORI AVERY washing clothes that were possibly evidence. VOGEL stated that he could not recall that.

*This report is property of Wisconsin DOJ Division of Criminal Investigation. Neither it or its contents may be disseminated to unauthorized personnel.*

lehmannaa 04/13/2005 13:31

005585

Page 2 of 4

Case 1:19-cv-00484-BHL   Filed 09/06/22   Page 91 of 122   Document 264-1

CHRM004766

**Narrative - Continued**

VOGEL was asked who ran the STEVEN AVERY investigation. VOGEL stated that KOCOUREK and KUSCHE ran the investigation. VOGEL did not know if it was normal for the sheriff, KOCOUREK, to run an investigation or not. VOGEL stated that KOCOUREK might have gotten involved because there were no other investigators available.

VOGEL was asked if he received any pressure to prosecute the case against STEVEN AVERY. VOGEL stated that he did not.

*talk out zalaski?* [handwritten]

VOGEL was asked about the Preventative Detention that was placed on AVERY after he was arrested. VOGEL stated that was a new process and because of AVERY's criminal history VOGEL decided to place AVERY in Preventative Detention. VOGEL stated that he would have solely made that decision. VOGEL was asked if he was aware of specific directives that KOCOUREK left with the jail staff as it pertained to AVERY. VOGEL stated that he was not aware of that occurring.

*who ? 83- Vogel* [handwritten]

VOGEL was asked if he was aware of GREGORY ALLEN at the time of the BEERTNSEN attack. VOGEL thought that he probably knew of ALLEN as his office prosecuted him a couple years prior. VOGEL stated that he was also aware of other individuals who were previously involved in sexual assaults.

VOGEL was asked if other individuals besides AVERY were ever considered suspects in the case. VOGEL stated that at some point he must have spoken with someone about the concept of making sure that they had the right guy. VOGEL stated that he did not remember who he would have spoken to about that or how the conversation might have occurred. VOGEL said that he noticed while looking through the case file that an earlier conviction of ALLEN was in the AVERY case file. VOGEL said that someone must have brought it to his attention, however he could not recall any specific about how that might have happened.

*Kusche* [handwritten]    *how so Kocourek ?* [handwritten]

VOGEL stated that BEERTNSEN picked AVERY out of a line-up and was sure that AVERY was her assailant. VOGEL also felt very strong about the crime lab reports of no trace of cement residue on the clothing and also the hair that was retrieved was consistent with AVERY's hair. VOGEL stated that he was convinced that AVERY was the assailant in the case where BEERTNSEN was attacked. VOGEL was asked since it has now been proven that AVERY was not the assailant, did VOGEL have any explanation for the lack of cement dust on AVERY's clothing. VOGEL stated that he did not.

VOGEL was asked if he could recall any of his own staff talking to him about concerns that ALLEN was the better suspect. VOGEL stated that there might have been a discussion, but that he could not remember it. VOGEL stated that he and his office staff often had discussions about cases.

VOGEL stated that he would have never thought lightly about other possible suspects that were brought to his attention. Again VOGEL stated that BEERTNSEN was very sure that AVERY was the guy and she was never unsure of herself.

VOGEL was asked if he could remember thinking that ALLEN could not be a suspect because he had an alibi. VOGEL stated that he couldn't remember that. *Door County - Probation Office* [handwritten]

VOGEL was asked if he was informed about the arrest of AVERY prior to it happening. VOGEL stated that he could not remember but that it was possible that he discussed things like Miranda and the suspect's statement with the sheriff.

VOGEL was asked if the sheriff's department conducted a canvass of the area where BEERTNSEN was attacked. VOGEL stated that he was not sure. VOGEL said that he knew the detectives conducted timed drives from the crime scene to other locations to determine if there was enough time for AVERY to commit the crimes he was charged with. VOGEL was asked if he could remember the defense requesting copies of reports relating to a canvass that was conducted. VOGEL stated that he could not.

VOGEL was asked about his working relationship with the Manitowoc Police Department in 1985. VOGEL stated that he

*This report is property of Wisconsin DOJ Division of Criminal Investigation. Neither it or its contents may be disseminated to unauthorized personnel.*

lehmannaa 04/13/2006 13:31                                              Page 3 of 4

005586

Case 1:19-cv-00484-BHL   Filed 09/06/22   Page 92 of 122   Document 264-1

CHRM004767

# Wisconsin DOJ Division of Criminal Investigation

*ACISS Investigative Report*

Report Number: DCIR13280/41                                    Report Date:

had a good working relationship with them. VOGEL stated that he was not aware that the police department was surveilling ALLEN at the time of the assault. VOGEL said that he did not know that until he read it in the newspaper.

VOGEL stated that over the years the relationship between the sheriff's department and the police department varied depending on the time period and the personalities involved.

VOGEL was asked if he had to ask the sheriff's department for follow-up during the AVERY investigation. VOGEL stated that he could only remember requesting a test on some vegetation.

As it related to discovery, VOGEL stated that he had an open file policy and that was true for every case. VOGEL stated that he withheld nothing. VOGEL relayed that he had a very good relationship with all the public defenders and that he always gave them access to what he had collected as part of the case file. VOGEL said that he would not be able to remember if he provided a complete copy or if the public defender's office were allowed to review the original case file.

VOGEL was asked if he ever had any problems getting police reports from the sheriff's department in regards to the AVERY investigation. VOGEL stated that he did not think that he had any problems and as far as he knew he received reports on all activities that were conducted.

VOGEL was asked if any investigators ever approached him with other possible suspects. VOGEL stated that he could not remember that happening. VOGEL said he believed that AVERY was the man who committed the crimes and did not seriously think it could have been anyone else.

VOGEL stated that he did not get involved in the day to day details of the investigation and as a result would not have known that the police department was watching ALLEN. VOGEL stated that he could not remember thinking that ALLEN was a possible suspect. ALLEN never struck him as a big time criminal, just someone who had a couple of exposure cases. VOGEL said that if there were any cops with a different perspective, he did not know about it. VOGEL stated that if he had thought AVERY had not committed the crime he would not have gone forward with the prosecution of him.

VOGEL was asked who had spoken to about the AVERY investigation since AVERY was released from prison. VOGEL stated that he spoke to TOM KOCOUREK briefly a week or two ago. VOGEL said that he just wanted to know if the reporters had contacted KOCOUREK. VOGEL also spoke with DA MARK ROEHR and ADA MIKE GRIESBACH before AVERY was released. VOGEL stated that he also made contact with JIM FITZGERALD and JIM BOLGERT to see if the press had contacted either of them.

The interview of VOGEL was terminated at approximately 2:15 p.m.

13280 dci2intvogel 10282003 lehmannaa

| Record Status Information | |
|---|---|
| Record Origination Operator: | Conversion User (Criminal Investigation / Wisconsin DOJ Division of Criminal Investigation) |
| Record Origination Date: | 04/12/2004 14:13 |
| Last Update Operator: | Conversion User (Criminal Investigation / Wisconsin DOJ Division of Criminal Investigation) |
| Last Update Date: | 04/12/2004 14:13 |

This report is property of Wisconsin DOJ Division of Criminal Investigation. Neither it or its contents may be disseminated to unauthorized personnel.

