# EXHIBIT 13

```
1    STATE OF WISCONSIN : CIRCUIT COURT : MANITOWOC COUNTY
                           BRANCH 1
2
     _____
3
     STATE OF WISCONSIN,
4
                     PLAINTIFF,      JUDGE'S DECISION
5
     vs.                             Case No. 05 CF 381
6
     STEVEN A. AVERY,
7
                     DEFENDANT.
8    _____

9    DATE:   AUGUST 22, 2006

10   BEFORE: Hon. Patrick L. Willis
             Circuit Court Judge
11
     APPEARANCES:
12
             KENNETH R. KRATZ
13           Special Prosecutor
             On behalf of the State of Wisconsin.
14
             THOMAS J. FALLON
15           Special Prosecutor
             On behalf of the State of Wisconsin.
16
             DEAN A. STRANG
17           Attorney at Law
             On behalf of the Defendant.
18
             JEROME F. BUTING
19           Attorney at Law
             On behalf of the Defendant.
20
             STEVEN A. AVERY
21           Defendant
             Appeared in person.
22
                     * * * * * * * *
23               TRANSCRIPT OF PROCEEDINGS
```

CHRM009598

CONFIDENTIAL

24          Reported by Diane Tesheneck, RPR

25               Official Court Reporter

1

            1          THE COURT:  At this time the Court calls

CF          2     State of Wisconsin vs. Steven Avery, Case No. 05

            3     381.  Will the parties present state their

            4     appearances for the record, please.

            5          ATTORNEY KRATZ:  State of Wisconsin
appears

            6     by Calumet County District Attorney Ken Kratz,

            7     appearing as Special Prosecutor.  Also appearing
as

            8     Special Prosecutor is Tom Fallon, from the

            9     Department of Justice.

            10          ATTORNEY STRANG:  Steven Avery is here
in

            11     person and he's represented by Jerry Buting of

            12     Buting and Williams.  And Dean Strang of Hurley,

            13     Burish and Stanton.  Good morning.

            14          THE COURT:  All right.  We're here this

            15     morning for the Court to issue its decision on a

CHRM009599

CONFIDENTIAL

16      number of motions that have been filed. Following

17      the decisions on those motions, the Court will take

18      a summary of the motions that are still outstanding,

19      just to make sure that they are all being dealt

20      with.

21          Court will first issue its decision on

22      the defendant's motion to dismiss on the grounds

23      that the State has made a trial in Manitowoc

24      County impossible.  The basis for this motion is

25      alleged that the State has taken actions to make

2

1      a fair trial in Manitowoc County impossible.

2          Specifically, the defendant refers to

3      eight press conferences that were conducted

4      primarily by the Calumet County District Attorney

5      and Sheriff.  Four of these press conferences

6      occurred after the defendant's arrest in this

7      case.  The defendant also cites comments made in

8      a two-part news story in May of this year by the

CHRM009600

CONFIDENTIAL

9        Manitowoc County Sheriff.

10            The defendant asserts that his

11        constitutional rights under Article 1, Section 7,

12        of the Wisconsin Constitution, as well as his due

13        process rights under the Fourteenth Amendment to

14        the United States Constitution, and Article 1,

15        Section 8, of the Wisconsin Constitution were

16        violated by the State's participation in

17        pre-trial publicity.

18            The defense brief concludes on Page 11,

19        that, taken together, the State's actions

20        effectively have destroyed Avery's opportunity to

21        obtain an impartial jury in Manitowoc County.

22        That is, the basis for requesting dismissal as a

23        sanction is the claim that participation by

24        agents of the State in pre-trial publicity has

25        precluded the defendant from receiving a fair

3

1        trial in front of Manitowoc County jurors.  The

2        Court has reviewed the media account -- accounts

3        referenced by the motion.

CHRM009601

CONFIDENTIAL

4          The defendant cites no Wisconsin case

5    which has ever granted the remedy he requests;

6    that is, no Wisconsin case has ever found that a

7    defendant is entitled to dismissal of a criminal

8    charge because of the State's participation in

9    pre-trial publicity.

10          The defendant does cite two Wisconsin

11   cases as being relevant:  State ex rel. Schulter

12   v. Roraff, a 1968 Wisconsin Supreme Court case,

13   and Briggs vs. State, a 1977 Wisconsin Supreme

14   Court case.

15          In neither of these cases did the Court

16   order that the criminal charges involved be

17   dismissed.  In fact, the Court specifically

18   rejected the remedy in Schulter, the one case in

19   which the defendant actually requested dismissal.

20   Continuance and change of venue have been the

21   only remedies approved, to date, where

22   prejudicial pre-trial publicity threatens the

23   defendant's right to a fair trial.

24          The Court is not prepared to say that

25   the State's participation in pre-trial publicity

4

CHRM009602

CONFIDENTIAL

1          could never justify dismissal of criminal
2          charges; indeed, there's language from the
3          Schulter decision which suggests that the Court
4          did not rule out the possibility entirely.
5          There's a sentence that reads as follows:   In
6          State vs. Woodington, we considered the problem
7          of pre-trial publicity and concluded that the
8          remedy was not necessarily the dismissal of
9          charges, but a change of venue, or continuance of
10         the trial, and the careful selection of the jury
11         on voir dire.
12              So it may be possible that, in an
13         appropriate case, the Supreme Court could justify
14         dismissal as a sanction.  However, since no
15         reported decision ever -- ever sanctioned the
16         remedy of dismissal, this Court concludes that a
17         remedy as drastic as dismissal could only be
18         justified by very egregious behavior on the part
19         of the State.
20              The Court concludes in this case that
21         the State's role in pre-trial publicity was not
22         egregious, or designed to jeopardize the

CHRM009603

CONFIDENTIAL

23          defendant's right to a fair trial.  The Court has

24          reviewed the participation of the State

25          complained of by the defendant and makes the

5

1          following observations:

2                    The first four of the eight cited press

3          conferences were more informational in nature and

4          also related more to the missing person report,

5          not to the involvement of the defendant in the

6          crimes that have been alleged in this case.  The

7          last four press conferences did involve a

8          detailing of the accusations made against the

9          defendant, in some cases with more detail than

10         the Court believes was necessary.

11                   But the content was largely confined to

12         information contained in the Complaints against

13         Mr. Avery, and the co-defendant in this case,

14         Brendan Dassey.  While the content was somewhat

15         inflammatory in nature by virtue of the very

16         allegations of fact, similar to the situation

17         described in the Briggs decision, the information

CHRM009604

CONFIDENTIAL

18          was largely available to the press and the public

19          anyway, from the Complaints, which already were,

20          or were soon to become, public information.

21               The Court notes that the press in this

22          case has given publicity to a number of pleadings

23          and motions that have been filed, even before the

24          court proceedings dealing with those pleadings.

25          So, it is unlikely that the news conferences

                                6

1          resulted in the disclosure of any meaningful

2          information that would not have been publicized

3          in any event.

4               The Court also notes that, especially

5          early in these proceedings, there were media

6          reports that the defendant and members of the

7          defendant's family believed the police were

8          unfairly picking on him and suggested that the

9          defendant was being framed; indeed, the defense

10          in this case has filed motions indicating that

11          such a defense may be pursued at trial.

CHRM009605

CONFIDENTIAL

12          Supreme Court Rule 20:3.6(d) permits a

13     district attorney to make a statement reasonably

14     required to protect the State from the adverse

15     effects of publicity not initiated by the State.

16     Early in these proceedings, such adverse

17     publicity existed.  The State was reasonably

18     entitled to respond to public allegations that it

19     was basing its decisions on bias rather than the

20     evidence obtained.

21          With respect to the two-part news story

22     involving the Manitowoc County Sheriff, the Court

23     notes that that took place in May, a number of

24     months before the scheduled trial date.  At the

25     outset, the Court does conclude that a number of

7

1      the comments made by the Sheriff were ill-advised

2      and the Sheriff should not have participated in

3      the interview, even in the absence of a

4      prohibition order issued by the Court.  The Court

5      does conclude, however, that his participation

6      was not so egregious or prejudicial as to justify

CHRM009606

CONFIDENTIAL

```
7        dismissal of the charges.

8               First, it had been previously reported,
9        and the May reports reiterated, that the Sheriff
10       was involved in the wrongful prosecution of
11       Mr. Avery back in 1985.  The Sheriff's testimony
12       at the July 5 hearing in this case suggested he
13       may still not be convinced that Gregory Allen is
14       guilty and Steven Avery is innocent in the 1985
15       sex assault.  But the Sheriff appears to be
16       largely alone in that belief.

17               As has been widely reported for some
18       time, the State has not only conceded that
19       Mr. Avery did not commit the 1985 crime, but the
20       State has concluded that another man, Gregory
21       Allen, did.  Thus, any viewer of this report
22       would have serious reason to question the
23       Sheriff's objectivity.

24               To further balance the report, it
25       included prior statements from members of the
```

8

CONFIDENTIAL

CHRM009607

1            defendant's family that law enforcement

2            representatives were unfairly picking on the

3            defendant's family.

