# EXHIBIT 16

STATE OF WISCONSIN     CIRCUIT COURT     MANITOWOC COUNTY

**STATE OF WISCONSIN,**
            Plaintiff,

vs.                           **Case No. 05 CF 381**

**STEVEN A. AVERY,**
            Defendant.

FILED JAN 30 2007 CLERK OF CIRCUIT COURT MANITOWOC COUNTY

## DECISION AND ORDER ON STATE'S MOTION
## TO EXCLUDE BLOOD VIAL EVIDENCE

On January 3, 2007 the State filed a Motion to Exclude Blood Vial Evidence, or in the alternative, to Analyze the Vial of Blood. The court issued a Decision and Order Denying the State's Motion for Continuance to Analyze Vial of Blood on January 9, 2007. Prior to ruling on the State's motion to exclude blood vial evidence, the defendant was given an opportunity to submit an offer of proof in support of his request to admit blood vial evidence. The defendant submitted the "Defendant's Statement on Planted Blood" on January 12, 2007. The State filed its "Reply to Defendant's Statement on Planted Blood" on January 16, 2007. The court heard oral argument from the parties at a motion hearing on January 19, 2007.

The blood vial which is the subject of the State's motion is a vial of the defendant's blood located in the Manitowoc County Clerk of Circuit Court office

1

CONFIDENTIAL

CHRM003721

in the file for Case No. 85 FE 118. The defense seeks to introduce the vial as evidence suggesting that members of the Manitowoc County Sheriff's Department planted blood from the vial in Teresa Halbach's vehicle. There was blood found in her vehicle which was subsequently identified as the defendant's blood by the Wisconsin State Crime Lab.

It is well settled that defendants in a criminal case have a constitutional right to present a defense. "Whether rooted directly in the due process clause of the 14th Amendment or in the compulsory process or confrontation clauses of the 6th Amendment, the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense." *Holmes v. South Carolina*, 126 S. Ct. 1727, 1731 (2006) (other citations omitted). The right to present a defense is not without limitations. "State and federal rule makers have broad latitude under the constitution to establish rules excluding evidence from criminal trials." *Id.* In this case, the defendant seeks the introduction of the blood vial evidence to be used as part of a "frame-up" defense. Specifically, the defendant seeks to introduce evidence in order to show that members of the Manitowoc County Sheriff's Department took blood from the blood vial in the Manitowoc County Clerk of Circuit Court office and planted it in Teresa Halbach's vehicle in an attempt to frame him for her death.

(2)

CHRM003722

CONFIDENTIAL

The rules governing admissibility of frame-up evidence in Wisconsin are set forth in *State v. Richardson*, 210 Wis. 2d 694 (S. Ct. 1997). The Supreme Court in *Richardson* determined that a criminal defendant is not required to comply with the stricter "legitimate tendency" test set forth in *State v. Denny*, 120 Wis. 2d 614 (Ct. App. 1984), which applies to evidence of third-party liability, when seeking to introduce frame-up evidence. Instead, frame-up evidence is to be analyzed under the Wisconsin Rules of Evidence for relevance, which primarily involves an application of §904.01, 904.02, and 904.03. 210 Wis. 2d at 705-706. To apply these rules, it is necessary to summarize the offer of proof submitted by the defendant.

At oral argument, the defendant identified James Lenk and Andrew Colborn as the sheriff's department officers he claims were involved in the alleged frame up. The defendant submits that both Lenk and Colborn would have had a motive to plant evidence against him because of their role in his lawsuit against Manitowoc County relating to his wrongful 1985 criminal conviction. Specifically, the defendant offers to prove that both Lenk and Colborn were involved in a 1995 or 1996 telephone call received by the Sheriff's Department from another law enforcement agency which reported that an inmate had confessed to an assault in Manitowoc County for which another man was incarcerated. Avery asserts he was the wrongfully incarcerated man referred to in the call.

(3)

CONFIDENTIAL

CHRM003723

Avery asserts that neither Colborn nor Lenk acted on this report at the time and did not prepare a report of the call until September 12, 2003, the day after Avery's release from prison. Moreover, Avery points out that Lenk and Colborn were deposed in Avery's lawsuit against Manitowoc County only three weeks before Teresa Halbach disappeared. Avery asserts that the County was able to settle its lawsuit on terms favorable to the County after he was charged in this case.

