# EXHIBIT 22

STATE OF WISCONSIN : CIRCUIT COURT : MANITOWOC COUNTY
BRANCH 1

STATE OF WISCONSIN,

PLAINTIFF,        JURY TRIAL
                                TRIAL – DAY 10
VS.                        Case No. 05 CF 381

STEVEN A. AVERY,

DEFENDANT.

**DATE:**   FEBRUARY 23, 2007

**BEFORE:**   Hon. Patrick L. Willis
Circuit Court Judge

**APPEARANCES:**   KENNETH R. KRATZ
Special Prosecutor
                  On behalf of the State of Wisconsin.

                  THOMAS J. FALLON
Special Prosecutor
                  On behalf of the State of Wisconsin.

                  NORMAN A. GAHN
Special Prosecutor
                  On behalf of the State of Wisconsin.

                  DEAN A. STRANG
Attorney at Law
                  On behalf of the Defendant.

                  JEROME F. BUTING
Attorney at Law
                  On behalf of the Defendant.

                  STEVEN A. AVERY
Defendant
                  Appeared in person.

                  TRANSCRIPT OF PROCEEDINGS
              Reported by Diane Tesheneck, RPR
                  Official Court Reporter

                        1

CHRM007094
CONFIDENTIAL

# I N D E X

WITNESSES                                                          PAGE

**KATIE HALBACH**

Direct Examination by ATTORNEY KRATZ              36

Cross-Examination by ATTORNEY STRANG             46

**RONALD L. GROFFY**

Direct Examination by ATTORNEY GAHN              50

Cross-Examination by ATTORNEY BUTING             61

**SHERRY CULHANE**

Direct Examination by ATTORNEY GAHN              82

| **EXHIBITS** | MARKED | OFFERED | ADMITTED |
|---|---|---|---|
| 208-210 | | 204 | 204 |
| 217 | | 206 | 206 |
| 219-220 | | 205 | 205 |
| 251 | | 201 | 203 |
| 285-288 | | 46 | 46 |
| 289-305 | | 81 | 81 |
| 306-308 | | 81 | 81 |
| 309-318 | | 201 | 203 |
| 319-340 | | 202 | 203 |

2

CONFIDENTIAL

CHRM007095

| | | |
|---|---|---|
| 1 | A. | These types are actually the different fragment |
| 2 | | sizes, those different target sizes that we |
| 3 | | amplified. The ABO system is a type of genetic |
| 4 | | marker, but the discriminating power of ABO |
| 5 | | systems, which is what we used many years ago, is |
| 6 | | much less than the discriminating power of the |
| 7 | | combined -- all of these combined types. |
| 8 | Q. | Now, you previously testified that you collected |
| 9 | | your swab A-1 from the rear cargo area -- |
| 10 | A. | Yes. |
| 11 | Q. | -- of the RAV4; is that correct? |
| 12 | A. | Yes. |
| 13 | Q. | Can we go to the next one, please. And, again, |
| 14 | | please show the jurors where you collected your |
| 15 | | A-1 from. |
| 16 | A. | In this area right here. |
| 17 | Q. | And that was a blood stain that tested positive |
| 18 | | in this presumptive test, correct? |
| 19 | A. | Right. |
| 20 | Q. | You also testified that you collected swab A-2 |
| 21 | | from across the panel of the rear cargo area. |
| 22 | | Show the jurors, again, where that was. |
| 23 | A. | Yes, that was right in this area here. |
| 24 | Q. | And you also testified that you collected your |
| 25 | | swab A-4 from the metal frame. Show the jurors |

151

CHRM007244

CONFIDENTIAL

```
 1         where that was.

 2    A.   Right along here.

 3    Q.   And you also testified that you collected A-3

 4         from the cargo door itself; is that correct?

 5    A.   Yes.

 6    Q.   And can you show the jurors where that is?

 7    A.   Right here.

 8    Q.   And, again, all of these stains, you had a

 9         presumptive positive test for blood?

10    A.   That's correct.

11    Q.   And you also testified that you collected a swab

12         from the Wild Cherry Pepsi can which you labeled

13         at A-14; is that correct?

14    A.   Yes, right here.

15    Q.   And, again, show the jurors.  Thank you.  Now,

16         did you develop DNA profiles from each of these

17         swabs?

18    A.   Yes, I did.

19    Q.   And according to the reports that you have, does

20         the following slide correctly depict your

21         results?

22    A.   Yes, it does.

23    Q.   And, again, would you explain to the jurors what

24         this slide shows.

25    A.   Again, these are the genetic markers, these are
```

