# APPENDIX[1]

| Pltf.'s Prop. Fact No. | MaM Episode and time stamp | Reasons not actionable (besides no evidence of actual malice) |
|---|---|---|
| 3 | 1<br>ECF # 120-1<br>4:35 – 4:45 | This is Avery's unverifiable opinion about his wrongful conviction; it is not a statement of fact by Netflix. *See Haynes v. Alfred A. Knopf, Inc.*, 8 F.3d 1222, 1227 (7th Cir. 1993) ("[I]f it is plain that the speaker is expressing a subjective view, an interpretation, a theory, conjecture, or surmise, rather than claiming to be in possession of objectively verifiable facts, the statement is not actionable.").<br><br>To the extent this is a verifiable statement of fact, it is true. *See* Dkt. 271 ¶¶ 1-2.[2]<br><br>This statement is not about Colborn; Colborn did not work for the Manitowoc County Sheriff's Office at the time of Avery's wrongful conviction. *See* SAC ¶ 9; *see also Barlass v. City of Janesville*, No. 10-cv-454-slc, 2011 U.S. Dist. LEXIS 165826, at *36 (W.D. Wis. Nov. 28, 2011).<br><br>This statement cannot possibly convey the allegedly defamatory meaning that Colborn planted evidence to frame Avery for the Halbach murder because it is not about that case. To the extent this statement can be read to imply Colborn had a motive to plant evidence, that is true, as found by Judge Patrick Willis. Dkt. 271 ¶ 14.[3] |
| 4 | 1<br>ECF # 120-1 | This is Ducat's unverifiable opinion and speculation about how "they" were responding to Avery's exoneration and |

---

[1] In an abundance of caution, and consistent with L.R. 56(b)(8), Netflix has kept the combined page count of its brief and this appendix to 30 pages. For the Court's convenience, a longer appendix that includes each of the 52 "statements" or "embellishments" that Colborn puts in issue is attached as Ex. 2 to the Second Walker Decl.

[2] By citing to evidence that discrete statements are true here and elsewhere, Netflix in no way intends to suggest it has the burden of proving substantial truth. It does not. Colborn has the burden to prove material falsity. *See Phila. Newspapers, Inc. v. Hepps*, 475 U.S. 767, 775 (1986); *Fin. Fiduciaries, LLC v. Gannett Co.*, 46 F.4th 654, 666 (7th Cir. 2022); *Torgerson v. Journal/Sentinel Inc.*, 210 Wis. 2d 524, 543 n.18 (1997). He has made no attempt to prove that any of the 52 statements his motion puts at issue are materially false.

[3] For simplicity, this point is hereafter referred to as "Judge Willis found motive."

| | 1:01:19 –1:01:42 | civil lawsuit; it is not a statement of fact by Netflix. *See Haynes*, 8 F.3d at 1227 (theory, conjecture, surmise not actionable); *see also id.* ("[A]nyone is entitled to speculate on a person's motives from the known facts of his behavior.").

To the extent this is a verifiable statement of fact, it is true. Defendants in the civil suit vigorously defended and ultimately negotiated a settlement of $400,000, far less than the $36 million Avery sought. *See Avery v. Manitowoc Cty.*, 428 F. Supp. 2d 891, 893 (E.D. Wis. 2006).

This statement is not about Colborn, who was not involved in Avery's rape conviction and who was not a named defendant in his civil lawsuit. *See* SAC ¶ 9; Dkt. 271 ¶ 1; *see also Barlass*.

Judge Willis found motive. |
|---|---|---|
| 5 | 1<br>ECF # 120-1<br>1:01:29- 1:01:44;<br>1:01:33 –<br>Photograph | This is not a statement.

The brief video clip of Colborn is from his deposition in Avery's civil case and it is undisputed and true that he was deposed.

Judge Willis found motive. |
| 6 | 2<br>ECF # 120-1<br>49:22-49:39 | This statement appears in Episode 1 at 49:22-49:39, not at that timestamp in Episode 2.

Factual parts are true, Dkt. 271 ¶¶ 1-4; remaining parts are Glynn's opinion. *See Haynes*.

Judge Willis found motive. |
| 7 | 2<br>ECF# 120-2<br>17:20 – 17:34 | It is undisputed and true that Colborn took a phone call in 1995 while working at the jail that played a central role in Avery's civil case and later in his defense at his murder trial. *See* Dkt. 271 ¶¶ 13-15.

