

# JASSY|VICK|CAROLAN

**LOS ANGELES   SAN FRANCISCO**

355 South Grand Avenue, Suite 2450 | Los Angeles, CA 90071 | T 310.870.7048 | F 310.870.7010 | JASSYVICK.COM

Kevin L. Vick
kvick@jassyvick.com

August 26, 2022

***VIA EMAIL***

Christina Sommers, Esq.
George Burnett, Esq.
Law Firm of Conway, Olejniczak & Jerry, S.C.
231 South Adams Street
Green Bay, WI 54301

April Rockstead Barker, Esq.
Rockstead Law, LLC
525 N. Lincoln Ave.
Beaver Dam, WI 53916

      Re:    *Colborn v. Netflix, et al.*

Dear Ms. Sommers:

I write to follow up on our meet and confer call on August 16, 2022, and to address your letter dated August 23, 2022.[1]

<u>Plaintiff's Failure to Timely Raise His Concerns or Justify His Belated Attempt to Do So</u>

As I detailed in my August 10, 2022 correspondence and reiterated during our August 16, 2022 call, Plaintiff's complaints are untimely because the discovery deadline expired months ago. During our August 16, 2022 call you suggested that the issues raised in your July 15, 2022 letter had been previously raised by Plaintiff in May 2022. That is incorrect. After our call, I reviewed the parties' correspondence (letter and email) and it confirms that none of Plaintiff's attorneys raised those issues in May 2022 or any other time prior to your July 15, 2022 letter. Nor did counsel raise the purported deficiencies at the Producer Defendants' depositions back in May 2022. The parties' previous meet and confer communications earlier in this case addressed

---

[1] My previous correspondence dated August 10, 2022, addressed a number of concerns you mentioned in your July 2022 meet and confer correspondence to me. To the extent you did not raise issues originally mentioned in your July correspondence during our August 16, 2022 call or in your more recent August 23, 2022 letter, we will presume that my August 10, 2022 letter and our meet and confer discussions already addressed those issues satisfactorily.

**EXHIBIT 2**

only the various *Defendants'* complaints about deficiencies in *Plaintiff's* document production and responses to written discovery. This is not a continuation of an ongoing discussion but an attempt to belatedly raise foundational objections long after the appropriate time has passed.

As I have previously explained, it is too late now—long after the close of fact discovery on April 8, 2022—for Plaintiff to belatedly raise complaints that have been waived. Your suggestion in your August 23, 2022 letter that "we are still in discovery" is incorrect, with the exception of expert discovery which still remains. The Court's operative Scheduling Order makes clear that fact discovery closed on April 8, with the exception of Plaintiff's deposition which had been scheduled for later as expressly set forth in the Court's Scheduling Order.

The case law is clear that any attempt by Plaintiff to belatedly raise concerns is untimely and without merit. As one Eastern District of Wisconsin court put it, "If there is a bright line when it comes to when a motion to compel may be brought it is the discovery deadline. '[M]otions to compel filed after the close of discovery are almost always deemed untimely.'" *Henneman v. Fed. Check Recovery*, No. 10-C-746, 2011 WL 1900183, at *2 (E.D. Wis. May 19, 2011) (quoting *In re Sulfuric Acid Antitrust Litig.*, 231 F.R.D. 331, 332 (N.D.Ill.2005), which in turn cites Packman v. Chicago Tribune Co., 267 F.3d 628, 647 (7th Cir.2001)).

As the Eastern District of Wisconsin recently explained in a case denying a party's untimely motion to compel:

> Courts commonly deny motions to compel filed after the close of discovery. See, e.g., Justise v. Zenith Logistics, Inc., 186 F. App'x 680, 682-83 (7th Cir. 2006) (denying motion to compel after discovery had closed and summary judgment motion filed); Packman, 267 F.3d at 647 (denying motion filed after discovery had closed and the summary judgment briefing schedule had been set); Rossetto v. Pabst Brewing Co., Inc., 217 F.3d 539, 542 (7th Cir. 2000) ("The motion was filed two months after the date set by the court for the completion of discovery. The plaintiffs gave (and give) no excuse for their tardiness, and so have no grounds for complaining about the district court's welcome effort to expedite the litigation and spare the parties the expense of protracted discovery, the bane of modern litigation.).

*Williams v. Sam's E., Inc.*, No. 18-CV-1355-PP, 2021 WL 4427563, at *4 (E.D. Wis. Sept. 27, 2021).

