# EXHIBIT 4

April, George and Mike,

In addition to those matters already raised in Leita's email and comments in orange below, here are my additional follow-up items from the parties' meet and confer conference calls this week:

1. You stated that you would be inquiring with Mr. Colborn on Monday regarding any agreements between him and the entities and people behind the *Convicting* documentary project. We believe that we are entitled to any such agreements, and you stated that you would inquire as to the existence of any such agreements and would advise us regarding that and also regarding your position whether you will provide us with such documents. In the absence of such an agreement, we will be moving to compel with respect to such materials.

   **As George indicated, we do not believe there is an "Agreement," rather, an authorization. We will be producing it based on your request, though I am not certain that it is responsive to any of your specific formal requests.**

2. You represented that Plaintiff was not instructed to time-limit searches of documents and communications to after December 2015, in response to my pointing out the paucity of such materials in Plaintiff's production to date. You stated that Plaintiff's position is that he has now (as of April 7, 2022) produced everything responsive in his possession, but that you would confirm this is the case with Mr. Colborn when you speak on Monday. Relatedly, you stated that Plaintiff's position is that he does not possess any responsive emails or text messages that predate December 2015. I believe you said that you would confirm this with Mr. Colborn when you speak on Monday, but if I'm incorrect in my recollection, I would ask now that you do so regardless.

   **Plaintiff's position is that he does not possess any responsive email messages or text messages that predate December 2015.**

3. You stated that Plaintiff's position is that he does not possess any documents contemporaneous to the events he has placed at issue in this case through his Second Amended Complaint, starting in 1994/1995 and including 2003-2007, other than the modest amount of documents he has already produced. Again, you stated that you would confirm this with Mr. Colborn when you speak on Monday.

   **Plaintiff had produced what he believed to be all responsive documents, but he is double-checking this. Any responsive non-privileged documents identified will be produced. Mr. Colborn likely will also produce in the near future some additional documents as to which privilege claims for those documents may be abandoned, but they do not relate to the time frames that you have identified. Mr. Colborn simply had no reason to nor did he retain many documents relating to the events that were the underlying subject of MAM.**

4. You stated that you would check with Mr. Colborn on Monday regarding his ▮▮▮▮▮▮ email account and whether there are any responsive documents there, as I pointed out that Mr. Colborn sometimes sent such emails from his Manitowoc County Sheriff's Office (MTSO) account when he worked there.

**Mr. Colborn indicates that he is prevented by a firewall from sending messages from the hshs.com email account. Those responsive messages that Mr. Colborn forwarded from his other account to the ▓▓▓▓▓▓▓ account have been produced.**

5. You stated that Plaintiff's position is that he searched for all types and formats of documents – not just limited to emails and text messages – and has produced all responsive documents in his possession. Again, I believe you said that you would confirm this with Mr. Colborn when you speak on Monday, but if I'm incorrect in my recollection, I would ask now that you do so regardless.

    **Correct. The search was not limited to email messages and text messages.**

6. You stated that Plaintiff's position is that he has produced all documents providing the factual basis for his damages claims and calculations. We note the lack of information provided regarding Mr. Colborn's pension and hospital wages. Does the April 6 production you made cover that, or should we expect that more such financial documents are forthcoming?

    **Please note that any hospital or pension income should be reflected in Mr. Colborn's tax returns, which we have now produced. Please advise whether this satisfies your request.**

7. Plaintiff has not produced documents regarding mitigation of damages or financial opportunities that he has been offered in relation to his prominence from *Making a Murderer*, such as speaking opportunities or agreements with the producers of *Convicting.* Please produce such documents or confirm in writing that Mr. Colborn's position is that no such documents exist.

    **Correct; to our knowledge, no such documents exist, other than to the extent text messages already produced may have referenced speaking engagements that Mr. Colborn did not attend.**

8. While I don't believe we raised this at the meet and confer calls, I note that Plaintiff has produced in discovery negative messages he received from the public, but he has not provided any more positive messages, including "fan mail" that he has referenced receiving in his writings. Please produce any such positive messages and fan mail related to *Making a Murderer*.

