IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

ANDREW L. COLBORN,
       Plaintiff,

vs.

NETFLIX, INC.,           Case No. 19-CV-484
CHROME MEDIA, LLC, f/k/a
SYNTHESIS FILMS, LLC,
LAURA RICCIARDI, and
MOIRA DEMOS,
       Defendants.

**PLAINTIFF, ANDREW L. COLBORN'S RESPONSE TO DEFENDANT NETFLIX, INC.'S ADDITIONAL PROPOSED FINDINGS OF FACT**

Plaintiff, Andrew L. Colborn, by his attorneys, the Law Firm of Conway, Olejniczak & Jerry, S.C., responds to Defendant Netflix, Inc.'s Additional Proposed Findings of Fact as follows:

**NETFLIX'S ADDITIONAL PROPOSED FINDINGS OF FACT**

1. MaM used graphical elements to enhance the clarity and factual accuracy of the series for viewers, especially because Avery's story spanned several decades and involved key players. *See* Dkt. 271 ¶¶ 99, 103. In Episode 2, one such graphic, which included the photographs of several individuals including Colborn, Lenk, and Petersen, was used to orient viewers. *See* Ep. 2 (Dkt. 120-2) at 20:26-20:34.

  RESPONSE 1: Admit that MAM used graphics but deny defendant's stated motive in using the graphics was to provide viewers clarity and factual accuracy as the graphic cited is show to how Colborn didn't make a report to superior officers on the jail call, at which time he was only a corrections officer and had no authority to investigate. *See* Dkt #120-14, Depo p. 14:7-12 and Depo p. 5:12-24.

2. Immediately following the partial quotation of Avery's counsel, Buting, referenced in Colborn's Proposed Fact No. 42, Episode 4 also includes Buting stating,

> So we looked around and one guy's name just kept coming up over and over and over every place we looked. At critical moments. And that was Lieutenant James Lenk. Lenk is the guy who finds the key in the bedroom on the seventh entry at supposedly in plain view. Lenk is deposed just three weeks before this Halbach disappearance. And then, most peculiar of all, is when we looked in Steven's old 1985 case file in the clerk's office. Some items from that court file ultimately proved to exonerate Steven. Interestingly enough, the transmittal form that goes with the evidence in 2002 to the crime lab is filled out by none other than at that time, Detective Sergeant James Lenk.

*See* Ep. 4 (Dkt. 120-4) at 1:00:43-1:01:45.

RESPONSE 2: Admit the quote is accurate as to what is portrayed in MAM, but denies that any of Buting's statements are admissible for the truth of the matter asserted.

3. Episode 7 includes a scene in which Avery's attorneys, Strang and Buting, are strategizing over the theory of the defense and preparing for forthcoming witness examinations in Avery's criminal trial for the murder of Halbach. After the lengthy exchange in Colborn's Proposed Fact No. 50, Strang states, "Yeah, I'll—I'll connect that," referring to a line of cross-examination Strang would pursue in court. *See* Ep. 7 (Dkt. 120-7) at 10:45-12:05. The rest of the episode shows those series of cross-examinations. *See* Dkt. 271 ¶¶ 57-71.

RESPONSE 3: Admit that Strang states "Yeah, I'll- I'll connect that" as referenced above, but deny the rest of the episode shows those series of cross examinations as other things are mentioned in the reset of the episode.

4. The note from the Netflix creative team about "bad guy theme" music from which Colborn selectively quotes in Proposed Fact No. 73 reads in full, "42:00—learning that Tom Fassbender is calling Scot Tadych to convince Barbara make Brendan take a plea—perfect moment for 'bad guy theme.'" *See* Dkt. 286 Ex. 9 at NFXCOL0002037. It makes no mention of or implication toward Colborn. *See id*.

RESPONSE 4: Admit that the quote is correct and admit that Colborn's name is not mentioned on NFXCOL 2037, but deny the accusation as cops and prosecution are mentioned, and Mr. Colborn is repeatedly identified throughout the series as one of the Manitowoc County Sheriff's Department officers alleged to have a role in "planting evidence" against Avery.

5. The note from the Netflix creative team from which Colborn selectively quotes in Proposed Fact No. 74 reads in full, "21:23—Is there anything we can use/show to clarify

whether or not the cops had a warrant to search his property and allude to the fact that they may have planted something when they were there without permission?" *See* Dkt. 286 Ex. 11 at NFXCOL0001940.

      RESPONSE 5:  Admit the below appears in NFXCOL0001940:

> 21:23 - Is there anything we can use/show to clarify whether or not the cops had a warrant to search his property and allude to the fact that they may have planted something when they were there without permission?

6.     The email from filmmaker Moira Demos regarding the trailer for MaM referenced in Colborn's Proposed Fact No. 78 was not sent to any of the members of Netflix's creative team who worked on the production of MaM (Lisa Nishimura, Adam Del Deo, Ben Cotner, or Marjon Javadi), through whom Colborn must prove actual malice by clear and convincing evidence. *See* Dkt. 286 Ex. 14 at CHRM000481-482.

      RESPONSE 6:  Deny as Peter Stone from Netflix confirmed and replied "WE ARE USING THE "SQUIRMY" SHOT FROM THE LOCKED CUT".  See Dkt #330-7, CHRM000395.  Plaintiff also notes this document was unexplainably not produced by Netflix in discovery.  Plaintiff also objects to the proposed fact as in fact including legal argument and proposed conclusions and as ignoring the fact that the "squirmy shot" may be considered evidence of Chrome's and Netflix's actual malice with respect to the series as a whole.

7.     At his deposition in this case, Colborn testified that, to accept his denial at Avery's murder trial that he planted evidence, "you would have to trust that I was telling the truth under oath," but that "I like to think that my testimony and when I say something, people understand that I'm under oath and I'm saying the truth." Second Decl. of Leita Walker ("Second Walker Decl.") Ex. 1 (July 21 & 22, 2022 Colborn Tr. Excerpts) at 174:9-12, 462:24-463:13.

      RESPONSE 7:  Admit that Colborn made the statements quoted above in deposition testimony but the statements are not produced in full context and deny that they are complete.

8. In response to a question about whether he could "understand how someone who wasn't there" when he searched Avery's property "might have some uncertainty about" his explanation of how he and others found the evidence that led to Avery's conviction for Halbach's murder, Colborn testified that "I don't have an instinctive distrust of law enforcement." *See id*. at 462:24-463:13.

RESPONSE 8: Admit that Colborn made the statements quoted above in deposition testimony but the statements are not produced in full context and deny that they are complete.

Dated this 9th day of December, 2022.

                By: *Electronically signed by April Rockstead Barker*
                    April Rockstead Barker
                    Attorneys for Plaintiff, Andrew L. Colborn
                    SBW #1026163
                    525 N. Lincoln Ave.
                    Beaver Dam, WI 53916
                    (920) 887-0387
                    (262) 666-6483 (facsimile)
                    aprilrbarker@rocksteadlaw.com

**Co-Counsel:**

Attorney George Burnett
231 S. Adams Street
Green Bay, WI 54301
P.O. Box 23200
Green Bay, WI 54305-3200
Phone: (920) 437-0476
Fax: (920) 437-2868
State Br No. 1005964

*4441033*