# EXHIBIT 1



355 South Grand Avenue, Suite 2450 | Los Angeles, CA 90071 | T 310.870.7048 | F 310.870.7010 | JASSYVICK.COM

Kevin L. Vick
kvick@jassyvick.com

August 10, 2022

**VIA EMAIL**

Christina Sommers, Esq.
George Burnett, Esq.
Law Firm of Conway, Olejniczak & Jerry, S.C.
231 South Adams Street
Green Bay, WI 54301

April Rockstead Barker, Esq.
Rockstead Law, LLC
525 N. Lincoln Ave.
Beaver Dam, WI 53916

Re: *Colborn v. Netflix, et al.*

Dear Ms. Sommers:

I write in response your letter dated July 15, 2022 regarding alleged deficiencies in the responses of Laura Ricciardi, Moira Demos and Chrome Media (collectively the "Producer Defendants") to certain requests for production from Plaintiff.

Before turning to the substance of your letter, I must first address the untimeliness of Plaintiff's complaints regarding any alleged deficiencies. The Producer Defendants' responses at issue in your letter date from mid-July 2021 (more than one year ago) through early April 2022 (many months ago). Besides the passage of time, the deadline for fact discovery in this case came and went on April 8, 2022. Indeed, even the deadline for depositions (for all deponents except Plaintiff) was May 20, 2022, nearly two months before you sent your letter. Moreover, the parties met and conferred regarding respective alleged discovery deficiencies months ago in April and early May 2022 following correspondence sent by the various defendants in March 2022. Then we heard nothing on the subject from Plaintiff until your July 15, 2022 letter.[1]

The time for raising complaints about parties' responses to written discovery has long since passed. Indeed, the deadline for expert disclosures is less than a month away and that for

---

[1] Netflix attorney Leita Walker's July 29, 2022 letter to you set forth a fuller timeline of the events at issue, including the meet and confer discussions that seemingly had concluded months ago. Rather than repeat what Ms. Walker notes there, I refer to that timeline here.

summary judgment motions is less than six weeks. It is unfair to expect the Producer Defendants and their counsel to divert their time and attention from such matters to address issues related to fact discovery at this belated juncture. We have strived to be reasonable and accommodating with respect to discovery deadlines where there was good reason. For example, we agreed to let Plaintiffs depose Lisa Dennis and Mary Manhardt after the May 20, 2022 deadline when those deponents had health issues that precluded earlier depositions, and we did not attempt to seize some litigation advantage based on the fact Plaintiff had waited to notice their depositions until the final week for depositions. However, there is no similar good cause for Plaintiff waiting until mid-July 2022 to raise complaints about perceived deficiencies in the Producer Defendants' responses to written discovery – some of which date back *more than one year*.

This is particularly true considering the enormous burden that Plaintiff's written discovery requests placed on the Producer Defendants in this action. As reflected in your letter, Plaintiff served seven sets of requests for documents on the Producer Defendants, including a final seventh set that was very broad and required the Producer Defendants to effectively re-do prior searches and even re-review documents in response thereto – in contrast to the normal procedure in discovery where parties begin with more general requests and then send more targeted and narrower follow-up requests later.

In response to Plaintiff's seven sets of requests for production, the Producer Defendants have produced nearly 35,000 pages of documents. The Producer Defendants have also produced approximately 15 hours and 20 minutes of raw footage of Plaintiff's testimony at the Avery criminal trial in response to Plaintiff's requests for such raw footage. The Producer Defendants did so after the parties entered into an agreement whereby the Producer Defendants agreed to search for, process and produce in usable form to Plaintiff all the raw footage that they had of Plaintiff testifying at that trial, in return for Plaintiff withdrawing his other requests for footage. Even that compromise agreement was an enormous undertaking, which required Ms. Ricciardi and Ms. Demos to put aside their respective professional projects and to spend many dozens of hours each.

