# *Butowsky v. Folkenflik*

United States District Court for the Eastern District of Texas, Sherman Division

August 7, 2019, Decided; August 7, 2019, Filed

Civil Action No. 4:18cv442

**Reporter**
2019 U.S. Dist. LEXIS 132268 *; 2019 WL 3712026

ED BUTOWSKY, Plaintiff v. DAVID FOLKENFLIK, ET AL., Defendants

**Prior History:** *Butowsky v. Folkenflik, 2019 U.S. Dist. LEXIS 104297 (E.D. Tex., Apr. 17, 2019)*

**Counsel:** [*1] For Edward Butowsky, in his Individual and Professional Capacities, Plaintiff: Steven Scott Biss, Law Office of Steven S Biss, Charlottesville, VA; Ty Odell Clevenger, Ty Odell Clevenger, Attorney At Law, Brooklyn, NY.

For David Folkenflik, NPR, Inc., NPR.org, Edith Chapin, Leslie Cook, Pallavi Gogoi, Defendants: Laura Lee Prather, Wesley Darwin Lewis, Haynes & Boone, LLP - Austin, Austin, TX; Thomas Joseph Williams, Haynes and Boone, LLP, Fort Worth, TX.

**Judges:** AMOS L. MAZZANT, UNITED STATES DISTRICT JUDGE.

**Opinion by:** AMOS L. MAZZANT

## Opinion

### ORDER ADOPTING REPORT AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE

The above-entitled and numbered civil action was heretofore referred to United States Magistrate Judge Caroline M. Craven pursuant to *28 U.S.C. § 636*. On April 17, 2019, the Magistrate Judge issued a Report and Recommendation, recommending Defendants' Motion to Dismiss Pursuant to *Federal Rule of Civil Procedure 12(b)(6)* for Failure to State a Claim (Dkt. # 25) be denied. National Public Radio, Inc. ("NPR"), David Folkenflik, Edith Chapin, Leslie Cook, and Pallavi Gogoi (collectively "Defendants") filed objections to the Report and Recommendation. Plaintiff Ed Butowsky ("Plaintiff") filed a response to the objections. The Court conducts a *de novo* review [*2] of the Magistrate Judge's findings and conclusions.

### BACKGROUND

This is an action for defamation, business disparagement, and civil conspiracy filed by Plaintiff, a Dallas investment advisor, against NPR, its senior media correspondent, David Folkenflik ("Folkenflik"), and certain former and current executive editors at NPR.[1] According to Plaintiff, Defendants published false and defamatory statements about Plaintiff online and via Twitter between August 2017 and March 2018 — statements Plaintiff alleges injured his business and reputation. Specifically, Plaintiff claims Folkenflik knowingly and intentionally conspired with Douglas H. Wigdor ("Wigdor") to promote, publish, and republish a demonstrably false and defamatory narrative about Plaintiff. Joint Report of Attorney Conference (Dkt. # 52) at 2. Plaintiff alleges Folkenflik actively colluded with Wigdor, Folkenflik knew he was part of Wigdor's "press strategy" to extort money from Fox, and Folkenflik willingly assumed the role of "firecracker" in the scheme. *Id.* Plaintiff seeks money damages for alleged loss and injury to his business, insult, pain and mental suffering, humiliation, embarrassment, and injury to his reputation sustained [*3] as a result of Defendants' publication of allegedly false and defamatory statements. *Id.*

### REPORT AND RECOMMENDATION

In his original complaint, Plaintiff alleges four causes of action: (1) defamation *per se* (Dkt. # 1, ¶¶ 161-168); (2) business disparagement (*id.*, ¶¶ 169-174); (3) civil conspiracy (*id.*, ¶¶ 175-179); and (4) intentional infliction

---

[1] On December 5, 2018, the Court dismissed this action as to Defendants Mohn, Foxwell, Oreskes, Turpin, Dellios, and Gilbert without prejudice, and denied as moot these defendants' Motion to Dismiss for Lack of Personal Jurisdiction Pursuant to *Federal Rule of Civil Procedure 12(b)(2)*. *See* Dkt. # 37.

of emotional distress (*id.*, ¶¶ 180-185).[2] Defendants contend Plaintiff filed suit against them for accurately reporting on a publicly filed lawsuit on a matter of public concern.[3] Defendants moved to dismiss pursuant to *Federal Rule of Civil Procedure 12(b)(6)*, asserting Plaintiff's complaint fails to state a plausible claim for relief for two primary reasons. First, Defendants argue both Texas law and the *First Amendment to the United States Constitution* protect Defendants' reporting on judicial proceedings and about matters of public concern. Defendants argue the statements in the NPR articles at issue in this case are subject to statutory and common law privileges and defenses that preclude civil liability — namely the fair report privilege, the fair comment privilege, and the "third-party allegation" rule. Second, Defendants argue many of the statements are not "of and concerning" Plaintiff, are not defamatory or capable of a **[*4]** defamatory meaning, or are protected expressions of opinion and should be dismissed for these reasons as well.

On April 17, 2019, the Magistrate Judge entered a 98-page Report and Recommendation ("R&R") regarding proposed findings of fact and recommendations that Defendants' motion to dismiss be denied. Dkt. # 58. The Magistrate Judge first found Defendants did not establish the common law and statutory privileges barred Plaintiff's claims. *Id.* at 49. Additionally, she found Plaintiff sufficiently alleged the publications at issue were not substantially true, and the third-party allegation rule did not bar Plaintiff's claims as a matter of law at this stage of the proceeding. *Id.* at 51. She next concluded Plaintiff adequately pleaded facts sufficient to allege a defamation claim. Specifically, she found, at this stage of the proceedings, accepting the allegations in Plaintiff's complaint as true, Plaintiff plausibly alleged the statements at issue were "of and concerning" Plaintiff. She also found the statements at issue were not expressions of opinion and were capable of a defamatory meaning. *Id.* at 74, 78. She then considered whether the *Defamation Mitigation Act ("DMA")* **[*5]** barred Plaintiff's defamation claim. She concluded Plaintiff's failure to follow the DMA did not require dismissal of the action, and the issue of recovery of exemplary damages was more appropriate for consideration in the context of summary judgment. *Id.* at 95. Lastly, the Magistrate Judge found Plaintiff pleaded facts sufficient to state a claim for civil conspiracy. *Id.* at 97.

## OBJECTIONS

Defendants filed objections to both the R&R's statement of facts and the conclusions of law, more specifically described below.

**Objections to the R&R's Statement of Facts**

Defendants argue the statement of facts in the R&R omits significant accusations against Plaintiff from the *Wheeler* lawsuit. Dkt. # 63 at 5. Defendants claim these missing allegations are relevant to Defendants' motion because this Court must compare the Reports and the *Wheeler* complaint to accurately assess whether privileges apply. *Id.*

**Objections to the R&R's Conclusions of Law**

Defendants also assert eight main objections to the R&R's conclusions of law. These objections and all sub-parts to any objection are set out below.

In their first objection, Defendants argue the R&R errs by relying on overturned case law to conclude the third-party **[*6]** allegation rule did not bar Plaintiff's claims at this stage of the case and under the facts alleged in the complaint. *Id.* at 7-8. According to Defendants, the Texas Legislature and the Texas Supreme Court recognize the third-party allegation rule as an exception to the republication rule, allowing the media to truthfully and accurately report on allegations made by a third party regarding a matter of public concern. *Id.* Defendants state because the Reports at issue here were just a republication of the *Wheeler* complaint, the third-party allegation rule bars Plaintiff's defamation claim. *Id.*

Defendants' second objection argues the R&R fails to correctly analyze whether common law and statutory privileges bar Plaintiff's defamation claim. *Id.* at 8-14. Defendants' second objection is broken into four sub-

---

[2] In his response to Defendants' motion to dismiss, Plaintiff voluntarily dismissed his claim for intentional infliction of emotional distress without prejudice. Dkt. # 32 at 15, n. 11. Additionally, Plaintiff has sought leave to file an Amended Complaint which, among other things, removes the claim for intentional infliction of emotional distress.