CHRM004768

# Wisconsin DOJ Division of Criminal Investigation

## ACISS Investigative Report

Report Number: DCIR13280/42                    Report Date:

### Primary Information

| | |
|---|---|
| Report Number: | DCIR13280/42 |
| Type Of Report: | Investigative |
| Description: | dci2legalconsent |
| Approval Status: | Approved |
| Approved Date: | 04/12/2004 |
| Approved By: | Conversion User (Criminal Investigation / Wisconsin DOJ Division of Criminal Investigation) |

### Narrative

CASE ACTIVITY REPORT    Wisconsin Department of Justice
DJ-DCI-2 (Rev. 8/91)    DIVISION OF CRIMINAL INVESTIGATION

1.    Case Number

GC-13280
2.    Date

09/30/2003
3.    Case Title

STEVEN AVERY PROSECUTION
4.    Activity

Consent/Steven Avery
5.    Date of Activity

09/23/2003

6.
On 09/23/2003, Special Agents Amy A. Lehmann and Debra K. Strauss met with STEVEN A. AVERY, DOB: 07/09/62. The meeting took place at AVERY's residence, 12930 Avery Road, Two Rivers, WI. S/A's presented AVERY with an Authorization for Release of Legal Information for his signature. S/A's explained to AVERY the purpose of the consent form and allowed AVERY to read it himself. AVERY then signed the consent form.

The Authorization for Release of Legal Information form is attached to this report.


13280 dci2legalconsent 09232003 lehmannaa

### Record Status Information

| | |
|---|---|
| Record Origination Operator: | Conversion User (Criminal Investigation / Wisconsin DOJ Division of Criminal Investigation) |
| Record Origination Date: | 04/12/2004 14:13 |
| Last Update Operator: | Conversion User (Criminal Investigation / Wisconsin DOJ Division of Criminal Investigation) |
| Last Update Date: | 04/12/2004 14:13 |

*This report is property of Wisconsin DOJ Division of Criminal Investigation. Neither it or its contents may be disseminated to unauthorized personnel.*

Case 1:19-cv-00484-BHL   Filed 09/06/22   Page 94 of 122   Document 264-1

CHRM004769

This report is property of Wisconsin DOJ Division of Criminal Investigation. Neither it or its contents may be disseminated to unauthorized personnel.

Case 1:19-cv-00484-BHL   Filed 09/06/22   Page 95 of 122   Document 264-1

CHRM004770

Report Number:   DCIR13280/43                                        Report Date:

**Primary Information**

| | |
|---|---|
| Report Number: | DCIR13280/43 |
| Type Of Report: | Investigative |
| Description: | dci2manitowocclerkphoto |
| Approval Status: | Approved |
| Approved Date: | 04/12/2004 |
| Approved By: | Conversion User (Criminal Investigation / Wisconsin DOJ Division of Criminal Investigation) |

**Narrative**

CASE ACTIVITY REPORT    Wisconsin Department of Justice
DJ-DCI-2 (Rev. 8/91)    DIVISION OF CRIMINAL INVESTIGATION

1.   Case Number

   GC-13280
2.   Date

   10/04/2003
3.   Case Title

   STEVEN AVERY PROSECUTION
4.   Activity

   Receipt of Document/Manitowoc County Clerk of Courts
5.   Date of Activity

   10/02/2003

6.
On 10/01/2003, Special Agents Amy A. Lehmann and Debra K. Strauss went to the Manitowoc County Clerk of Courts to attempt to obtain any documents showing the photo line-up, which was presented to PENNY BEERNTSEN in 1985.

The Clerk of Courts had in their possession from the STEVEN AVERY case file a large blown up picture containing the pictures of the nine individuals that BEERNTSEN was shown. Included in the photo line-up was STEVEN AVERY. The clerk photocopied the document that was in the AVERY file and provided that copy to special agents.

Attached to this report is a copy of that photocopy provided by the Manitowoc County Clerk of Courts office.

13280 dci2manitowocclerkphoto 10022003 lehmannaa

**Record Status Information**

| | |
|---|---|
| Record Origination Operator: | Conversion User (Criminal Investigation / Wisconsin DOJ Division of Criminal Investigation) |
| Record Origination Date: | 04/12/2004 14:13 |
| Last Update Operator: | Conversion User (Criminal Investigation / Wisconsin DOJ Division of Criminal Investigation) |

*This report is property of Wisconsin DOJ Division of Criminal Investigation. Neither it or its contents may be disseminated to unauthorized personnel.*

Case 1:19-cv-00484-BHL   Filed 09/06/22   Page 96 of 122   Document 264-1

CHRM004771

**Record Status Information - Continued**

| Last Update Date: | 04/12/2004 14:13 |
|---|---|

005591

*This report is property of Wisconsin DOJ Division of Criminal Investigation. Neither it or its contents may be disseminated to unauthorized personnel.*

Case 1:19-cv-00484-BHL   Filed 09/06/22   Page 97 of 122   Document 264-1

CHRM004772

# Wisconsin DOJ Division of Criminal Investigation

## ACISS Investigative Report

Report Number: DCIR13280/44

Report Date:

### Primary Information

| | |
|---|---|
| Report Number: | DCIR13280/44 |
| Type Of Report: | Investigative |
| Description: | dci2manitowocda |
| Approval Status: | Approved |
| Approved Date: | 04/12/2004 |
| Approved By: | Conversion User (Criminal Investigation / Wisconsin DOJ Division of Criminal Investigation) |

### Narrative

CASE ACTIVITY REPORT    Wisconsin Department of Justice
DJ-DCI-2 (Rev. 8/91)    DIVISION OF CRIMINAL INVESTIGATION

1.   Case Number

GC-13280
2.   Date

09/30/2003
3.   Case Title

STEVEN AVERY PROSECUTION
4.   Activity

Contact with Manitowoc County District Attorney
5.   Date of Activity

09/22/2003

6.
On 09/22/2003, Special Agent Amy A. Lehmann met with Manitowoc County District Attorney Mark Rohrer and Assistant District Attorney (ADA) Michael Griesbach. ADA Griesbach explained that he had received a telephone call from DENNIS VOGEL, former Manitowoc County District Attorney, and had documented the content of the conversation between himself and VOGEL. ADA Griesbach provided S/A Lehmann with a memo outlining the conversation that took place.

According to ADA Griesbach, VOGEL inquired as to if there was anything in the STEVEN AVERY file regarding GREGORY ALLEN. VOGEL also asked several questions pertaining to the hair on which ALLEN's DNA was identified.

A copy of the memo is attached to this report.


13280 dci2Manitowocda 09222003 lehmannaa

### Record Status Information

| | |
|---|---|
| Record Origination Operator: | Conversion User (Criminal Investigation / Wisconsin DOJ Division of Criminal Investigation) |
| Record Origination Date: | 04/12/2004 14:13 |
| Last Update Operator: | Conversion User (Criminal Investigation / Wisconsin DOJ Division of Criminal Investigation) |

*This report is property of Wisconsin DOJ Division of Criminal Investigation. Neither it or its contents may be disseminated to unauthorized personnel.*

**Record Status Information - Continued**

Last Update Date:          04/12/2004 14:13

005593

*This report is property of Wisconsin DOJ Division of Criminal Investigation. Neither it or its contents may be disseminated to unauthorized personnel.*

CHRM004774

# Wisconsin DOJ Division of Criminal Investigation

*ACISS Investigative Report*

Report Number:    DCIR13280/45                                                              Report Date:

## Primary Information

| | |
|---|---|
| Report Number: | DCIR13280/45 |
| Type Of Report: | Investigative |
| Description: | dci2manitowocpdrecords |
| Approval Status: | Approved |
| Approved Date: | 04/12/2004 |
| Approved By: | Conversion User (Criminal Investigation / Wisconsin DOJ Division of Criminal Investigation) |

## Narrative

CASE ACTIVITY REPORT    Wisconsin Department of Justice
DJ-DCI-2 (Rev. 8/91)    DIVISION OF CRIMINAL INVESTIGATION

1.   Case Number

  GC-13280
2.   Date

  10/04/2003
3.   Case Title

  STEVEN AVERY PROSECUTION
4.   Activity

  Receipt of Documents/Manitowoc Police Department
5.   Date of Activity

  10/02/2003

6.
On 10/02/2003, Special Agents Amy A. Lehmann and Debra K. Strauss met with Deputy Chief Tom Bergner with the City of Manitowoc Police Department. At that time Deputy Chief Bergner provided special agents with copies of documents pertaining to an incident noted as "Suspicious Person/Allen" on 03/28/1986. The incident involved GREGORY ALLEN observing women in changing stalls at the Prange-Way and assaulting an officer.