4                    Sheriff's explanation as to why his

5            department would have had no reason to frame the

6            defendant may have been unfortunately worded, but

7            the Court is satisfied that the Sheriff was

8            trying to explain, in an admittedly awkward way,

9            why the allegation that his department was trying

10           to frame Steven Avery should not be believed.  As

11           the Court has already noted, while the Sheriff

12           should not have granted the interview, his

13           participation is somewhat mitigated by a

14           perceived need to respond to publicized frame-up

15           allegations on the part of the defendant and his

16           family.

17                   A person viewing the report may well

18           have come away with the impression that the

19           Sheriff believed the defendant is guilty of the

20           crimes charged in this case.  That should not be

21           any more surprising than that the defendant's

22           family, friends, and his attorney in a civil

23           case, Stephen Glynn, publicly expressed their

24           belief in his innocence in the same report.

25                   If law enforcement officials did not

CONFIDENTIAL

CHRM009608

1       believe the defendant was guilty, this Court

2       would certainly expect the State to move to

3       dismiss the charges against the defendant.  The

4       Court gives the public more credit than to be too

5       unduly influenced by comments from either side.

6       The report was balanced and not so inflammatory

7       that persons who viewed it months ago could still

8       not provide the defendant a fair trial if

9       selected as jurors.

10              Finally, the Court notes that while the

11      defense is requesting dismissal because he

12      asserts the State's participation in pre-trial

13      publicity has made a trial in Manitowoc County

14      impossible, the defendant acknowledges in another

15      motion that if the Court grants an adjournment of

16      the trial date to early next year, a fair jury

17      composed of Manitowoc County citizens could be

18      selected.  At least, the Court believes that's a

19      fair inference for the Court to draw from the

20      defendant's contingent change of venue request.

CHRM009609

CONFIDENTIAL

21          The bottom line is that while there may

22     be a set of facts which would warrant the relief

23     the defendant seeks, there are no such facts

24     present here.  The complained of publicity

25     occurred many months before the scheduled trial.


                            10




1     Early news conferences focused on the search for

2     Teresa Halbach, not the charges against the

3     defendant.

4          Later press conferences with the Calumet

5     County District Attorney and Sheriff were mainly

6     confined to information available in public

7     records.  The Manitowoc County Sheriff's

8     participation in the May interview was

9     ill-advised, but not so prejudicial as to justify

10     the remedy the defendant seeks.

11          The defendant's own contingent change of

12     venue request demonstrates his belief that, with

13     adequate precautions, a fair jury can be selected

14     in Manitowoc County.  For all these reasons, the

CONFIDENTIAL

CHRM009610

15    defendant's motion to dismiss is denied by the

16    Court.

17         Before I proceed to other motions, I

18    will note that there have been motions filed

19    relating to change of venue and scheduling of the

20    trial date.  And it's my understanding that the

21    parties have a stipulation on those issues to

22    propose to the Court this morning; in fact, I

23    have been handed a written stipulation.  Counsel,

24    does one of you care to put it on the record for

25    the Court?

11

1         ATTORNEY KRATZ:  I certainly can, Judge.
I

2    don't know how much in detail the Court wants me
to

3    go.  We have provided the Court a two-page

4    stipulation.  That stipulation attempts to deal
with

5    the issues of change of venue, as well as trial

6    schedule.  The stipulation, and I will read at
least

7    the part of the stipulation that is being

CHRM009611

CONFIDENTIAL

proposed

8        towards the bottom of Page 1.

9              The parties, that is, the defense and

10       the State, have agreed to the following:  Number

11       one, that the jury trial in this case will

12       commence on or about February 5, 2007.  The

13       parties continue to believe that the trial itself

14       will last approximately six weeks.  I note for

15       the record that I'm paraphrasing, when

16       appropriate, in parts of the stipulation.

17              Number two, that the jury trial will

18       physically be held in the Calumet County

19       Courthouse.

20              Number three, that the Court has agreed

21       upon the county in which the jury will be

22       selected.  The parties have identified and have

23       agreed upon that jury pool, and the Court may

24       wish to comment on that thereafter.

25              The stipulation is proposed by myself

12

1       and Mr. Strang, both as lead counsel for the

CHRM009612

CONFIDENTIAL

2          relative parties.  The stipulation includes

3          acquiescence by Mr. Avery, and a statement as to

4          waiver of right to be tried physically here in

5          Calumet County.  And also includes the agreement

6          of the Halbach family, by Tim Halbach, a

7          representative of the Halbach family.

8                    I should note that the purpose of the

9          stipulation, or at least in part, as well as the

10         Halbach's acquiescence, is based upon the Halbach

11         family's ability to now fully participate, if

12         they choose, in all aspects of the jury trial, as

13         the physical location would be within Calumet

14         County.

15                   Attached to the stipulation includes

16         proposals from Sheriff Pagel, with the agreement

17         of the Manitowoc County Sheriff's Department.

18         This sets forth reasons why Calumet County is a

19         preferred venue, or preferred place of trial in

20         this case, as to issues of security, transport,

21         and the physical evidence which is being held in

22         the Calumet County Courthouse.

23                   Lastly, there is correspondence from

24         Mr. Rollins, who is Corporation Counsel, acting

25         on behalf of Manitowoc County.  This county, that

CHRM009613

CONFIDENTIAL

1       is, Manitowoc County, has requested this Court

2       adopt the stipulation, based upon the physical

3       amenities that the Calumet County Courthouse may

4       have, Mr. Avery's location, the physical

5       evidence, again, and the participation of the

6       Halbach family.

7               For all of those reasons, and reasons

8       previously provided in more detail to the Court,

9       including this proposal having been made by me

10      back in, I believe it was February of this year,

11      the parties jointly, that is, Mr. Avery, his

12      lawyers, and the State, is asking the Court adopt

13      the stipulation.

14              THE COURT:  Mr. Strang.

15              ATTORNEY BUTING:  Counsel recited the

16      stipulation's terms, in their essence.  He did it

17      fairly.  He did it accurately, but for one small

18      item on which he misspoke, innocently, and that

is

19      simply that Mr. Avery has agreed in writing here,

20      not to be tried in Manitowoc County, physically.

CHRM009614

CONFIDENTIAL

21    The trial will take place in Calumet County, but it

22    would be Manitowoc County in which he had a right to

23    insist upon the physical location of the trial. And

24    he's agreed instead to try the case in the Calumet

25    County Courthouse, just as counsel explained.

14

1            THE COURT:  All right.  I will note there

2     were some written modifications to the third

3     paragraph in the stipulation, that after the parties

4     approached the Court, I indicated I had a concern

5     with.  At one point, it was my understanding the

6     parties wished the county from which the jury would

7     be selected to not be disclosed at this time.  But I

8     understand the parties do not have an objection to

9     disclosure as of today.

10            ATTORNEY KRATZ:  That's correct, Judge.

CHRM009615

CONFIDENTIAL

11                THE COURT:  Mr. Strang.

12                ATTORNEY STRANG:  That's true.

13                THE COURT:  And I think that is important,

14        for the Court to make sure that Mr. Avery —— and I'm

15        going to conduct a brief colloquy with him on the

16        record today —— that everybody understands and

17        agrees what is being proposed here and,

18        specifically, that the parties both agree that the

19        jurors are to be selected from Manitowoc County. Is

20        that correct?

21                ATTORNEY STRANG:  Yes.

22                ATTORNEY KRATZ:  Yes.

23                THE COURT:  Mr. Avery, is that your

24        understanding of the recommendation that the parties

25        are proposing to the Court today, and that you have

15

1        agreed to?

CHRM009616

CONFIDENTIAL

2                    MR. AVERY:  Yes.

          3                    THE COURT:  Okay.  I do have some
questions

          4          to ask of you, to make sure that you understand
it,

          5          and I want to make sure that you are knowingly

          6          agreeing to this proposal.

          7                    First of all, do you understand that you

          8          have a constitutional and statutory right to keep

          9          venue in Manitowoc County, if you wish; that is,

         10          a right to be tried not only by a jury of

         11          Manitowoc County residents, but also, at least

         12          arguably, to a trial physically held in Manitowoc

         13          County?  Do you understand that?

         14                    MR. AVERY:  Yes, I do.

         15                    THE COURT:  Do you also understand that
the

         16          venue statute, Section 971.225, only permits the

         17          Court to order the trial to be held in another

         18          county if I make a determination that an
impartial

         19          trial could not be held in Manitowoc County?
That

         20          is, if you were not requesting it, the Court
would

         21          not be ordering that this trial be held in
Calumet

         22          County; do you understand that?

         23                    MR. AVERY:  Yes.

CHRM009617

CONFIDENTIAL

24                    THE COURT:  Is it your wish to be tried
    in

          25          Calumet County in this case, with a jury composed
    of


                                    16




          1          Manitowoc County residents?

          2                    MR. AVERY:  Yes.

          3                    THE COURT:  Has anyone made any promises
    or

          4          threats to you, to get you to request this

          5          provision?