With respect to the blood vial itself, Avery proposes to show that the blood was taken from him in 1996 in connection with his 1985 case and has been present in the Manitowoc County Clerk's office in his file for some time. He indicates there are notations on the vial indicating that it was opened in 2002 in the presence of then Manitowoc County District Attorney E. James Fitzgerald and attorneys for the Wisconsin Innocence Project before being placed back in the file. Since that time, the box and Styrofoam container in which the blood is enclosed have both been unsealed, except for the box being closed with a small piece of Scotch tape. While the blood vial itself was not submitted to the crime lab as part of Mr. Avery's case at the time, James Lenk prepared the transmittal documentation for other exhibits which were submitted to the crime lab in 2002. Avery points out that his file has been directly accessible to members of the public since September, 2003, during which time many members of the media and the public sought to go through the file. Avery notes that until the autumn of 2006, the clerk's office did

(4)

CHRM003724

CONFIDENTIAL

not keep any records of individuals who asked for permission to look at the file. Avery concludes that anyone intent on obtaining a sample of his blood could have done so. In addition to the public access to the file, he points out that the Manitowoc County Sheriff's Department has a key to courthouse offices and could have obtained access to the blood vial after hours, had a member of the department wished to do so. He notes that that when the vial was inspected on December 14, 2006 it had a lavender rubber-type stopper not sealed with any tape and the stopper has a needle hole through it.

With respect to this case, Avery asserts that both Mr. Lenk and Mr. Colborn showed a particular interest in the case from the time Teresa Halbach was first reported missing on November 3, 2005. He notes that Colborn participated in a visit to Avery and interview with him on the evening of November 3, 2005. Lenk participated in a similar inquiry on the morning of November 4, 2005. Avery asserts that Lenk's whereabouts for portions of November 5, 2005, the date Teresa Halbach's vehicle was discovered on the Avery property by searchers, are unaccounted for. Avery notes that Lenk claimed to have worked ten hours for the sheriff's department on November 5, 2005 but that he testified he did not get to the Avery property on that date until 6:30 or 7:00 p.m. in the evening. Records show he left the Avery property at 10:41 p.m. He states that Lenk admitted approaching Halbach's vehicle on November 5, but denied touching it. Avery attaches further

5

CONFIDENTIAL

CHRM003725

significance to the fact Lenk volunteered to help search Steven Avery's residence on November 5 after control of the investigation into Teresa Halbach's disappearance had been turned over to the Calumet County Sheriff's Department. Avery believes Lenk should not have been volunteering to search anything to avoid the appearance of a conflict of interest. Avery also believes it is important to note that neither Lenk nor Colborn informed Calumet County Sheriff's officials that they gave deposition testimony in Avery's civil lawsuit approximately three weeks earlier.

Avery states that Mr. Lenk played a significant role in the investigation. He discovered a key belonging to Teresa Halbach's vehicle in Avery's residence after the residence had been searched a number of times earlier by other officers. None of those officers observed the key that Lenk reported was in plain view on the floor when he discovered it. Avery notes that the key represents the only piece of physical evidence found inside his residence which connects him to the crime. He acknowledges that the key, when examined at the Wisconsin State Crime Lab, was found to contain his DNA, but not Teresa Halbach's.

Lenk also participated in the search of the Avery property in March of 2006, following receipt of Brendan Dassey's statements. Avery finds it significant that the day after Lenk visited the Avery property other officers found a small bullet fragment in a detached garage near Steven Avery's residence that was found to

CHRM003726

CONFIDENTIAL

contain a profile consistent with Teresa Halbach's DNA. Avery points out that the garage had been searched before without the bullet being discovered and appears to suggest that Lenk may have planted the bullet, though Avery points out there are other exculpatory explanations for the presence of the bullet as well.

Avery acknowledges that he has no direct proof that Lenk, Colborn, nor any other Manitowoc County Sheriff's Department officer took blood from the file in the Clerk of Court office or planted blood from the vial in Teresa Halbach's vehicle. He relies on the circumstantial evidence summarized as sufficient to justify the admission of the blood vial and other related evidence to support his position.

The parties agree that Teresa Halbach's car was discovered on the Avery property by volunteer searchers Pamela and Nicole Sturm at about 10:30 a.m. on November 5, 2005. The first law enforcement officers arrived on the scene a little after 11:00 a.m. A number of officers were present on the Avery property prior to the time the vehicle was removed by Wisconsin Crime Lab personnel at 8:40 p.m. on November 5, 2005. Avery points out that while no one is reported to have entered Teresa Halbach's vehicle before it was removed by crime lab personnel, no one who examined it from the outside reported seeing any blood stains inside. As of this time, the court has not been informed by either side how big the blood stains would have been.