152

CHRM007245

CONFIDENTIAL

| | |
|---|---|
| 1 | the 15 different markers we're looking at.  And |
| 2 | these are the types that were developed from each |
| 3 | one of these evidence samples. |
| 4 | Q. And each one of those evidence samples came from |
| 5 | the RAV4 of Teresa Halbach, correct? |
| 6 | A. Correct. |
| 7 | Q. Now, can you tell whether this particular DNA |
| 8 | profile is from a male or a female? |
| 9 | A. Yes. |
| 10 | Q. How can you do that? |
| 11 | A. This marker here, referred to as amylogen, is a |
| 12 | gender marker.  If you are female, you are only |
| 13 | going to have an X chromosome.  If you are a |
| 14 | male, you will have a X and a Y chromosome. |
| 15 | Q. So this profile is from a female? |
| 16 | A. Correct. |
| 17 | Q. I notice that after genetic marker D7SA20 there |
| 18 | is an 11? |
| 19 | A. Correct. |
| 20 | Q. Why is there only one number there? |
| 21 | A. As I stated earlier, these genetic markers are |
| 22 | independently inherited, just like genes.  So you |
| 23 | inherit 50 percent from your mom and 50 percent |
| 24 | from your dad.  Now, the fact that this is an 11 |
| 25 | means that she is a homozygote at this marker. |

153

CHRM007246

CONFIDENTIAL

```
 1        And that means she got the same type from her mom
 2        and the same type from her dad.  At D-3 there are
 3        two markers.  This is referred to as a
 4        heterozygote.  And she received one from her mom
 5        and one from her dad.
 6    Q.  And this DNA profile that you developed from the
 7        cuttings and the swabs from the RAV4, did you
 8        compare that profile to the DNA profile that you
 9        developed from Teresa Halbach's Pap smear?
10    A.  Yes, I did.
11    Q.  And according to your reports, does this slide
12        correctly display your findings?
13    A.  Yes, sir, it does.
14    Q.  Would you please point out to the jurors your
15        findings and conclusions?
16    A.  Again, these are all the genetic markers.  And
17        you can see that the types from the evidence
18        samples are consistent with the types from the
19        Pap smear of Teresa Halbach.  So at this genetic
20        marker, the evidence sample is 16 18, Teresa is
21        16 18.  At this marker it's 69.3, Teresa is a
22        69.3.  And all of these markers are consistent
23        with the ones from Teresa Halbach.
24    Q.  And did you calculate a statistic to determine
25        how rare or how common this particular DNA
```

154

CHRM007247

CONFIDENTIAL

```
 1        profile would be in the population?
 2   A.   Yes, I did.
 3   Q.   And I'm going to show you a slide and ask you if
 4        this correctly depicts the statistical analysis
 5        that you performed?
 6   A.   Yes, it does.
 7   Q.   And would you explain to the jurors what this
 8        slide means.
 9   A.   Remember earlier I said that we do a statistical
10        analysis when we have a match between an evidence
11        sample and a reference sample.  If we have an
12        exclusion, we're finished, that's the end of it.
13        But if you have a match between an evidence
14        sample and a reference sample, then you have to
15        determine how common or how rare that match -- or
16        I mean that profile from the evidence sample is
17        in the population.
18             This first number here tells me that the
19        probability of finding someone in the Caucasian
20        population, some unrelated, random person that
21        has the same profile as the evidence sample, the
22        probability of that is 1 person in 416
23        quadrillion in the Caucasian population, 1 person
24        in 642 quadrillion in the African-American
25        population, 1 person in 641 quadrillion in the
```

155

CHRM007248

CONFIDENTIAL

| 1 | | southeastern Hispanic population, and 1 person in |
|---|---|---|
| 2 | | 1 quintillion in the southwestern Hispanic |
| 3 | | population. |
| 4 | Q. | And why do you look at these different |
| 5 | | populations when you are estimating the frequency |
| 6 | | of these genetic markers? |
| 7 | A. | When we are calculating and estimating these |
| 8 | | frequencies, we use a data base that's maintained |
| 9 | | by the FBI. And that data base has samples from |
| 10 | | individuals in these four different population |
| 11 | | groups. This slide illustrates that even though |
| 12 | | the rarity of the profile is different, in these |
| 13 | | four population groups, there's not a lot of |
| 14 | | difference between population groups. There are |
| 15 | | some differences, but this profile is extremely |
| 16 | | rare across all four populations. |
| 17 | Q. | What does this number -- What do these numbers |
| 18 | | mean, Ms Culhane? |
| 19 | A. | This number means that the probability of finding |
| 20 | | a person, random person, unrelated, in the |
| 21 | | population, that has the same profile as the |
| 22 | | evidence sample, is 1 person in 416 quadrillion. |
| 23 | Q. | Do you have an opinion, to a reasonable degree of |
| 24 | | scientific certainty, whether Teresa Halbach is |
| 25 | | the source of the blood that you found on A-1, |