Glynn's statement that "1995 was a very, very significant point in this thing" is his opinion. *See Haynes*.

Judge Willis found motive. |
| 8 | 2<br>ECF # 120-2 | This is not a statement. |

| | | |
|---|---|---|
| | 17:34-17:43 | The brief video clip of Colborn is from his deposition in Avery's civil case and it is undisputed and true that he was deposed.<br><br>Judge Willis found motive. |
| 9 | 2<br>ECF # 120-2<br>17:37-18:24 | Factual parts are true, Dkt. 270 ¶ 2; *see also* Dkt. 271 ¶¶ 5, 7; remaining parts are Glynn's opinion. *Haynes*.<br><br>Judge Willis found motive. |
| 10 | 2<br>ECF # 120-2<br>18:28 -19:04 | The authenticity of the video clip of Colborn's deposition testimony is undisputed, and Colborn does not claim he testified falsely. The footage shows Colborn confirming some of the contents of the report he wrote about the jail call in 2003.<br><br>Judge Willis found motive. |
| 11 | 2<br>ECF # 120-2<br>19:05 – 19:41 | Factual parts are true, Dkt. 269 at 4; Dkt. 271 ¶ 1; remaining parts are Glynn's opinion. *See Haynes*.<br><br>Judge Willis found motive. |
| 12 | 2<br>ECF # 120-2<br>19:24 – 19:41 | This statement is true. Dkt. 120-11 at 3; Dkt. 271 ¶¶ 4, 5.<br><br>Judge Willis found motive. |
| 13 | 2<br>ECF # 120-2<br>19:41 – 19:47 | It is undisputed and true that Colborn gave a deposition in Avery's civil case and that this exchange occurred in that deposition. Dkt. 120-14 at 11:7-8.<br><br>Remaining parts are Glynn's opinion. *See Haynes*.<br><br>Judge Willis found motive. |
| 14 | 2<br>ECF # 120-2<br>19:47 – 20:26 | Factual parts are true, Dkt. 270 ¶ 2; Dkt. 271 ¶¶ 4, 7; remaining parts are Glynn's opinion. *See Haynes*.<br><br>Judge Willis found motive. |
| 15 | 2<br>ECF# 120-2<br>20:14 -20:25 | This graphic does not appear at the listed timestamp; it appears at 20:26-20:34.<br><br>Misstates the content of the graphic; Colborn's photo is not the only one shown. |

| | | |
|---|---|---|
| | | This statement is true. *See State v. Avery*, 2022 WI App 7 n.2, 400 Wis. 2d 541, 970 N.W.2d 564.<br><br>Judge Willis found motive. |
| 16 | 2<br>ECF# 120-2<br>20:26 -21:14 | Factual parts are true, Dkt. 270 ¶ 2; Dkt. 271 ¶ 4; remaining parts are Glynn's opinion. *See Haynes*.<br><br>Judge Willis found motive. |
| 17 | 2<br>ECF # 120-2<br>21:08-21:12 | This is not a statement.<br><br>It is true and undisputed that Colborn, Lenk, and then-Sheriff Petersen were deposed in Avery's civil lawsuit. *See* Dkts. 120-14 (Colborn deposition transcript); 120-16 (Petersen deposition transcript); 120-17 (Lenk deposition transcript).<br><br>Judge Willis found motive. |
| 18 | 2<br>ECF # 120-2<br>21:12 – 21:39 | Factual parts are true. After falsely alleging otherwise in each of his three complaints, Colborn admitted his statement was kept in a safe. Dkt. 270 ¶ 2; Dkt. 271 ¶¶ 8-9. Remaining parts are Glynn's opinion. *See Haynes*.<br><br>Judge Willis found motive. |
| 19 | 2<br>ECF # 120-2<br>21:48 – 22:52 | The authenticity of the video clip of Lenk's and then-Sheriff Peterson's deposition testimony is undisputed, and Colborn does not claim that either Lenk or Peterson testified falsely.<br><br>The images of Colborn's 2003 report about the jail call, including a close-up of his signature, are shown while Petersen is testifying about the document, which was a deposition exhibit in Avery's civil case. *See* Dkt. 120-15 (copy of statement).<br><br>Judge Willis found motive. |
| 20 | 2<br>ECF # 120-2<br>22:55-23:14 | This is Avery's opinion. *See Haynes*.<br><br>Judge Willis found motive. |
| 21 | 2<br>ECF # 120-2<br>22:45-22:50 | This is not a statement.<br><br>Judge Willis found motive. |