Indeed, "[u]nder some circumstances, courts have found motions filed *before* the discovery deadline to be untimely." *Wilbur v. Cnty. of Waukesha*, No. 14-CV-0046-PP, 2016 WL 4082666, at *3–4 (E.D. Wis. July 29, 2016) (denying motion to compel as untimely where motion was filed on last day before discovery deadline and explaining, "In light of the lengthy discovery period, the absence of any explanation for the last-minute filing, the multiple extensions of the discovery period, the plaintiff's knowledge of the impasse some two weeks prior to the filing of the motion, and the fact that granting this motion would require yet another

extension of the discovery period, the court finds that this motion is untimely."). The types of objections you raised for the first time in July 2022, questioning the scope of the Producer Defendants' document collection and search terms, could have and should have been raised long ago. Laying in wait and then springing this objection long *after* the Producer Defendants and their counsel have already expended great time and effort (and at great expense) in collecting, reviewing and producing documents is particularly unfair and unreasonable.

The Producer Defendants have been reasonable and accommodating with respect to discovery, including agreeing to permit Plaintiff to take multiple third-party depositions after the expiration of the deadline to do so. However, Plaintiff has never explained why, in the exercise of diligence and good faith, he could not have raised the issues now being belatedly addressed months ago at the appropriate time. Nor could he possibly do so. *See Kruse, Inc. v. Hogan*, No. 1:10-CV-00014, 2011 WL 3747353, at *1–2 (N.D. Ind. Aug. 24, 2011) (party raising belated discovery complaints must show good cause, prior diligence, and excusable neglect); *Dantzler v. City of Milwaukee*, No. 10-C-0675, 2012 WL 3201882, at *1 (E.D. Wis. Aug. 3, 2012) (same). Indeed, one of Plaintiff's chief complaints concerns the scope of what the Producer Defendants agreed to produce in response to Plaintiff's third set of requests for documents. 8/23/22 letter at 2. Plaintiff served those document requests in June 2021, and the Producer Defendants served the responses about which Plaintiff now complains in *July 2021*. It is improper for Plaintiff to lay in wait for an entire year—until well past the close of fact discovery—before belatedly raising complaints about the scope of what the Producer Defendants agreed to produce.[2]

Out of professional courtesy, we have been willing to confer with you regarding the questions you have raised about the Producer Defendants' document production. However, summary judgment motions are due in three weeks, and initial expert disclosures are due next Friday. Throughout this case, I have not been one to point fingers or make accusations. But Plaintiff's newfound and untimely focus on purported discovery deficiencies is starting to feel like gamesmanship. It is not fair for Plaintiff to continue trying to divert the Defendants' focus and resources from those aspects of this case to focus on Plaintiff's discovery concerns that were waived long ago.

While I address below certain subjects you raised during our August 16, 2022 call and in your August 23, 2022 letter, I do so only out of professional courtesy, not because Plaintiff has any right to further exploit the discovery process to place even greater burdens on the Producer Defendants those already imposed by Plaintiff's seven sets of requests for production. *See also Williams*, 2021 WL 4427563 at *4 ("The plaintiff asks why, if discovery had closed, defense counsel responded to her letters and other contacts. The fact that defense counsel did not ignore the plaintiff and continued to try to explain why it had responded the way it did is not relevant to the question of whether discovery had closed.")

---

[2] In addition, the request itself was incredibly overbroad, and the Producer Defendants agreement to produce documents within the scope of what they agreed to produce was more than reasonable.

Text messages

I can confirm what I told you during our call: we collected text messages from our clients and reviewed them. None were produced because none fell within the scope of what the Producer Defendants agreed to produce. By way of example, there were only a couple text messages that referenced Plaintiff, but they concerned Season 2 (and even then, only related to logistics surrounding an attempt to contact Plaintiff to see if he was interested in being interviewed). As you are aware, that put them outside the scope of what the Producer Defendants agreed to produce in response to Plaintiff's various requests for production.

Scope of Document Search and Production

The Producer Defendants' search and production efforts were not limited to only communications with Netflix personnel but included communications with others in general. To answer a question in your August 23, 2022 letter, when we searched emails for Lenk and Colborn and variations/misspellings of Colborn, that search was not limited to only emails with people in the @netflix.com domain; it included communications with others too more generally. In addition, the Producer Defendants produced documents that related to portions of *Making a Murderer* put at issue by the Second Amended Complaint that mentioned not just Colborn personally, but law enforcement more generally, which I understand from our August 16, 2022 call was one of your concerns. Moreover, the Producer Defendants' searches of their emails included all of their accounts, not just the synthesisfilms.com email accounts, which was another question you had.