    **It was my impression that the term "fan mail" may have been used sarcastically, to refer to negative messages. However, Mr. Colborn does not have any positive "fan mail" related to Making a Murderer in his possession other than anything that was already produced, unless there may be some documents in materials provided to Jerilyn Dietz. Mr. Colborn may abandon privilege claims as to some materials that he provided to Ms. Dietz, but not as to other confidential communications with Ms. Dietz while she was assisting him in attempting to pursue the claims that ultimately were filed in this case.**

9. Plaintiff will supplement certain discovery responses, including responses to RFA 1 and Interrogatories 1, 2, 5, and 7 from the Producer Defendants. Please let me know if I'm mistaken as to the specific items for which Mr. Colborn has agreed to supplement.

**It is our goal to supplement the indicated responses by the end of this week, barring additional interruptions, particularly those related to this case.**

10. We discussed working together to resolve issues with accessing the media attachments to the text messages that Mr. Colborn produced. It is not clear to me whether that has been completely resolved, or whether we still have to finish addressing the issue.

    **If you need to have your tech staff reach out to Debra Bursik to further address these issues, please feel free to have them contact her at 920-437-0476.**

11. You stated that Plaintiff's position is that he does not possess certain documents or communications that I identified in my March 23, 2022 letter, as missing from production, despite Plaintiff's direct references to them in other documents, but you would confirm this with Mr. Colborn on Monday. The specific documents and communications are:
    - Physical files, including "fan mail" dropped off at Jerilyn Dietz's law offices in February 2016, as referenced in January 2016 emails with Jerilyn Dietz.
    - February 2017 emails to numerous individuals, including the DOJ and DA, circulating an article and jailhouse confession letter, referenced in text messages with Brandy Rima and several other individuals.
    - October 2017 emails with Mark Wiegert regarding Kevin Rahmlow and the November 2005 call to dispatch, referenced in October 2017 text messages with Mark Wiegert.
    - Communications with Joe Kriel and others reflecting opportunities to "make some serious cash on the speaking circuit" and the agreements with the *Convicting* producers that prevented him from taking such opportunities, referenced in October 2017 text messages with Joe Kriel.

    **With respect to "fan mail," please see the discussion of that issue, above. With respect to the other identified bullet points, you are correct that Mr. Colborn does not believe that he has any such documents in his possession and we have not been able to find them in the messages extracted from his phones.**

1. ==Please== clarify one point that seemed to be a source of confusion. In her April 5, 2022 email, April explained Plaintiff's discovery responses referring to MTSO's production by saying "We attempted to inform you that we would not be including in Mr. Colborn's responses copies of the very same documents that were obtained from the Manitowoc County production." Defendants understood this to mean that Colborn has some copies of emails included in the MTSO production that he did not produce himself. But then during the April 7, 2022, I believe Debra represented that there were no duplicates and that ==Plaintiff had produced all emails in his possession.==
    - To the extent Mr. Colborn independently possesses "the very same documents that were obtained from the Manitowoc County production," please produce them. We are glad to address duplicates on our end and are most concerned with a complete search and production. If there are no such duplicate documents, then please confirm here so we're clear.

        **The yellow highlight statement above is correct. This is not correct: ". . . Colborn has some copies of emails included in the MTSO production that he did not produce himself."**

- One item I would note: It is apparent from the MTSO production that there are MTSO emails exchanged with the "▇▇▇▇▇▇" email account that Plaintiff did not produce in his email production. Please produce those and any other responsive emails that Plaintiff did not previously produce to us.

  **If responsive email messages existed in exchanges with the ▇▇▇▇▇▇ email account, they do not appear to exist there now, to our knowledge. We have reviewed the specific examples that you identified to confirm this. If there are additional specific examples that you would like to bring to our attention, please identify them.**

1. As I mentioned on the call, the Producer Defendants have another production forthcoming in the coming days. Given the breadth of the requests served by Plaintiff on the Producer Defendants in March, it has taken time to compile the voluminous responsive documents, but we are diligently working to produce this final set of documents.

Thank you,

Kevin