Indeed, in total, Ms. Ricciardi has personally spent more than 150 hours, and Ms. Demos has personally spent approximately 100 hours, in connection with responding to Plaintiff's seven sets of requests for production. That is in addition to the many, many hundreds of hours that their attorneys have spent performing various tasks related to responding to Plaintiff's sets of document requests, including reviewing and processing the many thousands of responsive documents and the 34,942 pages of responsive materials that the Producer Defendants produced to Plaintiff in this action.

In sum, the burden that the Producer Defendants have borne in this case in responding to Plaintiff's requests for production has been extraordinary—greatly exceeding the proportionality limitations in Federal Rule of Civil Procedure Rule 26. Yet the Producer Defendants have borne that burden, along with the burdens associated with Plaintiff's desire to take a full slate of depositions in this case and to issue extraordinarily broad document subpoenas to many parties, including individuals who formerly worked with Chrome Media, which required the Producer Defendants and their counsel to devote many additional hours performing a privilege review of the tens of thousands of pages of documents produced by those individuals.

Accordingly, the Producer Defendants believe that any complaints that Plaintiff has about their responses to Plaintiff's various sets of requests for production are not just without merit, but untimely and, at this point, undue when viewed in the context of the discovery process to date. That said, I will respond below to the substance of your letter to further demonstrate the good faith approach that Producer Defendants have taken throughout this case in responding to Plaintiff's requests for production, and in the hopes of putting these matters to rest so that the parties can proceed with those aspects of the case that remain to be completed.

\*    \*    \*    \*    \*    \*

Plaintiff's Third Set of Requests for Production

Request No. 1: Netflix already produced copies of the final, executed license agreements, in response to an identical request for production of the same material that Plaintiff served on Netflix. The Producer Defendants do not have any additional documents besides those already produced by Netflix.

Request Nos. 2 and 3: All responsive documents within the scope of what the Producer Defendants agreed to produce have been produced to Plaintiff – except for those that are listed on privilege logs previously served on Plaintiff by the Producer Defendants on May 9, 2022. The Producer Defendants are not withholding additional documents beyond those that have previously been logged.[2] The Producer Defendants have produced documents as they were kept in the ordinary course of business, and thus—like Plaintiff did himself—they were not required to produce them with labeling to correspond to specific categories in Plaintiff's requests. *See* F.R.C.P. 34(b)(2)(E)(i). Finally, the parties—once again, including Plaintiff—did not agree to exchange lists of search terms in this case as part of their ESI protocol and they have not done so. Without going into detail, I can tell you that we did not merely search for Mr. Colborn's name, but included a host of potential misspellings and variations, and included in production documents that did not mention Mr. Colborn by name but that referenced law enforcement more generally with respect to portions of Making a Murderer that are put at issue by the Second Amended Complaint.[3] And, erring on the side of overinclusion, we ultimately produced copies of the Season 1 notes that individuals at Netflix provided the Producer Defendants even where such notes made no reference to Mr. Colborn or concerned portions of *Making a Murderer* that were not put at issue by the Second Amended Complaint.

---

[2] The Producer Defendants have not withheld documents in this case based on reporter's privilege/shield laws.

[3] Paragraphs 27-29, 33-40, 44-48 and Exhibits A and B to the Second Amended Complaint set forth the portions of *Making a Murderer* that are put at issue. *See* SAC, Dkt No. 105 at ¶¶ 57-82.

Plaintiff's Fifth Set of Requests for Production

We have provided to Plaintiff copies of all documents that we received from all parties to whom we issued document subpoenas in this case, including documents received from the Manitowoc County Sheriff's Office, the Calumet County Sheriff's Office, and the Wisconsin DOJ. To the extent, if any, there are documents therein responsive to Plaintiff's Fifth Set of Requests, all such documents would be contained in those productions.

Plaintiff's Sixth Set of Requests for Production

Request No. 3: the Producer Defendants produced all the documents they agreed to produce – and then some, as the Producer Defendants produced the notes that they received from Netflix personnel regarding Season 1 of Making a Murderer, not just those described by Ms. Demos at 53 minutes into the referenced video. *See supra* re Plaintiff's Third Set of Requests, Requests Nos. 2 and 3. The Producer Defendants have not withheld any additional documents beyond those reflected on the privilege logs they previously served on Plaintiff in early May 2022.