[3] Defendants assert Plaintiff filed suit following NPR's reporting on a 2017 lawsuit filed by Fox News contributor Rod Wheeler against Fox News. *See* Complaint, *Wheeler v. Twenty-First Century Fox, Inc., et al.*, Case No. 1:17-cv-05807 (S.D.N.Y. Aug. 1, 2017) ("*Wheeler* Complaint").

arguments: (1) the R&R erroneously relies on the Restatement (Second) of Torts as a guide for interpreting Texas privilege law; (2) the R&R uses comments to the Restatement in its analysis, even though there is ample reason to believe the Texas Supreme Court would reject the Restatement and its comments; (3) the R&R intermingles the different constitutional, common law, and statutory privileges in its analysis; [*7] and (4) the R&R uses the public-interest privilege standard to analyze whether the fair report and fair comment privileges apply. *Id.*

In their third objection, Defendants argue the R&R wrongly concludes Plaintiff's allegations were sufficiently pleaded under *Iqbal/Twombly*. *Id.* at 14-15. Specifically, Defendants state Plaintiff's allegations regarding collusion and actual malice are conclusory and unsupported by any facts. *Id.*

In their fourth objection, Defendants claim the R&R errs in relying on supplemental allegations found in Plaintiff's response to Defendants' motion to dismiss (Dkt. # 32) and Plaintiff's proposed amended complaint (Dkt. # 54). *Id.* at 15-17. Defendants argue the R&R uses facts not found in the operative pleading (the original complaint) and considers the un-pleaded cause of action, defamation *per quod*. *Id.*

Defendants argue in their fifth objection the R&R improperly analyzes Plaintiff's defamation *per se* claim. *Id.* at 17-23. Defendants break the fifth objection into five discrete sub-arguments as follows: (1) the R&R incorrectly analyzes the falsity of the publications at issue; (2) the R&R incorrectly concludes the alleged defamatory statements were "of and concerning" Plaintiff; (3) the R&R wrongly finds the statements [*8] at issue were statements of fact and not opinion; (4) the R&R erroneously concludes the allegations did not support finding Plaintiff was a public figure; and (5) the R&R improperly finds Plaintiff's allegations plausibly alleged actual malice. *Id.* Sub-argument five is identical to Defendants' third objection.

In their sixth objection, Defendants argue Plaintiff's failure to comply with the Texas DMA is a bar to litigation or at least a bar to exemplary damages, as opposed to the findings in the R&R that this issue should be raised and decided at summary judgment. *Id.* at 23-24.

In their seventh objection, Defendants argue the R&R's business disparagement analysis is erroneous. *Id.* at 24. The R&R finds Plaintiff's business disparagement claim survives for the same reasons Plaintiff's defamation claims survive. *Id.* Defendants argue that because the R&R's defamation analysis is wrong, so is the R&R's conclusion that Plaintiff's business disparagement survives. *Id.*

In their last objection, Defendants object to the R&R's civil conspiracy analysis. *Id.* While Defendants agree the R&R correctly identifies the applicable law, they argue Plaintiff failed to allege sufficient facts to give rise to a plausible claim [*9] for relief for a conspiracy. *Id.* This argument is also raised by Defendants in their third objection.

**Plaintiff's Response to Defendants' Objections**

Plaintiff argues the Magistrate Judge adequately reviewed Plaintiff's factual allegations, correctly finding the allegations sufficient to state a claim for relief. Dkt. # 64. Plaintiff asserts the R&R does not rely heavily on one decision but considers the entire body of Texas law applicable to all claims. *Id.* at 2. Additionally, Plaintiff responds the R&R relies only on the well-plead complaint in its analysis, and it only references other pleadings in the docket. *Id.* at 8. According to Plaintiff, any reference to other pleadings does not change the overall analysis of the R&R. *Id.* Plaintiff also argues the R&R was right to find Plaintiff's allegations were not conclusory, and each finding in the R&R is supported by facts alleged in Plaintiff's complaint. *Id.* Specifically, Plaintiff argues the R&R correctly concludes:

- Plaintiff adequately alleged the statements at issue were defamatory *per se*.
- The fair report privilege did not apply because of the exception found in the Restatement (Second) Torts.
- Plaintiff alleges facts showing Defendants acted with [*10] actual malice.
- Plaintiff sufficiently alleged facts that Defendants' reports were not fair, true, or impartial.
- Plaintiff sufficiently alleged material falsity.
- The statements at issue are capable of a defamatory meaning.
- The statements are "of and concerning" Plaintiff.
- The statements are statements of fact, not opinion.
- The DMA does not bar Plaintiff's claims.
- Plaintiff sufficiently alleged a claim for business disparagement.
- Plaintiff pleaded sufficient facts to show conspiracy between Folkenflik and Wigdor.

*Id.* at 2-8. Plaintiff urges this Court to adopt the R&R in its entirety.

**STANDARD OF REVIEW**

Under *Federal Rule of Civil Procedure 8(a)(2)*, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Fed. R. Civ. P. 8(a)(2)*. Each claim must include enough factual allegations "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)*.

Under *Federal Rule of Civil Procedure 12(b)(6)*, the Court utilizes a "two-pronged approach" in considering a motion to dismiss. *Ashcroft v. Iqbal, 556 U.S. 662, 679, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)*. First, the Court identifies and excludes legal conclusions that "are not entitled to the assumption of truth." *Id.* Second, the Court considers the remaining "well-pleaded factual allegations." *Id.* All allegations must be accepted as true and viewed in the light most favorable **[*11]** to a plaintiff. *In re Katrina Canal Breaches Litig., 495 F.3d 191, 205 (5th Cir. 2007)*. A plaintiff's complaint survives a defendant's *Rule 12(b)(6)* motion to dismiss if it includes facts sufficient "to raise a right to relief above the speculative level." *Id.* (quotations and citations omitted).

The ultimate inquiry must consider whether a plaintiff has pleaded "enough facts to state a claim to relief that is plausible on its face." *Twombly, 550 U.S. at 570*. "'[D]etailed factual allegations'" are not required. *Iqbal, 556 U.S. at 678* (quoting *Twombly, 550 U.S. at 555*). However, a complaint must allege "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Id.* (quoting *Twombly, 550 U.S. at 570*). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly, 550 U.S. at 556*). This determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id. at 679*. The Court may consider "the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC, 594 F.3d 383, 387 (5th Cir. 2010)*.

***DE NOVO* REVIEW**

**Discussion of Defendants' Objection to the R&R's Findings of Fact**

Defendants agree the majority of **[*12]** the factual background identified in the R&R is correct, but they argue the R&R fails to consider certain sections of the *Wheeler* complaint in its analysis.

The Magistrate Judge specifically states she considered the *Wheeler* complaint in the analysis. Dkt. # 58 at 4, n. 5. The R&R examines the *Wheeler* complaint as a whole in analyzing Defendants' motion to dismiss. After reviewing the *Wheeler* complaint and comparing it to the alleged defamatory allegations pleaded by Plaintiff, the R&R concludes significant differences exist between the two. The Court agrees and finds Defendants' objection to the R&R's findings of fact without merit. The comparison of the *Wheeler* complaint and the Reports in the R&R is discussed in further detail below in response to Defendants' first and fifth objections.

**Discussion of Defendants' Objections to the R&R's Conclusions of Law**

***Discussion of the first main objection***

Defendants first argue the R&R utilizes reversed precedent and misapplies the third-party allegation rule. Dkt. # 63 at 7-8. Defendants maintain the R&R "relies heavily" on the Fort Worth Court of Appeals holding in *Dallas Morning News, Inc. v. Hall, 524 S.W.3d 369 (Tex. App. — Fort Worth 2017)*, which was recently reversed by the Texas Supreme **[*13]** Court.[4] *Dallas Morning News, Inc. v. Hall, No. 17-0637, 579 S.W.3d 370, 2019 Tex. LEXIS 444, 2019 WL 2063576, at *5 (Tex. May 10, 2019)* (unpublished). The R&R uses *Hall I* to find the third-party allegation rule does not apply, according to Defendants. Defendants state the Texas Supreme Court holding in *Hall II* supports application of the third-party allegation rule in this case because Defendants merely republished the allegations contained in the *Wheeler* complaint.

First the Court would note *Hall II* was decided after the R&R was entered. Secondly, the Court is not convinced

---

[4] For clarity purposes, the *Hall* case before the Fort Worth Court of Appeals will be referred to as "*Hall I*" and the subsequent Texas Supreme Court holding on the same case will be referred to as "*Hall II*."

the R&R, by relying on *Hall I*, incorrectly interprets Texas law regarding privileges and defenses afforded to media defendants. Although *Hall I* is cited in the R&R (*see* Dkt. # 58 at 24-25), the R&R thoroughly reviews all relevant Texas case law and accurately identifies the law on the third-party allegation rule.

Additionally, this case is distinguishable from *Hall II*. The *Hall II* plaintiffs sued the Dallas Morning News (the "News") and Kevin Krause for allegedly defaming them and their pharmaceutical business. *2019 Tex. LEXIS 444, 2019 WL 2063576, at \*1*. According to the plaintiffs, the News published numerous articles on the pharmacy compounding industry, including specifically the plaintiff's compounding pharmacy, Rxpress. *2019 Tex. LEXIS 444, [WL] at \*1-\*2*. The articles mentioned accusations against **[\*14]** Rxpress, including that it was under federal investigation for possible violations of the anti-kickback law. *2019 Tex. LEXIS 444, [WL] at \*2-\*3*. The News moved to dismiss these claims under the Texas Citizens Participation Act, arguing, among other things, Rxpress could not meet its burden to show the articles were not substantially true and that the articles' reporting of the third party allegations in the civil lawsuits and other official proceedings was both true and privileged. *2019 Tex. LEXIS 444, [WL] at \*3*.