Chief Deputy Bergner also provided a copy of a report that he had written on 09/09/2003. The report stated that TOM BEERNTSEN called to say that he believed STEVEN AVERY was going to be released from prison. For that reason the BEERNTSEN's were going out of town and requested extra checks of his house and neighborhood.

Copies of both reports are attached to this report.

13280 dci2manitowocpdrecords 10022003 lehmannaa

## Classification Information

| | |
|---|---|
| Record Origination Operator: | Conversion User (Criminal Investigation / Wisconsin DOJ Division of Criminal Investigation) |
| Record Origination Date: | 04/12/2004 14:13 |
| Last Update Operator: | Conversion User (Criminal Investigation / Wisconsin DOJ Division of Criminal Investigation) |

*This report is property of Wisconsin DOJ Division of Criminal Investigation. Neither it or its contents may be disseminated to unauthorized personnel.*

CHRM004775

Report Number:     **DCIR13280/45**                                    Report Date:

| Record Status Information - Continued | |
|---|---|
| Last Update Date: | 04/12/2004 14:13 |

005595

*This report is property of Wisconsin DOJ Division of Criminal Investigation. Neither it or its contents may be disseminated to unauthorized personnel.*

Case 1:19-cv-00484-BHL   Filed 09/06/22   Page 101 of 122   Document 264-1

CHRM004776

# Wisconsin DOJ Division of Criminal Investigation

## ACISS Investigative Report

Report Number: DCIR13280/46

Report Date:

| | |
|---|---|
| Report Number: | DCIR13280/46 |
| Type Of Report: | Investigative |
| Description: | dci2msoreports1 |
| Approval Status: | Approved |
| Approved Date: | 04/12/2004 |
| Approved By: | Conversion User (Criminal Investigation / Wisconsin DOJ Division of Criminal Investigation) |

**Narrative**

CASE ACTIVITY REPORT    Wisconsin Department of Justice
DJ-DCI-2 (Rev. 8/91)    DIVISION OF CRIMINAL INVESTIGATION

1.    Case Number

GC-13280
2.    Date

09/25/2003
3.    Case Title

STEVEN AVERY PROSECUTION
4.    Activity

Receipt of Documents/Manitowoc Sheriff's Department
5.    Date of Activity

09/22/2003

6.
On 09/22/2003, Special Agent Debra K. Strauss received various reports from the Manitowoc Sheriff's Department.
These reports included:

Reports of the incident involving STEVEN AVERY and SANDRA MORRIS in January of 1995.
Reports of an abduction and sexual assault in Marinette County in which AVERY was looked at as a potential suspect in
1985. ~ Ewing w Dvorak + Mrs. Marcelle - Neighbors - Steven - Bunsey Morris
Reports concerning a search warrant at the residence of GREGORY ALLEN and JOANNE LITERSKI on 11/15/1983
involving stolen property.
Reports concerning GREGORY ALLEN's involvement with a homicide in the State of North Carolina n 1983.

Attached to this report are copies of the Manitowoc County Sheriff's Department's reports.

13280 dci2msoreports1 09222003 lehmannaa

**Record Status Information**

| | |
|---|---|
| Record Origination Operator: | Conversion User (Criminal Investigation / Wisconsin DOJ Division of Criminal Investigation) |
| Record Origination Date: | 04/12/2004 14:13 |

*This report is property of Wisconsin DOJ Division of Criminal Investigation. Neither it or its contents may be disseminated to unauthorized personnel.*

lehmannaa 04/13/2005 13.31

**005596**

Page 1 of 2

CHRM004777

# Wisconsin DOJ Division of Criminal Investigation

*ACISS Investigative Report*

Report Number: **DCIR13280/46**

Report Date:

| Record Status Information - Continued | |
|---|---|
| Last Update Operator: | **Conversion User (Criminal Investigation / Wisconsin DOJ Division of Criminal Investigation)** |
| Last Update Date: | **04/12/2004 14:13** |

*This report is property of Wisconsin DOJ Division of Criminal Investigation. Neither it or its contents may be disseminated to unauthorized personnel.*

Case 1:19-cv-00484-BHL Filed 09/06/22 Page 103 of 122 Document 264-1

CHRM004778

# Wisconsin DOJ Division of Criminal Investigation

*ACISS Investigative Report*

Report Number: DCIR13280/47    Report Date:

**Primary Information**

| | |
|---|---|
| Report Number: | DCIR13280/47 |
| Type Of Report: | Investigative |
| Description: | dci2tworiverscontact |
| Approval Status: | Approved |
| Approved Date: | 04/12/2004 |
| Approved By: | Conversion User (Criminal Investigation / Wisconsin DOJ Division of Criminal Investigation) |

**Narrative**

CASE ACTIVITY REPORT    Wisconsin Department of Justice
DJ-DCI-2 (Rev. 8/91)    DIVISION OF CRIMINAL INVESTIGATION

1. Case Number

   GC-13280
2. Date

   09/30/2003
3. Case Title

   STEVEN AVERY PROSECUTION
4. Activity

   Contact with the Two Rivers Police Department
5. Date of Activity

   09/23/2003

6.
On 09/24/2003, Special Agents Amy A. Lehmann and Debra K. Strauss went to the Two Rivers Police Department to make an inquiry. S/A's spoke with Captain Dave Hartman, as the Chief of Police was unavailable at the time. S/A's asked Captain Hartman, when a request is made by another department or individual for Two Rivers Police Department Reports is that request maintained in a log or other format. If so, the time period that S/A's were interested in was 1985. Captain Hartman stated that at that time there was no record kept of who requested copies of records, however, now the Two Rivers Police Department does do that.

Captain Hartman stated that there was no one currently working at the Two Rivers Police Department that was also working for the department in 1985, except the current Chief of Police, who was at that time a patrol officer.

13280 dci2tworiverscontact 09242003 lehmannaa

**Record Status Information**

| | |
|---|---|
| Record Origination Operator: | Conversion User (Criminal Investigation / Wisconsin DOJ Division of Criminal Investigation) |
| Record Origination Date: | 04/12/2004 14:13 |

*This report is property of Wisconsin DOJ Division of Criminal Investigation. Neither it or its contents may be disseminated to unauthorized personnel.*

CHRM004779

| Record Status Information - Continued | |
|---|---|
| Last Update Operator: | Conversion User (Criminal Investigation / Wisconsin DOJ Division of Criminal Investigation) |
| Last Update Date: | 04/12/2004 14:13 |

005599

*This report is property of Wisconsin DOJ Division of Criminal Investigation. Neither it or its contents may be disseminated to unauthorized personnel.*

Case 1:19-cv-00484-BHL   Filed 09/06/22   Page 105 of 122   Document 264-1

CHRM004780

**Case Information**

| | |
|---|---|
| Report Number: | DCIR13280/48 |
| Type Of Report: | Investigative |
| Description: | dci3 steven avery prosecution |
| Approval Status: | Approved |
| Approved Date: | 04/12/2004 |
| Approved By: | Conversion User (Criminal Investigation / Wisconsin DOJ Division of Criminal Investigation) |

**Narrative**

CASE REPORT
DJ-DCI-3 (8/91)

1. Case Number

   GC-13280

   Wisconsin Department of Justice
   DIVISION OF CRIMINAL INVESTIGATION
2. Date

   12/26/2003

3. Title of Case

   STEVEN AVERY PROSECUTION
4. Character of Case

   Case Review
5. Report Made By

   Debra K. Strauss
6. Case Status

   Recommend Termination
7. Investigative Period

   09/22/2003 Through 12/26/2003

8. Synopsis

During September 2003, Manitowoc County District Attorney Mark Rohrer requested the Wisconsin Department of Justice, Division of Criminal Investigation to evaluate the facts and circumstances of the 1985 investigation and prosecution of STEVEN AVERY. AVERY was convicted of attempted first degree murder, first degree sexual assault and false imprisonment. In September 2003, 18 years after AVERY commenced his prison term, DNA testing exonerated AVERY and implicated another person, GREGORY ALLEN. The Wisconsin Department of Justice, Division of Criminal Investigation reviewed this investigation and prosecution to assess what, if any, errors occurred during the investigation and subsequent prosecution of AVERY.