          6                    MR. AVERY:  No.

          7                    THE COURT:  Have you had adequate time
    to

          8          discuss this decision with your attorneys?

          9                    MR. AVERY:  Yes.

          10                    THE COURT:  And do you have any
    questions

          11          at this time?  If you do, I would go off the
    record

          12          and permit you to discuss the matter further with

          13          your attorneys.  Do you have any such questions?

          14                    MR. AVERY:  No, I don't.

CHRM009618

CONFIDENTIAL

15          THE COURT:  Very well.  The parties had

16          alerted the Court a few days ago that this

17          stipulation would be being presented today, so I

18          have had some time to give it some thought.  I
also

19          took the opportunity, a few days ago, to travel
to

20          Calumet County in order to tour the courthouse

21          facilities.

22              I agree that there are some advantages

23          to holding the trial in Calumet County, in terms

24          of security relating to both the defendant and to

25          the jurors.  There also appears to be more space

17

1          at the courthouse for the media.

2              And the Court has been informed that

3          Manitowoc County officials believe it would be

4          more economical to hold the case in Calumet

5          County.  That is not a major request, obviously,

6          in the Court's decision, but the Court is aware

7          that Manitowoc County officials concur in the

8          move.  And I also understand that the victim's

CHRM009619

CONFIDENTIAL

9       family has joined in this request; in fact,

10      Calumet County, I believe, is closer to their

11      home than Manitowoc.

12              Based on those considerations, the

13      request that's been made by the parties, I'm

14      going to grant the joint request that's been made

15      here.  I will also note the request calls for a

16      delay in the trial date, that will further

17      alleviate any prejudicial effects of any

18      pre-trial publicity, avoid any potential

19      conflicts with the Thanksgiving holiday that

20      might have occurred had the trial started in

21      mid-October, and allow the defense more time to

22      evaluate the evidence in this case, which is

23      somewhat voluminous.  The Court has been informed

24      of such requests on the defense in the past.  So

25      I will grant the request.


                        18


1               The trial date here will be scheduled

2       for February 5, of 2007.  I cannot foresee

CHRM009620

CONFIDENTIAL

3           anything at this time that would result in a

4           further continuance of that trial date, and the

5           Court will agree to hold the trial in the Calumet

6           County Courthouse.

7                    The jury will be selected, composed of

8           Manitowoc's residents.  Jury selection, I think,

9           will take place here.  It will be more convenient

10          for everyone.  But once the trial begins, it will

11          take place in Calumet County.  Is there anything

12          further from either party on that matter?

13                   ATTORNEY KRATZ:  No, Judge.

14                   THE COURT:  If not, then the Court will

15          move on to the defense motion to exclude members
of

16          the Manitowoc County Sheriff's Department from

17          testifying in this case.  That motion initially

18          included a request, also, to prevent members of
the

19          Sheriff's Department from overseeing the jury in

20          this case.  But, Mr. Strang, it's my
understanding

21          that with the move of the physical site of the
trial

22          to Calumet County, that portion of the defense

23          motion is being withdrawn.

24                   ATTORNEY STRANG:  It is in the sense
that I

25          think it's mooted.  There are a number of

CHRM009621

CONFIDENTIAL

logistical

19

```
 1      details attending the stipulation just presented
to

 2      the Court, and adopted by the Court, that we have

 3      not laid out here today, but on which the parties

 4      are in accord.  And one of those, in sum, is that

 5      with a trial conducted in the Calumet County

 6      Courthouse, the Calumet County Sheriff's
Department,

 7      in the ordinary course, would take charge of jury

 8      assembly, jury management, the role of bailiff,

 9      custody of Mr. Avery, if in fact he's in custody
at

10      the time of trial.

11          And we see that as mooting the request

12      for relief as to a role with the Manitowoc County

13      Sheriff's Department, in prospective or actual

14      jurors, because under this proposal the Manitowoc

15      County Sheriff's Department will have no role

16      with, or contact with, actual or prospective

17      jurors.
```

CHRM009622

CONFIDENTIAL

18          THE COURT:  Okay.  All right.  As the Court

19          noted, the defense has filed a motion to exclude all

20          members of the Manitowoc County Sheriff's Department

21          from testifying on behalf of the State, as part of

22          the State's case-in-chief.

23              The sole basis for the defense motion

24          arises out of comments made in an interview

25          Sheriff Kenneth Peterson provided to FOX 11 News

1          in Green Bay, portions of which were aired in a

2          two-part report on May 11 and 12 of this year.

3          The Court is not going to detail the Sheriff's

4          comments further here, other than to note that

5          they related to the Sheriff's involvement with

6          Mr. Avery in the past, including the Sheriff's

7          role in the prosecution of Mr. Avery back in

8          1985, relating to a sex assault charge, for which

9          he was subsequently exonerated.  The Sheriff also

10          relayed in the report some of his own opinions

CHRM009623

CONFIDENTIAL

11          concerning the defendant's personality.

12                    The defendant contends that he is

13          entitled to the remedy he seeks because the

14          Sheriff's's comments were calculated to interfere

15          with the defendant's right to a fair trial in

16          Manitowoc County, before a Manitowoc County jury.

17                    The Court has reviewed the two-part news

18          report in its entirety and I have also read and

19          heard the party's arguments; that is, the written

20          argument submitted by Mr. Strang with his motion;

21          the written response submitted by Mr. Fallon; as

22          well as the arguments made at the July 5, 2006

23          hearing.  The Court makes the following

24          observations:

25                    The Court has accepted, today, the

21

1          stipulation of the parties that the trial will be

2          held in Calumet County, with a Manitowoc County

3          jury.  So the defendant has not lost his

4          constitutional right to a trial in the county

CONFIDENTIAL

CHRM009624

5          where the crimes are alleged to have been

6          committed.  The place of the trial is being moved

7          at the joint request of the defendant and the

8          State.

9                    Earlier in these proceedings, the

10         parties agreed, informally, to eliminate out of

11         court comments to the press; the State, through

12         the attorneys or representatives of the Calumet

13         County Sheriff's Department, and the defense

14         through defense counsel or the defendant himself.

15         There was, and is, no order at this time to

16         support this agreement.  But it came about as a

17         result of the Court's reluctance to issue a gag

18         order, which the Court regarded as an extreme

19         remedy.  The Court felt that this agreement,

20         along with the admonition to the parties to

21         comply with Supreme Court Rule 20:3.6, would

22         address the concerns initially raised by the

23         defense.

24                   The informal agreement has proven

25         largely effective with respect to the parties

22

CHRM009625

CONFIDENTIAL

1        involved.  No party mentioned any concern at the

2        time with comments originating from the Manitowoc

3        County Sheriff's Department.  The Court did not

4        issue any type of gag order, and the Sheriff's

5        comments in this case did not violate any such

6        order.

7             There is no evidence that the Sheriff

8        initiated contact with FOX 11 News.

9        Representatives of that organization apparently

10       contacted him for the interview.

11            Nevertheless, the Court does believe

12       that the comments were inappropriate coming in

13       the context of these court proceedings.  And the

14       Sheriff should not have —— should have used his

15       own discretion to avoid such comments.  Those

16       comments fell within the scope of the type of

17       publicity the parties had agreed to stop and had

18       the potential to jeopardize the defendant's right

19       to a jury of Manitowoc County jurors.

20            Whatever the Court's decision is on the

21       defense motion, the Court believes that care

22       should be taken to make sure such comments do not

23       occur again before the trial in this case.  The

24       Court notes that the comments involved were those

CHRM009626

CONFIDENTIAL

25          of the Sheriff alone.

1          His department does not have control of

2          this investigation.  And the Court has not been

3          presented with any evidence to suggest that any

4          other member of the Manitowoc County Sheriff's

5          Department who participated in the investigation

6          in this case has been directly, or indirectly,

7          influenced in any way by the Sheriff.  The Court

8          notes that the Sheriff has announced his

9          intention to retire at the expiration of his term

10         in early January of next year.

11              The Court makes the following

12         conclusions:  The Court is unaware of any

13         precedent for granting the remedies the defendant

14         seeks where no court order was violated.  The

15         cases cited by the defense, which sustain the

16         drastic remedy of exclusion of evidence, involve

17         violation of either a court order or a discovery

18         statute.

CHRM009627

CONFIDENTIAL

19          Participation by representatives of the

20      State in pre-trial publicity has only been used

21      in reported cases as a grounds for change of

22      venue or a continuance.  There is even less

23      reason in this case to exclude evidence from

24      members of the Sheriff's Department who did not

25      themselves participate in any allegedly improper

24

1       comments.