(7)

CHRM003727

CONFIDENTIAL

The defendant's written "*Richardson* Proffer" was not specific in describing exactly what members of the Sheriff's Department were alleged to have been involved in any frame-up, when they were alleged to have obtained the blood from the vial in the court file, nor when they would have planted the blood in Teresa Halbach's vehicle. Based on the oral argument presented on January 19, 2007, the court understands Mr. Avery's position now to be that sometime between November 3, 2005, the date Teresa Halbach was reported missing, and November 5, 2005, the day her vehicle was discovered, either Lenk, Colborn or both made their way in to the Manitowoc County Clerk of Courts office, located the 1985 file, and removed blood from the vial in the file. One or both of them then, sometime between 11:00 a.m. and 8:40 p.m. on November 5, 2005, gained access to Teresa Halbach's vehicle and planted the blood. The court does not understand Avery will be attempting to implicate any members of the Sheriff's Department other than Mr. Lenk or Mr. Colborn in any frame-up.

The State disputes a number of the factual assertions submitted to the court by the defendant. Specifically, the State provided a timeline in its Reply to Defendant's Statement on Planted Blood asserting that officers other than Lenk and Colborn were standing guard over Teresa Halbach's vehicle from the time police first arrived on the scene until it was removed by Wisconsin State Crime Lab personnel. The State also asserts that the defendant's DNA was found on the

(8)

CONFIDENTIAL                                                                                                                                               CHRM003728

hood latch of Teresa Halbach's vehicle besides being found in her vehicle. The State asserts that the defendant's DNA found on the key to Teresa Halbach's vehicle was not blood, but came from another biological source. The State intends to offer evidence that the needle hole in the top of the blood vial was placed there by the phlebotomist who withdrew Mr. Avery's blood back on January 2, 1996. The State disputes other assertions by Mr. Avery as well, which the court will not dwell on here. It is sufficient to note that the court cannot reject the defendant's offer of proof simply by determining that the State's offer is entitled to more weight. That is specifically the type of approach which was rejected by the United State Supreme Court decision in *Holmes v. South Carolina*, 126 S. Ct 1727 (2006).

The first step under the *Richardson* test is to determine whether the blood vial evidence is relevant. This involves a determination of whether the frame-up evidence is a fact of consequence to the determination of the action and, if it did concern such a fact, whether it made the existence of that fact more or less probable. *Richardson*, at 705-706.

There is little doubt that the alleged frame-up evidence concerned a fact of consequence to the determination of this action. If the defendant's blood found its way to Teresa Halbach's vehicle not by anything he did, but because it was placed there by a member of the Manitowoc County Sheriff's Department after Ms. Halbach's disappearance, it would clearly concern a fact of consequence to the

(9)

CONFIDENTIAL
CHRM003729

determination of this action. The court is certain the State will offer at trial that the presence of the defendant's blood in Teresa Halbach's vehicle is strong evidence that he was responsible for or involved with her death.

The next step of the relevancy test is to determine whether the offered frame-up evidence has any tendency to make a consequential fact more or less probable. *Richardson* instructs that "the 'any tendency' standard reflects the broad definition of relevancy and the resulting low threshold for the introduction of evidence that the relevancy definition creates." *Richardson*, at p. 707. The State has argued vigorously that the evidence should be excluded because it has no tendency to make a consequential fact more or less probable. There is no doubt that the conclusion that the evidence was planted is a consequential issue in the case, but the question is whether the evidence offered has a tendency to make that fact more or less probable. Among the facts not offered by the defense is how Lenk or Colborn would have gained knowledge as to the presence of the blood in the Clerk of Circuit Court office. The defendant offers that Lenk prepared paperwork for the transmission of other evidence to the State Crime Lab in 2002, but does not explain how Lenk would have gained knowledge of the blood vial in the file, a piece of evidence that was not transmitted. There is no factual evidence other than the defendant's argument that it was possible to support the proposition that someone actually removed any blood from the vial in the Clerk of Circuit

10

CHRM003730
CONFIDENTIAL

Court office. In addition, there is no direct evidence offered to explain how either Lenk or Colborn would have planted the blood in Teresa Halbach's vehicle, other than allegations that one or both of them may have had an opportunity to do so. Among the other limitations on the probative value of the offered evidence is a fact pointed out by the State at oral argument: How could Lenk or Colborn have known that Teresa Halbach was dead at the time they are alleged to have planted the defendant's blood in her vehicle? Under the defendant's theory, either Lenk, Colborn, or both would have had to have formulated a plan involving their own commission of serious felonies and executed that plan within a very short period of time, motivated apparently only by their embarrassment for not allegedly having acted more responsibly on information that could have led to Mr. Avery's exoneration back in 1995 or 1996. The court agrees with the State that as the defendant's offer of proof has developed to this point, it is of marginal probative value to support the proposition for which it is offered. That being said, the standard for materiality in Wisconsin is very low and the court cannot say the evidence is so devoid of probative value that it does not meet the relevancy test. The defendant essentially accused Lenk and Colborn of contributing years to his wrongful conviction sentence because of their alleged failure to act on information that could have led to his freedom earlier. Their testimony relating to his allegations shortly before Teresa Halbach disappeared could have provided a