156

CHRM007249

CONFIDENTIAL

| | |
|---|---|
| 1 | A-2, A-3 and A-4, and the source of the |
| 2 | biological fluid on the Wild Cherry Pepsi can? |
| 3 | A. Yes, I do. |
| 4 | Q. And what is that opinion? |
| 5 | A. That Teresa Halbach is the source of the DNA from |
| 6 | those items. |
| 7 | ATTORNEY GAHN: I'm going to ask Detective |
| 8 | Wiegert to bring you what has been marked as Exhibit |
| 9 | 337. |
| 10 | Q. Again, I have spoken with defense counsel before |
| 11 | we began this afternoon and, Ms Culhane, does |
| 12 | that container, which is Exhibit 337, contain |
| 13 | some charred remains that you examined in this |
| 14 | case? |
| 15 | A. Yes, it does. |
| 16 | Q. And did you assign a Crime Lab designation number |
| 17 | to that? |
| 18 | A. Yes, I did. |
| 19 | Q. What is that? |
| 20 | A. Item BZ. |
| 21 | Q. And I'm going to ask you to look on the slide on |
| 22 | the big screen. And what is contained in that |
| 23 | box there in front of you, which is Exhibit 337, |
| 24 | is this the piece of charred remains that you |
| 25 | examined? |

157

CHRM007250

CONFIDENTIAL

```
 1    A.    Yes, it is.

 2    Q.    And when did you receive this; do you know?

 3    A.    I can refer to my notes.

 4    Q.    Please.

 5                THE COURT:  Do we have a number for the

 6          photo exhibit?

 7                ATTORNEY GAHN:  Your Honor, we don't have

 8          that with us, but you will get one.

 9    A.    Item BZ was taken into the laboratory on November

10          11th, 2005.

11    Q.    And was this -- When you examined this, was this

12          a combination of bone and tissue?

13    A.    It appeared to be, yes.

14    Q.    And what is shown on the big screen here, which

15          we will later get an exhibit for and mark it, is

16          that the bone and tissue fragment sample that you

17          examined?

18    A.    Yes, it is.

19    Q.    How did you go about processing this for DNA?

20    A.    Because this sample was compromised, it had been

21          subjected to -- appeared to be subjected to

22          intense heat, I needed to find an area that I

23          felt was the least damaged.  So I chose a portion

24          of the tissue, which I believe was in this area

25          here, close to the bone.  And sampled a portion
```

158

CHRM007251

CONFIDENTIAL

| | |
|---|---|
| 1 | of that to continue my extractions and to |
| 2 | continue my typing. |
| 3 | Q. | Were you able to develop a DNA profile from this |
| 4 | piece of charred remains? |
| 5 | A. | Yes, I was. |
| 6 | Q. | And according to your reports, does the next |
| 7 | slide correctly display your findings of your |
| 8 | test? |
| 9 | A. | Yes, it does. |
| 10 | Q. | Would you explain to the jurors what this is. |
| 11 | A. | Again, these are the genetic markers that we're |
| 12 | looking at. And these are the types. You will |
| 13 | notice here there are no numbers at these |
| 14 | positions, these markers. And the reason is |
| 15 | because this was a fairly degraded sample of DNA. |
| 16 | DNA is a very stable molecule; however, it breaks |
| 17 | down and is degraded and broken up into pieces by |
| 18 | several things, heat being one, sunlight, |
| 19 | nucleases in the environment that chew it up. |
| 20 | But this was obviously a sample that had |
| 21 | been subjected to intense heat. And so, |
| 22 | therefore, on these fragments, these STR markers, |
| 23 | which are fairly large, the fragments -- there |
| 24 | was not enough DNA at those positions to develop |
| 25 | a type. |

159

CHRM007252

CONFIDENTIAL

1   Q.   Did you compare this partial profile with the DNA

2        profile that you obtained from the Pap smear of

3        Teresa Halbach?

4   A.   Yes, I did.

5   Q.   And does this slide accurately depict your

6        findings?