| 22 | 2<br>ECF # 120-2<br>23:14-23:26 | This is Avery's opinion. *See Haynes*.<br><br>Judge Willis found motive. |
|---|---|---|
| 23 | 2<br>ECF # 120-2<br>23:28-23:50 | The authenticity of the video clip of Colborn's deposition testimony is undisputed, and Colborn does not claim that he testified falsely.<br><br>Judge Willis found motive. |
| 24 | 2<br>ECF # 120-2<br>26:52-26:56 | This is not a statement.<br><br>It is true and undisputed that Colborn was deposed in Avery's civil lawsuit and that this image is from the recording of that deposition.<br><br>This footage of Colborn is shown after footage from the deposition of investigator Eugene Kusche, who testified about a report that stated that Colborn told Kusche that the jail caller was from Brown County and that Allen and not Avery was responsible for the Beernsten assault.<br><br>Judge Willis found motive. |
| 25 | 2<br>ECF # 120-2<br>26:56-27:33 | Misstates the content of MaM by omitting the fact that Glynn says that Avery's lawyers "were right at that time in the middle of litigation asserting, based on the fingernail scrapings, that there may have been somebody else involved in this."<br><br>This is Glynn's opinion. *See Haynes*.<br><br>Judge Willis found motive. |
| 26 | 2<br>ECF # 120-2<br>28:24-29:07 | This is not a statement.<br><br>Misstates the content of MaM; the video footage does not identify anyone as an "alleged coconspirators." Rather, the footage and captions show that their depositions were taken in October 2005, which is true and undisputed.<br><br>Judge Willis found motive. |
| 27 | 2<br>ECF # 120-2<br>28:35-29:37 | Misstates the content of MaM; Colborn omits much of what Kelly said. Kelly's full statement in this scene is: "October of 2005, from the perspective of the Manitowoc County government and their defense lawyers, I believe they all knew they were in the most serious kind of |

|   |   | trouble. There was a very grave prospect of a very, very substantial verdict. Manitowoc County and the sheriff and the district attorney are arguably covered by insurance policies and there's a good half dozen insurance policies. However, the insurers have taken the position that because of the nature of the allegations against the County, the Sheriff and the DA, the policies do not cover, which would mean that Manitowoc County itself, and the Sheriff and the DA, would be on the hook for those damages in the civil suit."

This statement is not about Colborn. *See Barlass*.

Colborn does not assert or provide evidence that any factual portion of this statement is false.

Remaining parts are Kelly's opinion. *See Haynes*.

Judge Willis found motive. |
|---|---|---|
| 28 | 2<br>ECF # 120-2<br>29:40-30:22 | Factual parts are true, Dkt. 120-11 at 3; remaining parts are Glynn's opinion. *See Haynes*.

Judge Willis found motive. |
| 29 | 2<br>ECF # 120-2<br>30:29-31:04 | This statement is true. *State v. Avery* ("*Avery III*"), 2011 WI App 124, ¶ 4, 804 N.W.2d 216, 220.

This statement is not about Colborn. *See Barlass*.

Judge Willis found motive. |
| 30 | 2<br>ECF # 120-2<br>39:30-40:08 | Misstates the content of MaM; Avery does not explicitly accuse "the county" of anything. The exchange with the reporter is:

Reporter: "So who do you think did something with her [Halbach]?"

Avery: "I got no idea. And if the county did something, or whatever, and tried to plant evidence on me, or something, I don't know. I wouldn't put nothing past the county."