Your August 23, 2022 letter erroneously claims that I "insisted on the disclosure of plaintiff's list of search terms." That is not true. I never even raised the issue of search terms, let alone "insisted" on their disclosure. Plaintiff may have voluntarily provided a list of search terms to defense counsel with respect to searches of Mr. Colborn's text messages on April 5, 2022 (not to all of his document searches, however, just texts). However, the parties—despite agreeing to a robust ESI protocol—never agreed to exchange search terms and Plaintiff never raised the subject contemporaneously when document collection and production efforts were underway. Instead, you only belatedly raised the issue more than three months after the close of fact discovery, more than four months after the final sets of document requests were served, and long after the Producer Defendants and their counsel went to great lengths and spent an extraordinary amount of time collecting, reviewing, processing and producing documents in the course of fulfilling their discovery obligations. If Plaintiff wanted to raise the issue of search terms and reach an agreement regarding them, he could have sought to do so at the appropriate time. However, Plaintiff failed to do so, and we are now many months past the close of fact discovery.

Fifth Set of Requests for Production and Request No. 10 of the Seventh Set of Requests

I can confirm that we produced all the documents that we agreed to produce in response to these two requests. I would also note that these requests are quite targeted and narrow,

August 26, 2022
Page 5

focusing on materials obtained from law enforcement *related to phone calls and dispatch notes from November 2005 from MTSO*—not from other sources such as the court clerks, attorneys involved in the underlying legal proceedings, and not materials obtained from law enforcement pursuant to, e.g., the Wisconsin Open Record Law, that relate to different subject matters. I believe that during our August 16, 2022 call there was some reference to these requests more broadly implicating the Producer Defendants' "due diligence" efforts with respect to *Making a Murderer* in general. And your August 23, 2022 letter appears to do so again. *See* August 23, 2022 Letter at 2. However, the requests from Plaintiff that you have identified are far more limited for the reasons explained above. In any event, the Producer Defendants have produced voluminous materials related to their due diligence efforts—just not in response to these particular two narrow requests for phone calls and dispatch notes from November 2005 from MTSO.

"Antagonist"

While under no obligation to do so, we performed another follow up search for the term "antagonist" and located no documents that fell within the scope of the documents that the Producer Defendants agreed to produce. Again, while under no obligation to provide this information, I will tell you to avoid unnecessary further disagreements that the small number (three) of documents that contained that term related to Season 2 of *Making a Murderer*, and none of them mentioned or related to Plaintiff.

\*        \*        \*        \*        \*        \*

This should address the concerns that you raised during our August 16, 2022 meet and confer call and your August 23, 2022 letter. There are, of course, additional points and arguments I could make or, in many instances, reiterate here, including points and arguments previously made in my August 10, 2022 correspondence or in co-defendant Netflix's July 29, 2022 and August 16, 2022 letters responding to similar concerns that Plaintiff has raised with respect to Netflix's document production. Rather than repeating myself and Netflix's counsel here, I will simply reference that correspondence.

The Producer Defendants have more than complied with their obligations under the Federal Rules of Civil Procedure with respect to Plaintiff's seven sets of requests for production. The Producer Defendants produced nearly 35,000 pages of documents, plus more than 15 hours of raw footage of Plaintiff's testimony at the Avery criminal trial. Ms. Demos and Ms. Ricciardi personally spent more than 250 hours combined in connection with responding to Plaintiff's requests. And their counsel spent many, many hundreds of additional hours in connection to responding to Plaintiff's requests for production—at very considerable time, effort and cost.[3] Any suggestion that the Producer Defendants have not gone above and beyond their discovery obligations in this case is wholly without merit. Regardless of whether Plaintiff might disagree

---

[3] In addition, Plaintiff served extremely overbroad subpoenas on numerous third parties who formerly worked with the Producer Defendants, resulting in the production of more than 17,600 additional pages, the vast majority of which the Producer Defendants' counsel reviewed for privilege issues, again at considerable time, effort and expense.

August 26, 2022
Page 6

with that, he long ago waived the ability to raise any such disagreement and he has no excuse for waiting until now—with summary judgment and initial expert disclosures imminent—to belatedly raise any concerns.

Very truly yours,

*Kevin L. Vick*

Kevin L. Vick

CC: Leita Walker, Ballard Spahr LLP