Request No. 4: the Producer Defendants are not withholding "rough cuts" or "sketches" pursuant to objections or privileges. As explained in the Producer Defendants' response to Request No. 4: "the Producer Defendants do not have any documents responsive to this Request. A diligent search and reasonable inquiry have been made to comply with this Request, however, the Producer Defendants did not archive or otherwise retain, and do not possess, any 'rough cuts,' 'sketches' or prior versions of episodes of Making a Murderer, and only have final versions of episodes."

Request No. 5 and No. 6: as with Request No. 3, the Producer Defendants produced all the materials they agreed to produce. The Producer Defendants have not withheld any additional documents beyond those reflected on the privilege logs they previously served on Plaintiff on May 9, 2022. *See also supra* re Third Set of Requests, Requests Nos. 2 and 3, with respect to F.R.C.P. 34(b)(2)(E)(i), the ESI protocol in case, and the Producer Defendants' obligations, searches and productions with respect to materials exchanged by the Producer Defendants and Netflix personnel.

Plaintiff's Seventh Set of Requests for Production

Request Nos. 1 and 2: the Producer Defendants produced all the materials they agreed to produce, and they searched for and produced documents that included Colborn's and/or Lenk's names, along with misspellings of same, along with many other materials. The Producer Defendants have not withheld any additional documents beyond those reflected on the privilege logs they previously served on Plaintiff on May 9, 2022. *See also supra* re Third Set of

Requests, Requests Nos. 2 and 3, with respect to F.R.C.P. 34(b)(2)(E)(i), the ESI protocol in case, and the Producer Defendants' searches, productions, and obligations.

Request No. 3: this Request remains vague and ambiguous notwithstanding your letter's citation to the definition of the word "antagonist" along with other matters. Nonetheless, to avoid unnecessary disputes, we ran a search for the term "antagonist" in response to your letter, and did not find any documents containing that term that related to either Plaintiff or those portions of Making a Murderer placed at issue by the Second Amended Complaint.

Request Nos. 4 and 5: The Producer Defendants produced all the documents they agreed to produce. The Producer Defendants have not withheld any additional documents beyond those reflected on the privilege logs they previously served on Plaintiff on May 9, 2022. *See also supra* re Third Set of Requests, Requests Nos. 2 and 3, with respect to F.R.C.P. 34(b)(2)(E)(i), the ESI protocol in case, and the Producer Defendants' searches, productions, and obligations.

Request Nos. 6, 7, 8 and 9: The Producer Defendants produced all the documents they agreed to produce. The Producer Defendants have not withheld any additional documents beyond those reflected on the privilege logs they previously served on Plaintiff on May 9, 2022. *See also supra* re Third Set of Requests, Requests Nos. 2 and 3, with respect to F.R.C.P. 34(b)(2)(E)(i), the ESI protocol in case, and the Producer Defendants' searches, productions, and obligations.

Request No. 10: We have provided to Plaintiff copies of all documents that we received from all parties to whom we issued document subpoenas in this case, including documents received from the Manitowoc County Sheriff's Office, the Calumet County Sheriff's Office, and the Wisconsin DOJ. To the extent, if any, there are documents therein responsive to Request No. 10, all such documents would be contained in those productions.

Request No. 12: The Producer Defendants produced all the documents they agreed to produce. The Producer Defendants have not withheld any additional documents beyond those reflected on the privilege logs they previously served on Plaintiff on May 9, 2022. *See also supra* re Third Set of Requests, Requests Nos. 2 and 3, with respect to F.R.C.P. 34(b)(2)(E)(i), the ESI protocol in case, and the Producer Defendants' searches, productions, and obligations.

Very truly yours,

Kevin L. Vick

CC: Leita Walker, Ballard Spahr LLP