The trial court denied the motion, and the News filed an interlocutory appeal. *Id.* The court of appeals upheld the trial court, holding first the News had not established its substantial-truth defense. The court of appeals then held Rxpress had met its burden to state a prima facie case that the gists of the articles were not substantially true. *2019 Tex. LEXIS 444, [WL] at \*4*. The News appealed *Hall I* to the Texas Supreme Court, which granted the News's petition for review. *Id.*

The Texas Supreme Court first set forth the applicable law in a case brought pursuant to the *Texas Citizens Participation Act* (the "Act"), which specifically provides that a defendant in a case that "is based on, relates to, or is in response to a party's exercise of the right of free speech" **[\*15]** may move for dismissal under the Act. *Id.* (quoting *Tex. Civ. Prac. & Rem. Code § 27.003(a)*). According to the court in *Hall II*, dismissal under the Act requires two steps. First, the party moving for dismissal must show, by a preponderance of the evidence, that the "legal action is based on, relates to, or is in response to a [movant]'s exercise of the right of free speech." *Id.* (internal punctuation omitted). The burden then shifts to the plaintiff to establish "by clear and specific evidence a prima facie case for each essential element of the claim in question." *Hall II, 2019 Tex. LEXIS 444, 2019 WL 2063576, at \*4* (quoting § *Tex. Civ. Prac. & Rem. Code § 27.005(c)*). Additionally, *subsection (d)* requires a court to dismiss the legal action if "the moving party establishes by a preponderance of the evidence each essential element of a valid defense to the nonmovant's claim." *Hall II, 2019 Tex. LEXIS 444, 2019 WL 2063576, at \*4* (quoting *Tex. Civ. Prac. & Rem. Code § 27.005(d)*). If the plaintiff fails to carry its burden—or if the movant establishes the essential elements of a valid defense under *§ 27.005(d)*—the trial court must dismiss the suit. *Hall II, 2019 Tex. LEXIS 444, 2019 WL 2063576, at \*5*. In deciding if dismissal is warranted, the court considers all the "pleadings and supporting and opposing affidavits stating the facts on which the liability or defense is based." *Id.* (quoting *Tex. Civ. Prac. & Rem. Code § 27.006(a)*. The Texas Supreme Court reviewed *de novo* the court of appeals' determinations that the **[\*16]** parties met or failed to meet their burdens of proof under *§ 27.005*. *Hall II, 2019 Tex. LEXIS 444, 2019 WL 2063576, at \*5* (generally citing *Tex. Civ. Prac. & Rem. Code § 27.005*).

The court first considered whether, under the Act, Rxpress had satisfied its burden to establish—by clear and specific evidence—a prima facie case for every essential element of the defamation claim, including falsity. *Hall II, 2019 Tex. LEXIS 444, 2019 WL 2063576, at \*5* (citing *Tex. Civ. Prac. & Rem. Code § 27.005(c)*; *Neely v. Wilson, 418 S.W.3d 52, 62 (Tex. 2013))*.[5] At issue in *Hall II* were two allegedly defamatory meanings — that Rxpress was "under investigation" (which was plainly and expressly set out in the articles) and that Rxpress actually violated healthcare laws (which was implied). *579 S.W.3d 370, 2019 Tex. LEXIS 444, 2019 WL 2063576, at \*5*.

Regarding the first alleged defamatory meaning, the court held Rxpress failed to carry its burden under the Act because it had not established a prima facie case that the News falsely reported that Rxpress was "under investigation." *Hall II, 2019 Tex. LEXIS 444, 2019 WL*

---

[5] As noted by the court in *Hall II*, the "United States Supreme Court and [the Supreme Court of Texas] long ago shifted the burden of proving the truth defense to require the plaintiff to prove the defamatory statements were false when the statements were made by a media defendant over a public concern." *2019 Tex. LEXIS 444, 2019 WL 2063576, at \*5, n. 4* (quoting ***Neely, 418 S.W.3d at 62***) (citing *Philadelphia Newspapers, Inc. v. Hepps, 475 U.S. 767, 777, 106 S. Ct. 1558, 89 L. Ed. 2d 783 (1986)*).

2063576, at *7 (citing Tex. Civ. Prac. & Rem. Code § 27.005(c)). Because the court held Rxpress failed to carry its burden to survive dismissal under § 27.005(c), the court did not need to decide whether the News established its substantial-truth defense under § 27.005(d). Hall II, 2019 Tex. LEXIS 444, 2019 WL 2063576, at *7.

Regarding the second alleged defamatory meaning, which was that the articles conveyed an implication that Rxpress had actually violated healthcare laws, the News relied on the official-proceeding privilege and the third-party [*17] allegation rule. *Id.* The Texas Supreme Court reiterated that "true statements strung together and accompanied by speculative commentary" can imply a person has committed a crime and lead to defamation. 2019 Tex. LEXIS 444, [WL] at *8 (citing D Magazine Partners, L.P. v. Rosenthal, 529 S.W.3d 429 (Tex. 2017), reh'g denied (Sept. 29, 2017)). According to the court in *Hall II*, unlike in *Rosenthal*, where the defendant made "thinly veiled accusations such as the plaintiff 'must have been less than forthcoming' and juxtaposed damning facts with seemingly on-point criminal statutes," in the case before the court, the News placed "the accusations against Rxpress in the context of the greater controversy facing the compounding industry, but that's it." Hall II, 2019 Tex. LEXIS 444, 2019 WL 2063576, at *8 (quoting Rosenthal, 529 S.W.3d at 437). Although the News had certainly made clear Rxpress was "under investigation," the court noted Rxpress had "already failed to carry its burden to show that that's not at least substantially true." Hall II, 2019 Tex. LEXIS 444, 2019 WL 2063576, at *8.

The Texas Supreme Court held the News "fairly and accurately reported on the allegations made in several lawsuits that involved assertions by—and against—Rxpress that "were certainly not flattering especially when placed in proximity to the notion that Rxpress is under federal investigation." 2019 Tex. LEXIS 444, [WL] at *8-*9 (further asserting "not flattering is [*18] not defamatory—especially in the face of the third-party-allegation rule and the official-reporting privilege). Because Rxpress had not met—"and, under these circumstances, [could not] meet—its burden under the Act to show a prima facie case for defamation, the News [was] entitled to dismissal." 2019 Tex. LEXIS 444, [WL] at *9.

In *Hall II*, neither party disputed that the Texas Citizens Participation Act applied to the case.[6] 2019 Tex. LEXIS 444, [WL] at *5. Here, neither party contends the Act applies. As pointed out by the Magistrate Judge, almost every case relied upon by Defendants in their Rule 12(b)(6) motion to dismiss was decided in the context of summary judgment or early dismissal under the Texas Citizens Participation Act, not applicable here. Dkt. # 58 at 46, n. 18.

What is more, the published statements in this case are different from the News' articles in *Hall II*. In *Hall II*, the Texas Supreme Court noted the statements made by the News "fairly and accurately reported on the accusations, and *qualified all of it with pervasive sourcing language*." 2019 Tex. LEXIS 444, 2019 WL 2063576, at *8 (emphasis added). For example, the News included the sources of its statements as follows:

- "Federal authorities are investigating a North Texas compounding pharmacy accused of paying illegal kickbacks [*19] to physicians for writing prescriptions *according to court documents*. . . ."

- "Rxpress Pahrmacy and related entities. . . paid sales reps commissions...in violation of federal anti-kickback laws, *according to lawsuits*."

- "*The tax adviser said* doctors invested in the pharmacy. . . ."

- "Rxpress paid them kickbacks in the form of investor dividends, *she said*."

2019 Tex. LEXIS 444, [WL] at *9.

Here, the Court is not convinced Defendants qualified their statements with "pervasive sourcing language." The Reports here do not state, "according to court documents," as the News qualified its statements in *Hall II*. Plaintiff has alleged sufficient facts which plausibly

---

[6] "Therefore, while the News retained the burden of proof to establish its subsection (d) claim that a preponderance of the evidence support[ed] its substantial-truth defense, the burden under subsection (c) shift[ed] to Rxpress to make out a prima facie case for each element of its defamation claim." *Id.* (citing Tex. Civ. Prac. & Rem. Code § 27.005(c), (d)). Those essential elements are (1) the publication of a false statement of fact to a third party, (2) that was defamatory concerning the plaintiff, and (3) was made with the requisite degree of fault. Hall II, 2019 Tex. LEXIS 444, 2019 WL 2063576, at *5 (citing Dallas Morning News, Inc. v. Tatum, 554 S.W.3d 614, 623 (Tex. 2018)). Of these elements, only falsity was in dispute in *Hall II*. 2019 Tex. LEXIS 444, 2019 WL 2063576, at *5.

show the Reports were not fair, true, and impartial accounts of the *Wheeler* complaint.[7] Additionally, even if the statements are considered a true report of the *Wheeler* complaint, as Defendants argue, the organization of the comments combined with the speculative commentary imply wrongdoing. While the News's articles never actually implied Rxpress was guilty of anything, Defendants here go further. Because *Hall* is distinguishable from the case at hand, this Court finds Defendants' first main objection without merit.