This review was completed and a 15 page summary was sent to D/A Rohrer regarding the results of the review.

COMMENTS AND

005600

*This report is property of Wisconsin DOJ Division of Criminal Investigation. Neither it or its contents may be disseminated to unauthorized personnel.*

CHRM004781

# Wisconsin DOJ Division of Criminal Investigation

*ACISS Investigative Report*

## (Conv.) Continued

### RECOMMENDATIONS

Since DCI's role in this review has been completed, it is recommended that this case be terminated.

dp 12/29/03
13280 dci3 steven avery prosecution 12262003 straussdk

## Record Status Information

| | |
|---|---|
| Record Origination Operator: | Conversion User (Criminal Investigation / Wisconsin DOJ Division of Criminal Investigation) |
| Record Origination Date: | 04/12/2004 14:13 |
| Last Update Operator: | Conversion User (Criminal Investigation / Wisconsin DOJ Division of Criminal Investigation) |
| Last Update Date: | 04/12/2004 14:13 |

005601

*This report is property of Wisconsin DOJ Division of Criminal Investigation. Neither it or its contents may be disseminated to unauthorized personnel.*

CHRM004782

# Wisconsin DOJ Division of Criminal Investigation

*ACISS Investigative Report*

Report Number: DCIR13280/5                                                                 Report Date:

**Primary Information**

| | |
|---|---|
| Report Number: | DCIR13280/5 |
| Type Of Report: | Investigative |
| Description: | dci2 int dvorak |
| Approval Status: | Approved |
| Approved Date: | 04/12/2004 |
| Approved By: | Conversion User (Criminal Investigation / Wisconsin DOJ Division of Criminal Investigation) |

**Narrative**

CASE ACTIVITY REPORT   Wisconsin Department of Justice
DJ-DCI-2 (Rev. 8/91)   DIVISION OF CRIMINAL INVESTIGATION

1.   Case Number

   GC-13280
2.   Date

   09/30/2003
3.   Case Title

   STEVEN AVERY PROSECUTION
4.   Activity

   Interview: DVORAK
5.   Date of Activity

   09/25/2003

6.

On Thursday, September 25, 2003, at approximately 10:10 a.m., S/A Debra K. Strauss interviewed:

NAME:        JUDITH A. DVORAK
ADDRESS:     6131 Old County Y, Maribel, WI 54227
HOME PHONE:  920-755-4395
DOB:         01/10/1947
EMPLOYMENT:  Wackenhut Security/Point Beach Nuclear Plant, Two Rivers, WI

This interview was conducted at DVORAK's residence. The purpose of this interview was to obtain information DVORAK may have regarding her involvement with the PENNY BEERNTSEN assault, on July 29, 1985 and the subsequent arrest and conviction of STEVEN AVERY.

DVORAK provided the following information:

DVORAK said she worked for the Manitowoc County Sheriff's Department from 1982 to 1989.
In July 1985, DVORAK was working as a part-time sheriff's deputy. DVORAK said that she was one of the few female officers in the county. After the assault of BEERNTSEN, Sheriff Tom Kocourek contacted DVORAK and asked DVORAK to go to the hospital and take a statement from BEERNTSEN.

DVORAK told S/A Strauss that she went to the hospital and was there for BEERNTSEN's physical examination.

*This report is property of Wisconsin DOJ Division of Criminal Investigation. Neither it or its contents may be disseminated to unauthorized personnel.*

CHRM004783

Narrative - Continued

BEERNTSEN was present when the emergency room physicians took the pubic combings and when the sheriff's department took the photos of BEERNTSEN's injuries. DVORAK said that she stayed in the room with BEERNTSEN the entire time she was in the emergency room because Sheriff Kocourek wanted a female in the room with BEERNTSEN.

DVORAK said that when she took the statement from BEERNTSEN, there was another detective in the room with her. DVORAK was unable to recall who this other person was. DVORAK said the interview with BEERNTSEN was a joint interview between herself and the other detective. DVORAK believed the other detective may have completed the report but she was not sure.

*[handwritten: who? Beck Kolanczyk]*

DVORAK did not think she asked many questions during the interview. Instead, DVORAK said she was there to provide comfort to the victim. DVORAK said she remembered staying at the hospital with BEERNTSEN for a couple of hours although BEERNTSEN stayed in the hospital overnight. DVORAK remembered that BEERNTSEN spent the night at the hospital because the following day, DVORAK went to see BEERNTSEN in her hospital room. DVORAK took BEERNTSEN some flowers out of her garden.

Instead of asking BEERNTSEN to provide a written statement, DVORAK thinks it is possible BEERNTSEN gave a taped statement. DVORAK did not think a written statement was asked for on the day of the assault because of BEERNTSEN's physical and mental condition. *[handwritten: Cm Nom - Beerntsen]*

In July 1985, DVORAK said she lived directly across the street from STEVEN AVERY. DVORAK said she was familiar with AVERY but they were not friends. DVORAK also stated that AVERY had been in and out of jail several times. DVORAK described AVERY as such a dirty man that every time he would come to the jail, the sheriff deputies would have to make AVERY take a shower. DVORAK also stated that when she helped execute the search warrant on AVERY's house the night of the assault, AVERY's house was also very dirty.

Within a couple of days after BEERNTSEN's assault, Sheriff Kocourek sent DVORAK to BEERNTSEN's house to tap BEERNTSEN's phone. This was done because the BEERNTSEN's were receiving threatening phone calls at their home and the BEERNTSEN's wanted to have their phone tapped. DVORAK said that she went to the BEERNTSEN's home with the investigator that she had been at the hospital with. DVORAK was still unable to recall who this investigator was. DVORAK described their conversation with BEERNTSEN that day as strictly casual. DVORAK said it is possible that this conversation may have been tape recorded but DVORAK was unable to recall for sure.

S/A Strauss asked DVORAK when AVERY became a suspect for this assault. DVORAK responded that after she and the detectives had gone through the initial interview with BEERNTSEN and BEERNTSEN provided a physical description of her assailant, AVERY became a suspect. DVORAK thought AVERY became a suspect based on BEERNTSEN's physical description.

S/A Strauss asked DVORAK if she was in the room when BEERNTSEN reviewed the photo lineup. DVORAK said she was not.

DVORAK was then asked if she was present when Gene Kusche created the composite drawing. DVORAK responded that she could not recall if she was in the room when this occurred or not. DVORAK said she has seen the drawing completed by Kusche but she could not remember if she saw the drawing the night of the assault or the following day.

DVORAK said that when she saw the composite drawing prepared by Kusche, she thought the assailant looked like AVERY. S/A Strauss asked DVORAK if she thought the photo looked like GREGORY ALLEN. DVORAK said that she did not know who ALLEN was. DVORAK continued to tell S/A Strauss that until S/A Strauss just mentioned the name, she had never heard the name GREG ALLEN before.

When DVORAK left the hospital the night of the assault, DVORAK went to help with the search warrant of AVERY's house. DVORAK said that even though she helped with the execution of the search warrant, she was not part of the arresting team that arrested AVERY. DVORAK told S/A Strauss that this was the first time she had ever been in the AVERY house even though she lived right across the street from them.