2           The Court further notes that the report

3       was a one time, in two-part, news item on one

4       television station in May, approximately nine

5       months before what will now be the scheduled

6       start of the trial.

7           The Court agrees that the comments made

8       were inappropriate in the context of these court

9       proceedings and did constitute a threat to the

10      defendant's right to fair trial before a

11      Manitowoc County jury; although, the Court has

12      earlier today accepted a stipulation of the

13      parties to have this case heard by a Manitowoc

CHRM009628

CONFIDENTIAL

14      County jury.

15            While the attorneys did not cite concern

16      over comments from the County Sheriff's

17      Department, that is, the Manitowoc County

18      Sheriff's Department, at the time they reached

19      their informal agreement to refrain from public

20      comment in this case, the comments should not

21      have been made.

22            To make sure there are no further

23      problems of this nature, the Court is going to

24      issue an order prohibiting members of either the

25      Manitowoc County Sheriff's Department, or the

25

1       Calumet County Sheriff's Department, from making

2       any further public comment concerning this case,

3       or the defendant, Steven Avery, until the trial

4       is concluded.

5             The Court is satisfied that adherence to

6       the attorneys to Supreme Court Rule 20:3.6

7       precludes the need for any such order to apply to

CHRM009629

CONFIDENTIAL

8          counsel.  I'm directing the counsel for the

9          defense to draft the order and submit it to

10         counsel for the State before submitting it to the

11         Court for signature.

12               Because the Court concludes that the

13         other remedy sought by the defense, that is, the

14         exclusion of testimony by members of the

15         Sheriff's Department of Manitowoc County is not

16         warranted, that portion of the defense motion is

17         denied.

18               ATTORNEY STRANG:  As a matter of

19         clarification, your Honor -- and I'm happy to
draft

20         the proposed order -- I will intend to include

21         proceedings related to Brendan Dassey within the

22         Court's definition of this case, even though,

23         technically, the Dassey proceedings are under a
case

24         number different than the Avery proceedings.

25               THE COURT:  Any objection from the
State?

26

CHRM009630

CONFIDENTIAL

```
 1              ATTORNEY KRATZ:  I'm not sure you have

 2          authority over the Brendan Dassey case, Judge.

 3              THE COURT:  I don't have authority over
the

 4          case, but -- and the Court's order would have no

 5          affect in his case -- but I think it could extend
to

 6          comments relating to his role in this case.  I

 7          will -- I will do this, I will let it up to the

 8          parties, in the form of your proposed order, to

 9          attempt to resolve that matter.  If it still
winds

10          up being contested and the parties have
alternative

11          versions of the proposed order to submit, I will

12          review them, give the parties a chance to be
heard,

13          before I issue the Court's order.

14              ATTORNEY KRATZ:  That's fine.  Thank
you.

15              THE COURT:  The Court will next move on
to

16          the State's motion in this case to admit
statements

17          of Teresa Halbach to co-workers.  The State seeks
to

18          admit certain statements which Teresa Halbach

19          allegedly made to co-workers in October of 2005,

20          relating to her observations during an earlier
visit
```

CHRM009631

CONFIDENTIAL

21          to the defendant's property and her state of mind

22          based on those observations.

23               The defense opposes the admission of

24          these statements.  The admissibility of evidence

25          which the State seeks to introduce involves

27

1          issues relating to hearsay, relevance, and the

2          defendant's right to confront his accusers.  The

3          Court will address each of these issues

4          independently, as they relate to the statements

5          which the State seeks to introduce.

6               First of all, with respect to hearsay,

7          the State asserts that Teresa Halbach's

8          statements relating to both her perceived

9          observations and to her state of mind fall under

10         the hearsay exception contained in Section

11         908.045 (2).  That statute provides in relevant

12         part as follows:

13               The following are not excluded by the

14         hearsay rule, if the declarant is unavailable as

15         a witness.  A statement which describes an event

CHRM009632

CONFIDENTIAL

16          or condition recently perceived by the declarant,

17          not in contemplation of pending or anticipated

18          litigation and while the declarant's recollection

19          was clear.

20              The statements which Teresa Halbach may

21          have made to her co-workers describing

22          observations from her earlier visit to the

23          defendant's home could fit within this hearsay

24          exception, subject to adequate foundation.  At

25          this point, the State has not provided the Court

28

1           with a date the observations were allegedly made

2           by Ms Halbach, nor when the observations were

3           relayed to her co-workers.

4               However, it appears that any statement

5           relating to her observations may well constitute

6           a statement which describes an event she recently

7           perceived.  Indeed, the defense does not

8           seriously dispute, that with proper foundation,

9           the hearsay exception in Section 908.045 (2)

CONFIDENTIAL

CHRM009633

10      could apply to statements relating to Ms

11      Halbach's observations.

12           The statements relating to her state of

13      mind, as opposed to her observations, do not fall

14      within the exception of Section 908.045 (2).  A

15      statement of recent perception is exactly that,

16      it is a statement of something which the

17      declarant has perceived.  It does not include

18      opinions of the declarant relating to her

19      perceptions or her state of mind.

20           Now, there is a hearsay exception not

21      advanced by the State which could arguably apply

22      to the defendant's state of mind; that is,

23      Section 908.03 (1), which reads, in relevant

24      part, as follows.  The following are not excluded

25      by the hearsay rule:  A statement explaining an

29

1      event or condition made while the declarant was

2      perceiving the event or condition, or immediately

3      thereafter.  While the statements made by Ms

4      Halbach relating to her then existing state of

CONFIDENTIAL

CHRM009634

5       mind could arguably fall within this exception,

6       they would still have to be relevant before they

7       could be admitted.

8             In order for a statement of Teresa

9       Halbach relating to her state of mind to be

10      relevant, the statement would have to relate to

11      an element of the crimes which the State seeks to

12      prove.  A similar issue was addressed by the

13      Court of Appeals in the case of State vs. Kutz, a

14      2003 Court of Appeals case.

15            The defendant in that case was charged

16      with first—degree intentional homicide, hiding a

17      corpse, and stalking, arising out of the

18      disappearance of his wife.  The State sought to

19      introduce a number of statements attributed to

20      the wife, in the time leading up to her

21      disappearance involving threats, which the

22      defendant made to her.  The State sought

23      introduction of the of statements as evidence of

24      her fearful state of mind at the time she made

25      the statements, shortly before her disappearance.

CONFIDENTIAL

CHRM009635

1           The Court of Appeals ruled that the

2      statements were not admissible, because while

3      they were evidence of the declarant's state of

4      mind, her state of mind was not relevant to the

5      charges in that case.  The Court recognized that

6      the primary purpose of introducing the evidence

7      was to demonstrate that the threats were actually

8      made to the wife, not that she was in fear

9      because of the statements.

10          That is similar to the situation here.

11     While any statement of Teresa Halbach involving

12     her state of mind made a few weeks before her

13     disappearance would certainly be relevance as

14     evidence of her state of mind, her state of mind

15     is not really at issue in this case.

16          The State has suggested that her state

17     of mind has a relationship to the elements which

18     the State must prove on the kidnapping charge.

19     However, the Court views the probative value of

20     her state of mind weeks before the crime as very

21     marginal.  The Court does not believe that her

22     state of mind has sufficient probative value or

23     relevance to justify admission of the evidence.

CHRM009636

CONFIDENTIAL

24        The State asserts that the personal

25        observations of Theresa Halbach, as opposed to

1         her state of mind, have relevance as to the

2         defendant's intent and plan to sexually assault

3         her in the future.  The Court has heard

4         references in prior arguments of the parties to

5         allegations that Mr. Avery specifically requested

6         Teresa Halbach to return to his residence.

7              Depending on what other facts are

8         introduced, her observations, which were relayed

9         to her co-workers, may have probative value which

10        could justify their admission.  However, the

11        Court is unable, based on the current state of

12        the record, to resolve that issue at this time.

13             Should the observations of Teresa

14        Halbach fall within the hearsay exception of

15        Section 908.045 (2) and have sufficient probative

16        value to justify their admission, the question

17        remains as to whether the admission of such

18        statements would violate the defendant's

CHRM009637

CONFIDENTIAL

19    constitutional rights under the confrontation

20    clause of the constitution.

21         The United States Supreme Court expanded

22    the scope of the confrontation clause in Crawford

23    vs. Washington, a 2004 case.  The Court ruled in

24    Crawford that where testimonial statements are

25    involved, the defendant is entitled to confront

32

1    his accusers, regardless of the reliability of

2    the statements or whether they fall in firmly

3    rooted hearsay exceptions.

4         For purposes of the State's motion, the

5    key question is whether the statements offered

6    for admission are testimonial in nature.  The

7    issue of what is a testimonial statement was

8    recently addressed by the United States Supreme

9    Court in Davis vs. Washington, a case decided on

10    June 19th of this year.  The case involved the

11    question of whether statements made by an

12    emergency 911 caller were testimonial in nature.