(11)

CHRM003731
CONFIDENTIAL

motive for them to falsify evidence. The defendant has offered some evidence that they could have had an opportunity to act on that motive, had they desired to do so. The evidence offered to this point is not exactly overwhelming. However, to paraphrase *Richardson*, the court concludes that "the frame-up evidence would have some tendency, however small, to make it less probable that" Avery committed some or all of the crimes charged. *Richardson*, at 707.

The last step of the *Richardson* test requires the court to consider is whether the evidence should be excluded under §904.03. That statute reads as follows:

> "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time or needless presentation of cumulative evidence."

As the court has already noted, the probative value of the offered evidence in this case is not particularly strong. *Richardson* pointed out that where "the probative value of the frame-up evidence is relatively slight, it follows that the level of dangers and considerations needed to substantially outweigh that probative value is correspondingly lower." *Richardson*, at 709.

In his Statement on Planted Blood, the defendant appeared to be arguing that any member of the Manitowoc County Sheriff's Department may have taken blood from the vial in the Manitowoc County Clerk of Circuit Court office and that the blood may have been taken at any time between the time the vial was opened by

(12)

the Manitowoc County District Attorney and an attorney for the Wisconsin Innocence Project in 2002 and the time it was alleged to have been planted in Teresa Halbach's vehicle. Were these facts the entirety of the defendant's offer of proof, the court would find that the evidence should be excluded under §904.03 because of confusion of the issues as well as considerations of undue delay and waste of time. Such an offer could well include parading every member of the Manitowoc County Sheriff's Department to the witness stand in order to demonstrate that none of them were involved in taking blood from the vial. In addition, the State would be left with attempting to provide evidence showing that no blood was taken from the vial for a period of years. The defendant has offered no explanation as to why someone would have wanted to take Mr. Avery's blood out of the vial before the time Teresa Halbach disappeared.

The defendant has now narrowed his alleged frame-up evidence to a two day period of time. He also alleges that only two individuals were involved. Specifically, the defendant now seeks to offer evidence that either Lenk or Colborn or both removed blood from the vial in the Clerk of Circuit Court office sometime between November 3, the day on which Teresa Halbach was reported missing, and November 5, the date on which her vehicle was discovered, and then planted the blood in the vehicle. With these limitations, the court is satisfied that the evidence offered by the defense will not result in undue delay, waste of time or confusion of

13

the issues. Whatever the probative value of the offered evidence may be, the time needed by either side to present their evidence will be manageable and the court is satisfied that the issue will be focused narrowly enough to enable the jury to evaluate the evidence without being confused.[1]

A few other points should be noted. One of the State's arguments was that Lenk and Colborn could not possibly have been involved in the frame-up unless they were also involved in the murder of Teresa Halbach. Avery asserts that he will be making no claim that any member of the Manitowoc County Sheriff's Department was involved in Teresa Halbach's murder. The State is free to argue its theory to the jury, but the court is not going to address an argument attributed to the defendant which the defendant is not making.

The State also raises the issue of unfair prejudice because of its inability to test the vial of blood for the presence of EDTA. This issue has already been addressed by the court to a large extent in its prior decision on the State's motion to adjourn the trial. The court certainly can entertain any request by the State to test the blood at this time, should such a request be pursued.

---

[1] The court is aware from its notes that at oral argument the defendant tried not to close the door completely on offering evidence that blood may have been taken at some other time or by someone else. However, the defense has made no offer of proof concerning any such alternate scenario other than speculation. The court is allowing the blood vial evidence in only as it relates to the facts specifically advanced by the defendant that the blood would have been taken by either Lenk or Colborn sometime between November 3 and November 5.

CHRM003734

CONFIDENTIAL

## ORDER

Subject to the limitations set forth in its decision, the court orders that the defense may present evidence relating to the blood vial in Case No. 85 FE 118.

Dated this _____ day of January, 2007.

BY THE COURT:

_____
Patrick L. Willis,
Circuit Court Judge

(15)

CHRM003735

CONFIDENTIAL