7   A.   Yes.

8   Q.   And would you please explain what your findings

9        were, to the jury?

10  A.   In the -- At the marker positions where I did get

11       results, these types are consistent with Teresa.

12       Obviously, I don't know what the types are here

13       because there were no results.  But for

14       everything else, all the types that I actually

15       developed, they were consistent with Teresa

16       Halbach.

17  Q.   Now, you stated previously, when you made your

18       comparisons to Teresa Halbach's DNA profile with

19       the samples of blood that you found in the RAV4,

20       you were able to determine that Teresa Halbach

21       was the source of that blood; is that correct?

22  A.   Yes.

23  Q.   Can you say that in this case?

24  A.   No.

25  Q.   Why not?

160

CHRM007253

CONFIDENTIAL

| | | |
|---|---|---|
| 1 | A. | This was a partial profile. When we have a |
| 2 | | partial profile, we can only do a statistical |
| 3 | | interpretation on the markers that we have |
| 4 | | results for. In order to get very large numbers |
| 5 | | and very rare profiles, what gives us those large |
| 6 | | numbers is results, at all 15 different markers. |
| 7 | | When we have less than that, then the frequency |
| 8 | | of that profile becomes a little more common than |
| 9 | | it would if it was a complete profile. |
| 10 | Q. | Were you able to develop a statistic to tell you |
| 11 | | how rare or how common the DNA profile on Item |
| 12 | | BZ, the charred remains, would be in the |
| 13 | | population? |
| 14 | A. | Yes, I was. |
| 15 | Q. | And does the next slide depict the frequency in |
| 16 | | the population of the DNA profile on the charred |
| 17 | | remains? |
| 18 | A. | Yes. |
| 19 | Q. | And would you explain to the jury these numbers |
| 20 | | and what they mean. |
| 21 | A. | This calculation was done exactly like the |
| 22 | | calculation from the blood stains. The |
| 23 | | difference is, this was not a full profile, it |
| 24 | | was only a partial profile. So if you do a |
| 25 | | statistical analysis of the types that you got, |

161

CHRM007254

CONFIDENTIAL

| | |
|---|---|
| 1 | and calculated the frequency of those types, the |
| 2 | probability of another random, unrelated person, |
| 3 | in the population, having the profile, the |
| 4 | partial profile of the remains, is 1 person in |
| 5 | 1 billion in the Caucasian population, 1 person |
| 6 | in 2 billion in the African/American population, |
| 7 | 1 person in 2 billion in the southeastern |
| 8 | Hispanic population; and 1 person in 3 billion in |
| 9 | the southwestern Hispanic population. |
| 10 | Q. And, again, can you break this down for the |
| 11 | jurors, exactly what that number, one billion, |
| 12 | would mean, as it relates to this DNA profile |
| 13 | from the charred remains? |
| 14 | A. That is the frequency that that partial profile, |
| 15 | those results at just the markers that I got |
| 16 | results from, the frequency of that partial |
| 17 | profile, that is the frequency that it occurs in |
| 18 | the population. |
| 19 | Q. Are there a billion people in the State of |
| 20 | Wisconsin? |
| 21 | A. I don't believe so. |
| 22 | ATTORNEY GAHN: Your Honor, I have now what |
| 23 | has been a photograph that has been marked as |
| 24 | Exhibit 338. I will ask Mr. Fallon if he will give |
| 25 | that to Ms Culhane. |

162

CHRM007255

CONFIDENTIAL

```
 1    Q.   And Ms Culhane, would you look at that
 2         photograph, and is that a photograph of the piece
 3         of charred remains that we previously put up on
 4         the large screen.
 5    A.   Yes, it is.
 6              ATTORNEY GAHN:  I would ask if Detective
 7         Wiegert would bring you Exhibit 237 -- I'm sorry,
 8         277.  This would be the bullet fragment.
 9    Q.   And can you identify that exhibit that's in front
10         of you, Ms Culhane?
11    A.   Yes, this is Crime Lab item designation FL.  And
12         it is a lead bullet fragment.  My initials and
13         markings are on the packaging.
14    Q.   And can you tell when you received that exhibit?
15    A.   That came into the laboratory on May 16 -- I'm
16         sorry, March 16th, 2006, and I took custody on
17         March 28th, 2006.
18    Q.   And how did you process that bullet?
19    A.   The first thing I did was, just like every item
20         of evidence, it was a visual examination.  There
21         was nothing visual on the fragment.  There didn't
22         appear to be any stain.  So in order to remove
23         any residual DNA that might have been on the
24         bullet, I washed it.  I put it in a test tube and
25         washed it with some buffer that we use to extract
```