Nothing in this section of MaM is about Colborn. *See Barlass*. |

| | | |
|---|---|---|
| | | The factual portion of this section of MaM—the news footage—is true in that it accurately reproduces the news interview with Avery.<br><br>The statements by Avery are opinion. *See Haynes*. |
| 31 | 2<br>ECF # 120-2<br>41:19-41:24 | This statement is not about Colborn. *See Barlass*.<br><br>This is Avery's opinion. *See Haynes*. |
| 32 | 2<br>ECF # 120-2<br>42:45-43:02 | This statement is not about Colborn. *See Barlass*.<br><br>Factual parts are true, Dkt. 291 ¶ 38 (showing Avery arrested Nov. 9, 2005 for Halbach's murder); remaining parts are Avery's opinion. *See Haynes*. |
| 33 | 2<br>ECF # 120-2<br>44:24-44:35<br>46:37-46:52 | Misstates content of MaM; these are portions of two separate interviews, shown minutes apart.<br><br>These statements are not about Colborn. *See Barlass*.<br><br>This is Avery's opinion. *See Haynes*. |
| 34 | 2<br>ECF # 120-2<br>52:24-52:29 | This statement is not about Colborn. *See Barlass*.<br><br>This is Avery's opinion. *See Haynes*. |
| 35 | 3<br>ECF # 120-3<br>14:14-14:42 | Factual parts are true, Dkt. 271 ¶ 11; remaining parts are the woman's opinion. *See Haynes*. |
| 36 | 3<br>ECF # 120-3<br>14:43-15:05 | This statement is not about Colborn. *See Barlass*.<br><br>This is the man's opinion. *See Haynes*. |
| 37 | 3<br>ECF # 120-3<br>15:06 -15:36 | Misstates the content of MaM; this is not a continuation of the statement by the woman in No. 35; it is by a different woman.<br><br>This statement is not about Colborn. *See Barlass*.<br><br>This is the woman's opinion. *See Haynes*. |
| 38 | 3<br>ECF # 120-3<br>16:45-16:55 | This statement is not about Colborn. *See Barlass*.<br><br>This is Avery's opinion. *See Haynes*.<br><br>Judge Willis found motive. |

| 39 | 3<br>ECF # 120-3<br>20:21 – 21:03 | Misstates the content of MaM by omitting several sentences. Strang's full statement is: "I didn't see them plant evidence with my own two eyes. I didn't see it. But do I understand how human beings might be tempted to plant evidence under the circumstances in which the Manitowoc County Sheriff's Department found itself after Steven's exoneration, of the lawsuit, of the Avery commission, of the governor hugging Steven and holding him up as an example of the criminal justice system gone wrong? Do I have any difficulty understanding what human emotions might have driven police officers to want to augment or confirm their beliefs that he must have killed Teresa Halbach? I don't have any difficulty understanding those human emotions at all."<br><br>This is Strang's opinion. *See Haynes*.<br><br>This statement is substantially identical to statements made at Avery's murder trial. Statements of opinion based on true or privileged facts are not actionable. *See Terry v. Journal Broad. Corp.*, 2013 WI App 130, ¶23, 351 Wis. 2d 479, 503-04, 840 N.W.2d 255, 266.[4] |
|---|---|---|
| 40 | 3<br>ECF # 120-3<br>21:16-21:49 | Factual parts are true, Dkt. 269 at 4; Dkt. 271 ¶ 14; remaining parts are Buting's opinion. *See Haynes*.<br><br>Mirrors statements at trial. |
| 41 | 4<br>ECF # 120-4<br>32:41 – 33:04 | Factual parts are true, Dkt. 271 ¶¶ 13-15; remaining parts are Buting's opinion. *See Haynes*.<br><br>Mirrors statements at trial. |
| 42 | 4<br>ECF # 120-4<br>1:00:05 – 1:00:43 | Misstates the content of MaM by omitting portions of Buting's statement, which is:<br><br>"Sheriff Petersen was the arresting officer of Avery in 1985. He's now the head of that office, and clearly, clearly has the strong dislike for Avery. If the very top guy has this kind of attitude about Avery, and that kind of personal involvement in the case of Avery, that's gonna permeate the whole department. If not, at least it's gonna permeate |

---

[4] For simplicity, this point is hereafter referred to as "Mirrors statements at trial."

| | | the upper echelon that's close to him, and that would include the lieutenants and the sergeants."

This quotation is also immediately followed by Buting stating: "So we looked around and one guy's name just kept coming up over and over and over every place we looked. At critical moments. And that was Lieutenant James Lenk. Lenk is the guy who finds the key in the bedroom on the seventh entry at supposedly in plain view. Lenk is deposed just three weeks before this Halbach disappearance. And then, most peculiar of all, is when we looked in Steven's old 1985 case file in the clerk's office. Some items from that court file ultimately proved to exonerate Steven. Interestingly enough, the transmittal form that goes with the evidence in 2002 to the crime lab is filled out by none other than at that time, Detective Sergeant James Lenk."