### *Discussion of the second main objection* [*20]

As previously stated, in their second main objection, Defendants object to the R&R's privilege analysis, asserting the following specific arguments: (1) the R&R erroneously uses the Restatement (Second) of Torts to interpret Texas's statutory privileges; (2) the R&R incorrectly urges the Court to apply comments to the Restatement that have not been adopted by the Texas Supreme Court; (3) the R&R conflates the constitutional, common law, and statutory privileges and fails to distinguish the different privileges in its analysis; and (4) the R&R adopts the wrong standard for assessing the common law fair report and fair comment privileges. The Court considers each argument below.

**Texas Common and Statutory Privilege Law**

In each sub-argument of Defendants' second objection, Defendants assert the R&R fails to identify and apply the correct law regarding the different common law and statutory privileges alleged by Defendants. Therefore, this Court will first identify the common law and statutory privilege law applicable in this case.

Texas common law recognizes three distinct conditional privileges—the public interest privilege, the fair report privilege, and the fair comment privilege. Defendants [*21] do not assert the public interest privilege so this Court will not include that privilege in its discussion. At common law, the fair report privilege acts as a defense to defamation where the publication is an accurate, complete, or fair account of an official action or proceeding. *Freedom Communications, Inc. v. Coronado, 296 S.W.3d 790, 797-98 (Tex. App.—Corpus Christ-Edinburg 2009)*, vacated on other grounds, *372 S.W.3d 621 (Tex. 2012)*. The U.S. and Texas Constitution also recognize the common law fair comment privilege. This privilege defeats defamation where the alleged statement is an honest expression of opinion on matters of legitimate public interest when based on a true or privileged statement of fact. *Milkovich v. Lorain Journal Co., 497 U.S. 1, 21, 110 S. Ct. 2695, 111 L. Ed. 2d 1 (1990)*; *Bentley v. Bunton, 94 S.W.3d 561, 579 (Tex. 2002)*.

The Texas legislature codified the common law fair report privilege and the common law fair comment privilege in *§ 73.002 of the Texas Civil Practice and Remedies Code*. The statutory fair report privilege applies to a fair, true, and impartial account of a judicial or official proceeding. *Tex. Civ. Prac. & Rem. Code § 73.002(b)(1)(A)* and *(b)(1)(B)*. The statutory fair comment privilege provides immunity for a reasonable and fair comment on or criticism of an official act of a public official or other matter of public concern published for general information. *Id.* at *(b)(2)*.

Both the common law conditional privileges as well as the statutory conditional privileges can be defeated when a plaintiff shows actual [*22] malice. *See Tex. Civ. Prac. & Rem. Code § 73.002(a)*; *see also Doe v. Doe, 941 F.2d 280, 287 (5th Cir.)*, on reh'g in part, *949 F.2d 736 (5th Cir. 1991)*; *see also Klentzman v. Brady, 456 S.W.3d 239, 252 (Tex. App. — Houston [1st Dist.] 2014)*, aff'd, *515 S.W.3d 878 (Tex. 2017)* ("*Klentzman II*"); *Casso v. Brand, 776 S.W.2d 551, 561 (Tex. 1989)* (Gonzalez, J., concurring and dissenting); *Coronado, 296 S.W.3d at fn. 11*; *Freedom Communications, Inc. v. Sotelo, No. 11-05-00336, 2006 Tex. App. LEXIS 5132, 2006 WL 1644602 at *5 (Tex. App.—Eastland June 15, 2006, no pet.)*. In analyzing a claim of privilege, courts must first determine whether a defendant establishes a qualified or conditional privilege applies. If a defendant meets that burden, then courts must analyze whether a defamation plaintiff shows actual malice to defeat the privilege.

**Whether the R&R erroneously concludes the common law and statutory privileges do not apply**

For their first and second sub-arguments, Defendants argue the R&R should not have relied on the Restatement (Second) of Torts or comments to the

---

[7] Whether the Reports were fair, true, and impartial or substantially true accounts of the *Wheeler* complaint is discussed in detail in response to Defendants' objection regarding the application of the common law and statutory qualified privileges (Defendants' second objection) and to Defendants' objection regarding the falsity of the statements in the Reports (Defendants' fifth objection).

Restatement in reaching its conclusions, as they are inapplicable to the statutory qualified privileges. Additionally, Defendants argue the R&R recommends this Court adopt comments to the Restatement that have not and probably would not be adopted by the Texas Supreme Court.

Looking at the first sub-argument above, the Court's research shows Texas case law specifically compares the statutory qualified privileges outlined in *§ 73.002* to the privilege recognized **[*23]** in the Restatement (Second) of Torts. *See Klentzman II, 456 S.W.3d 239, 252*. Therefore, the R&R's comparison of the Restatement (Second) of Torts to the Texas statutory qualified privileges is not erroneous.

The R&R also gives numerous examples of Texas cases adopting other comments to the Restatement (Second) of Torts on conditional privileges. Dkt. #58 at 43. Additionally, the R&R states that courts in other jurisdictions follow comment c to the Restatement (Second) of Torts. *Id.* at 43-44. The Court finds the R&R's analysis considering comments c and e to the Restatement (Second) of Torts is not erroneous.

In their third sub-argument, Defendants assert the R&R conflates and fails to distinguish the common law and statutory privileges in its analysis. Whether the R&R conflates the different qualified privileges is immaterial to the overall analysis. To the extent Defendants are arguing the statutory and common law privileges were interchanged by the R&R, the statutory privileges are codifications of their common law counterparts. While the basis for the privileges derive from different sources, their applicability to a defamation claim is the same.

To the extent Defendants are arguing the R&R conflates the fair report privilege **[*24]** with the fair comment privilege, this argument fails as well. The R&R specifically analyzes why the fair comment privilege was inapplicable when it discusses that all qualified privileges require publications which are fair, true, and impartial accounts. The fair comment privilege protects reasonable and fair commentary. *Tex. Civ. Prac. & Rem. Code § 73.002(b)(2)*. Thus, the analysis of whether the fair comment privilege applies examines whether the comments were fair. *Id.* The statutory fair comment privilege does not extend to false statements of fact concerning a person. The R&R analyzes the Reports to determine if they are fair, true, and impartial and concludes, at this stage of the proceedings, that Defendant had not established their entitled to dismissal under either the fair report or fair comment privileges.

Dkt. # 58 at 49 (citing *Klentzman II, 456 S.W.3d at 253* ("Thus, we disagree with Klentzman and The Star that they satisfied their burden of establishing their entitlement to privilege under *section 73.002(b)*."); *Levine v. CMP Publications, Inc., 738 F.2d 660, 668-69 (5th Cir.1984)* (refusing to conclude that, as a matter of law, magazine articles published by the defendant were "fair, true and impartial" accounts of public proceedings entitled to a Texas statutory privilege and finding the inaccuracies "raised fact questions" **[*25]** and "presented a jury question")). The Court finds the R&R thoroughly analyzes the statutory fair comment privilege using the correct standard and also correctly concludes the statutory fair comment privilege does not warrant dismissal at this stage of the proceedings and under the facts as alleged in the complaint.

In their fourth sub-argument, Defendants maintain the R&R uses the standard needed to overcome the public interest privilege (a common law privilege not asserted in this case) and applies this wrong standard to both the fair report and fair comment privileges. Dkt. # 63 at 13-14 (citing Dkt. # 58 at 25-30, 42-46). Specifically, Defendants argue the R&R uses the standard for the public interest privilege in finding a conditional privilege is defeated when a privilege is abused. *Id.* at 13. The *Hurlbut* case cited by the R&R regarding abuse of a privilege does involve the public interest privilege. *See Hurlbut v. Gulf Atl. Life Ins. Co., 749 S.W.2d 762, 766 (Tex.1987)*. However, the Texas Supreme Court's discussion, and the part of the decision cited by the R&R, specifically extends to all conditional privileges, not only the public interest privilege. *Id. at 768*.

Even if the Court were to find merit in Defendants' second objection and its sub-arguments, the Court **[*26]** would still agree with R&R's overall recommendation that Plaintiff's defamation claims should not be dismissed at this stage of the proceedings based on applicable qualified privileges. As the R&R discusses, and as mentioned above, a showing of actual malice will defeat a qualified privilege. The R&R finds and the Court agrees, at this stage in the proceedings, Plaintiff has pleaded sufficient factual allegations to plausibly show actual malice.[8]

The Court finds the Magistrate Judge properly analyzed the applicability of the common law and statutory privileges. This objection is overruled.

---

[8] The Court will address the finding of actual malice in depth below in response to Defendants' third main objection.