*This report is property of Wisconsin DOJ Division of Criminal Investigation. Neither it or its contents may be disseminated to unauthorized personnel.*

Case 1:19-cv-00484-BHL   Filed 09/06/22   Page 109 of 122   Document 264-1

CHRM004784

**Narrative - Continued**

The following day, July 30, 1985, DVORAK and Detective Al Kolanchek took a towel, some clothes, a pair of shoes, the pubic combings and all of the other evidence seized regarding this case to the crime lab.

DVORAK described AVERY as an abusive man. DVORAK said that she did not know if AVERY was abusive towards his wife but DVORAK stated that she has observed AVERY chain his son with a metal chain in the front yard. DVORAK said this was AVERY's way of babysitting his children. It did not come as a surprise that AVERY could commit a crime such as this. DVORAK said this assault did fit AVERY's pattern of previous crimes and the "profile" was there.

S/A Strauss told DVORAK that on a couple of different occasions, BEERNTSEN had been asked if her assailant had greasy hands. S/A Strauss asked DVORAK why she thought this question was asked of BEERNTSEN. DVORAK responded that AVERY's father had a junkyard and this question may have been asked because AVERY was always around cars and always seemed to have dirty, greasy hands.

S/A Strauss asked DVORAK if she ever had any doubts as to whether or not AVERY had committed this crime. DVORAK said she could not remember.

S/A Strauss then asked DVORAK if she had any other involvement in this investigation. DVORAK responded that she was involved in the trial run to the Shopko in Green Bay. DVORAK recalled that as a result of this trial run, it was determined that the window of opportunity was there for AVERY to have gone to the Shopko in Green Bay and still have been able to commit this crime. S/A Strauss asked DVORAK if there was any pressure on them by anyone within the sheriff's department to make this trial run work in such a way that someone could testify that this window of opportunity was there for AVERY. DVORAK responded she did not think there was any pressure in any way.

DVORAK told S/A Strauss that she would not describe her relationship with AVERY as neighborly. DVORAK knew of AVERY because he lived across the street from DVORAK. Anything DVORAK knew about the AVERY family, DVORAK knew because of personal observations.

DVORAK described AVERY as a very vindictive man. DVORAK said that AVERY was not nice to other inmates when he was in jail and AVERY always had a "look in his eye" that made her uncomfortable. DVORAK has always had a feeling that AVERY could not be trusted.

As the interview concluded, DVORAK stated that she believed to the best of the sheriff's department's ability, this investigation was conducted properly, all of the evidence that was obtained indicated that AVERY had committed the assault and AVERY was certainly capable of committing such a crime.

DVORAK had no additional information and the interview concluded at approximately 11:00 a.m.

dp 10/01/03
13280 dci2 int dvorak 09252003 straussdk

**Record Status Information**

| | |
|---|---|
| Record Origination Operator: | Conversion User (Criminal Investigation / Wisconsin DOJ Division of Criminal Investigation) |
| Record Origination Date: | 04/12/2004 14:13 |
| Last Update Operator: | Conversion User (Criminal Investigation / Wisconsin DOJ Division of Criminal Investigation) |
| Last Update Date: | 04/12/2004 14:13 |

*This report is property of Wisconsin DOJ Division of Criminal Investigation. Neither it or its contents may be disseminated to unauthorized personnel.*

CHRM004785

# Wisconsin DOJ Division of Criminal Investigation

*ACISS Investigative Report*

**Primary Information**

| | |
|---|---|
| Report Number: | DCIR13280/6 |
| Type Of Report: | Investigative |
| Description: | dci2 int jadowski |
| Approval Status: | Approved |
| Approved Date: | 04/12/2004 |
| Approved By: | Conversion User (Criminal Investigation / Wisconsin DOJ Division of Criminal Investigation) |

**Narrative**

CASE ACTIVITY REPORT     Wisconsin Department of Justice
DJ-DCI-2 (Rev. 8/91)     DIVISION OF CRIMINAL INVESTIGATION

1.   Case Number

   GC-13280
2.   Date

   09/30/2003
3.   Case Title

   STEVEN AVERY PROSECUTION
4.   Activity

   Interview: JADOWSKI
5.   Date of Activity

   09/23/2003

6.

On September 23, 2003, S/A Debra K. Strauss and S/A Amy A. Lehmann interviewed LEO P. JADOWSKI. This interview was conducted at JADOWSKI's business, LB Resale and Pawn, 1022 S. 10th Street, Manitowoc, WI, 920-682-7777. The purpose of this interview was to obtain information JADOWSKI may have regarding the PENNY BEERNTSEN assault and the subsequent arrest and conviction of STEVEN AVERY.

JADOWSKI provided the following information:

JADOWSKI stated he worked for the Manitowoc County Sheriff's Department for approximately 26 years. JADOWSKI retired 11 years ago. During July, 1985, JADOWSKI was working as a detective. JADOWSKI stated he did not have anything to do with the investigation of the BEERNTSEN assault or the AVERY arrest.

JADOWSKI told the Special Agents that a good friend of his, JIM GOSPODAREK, was one of the lead investigators on the case (GOSPODAREK has since passed away).

JADOWSKI said that after AVERY was convicted, he and GOSPODAREK were talking about the case. GOSPODAREK told JADOWSKI that GOSPODAREK thought they were sending an innocent man to prison and that GOSPODAREK did not think AVERY was the man who committed the assault. GOSPODAREK told JADOWSKI there was another man in the Sheboygan area who looked a lot like AVERY. GOSPODAREK told JADOWSKI that he thought the guy in Sheboygan was the person who committed this crime. The man in Sheboygan had been investigated and it was determined this person had a criminal history of rape and he also looked a lot like AVERY. GOSPODAREK also had concerns because

*This report is property of Wisconsin DOJ Division of Criminal Investigation. Neither it or its contents may be disseminated to unauthorized personnel.*

**005605**

lehmannaa 04/13/2005 13:31

CHRM004786

# Wisconsin DOJ Division of Criminal Investigation

## *ACISS Investigative Report*

Report Number:    DCIR13280/6                                          Report Date:

Narrative - Continued

AVERY had alibi witnesses as to where AVERY was at the time the crime was committed.

JADOWSKI described GOSPODAREK as a person who had just made the rank of detective and GOSPODAREK was not going to do anything to "buck the system."

JADOWSKI had no additional information and the contact was at that time terminated.

alk 10/01/03
13280 dci2 int jadowski 09232003 straussdk.doc

*(handwritten) Consistent w/ Beilke testimony*

*(handwritten) Asked about what Arland said of him? After Arland interviewed?*

| Record Status Information | |
|---|---|
| Record Origination Operator: | Conversion User (Criminal Investigation / Wisconsin DOJ Division of Criminal Investigation) |
| Record Origination Date: | 04/12/2004 14:13 |
| Last Update Operator: | Conversion User (Criminal Investigation / Wisconsin DOJ Division of Criminal Investigation) |
| Last Update Date: | 04/12/2004 14:13 |

*This report is property of Wisconsin DOJ Division of Criminal Investigation. Neither it or its contents may be disseminated to unauthorized personnel.*

CHRM004787

# Wisconsin DOJ Division of Criminal Investigation

*ACISS Investigative Report*

| | |
|---|---|
| Report Number: | DCIR13280/7 |
| Type Of Report: | Investigative |
| Description: | dci2 int mertens |
| Approval Status: | Approved |
| Approved Date: | 04/12/2004 |
| Approved By: | Conversion User (Criminal Investigation / Wisconsin DOJ Division of Criminal Investigation) |

CASE ACTIVITY REPORT    Wisconsin Department of Justice
DJ-DCI-2 (Rev. 8/91)    DIVISION OF CRIMINAL INVESTIGATION

1.    Case Number

GC-13280
2.    Date

09/30/2003
3.    Case Title

STEVEN AVERY PROSECUTION
4.    Activity

Interview: MERTENS
5.    Date of Activity

09/23/2003

6.