CHRM009638

CONFIDENTIAL

13          The Court ruled that some of the

14          statements made in the course of a 911 call were

15          testimonial, while others were not.

16          Specifically, the Court ruled as follows:

17          Statements are non-testimonial when made

18          in the course of police interrogation, under

19          circumstances objectively indicating that the

20          primary purpose of the interrogation is to enable

21          police assistance to meet an ongoing emergency.

22          They are testimonial when the

23          circumstances objectively indicate that there is

24          no such ongoing emergency and that the primary

25          purpose of the interrogation is to establish or

1          prove past events potentially relevant to later

2          criminal prosecution.

3          Of particular significance to our case

4          is the following language, which the Davis

5          opinion quoted from the Crawford case:  An

6          accuser who makes a formal statement to

7          government officers bears testimony, in a sense

CHRM009639

CONFIDENTIAL

8          that a person who makes a casual remark to an

9          acquaintance does not.

10              With this example the Supreme Court

11          comes very close to describing the statements

12          Teresa Halbach purportedly made to her co-workers

13          as a textbook example of what is not testimonial.

14          The observational statements which the State

15          seeks to admit were not made to the police and

16          were certainly not made in the context of any

17          investigation by anyone.  They are much more in

18          the nature of a casual remark to an acquaintance,

19          which is not testimonial.

20              The Court concludes that the statements

21          by Teresa Halbach of her earlier observations of

22          Mr. Avery are not testimonial in nature and their

23          admission would not implicate confrontation

24          clause concerns.

25              In conclusion, any statement made by

34

1          Teresa Halbach to her co-workers concerning her

CHRM009640

CONFIDENTIAL

2        state of mind at an earlier point in time are not

3        admissible.  Subject to proper foundation

4        establishing relevance and probative value,

5        statements that she made involving prior

6        observations may be admissible under the hearsay

7        exception contained in Section 908.045 (2).

8                Finally, for today's hearing, the Court

9        will address the defendant's motion challenging

10       the search of November 5, on the basis that it

11       violated the rule in Franks vs. Delaware.  I'm

12       not addressing, today, the additional challenge

13       to the search based on alleged multiple

14       executions of the search warrant, because the

15       Court has not yet received from -- the briefs of

16       the parties on that issue.

17             As part of his challenge to obtaining --

18       to the obtaining and execution of the search

19       warrants, the defendant challenges the

20       November 5, 2005 search warrant on the basis that

21       it was obtained as a result of false statements,

22       knowingly and intentionally made, or with

23       reckless disregard for the truth, that were

24       included in the affidavit supporting the search

25       warrant request.

35

CONFIDENTIAL

CHRM009641

```
1                   Under the rule of Franks vs. Delaware, a

2          1978 United States Supreme Court decision, if the

3          defendant makes a substantial preliminary

4          showing, and proves that such false statements

5          were made, and that they are necessary to the

6          finding of probable cause, a search warrant can

7          be voided and the fruits of the search

8          suppressed.

9                   Initially, the defendant's motion

10         alleged that three separate knowingly false

11         statements were made in the affidavit of

12         Detective Mark Wiegert supporting the request for

13         the November 5, 2005 warrant.  First, the

14         defendant alleged that Pamela Sturm and her

15         daughter, the two citizens who initially located

16         Teresa Halbach's vehicle on the Avery property,

17         were incorrectly characterized as volunteer

18         searchers, when in fact they were acting on

19         behalf of law enforcement.

20                  Following the evidentiary hearing,

21         defense counsel acknowledged that the evidence
```

CHRM009642

CONFIDENTIAL

22          did not demonstrate that Ms Sturm and her

23          daughter were anything but volunteer searchers.

24          The motion goes on to allege, however, that the

25          affidavit falsely claimed that the volunteer

36

1           searchers located a vehicle matching the

2           description of the vehicle owned by Teresa

3           Halbach, at the Avery Auto Salvage.

4                   Further, the defendant alleges that the

5           affidavit falsely represented that the searchers

6           provided a complete VIN from the vehicle, when in

7           fact the searchers were only able to identify 10

8           of the 17 characters of the vehicle

9           identification number.

10                  While acknowledging that Detective

11          Remiker was able to obtain the full VIN of the

12          vehicle when he responded to the scene, the

13          defendant's motion further alleges that Detective

14          Remiker did not have a search warrant, or consent

15          to be on the property, and his complete

CHRM009643

CONFIDENTIAL

16    identification of the VIN can, therefore, not be

17    considered because it was illegally obtained.

18    The defendant concludes that if the false

19    information and Detective Remiker's

20    identification are excised from the affidavit, it

21    lacks the required level of probable cause to

22    justify the issuance of the November 5 warrant.

23        The State asks the Court to deny the

24    motion for the following reasons:  First, the

25    allegations made in the defendant's motion do not

1    constitute a substantial preliminary showing

2    justifying an evidentiary hearing under the

3    holding of the Franks case.

4        Second, that Steven Avery lacks standing

5    to challenge the searches of any portions of the

6    Avery Auto Salvage Yard, other than his trailer

7    residence and the detached garage, because he has

8    not demonstrated a reasonable expectation of

9    privacy in the other portions of the Avery

10   Salvage property.

CHRM009644

CONFIDENTIAL

11          Third, that no intentional

12     misrepresentations were made in the affidavit.

13          Fourth, even if the challenged

14     information is excised from the affidavit, it

15     still contains sufficient probable cause to

16     justify the issuance of the November 5 warrant.

17          And, finally, that Steven Avery lacks

18     standing to challenge the information gathered by

19     Detective Remiker when the detective responded to

20     the scene on November 5, because whether or not

21     Detective Remiker was legally on the premises,

22     Mr. Avery had no reasonable expectation of

23     privacy, either in Teresa Halbach's vehicle, or

24     the portion of the Avery Salvage property on

25     which Detective Remiker was present.

38

1          The Court will first address the State's

2     claim that the defendant has not made a

3     substantial preliminary showing entitling him to

4     a hearing on the alleged Franks violations.  When

CHRM009645

CONFIDENTIAL

5          a defendant alleges that a search warrant is

6          based on knowingly false information, the United

7          States Supreme Court held in Franks vs. Delaware

8          that the following procedure governs:

9               Where the defendant makes a substantial

10         preliminary showing that a false statement

11         knowingly and intentionally, or with reckless

12         disregard for the truth, was included by the

13         affiant in the warrant affidavit, and if the

14         allegedly false statement is necessary to the

15         finding of probable cause, the Fourth Amendment

16         requires that a hearing be held at the

17         defendant's request.

18               In the event that at the hearing the

19         allegation of perjury, or reckless disregard, is

20         established by the defendant, by a preponderance

21         of the evidence, and with the evidence -- with

22         the affidavits false material set to one side,

23         the affidavit's remaining content is insufficient

24         to establish probable cause, the search warrant

25         must be voided and the fruits of the search

39

CHRM009646

CONFIDENTIAL

```
 1          excluded to the same extent as if probable cause

 2          was lacking on the face of the affidavit.

 3               In this case the defendant's motion

 4          alleged, first, that the two citizens who found

 5          the RAV-4 were not truly volunteer searchers, but

 6          persons who Detective Wiegert told Detective

 7          Remiker were willing to go to the Avery property

 8          on Avery road to search the junkyard salvage

 9          area.

10               The quoted language presumably was

11          obtained by the defendant as part of a discovery

12          from a police report.  One possible inference

13          from the language could have been that the

14          volunteer searchers had in fact met with

15          Detective Wiegert and expressed their willingness

16          to assist the police in searching the Avery

17          property.

18               While neither party has argued the point

19          at any length, it is at least arguable that if

20          they had been enlisted to assist law enforcement,

21          the searchers may have had to disclose that fact

22          to Earl Avery when they obtained his consent to

23          enter the property, in order to conduct the

24          search.  The State has not argued otherwise as a
```

CONFIDENTIAL

CHRM009647

25      reason for which the motion should be denied.

40

1          The defense also characterizes as an
2      intentional false statement, or one made with
3      reckless disregard for the truth, the assertion
4      in the affidavit that the searchers claimed they
5      had located a vehicle matching the description of
6      the vehicle owned by Teresa Halbach.  The basis
7      for this assertion is that Pamela Sturm was told
8      to be looking for a green vehicle, but she
9      informed police that the vehicle was, quote,
10     "bluish green, though it's more blue than green",
11     end quote.
12          In addition, while the affidavit
13     indicates that Sturm provided the entire 17
14     character VIN, Sturm was actually able to report
15     only 9 or 10 of the 17 VIN characters.  She was
16     not in a position to see the remaining
17     characters.
18          Detective Wiegert acknowledged in his

CHRM009648

CONFIDENTIAL

19          testimony that the portion of his affidavit

20          indicating that Patricia (sic) Sturm provided the

21          entire VIN, was incorrect.  He acknowledged that

22          while he obtained the full VIN from Detective

23          Remiker, Ms Sturm was only able to make out 10 of

24          the 17 characters.