163

| 1 | | the DNA. And the washing of that bullet, the |
| 2 | | washing liquid is what I performed the rest of my |
| 3 | | procedure on. |
| 4 | Q. | And were you able to develop a DNA profile from |
| 5 | | that washing on Item FL, the bullet? |
| 6 | A. | Yes. |
| 7 | Q. | And according to your reports, does the next |
| 8 | | slide correctly display your findings? |
| 9 | A. | Yes, it does. |
| 10 | Q. | And would you please explain your results to the |
| 11 | | jurors? |
| 12 | A. | Again, I was looking at all of these. These are |
| 13 | | the different markers. And these are the types |
| 14 | | at each one of these markers. You will notice at |
| 15 | | D-16 and at TPOX I am -- there's an asterisk |
| 16 | | there. That indicates that there was a visible |
| 17 | | peak there which represents a type. But it was |
| 18 | | below our parameters for including that in the |
| 19 | | final analysis. So it -- I'm missing a peak here |
| 20 | | and a peak at TPOX. |
| 21 | Q. | And did you compare this profile that you |
| 22 | | obtained from the bullet fragment with the DNA |
| 23 | | profile you obtained from the Pap smear of Teresa |
| 24 | | Halbach? |
| 25 | A. | Yes, I did. |

164

CHRM007257

CONFIDENTIAL

1  Q.   And according to your reports, does this slide

2       correctly display your findings?

3  A.   Yes, it does.

4  Q.   And would you explain them to the jury.

5  A.   The profile from the bullet is consistent with

6       all of the types from Teresa Halbach.  You will

7       notice at D16 she's missing the 13 type, and at

8       TPOX she is missing the 10 type.  And, again,

9       those peaks were visible, but they were below our

10      threshold for calling those types.

11 Q.   Did that have any impact on your match criteria

12      in this interpretation?

13 A.   The impact is that I cannot use the information,

14      the frequencies at this marker, and at this

15      marker, to figure out my final frequency.  In

16      other words, I had to calculate the frequencies

17      at all of the other markers except D16 and TPOX.

18 Q.   But nothing about those two asterisks that you

19      have on your -- on the chart here excluded Teresa

20      Halbach as being on the bullet?

21 A.   That's correct.

22 Q.   Did this match differ in any way from the

23      previous matches that you called?

24 A.   Yes, it did.

25 Q.   And could you explain to the jury what happened.

Case 1:19-cv-00484-BHL   Filed 09/16/22   Page 18 of 30   Document 290-22

CHRM007258

CONFIDENTIAL

| | | |
|---|---|---|
| 1 | A. | Yes, it is. |
| 2 | Q. | Now, you previously testified that you took |
| 3 | | cuttings which you identified as Item A-6 from |
| 4 | | the RAV4? |
| 5 | A. | Correct. |
| 6 | Q. | Can you show the jurors where it was you took the |
| 7 | | cuttings? |
| 8 | A. | In the front driver's seat, right about here. |
| 9 | Q. | And those were the cuttings of a stain that you |
| 10 | | had tested for blood with the presumptive test? |
| 11 | A. | Yes. |
| 12 | Q. | And I also believe that you testified earlier |
| 13 | | that you collected your Item No. A-7 from the |
| 14 | | center console area of the RAV for, would you |
| 15 | | point that out to where that was for the jurors. |
| 16 | A. | Right along the floor here by the console. |
| 17 | Q. | Okay.  And did you perform DNA testing on those |
| 18 | | two evidentiary samples? |
| 19 | A. | Yes, I did. |
| 20 | Q. | And did you develop a DNA profile for the blood |
| 21 | | stain on Item A-6? |
| 22 | A. | Yes, I did. |
| 23 | Q. | And according to your reports, does the next |
| 24 | | slide correctly depict the DNA findings? |
| 25 | A. | Yes, it does. |