Factual parts are true; Dkt. 271 ¶¶ 3, 12; Ep. 4 (Dkt. 120-4) at 1:00:53-1:00:43; remaining parts are Buting's opinion. *See Haynes*. |
|---|---|---|
| 43 | 4<br>ECF # 120-4<br>1:00:25 –<br>1:00:47 | This graphic is a true and undisputed depiction of the chain of command of the Manitowoc County Sheriff's Office at the time. |
| 44 | 4<br>ECF # 120-4<br>1:03:00 –<br>1:04:15 | This statement is not about Colborn. *See Barlass*.<br><br>This is Buting's opinion. *See Haynes*.<br><br>To the extent this is a verifiable statement of fact, Colborn has not presented any evidence that would prove this statement is false.<br><br>Mirrors statements at trial. |
| 45 | 5<br>ECF # 120-5<br>52:03- 52:12 | Misstates the content of MaM by leaving out context indicating the statement is not about Colborn; after footage of the testimony of Pamela Sturm, who found Halbach's RAV4 at the Avery Salvage Yard, Buting is shown stating: "I never believed, and to this day don't believe, Sturm's 'Holy Spirit guided me there' theory. Not that I don't believe that it's possible. But I just don't believe her. I do not believe her at all. I, I never—she just seemed too weird. And, you know, it's—they went right to that thing. |

| | | Somebody knew that vehicle was there before they ever went there. I'm convinced of it." |
|---|---|---|
| | | This is Buting's opinion. *See Haynes*. |
| | | To the extent this is a verifiable statement of fact, Colborn has not presented any evidence that would prove this statement is false. |
| 46 | 5<br>ECF # 120-5<br>52:13 – 53:20 | Misstates the content of MaM; during the interrogation Avery said that "Tammy" told him "that she heard that a cop put it out there and planted evidence."<br><br>This is Avery's opinion, *see Haynes*, and reasonable viewers do not understand statements made by accused criminals during interrogations as statements of actual fact by the filmmakers. |
| 47 | 5<br>ECF # 120-5<br>53:20-:24 | This is not a statement.<br><br>It is true that Colborn testified at Avery's trial and that Avery's attorneys implied Colborn could have been involved in planting the vehicle at the Avery Salvage Yard.<br><br>Judge Willis found motive. |
| 48 | 6<br>ECF # 120-6<br>56:26 – 57:11 | Factual parts are true, Dkt. 271 ¶ 56; remaining parts are Buting's opinion. *See Haynes*.<br><br>Mirrors statements at trial. |
| 49 | 7<br>ECF # 120-7<br>1:04 – 1:17 | This vague statement is not about Colborn. *See Barlass*.<br><br>This is Allan Avery's opinion, *see Haynes*, and reasonable viewers do not understand statements by the father of an accused (and later convicted) murderer to be statements of actual fact by the filmmakers. |
| 50 | 7<br>ECF # 120-7<br>10:45 – 12:00 | These are Buting's and Strang's opinions. *See Haynes*.<br><br>The references to "he" are to James Lenk, not Colborn; Lenk's testimony is shown immediately before and immediately after this scene. *See Barlass*. |

| | | Mirrors statements at trial. |
|---|---|---|
| 51 | 7<br>ECF # 120-7<br>14:48 – 15:15 | This is Avery's opinion, *see Haynes,* and reasonable viewers do not consider statements by accused (and later convicted) murderers to be statements of fact by the filmmakers. |
| 52 | 7<br>ECF # 120-7<br>15:15 | This is not a statement.<br><br>Colborn presents no evidence that would show this scene is not an accurate portrayal of him waiting to testify and of Avery's demeanor at that point of the trial. |
| 53 | 7<br>ECF # 120-7<br>24:28 – 26:01 | This scene shows the reporter defending Colborn and challenging Avery's defense lawyer about the planting allegations. That portion is the opposite of defamatory of Colborn; it supports him. Colborn cannot credibly contend that omitting this exchange from MaM would have made the documentary *less* harmful to his reputation.<br><br>Strang's statements are unverifiable opinion and/or speculation; they are not statements of fact by Netflix, any more than the reporter's statements are statements of fact by Netflix. *See Haynes*. |
| 54 | 7<br>ECF # 120-7<br>37:43 – 37:57 | These are Avery's and his mother's opinions, *see Haynes*, and reasonable viewers do not understand statements by accused (and later convicted) murderers and their parents to be statements of fact by filmmakers.<br><br>These statements are not about Colborn; they are presented after Buting discusses the defense's implications that Lenk would have known about the presence of the blood vial in the Manitowoc County court clerk's office, and the clerk's testimony that the sheriff's office had master keys to the clerk's office where the vial was kept. *See Barlass*. |