*Discussion of the third main objection*

In their third main objection, Defendants assert the R&R incorrectly applies the *Iqbal/Twombly* pleading standard. Dkt. # 63 at 14-15. Defendants argue the R&R uses conclusory allegations in its analysis and assumes these allegations are true. *Id.* Specifically, Defendants state the R&R assumes the truth of conclusory allegations regarding actual malice and conspiracy. According to Defendants, Plaintiff alleges actual malice and conspiracy without any facts to support such a claim.

**Whether the R&R errs in concluding Plaintiff sufficiently pleaded actual malice**

Defendants [*27] assert the R&R erroneously concludes Plaintiff sufficiently pleaded actual malice. According to Defendants, Plaintiff failed to meet his burden of alleging facts to support a finding of actual malice. Defendants argue Plaintiff must show actual malice to defeat any conditional privileges, and he also must show actual malice as the requisite degree of fault required of limited purpose public figures in a defamation claim.

Defamation requires a plaintiff to show a defendant either acted with actual malice or negligence. *Klentzman v. Brady, 312 S.W.3d 886, 897 (Tex. App.—Houston [1st Dist.] 2009, no pet.)*("*Klentzman I*"). A public figure plaintiff must show by clear and convincing evidence that a media defendant published the alleged defamatory statement with actual malice. *Id. at 897-98* (quoting *Gertz v. Robert Welch, Inc., 418 U.S. 323, 342, 94 S. Ct. 2997, 41 L. Ed. 2d 789 (1974))*. A private individual must show actual malice to recover exemplary damages when the alleged defamatory statement involves a matter of public concern. *Klentzman I, 312 S.W.3d at 898* (citing *Gertz, 418 U.S. at 349*). "Actual malice in this context does not mean bad motive or ill will but rather knowledge of, or reckless disregard for, the falsity of a statement." *Robert B. James, DDS, Inc. v. Elkins, 553 S.W.3d 596, 610-11 (Tex. App.—San Antonio 2018)*, *review denied*, (Mar. 1, 2019) (quoting *Greer v. Abraham, 489 S.W.3d 440, 443 (Tex. 2016))*. A plaintiff can show reckless disregard by establishing the defendant "entertained serious doubts as to the truth of his [statement]." *Huckabee v. Time Warner Entm't Co. L.P., 19 S.W.3d 413, 420 (Tex. 2000)* (quoting [*28] *St. Amant v. Thompson, 390 U.S. 727, 731, 88 S. Ct. 1323, 20 L. Ed. 2d 262 (1968))*.

While a failure to investigate by itself does not establish actual malice, a "purposeful avoidance of the truth" does. *Lane v. Phares, 544 S.W.3d 881, 891 (Tex. App.— Fort Worth 2018, no pet.)* (quoting *Tex. Disposal Sys. Landfill, Inc. v. Waste Mgmt. Holdings, Inc., 219 S.W.3d 563, 578-79 (Tex. App.—Austin 2007, pet. denied))*. "Inherently improbable assertions and statements made on information that is obviously dubious may show actual malice." *Bentley, 94 S.W.3d at 596*. A defendant repeating another's words he or she knows is false or improbable is relevant to help show actual malice, as well as "evidence that a defendant conceived a story line in advance" and then "set out to make the evidence conform." *Gilmore v. Jones, 370 F. Supp. 3d 630, 2019 WL 1418291, at *24 (W.D. Va. 2019)* (quoting *Eramo v. Rolling Stone, LLC, 209 F. Supp. 3d 862, 872 (W.D. Virg. 2016)* (citations omitted); *see also Harte-Hanks Commc'ns., Inc. v. Connaughton, 491 U.S. 657, 668, 109 S. Ct. 2678, 105 L. Ed. 2d 562 (1989))*. Additional considerations in determining actual malice include the relation of the parties, the circumstances around the publication, the terms of the publication, and a defendant's words or acts before, at, or after the time of the communication. *Dolcefino v. Turner, 987 S.W.2d 100, 111 (Tex. App.—Houston [14th Dist.]1998)*, *aff'd sub nom. Turner v. KTRK Television, Inc., 38 S.W.3d 103 (Tex. 2000)* (citations omitted).

The R&R thoroughly reviews the complaint and finds the following facts, taken as true and viewed in the light most favorable to Plaintiff, sufficiently plead actual malice:

> • Hungry to publish a scandalous story about the President of the United States and Fox and to aid and abet Wigdor's effort to extort [*29] money from Fox, Folkenflik failed to verify the information Wigdor secretly provided before releasing it on NPR.org, to NPR's radio listeners via Morning Edition, and to millions upon millions via Twitter. In spite of serious doubts as to the veracity of his source, Folkenflik blindly accepted Wigdor's false statements without ever once questioning Wigdor's (and his client, Rod Wheeler's), motive to lie. Folkenflik disregarded known sources of information that flatly contradicted the false narrative peddled by Wigdor. In promoting Wigdor's story, Folkenflik misrepresented, distorted and oversimplified facts and issues. Folkenflik failed to gather, update and correct information throughout the life of his story, allowing the false narrative to build momentum and take on a life of its own. Folkenflik engaged in baseless stereotyping and

allowed his(and Wigdor's) extreme bias to shape his reporting. Folkenflik published and republished the story in such a way and to such audiences and extremes as to maximize the insult, pain, humiliation and embarrassment to Ed Butowsky. Folkenflik pandered to lurid curiosity about the President and fake news about 'Russian collusion,' rather than tell [*30] the truth.

• At all times relevant to this action, Folkenflik had actual knowledge that his written and oral statements about Butowsky were false. He knew Butowsky did not collude with the President of the United States or with Fox to publish "fake news". Indeed, at the time he published his false statements, Folkenflik had not seen any evidence that the President even knew Butowsky.

• Folkenflik also knew that Butowsky did not support any effort by Fox (because there was none) to fabricate and falsely attribute quotations to Wheeler — indeed, Folkenflik knew — actually knew — that Wheeler had been accurately quoted by Fox. In his reporting, Folkenflik deliberately misrepresented and concealed known facts, including the fact (a) that Fox reporter, Malia Zimmerman ("Zimmerman") had shared drafts of her article with Rod Wheeler ("Wheeler") on May 15, 2017, and (b) Wheeler had approved the exact quotations that appeared in Zimmerman's article.

• Before he published his first online article on August 1, 2017 at 7:23 a.m., Folkenflik possessed information that should have caused him to disbelieve the preconceived false narrative supplied to him by Wigdor.

• The truth was well-known to Folkenflik [*31] — not only from Wheeler's text messages and emails (described in detail below) in Folkenflik's possession, but from public records (videos in which Wheeler and others, including Seymour Hersh appeared) and from other information and recordings available to Folkenflik on the Internet (all described in detail below). The true facts were also available to Folkenflik on and through the website, http://www.debunkingrodwheelersclaims.com/ . Although Wigdor told Folkenflik that Fox and Butowsky had fabricated quotations that Fox and Butowsky then falsely attributed to Wheeler, Folkenflik knew (a) that Wheeler had made the statements publicly on camera on May 15, 2017 to Fox 5 DC correspondent, Marina Marraco ("Marraco"), (b) that Wheeler had actually confirmed the quotations three (3) times to Zimmerman on May 15, 2017 in emails and text messages, (c) that Wheeler had affirmed the substance of the quotations in interviews with Sean Hannity and Lou Dobbs on May 16, 2017, and (d) that Wheeler had actually told FetchYourNews on May 22, 2017 that Zimmerman's story was "essentially correct". (Emphasis added). Based upon information in his possession, Folkenflik knew that his statements about Butowsky [*32] were categorically false.

• Instead of reporting the truth, Folkenflik abandoned his ethics and went with a preconceived story — a story manufactured and supplied to him by his source — Wigdor — a source that was admittedly on a "crusade" to get Fox. Folkenflik abandoned all journalistic integrity. He failed to investigate the true facts. He relied on inherently unreliable and debunked sources, such as Wigdor's client and source, Wheeler. Folkenflik departed from journalistic standards and repeated words and phrases that he knew were false or inherently improbable — phrases such as "Russian collusion". Folkenflik abandoned common sense. The suggestion that the President of the United States and/or the "Russians" (Vladimir Putin) would have colluded with Butowsky — a person unknown to either the President or Putin and with whom neither the President nor Putin has ever communicated — is preposterous.

• Folkenflik knew that Wigdor's preconceived narrative was false. Folkenflik, who hated Fox and craved the notoriety of salacious "breaking news", had a motive to publish a false narrative about Fox. In spite of known and obvious reasons to doubt the veracity of Wigdor and Wheeler, Folkenflik [*33] and NPR proceeded with the preconceived story without verification and without hesitation.

• Folkenflik, NPR and its editors and publishers abandoned all journalistic standards in writing, editing and publishing the Articles at issue

• Acting in concert with Wigdor, Folkenflik and NPR conceived a story line in advance of any investigation and then consciously set out to make the evidence conform to the preconceived story. Folkenflik pursued and regurgitated the preconceived narrative that he knew to be false.