On the morning of September 23, 2003, S/A Debra K. Strauss and S/A Amy A. Lehmann interviewed:

NAME:    JILL A. MERTENS
DOB:    10/20/1958
ADDRESS:    1070 S. 39th Street, Apt. B, Manitowoc, WI
HOME PHONE:    920-682-6384
WORK PHONE:    920-683-4309
EMPLOYMENT:    Case Manager, Child Support Agency, Manitowoc County

The purpose of this interview was to obtain information MERTENS may have regarding the arrest and conviction of STEVEN A. AVERY, DOB 07/09/1963, in July, 1985.

MERTENS provided the following information:

From 1979 to 1991, MERTENS worked in the Manitowoc County District Attorney's office. In July, 1985, MERTENS was working in the Manitowoc County District Attorney's office as either a legal secretary or paralegal.

MERTENS told the Special Agents that while she was working in the district attorney's office, she was working near BEVERLY BADKER and BRENDA PETERSEN. MERTENS recalls that neither herself, BADKER nor PETERSEN thought AVERY was the one who committed this crime because there were too many inconsistencies. For example, PETERSEN used to comment on how the victim stated her assailant's hair was curly and AVERY had straight hair. Even though the

*This report is property of Wisconsin DOJ Division of Criminal Investigation. Neither it or its contents may be disseminated to unauthorized personnel.*

CHRM004788

**Narrative Continued**

prosecution stated the reason AVERY's hair was so curly was because of the humidity, neither MERTENS, PETERSEN nor BADKER felt this was a reasonable answer. Instead, they thought a person's hair would go more straight in the humidity instead of curly.

MERTENS said they also had concerns about the timeframe that was established by the detectives. More specifically, they were concerned about the detectives' statement that AVERY would have had time to commit the assault and then drive to the Shopko in Green Bay. MERTENS said when the detectives made this trial run, the detectives did not have to deal with several small children, including two newborns. MERTENS said that, based on the timeframe, there was no way AVERY could have went to the Shopko in Green Bay and still have committed this crime.

MERTENS was then asked how it came to be that she thought GREGORY A. ALLEN, DOB 01/17/1954, might have committed this crime. MERTENS said she does not remember how it came to be that she thought ALLEN may have been the perpetrator of this crime. MERTENS stated she knew of ALLEN through her work in the district attorney's office, and MERTENS believes that ALLEN must have come to the D.A.'s office at one time. If he wouldn't have, there was no other way MERTENS would have known what ALLEN looked like. MERTENS described ALLEN as someone who was hot headed, quick tempered, and someone who had the ability to be extremely violent.

MERTENS said she was familiar with ALLEN's background and she described ALLEN as a "peeper" and someone who had a history of sexual assault. MERTENS thought ALLEN is the type of person who would have committed a crime such as this.

MERTENS was asked if she ever saw the composite drawing prepared by Gene Kusche. MERTENS said she could not remember ever seeing the composite drawing.

MERTENS said that when she would be sitting with BADKER and PETERSEN, MERTENS would discuss her concerns about this case. MERTENS believes that either BADKER or PETERSEN may have discussed their concerns directly with Manitowoc County District Attorney Denis Vogel. MERTENS said she did not ever express her concerns to Vogel.

MERTENS told the Special Agents that she did not think there were any other suspects for this crime. MERTENS recalls there was a sense of urgency to get this case done very quickly. When MERTENS was asked why there was this sense of urgency, MERTENS responded it was her impression that the victim was someone well known in the community and someone of status. As a result, this investigation had to be completed.

MERTENS was asked if she ever sat through any of the AVERY trial, and MERTENS said she did not.

MERTENS was then asked if this investigation was handled differently from other investigations. MERTENS responded she did not know. MERTENS stated that what made this investigation so unique was the severity of the crime and the status of the victim. MERTENS again stated there seemed to be a great sense of urgency about this case.

MERTENS had no additional information and the interview was at that time terminated.

afk 10/02/03
13280 dci2 int mertens 09232003 straussdk.doc

**Record Status Information**

| | |
|---|---|
| Record Origination Operator: | Conversion User (Criminal Investigation / Wisconsin DOJ Division of Criminal Investigation) |
| Record Origination Date: | 04/12/2004 14:13 |
| Last Update Operator: | Conversion User (Criminal Investigation / Wisconsin DOJ Division of Criminal Investigation) |
| Last Update Date: | 04/12/2004 14:13 |

This report is property of Wisconsin DOJ Division of Criminal Investigation. Neither it or its contents may be disseminated to unauthorized personnel.

# Wisconsin DOJ Division of Criminal Investigation

## ACISS Investigative Report

Report Number: DCIR13280/8                                    Report Date:

| | |
|---|---|
| Report Number: | DCIR13280/8 |
| Type Of Report: | Investigative |
| Description: | dci2 int-bergner |
| Approval Status: | Approved |
| Approved Date: | 04/12/2004 |
| Approved By: | Conversion User (Criminal Investigation / Wisconsin DOJ Division of Criminal Investigation) |

**Narrative**

CASE ACTIVITY REPORT    Wisconsin Department of Justice
DJ-DCI-2 (Rev. 8/91)    DIVISION OF CRIMINAL INVESTIGATION

1.   Case Number

   GC-13280
2.   Date

   10/06/2003
3.   Case Title

   STEVEN AVERY PROSECUTION
4.   Activity

   Interview/BERGNER
5.   Date of Activity

   10/02/2003

6.

On Thursday, October 2, 2003, at approximately 10:15 a.m., S/A Debra K. Strauss and S/A Amy A. Lehman interviewed THOMAS W. BERGNER. BERGNER is the Deputy Chief for the Manitowoc Police Department. This interview was conducted in BERGNER's office, 910 Jay Street, Manitowoc, WI, 920-686-6577. The purpose of this interview was to obtain information BERGNER would have regarding the assault on PENNY BEERNTSEN, on July 29, 1985.

BERGNER provided the following information:

BERGNER stated that just prior to STEVEN AVERY being released from prison in mid September 2003, BERGNER was contacted by TOM BEERNTSEN. BEERNTSEN advised BERGNER that AVERY was going to be released from prison because it was determined AVERY had not committed the crime he was accused of. BEERNTSEN was contacting BERGNER because BEERNTSEN was requesting the Manitowoc Police Department watch the BEERNTSEN's residence to make sure it is safe. BERGNER stated that he has not heard from BEERNTSEN since this phone call.

In July 1985, BERGNER was working as a detective for the Manitowoc Police Department. BERGNER said all jurisdictions were very territorial at that time and did not like to share information or contact other agencies regarding investigations they were working on.

In July 1985, BERGNER knew Manitowoc County Sheriff TOM KOCOUREK. BERGNER said that he could not remember why, but BERGNER remembers going to the sheriff's department and meeting with Sheriff KOCOUREK to discuss the BEERNTSEN assault case. BERGNER asked Sheriff KOCOUREK if he knew about GREGORY A. ALLEN, DOB 01/17/1954. Sheriff KOCOUREK told BERGNER that ALLEN had been ruled out as a suspect for this case. BERGNER

This report is property of Wisconsin DOJ Division of Criminal Investigation. Neither it or its contents may be disseminated to unauthorized personnel.

lehmannaa 04/13/2005 13:31                                    005609

*[handwritten annotations: "explain how it was that he had the impression that" "Kocourek knew?" "Allen's history?"]*

## Narrative - Continued

said he got the impression that Sheriff KOCOUREK knew about ALLEN and ALLEN's history.

BERGNER was then asked if he ever spoke with Manitowoc District Attorney DENIS VOGEL about ALLEN. BERGNER responded he did not. The only person BERGNER spoke to was Sheriff KOCOUREK. *[handwritten: "by the D.A.?"]*
BERGNER believes ALLEN should have been considered as a suspect for the BEERNTSEN assault because it is believed ALLEN was involved in other sexual assaults around this same time. BERGNER stated that ALLEN was a suspect of an attempted sexual assault on July 14, 1985, in Manitowoc. BERGNER said that ALLEN was never charged with this sexual assault because there was not enough evidence to charge ALLEN. BERGNER explained that DNA testing was not available in 1985 and 1986 like it is now.