25                    In addition to the inconsistencies

41

1           listed in the defendant's motion, the defendant

2           also asserts that the State was not assisted by

3           Detective Remiker's ability to read the full VIN

4           because he did not have authorization or consent

5           to be on the property.

6                    The Court was initially inclined to

7           conclude that the defendant's motion did

8           constitute a substantial preliminary showing that

9           false statements had been intentionally included

10          in the search warrant which called into question

11          the level of probable cause needed for the

12          issuance of a warrant.  Had Patricia Sturm —- or

13          I believe it's Pamela Sturm —- and her daughter

CONFIDENTIAL

CHRM009649

14   been acting as agents of the State, their

15   discovery of the RAV—4 and it's identifying

16   information, which formed an important basis for

17   the issuance of the warrant, may have been

18   subject to suppression.

19     As the State correctly points out,

20   however, a close reading of the defendant's

21   motion reveals no substantial preliminary showing

22   that the Sturms were acting as agents of law

23   enforcement.  The motion does refer to a

24   scheduled meeting of volunteers, which apparently

25   never took place.

42

1     But there is no assertion that the

2   Sturms had any specific relationship with any

3   member of law enforcement.  Indeed, the defense

4   conceded at the conclusion of the hearing that no

5   evidence introduced added anything to the

6   allegations in the original motion.

7     In addition, while the motion describes

CONFIDENTIAL

CHRM009650

8          Detective Remiker's entry on the property as

9          unauthorized and non—consensual, which apparently

10         it was, there's no assertion in the motion that

11         Steven Avery had any legitimate expectation of

12         privacy over either Teresa Halbach's vehicle or

13         the portion of the Avery salvage property on

14         which the vehicle was located.

15              If Detective Remiker's presence on the

16         property had violated Steven Avery's reasonable

17         expectation of privacy, it could perhaps be

18         argued that the failure of the affidavit to

19         disclose his unlawful presence was a material an

20         intentional omission, which could support a

21         Franks claim under the Wisconsin Supreme Court

22         decision in State vs. Mann.

23              However, since there was no assertion in

24         the motion that the defendant had a legitimate

25         expectation of privacy over the area in which the

43

1          Halbach vehicle was located, Detective Remiker's

2          lack of permission to be on the property does not

CONFIDENTIAL

CHRM009651

3        measurably contribute to the substantial

4        preliminary showing required as a prerequisite

5        for a hearing on the defendant's Franks motion.

6              The Court concludes that the State is

7        correct, the motion does not make a substantial

8        preliminary showing entitling the defendant to a

9        hearing on the Franks claim.  While the defendant

10       may not have been entitled to a hearing on his

11       Franks motion, the Court, nevertheless,

12       conditionally granted one.

13             The evidence introduced at the hearing

14       further supports the conclusion that there was no

15       Franks violation in this case.  The defense

16       acknowledges that the volunteer searchers

17       referred to in Detective Wiegert's affidavit

18       truly were volunteer searchers; thus, there is no

19       basis upon which to delete their discovery of

20       Teresa Halbach's vehicle from the Wiegert

21       affidavit.

22             While one can argue whether or not

23       Detective Wiegert was justified in using the term

24       "matching" in the affidavit, the Sturm's clearly

25       did discover a vehicle, which was very similar in

44

CHRM009652

CONFIDENTIAL

1     appearance to Teresa Halbach's vehicle, and which
2     turned out to be an exact match.

3          While Detective Remiker's entry on the
4     property may not have been authorized by an owner
5     or person in control of the property, there is no
6     evidence to suggest that the defendant had any
7     ownership interest or other expectation in the
8     area upon which the vehicle was located, or the
9     vehicle itself.  Thus, the information provided
10    by Detective Remiker is also appropriately
11    included in the affidavit.

12         With all of this information included,
13    there is no question but that the affidavit was
14    sufficient to justify the issuance of the
15    November 5, 2005 search warrant.

16         The State also asserts in its written
17    argument that Steven Avery has no standing to
18    challenge any of the searches that were
19    subsequently conducted at the Avery Auto Salvage
20    Yard, including searches of the burn barrel, burn
21    pit, the RAV-4, or any of the other buildings

CHRM009653

CONFIDENTIAL

22          located on the property, with the exception of

23          Mr. Avery's residence and detached garage.

24                    Resolution of this argument is not

25          necessary to the Court's decision on the Franks

45

1           issue.  The Court concludes that this argument is

2           more appropriately addressed in the portion of

3           the defense motion challenging the multiple

4           executions of the original search warrant.

5                     For the reasons stated, the defense

6           motion to suppress the fruits of the November 5,

7           2005 search warrant on the grounds that it was

8           issued in violation of Franks v. Delaware is

9           denied.

10                    Those are all the decisions on motions

11          the Court has today.  I did want to take a brief

12          inventory of what I understand to be the

13          outstanding motions and confirm the status of

14          those motions at this time.

15                    The State has filed a motion concerning

16          the admissibility of DNA evidence.  And it's my

CHRM009654

CONFIDENTIAL

17      understanding that at least at one point the

18      parties were working on a stipulation to resolve

19      that motion.  Counsel, where are we on that

20      motion?

21              ATTORNEY KRATZ:  I understood, Judge, if

22      there was going to be a challenge to whatever it
was

23      that Mr. Gahn had presented, that Mr. Buting was

24      going to alert us to that.

25              ATTORNEY BUTING:  That's correct, Judge,

46

1      and Mr. Gahn has been trying to compile some

2      additional requests that I had made regarding
those

3      tests and has not yet complied with that.  And
once

4      we receive that, I anticipate we'll either --
we'll

5      be in a position to either agree or not agree.

6              THE COURT:  All right.  I would like to

7      have a date by which the Court will be notified

8      either that the motion is going to be contested,
or

CHRM009655

CONFIDENTIAL

```
 9        that it's resolved.

10                 ATTORNEY KRATZ:  Judge, would the Court
be

11        willing to adopt a scheduling plan that Mr.
Buting

12        has 30 days after the receipt of our discovery?

13        Mr. Gahn is meeting with Mr. Fallon and myself

14        tomorrow.  We should have an idea as to that
date,

15        certainly won't be any later than perhaps

16        mid-September.  Nonetheless, Judge, Mr. Buting

17        believes that he can have that done within 30
days

18        after receipt.

19                 THE COURT:  When you say receipt, is
that

20        what's going to happen in the next couple of
days?

21                 ATTORNEY KRATZ:  No, Mr. Gahn will be

22        meeting with us.  And what I'm suggesting is that
we

23        can -- if you wanted to set a date certain for
that,

24        we can have that to him, let's say by the 15th of

25        September; Mr. Buting alerting the Court as to
any
```

47

CHRM009656

CONFIDENTIAL

```
     1      challenges by the 15th of October.  That should
give
     2      us plenty of time.
     3              THE COURT:  All right.  So, Mr. Buting,
     4      with the understanding that you are going to get
the
     5      information by September 15th, the October 15th
is
     6      acceptable to the defense?
     7              ATTORNEY BUTING:  Yes, that's fine.
     8              THE COURT:  Very well.  The State has
filed
     9      a number of other acts motions.  The Court has
    10      received written arguments and I'm going to be
    11      issuing a written decision on those motions.  Do
I
    12      have all of the briefs that are going to be
filed?
    13              ATTORNEY KRATZ:  Yes, you have three
from
    14      the State, Judge.
    15              THE COURT:  Mr. Strang.
    16              ATTORNEY STRANG:  You have everything
the
    17      defense anticipates submitting.
    18              THE COURT:  Okay.
    19              ATTORNEY STRANG:  I think the most
```

CHRM009657

CONFIDENTIAL

recent

20      was Friday, August 18.  We submitted a brief on
one

21      aspect of Paragraph 6 of the State's motion.

22           THE COURT:  All right.  And I understand

23      that each party has filed a motion.  The defense
has

24      filed a motion to admit evidence regarding the

25      defendant's prior wrongful conviction.  The State

48

1      has filed a motion to exclude it.  Where are the

2      parties on those motions?

3           ATTORNEY KRATZ:  I note that a
stipulation

4      was proposed, Judge.  I think even Mr. Strang may

5      have provided us with his first suggestion as to

6      that stipulation.  This kind of goes on the same

7      track as the stipulation regarding evidence of

8      victim history.  That stipulation is to be
exchanged

9      as well.  Would the Court allow us to exchange
and

10     then perhaps alert the Court by, again, the 15th
of

CHRM009658

CONFIDENTIAL

11     October, if we have a resolution.  If we don't, we

12     can certainly tell the Court before that time.