185

CHRM007278

CONFIDENTIAL

| | | |
|---|---|---|
| 1 | Q. | And, again, would you explain those to the |
| 2 | | jurors. |
| 3 | A. | Again, these are the same 15 markers and these |
| 4 | | are the types at each one of these markers that |
| 5 | | were developed from the cutting of the stain in |
| 6 | | the driver's seat of the RAV4. |
| 7 | Q. | And, again, is this what you consider to be a |
| 8 | | complete full DNA profile? |
| 9 | A. | Yes. |
| 10 | Q. | And did you also compare this profile to the DNA |
| 11 | | profile that you developed from the buccal swab |
| 12 | | of Steven Avery? |
| 13 | A. | Yes, I did. |
| 14 | Q. | And does this slide correctly display your |
| 15 | | findings? |
| 16 | A. | Yes, it does. |
| 17 | Q. | And would you explain your findings to the jury? |
| 18 | A. | Again, this is the profile developed from the |
| 19 | | evidence sample.  You can tell it's from a male |
| 20 | | individual.  All of the types are consistent with |
| 21 | | each one of the types, at each marker, from the |
| 22 | | reference standard of Steven Avery. |
| 23 | Q. | And the DNA profile that you found in Item A-6, |
| 24 | | the bloodstain, did you compare that to the other |
| 25 | | standards that you received at the lab? |

186

CHRM007279

CONFIDENTIAL

```
 1   A.   Yes, I did.

 2   Q.   And how did this profile compare to the other

 3        standards?

 4   A.   It was not consistent with any of the other

 5        standards that I examined.

 6   Q.   It was only consistent with the DNA profile of

 7        Mr. Steven Avery?

 8   A.   That's correct.

 9   Q.   Did you develop a DNA profile from your Item No.

10        A-7, which were the blood crusts by the center

11        console?

12   A.   Yes.

13   Q.   And does the following slide show your findings?

14   A.   Yes, it does.

15   Q.   And would you explain those to the jurors.

16   A.   Again, at each genetic marker, these are the

17        types.  At D-5, this asterisk here indicates that

18        there was a peak there, a visible peak, but it

19        was below the parameters of our system.  So that

20        would not be included in the statistical

21        interpretation of this sample -- of this profile.

22   Q.   Now, that's only not included in the statistical

23        analysis, correct?

24   A.   Correct.

25   Q.   Now, the fact that that asterisk was there, did
```

187

CHRM007280

CONFIDENTIAL

| | |
|---|---|
| 1 | not have any impact in your interpretation of |
| 2 | this profile as it compared to Steven Avery, did |
| 3 | it? |
| 4 | A. No. |
| 5 | Q. And did you compare this profile to Steven |
| 6 | Avery's profile? |
| 7 | A. Yes, I did. |
| 8 | Q. And does this slide correctly show your findings? |
| 9 | A. Yes, it does. And, again, you can see that the |
| 10 | profile is consistent with Steven Avery at every |
| 11 | genetic marker. |
| 12 | Q. Do you have an opinion, to a reasonable degree of |
| 13 | scientific certainty, whether Steven Avery is the |
| 14 | source of the blood stain on Item A-6, which was |
| 15 | the stain found on the driver's passenger seat? |
| 16 | A. Yes, I do. |
| 17 | Q. And what is that opinion? |
| 18 | A. That Steven Avery is the source of that profile. |
| 19 | Q. And do you have an opinion, to a reasonable |
| 20 | degree of scientific certainty, whether Steven |
| 21 | Avery is the source of the DNA profile that you |
| 22 | found on Item A-7, the blood crusts by the center |
| 23 | console? |
| 24 | A. Yes, I do. |
| 25 | Q. And what is that opinion? |

188

CHRM007281

CONFIDENTIAL

| | |
|---|---|
| 1 | A. That Steven Avery is consistent with that |
| 2 | profile. |
| 3 | Q. Do you have Exhibit 293 in front of you? |
| 4 | A. No, I'm sorry, I don't. |
| 5 | Q. I'm sorry. Do you have that now? |
| 6 | A. Yes. |
| 7 | Q. Is that photograph the same photograph that is up |
| 8 | on the big screen? |
| 9 | A. Yes, it is. |
| 10 | Q. Now, you previously testified that you collected |
| 11 | a cutting which you identified as Item A-9 of a |
| 12 | bloodstain from the front passenger seat of |
| 13 | Teresa Halbach's RAV4. Can you show the jurors |
| 14 | where that cutting was, once more. |
| 15 | A. Yes, right in this area here. |
| 16 | Q. And did you perform a DNA test on that cutting? |
| 17 | A. Yes, I did. |
| 18 | Q. And according to your reports, does the following |
| 19 | slide correctly display your results? |
| 20 | A. Yes, it does. |
| 21 | Q. Could you explain them to the jurors. |
| 22 | A. These are the exact same markers that we looked |
| 23 | at in each sample. And, again, there are types |
| 24 | at each one of these markers, and XY depicting a |
| 25 | male individual. |