• Folkenflik and NPR relied on a primary source — Wheeler — that Folkenflik and NPR knew to be wholly debunked and unreliable. Based on information known and available to Folkenflik, Folkenflik in fact harbored serious doubt as to the veracity of Wigdor and Wheeler's statements about Butowsky. Indeed, the statements were knowingly

false, with not a shred of supporting evidence, and Folkenflik knew that before he wrote the Articles published by NPR.

• Folkenflik and NPR were in possession of Wheeler's email communications and text messages with Zimmerman and other information that demonstrated the falsity of Wigdor and Wheeler's information. Folkenflik consciously and intentionally **[*34]** ignored known and available contradictory evidence that demonstrated the preconceived thesis was false and deliberately failed to investigate sources of information (e.g., Marraco, Hersh, etc.) that contradicted the preconceived storyline.

• Folkenflik and NPR knowingly presented half-truths wrapped in misstatements and conjecture. They repeated Wigdor and Wheeler's words knowing that the words were false or inherently improbable and at a time when there were obvious reasons to doubt the veracity and credibility of both Wigdor and Wheeler. Folkenflik and NPR repeated Wigdor and Wheeler's words at a time when they were cognizant of the sources inconsistencies and credibility problems.

• Folkenflik and NPR knew that Wigdor and Wheeler both had a strong motive to lie about Butowsky, and a motive to fabricate the charges conspiracy, collusion, fraud and 'fake news.' Folkenflik and NPR never questioned the extreme bias of their sources. Rather, Folkenflik and NPR were guided by their own extreme bias, ill-will and desire to publish a salacious story about the President, Fox, fake news and 'collusion.' Folkenflik's book, prior articles, blogs and tweets about Fox and Rupert Murdoch further **[*35]** demonstrate that he and NPR was prejudiced against Fox and had an axe to grind. Butowsky was a victim of that actual malice.

• Folkenflik and NPR chose to manufacture and publish false statements about Butowsky and use unnecessarily strong and violent language, disproportionate to the occasion, when they knew there was no evidentiary basis for the statements. Folkenflik and NPR did not act in good faith because, in the total absence of evidence, they could not have had an honest belief in the truth of their statements about Butowsky.

• Folkenflik and NPR reiterated, repeated and continued to publish the false defamatory statements out of a desire to gain notoriety, increase revenues for NPR, hurt Butowsky and Fox and with reckless disregard for the consequences.

• Folkenflik and NPR initiated the defamation, and went out of their way to publish extra-judicial statements about Butowsky.

• Folkenflik and NPR lacked reasonable grounds for any belief in the truth of their statements and acted negligently in failing to determine the true facts.

Dkt. #1 at ¶¶ 15-20, 166-167.

Plaintiff's allegations are not limited to only conclusory statements regarding actual malice, as Defendants suggest. Rather, **[*36]** Plaintiff alleges specific facts, taken as true, showing Folkenflik and NPR purposefully avoided the truth in publishing the Reports and made "inherently improbable assertions and statements made on information that is obviously dubious." The Court finds Defendants' objection regarding actual malice without merit.

**Whether the R&R errs in finding Plaintiff sufficiently pleaded conspiracy**

Defendants also argue in their third objection that the R&R wrongly concludes Plaintiff sufficiently pleaded a claim for civil conspiracy.

A plaintiff must allege the following to establish a claim for civil conspiracy: (1) a combination of two or more persons; (2) to accomplish an unlawful purpose or a lawful purpose by unlawful means; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) the plaintiff suffered injury as a proximate result of the wrongful act. *Ins. Co. of N. Am. v. Morris, 981 S.W.2d 667, 675 (Tex. 1998)*. A defendant's liability for conspiracy depends on "participation in some underlying tort for which the plaintiff seeks to hold at least one of the named defendants liable." *Cotten v. Weatherford Bancshares, Inc., 187 S.W.3d 687, 701 (Tex. App. — Fort Worth 2006, pet. denied)*. While proof of a conspiracy can be made by circumstantial evidence, unreasonable **[*37]** inferences, suspicions, or only close associations between coconspirators is insufficient. *Zervas v. Faulkner, 861 F.2d 823, 837 (5th Cir. 1988)* (applying Texas law); *Schlumberger Well Surveying Corp. v. Nortex Oil & Gas Corp., 435 S.W.2d 854, 858 (Tex. 1968)*.

The R&R correctly concludes Plaintiff sufficiently pleaded facts to establish a civil conspiracy claim. For example, in paragraph eleven of Plaintiff's complaint, Plaintiff alleges:

> Wigdor selected Folkenflik and deliberately leaked a false narrative to Folkenflik because Wigdor knew that Folkenflik harbored bias and animus towards Fox and its Chairman, Rupert Murdoch. Widgor correctly surmised that Folkenflik would never question or doubt Wigdor's veracity. Folkenflik gladly accepted the 'scoop' from Wigdor and published fake news with reckless indifference to the consequences of his actions as a 'journalist.'

Dkt. #1 at 12.

Taking all the facts in the complaint as true and in the light most favorable to Plaintiff, the Court agrees with the Magistrate Judge that Plaintiff sufficiently alleges conduct constituting civil conspiracy. Defendants' third main objection is overruled.

### *Discussion of the fourth main objection*

For their fourth objection, Defendants assert the R&R erroneously uses Plaintiff's proposed amended complaint and Plaintiff's response to Defendant's motion to [*38] dismiss in its analysis, rather than solely using Plaintiff's original complaint. Dkt. Entry # 63 at 15-16. Defendants criticize the R&R for analyzing whether Plaintiff failed to state a claim by considering unpleaded claims. *Id.* More specifically, Defendants argue the R&R analyzes a defamation *per quod* claim introduced in Plaintiff's proposed amended complaint and a defamation by implication claim raised in Plaintiff's response to Defendant's motion to dismiss. *Id.*

The R&R references other pleadings, but the analysis uses only the operative pleading, Plaintiff's original complaint. The R&R specifically states "considering the proposed amended complaint would not alter the analysis in a meaningful way," and "advised the parties [the Court] would consider the motion to dismiss the original complaint before ruling on Plaintiff's motion for leave to amend."[9] Dkt. #58 at 2, fn. 1. All references to Plaintiff's Proposed Amended Complaint in the R&R are contained in footnotes, rather than the body of the R&R. *Id.* at fns. 1, 3, 12, 13, 26, and 27. These references merely note differences between the Original Complaint and the Proposed Amended Complaint. *Id.*

Additionally, even [*39] if the Magistrate Judge erred in referencing Plaintiff's proposed amended complaint, the analysis would not change because the Court finds herein Plaintiff is entitled to amend his complaint. On March 15, 2019, Plaintiff filed for leave to amend his complaint to correct the misnomers, to clarify that Plaintiff is not suing Defendants for reporting on a lawsuit, and to add claims of defamation that allegedly occurred after the initial filing of the action. Dkt. # 53. Under Rule 15(a)(2), Plaintiff may only amend its pleadings with the opposing party's written consent or the court's leave. Fed. R. Civ. P. 15(a)(2). Rule 15(a) instructs the court to "freely give leave when justice so requires."

While the rule "evinces a bias in favor of granting leave to amend," amendment is not granted automatically. *See Jones v. Robinson Prop. Grp., L.P., 427 F.3d 987, 994 (5th Cir. 2002)* (quoting *Lyn-Lea Travel Corp. v. Am. Airlines, Inc., 283 F.3d 282, 286 (5th Cir. 2002))*; *see also Matagorda Ventures, Inc. v. Travelers Lloyds Ins. Co., 203 F. Supp. 2d 704, 718 (S.D. Tex. 2000)* (citing *Dussouy v. Gulf Coast Inv. Corp., 660 F.2d 594, 598 (5th Cir. 1981))*. A district court reviewing a motion to amend pleadings under Rule 15(a) considers five factors: (1) undue delay; (2) bad faith or dilatory motive; (3) repeated failure to cure deficiencies by previous amendments; (4) undue prejudice to the opposing party; and (5) futility of amendment. *Smith v. EMC, 393 F.3d 590, 595 (5th Cir. 2004)* (citing *Foman v. Davis, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962))*.

The Court finds none of the circumstances that justify denial of a requested amendment are present in this case. Plaintiff [*40] has not delayed in making this request. The Court finds the amendment has been sought in good faith. The Court does not find undue prejudice will result from the amendment. Plaintiff is entitled to amend his complaint and thus Plaintiff's

---

[9] Although there is a "lopsided split among federal courts over whether the filing of an amended complaint automatically moots a pending 12(b)(6) motion addressed to the original complaint," courts in the Eastern District of Texas have held the "greater weight of the authority favors the view that a pending 12(b)(6) motion addressed to the original complaint is mooted by the filing of the amended complaint." *See, e.g., Uniloc 2017 LLC v. Cardo Systems, Inc.*, No. 2:18-CV-00510-JRG (E.D. Tex. Apr. 10, 2019).