*[handwritten left margin: "Hartman opinion?" "D—"]*
BERGNER was then asked if he ever contacted PENNY BEERNTSEN to ask her if she was sure that she identified the right person as her assailant. BERGNER said he did not. BERGNER believes that if someone from the Manitowoc Police Department would have called BEERNTSEN and asked such a question, it would have had to have been someone who would have known BEERNTSEN pretty well. BERGNER said that two detectives might have possibly contacted BEERNTSEN, the first one being ROGER HARTMAN. HARTMAN has retired from the Manitowoc Police Department and is currently living in Indiana. HARTMAN can be contacted at 317-867-3012. A second detective who may have contacted BEERNTSEN would be HENRY OSPEDALE. OSPEDALE was a detective with the Manitowoc Police Department at the time the BEERNTSEN assault took place. OSPEDALE currently lives at 1611 Wisconsin Ave., Manitowoc, WI, 920-684-4095. *[handwritten: "Ask him about Brey?"]*

BERGNER was asked if he ever discussed GREG ALLEN with anyone from the sheriff's department. BERGNER responded that he thinks he may have discussed ALLEN with Detective LARRY CONRAD. BERGNER thinks Detective CONRAD may have received information from a North Carolina law enforcement agency regarding a murder, which ALLEN was suspected of committing. Detective CONRAD then provided a copy of this information to BERGNER.
*[handwritten: "→ Consistent"]*
BERGNER did not know of any other detectives who may have had information regarding ALLEN. *[handwritten: "→ in Sheriff's Dept. or in Manitowoc P.D.?"]*
BERGNER had no additional information and the contact was at that time terminated.

Later that same day, BERGNER contacted S/A Strauss. BERGNER suggested that S/A Strauss contact JIM FITZGERALD and EMMA ANDERSON. BERGNER thought that FITZGERALD was currently working in the Vilas County District Attorney's office and ANDERSON was currently working as the District Attorney in Kewaunee County. BERGNER suggested that the special agents contact FITZGERALD and ANDERSON because they were working as Assistant District Attorneys for Manitowoc County at the time and they may have some information regarding the BEERNTSEN assault and the AVERY arrest and conviction.

dp 10/14/03
13280 dci2 int-bergner 10022003 straussdk

*[handwritten bottom: "Not contact him? Why not? Kewigg he now?" "Anderson said as she did then work as a D.A.?"]*

## Record Status Information

| | |
|---|---|
| Record Origination Operator: | Conversion User (Criminal Investigation / Wisconsin DOJ Division of Criminal Investigation) |
| Record Origination Date: | 04/12/2004 14:13 |
| Last Update Operator: | Conversion User (Criminal Investigation / Wisconsin DOJ Division of Criminal Investigation) |
| Last Update Date: | 04/12/2004 14:13 |

005610

*This report is property of Wisconsin DOJ Division of Criminal Investigation. Neither it or its contents may be disseminated to unauthorized personnel.*

Case 1:19-cv-00484-BHL   Filed 09/06/22   Page 116 of 122   Document 264-1

CHRM004791

Report Number:    DCIR13280/9                                           Report Date:

| Source Information | |
|---|---|
| Report Number: | DCIR13280/9 |
| Type Of Report: | Investigative |
| Description: | dci2 int-conrad |
| Approval Status: | Approved |
| Approved Date: | 04/12/2004 |
| Approved By: | Conversion User (Criminal Investigation / Wisconsin DOJ Division of Criminal Investigation) |

CASE ACTIVITY REPORT    Wisconsin Department of Justice
DJ-DCI-2 (Rev. 8/91)    DIVISION OF CRIMINAL INVESTIGATION

1.   Case Number

GC-13280
2.   Date

10/06/2003
3.   Case Title

STEVEN AVERY PROSECUTION
4.   Activity

Interview/CONRAD
5.   Date of Activity

10/03/2003

6.

On Friday, October 3, 2003, at approximately 9:30 a.m., S/A Debra K. Strauss and S/A Amy A. Lehmann, interviewed:

    NAME:             LARRY N. CONRAD
    ADDRESS:          5401 Selle Road, Manitowoc, WI
    DATE OF BIRTH:    05/04/1949
    HOME TELEPHONE:   920-758-2650
    CELL TELEPHONE:   920-912-2646

The purpose of this interview was to obtain information CONRAD may have regarding the PENNY BEERNTSEN sexual assault, on July 29, 1985 and the subsequent arrest and conviction of STEVEN AVERY.

CONRAD provided the following information:

CONRAD stated he retired from the Manitowoc Sheriff's Department in June 2000. In July 1985, at the time of the BEERNTSEN assault, CONRAD was working as a detective.

CONRAD was asked what his primary responsibility was in the BEERNTSEN assault investigation. CONRAD responded his primary duty at the time was conducting drug investigations. CONRAD said he did not normally get involved in these types of assault cases. However, CONRAD stated he was asked to verify a receipt. To do this, CONRAD had to go to the Shopko, in Green Bay and try to determine if AVERY had been there on the day of the assault.

*This report is property of Wisconsin DOJ Division of Criminal Investigation. Neither it or its contents may be disseminated to unauthorized personnel.*

CHRM004792

Report Number: DCIR13280/9      *were copies made + spread around*      Report Date:

Narrative - Continued

CONRAD said he believed he also interviewed GARY MANTHE. MANTHE lived across the street from the sheriff's department and had a history of sex related crimes. CONRAD stated that if he would have been the person to interview MANTHE, he would have prepared a report on this interview.

CONRAD was asked why MANTHE was interviewed and considered a suspect in this case. CONRAD responded that after the composite drawing had been completed, CONRAD may have commented to either DON BELZ or Sheriff Kocourek that the drawing looked like MANTHE. *how did he come to see it?* *(intent)*

CONRAD was asked if he knew of any other suspects besides AVERY and MANTHE. CONRAD responded he could not think of any. CONRAD continued to state that he was not very involved in this investigation. CONRAD said he knew who the victim was but he did not know her personally. Because CONRAD was not very familiar with this investigation, he may have not known if there were other suspects or not.

CONRAD was asked if he was involved in the timed drive, which was conducted by detectives of the sheriff's department from the crime scene to the Shopko, in Green Bay. The purpose of this timed drive was to determine if AVERY had enough time to commit the crime and then get to the Shopko in Green Bay. CONRAD responded he was not. CONRAD said he did go to the Shopko, in Green Bay to verify the receipt but this was not a timed drive to see if AVERY could have committed the crime. CONRAD thinks this timed drive may have been done by possibly FRED NICHOLSON and another detective.

CONRAD was then asked if he knew who GREG ALLEN was in 1985. CONRAD responded that he probably knew about ALLEN at the time but CONRAD did not think he ever associated ALLEN as a suspect for this case. CONRAD said that he could never remember ALLEN's name being mentioned as a possible suspect at this time.