13          THE COURT:  Does that work for both

14     parties?

15          ATTORNEY STRANG:  Yes.  I followed the

16     Court's lead, I submitted a proposed stipulation on

17     the wrongful conviction evidence that really also

18     looks like an offer of proof.  It's fairly detailed

19     and I gave the State a written draft of that

20     document either on August 9 or August 10, when we

21     were last here in Court.  I don't -- I don't see any

22     difficulty in leaving that issue unresolved until

23     October 15 on the present schedule.

24          THE COURT:  All right.  So with respect to

25     that issue and the issue of the victim's history,

49

1     the parties will notify the Court by October 15th

2     either that you have an agreement, or that you

CHRM009659

CONFIDENTIAL

```
 3        don't, and if it requires Court resolution --

 4               ATTORNEY KRATZ:  I'm sorry, we should

 5        probably be using the 16th, the 15th is a Sunday.

 6               THE COURT:  All right.  The 16th.

 7               ATTORNEY KRATZ:  I don't know if it
makes

 8        that much difference.  The 16th I think is --

 9               THE COURT:  I will use that for the DNA

10        evidence issue as well.

11               ATTORNEY STRANG:  Okay.

12               THE COURT:  With respect to the
suppression

13        motion regarding Marinette County statements, I
have

14        received briefs from both parties, but it's my

15        understanding that there may be a related issue
the

16        parties want to alert the Court to.

17               ATTORNEY FALLON:  Yes, Judge.  After

18        reviewing counsel's brief on the matter, the
thought

19        occurred to me that I think each counsel would
like

20        to be heard.  If the Court for one reason or
another

21        decides to suppress the statement obtained by the

22        Marinette County Sheriff on Saturday, November
5th,

23        from the point on -- from the point of
```

CHRM009660

CONFIDENTIAL

contention,

24    we would like to be heard as to whether the

25    subsequent statements obtained on November 6th
ought

1    to be suppressed as well.  And that's because

2    there's a different set of arguments and issues

3    presented.

4         Neither party really briefed those this

5    time around, waiting and preferring to see if

6    there was a need to.  So we -- I think each

7    counsel would reserve our right, if we may, to

8    address further those issues if, and only if, the

9    Court finds anything suppressible on the

10   November 5th statement.

11        THE COURT:  Mr. Strang, is that a fair

12   statement?

13        ATTORNEY STRANG:  That's been the
defense

14   intention from the start, both on the motion to

15   suppress statements after the point of
contention,

CHRM009661

CONFIDENTIAL

16          as Mr. Fallon puts it, on November 5, 2005.  And
I

17          might add on the Fourth Amendment suppression

18          motions, as to which Mr. Buting took the lead
role,

19          I think the Court properly ought to decide on, is

20          the exclusionary right -- exclusionary role
rightly

21          invoked here?  Does it have a role to play?  If
it

22          does, we can be heard later, both parties, on the

23          scope of exclusion, or what potential evidence
would

24          derive from any unconstitutional conduct by law

25          enforcement.


51


1          And I will add, it's not out of the

2          realm of possibility that the State or the

3          defense might wish to offer some evidence on the

4          scope of application in the exclusionary rule;

5          although, it's also quite possible that just

6          would be a matter of written or oral argument.

7          So not only am I in agreement with Mr. Fallon on

CHRM009662

CONFIDENTIAL

```
 8        this point, it's really been my intention from

 9        the start as I think a much more orderly and

10        measured way to proceed on those issues.

11                THE COURT:  All right.  So the --
Whether

12        or not the parties are going to be looking to
make

13        further argument, or possibly even introduce

14        additional evidence, will depend on the Court's

15        decision.  And the parties are both asking the
Court

16        at this time to only make a decision with respect
to

17        the November 5 statements.  Is that a fair
summary?

18                ATTORNEY FALLON:  Yes.

19                ATTORNEY STRANG:  And there -- Yes, it
is.

20        And there, just to endorse the suggestion the
Court

21        made during the August 9 and August 10
evidentiary

22        proceedings, there's no challenge to the

23        admissibility of Mr. Avery's statements on

24        November 5 prior to, again, as Mr. Fallon puts it

25        elegantly, the point of contention, and we have
both
```

52

CONFIDENTIAL

CHRM009663

```
 1      briefed where exactly that arises in the recorded

 2      interview.

 3            THE COURT:  All right.  There is a
defense

 4      motion, filed some time ago, entitled -- it's

 5      actually not a motion, but a notice concerning

 6      interference with right to counsel.  I have been
led

 7      to believe a number of times that's been
resolved,

 8      but it's still technically hanging out there.

 9            ATTORNEY STRANG:  Well, it is resolved.
It

10      was not a motion or a request for relief, it was
a

11      notice of a concern.  Since I had it -- had the

12      concern on June 16, I treated that deadline as
one

13      by which I ought to raise the concern in good
faith.

14      I did.

15            The State provided me the information it

16      promised about the inmate at issue, his name is

17      Orville Jacobs.  I'm satisfied at this point with

18      the information I have gotten from the State.  I

19      don't perceive a Sixth Amendment right to counsel
```

CHRM009664

CONFIDENTIAL

20        concern arising with respect to Mr. Jacobs.  Of

21        course, if future information comes to light, or

22        future events warrant it, I will raise the

23        concern again, but I don't anticipate either of

24        those events coming to pass.

25             THE COURT:  All right.  Since it was

53

1        entitled a notice and not a motion, I don't believe

2        there's any need for a formal withdrawal document or

3        anything like that.

4             ATTORNEY STRANG:  But neither is there any

5        need for a ruling.

6             THE COURT:  All right.  Then with respect

7        to the defense motion to suppress the fruits of the

8        search, or searches, based on multiple executions of

9        the search warrants, those written briefs are due

10       September 13.

CHRM009665

CONFIDENTIAL

```
         11                    ATTORNEY STRANG:  Yes, it's a
simultaneous

         12          exchange, as I understand it, of one round.

         13                    THE COURT:  For my benefit, and I
haven't

         14          seen the written arguments yet, but it appeared
to

         15          me possible, based on the way the evidence came
in,

         16          that there could be different lines of arguments

         17          relating to different individual searches.  Are
the

         18          parties -- Are the briefs going to be structured

         19          such that different searches are addressed

         20          individually?

         21                    ATTORNEY BUTING:  I suppose we could do
it

         22          that way.  I anticipate -- Really, if the Court
can

         23          recall from the testimony, I anticipate that the

         24          major point of contention is going to be after
that

         25          first three hours or so search was made on the
night
```

54

CHRM009666

CONFIDENTIAL

```
 1      of the 5th, Saturday night.  Thereafter, there
was a

 2      number of entries and -- and I can address each
one

 3      of those separately, but I think the primary
issue

 4      is going to be on that.

 5              THE COURT:  Let me just ask this, I
don't

 6      want to tell each party -- either party how to
argue

 7      their case, but if you have arguments that relate
to

 8      some searches and not others, please let those be

 9      differentiated in your briefs so that I know what

10      you are trying to argue.

11              ATTORNEY BUTING:  Okay.

12              THE COURT:  And then there's also a
State's

13      motion regarding statements to other inmates.  I

14      believe I have recently received a written brief

15      from the defense on that.  Is there anything more

16      coming from the State, or do I have everything
I'm

17      going to have on that?

18              ATTORNEY KRATZ:  We just talked about
that,

19      Judge.  We will discuss that in detail tomorrow
and

20      if the Court would allow us an opportunity,
perhaps
```

CHRM009667

CONFIDENTIAL

21         to the 13th of September, we can get that to the

22         Court as well.

23              THE COURT:  All right.  Any objection from

24         the defense?

25              ATTORNEY STRANG:  I don't.  That's an issue

1          that's under seal, or we have treated it as sealed

2          to date.

3               THE COURT:  Very well.  I will give the

4          State until September 13 then to respond.

5               ATTORNEY BUTING:  Judge, could we return

6          for just one moment to the multiple execution of the

7          search warrant issue.  As the Court framed it, I

8          don't know whether that -- the way these -- the

9          arguments may come out then might really be more

10         amenable to a reply by either party as well.

11              In the event that there are -- that the

12         State has certain arguments on certain searches

CONFIDENTIAL

CHRM009668

13      and not others, or that I have likewise, it might

14      be easier to just reply to them, rather than try

15      and anticipate -- each of us anticipate what the

16      arguments of the others would be.  We have a

17      little bit more time to do that now and I just

18      raise that as one way of resolving that.

19              THE COURT:  Mr. Fallon.

20              ATTORNEY FALLON:  Yes.  Thank you.  It

21      seems to me that the way -- excuse me -- the way
the

22      defense pled the issue and proceeded with its

23      proofs, that the issue has been fairly well
narrowed

24      to complain of the searches occurring to Mr.
Avery's

25      trailer and garage, starting on Sunday, the 6th,

1      until the second or subsequent warrant was
obtained

2      late afternoon, I believe on the 9th.