189

CHRM007282

CONFIDENTIAL

```
 1   Q.   And, again, is this what you call a complete full
 2        profile?
 3   A.   Yes, it is.
 4   Q.   And did you compare the profile that you
 5        developed from the bloodstain from the front
 6        passenger seat of Teresa Halbach's car with the
 7        DNA profile that you obtained from the buccal
 8        swab of Steven Avery?
 9   A.   Yes, I did.
10   Q.   And does this next slide show your findings?
11   A.   Yes, it does.
12   Q.   And would you explain them to the jury, too,
13        please.
14   A.   This is the profile developed from the cutting in
15        the passenger -- the front passenger seat.  And
16        this is the profile from Steven Avery's buccal
17        swab.  And you can see it's consistent at all of
18        the 15 genetic markers.
19   Q.   Do you have an opinion, to a reasonable degree of
20        scientific certainty, whether Steven Avery is the
21        source of the bloodstain that was found on Item 9
22        on the front passenger seat of Teresa Halbach's
23        RAV4?
24   A.   Yes, I do.
25   Q.   And what is that opinion?
```

190

CHRM007283

CONFIDENTIAL

```
 1   A.   That Steven Avery is the source of that stain,
 2        A-9.
 3   Q.   All right.  Now, you also previously testified
 4        that you collected the swab from what was Item
 5        A-10, that is the CD case that was on the front
 6        seat of Teresa Halbach's car, correct?
 7   A.   Yes.
 8   Q.   And did you develop a DNA profile from the blood
 9        stain on the CD case?
10   A.   Yes, I did.
11   Q.   And does the next slide correctly show your
12        findings?
13   A.   Yes, it does.
14   Q.   Did you compare this profile with the profile
15        that you developed from the buccal swab of Steven
16        Avery?
17   A.   Yes, I did.
18   Q.   And does this next slide correctly show your
19        findings according to your reports?
20   A.   Yes, it does.  Again, you can see all of the
21        types are exactly the same through all the
22        genetic markers.
23   Q.   And do you have an opinion, to a reasonable
24        degree of scientific certainty, whether Steven
25        Avery is the source of the blood that you found
```

191

CHRM007284

CONFIDENTIAL

|    |    |                                                          |
|----|----|----------------------------------------------------------|
| 1  |    | on the CD case in Teresa Halbach's SUV?                  |
| 2  | A. | Yes, I believe he is the source of the blood            |
| 3  |    | stain, Item A-10.                                        |
| 4  | Q. | Ms Culhane, do you have Exhibit 294 in front of         |
| 5  |    | you?                                                     |
| 6  | A. | Yes, I do.                                               |
| 7  | Q. | And does that photograph -- is that depicted on         |
| 8  |    | the large screen here?                                   |
| 9  | A. | Yes, it is.                                              |
| 10 | Q. | Now, you previously testified that you collected        |
| 11 |    | a bloodstain from the paneling of the rear              |
| 12 |    | passenger door.  And would you point out to the         |
| 13 |    | jurors, one more time, where that bloodstain was?       |
| 14 | A. | This area right here.                                    |
| 15 | Q. | Yes.  And you designated that as Crime Lab              |
| 16 |    | designation Item A-12; is that correct?                 |
| 17 | A. | Yes.                                                     |
| 18 | Q. | And did you perform DNA testing on Item A-12?           |
| 19 | A. | Yes, I did.                                              |
| 20 | Q. | And did you develop a DNA profile from the              |
| 21 |    | testing of that bloodstain?                             |
| 22 | A. | Yes, I did.                                              |
| 23 | Q. | And does the next slide correctly show your             |
| 24 |    | findings?                                                |
| 25 | A. | Yes, it does.                                            |

192

CHRM007285

CONFIDENTIAL

| | |
|---|---|
| 1 | Q. And, again, did you compare the profile, the DNA |
| 2 | profile that you developed from the bloodstain on |
| 3 | the rear passenger door of Teresa Halbach's RAV4, |
| 4 | with the DNA profile that you obtained from the |
| 5 | buccal swab of Steven Avery? |
| 6 | A. Yes, I did. |
| 7 | Q. And does this slide correctly show your findings? |
| 8 | A. Yes, it does. And, again, you can see, at each |
| 9 | one of the markers, the types are consistent. |
| 10 | Q. I would ask you if you have in front of you |
| 11 | Exhibit 291. |
| 12 | A. Yes, I do. |
| 13 | Q. And is that photograph shown on the big screen |
| 14 | now? |
| 15 | A. Yes, it is. |
| 16 | Q. Now, you previously testified that you collected |
| 17 | this bloodstain on the dashboard of Teresa |
| 18 | Halbach's RAV4, by the ignition switch; is that |
| 19 | correct? |
| 20 | A. Yes. |
| 21 | Q. And this -- you did a presumptive test for blood |
| 22 | on that stain? |
| 23 | A. Yes, I did. |
| 24 | Q. And did you perform DNA testing on this |
| 25 | bloodstain in Teresa Halbach's vehicle? |