As pointed out in the R&R, prior to the filing of Plaintiff's motion for leave to amend, there had been extensive briefing on Defendants' motion to dismiss Plaintiff's original complaint, and the Magistrate Judge had heard oral argument on the fully ripe motion to dismiss. Considering this, and further considering the proposed amended complaint would not alter the analysis in a meaningful way, the Magistrate Judge advised the parties during a telephone conference that she would consider the motion to dismiss the original complaint before ruling on Plaintiff's motion for leave to amend.

request to amend his Complaint is granted. Any reference or utilization of Plaintiff's proposed amended complaint in the R&R is harmless. Defendants' fourth main objection is overruled.

### *Discussion of the fifth main objection*

In their fifth main objection, Defendants object to the R&R's analysis of Plaintiff's defamation *per se* claim, asserting the following: (1) the Reports are substantially true; (2) the R&R's "of and concerning" analysis is wrong; (3) the R&R wrongly concludes the allegedly defamatory statements were not protected statements of opinion; (4) the R&R errs in concluding Plaintiff is not a public figure; and (5) the R&R errs in concluding Plaintiff plausibly alleged actual malice. Dkt. # 63 at 17-23. Sub-arguments one through four are discussed more fully below. Sub-argument five was discussed thoroughly by the Court in response to Defendants' third objection.

As the R&R states, a plaintiff claiming defamation must prove the following **[*41]** elements: (a) the defendant published a false statement of fact; (2) the statement defamed the plaintiff; (3) the defendant acted with actual malice, if the plaintiff is a public figure or a public official, or negligently, if the plaintiff is a private individual; and (4) the statement proximately caused damages. *Rodriguez v. Gonzales, 566 S.W.3d 844, 2018 WL 6614153, at *2 (Tex. App. 2018)* (citing *Anderson v. Durant, 550 S.W.3d 605, 617-18 (Tex. 2018))* (other citations omitted). Defendants' objections target the R&R's analysis of the first three elements of a defamation claim above.

### **Whether the R&R errs in concluding the Reports were not substantially true**

Defendants maintain the Reports are substantially true, barring Plaintiff's defamation claims. First, Defendants argue the R&R incorrectly relies on overturned precedent, resulting in an incorrect analysis of the third-party allegation rule. Additionally, Defendants assert the statements in the Reports are the same as what is contained in the *Wheeler* complaint, making the statements substantially true. Defendants argue the R&R wrongly concludes the gist of the Reports was different from the gist of the *Wheeler* complaint. According to Defendants, substantial truth bars Plaintiff's defamation claim.

A defamation claim requires publication of a false statement of **[*42]** fact. *Rodriguez, 566 S.W.3d 844, 2018 WL 6614153, at *2*. In analyzing falsity, courts focus on whether the statements are substantially true. *Masson v. New Yorker Magazine, Inc., 501 U.S. 496, 516, 111 S. Ct. 2419, 115 L. Ed. 2d 447 (1991)*. Truth or substantial truth is a defense to defamation. *Tex. Civ. Prac. & Rem. Code 73.005(a)*, *(b)*. A statement is substantially true if it conveys the same "gist" as the literal truth even if it errs in the details. *Turner, 38 S.W.3d at 115*.

However, even true statements of fact are actionable as defamation if the statements "create a substantially false and defamatory impression by omitting material facts or juxtaposing facts in a misleading way." *Klentzman I, 312 S.W.3d at 899* (quoting *Turner, 38 S.W.3d at 115*). A defendant may be liable for defamation where the factual allegations are correct but placed in an improper context, thus portraying the wrong gist of the story. *Id.*

Media defendants have a statutory privilege to assert truth as a defense when the defendant accurately reports allegations made by a third party about matters of public concern.[10] *Tex. Civ. Prac. &Rem. Code 73.005(b)*. When a defendant asserts the third-party allegation rule, the plaintiff has the burden to show falsity. *Hall II, 2019 Tex. LEXIS 444, 2019 WL 2063576, at *8*. The Court determines substantial truth as a matter of law when the evidence is undisputed. *Klentzman I, 312 S.W.3d at 899*. If the facts are disputed, falsity is appropriately determined by the finder of fact. *Bentley v. Bunton, 94 S.W.3d 561, 587 (Tex. 2002))*.

This objection is closely tied to Defendants' first objection regarding **[*43]** the applicability of the third-party allegation rule. To the extent Defendants argue in this objection that the R&R misapplied the third-party allegation rule due to reliance on *Hall I*, the Court addressed this issue in response to Defendants' first main objection.

The R&R correctly concludes that Plaintiff shows significant differences exist between the *Wheeler* complaint and the Reports. The R&R spends pages analyzing these specific differences. For example, some statements included in the August 1 Reports were not in the *Wheeler* complaint:

- Folkenflik stated Wheeler did "not make great

---

[10] There is no dispute between the parties that NPR is a media defendant or that the Reports involved matters of public concern.

headway" with the Seth Rich murder investigation and that "[t]he FBI informs Butowsky, Wheeler and Zimmerman that the agency is not assisting the Washington, D.C. police on the investigation—undercutting claims about an FBI report."
- "Butowsky presented himself as a good Samaritan who came across a sliver of information about Seth Rich's death and shared it with the Riches."
- "Despite his misgivings, Wheeler plays along..."

Dkt. #1 at 20, ¶ 29. The R&R notes the differences between the *Wheeler* complaint and the Reports, and it thoroughly compares the two in reaching its conclusion. Based on Plaintiff's [*44] factual allegations, Defendants did not merely republish the *Wheeler* complaint. The R&R correctly finds Plaintiff sufficiently alleges Defendants' statements were not substantially true because significant differences exist between the *Wheeler* complaint and the Reports. The Court finds Plaintiff alleges facts showing the gist created by the Reports differed from the gist of the *Wheeler* complaint and also that the statements went beyond merely restating what was found in the *Wheeler* complaint.

Additionally, even if the Court assumes Defendants simply republished the statements in the *Wheeler* complaint, Plaintiff's allegations show Defendants' arrangement of facts "create a substantially false and defamatory impression." The defense of substantial truth and the third-party allegation rule do not bar Plaintiff's claims at this stage if Plaintiff sufficiently alleges the Reports place facts in a misleading and defamatory way. Examining the statements in the Reports as a whole, rather than individually, shows an objectively reasonable reader could find the Reports misrepresented Plaintiff's role in the Seth Rich investigation and the Fox News story.

In sum, the R&R takes Plaintiff's facts [*45] as true and correctly finds Plaintiff sufficiently demonstrated falsity by showing the Reports were not true or substantially true due to significant differences between the *Wheeler* complaint and the Reports and the misleading arrangement of facts implying a different and defamatory gist. The Court overrules this sub-argument of Defendants' fifth main objection.

**Whether the R&R's "of and concerning" analysis is incorrect**

Defendants next assert the R&R errs in finding the Reports at issue were "of and concerning" Plaintiff. Defendants state many of the Reports make no specific reference to Plaintiff at all. In their objection, Defendants reference only the August 7 Report as not mentioning Plaintiff by name.

As set forth in the R&R, a publication does not have to specifically name a person to be defamatory. *Vice v. Kasprzak, 318 S.W.3d 1, 13 (Tex. App. — Houston [1st Dist.] 2009)* (citation omitted). The test to determine if a publication is "of and concerning" an individual is whether persons who knew and were acquainted with the individual understood that the allegedly defamatory publication referred to that individual. *Id.*

The R&R correctly notes only the August 7 Report failed to mention Plaintiff by name. All other [*46] publications at issue specifically named and featured Plaintiff. Reading all the statements as a whole and accepting Plaintiff's allegations as true, the publications, even the August 7 Report, could have plausibly been understood to be about Plaintiff by persons who knew and were acquainted with him. The Court finds the R&R correctly concludes this part of Defendants' motion be denied.

**Whether the R&R's conclusion that the defamatory statements were not statements of opinion is incorrect**

The next sub-argument raised by Defendants is the R&R improperly finds the statements at issue were not opinions. Defendants argue the R&R misinterprets the law and fails to correctly analyze the statements in their context in determining whether the publications were fact or opinion. Defendants say the law provides that statements containing a subjective view, an interpretation, a theory, conjecture, or surmise are not actionable as a statement of fact in a defamation claim. According to Defendants, authors writing about "inherently ambiguous" subjects may fairly describe events and offer personal perspectives about ambiguities or disputed facts. Defendants claim their statements about Butowsky offer [*47] a subjective view.[11]

Defendants argued in their motion to dismiss the following statements were opinion: (1) The title of the August 1 report that the Fox News story was "baseless;"

---

[11] Specifically, Defendants state Folkenflik's statements that Butowsky's narrative was "inconsistent;" that Butowsky "displays no curiosity about the way. . . his activities affected [the Rich Family]; or the "lessons" to be learned from the Fox News Report offer a subjective view. Dkt. #63 at 20-21.