CONRAD had no additional information and the interview concluded at approximately 9:50 a.m.

dp 10/13/03
13280 dci2 int-conrad 10032003 straussdk

| | |
|---|---|
| Record Status Information | |
| Record Origination Operator: | Conversion User (Criminal Investigation / Wisconsin DOJ Division of Criminal Investigation) |
| Record Origination Date: | 04/12/2004 14:13 |
| Last Update Operator: | Conversion User (Criminal Investigation / Wisconsin DOJ Division of Criminal Investigation) |
| Last Update Date: | 04/12/2004 14:13 |

*This report is property of Wisconsin DOJ Division of Criminal Investigation. Neither it or its contents may be disseminated to unauthorized personnel.*

CHRM004793

# Wisconsin DOJ Division of Criminal Investigation

## ACISS Initiating Case Report Report

Report Number:  **DCIR13280**                                    Report Date:    09/22/2003

### Primary Information

| | |
|---|---|
| Report Number: | DCIR13280 |
| Report Date: | 09/22/2003 |
| Type Of Report: | Initiating Case Report |
| Description: | STEVEN AVERY PROSECUTION |
| Reporting LEO: | Strauss, Debra K (Appleton Public Integrity / Wisconsin DOJ Division of Criminal Investigation) |
| Approval Status: | Approved |
| Approved Date: | 04/12/2004 |
| Approved By: | Aciss System User (Department of Justice / Wisconsin DOJ Division of Criminal Investigation) |

### Related Documents

Document
OPENING DOCUMENT
OPEN INFORMANT/CLOSE CASE

### Narrative

```
   White:    Records
   Yellow:   Agent
COMPLAINT FORM    Pink:    Supervisor
DJ-DCI-1 (Rev. 01/92)

1.   Case Number
     GC-13280
2.   Date
     09/22/2003
3.   Nature of Complaint
     GC-MISCONDUCT IN PUBLIC OFFICE
4.   Complaint Received (Date - Time)

     09/19/2003
5.   in person    telephone
     mail    email
     internet    fax
6.   By (Special Agent)

     Debra K. Strauss
7.   Investigation Requested By/Information Received From (Include Title)
     Manitowoc County District Attorney Mark Rohrer
8.   Sources of Complaint
     DISTRICT ATTORNEY
9.   Address
     1010 S. 8th Street, Manitowoc, WI
10.  Telephone
     920-596-3390
11.  Case Title
     STEVEN AVERY
```

*This report is property of Wisconsin DOJ Division of Criminal Investigation. Neither it or its contents may be disseminated to unauthorized personnel.*

Case 1:19-cv-00484-BHL    Filed 09/06/22    Page 119 of 122    Document 264-1

CHRM004794

**Narrative Continued**

PROSECUTION
12.   DOB
   UNKNOWN
13.   Address
   Unknown
14.   Municipality/County of Violation
   Manitowoc County #36

15.   Facts of Complaint

During July 1985 a woman was jogging on the beach, just outside of Two Rivers, Manitowoc County, WI when she was abducted, brutally beaten and sexually assaulted.

After the assault, the woman was taken to the hospital where Manitowoc County Sheriff's Department Deputies interviewed her. The victim was able to provide a physical description of her assailant. The victim also assisted a composite sketch artist from the Sheriff's Department develop a hand drawn picture of her assailant. Once the investigators were given a physical description, photo lineup was created. The victim reviewed the composite picture and then a short period of time later, the victim reviewed a photo lineup and identified STEVEN AVERY, DOB: 07/09/1962 as her assailant. At a subsequent date the victim again identified AVERY as her assailant. This second positive identification was made as part of an individual lineup.

Based on the victim's initial positive identification of AVERY as her assailant, AVERY was arrested and charged with First Degree Sexual Assault, Attempted First Degree Murder and False Imprisonment. This arrest took place within 12 hours of the assault.

A trial was held in December 1985. The prosecutor for this case was Manitowoc County District Attorney Denis Vogel. Despite AVERY having sixteen alibi witnesses as to his whereabouts on the day of the assault, AVERY was convicted of the crimes and sentenced to a total of 32 years in prison.

In September 2003, DNA tests were conducted on pubic hairs obtained after the assault. These tests concluded that AVERY was not the perpetrator of these crimes. GREGORY A. ALLEN, DOB: 01/17/1954, committed these crimes.

Soon after the mistake became public knowledge within the Manitowoc County Courthouse, the current District Attorney, Mark Rohrer, started receiving information that people within the courthouse never believed these crimes were committed by AVERY. These people all believed ALLEN committed the crime. Some of these individuals even stated to D. A. Rohrer they made these concerns known to either the District Attorney at the time, Denis Vogel, or the Manitowoc County Sheriff, Tom Kocourek.

D. A. Rohrer expressed his concerns about these allegations to the Attorney General's office and requested an independent review. The focus of this review would be to determine if ALLEN was ever a suspect in this investigation and if so, was this information turned over to the defense attorneys as part of the discovery procedure.

COMMENTS/RECOMMENDATIONS:

It is recommended this case be opened as a main case file. This review will include an examination of the Manitowoc County District Attorney's case files, the Manitowoc County Sheriff's Department's case files, along with the defense files. Interviews will also be conducted of the investigators involved in the investigation of this case and interviews of anyone who may have indicated they thought ALLEN had committed these crimes instead of AVERY.

dmg 10/02/2003

13280 dci1 open case 09192003 straussdk.doc

005614

*This report is property of Wisconsin DOJ Division of Criminal Investigation. Neither it or its contents may be disseminated to unauthorized personnel.*

CHRM004795

| Report Number: | DCIR13280 | | Report Date: | 09/22/2003 |
|---|---|---|---|---|

## Narrative - Continued

## Record Status Information

| | |
|---|---|
| Record Origination Operator: | Aciss System User (Department of Justice / Wisconsin DOJ Division of Criminal Investigation) |
| Record Origination Date: | 01/13/2004 11:05 |
| Last Update Operator: | Conversion User (Criminal Investigation / Wisconsin DOJ Division of Criminal Investigation) |
| Last Update Date: | 04/12/2004 14:13 |

| Reporting LEO | Date | Supervisor | Date |
|---|---|---|---|
| Strauss, Debra K (Appleton Public Integrity / Wisconsin DOJ Division of Criminal Investigation) | | Aciss System User (Department of Justice / Wisconsin DOJ Division of Criminal Investigation) | 4/13/2005 |
| | | | |

005615

*This report is property of Wisconsin DOJ Division of Criminal Investigation. Neither it or its contents may be disseminated to unauthorized personnel.*

Case 1:19-cv-00484-BHL   Filed 09/06/22   Page 121 of 122   Document 264-1

CHRM004796

# Wisconsin DOJ Division of Criminal Investigation

*ACISS Investigative Report*

Report Number:  DCIR13280/49                    Report Date:  04/12/2004

## Primary Information

| | |
|---|---|
| Report Number: | DCIR13280/49 |
| Report Date: | 04/12/2004 |
| Type Of Report: | Investigative |
| Description: | Evidence Disposition D-1492 |
| Reporting LEO: | Strauss, Debra K (Appleton Public Integrity / Wisconsin DOJ Division of Criminal Investigation) |
| Approval Status: | Approved |
| Approved Date: | 05/10/2004 |
| Approved By: | Lowery, Robbie R (Madison Public Integrity / Wisconsin DOJ Division of Criminal Investigation) |

## Narrative

On Monday, April 5, 2004, S/A Debra K. Strauss returned to William Beck, of the Manitowoc County Sheriff's Department, one cassette regarding the STEVEN AVERY investigation. S/A Strauss had previously received this cassette from the Manitowoc County Sheriff's Department on September 22, 2003.

This piece of evidence was assigned DJ-DCI-37 Property Receipt No. D-1492.

## Record Status Information

| | |
|---|---|
| Record Origination Operator: | Strauss, Debra K (Appleton Public Integrity / Wisconsin DOJ Division of Criminal Investigation) |
| Record Origination Date: | 05/07/2004 14:23 |
| Last Update Operator: | Lowery, Robbie R (Madison Public Integrity / Wisconsin DOJ Division of Criminal Investigation) |
| Last Update Date: | 05/10/2004 10:20 |

| Reporting LEO | Date | Supervisor | Date |
|---|---|---|---|
| Strauss, Debra K (Appleton Public Integrity / Wisconsin DOJ Division of Criminal Investigation) | | Lowery, Robbie R (Madison Public Integrity / Wisconsin DOJ Division of Criminal Investigation) | 4/13/2005 |

005616

*This report is property of Wisconsin DOJ Division of Criminal Investigation. Neither it or its contents may be disseminated to unauthorized personnel.*

CHRM004797