3              Those were the issues which were the

4      subject of the testimony and it seems to me that

5      that's the context in which the case is going to

CONFIDENTIAL

CHRM009669

6        be argued.  So I'm not really sure that we need

7        to separate out the searches per se other than,

8        as the testimony reflected, there was, you know,

9        an entry on Sunday, for instance, and one or two

10       on Monday, and then one on Tuesday, that type of

11       itemization or reflection.

12             I'm not sure it's to our benefit to

13       separate them out any further, because as I

14       reviewed the case law in preparation for writing

15       this brief, it's not much -- it's not the issue,

16       really.  And I don't -- I don't know if we really

17       need to reply, and counter-reply, or what have

18       you.  It seems to me it's been narrowly pled and

19       the testimony was narrowly produced.  So I'm not

20       sure we have a whole lot of range of other

21       searches at issue, so to speak.

22             THE COURT:  Let's do this, after each
party

23       receives a copy of the other party's brief, if

24       either party feels there's a need to reply, you
can

25       ask the Court for permission, in writing, just
fax

57

CHRM009670

CONFIDENTIAL

```
 1        it to me, I will take it up at that time.

 2                ATTORNEY STRANG:  Thank you.

 3                THE COURT:  I would ask also on that
issue,

 4        I think I mentioned it before, I did not have
access

 5        in our law library, or my online law library, to
all

 6        of the secondary sources that necessarily relate
to

 7        that issue.  So if you have -- if you're going to
be

 8        citing any secondary sources, please give me
copies.

 9        I have got ALR and Am Jur and those types of
things,

10        but I think it was --

11                ATTORNEY BUTING:  LaFave.

12                THE COURT:  -- LaFave I do not have.

13        Right.  I'm not looking to make the file any
bigger

14        than it is, but if you cite to LaFave, give me a

15        copy.  I think I have already gotten one from the

16        State.

17                ATTORNEY FALLON:  I think you got the
copy.

18        I think, unless counsel disagrees, I think we
have
```

CHRM009671

CONFIDENTIAL

19      got the relevant portions of LaFave for the Court.

20              ATTORNEY BUTING:  I believe so.  If there

21      are any -- so the Court has access to case law.

22              THE COURT:  Other jurisdiction case law is

23      fine, I have got LexisNexis, but LaFave is not on

24      there.

25              ATTORNEY BUTING:  So anything like law

1       journals, law reviews, things of those nature that

2       might -- you do not have access to?

3               THE COURT:  If you have got access to Lexis

4       and it's on Lexis, you don't have to send it to me.

5               ATTORNEY BUTING:  I use Lexis.

6               THE COURT:  Right.  So, if it's not on

7       Lexis, send it, otherwise you don't have to.  I

8       certainly have access to case law from all other

9       jurisdictions and a number of secondary sources, but

CONFIDENTIAL

CHRM009672

10        not LaFave.

11              ATTORNEY FALLON:  Your Honor, may I have

12        just a moment to talk to Mr. Buting on this.

13              THE COURT:  Go ahead.

14              ATTORNEY FALLON:  I thought we might have

15        one other point of interest for the Court, but I

16        guess we'll have to defer comment until we consider

17        it further.

18              THE COURT:  All right.  Is there anything

19        further from either party today?

20              ATTORNEY STRANG:  Yes.  One, just a point

21        of clarification.  This may have been implicit in

22        the Court's rulings both on the motion to dismiss

23        and the motion for sanctions to exclude the

24        Manitowoc County Sheriff's Department, since the

25        Court referred to having reviewed the eight news

59

1        conferences, but I just want to make sure that the

CHRM009673

CONFIDENTIAL

```
2        record is complete and that, in fact, a viewable,

3        either VHS tape or DVD arrived from WFRV-TV to
the

4        Court as I had arranged to happen.

5            THE COURT:  Yes, the VHS tape arrived
and

6        that's workable.

7            ATTORNEY STRANG:  Terrific.  Second, I

8        anticipate some further motions, not just motions
in

9        limine.  Conceivably, for example, some discovery

10       that I received -- was received at my office, I
have

11       lost track of the dates now, but it's more than a

12       week and less than two weeks ago.  Some new

13       discovery suggests a further non-evidentiary
motion.

14           It's also entirely possible, as

15       Mr. Dassey's case proceeds here, that an issue

16       may arise under Samuels -- under State vs.

17       Samuels in this case.  We can't know that at this

18       juncture of the proceedings in Mr. Dassey's

19       separate case.

20           But what I would propose is that I treat

21       the October 16 deadline as a good time to file

22       any other motion, other than an in limine issue

23       properly addressed much closer to trial, you
```

CHRM009674

CONFIDENTIAL

24          know, that has arisen with new discovery, or new

25          information, or new events since June 16.

1           For that matter, September 13, I also

2           could treat as a date for raising any new issues.

3           I know there's at least one that I intend to

4           raise so, that's disclosure.  And I guess also

5           jointly request that the Court set a date, fix a

6           date for me to do that, or accommodate new issues

7           that have arisen.

8                THE COURT:  Mr. Kratz.

9                ATTORNEY KRATZ:  We are going to need a

10          scheduling conference anyway, Judge.  We talked

11          about jury questionnaires.  We talked about
exchange

12          of experts and some other more definite
scheduling

13          order from the Court.  And whether the Court
wants

14          to do that by a phone conference, to at least

15          schedule that meeting, or wants to set that
meeting,

16          we're certainly amenable to that.

CHRM009675

CONFIDENTIAL

17          THE COURT:  All right.  Because of the

18          contemplated adjournment of the trial date, I
didn't

19          give that as much attention as I might have
before

20          today.  I agree that we're going to need a

21          scheduling conference at some point to establish

22          timelines for filing motions in limine, jury

23          questionnaires, those types of things.  Do either
of

24          the parties have any suggestions about when that

25          could be effectively accomplished?


61


1          ATTORNEY STRANG:  Well, we'll know where
we

2          are on some things on October 16, particularly
DNA,

3          and the wrongful conviction, and victim's history

4          information.

5          ATTORNEY KRATZ:  Perhaps later that
week,

6          Judge, we know it's blocked off our calendar so.

7          THE COURT:  I know I have got time that

CHRM009676

CONFIDENTIAL

```
8         week.  All right.  I'm having the clerk get me my

9         calendar.

10                ATTORNEY KRATZ:  Could either be that

11        Thursday or Friday, those work best for us,
Judge.

12                THE COURT:  Thursday the 19th, morning
or

13        afternoon?

14                ATTORNEY KRATZ:  Morning would be just

15        fine.

16                THE COURT:  Should we say 10:00.

17                ATTORNEY BUTING:  That's fine.

18                ATTORNEY KRATZ:  That's good, Judge.
Thank

19        you.

20                THE CLERK:  What date was that?

21                THE COURT:  October 19th.

22                ATTORNEY KRATZ:  Will that be on the
record

23        or in chambers, your Honor?

24                THE COURT:  I will notify you about that
a

25        little closer to the date, whether it will be on
the
```

62

CHRM009677

CONFIDENTIAL

```
 1        record, or simply a scheduling conference, or

 2        something that involves going on the record.  For

 3        now, it will be an off the record scheduling

 4        conference, but I'm going to hold the time in the

 5        event there is anything to deal with on the
record.

 6        Does either party have anything else that needs

 7        addressing?

 8                ATTORNEY STRANG:  So we'll address

 9        deadlines for further motions and the whole sort
of

10        schedule before trial at that point?

11                THE COURT:  Yes.

12                ATTORNEY STRANG:  Fine.

13                THE COURT:  Anything else today?

14                ATTORNEY KRATZ:  No, Judge.  Thank you.

15                THE COURT:  If not, we're adjourned for

16        today.

17                (Proceedings concluded.)

18

19

20

21

22

23
```

CHRM009678

CONFIDENTIAL

24

25

63

1   STATE OF WISCONSIN  )
                              )ss
2   COUNTY OF MANITOWOC )

3

4                  I, Diane Tesheneck, Official Court

5        Reporter for Circuit Court Branch 1 and the State

6        of Wisconsin, do hereby certify that I reported

7        the foregoing matter and that the foregoing

8        transcript has been carefully prepared by me with

9        my computerized stenographic notes as taken by me

10       in machine shorthand, and by computer-assisted

11       transcription thereafter transcribed, and that it

12       is a true and correct transcript of the

13       proceedings had in said matter to the best of my

14       knowledge and ability.

15                Dated this 29th day of January, 2007.

CHRM009679

CONFIDENTIAL

16

17

18

_____

19                          Diane Tesheneck, RPR
                            Official Court Reporter
20

21

22

23

24

25

64

CHRM009680

CONFIDENTIAL