193

CHRM007286

CONFIDENTIAL

```
 1   A.   Yes.

 2   Q.   And did you develop a DNA profile from that

 3        bloodstain?

 4   A.   Yes, I did.

 5   Q.   And does this next slide correctly show your

 6        findings?

 7   A.   Yes, it does.

 8   Q.   And did you compare the DNA profile from that

 9        bloodstain with the DNA profile of Steven Avery?

10   A.   Yes, I did.

11   Q.   And does this next slide show your results?

12   A.   Yes, it does.

13   Q.   And, again, would you explain what those were to

14        the jury.

15   A.   This is the profile from A-8, which is the stain

16        by the ignition.  And this is the profile from

17        Steven Avery's buccal swab.  And you can see at

18        each one of the markers, the types are

19        consistent.

20   Q.   And, once again, is this what you consider a full

21        complete DNA profile?

22   A.   Yes, it is.

23   Q.   And the DNA profile that you developed from Item

24        A-8, the blood stain found near the ignition of

25        Teresa Halbach's SUV, did you compare that
```

194

CHRM007287

CONFIDENTIAL

|    |    |                                                          |
|----|----|----------------------------------------------------------|
| 1  |    | profile with the profiles that you developed from         |
| 2  |    | all the other standards in this case?                     |
| 3  | A. | Yes, I did.                                               |
| 4  | Q. | And what were your results?                               |
| 5  | A. | It was not consistent with any of the other               |
| 6  |    | standards.                                                |
| 7  | Q. | It was only consistent with the DNA profile of            |
| 8  |    | Steven Avery?                                             |
| 9  | A. | Correct.                                                  |
| 10 | Q. | Did you arrive at a statistical number for this           |
| 11 |    | profile that would reflect how often, or how              |
| 12 |    | rare, or how common, this profile would be in the         |
| 13 |    | population?                                               |
| 14 | A. | Yes, I did.                                               |
| 15 | Q. | And I would ask if this slide correctly displays          |
| 16 |    | that statistic?                                           |
| 17 | A. | Yes, it does.                                             |
| 18 | Q. | And could you explain to the jurors what that             |
| 19 |    | statistic is?                                             |
| 20 | A. | This number tells me that the probability of              |
| 21 |    | another unrelated, random person in the                   |
| 22 |    | population, having the same profile as the                |
| 23 |    | evidence samples that we just talked about, is 1          |
| 24 |    | person in 4 quintillion in the Caucasian                  |
| 25 |    | population, 1 person in 898 quintillion in the            |

195

CHRM007288

CONFIDENTIAL

| | | |
|---|---|---|
| 1 | | African/American population, 1 person in 25 |
| 2 | | quintillion in the southeastern Hispanic |
| 3 | | population, and 1 person in 123 quintillion in |
| 4 | | the southwestern Hispanic population. |
| 5 | Q. | And does that statistic also apply to the other |
| 6 | | bloodstains that you found in the RAV4 that were |
| 7 | | attributable to Steven Avery? |
| 8 | A. | Yes, it does. |
| 9 | Q. | Do you have an opinion, to a reasonable degree of |
| 10 | | scientific certainty, whether Steven Avery is the |
| 11 | | source of the bloodstain found on the dashboard |
| 12 | | by the ignition in Teresa Halbach's RAV4? |
| 13 | A. | Yes. |
| 14 | Q. | And what is that opinion? |
| 15 | A. | My opinion is that Steven Avery is the source of |
| 16 | | that stain. |
| 17 | | ATTORNEY GAHN: That's all I have. Thank |
| 18 | | you, your Honor. |
| 19 | | THE COURT: Counsel, will you approach, |
| 20 | | please. |
| 21 | | ATTORNEY BUTING: Sure. |
| 22 | | (Side bar taken.) |
| 23 | | THE COURT: All right. Members of the |
| 24 | | jury, at this time, since we kept you late |
| 25 | | yesterday, we're going to give you a break today. |

Case 1:19-cv-00484-BHL   Filed 09/16/22   Page 30 of 30   Document 290-22

CHRM007289

CONFIDENTIAL