(2) The subheading of the August 1 Report that the Fox News story was "fake" news; (3) The statement from the August 1 report that "Wheeler does not make great headway. The FBI informs Butowsky, Wheeler and Zimmerman that the agency is not assisting the Washington, D.C., police on the investigation—undercutting claims about an FBI report;" (4) The statement from the August 1 report that "'Rod Wheeler unfortunately was used as a pawn by Ed Butowsky, Fox News and the Trump administration to try and steer away the attention that was being given about the Russian hacking of the DNC emails,' says Douglas Wigdor, Wheeler's lawyer;" (5) the "inconsistent" narrative statement from the *Mediaite* Interview; (6) the possible "collaboration" between Plaintiff and the White House from the *Mediaite* Interview; (7) The statement Fox News was "concocting a baseless story" from the August 7 report; (8) The statement that Fox was involved in a "journalistic scandal" over the Seth Rich story from the August 7, report; (9) All **[*48]** complained of statements from the August 16 Report; and (10) All complained of statements from the September 15 Report.

The Supreme Court has found that whether a statement asserts a fact or opinion depends on whether it is capable of being proved true or false. *Milkovich, 497 U.S. at 21 (1990)*. However, even opinions are actionable under a defamation claim where the statement implies an assertion of fact. *Id. at 18-19*. Phrasing a statement of fact as an opinion is also actionable. *Id. at 19*.

Texas case law on defamation is consistent with *Milkovich*. The Texas Supreme Court has held publishers "cannot avoid liability for defamatory statements simply by couching their implications within a subjective opinion." *Dallas Morning News, Inc. v. Tatum, 554 S.W.3d 614, 634 (Tex. 2018)*, *reh'g denied* (Sept. 28, 2018), *cert. denied*, 139 S. Ct. 1216, 203 L. Ed. 2d 208, 2019 WL 659885 (U.S. 2019)(citing *Milkovich, 497 U.S. at 19*). Again, the proper inquiry in determining whether a statement is an opinion turns on whether the statement is verifiable. *Id*. In other words, courts must ask whether the statement can be established as false. *Id*. Even statements that can be verified may not be actionable if the "entire context in which it is was made" shows the statement was truly an opinion phrased as a statement of fact. *Id*.

Defendants assert in their objections that *Milkovich* and subsequent cases have found **[*49]** statements expressing "a subjective view, an interpretation, a theory, conjecture, or surmise," are not defamatory. Dkt. # 63 at 20 (citing to *Riley v. Harr, 292 F.3d 282, 291 (1st Cir. 2002))*. Defendants cite to *Riley* for the proposition that an author is immune from a defamation claim when the author accurately describes the events and offers a personal perspective about disputed facts and ambiguities.[12]

The R&R correctly notes the applicable law and applies it to the allegations in Plaintiff's complaint. First, the statements made by Folkenflik were made as verifiable statements of fact. The statements at issue were not merely expressing a subjective view. Second, these verifiable statements of fact were not opinion statements. Defendants argue the R&R ignores *Tatum's* instructions to consider the entire context of the statements made. However, the Magistrate Judge specifically stated she considered the context of the statements in conducting her analysis. Dkt. #58 at 78. Looking at the context of the verifiable facts, nothing shows the statements expressed Folkenflik's opinion or merely offer Folkenflik's personal perspective on disputed facts. The Court finds this objection without merit.

### Whether the R&R errs in concluding Plaintiff [*50] is not a public figure

Defendants next argue the R&R incorrectly finds Plaintiff was not a limited-purpose public figure.[13] Dkt. #63 at 21-22. According to Defendants, the R&R recognizes Plaintiff was an "internationally recognized expert in the investment wealth management industry" and "has made hundreds of appearances on national and radio shows."[14] *Id.* at 21. Additionally, Defendants urge this Court that the issue of determining whether Plaintiff is a public figure is appropriately decided in a motion to dismiss as opposed to the R&R's opinion that the issue

---

[12] The Court notes that Defendants did not provide any authority for that proposition from this Circuit. Additionally, *Riley* was decided in the summary judgment context, as opposed to a motion to dismiss under *Rule 12(b)(6)*

[13] Defendants' objections argue only that Plaintiff was a limited purpose public figure, not that Plaintiff could qualify as an "all-purpose" or "general purpose" public figure. Therefore, the Court will limit its analysis to whether Plaintiff is a limited purpose public figure.

[14] The R&R did not recognize Plaintiff was an internationally recognized expert appearing on national shows, but it merely noted Defendants made those assertions. Dkt. # 58 at 79.

is more appropriately decided at the summary judgment stage of the proceedings.

Initially, the Court notes Defendants do not argue the R&R used the incorrect law on limited-purpose public figures, only that the law was wrongly applied to the facts at hand. As correctly stated in the R&R, a limited-purpose public figure is a public figure only "for a limited range of issues surrounding a particular public controversy." *Rodriguez v. Gonzales, 566 S.W.3d 844, 850 (Tex. App. — Houston [14th Dist.] 2018, pet. denied)*. Texas courts utilize a three-part test in analyzing whether an individual is a limited-purpose public figure: (1) the controversy at issue must be public both in the sense **[*51]** that people are discussing it and people other than the immediate participants in the controversy are likely to feel the impact of its resolution; (2) the plaintiff must have more than a trivial or tangential role in the controversy; and (3) the alleged defamation must be germane to the plaintiff's participation in the controversy. *Id. at 850*. In other words, limited-purpose public figures "thrust themselves to the forefront of particular public controversies in order to influence the resolution of the issues involved. . . ." *Klentzman I, 312 S.W.3d at 904*. An individual is not a limited-purpose public figure when a media defendant discusses the individual repeatedly or where the individual's actions become a matter of controversy as a result of the media defendant's actions. *Id. at 905* (citation omitted). A defamation defendant must show the plaintiff "relinquished. . . his interest in the protection of his own name" by "engag[ing] the attention of the public in an attempt to influence the resolution" of "an issue of public concern." *Id.*

Accepting the factual allegations in the complaint as true and viewing them in the light most favorable to Plaintiff, this Court finds Plaintiff's actions did not rise to the level of qualifying him **[*52]** as a limited-purpose public figure. As noted by the R&R, Plaintiff's involvement in the Seth Rich investigation and Plaintiff's communications with Wheeler were both limited. Plaintiff's past appearances on national media outlets is inapposite to the limited-purpose public figure analysis. Overall, at this stage of the proceedings, the facts do not show Plaintiff had anything more than a tangential role in the controversy surrounding the Seth Rich investigation. The Court overrules Defendants' fifth main objection.

### *Discussion of the sixth main objection*

In their sixth main objection, Defendants argue the R&R's analysis of the applicability of the DMA is incorrect. Dkt. # 63 at 23-24. Defendants assert the R&R incorrectly concludes that failure to comply with the DMA does not bar litigation. *Id.* at 24. Defendants also object to the R&R's failure to bar exemplary damages because of Plaintiff's failure to comply with the DMA.

The Magistrate Judge considered in detail the state of the law regarding whether a plaintiff's failure to follow the DMA requires dismissal for failure to state a claim. After a thorough review of Texas and Fifth Circuit precedent, the Magistrate Judge concludes the Texas DMA **[*53]** defense would be more properly handled in the context of summary judgment as opposed to a motion to dismiss. The Court agrees. Therefore, Defendants' sixth main objection is overruled.

### *Discussion of the seventh main objection*

Defendants argue in their seventh main objection that because the R&R's analysis of Plaintiff's defamation claim was wrong, so was its conclusion that Plaintiff's business disparagement claim survives dismissal. Because the Court concludes the R&R correctly analyzes Plaintiff's defamation claim and agrees Defendants' motion to dismiss should be denied as to that claim, the Court likewise finds Defendants' motion to dismiss Plaintiff's business disparagement claim should also be denied.

### *Discussion of the eighth main objection*

Defendants' final objection argues that even though the R&R correctly identifies the applicable civil conspiracy law, it fails to properly apply that law to the facts. Specifically, Defendants argue Plaintiff fails to plead facts sufficient to show civil conspiracy.

The Court addressed this issue in response to Defendants' third objection and likewise finds Defendants' eighth main objection without merit.

## CONCLUSION

The Court is of the opinion the **[*54]** findings and conclusions of the Magistrate Judge are correct, and the objections are without merit as to the ultimate findings of the Magistrate Judge. The Court hereby adopts the Report of the United States Magistrate Judge as the findings and conclusions of this Court. Accordingly, it is

hereby

**ORDERED** that Defendants' Motion to Dismiss Pursuant to *Federal Rule of Civil Procedure 12(b)(6)* for Failure to State a Claim (Dkt. # 25) is **DENIED**, and the objections of Defendants are **OVERRULED**. It is further

**ORDERED** that Plaintiff's Motion for Leave to File Amended Complaint (Dkt. # 53) is **GRANTED**.

**SIGNED this 7th day of August, 2019**.

/s/ Amos L. Mazzant

AMOS L. MAZZANT

UNITED STATES DISTRICT JUDGE

**End of Document**